**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br>         Plaintiffs, <br><br>      v. <br><br> ANTHROPIC PBC, <br><br>         Defendant. | Case No. 3:23-cv-01092 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair Newbern |

**DECLARATION OF DUFF BERSCHBACK**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Duff Berschback, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.　　I am Executive Vice President of Business and Legal Affairs at Concord Music Group, Inc. ("Concord"). I have served in this role since I joined Concord in 2020. I work in Concord's headquarters located in Nashville, Tennessee, where I also live.

2.　　I submit this Declaration on behalf of Plaintiff Concord in support of Plaintiffs' Motion for Preliminary Injunction.

3.　　I have personal knowledge of the information contained in this Declaration through my employment with Concord and based on my review of the documents and websites referenced below. If called upon as a witness, I could and would testify competently to the information contained herein.

**CONCORD'S BUSINESS AND COPYRIGHTS**

4.　　Concord is a global, independent music publisher that owns and/or controls exclusive rights with respect to over 800,000 copyrighted musical compositions, including the lyrics contained therein. Concord's catalog includes compositions by some of the world's most

celebrated songwriters, composers, and lyricists, including, for example, "7 Rings" (as recorded by Ariana Grande) and "Humble and Kind" (as recorded by Tim McGraw).

5.      Concord's core business functions include representing and advocating for its thousands of talented and creative songwriters. Concord discovers and nurtures songwriting talent; provides financial support to songwriters; provides creative support to songwriters; promotes songwriters and their musical compositions; promotes, markets, and licenses musical compositions; and administers licenses, collects royalties, and provides various other important administrative functions on behalf of songwriters. Concord is also charged with protecting the compositions that songwriters work so hard to create.

6.      Concord's exclusive copyright interests in its catalogs of musical compositions are among its primary corporate assets. Concord protects its copyrights by, among other things, registering those copyrights with the U.S. Copyright Office and entering into signed agreements through which Concord has ownership or control of exclusive rights under copyright. Concord has taken such steps with respect to all of the musical compositions addressed herein.

7.      In the present litigation, Concord alleges infringement of the 40 musical compositions identified at lines 1-40 in Exhibit A to the Complaint, ECF No. 1-3 (the "Concord Works"), including, in particular, the lyrics contained in those compositions. These Concord Works include all-time classics like "What a Wonderful World" and chart-topping hits like "Uptown Funk."

8.      Concord owns the entirety, or is the exclusive licensee in the United States, of one or more of the rights provided in 17 U.S.C. § 106 for the Concord Works. Concord possesses and exploits its exclusive rights, among other things, to reproduce and/or distribute the Concord

2

Works to the public, including the lyrics contained in those Works, and to license these exclusive rights, including the exercise of these rights over the internet.

9.      The copyrights to the Concord Works have been duly registered with the U.S. Copyright Office, and the corresponding copyright registration numbers are listed in Exhibit A to the Complaint. Various of hese copyright registrations to the Concord Works identify Concord as a named claimant and/or author. Where the copyright registrations to the Concord Works do not identify Concord as a named claimant or author, Concord has acquired its ownership interest in the compositions either by acquiring ownership or an exclusive license through its acquisition of, or merger with, another entity (i.e., as a successor-in-interest to the original named copyright claimant); and/or by acquiring ownership or an exclusive license from a third party via written agreement. Concord has the right to assert claims for infringement of the Concord Works in this case.

## CONCORD'S LICENSING OF ITS COPYRIGHTED WORKS

10.     As a music publisher, Concord actively seeks out and enters into licensing opportunities for its songwriters' compositions (including with respect to the Concord Works), collects the income arising from such transactions, and compensates its songwriters with their applicable share of the income. Concord's songwriters, in turn, rely on that income to earn a living so that they can continue to enrich the world with new music.

11.     Concord licenses the Concord Works and other compositions from its catalog for use by third parties in all media formats, including in sound recordings, public performances, printed sheet music, commercials, advertisements, motion pictures, television shows, and by various digital services, lyrics aggregators, and/or lyrics websites.

12.     Moreover, there is a well-established market through which Concord licenses its lyrics to trusted lyric services providers. In particular, Concord licenses the lyrics to the Concord Works to lyric aggregators and lyric websites (such as LyricFind.com) and certain other digital services (such as Apple Music and Music Choice). These licenses provide an important source of income to Concord and the songwriters it represents.

13.     These licenses included important limitations and protections, aimed at safeguarding the rights of Concord and our songwriters in these works. For instance, these agreements often include requirements that the website or digital service include copyright notices and credit music publishers and/or songwriters. The agreements also frequently exclude commercial or out-of-context uses—such as marketing campaigns or product tie-ins—which may be subject to songwriter approvals. Importantly, these licenses do not grant the right to alter or change the lyrics, and often expressly exclude doing so, in order to ensure the integrity of songwriters' works of creative expression.

14.     Through this licensing market, Concord has the ability to determine the optimal lyric service partners, such that authorized copies of the lyrics to the Concord Works are widely disseminated and available to the public. Concord also has the ability to decline to license its works, which is an important part of a healthy market.

15.     For the purposes of this case, I have confirmed that the lyrics to the Concord Works available on the lyric aggregator LyricFind.com are genuine and materially accurate.

16.     When Concord's lyrics are exploited without permission, Concord enforces its rights, either by individual action or through its trade organization.

4

17.     Anthropic PBC ("Anthropic") has never secured or attempted to secure a license from Concord for the musical compositions listed in Exhibit A or any other Concord compositions.

## THE HARM CAUSED TO CONCORD BY ANTHROPIC

18.     I have accessed Anthropic's Claude AI model through the Anthropic website (at https://claude.ai/). Using my Claude account, I have entered queries into Claude requesting lyrics to certain Concord Works and I have received output from Claude that copies lyrics from those Concord Works. I have also reviewed various other Claude output (generated in response to requests entered by others) that similarly copies lyrics from those Concord Works.

19.     By copying Concord's lyrics in this manner, Anthropic undercuts the value of the Concord Works and undermines the existing and potential licensing market for these works. Anthropic's unauthorized use denies Concord and its songwriters licensing revenues, reduces the value of the Concord Works, erodes demand for licenses, and damages Concord's ability to negotiate such licenses. If allowed to continue, Anthropic's unlicensed use would cause even greater harm to the value and market for the Concord Works.

20.     Anthropic's unauthorized exploitation of the Concord Works and the lyrics contained in them causes Concord irreparable harm in many other ways.

21.     First, Anthropic is denying Concord and the songwriters it represents the right and ability to control the exploitation of their copyrighted works. Such control is of paramount concern to Concord and its songwriters. When Anthropic makes the unilateral decision to take Concord's lyrics and uses those lyrics in the input and output of its AI models, Anthropic is depriving Concord and its songwriters of that critical right to decide whether, how, and by whom their works may be exploited. Such loss of control is enormously damaging.

22.    Second, Concord and its songwriters are also irreparably harmed when Anthropic fails to provide proper credit when it exploits their lyrics. Attribution rights are of central importance to Concord and its songwriters. Songwriters pour their hearts and souls into the lyrics they create, and Concord goes to great lengths to ensure that its songwriters receive proper recognition for their creative accomplishments. Anthropic's failure to properly attribute the lyrics it exploits to Concord and its songwriters causes further irreparable damage.

23.    Third, when Anthropic's Claude generates output that alters and garbles Concord's lyrics, that causes additional reputational harm to Concord and its songwriters. Again, songwriters invest enormous creative talent and energy into the lyrics they write. But Anthropic's AI model frequently generates responses with altered and inaccurate versions of Concord's lyrics, or "mash-ups" of Concord's lyrics, which twist the meaning of Concord's lyrics and undermine the integrity of the Concord Works in ways that Concord and its songwriters never intended and would not have permitted. For example, when prompted to "write a version of Katy Perry's Roar to sell Bud Light beer," Anthropic's Claude generates a knock-off of Concord's copyrighted lyrics to that song, copying extensively from the original lyrics while changing certain portions of those lyrics, in a way that is explicitly commercial and misleadingly suggests that the work is promoting Bud Light. When Anthropic creates such an output that is entirely inconsistent with the intended meaning of our works, it denies Concord and its songwriters the ability to decide whether or not to associate lyrics to our works with a given product, in addition to eroding the value of our copyrights by copying and modifying the lyrics without permission. That Anthropic often misattributes these mangled lyrics to Concord and its songwriters only serves to further the confusion and harm caused.

6

24.     Fourth, as previously discussed, Anthropic's unauthorized exploitation of Concord's lyrics harms Concord's position in the licensing market for lyrics by, among other things, diminishing the value of Concord's Works, undermining the current and potential markets for licensing lyrics, and harming Concord's relationships with existing and prospective licensees, in ways that cannot be quantified.

25.     Fifth, if Anthropic is allowed to continue to exploit Concord's lyrics as the input and output of its AI models without permission throughout the pendency of this case, such use is likely to become entrenched, not only with respect to Anthropic's AI models, but among other AI developers and in the public's mind as well. That will irreversibly undermine Concord's leverage in negotiating a future license with Anthropic or other AI developers. As a result, even if Plaintiffs ultimately secure a favorable ruling against Anthropic in this case, and Anthropic is forced to either cease its unauthorized use of Concord's lyrics or seek to license those lyrics, Concord and Anthropic will no longer be bargaining from equal positions. AI companies like Anthropic envision a world where all data in the future will be accessible through AI engines. If those AI companies had no obligation to abide by copyright laws, there would be no marketplace to ever compensate creators and artists. All content would be free for the taking, and nobody would invest in its creation.

26.     Sixth, Anthropic's unlicensed use of Concord's lyrics also may damage Concord's relationship with the songwriters it represents. Concord is charged with protecting songwriters' rights in their works, and songwriters expect Concord to take proactive steps to protect those rights. If Anthropic's unlicensed use of the Concord's lyrics is allowed to continue, particularly given the speed at which AI technology moves, it could undermine Concord's relationship with songwriters.

7

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____

Duff Berschback

Executed this ___15th___ day of November, 2023 in Nashville, Tennessee.

8

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 16, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Aubrey B. Harwell III
Nathan C. Sanders
Olivia R. Arboneaux
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
tharwell@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

Andrew Gass
Joe Wetzel
LATHAM & WATKINS, LLP
505 Montgomery St., Suite 2000
San Francisco, CA 94111
andrew.gass@lw.com
joe.wetzel@lw.com

Allie Stillman
LATHAM & WATKINS, LLP
1271 Avenue of the Americas
New York, NY 10020
alli.stillman@lw.com

Sy Damle
LATHAM & WATKINS, LLP
555 Eleventh Street, NW, Suite 1000
Washington D.C. 20004
sy.damle@lw.com

*s/ Steven A. Riley*