# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>　　　*Defendant*. | Case No. 3:23-cv-01092<br><br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair Newbern |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**
**AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES ....................................................................................................iii

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ......................................................................................................................2

    A.    Anthropic has developed a cutting-edge generative AI model from its business based in California.......................................................................................2

    B.    From California, Anthropic makes Claude available to users everywhere but has never targeted Tennessee for any part of its business ...............................4

    C.    All users of Claude—including Plaintiffs—agree to Anthropic's terms of service which require them to resolve all disputes arising from Anthropic's products in courts located in San Francisco, California .........................................5

    D.    Plaintiffs' claims do not create any relevant link between Anthropic and Tennessee...................................................................................................................5

LEGAL STANDARD................................................................................................................6

ARGUMENT.............................................................................................................................7

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER ANTHROPIC .................7

    A.    Anthropic is not subject to general jurisdiction in this District .............................7

    B.    Anthropic is not subject to specific jurisdiction in this District.............................8

II.    VENUE IN THE MIDDLE DISTRICT OF TENNESSEE IS IMPROPER ....................12

III.   ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ...................................................................14

    A.    The Northern District of California the proper forum ..........................................15

    B.    The interests of justice support transfer to the Northern District of California ................................................................................................................16

    1.    Plaintiffs already agreed to litigate this dispute in the Northern District of California ................................................................................................................17

    2.    The locus of operative events for this case is the Northern District of California ................................................................................................................18

3.    Transfer to the Northern District of California would provide easier, efficient, and effective access to the evidence and witnesses at the heart of this case ..................................................................................................................20

4.    The relative means and convenience of the parties are neutral factors..................22

5.    Plaintiffs' choice of forum is entitled to little weight and outweighed by other factors ......................................................................................................23

Conclusion ..........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andersen v. Stability AI Ltd.*,
2023 WL 7132064 (N.D. Cal. Oct. 30, 2023)...............................................................................1

*Antony v. Buena Vista Books*,
2020 WL 5995590 (E.D. Ky. Oct. 1, 2020)..................................................................................21

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)..............................................................................................................12, 15, 17

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ......................................................................................................10

*Blessing v. Chandrasekhar*,
988 F.3d 889 (6th Cir. 2021) ......................................................................................................10

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017).......................................................................................................................7

*Bridgeport Music, Inc. v. Still N the Water Publ'g*,
327 F.3d 472 (6th Cir. 2003) ........................................................................................................8

*Brink v. Ecologic, Inc.*,
987 F. Supp. 958 (E.D. Mich. 1997).....................................................................................12, 19

*Cadle Co. v. Schlichtmann*,
123 F. App'x 675 (6th Cir. 2005) ..............................................................................................10

*Canaday v. Anthem Cos.*,
9 F.4th 392 (6th Cir. 2021) ...........................................................................................................7

*Cap. Confirmation, Inc. v. Auditconfirmations, LLC*,
2009 WL 2823613 (M.D. Tenn. Aug. 28, 2009) ..........................................................................9

*Daimler AG v. Brauman*,
571 U.S. 117 (2014).......................................................................................................................7

*Dean v. Motel 6 Operating L.P.*,
134 F.3d 1269 (6th Cir. 1998) .......................................................................................................7

*Doe v. Andrews*,
2016 WL 54923 (M.D. Tenn. Jan 5, 2016)..................................................................................23

iii

*Eight Mile Style, LLC v. Spotify U.S. Inc.*,
  2020 WL 1640425 (M.D. Tenn. Apr. 2, 2020)................................................................6

*ePlus, Inc. v. Lawson Software, Inc.*,
  789 F.3d 1349 (Fed. Cir. 2015)......................................................................................11

*Flight Sols., Inc. v. Club Air, Inc.*,
  2010 WL 276094 (M.D. Tenn. Jan. 14, 2010)...............................................................22

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
  195 F. Supp. 3d 613 (S.D.N.Y. 2016)............................................................................21

*Gibson Found., Inc. v. Norris*,
  2020 WL 1676911 (M.D. Tenn. Apr. 6, 2020) (Crenshaw, C.J.)...................................13

*Gray v. Duval Cnty. Pub. Schs.*,
  2014 WL 4716487 (W.D. Ky. Sept. 22, 2014)...............................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984).......................................................................................................11

*Ian v. Bottom Line Rec. Co.*,
  2016 WL 8711721 (M.D. Tenn. July 1, 2016) (Crenshaw, C.J.) ...............................7, 12

*Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*,
  3 F.4th 275 (6th Cir. 2021) ..............................................................................................6

*Ingram Barge Co. v. Americas Styrenics, LLC*,
  2015 WL 5228154 (M.D. Tenn. Sept. 8, 2015)..............................................................22

*Johnson v. UMG Recordings, Inc.*,
  2018 WL 4111912 (M.D. Tenn. Aug. 29, 2018)........................................................16, 23

*Kadrey v. Meta Platforms, Inc.*,
  No. 3:23-cv-03417 (N.D. Cal. Nov. 20, 2023) .................................................................1

*Lakeside Surfaces, Inc. v. Cambria Co.*,
  16 F.4th 209 (6th Cir. 2021) ...........................................................................................17

*Lisenbee v. FedEx Corp.*,
  579 F. Supp. 2d 993 (M.D. Tenn. 2008)..........................................................................24

*Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*,
  617 F. App'x 406 (6th Cir. 2015) ......................................................................................9

*Means v. U.S. Conf. of Cath. Bishops*,
  836 F.3d 643 (6th Cir. 2016) ......................................................................................17, 24

iv

*Nat'l Intergovernmental Purchasing All. Co. v. Anderson*,
  2020 WL 6134995 (M.D. Tenn. Oct. 19, 2020) ...................................................................23

*Neogen Corp. v. Neo Gen Screening, Inc.*,
  282 F.3d 883 (6th Cir. 2002) ..............................................................................................9, 10

*Oakley v. Remy Int'l, Inc.*,
  2010 WL 503125 (M.D. Tenn. Feb. 5, 2010) ........................................................................18

*Parker v. Winwood*,
  938 F.3d 833 (6th Cir. 2019) ................................................................................................7, 8

*Patel v. AR Grp. Tenn., LLC*,
  2021 WL 4133954 (M.D. Tenn. Sept. 10, 2021) ...................................................................18

*Pearl Recs., Inc. v. Conner*,
  2023 WL 351203 (M.D. Tenn. Jan. 20, 2023) (Crenshaw, C.J.).............................................12

*Rajapakse v. Stevens Realty*,
  2020 WL 9813451 (M.D. Tenn. June 9, 2020) (Crenshaw, C.J.)...........................................20

*Sacklow v. Saks, Inc.*,
  377 F. Supp. 3d 870 (M.D. Tenn. 2019) (Crenshaw, C.J.)............................................. *passim*

*Sardeye v. Wal-Mart Stores E., L.P.*,
  2019 WL 4276990 (M.D. Tenn. Sept. 10, 2019)....................................................................15

*Sheet Metal Workers' Health & Welfare Fund of N.C. v. Stromberg Metal Works, Inc.*,
  2021 WL 780728 (M.D. Tenn. Mar. 1, 2021) ........................................................................14

*Showhomes Franchise Corp. v. LEB Sols., LLC*,
  2017 WL 3674853 (M.D. Tenn. Aug. 24, 2017) ....................................................................14

*Sony/ATV Music Publ'g, LLC v. KTS Karaoke, Inc.*,
  2012 WL 1267980 (M.D. Tenn. Apr. 16, 2012)....................................................................14

*Sovik v. Ducks Unlimited, Inc.*,
  2011 WL 1397970 (M.D. Tenn. Apr. 13, 2011).....................................................................24

*Susan McKnight, Inc. v. United Indus. Corp.*,
  273 F. Supp. 3d 874 (W.D. Tenn. 2017).................................................................................11

*Symbolstix, LLC v. Smarty Ears, LLC*,
  152 F. Supp. 3d 1027 (N.D. Ohio 2015)................................................................................12

*Tardy v. CoreCivic of Tenn., LLC*,
  2023 WL 6276724 (M.D. Tenn. Sept. 26, 2023).....................................................................16

v

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
   2020 WL 4368283 (M.D. Tenn. July 30, 2020) ........................................................................18

*Tremblay v. OpenAI, Inc.*,
   No. 3:23-cv-0322 (N.D. Cal. June 28, 2023)..............................................................................1

*Van Cleave v. Univ. of the S.*,
   607 F. Supp. 3d 783 (M.D. Tenn. 2022).....................................................................................24

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................................................................8, 9, 11

## STATUTES

28 U.S.C.
   § 1331...................................................................................................................................15
   § 1391(b)...............................................................................................................12, 13, 15, 16
   § 1391(c).....................................................................................................................................13
   § 1400...................................................................................................................................12, 15
   § 1404(a).........................................................................................................................7, 15, 17

Tenn. Code Ann. § 20-2-214(a)(6) .................................................................................................7

## RULES

Fed. R. Civ. P. 12..........................................................................................................................6, 14

Fed. R. Civ. P. 45..............................................................................................................................22

## OTHER AUTHORITIES

*Anthropic*, https://www.anthropic.com/ (last visited Nov. 22, 2023)............................................2

*Company*, Anthropic, https://www.anthropic.com/company (last visited Nov. 22, 2023)..............2

*Meet Claude*, Anthropic, https://www.anthropic.com/product (last visited Nov. 22, 2023)...........2

*Talk to Claude*, Anthropic, https://claude.ai/login (last visited Nov. 22, 2023)..............................4

## PRELIMINARY STATEMENT

This lawsuit is a negotiating tactic disguised as a federal court complaint. Plaintiffs—eight music publishers—seek to leverage the prevailing societal interest in generative artificial intelligence ("AI") to extract a lucrative licensing deal from Anthropic, one of the leaders in the growing industry. Their claims mirror those in lawsuits where plaintiffs have faltered against other generative AI innovators in the Northern District of California. *See, e.g.*, *Andersen v. Stability AI Ltd.*, 2023 WL 7132064, at *8-9 (N.D. Cal. Oct. 30, 2023) (granting motions to dismiss); Order Granting Motion to Dismiss, *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417 (N.D. Cal. Nov. 20, 2023), ECF No. 56; Compl., *Tremblay v. OpenAI, Inc.*, No. 3:23-cv-0322 (N.D. Cal. June 28, 2023), ECF No. 1 (suit asserting claims substantially identical to those in *Kadrey*, with motion to dismiss currently pending). But rather than litigate in a jurisdiction in which plaintiffs have fared poorly to date, Plaintiffs filed suit here—a jurisdiction with no connection whatsoever to any conduct alleged in the Complaint.

Defendant Anthropic PBC ("Anthropic") moves to dismiss based on an absence of jurisdiction and improper venue, or in the alternative, to transfer this case to the Northern District of California, where it belongs. Plaintiffs already agreed to litigate their claims there: the declarants whose use of Anthropic's platform underpins Plaintiffs' claims agreed to terms of service that provide for resolution of claims in the Northern District of California. Anthropic is based there. All Plaintiffs, save one, are based in California. Anthropic did not train its generative AI model in this District. And there is no allegation that any of the allegedly infringing "outputs" of the model were made or received here. This is not just forum-shopping: it does not come close to establishing as a matter of law that the suit can proceed in the forum Plaintiffs have chosen.

The Court should dismiss Plaintiffs' Complaint or, in the alternative, direct transfer to the Northern District of California.

1

## BACKGROUND

**A.      Anthropic has developed a cutting-edge generative AI model from its business based in California**

Anthropic—a Delaware corporation with its principal place of business in San Francisco, California, Compl. ¶ 33, ECF No. 1; Ex. A, Decl. of Jared Kaplan ("Kaplan Decl.") ¶¶ 4-5—is an artificial intelligence "safety and research company," working to "create reliable, beneficial AI systems." *Anthropic*, https://www.anthropic.com/ (last visited Nov. 22, 2023); *see* Compl. ¶ 7; Kaplan Decl. ¶ 11.[1]  Founded in 2021, Compl. ¶ 49, its mission is "to ensure transformative AI helps people and society flourish" by "building frontier systems, studying their behaviors, working to responsibly deploy them, and regularly sharing [] safety insights." *Company*, Anthropic, https://www.anthropic.com/company (last visited Nov. 22, 2023).  To further these aims, Anthropic develops, operates, sells, and licenses access to generative AI models, Compl. ¶ 49, which are software that can create original text, images, and computer code at a level that approximates human capabilities, Kaplan Decl. ¶ 11.

Anthropic's signature product is an AI conversational interface known as Claude.  *See id.* ¶ 13; *Meet Claude*, Anthropic, https://www.anthropic.com/product (last visited Nov. 22, 2023).  Claude is "a series of AI models," built for different users and platforms.  Compl. ¶ 50; *see Meet Claude*, *supra*.  The Claude models are "large language models" or "LLMs," Compl. ¶ 50, a text-based type of generative AI system that uses deep learning techniques and large data sets to understand, summarize, generate, and predict new content, Kaplan Decl. ¶ 12.

After years of research, development, and training, Anthropic released Claude in March 2023 and released Claude 2 in July 2023.  *Id.* ¶ 13.  Claude is an AI conversational interface—a

---

[1]      For purposes of this motion, Anthropic assumes but does not concede that the allegations in the Complaint are true.

2

general purpose LLM—which allows users to engage in open-ended conversations involving complex reasoning, creativity, thoughtful dialogue, coding, or detailed content creation. Drawing on the statistical, relational, and factual information gleaned from its training, users can prompt Claude to create original outputs, including text, images, and computer code at levels that approximate human cognition. *Id.* Claude is designed to use its learning to facilitate the creation of new, original content. *Id.*

Claude is trained on a "proprietary mix of publicly available information from the Internet, datasets that Anthropic licenses from third party businesses, and data that Anthropic's users share or that crowd workers provide." Kaplan Decl. ¶ 14 & Ex. A. These vast data sets of preexisting written context, known collectively as the "training corpus," are collected transparently, such that website operators can identify when Anthropic is accessing their website. *Id.* ¶¶ 14-15. The training corpus may include text from publicly available websites on the Internet, open sources of pre-collected data sets, or data acquired from private sources. *Id.* ¶ 15. Claude was trained by first breaking down the training corpus into "tokens," which are basic units of an average 3.5 characters in length. *Id.* ¶ 16. For any given LLM model, an enormous number of tokens are required to properly train a functional LLM and to ultimately allow the LLM to recognize patterns in language to any useful degree. Claude and Claude 2 were both trained with over a trillion tokens. *Id.* ¶ 17. Anthropic had and has no interest in extracting or retaining the expressive content of any particular text used to train Claude; rather, the goal is and was only to extract statistical inferences about language based on the relationships between different pieces of text. *Id.* ¶ 19.

As of the date of the Complaint (and this motion), the overwhelming majority of Anthropic's employees, including its leadership and the team of engineers responsible for the design, training, and operation of Claude, live and work in California. *Id.* ¶ 7. Of Anthropic's 261

3

employees, only three live in Tennessee, working their California-based jobs remotely with California-based teams. *Id.* ¶¶ 7-8. These three employees—a Recruiter, a Member of Technical Staff, Research Engineer, and an Interim Head of Product and Head of Business Operations—have no responsibility for the training, development, or sales and marketing of Claude or the model's decision-making. *Id.* ¶¶ 7, 9, 21. Rather, Claude was created, trained, and developed at Anthropic's headquarters in San Francisco. *See id.* ¶¶ 7, 9. The majority of the engineers that work on and train Claude on a daily basis are based in California, with a minority in London, New York, and Seattle, but none in Tennessee. *Id.* ¶ 20. The technical elements used to train Claude are also located outside of Tennessee: the computer and data employed in the process are in Northern Virginia; Claude's servers are in Iowa; and Claude's source code is hosted by GitHub, a Delaware company headquartered in San Francisco. *Id.* ¶ 22.

**B.      From California, Anthropic makes Claude available to users everywhere but has never targeted Tennessee for any part of its business**

The California-based Claude models reach users in two ways. Compl. ¶ 52. The first is a publicly accessible chat interface on Anthropic's website, which allows users to ask Claude questions or make requests and receive AI-generated replies. *Id.*; *see Talk to Claude*, Anthropic, https://claude.ai/login (last visited Nov. 22, 2023). This feature is available to users nationwide. The second is a commercial Application Programming Interface, or "API," that businesses may license from Anthropic to allow their third-party software to interact with and use Claude models. Compl. ¶ 52. In this scenario, Claude is incorporated into commercial customers' software, products, and systems, so that users can enter a prompt or request through the third-party customer platform and Claude will respond. *See id.* The user, however, experiences this interaction as though the third-party API customer is itself generating the output. *See id.* Both Anthropic's website and its API are maintained by employees based in California. Kaplan Decl. ¶ 23. And

Anthropic oversees its sales and marketing operations, which strive for a global reach, from its California headquarters.  *Id.* ¶ 26.  Anthropic has not undertaken and does not plan to undertake any Tennessee-specific sales or marketing campaigns.  *Id.* ¶¶ 24, 26.

### C.    All users of Claude—including Plaintiffs—agree to Anthropic's terms of service which require them to resolve all disputes arising from Anthropic's products in courts located in San Francisco, California

Since September 6, 2023, Anthropic's terms of service for both commercial customers and users of its website have provided that "any disputes arising out of or relating to these terms will be resolved exclusively in the state or federal courts located in San Francisco, California."  Kaplan Decl. Ex. B; *see id.* ¶ 25.  Plaintiffs admit that they accessed Claude through the Anthropic website before filing the instant suit on October 18.  *See* Decl. of Duff Berschback ¶ 18, ECF No. 42; Decl. of Alisa Coleman ¶ 20, ECF No. 43; Decl. of David Kokakis ¶ 19, ECF No. 44; Decl. of Kenton Draughton ¶ 19, ECF No. 45.  They therefore agreed to the prevailing terms of service and must litigate their disputes against Anthropic in the Northern District of California—the District that includes San Francisco—as they agreed to do as a condition of their use of Claude.  *See* Kaplan Decl. ¶ 25.[2]

### D.    Plaintiffs' claims do not create any relevant link between Anthropic and Tennessee

Plaintiffs filed this lawsuit on October 18, 2023.  Compl. at 1.  They are eight music publishers: Concord Music Group, Inc. ("Concord"), six members of parent company Universal Music Publishing Group ("Universal"), and ABKCO Music, Inc. ("ABKCO").  Compl ¶¶ 21-32.

---

[2]    Prior to September 6, 2023, Anthropic's terms of service required any users to arbitrate any disputes arising from their use of Anthropic's products and services in San Francisco, California, as a condition of use.  To the extent that any Plaintiff hereafter alleges or contends that it ceased accessing Claude prior to September 6, and bases any part of its claim against Anthropic on the use of Claude before September 6, those claims must be arbitrated and Anthropic will promptly move to compel arbitration of those claims and dismiss the Complaint on those grounds. *See* Kaplan Decl. ¶ 25 & Ex. C.

According to Plaintiffs, they "own and/or control, in whole or in part, the exclusive rights to millions of valuable musical compositions"; Anthropic, they assert, has "infringe[d]" these rights. *Id.* ¶¶ 11, 37.

Plaintiffs allege claims for direct infringement, contributory infringement, vicarious infringement, and removal or alteration of copyright management information under the Copyright Act. *See id.* ¶¶ 111-53. Plaintiffs appear to assert separate theories of liability for (1) Anthropic "copying" and using the lyrics to musical works for which Plaintiffs control the copyright as part of the corpus to train Claude; (2) Claude "generat[ing] identical or nearly identical copies of those lyrics" when prompted to do so by a user; (3) Anthropic facilitating alleged copyright infringement by Claude users; and (4) "remov[ing] or alter[ing] the copyright management information associated with" Plaintiffs' lyrics. *Id.* ¶¶ 6, 8, 11, 84; *see also id.* ¶¶ 56-80, 84-89. Of those forms of activity, those alleged in (1), (3), and (4) would have occurred in California, *see* Kaplan Decl. ¶¶ 7, 20-24, 26; those alleged in (2) would have happened all over the country, with no particular focus on (or any evidence or allegation of conduct in) Tennessee; and those alleged in (2) and (3) are unquestionably subject to the forum-selection clause in Anthropic's terms of service, *see id.* ¶ 25.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) or (b)(3), plaintiffs carry "the burden of establishing the existence of personal jurisdiction" and proving that venue is proper. *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (personal jurisdiction); *Eight Mile Style, LLC v. Spotify U.S. Inc.*, 2020 WL 1640425, at *3 (M.D. Tenn. Apr. 2, 2020) (venue). Though "[t]he court must view the pleadings and affidavits in a light most favorable to the plaintiff[s]," plaintiffs nonetheless "must meet [their] prima facia showing" that personal jurisdiction exists, *Ingram*, 3 F.4th at 278, and "the court may examine facts outside

6

the complaint," *Ian v. Bottom Line Rec. Co.*, 2016 WL 8711721, at \*2 (M.D. Tenn. July 1, 2016) (Crenshaw, C.J.); *see Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

ARGUMENT

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER ANTHROPIC

First, this Court lacks personal jurisdiction over Anthropic. To establish personal jurisdiction, Plaintiffs must allege a prima facie case under both Tennessee's long-arm statute and federal due process principles. *See Canaday v. Anthem Cos.*, 9 F.4th 392, 396 (6th Cir. 2021). Here, those requirements merge because "Tennessee law extends its jurisdiction to due process's limits." *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019); *see* Tenn. Code Ann. § 20-2-214(a)(6) (creating jurisdiction "as to any action or claim for relief arising from . . . [a]ny basis not inconsistent with the constitution of . . . the United States"). Within those limits, Plaintiffs can establish neither general nor specific jurisdiction and therefore have not met their prima facie burden.

### A.    Anthropic is not subject to general jurisdiction in this District

General jurisdiction is unavailable because Anthropic is not "at home" in Tennessee. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Anthropic is a Delaware corporation with its principal place of business in San Francisco, California. Compl. ¶ 33. And Plaintiffs do not allege that Anthropic's contacts with Tennessee are otherwise sufficiently "continuous and systematic" to establish general jurisdiction. *Daimler AG v. Brauman*, 571 U.S. 117, 127 (2014); *see* Compl. ¶ 16 (alleging only "specific personal jurisdiction").

7

**B.      Anthropic is not subject to specific jurisdiction in this District**

Nor have Plaintiffs alleged facts showing specific jurisdiction.  To establish specific personal jurisdiction over a defendant, a plaintiff must show that the defendant has sufficient "minimum contacts" with the forum state, and that the plaintiff's claims "arise out of" or relate to those contacts.  *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014).  In other words, Anthropic must have "purposefully avail[ed] [its]elf of the privilege of acting in [Tennessee]," and its "suit-related conduct" must establish "a substantial connection" with the state.  *Parker*, 938 F.3d at 839 (citation omitted).  Plaintiffs have failed to allege any specific contacts between Anthropic and Tennessee that relate to Plaintiffs' infringement claims.  At most, the Complaint alleges that Anthropic markets Claude in Tennessee and has made Claude available to Tennessee users and licensees.  Compl. ¶ 16; *see id.* ¶ 18.  But these allegations are insufficient as a matter of law to create personal jurisdiction over Anthropic.

Starting with Plaintiffs' assertion that Anthropic "knowingly and intentionally markets and supplies its services to persons in Tennessee," *id.* ¶ 16; *see id.* ¶ 17, Plaintiffs rely only on this blanket allegation and describe no specific efforts by Anthropic to target customers or users in Tennessee.  Such generic allegations fail to establish personal jurisdiction.  Rather, the Sixth Circuit has emphasized that a defendant must "himself direct[] distribution" of an allegedly infringing product or service "specifically within Tennessee."  *Parker*, 938 F.3d at 833.  Plaintiffs identify no "evidence of [Anthropic] advertising directly targeting or even actually reaching Tennessee," and do not allege that Anthropic "took any actions to direct [Claude] to Tennessee." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 480-81 (6th Cir. 2003).  Because Plaintiffs establish no facts showing that Anthropic "affirmatively" distributed or used Claude in Tennessee, their reliance on Anthropic's purported marketing and sales efforts is insufficient. *Parker*, 938 F.3d at 841.

As to Plaintiffs' allegations that "[r]esidents of Tennessee access Anthropic's AI models through [its] own website and the websites of its customers," Compl. ¶ 18, the thrust of Plaintiffs' theory seems to be that simply making an online service or application like Claude available to users across the country, including in Tennessee, is enough to create personal jurisdiction in this District.  Plaintiffs are wrong.  The Sixth Circuit holds that "[t]he level of contact with a state that occurs simply from the fact of a website's availability on the Internet is an 'attenuated' contact," insufficient to show purposeful availment.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002).  Plaintiffs therefore must show "that the defendant engaged in some sort of intended, deliberate activity with the forum state, beyond the operation of a generally accessible, interactive commercial website."  *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, 2009 WL 2823613, at *7 (M.D. Tenn. Aug. 28, 2009).  Plaintiffs cannot make that showing.  Anthropic makes Claude available to users in Tennessee and every other part of the country on the same terms, with the same content.  Kaplan Decl. ¶ 24.  Likewise, that residents of Tennessee may interact with Claude or otherwise use Anthropic's services does not alone establish "minimum contacts" in this District because Anthropic "is no more benefitting from the laws of [Tennessee] than from the laws of any other state."  *Neogen*, 282 F.3d at 890.  And any ties to Tennessee through residents who have used Anthropic's models via API-based access on third-party websites, software, products, or systems, *see* Compl. ¶ 52, are even more attenuated.

Nor can Plaintiffs assert that this Court has personal jurisdiction because Concord—the only Plaintiff residing in Tennessee—feels the harms of the alleged infringement here.  That argument fails as a matter of law, as the Sixth Circuit has acknowledged that the Supreme Court's ruling in "*Walden* forecloses [any] theory of personal jurisdiction" based solely on "where [the plaintiff] felt the effects of" the challenged conduct.  *Maxitrate Tratamento Termico E Controles*

9

*v. Super Sys., Inc.*, 617 F. App'x 406, 409 (6th Cir. 2015).  And in any event, only eight percent of the allegedly infringing works identified in the Complaint involve Concord's copyrights.  *See* Compl. ¶¶ 66-79 & Ex. A.

To the extent that Plaintiffs allege jurisdiction exists because use of Claude "require[s] a high degree of interaction between users' computers or other devices and Anthropic's AI models," *id.* ¶ 18, the interactivity of its generative AI models alone is not enough to hale Anthropic into the Middle District of Tennessee.  True, a court may exercise personal jurisdiction over an out-of-state website operator "if the website is interactive to a degree that reveals *specifically intended interaction* with residents of the state."  *Neogen*, 282 F.3d at 890 (emphasis added).  But "even a 'highly interactive' website, that is accessible from, but does not target, the forum state" is not a constitutionally sound basis for personal jurisdiction on its own.  *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (evidence that "just 20 persons who listed Illinois addresses had at some point created free . . . profiles" on dating website did "not show that [defendant] deliberately targeted or exploited the Illinois market"); *see Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021) (no personal jurisdiction over claims arising from allegedly tortious social media posts without "evidence that the defendants posted the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally"); *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005) (no personal jurisdiction over website operator where "nothing on the website specifically targets or is even directed at Ohio readers, as opposed to the residents of other states").  Plaintiffs' failure to allege with any specificity that Anthropic targeted Tennessee dooms their claim of jurisdiction based on Tennessee residents' use of the Claude interface.

Plaintiffs' allegation that jurisdiction lies because Anthropic "enabl[ed], assist[ed], and induc[ed] residents of Tennessee to commit direct infringement," Compl. ¶ 16; *see id.* ¶ 18,

10

similarly fails. This allegation wrongly contends that a court can exercise personal jurisdiction over an alleged contributory infringer (Anthropic) whenever it can exercise jurisdiction over the direct infringer (hypothetical Tennessee residents obtaining copyrighted lyrics through Claude). But the Supreme Court made clear in *Walden v. Fiore* that the key to assessing personal jurisdiction is the connections "that the defendant *himself* creates with the forum State." 571 U.S. at 284 (emphasis in original) (citation omitted). For that reason, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Thus, even for their contributory infringement claim, Plaintiffs still must establish that Anthropic *itself* engaged in conduct that both (1) creates its alleged liability for contributory infringement and (2) is connected to Tennessee. *See id.*

Simply "selling an apparatus capable of performing" the alleged infringement is not enough under this standard. *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 887 (W.D. Tenn. 2017) (quoting *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1360 (Fed. Cir. 2015)). Rather, the defendant must "kn[ow] and intend[] [that] the use of the accused products would infringe" the plaintiff's rights, for example, by including instruction manuals that tell customers how to use the product to generate infringing outputs. *Id.* Plaintiffs allege no more than that Anthropic offers Claude, a product that Plaintiffs allege generated infringing outputs— but Plaintiffs do not and cannot allege that Claude was designed or intended to do so. Plaintiffs fail to allege that Anthropic induced or encouraged users' infringement, especially since Plaintiffs do not allege *any* specific conduct by Anthropic that is connected to or directed at Tennessee.

11

For all of these reasons, the alleged contacts between Tennessee and Anthropic cannot establish specific jurisdiction. Plaintiffs have identified no particular, relevant contacts between Anthropic and this forum for these claims. Thus, this Court cannot exercise personal jurisdiction over Anthropic.

## II.    VENUE IN THE MIDDLE DISTRICT OF TENNESSEE IS IMPROPER

Venue in this District is also improper under 28 U.S.C. §§ 1391(b) and 1400(a). *See* Compl. ¶ 20. Most courts treat Section 1400 as the exclusive venue provision governing copyright infringement actions. *See, e.g.*, *Brink v. Ecologic, Inc.*, 987 F. Supp. 958, 965 (E.D. Mich. 1997) ("Venue for plaintiff's claim of copyright infringement is governed by 28 U.S.C. § 1400(a)."); *Symbolstix, LLC v. Smarty Ears, LLC*, 152 F. Supp. 3d 1027, 1036 (N.D. Ohio 2015) (similar); *Pearl Recs., Inc. v. Conner*, 2023 WL 351203, at *7 (M.D. Tenn. Jan. 20, 2023) (Crenshaw, C.J.) (analyzing whether venue was improper only under § 1400); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 n.2 (2013) (identifying § 1400 as the "proper venue for copyright and patent suits," and § 1391 as governing "'venue generally,' that is, in cases where a more specific venue provision *does not apply*." (emphasis added)). Section 1400(a) provides that copyright infringement suits "may be instituted in the district in which the defendant or his agent resides or may be found." "It is widely accepted that, for the purposes of this venue provision, a defendant is 'found'" only where "personal jurisdiction can be properly assessed against it." *Ian*, 2016 WL 8711721, at *3 (citation omitted). Because Anthropic does not "reside" in Tennessee and personal jurisdiction is lacking, *see supra* at 7-12, venue is not proper under § 1400(a).

To the extent that Section 1391's general venue provisions apply to this action, plaintiffs cannot establish that venue lies under that statute, either. 28 U.S.C. § 1391(b) provides for venue in a district (1) "in which any defendant resides," (2) where "a substantial part of the events or

12

omissions giving rise to the claim occurred," or (3) where personal jurisdiction over any defendant lies if there is no district in which the claim can otherwise be brought. As to the first prong, Anthropic is not "at home" in Tennessee. Its principal place of business is in California and it is incorporated in Delaware. Compl. ¶ 33; Kaplan Decl. ¶¶ 4-5. And while, for purposes of the venue inquiry, an entity "reside[s]" in any judicial district where it is subject to personal jurisdiction, 28 U.S.C. § 1391(c)(2), as explained above, Plaintiffs cannot establish that this Court may exercise personal jurisdiction over Anthropic here, defeating venue under § 1391(b)'s first and third prongs.

That leaves only Section 1391(b)'s second prong, which considers whether "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred" in this District. Plaintiffs' claims hinge on Anthropic's building, training, and operation of Claude, and internet users' interaction with various Claude models via Anthropic's or its customers' websites. But *Anthropic*'s alleged conduct takes place in or is coordinated from Anthropic's headquarters in California—not Tennessee. And Plaintiffs allege no unauthorized use of their works by any Claude user in Tennessee in their Complaint. *See* Kaplan Decl. ¶¶ 20-22, 23-24, 26-27.

Indeed, Plaintiffs do not allege that *any* of Anthropic's activities to develop, train, or maintain Claude occurs in Tennessee. Nor does the possibility that end users of Claude—a product available to the public nationwide—are in Tennessee, absent allegations that those Tennessee users have infringed Plaintiffs' works, suggest that the relevant "events" or "omissions" took place in this District. To the contrary, courts in this District have found that defendants' mere operation of an online platform that is generally accessible on the internet and therefore may be used here does not establish venue under § 1391(b)(2). *See, e.g., Gibson Found., Inc. v. Norris*, 2020 WL

13

1676911, at *3-4 (M.D. Tenn. Apr. 6, 2020) (Crenshaw, C.J.).  For this reason, too, venue is improper in this District.

## III.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Given Plaintiffs' dubious allegations to support personal jurisdiction and venue here—and the fact that Plaintiffs already agreed to litigate their claims in the Northern District of California— the Court may wish instead to transfer this action to the Northern District of California and thus obviate any need for the Court to contend with these issues.  Indeed, courts in this District regularly consider and decide motions to transfer venue rather than resolve thorny issues presented in a motion to dismiss for lack of personal jurisdiction or improper venue.  *See, e.g.*, *Sheet Metal Workers' Health & Welfare Fund of N.C. v. Stromberg Metal Works, Inc.*, 2021 WL 780728, at *2 (M.D. Tenn. Mar. 1, 2021) (considering and granting motion to transfer instead of ruling on motion to dismiss under Rule 12(b)(3)); *Showhomes Franchise Corp. v. LEB Sols., LLC*, 2017 WL 3674853, at *1 (M.D. Tenn. Aug. 24, 2017) (considering motion to transfer venue before motion to dismiss "[i]n the interest of judicial economy" and granting motion to transfer); *Sony/ATV Music Publ'g, LLC v. KTS Karaoke, Inc.*, 2012 WL 1267980, at *3 (M.D. Tenn. Apr. 16, 2012) (similar). Should the Court be inclined to defer ruling on Anthropic's motion to dismiss, that same approach makes sense here.

In fact, there is a particularly compelling reason why this case should be transferred to the Northern District of California, wholly apart from the lack of personal jurisdiction and improper venue issues here:  **Plaintiffs already agreed to litigate their claims there**.

As Plaintiffs admit multiple times in their preliminary injunction filings, they accessed Anthropic's website and used Claude, which bound them to the provisions in Anthropic's terms of service requiring any disputes to be resolved in a Northern California court.  *See supra* at 5.  As

14

the Supreme Court has explained, the existence of a valid forum-selection clause typically receives "controlling weight" in the transfer analysis and Plaintiffs have offered no justification for why the Court should ignore it here. *Atl. Marine*, 571 U.S. at-63-66 & n.8. Nor could they. It would be against the interest of justice if Plaintiffs could avoid their contractual obligations by continuing to litigate this case in a forum other than one in which they already contractually agreed to litigate this case.

The relevant law supports that outcome. Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Northern District of California is a proper forum for this action, and transfer to that district is in the interests of justice.

### A.      The Northern District of California the proper forum

The first question under § 1404(a) is whether the action "might have been brought" in the transferee district. This analysis asks whether subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court. *Sardeye v. Wal-Mart Stores E., L.P.*, 2019 WL 4276990, at *3 n.3 (M.D. Tenn. Sept. 10, 2019). The Northern District of California satisfies each requirement.

*First*, subject matter jurisdiction is proper in the Northern District of California, because Plaintiffs' claims arise under the Copyright Act, *see* Compl. ¶¶ 111-53, and the Northern District of California has federal-question jurisdiction over those claims, *see* 28 U.S.C. § 1331.

*Second*, venue is proper in the Northern District of California under § 1400(a), because it has personal jurisdiction over Anthropic, *see supra* at 7-12, and under each prong of § 1391(b). Under the first prong, the Northern District of California is "a judicial district in which any

15

defendant resides," 28 U.S.C. § 1391(b)(1), because Anthropic resides there, where its principal place of business in San Francisco is located. Compl. ¶ 33. This alone makes the Northern District of California an appropriate venue in which this action might have been brought. *See, e.g.*, *Sacklow v. Saks, Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (Crenshaw, C.J.) (concluding that location of defendant's "headquarters" in transferee venue satisfied "might have been brought" requirement); *Johnson v. UMG Recordings, Inc.*, 2018 WL 4111912, at *5 (M.D. Tenn. Aug. 29, 2018) ("[T]his lawsuit 'might have been brought' in the Central District of California, where UMG has its principal place of business[.]"). Venue is also proper under the third prong, because the Northern District of California would have personal jurisdiction over Anthropic. *See* 28 U.S.C. § 1391(b)(3).

As to the second prong, the Northern District of California is also "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). Plaintiffs' claims turn on Anthropic's building, training, and operation of generative AI models, and Claude's interaction with internet users via Anthropic's or its customers' websites. Each of these activities takes place in or is coordinated from Anthropic's headquarters in California—from the development of Claude, to the collection and processing of text for the corpus, to the input and training process, and maintaining of the websites and API through which users can interact with Claude. Kaplan Decl. ¶¶ 20-21, 23, 26; *see, e.g.*, Compl. ¶¶ 50-55. For this reason, too, venue is proper in the Northern District of California.

**B.     The interests of justice support transfer to the Northern District of California**

Because the Northern District of California is a proper venue, the court must determine whether the public and private interest factors favor transfer to that district. *See Tardy v. CoreCivic of Tenn., LLC*, 2023 WL 6276724, at *2 (M.D. Tenn. Sept. 26, 2023). The relevant factors include: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant

16

documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. *Means v. U.S. Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016); *see also Atl. Marine*, 571 U.S. at 62-63 & n.6 (discussing the public and private interest factors). Here, most factors support transfer to the Northern District of California—including the locus of operative facts, the location of relevant documents and evidence, and the convenience of the witnesses and the parties—and those factors outweigh Plaintiffs' choice to file in the Middle District of Tennessee.

1. **Plaintiffs already agreed to litigate this dispute in the Northern District of California**

To begin, the forum-selection clause in Anthropic's terms of service, *see supra* at 5, overwhelmingly favors transfer. "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59-60 (citation omitted). Thus, "when there is a valid and enforceable forum-selection clause . . . the plaintiff's choice of forum 'merits no weight'" and courts "treat[] the private-interest factors as 'weigh[ing] entirely in favor of the preselected forum.'" *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021) (quoting *Atl. Marine*, 571 U.S. at 63-64). To overcome this presumption in favor of the contractually-chosen forum, the plaintiff bears the burden of "show[ing] that that public-interest factors defeat" transfer—but "they rarely will." *Id.* The forum-selection clause in Anthropic's terms of service—to which Plaintiffs consented by accessing Claude through Anthropic's website—makes the Northern District of California the exclusive federal forum for claims related to the terms. *See supra* at 5. Plaintiffs do not cite any extraordinary reason to give their belated choice of this forum greater weight than their previous consent to litigate in the Northern District of California. Nor could they. It is clear that Plaintiffs

17

simply want to avoid litigating their claims in a jurisdiction where plaintiffs asserting similar claims against other technology companies have fared poorly to date. But that is not a reason to keep this case in a forum where it does not belong (particularly because, for the reasons explained below, the public interest factors also favor transfer). The contractually binding forum-selection clause thus plainly supports transfer to the Northern District of California.

### 2.    The locus of operative events for this case is the Northern District of California

The other § 1404 factors also favor transfer. Fundamentally, the purpose of a motion to transfer is to ensure that a case is heard in the location of "the 'center of gravity'" of the case. *Sacklow*, 377 F. Supp. 3d at 880. For that reason, the location of the operative events "is an 'important factor' in resolving a motion to transfer venue.'" *Id.* (citation omitted); *see also, e.g.*, *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2020 WL 4368283, at *5 (M.D. Tenn. July 30, 2020). Courts in this District have explained that litigation generally "should proceed in that place where" the operative events occurred, a factor that favors transfer when the operative events occurred elsewhere. *Oakley v. Remy Int'l, Inc.*, 2010 WL 503125, at *5 (M.D. Tenn. Feb. 5, 2010) (internal citation and quotation marks omitted). Indeed, some courts have concluded that "this principle" is "almost dispositive," so long as it is "in harmony" with due deference to the plaintiff's choice of forum—"if legally proper." *Patel v. AR Grp. Tenn., LLC*, 2021 WL 4133954, at *9 (M.D. Tenn. Sept. 10, 2021).

Here, the locus of operative facts for Plaintiffs' claims is the Northern District of California, and the Middle District of Tennessee has no material connection to this litigation. Plaintiffs' claims relate to Anthropic's building, training, and operation of Claude. As explained *supra* at 2-6, each step of this process is tied to *California*—not this District.

18

In similar circumstances, courts in this Circuit have easily concluded that transfer was appropriate. For example, in *Gray v. Duval County Public Schools*, the copyright holder for an educational textbook alleged that the public school district defendant had infringed the book by displaying it on two websites without authorization. 2014 WL 4716487, at *1 (W.D. Ky. Sept. 22, 2014). The defendant moved to transfer venue, and the court granted that motion. As relevant here, the court found it significant that "the infringement underlying [the] action occurred in Florida, where the actors initiating the alleged violation, work, reside, and presumably utilized the documents at issue." *Id.* at *3. And despite the plaintiff's allegations that he experienced injury from copyright infringement in Kentucky, the court found persuasive defendants' contention that "the case utterly lack[ed] a nexus" to that state, "making transfer of venue a common-sense solution." *Id.* at *2. So too here.

Similarly, in *Brink v. Ecologic, Inc.*, a copyright infringement case about prototype drawings of the defendant's products, the district court granted a motion to transfer after concluding that "the alleged infringing conduct occurred in Illinois." 987 F. Supp. 958, 966 (E.D. Mich. 1997). As the court explained, Illinois was the location "where [the defendant] allegedly used the drawings, where [the defendant] manufactures its products and where the greater portion of [the defendant's] sales occur." *Id.* The same could be said here. Most, if not all, of the allegedly infringing conduct took place in California, where Anthropic allegedly used Plaintiffs' copyrighted lyrics, where it develops, trains, and maintains its Claude models, and where its sales and distribution efforts are based. All of this favors the conclusion that the locus of operative facts is Anthropic's headquarters in California.

By contrast, the Complaint does not allege that *any* meaningful or material facts giving rise to Plaintiffs' claims took place in the Middle District of Tennessee. The most that Plaintiffs can

19

say about this District is that its "residents" "access Anthropic's AI models," Compl. ¶ 18, that "Anthropic knowingly and intentionally markets and supplies its services to persons in Tennessee and this District," *id.* ¶ 16, and that some Plaintiffs have minimal ties here, *id.* ¶¶ 21-32. But as with nearly all internet platforms and services, the fact that there are Claude users in Tennessee does not establish a special connection to Tennessee different from any other state. Likewise, Anthropic oversees its marketing and sales efforts from its California headquarters and does not target Tennessee differently or more intensely than any other state. *See supra* at 2-6. And Plaintiffs do not point to anything beyond the mere residence of Concord in Tennessee, a satellite office of Capitol CMG in Brentwood, a satellite office of the Universal plaintiffs' parent company in Nashville, and the fact that each plaintiff represents some artists based in Tennessee. *See* Compl. ¶¶ 21-32. Most significantly, they do not allege that any of Anthropic's, or any third party's, infringing activities actually took place in Tennessee. Nor could they.

At bottom, this case has virtually no ties to Tennessee, and extensive ties to California. Thus, this factor strongly favors transfer.

> ### 3. Transfer to the Northern District of California would provide easier, efficient, and effective access to the evidence and witnesses at the heart of this case

Courts often describe the convenience of witnesses and access to evidence as among the most important considerations when deciding a motion to transfer. *See, e.g.*, *Sacklow*, 377 F. Supp. 3d at 878; *Rajapakse v. Stevens Realty*, 2020 WL 9813451, at *2 (M.D. Tenn. June 9, 2020) (Crenshaw, C.J.). The location of documents and evidence, along with the convenience and availability of witnesses, all favor the Northern District of California.

First, access to evidence and sources of proof favors the Northern District of California. Any other relevant documents and the Claude model itself are in the Northern District, where Anthropic has its principal place of business. *See* Kaplan Decl. ¶¶ 20-21, 23, 26. This evidence

20

is relevant to Plaintiffs' claims of alleged infringement, which are explicitly based on the process of developing and training Claude using data held on Anthropic's servers in Iowa and the outputs that the Claude model, which is maintained in California, generates for users. *See id.* ¶¶ 20, 23. Such information is also likely to be relevant to Anthropic's anticipated defenses, which may include (among other things) evidence of the relatively minute use of copyrighted song lyrics to train Claude or to provide commentary or factual information in response to user prompts, quintessential "fair uses." The vast majority of this and any other evidence necessary for this case is likely to "be housed at the headquarters of [the alleged infringer]," Anthropic. *Antony v. Buena Vista Books*, 2020 WL 5995590, at \*5 (E.D. Ky. Oct. 1, 2020). While some relevant information can likely be reproduced or transferred electronically, this case involves records from complex computer systems and evaluation of AI models, "some of which may be difficult or expensive to duplicate or transfer." *Sacklow*, 377 F. Supp. 3d at 879. Because the vast majority of this evidence is located in the Northern District of California, this factor favors transfer.

Second, the convenience of witnesses favors the Northern District of California. The primary witnesses with information about Claude are likely to be Anthropic witnesses. *See, e.g.*, *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) ("Typically in a copyright infringement action, the key witnesses are those individuals who were involved in the design, production, and sale of the allegedly infringing product."). For that reason, it is more convenient for Anthropic's witnesses to testify and participate in the Northern District of California than in the Middle District of Tennessee. And because only one Plaintiff is at home in Tennessee, it is not necessarily more convenient for Plaintiffs' witnesses to litigate in the Middle District of Tennessee. Indeed, the Universal Plaintiffs and declarant are themselves located in California, likely making the Northern District of California significantly more convenient to

21

witnesses who reside there than litigation thousands of miles away in Tennessee.  *See* Compl. ¶¶ 23-28; Kokakis Decl.

Third, the availability of process to compel witness attendance also favors the Northern District of California.  As explained, most of the witnesses and documents for this case are likely to be produced by Anthropic.  To the extent that other relevant third parties, however, are located near Anthropic's headquarters in the Northern District of California, the Court would lack the subpoena power to compel their testimony in Tennessee in the event those witnesses decline to appear voluntarily.  *See, e.g.*, *Sacklow*, 377 F. Supp. 3d at 878; *see also* Fed. R. Civ. P. 45(c)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ."); *see also* Kaplan Decl. ¶ 6.

In sum, these factors—access to evidence, convenience of witnesses, and availability of process—favor transfer to the Northern District of California.

### 4.    The relative means and convenience of the parties are neutral factors

The relative means and convenience of the parties are not significant considerations here. This is not a case that involves a better-resourced defendant seeking transfer against a financially disadvantaged plaintiff.  *See, e.g.*, *Flight Sols., Inc. v. Club Air, Inc.*, 2010 WL 276094, at *4 (M.D. Tenn. Jan. 14, 2010) ("Nothing suggests that either party is unable to bear the financial burden of litigating outside of its home state, so this factor is neutral.").  There is no serious burden from a financial perspective for Plaintiffs—who are sophisticated corporations with national operations and parent companies—to litigate this case in the Northern District of California.  *See, e.g.*, *Ingram Barge Co. v. Americas Styrenics, LLC*, 2015 WL 5228154, at *6 (M.D. Tenn. Sept. 8, 2015) ("AmSty is a company with facilities throughout the United States; it has presented no evidence of undue hardship if it were forced to litigate [in this District].").  Indeed, seven of the eight

22

Plaintiffs in this case are already undertaking the financial burden of litigating far from home—the six Universal affiliates (and their declarant) are located in California, while ABKCO (and its declarant) are located in New York.  Compl. ¶¶ 24-28, 31; *see* Kokakis Decl.; Coleman Decl.

Likewise, the convenience of the parties, on balance, favors transfer (or is, at most, neutral). The Northern District of California would certainly be more convenient than the Middle District of Tennessee for Anthropic, as well as (presumably) the six Plaintiffs headquartered in California. Compl. ¶¶ 24-28.  In light of the other considerations above—the locus of operative facts and the access to evidence and witnesses—convenience does not counsel against transfer.  *See Sacklow*, 377 F. Supp. 3d at 879 (finding this factor weighed in favor of transfer where the plaintiffs did not "demonstrate that [this District] is in any way more or less convenient for any party such that transfer . . . would impermissibly shift the burden of litigating in an inconvenient forum"); *Johnson*, 2018 WL 4111912, at *6 (treating this factor as neutral where both parties argued that their chosen forum was more convenient).

### 5.     Plaintiffs' choice of forum is entitled to little weight and outweighed by other factors

On the other side of the scale is Plaintiffs' choice of this forum.  But a plaintiff's choice of forum "is entitled to less deference where the operative facts—'the site of the events from which the claim arises'—occurred elsewhere."  *Sacklow*, 377 F. Supp. 3d at 878 (citation omitted); *accord Nat'l Intergovernmental Purchasing All. Co. v. Anderson*, 2020 WL 6134995, at *3 (M.D. Tenn. Oct. 19, 2020) (same); *Doe v. Andrews*, 2016 WL 54923, at *3 (M.D. Tenn. Jan 5, 2016) (same).  As explained above, this District has no meaningful connection to this case, which has its locus of operative facts in the Northern District of California.  *See supra* at 2-6, 18-21.  Moreover, "'[w]hen a plaintiff brings it charges in a venue that is not its home forum," as is the case for seven of the eight Plaintiffs in this action, "that choice of forum is entitled to less deference.'"  *Van*

23

*Cleave v. Univ. of the S.*, 607 F. Supp. 3d 783, 789 (M.D. Tenn. 2022) (alteration in original) (citation omitted); *accord Means*, 836 F.3d at 651 (same); *Sovik v. Ducks Unlimited, Inc.*, 2011 WL 1397970, at *6 (M.D. Tenn. Apr. 13, 2011) (same); *see also* Compl. ¶¶ 21-32.  Together, these two facts—that only one of eight Plaintiffs resides here and the locus of operative facts lies elsewhere—counsel that Plaintiffs' choice of forum is entitled to little deference.  *See Lisenbee v. FedEx Corp.*, 579 F. Supp. 2d 993, 1007 (M.D. Tenn. 2008).

**CONCLUSION**

Because Anthropic has no connection to this District, and Plaintiffs agreed to litigate this dispute in the Northern District of California, the Court should dismiss or, in the alternative, transfer this case to the Northern District of California.

Dated: November 22, 2023                   Respectfully submitted,

**NEAL & HARWELL, PLC**

/s/ *Aubrey B. Harwell III*
Aubrey B. Harwell III (No. 017394)
Nathan C. Sanders (No. 033520)
Olivia Rose Arboneaux (No. 040225)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
trey@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

Joseph R. Wetzel (*admitted pro hac vice*)
Andrew M. Gass (*admitted pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
joe.wetzel@lw.com
andrew.gass@lw.com

24

Allison L. Stillman (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020-1345
Telephone: (212) 906-1200
alli.stillman@lw.com

Sarang V. Damle *(admitted pro hac vice)*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
sy.damle@lw.com

*Attorneys for Defendant Anthropic PBC*

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

COUNSEL FOR PLAINTIFFS

Steven A. Riley (No. 6258)
Tim Harvey (No. 21509)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
sriley@rjfirm.com
tharvey@rjfirm.com

Matthew J. Oppenheim
Nicholas C. Hailey
Audrey Adu-Appiah
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Richard S. Mandel
Jonathan Z. King
Richard Dannay
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street, Suite 2100
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

/s/ *Aubrey B. Harwell III*
Aubrey B. Harwell III

26