# IN THE UNITED STATES DISTRICT COURT
# THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No. 3:23-cv-01092 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair Newbern |

## JOINT STATEMENT REGARDING BRIEFING SCHEDULE

In accordance with the Court's order dated November 16, 2023, ECF No. 39, Plaintiffs Concord Music Group, Inc., Capitol CMG, Inc., Universal Music Corp., Songs of Universal, Inc., Universal Music – MGB NA LLC, Polygram Publishing, Inc., Universal Music – Z Tunes LLC, and ABKCO Music, Inc. (collectively, "Publishers") and Defendant Anthropic PBC ("Anthropic") (together, "the Parties") submit this Joint Statement regarding their proposed briefing schedules for Plaintiffs' Motion for Preliminary Injunction and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue (the "Initial Motions").

Publishers filed their Motion for Preliminary Injunction on November 16, 2023. ECF No. 40. Thereafter, Anthropic filed its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer ("Motion to Dismiss") on November 22, 2023. ECF No. 54. In the normal course, Anthropic's response to the Motion for Preliminary Injunction would be due on November 30, 2023, and Publishers' Reply would be due seven days after service of Anthropic's response. Local Rule 7.01(a)(3)-(4). Publishers' response to the Motion to Dismiss

would, in the normal course, be due on December 6, 2023, and Anthropic's reply would be due within seven days of Publishers' response. *Id.*

Over the past several weeks, counsel for the Parties conferred about briefing schedules for the two motions on numerous occasions via telephone and email. Based on these conferences, the Parties set forth their respective positions regarding their dispute about the sequencing of the Initial Motions below.

In short, the Parties disagree on whether (A) the Initial Motions should be briefed concurrently, as Publishers propose; or (B) Anthropic's Motion to Dismiss should be considered and resolved before the Parties proceed with any further briefing or litigation of the pending Motion for Preliminary Injunction, as Anthropic proposes.

If the Court resolves the Parties' threshold dispute regarding sequencing in Publishers' favor, by adopting Publishers' proposal to proceed with briefing of both motions concurrently, the Parties have agreed to the following contingent schedule for briefing both motions:

- **Publishers' Motion for Preliminary Injunction** (filed November 16, 2023)
    - January 16, 2024: Anthropic's Opposition to Publishers' Motion
    - February 14, 2024: Publishers' Reply in Support of Their Motion
- **Anthropic's Motion to Dismiss** (filed November 22, 2023)
    - January 22, 2024: Publishers' Opposition to Anthropic's Motion
    - February 14, 2024: Anthropic's Reply in Support of Its Motion

Anthropic has agreed that it will not argue that Publishers' agreement to this schedule results in an incremental delay by Publishers that impacts their ability to prove irreparable harm for purposes of their Motion for Preliminary Injunction. Anthropic reserves all rights to argue any delay by Plaintiffs prior to filing their Complaint.

If the Court adopts Anthropic's position, the Parties will confer on a schedule for briefing Anthropic's Motion to Dismiss or Transfer, and on a briefing schedule for Publishers' Motion for Preliminary Injunction if the Court denies Anthropic's motion.

## I. THE PARTIES' DISPUTE REGARDING THE CASE SCHEDULE

The Parties set forth their respective positions regarding their dispute about the sequencing of the Initial Motions below.

### A. Publishers' Position

#### 1. The Parties' Motions Should Be Briefed Concurrently

Anthropic's just-filed Motion to Dismiss will ultimately prove to be meritless, but if Anthropic has its way, the Motion will significantly delay the Court's consideration of the Publishers' first-filed Motion for Preliminary Injunction. That delay is not harmless. As set forth in Publishers' Motion for Preliminary Injunction, Anthropic is engaged in ongoing, mass infringement. Anthropic cannot deny that it copied Publishers' works on a wholesale basis or that its AI-engine Claude is distributing those works to the public in many different forms. Anthropic's effort to effectively stay consideration of Publishers' Motion for Preliminary Injunction should not be countenanced.

Publishers propose that their Motion for Preliminary Injunction and Anthropic's later-filed Motion to Dismiss be briefed in parallel. This approach will allow both issues to be heard concurrently and will avoid unfair prejudice to Publishers. Indeed, Publishers and Anthropic have already agreed to a proposed briefing schedule that provides for concurrent briefing. While longer than Publishers might have liked, that agreed-to schedule balances the Parties' respective interests.

By contrast, Anthropic cannot justify its request to stay Publishers' Motion for Preliminary Injunction for months or longer. To obtain expedited and immediate relief, Publishers filed their Motion for Preliminary Injunction as quickly as they could after filing the Complaint. It was only

3

after Publishers filed their Motion for Preliminary Injunction that Anthropic filed its Motion to Dismiss. Notwithstanding that Publishers filed their Motion first and have set forth in detail the need for expeditious relief, Anthropic seeks to effectively stay Publishers' Motion indefinitely while Anthropic's later-filed Motion to Dismiss is given first consideration. But there is no basis for Anthropic's request.

While the Court should assure itself of jurisdiction before it decides Publishers' Motion for Preliminary Injunction, that does not require delaying the Parties' briefing of that Motion. Indeed, this Court has previously rejected a similar request to stay briefing on a preliminary injunction motion pending the outcome of a motion for class certification. See *A.M.C. v. Smith*, No. 3:20-CV-00240, 2020 WL 8254266, at *1 (M.D. Tenn. Apr. 14, 2020) (Crenshaw, C. J.) ("Nor is the Court convinced that it should stay all *briefing* on Plaintiffs' motion for preliminary injunction until it decides the pending motion for class certification. The Court may very well decide to rule on the class certification issue before addressing whether injunctive relief is appropriate, or vice versa, but it cannot make that determination until the matter is fully briefed.").

Contrary to Anthropic's position, courts in this district frequently consider personal jurisdiction concurrently with motions for preliminary injunctions. See, e.g., *Ncontracts LLC. v. Holmberg*, No. 3:22-CV-00868, 2022 WL 17724148 (M.D. Tenn. Dec. 15, 2022) (resolving motion for preliminary injunction and motion to dismiss for lack of personal jurisdiction after simultaneous briefing); *Change Healthcare Operations, LLC v. Feeney*, No. 3:22-0305, 2022 WL 18640593, at *3 (M.D. Tenn. Aug. 4, 2022) (permitting both parties "to fully brief the issues regarding Plaintiff's requested preliminary injunction and Defendant's motion to dismiss" before rendering a decision on either); *Vireo Sys., Inc. v. HTG Ventures, LLC*, No. 3:14-CV-2359, 2015 WL 1893461, at *1, 5–6 (M.D. Tenn. Apr. 27, 2015) (resolving preliminary injunction motion and

motion to dismiss for lack of personal jurisdiction in single order); *Oakley v. Remy Int'l, Inc.*, 2:09-0107, 2010 WL 503125, at *1 (M.D. Tenn. Feb. 5, 2010) (resolving preliminary injunction and personal jurisdiction after simultaneous briefing). Anthropic does not distinguish or even address these cases, and it makes no attempt to explain why the approach endorsed by these courts should not be followed here.

None of the cases Anthropic cites below hold to the contrary. For example, while Anthropic relies on *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002), that decision did not address the question of whether jurisdictional issues need be resolved before a motion for preliminary injunction, and it certainly did not require that a court decide personal jurisdiction before briefing on a preliminary injunction motion could proceed. Rather, *Parsons* addressed an appeal from the district court's ruling granting a motion to dismiss for lack of personal jurisdiction (concluding that the district court had erred in granting the motion). *Id.* at 877. Likewise, the district court's decision in *AtriCure, Inc. v. Meng*, No. 1:19-CV-00054, 2020 WL 13613236 (S.D. Ohio Feb. 3, 2020) is also inapposite. There, the court merely opted to rule on the defendants' motions regarding jurisdictional issues before proceeding with a hearing on the plaintiffs' motion for preliminary injunction. *Id.* at *8. Nowhere did the court hold that briefing on a preliminary injunction motion must be stayed before a decision could be rendered on jurisdiction. Finally, that the court in *Ford Motor Co. v. Launch Tech Co.*, No. 17-12906, 2018 WL 1089276 (E.D. Mich. Feb. 26, 2018) chose to stay briefing does not prevent this Court from allowing preliminary injunction briefing to proceed, nor does Anthropic explain why the approach taken in this case—the only case Anthropic has identified taking such an approach, and one from a different district no less—must be endorsed over the practice of concurrent briefing established by the ample cases cited by Publishers above. The same is true of Anthropic's citation to *King v. Taylor*, 694 F.3d 650 (6th Cir. 2012), which

establishes only that jurisdiction is a threshold issue for the ordering of decisions, not a prescription for the parties' briefing schedule.

In short, none of the cases cited by Anthropic suggest that briefing on a first-filed Motion for Preliminary Injunction should be stayed pending a subsequently filed Motion to Dismiss. Nor do these cases prohibit the Court from allowing briefing on Publisher's Motion for Preliminary Injunction to proceed concurrently with Anthropic's Motion to Dismiss.

### 2. Staying Publishers' Motion as Anthropic Requests Would Severely Prejudice Publishers and Cause Them Further Irreparable Harm

Publishers were surprised that Anthropic chose to submit in this Joint Statement a lengthy argument addressing the merits of Publishers' Motion for Preliminary Injunction and asserting—without any basis—that Publishers do not face irreparable harm. Anthropic's complete failure in its submission to recognize the harm that results from intentional and systematic copyright infringement is consistent with Anthropic's approach to building its AI platform.

Indeed, Anthropic discounts the harm Publishers will suffer if the Court suspends briefing on the Motion for Preliminary Injunction simply by arguing that the same briefing Anthropic proposes to delay will somehow prove that Publishers suffer no irreparable harm at all. This sleight of hand misrepresents Publishers' evidentiary showing thus far and largely assumes facts that Anthropic has yet to even argue, let alone prove.

Publishers will not repeat in full the arguments already contained in their Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 41, but provide the following response to Anthropic's submission in order to ground the Court in some of the key facts. As set forth in Publishers' Memorandum of Law, Publishers face imminent and irreparable injuries unless and until Anthropic is enjoined from the blatant and wholesale infringement of Publishers' copyrighted lyrics. The injuries that Publishers identified in support of their Motion

include loss of control over their intellectual property, loss of credit and associated goodwill, reputational harm, price erosion, harm to the current and potential licensing markets for the Works, and irreparable damage to Publishers' relationships with songwriters and legitimate licensees. *See* ECF No. 41 at 22–28. Anthropic mischaracterizes these injuries as solely related to Anthropic's infringing outputs. But if Publishers cannot control the use of their intellectual property, guarantee the exclusivity of their licenses, or protect their songwriters from unauthorized uses of their compositions, whether as the input used to train Claude or as the output generated by Claude, Publishers will suffer irreversible damage to their business and reputations. *See, e.g.*, *id.* at 23 (explaining that unlicensed use "both in training material and in infringing responses . . . irreparably harms Publishers and songwriters"); *id.* at 26 (describing market harm from Anthropic's exploitation of the Works "as training data and in Claude's response"); *id.* at 27–28 (addressing harm to "relationships with current and prospective songwriter-partners" from "Anthropic's exploitation of the Works as training data and in Claude's responses").

Anthropic's proposed stay of Publishers' Motion for Preliminary Injunction would allow Anthropic to drag out the briefing process almost indefinitely, all while continuing to infringe Publishers' copyrighted lyrics and causing Publishers ongoing irreparable harm.[1]

---

[1] Anthropic claims—inaccurately—that Plaintiffs' counsel "refused to provide [] information" regarding Publishers' full catalog of works. Although the law does not require a copyright owner to provide lists of works to parties to indicate what not to infringe, Publishers have nevertheless directed Anthropic to the Mechanical Licensing Collective's ("MLC") publicly available, searchable database of compositions owned by Publishers and others, and Publishers have also made clear that they are willing provide Anthropic a list of their full catalogs of works, which they intend to do shortly. Thus, Anthropic's claim that Publishers have "tried to hinder Anthropic's efforts" to install guardrails by failing to provide such information is false.

### 3.     **Anthropic's Claims of Prejudice Are Overblown**

The only conceivable prejudice to Anthropic from the concurrent briefing that Publishers propose is the inconvenience and expense of the lawyers, which, in the context of this dispute, are minor. In any event, those inconveniences are clearly outweighed by the harm to Publishers of delaying resolution of their Motion for Preliminary Injunction.

While Anthropic contends that it would be wasteful for the Court even to allow briefing on the preliminary injunction because it is "clear" that Anthropic will prevail on its Motion to Dismiss, Publishers could not disagree more. Anthropic is plainly subject to the Court's personal jurisdiction in light of its ample contacts to Tennessee, including, among other things, Anthropic's provision of its AI model, Claude, to Tennessee residents through its highly interactive website. Indeed, courts both in the Sixth Circuit and elsewhere have frequently found the exercise of personal jurisdiction appropriate where parties purposefully availed themselves of the forum state through their website contacts. *See, e.g., Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 890 (6th Cir. 2002) (defendant's choice to provide user passwords and welcome the business of forum state residents on its interactive website satisfied purposeful availment); *Word Music, LLC v. Priddis Music, Inc.*, No. 3:07CV0502, 2007 WL 3231835, at *7 (M.D. Tenn. Oct. 30, 2007) (defendant purposefully availed itself of the forum by making infringing products available to Tennessee residents through its interactive website and actively soliciting additional purchases). The law clearly provides that "[t]he operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Parsons*, 289 F.3d at 874 (citing *Neogen,* 282 F.3d at 890). As Publishers are prepared to demonstrate in subsequent briefing, Anthropic's conduct and contacts with Tennessee residents clearly establish personal jurisdiction.

Of course, this is not the place to argue the merits of a Motion to Dismiss filed less than a week ago. What's more, Anthropic cannot simply assume that it will prevail on its Motion to Dismiss as the basis for putting off briefing Publishers' first-filed Motion for Preliminary Injunction.

Likewise, although Anthropic asserts it will be "prejudiced" if it must contend with Publishers' "fact- and expert-intensive arguments" on irreparable harm, much of the information necessary to respond to these arguments is already in Anthropic's control, and Anthropic identifies no specific harm beyond the effort inherent in responding to a motion. Given that Anthropic is a company valued at more than $5 billion, the expense of such concurrent briefing should not be dispositive, particularly in light of the imminent and ongoing harm suffered by Publishers.

Moreover, Anthropic is wrong that "the only way to avoid the risk of wasting the Court's and Parties' time and resources is to resolve Anthropic's motion first." Requiring the Parties to brief the motions simultaneously neither prejudices Anthropic nor wastes judicial resources, because the Court retains its inherent power to manage its docket. By contrast, Anthropic's proposed schedule—that they be allowed 60 days following the Court's ruling finding personal jurisdiction to oppose the Motion for Preliminary Injunction, or, even worse, that the parties not even meet and confer to begin discussing a potential schedule until after such a ruling—unnecessarily denies the Court flexibility. "The Court may very well decide to rule" on personal jurisdiction before or simultaneously with a decision on preliminary injunctive relief, but the Court "cannot make that determination until the matter is fully briefed." *See A.M.C.*, 2020 WL 8254266, at *1 (Crenshaw, J.) (declining to "stay all *briefing* on Plaintiffs' motion for preliminary injunction until it decides the pending motion for class certification" where the parties offered conflicting case law on the proper sequence of decision). Anthropic's insistence on a protracted briefing

9

schedule would only serve to unnecessarily delay the proceedings and further compound the irreparable harm caused to Publishers from Anthropic's ongoing infringement.[2]

### B.     Anthropic's Position[3]

Anthropic's position is that any further briefing, litigation, or development of evidence relating to Plaintiffs' motion for a preliminary injunction should proceed only after the Parties fully brief, and the Court rules on, Anthropic's pending motion to dismiss or transfer venue. Whether the Court has or retains jurisdiction over this case is a prerequisite to adjudicating Plaintiffs' motion. Once the Court resolves those threshold issues, if the case remains in this Court, the Parties can promptly confer regarding an appropriate schedule for litigating the preliminary injunction motion in the appropriate venue.

If the Court determines that it does not have personal jurisdiction over Anthropic, or that the Middle District of Tennessee is an improper venue, then it cannot grant the relief sought by Plaintiffs' preliminary injunction motion.  So the only way to avoid the risk of wasting the Court's and Parties' time and resources is to resolve Anthropic's motion first.  That is why courts routinely decide questions of jurisdiction and venue before reaching questions relating to the merits of a case.  *See, e.g.*, *Bird v. Parsons*, 289 F.3d 865, 872–73 (6th Cir. 2002) (courts must first determine

---

[2] In the event the Court allows Anthropic to brief its Motion to Dismiss first, then the briefing on Publishers' Motion for Preliminary Injunction should be expedited significantly. Specifically, Anthropic should be required to file its Opposition to the Motion for Preliminary Injunction within three days of the Court's ruling finding personal jurisdiction, since Anthropic will already have had potentially months to prepare that brief during the pendency of its Motion to Dismiss.

[3] Plaintiffs provided their draft position statement to Anthropic this morning.  Upon receiving Anthropic's position statement in exchange, Plaintiffs undertook to rewrite their statement in response.  Anthropic did not have a meaningful opportunity to review Plaintiffs' new position statement or make any similar revisions to its position statement in response and would appreciate an opportunity to respond to Plaintiffs' position statement at the start of the November 29, 2023 scheduling conference.

whether personal jurisdiction exists before proceeding to the merits of a case) (internal citations omitted); *Ford Motor Co. v. Launch Tech Co.*, 2018 WL 1089276, at *21 (E.D. Mich. Feb. 26, 2018) (holding plaintiff's motion for preliminary injunction in abeyance pending resolution of personal jurisdiction issue); *see also AtriCure, Inc. v. Meng*, 2020 WL 13613236, at *8 (S.D. Ohio Feb. 3, 2020) ("Jurisdictional issues should be addressed before proceeding with a decision on a motion for preliminary injunction."), *aff'd*, 842 F. App'x 974 (6th Cir. 2021).

### 1. Anthropic's motion to dismiss may dispose of Plaintiffs' motion in this Court

This case highlights why this principle exists. Plaintiffs' claims do not belong in the Middle District of Tennessee—a jurisdiction with no connection whatsoever to the conduct alleged in the Complaint. *See* ECF No. 55 at 14–21. They belong instead in the Northern District of California in San Francisco—where Anthropic is based and Plaintiffs assented to jurisdiction and venue for their claims. *Id.* at 12, 20–31. Anthropic has no relevant connection to the state of Tennessee. It did not develop its generative AI model in Tennessee, but rather directed those operations from its headquarters in California. *Id.* at 9–12. And there is no allegation that any of the allegedly infringing "outputs" of Anthropic's service were made, received, or displayed in Tennessee. *Id.* at 1. For these reasons—and for those set forth in Anthropic's motion to dismiss or transfer venue—the Court lacks personal jurisdiction over Anthropic, and the Middle District of Tennessee is not the proper venue for this case.

Anthropic's motion thus could foreclose Plaintiff's preliminary injunction request in this Court altogether, because it is well-settled in this Circuit that courts cannot enjoin or adjudicate issues relating to parties over whom there is no personal jurisdiction. *Cf. King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (noting that "in the absence of personal jurisdiction, a federal court is 'powerless to proceed to an adjudication.'") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

11

574, 584 (1999)). It would be inefficient for the parties to litigate the complex factual issues raised by Plaintiffs' preliminary injunction motion (discussed below), only for the Court to determine that Plaintiffs' motion is not properly before it at all.

### 2. Concurrent briefing will highly prejudice Anthropic

Moreover, Anthropic will be highly prejudiced if it is forced to respond to Plaintiffs' summary-judgment style submission before the Court resolves Anthropic's motion to dismiss.[4] Plaintiffs supported their preliminary injunction motion with ten declarations (including three by experts) and 32 exhibits spanning thousands of pages. Among other things, Plaintiffs have produced evidence which, they argue, proves (i) how Anthropic's AI model functions and makes use of Plaintiffs' works, *see* ECF No. 41 at 17–18; (ii) the relevant purposes of Anthropic's model, *see id.* at 20–23; (iii) how Plaintiffs currently license their works and intend to do so moving forward in an alleged "burgeoning market" for licensing AI training input, *see id.* at 26–28; (iv) how other third parties have allegedly licensed their works to AI companies in this so-called "burgeoning market," *id.* at 28 (citing Decl. of Michael D. Smith ¶ 28, ECF No. 52); and (v) the harms that Plaintiffs allege they will suffer if the Court does not enjoin Anthropic from using Plaintiffs' works to train the next version of its model, *id.* at 28–29.

Plaintiffs' fact- and expert-intensive arguments on these issues are wrong. But to adequately rebut them, Anthropic will need to expend an enormous amount of time and resources.[5]

---

[4] In contrast, Anthropic's motion to dismiss or transfer, filed on November 22, is far more straightforward and could be fully briefed on a far more expedited schedule than that proposed above.

[5] This is particularly true because Plaintiffs' factual allegations and "evidence" all relate to a relatively new and undeniably important question of law that has only recently begun to be litigated in copyright cases involving generative AI: namely, whether an AI company's inclusion of

12

Case 3:23-cv-01092   Document 56   Filed 11/27/23   Page 12 of 19 PageID #: 2874

For instance, Anthropic will need to examine Plaintiffs' declarants and other potential witnesses—including potential third parties whom Plaintiffs suggest have engaged in an alleged licensing market for training—and obtain supporting evidence to dispute Plaintiffs' claims. As another example, Anthropic will need to consult its own employees and analyze its own data and technological processes to rebut Plaintiffs' contentions regarding Claude's purposes, operations, and use of Plaintiffs' works. And, perhaps most critically, Anthropic will need to develop and rely upon expert economic analysis to assess the existence (and feasibility) of any relevant "market" for licensing works used in training generative AI, and the effect (if any) that Anthropic's use of Plaintiffs' works to train its model would have on that hypothetical market. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 213–15 (2d Cir. 2015) (discussing considerations relevant to the fair use defense).

Given the complexity of these issues—and the resources required to develop a full factual record for the Court to reach a determination on the merits—it makes no sense for the Parties to proceed with briefing Plaintiffs' preliminary injunction motion now, when Sixth Circuit

---

rightsholders' works in a vast body of data known as the "corpus," which is thereafter broken down into trillions of "tokens" used to "train" a generative AI model to understand the nature of language and produce and predict new, original content, is a "fair use" of copyrighted works that does not violate the law. To date, the only court to consider whether an AI company's inclusion of rightsholders' works in a corpus to "train" an AI model constitutes copyright infringement has suggested that this conduct is a paradigmatic fair use that does not violate the copyright laws. *See Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 2023 WL 6210901, at *6–11 (D. Del. Sept. 25, 2023) (determining that defendant's fair use defense survived plaintiff's motion for summary judgment and must go to the jury). But subsequent decisions on this "fair use" question likewise will have significant consequences for the burgeoning field of artificial intelligence. This makes it all the more critical that the Court consider Plaintiffs' preliminary injunction motion only after it determines whether it has the power to adjudicate that question at all.

13

jurisprudence on personal jurisdiction and venue make clear that Anthropic should not be required to litigate Plaintiffs' claims in the Middle District of Tennessee at all.[6]

### 3. Sequencing the motions to decide Anthropic's first will not prejudice Plaintiffs

Plaintiffs, however, argue that they will be prejudiced by any "delay" in litigating their preliminary injunction motion because they have alleged that, absent a preliminary injunction and immediate relief from the Court, Anthropic's actions will cause them "irreparable harm." This is wrong. Anthropic will address Plaintiffs' "irreparable harm" arguments in full at the appropriate time. But, if this Court is inclined to consider those arguments for purposes of deciding how to sequence the Parties' Initial Motions, some context is important.

For background purposes, Plaintiffs' preliminary injunction motion seeks two forms of relief from the Court: (1) an order forcing Anthropic to "implement effective guardrails that prevent its current AI models from generating *output*" that contains Plaintiffs' copyrighted works, and (2) an order that forbids Anthropic from using Plaintiffs' works to *train* future versions of its AI model. ECF No. 41 at 8. The first concerns a user's alleged ability to receive the text of Plaintiffs' copyrighted works in response to a "prompt" or query. The second concerns whether

---

[6] In their preliminary injunction motion, Plaintiffs have also argued that, under Sixth Circuit law, they are entitled to a presumption of irreparable harm if they can demonstrate a likelihood of success on the merits of their copyright claim. ECF No. 41 at 22 n.7. Plaintiffs are wrong about this, but if they are right, it means that the Sixth Circuit applies a different legal standard than the Ninth Circuit on a critical element of the preliminary injunction analysis. *See generally Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 540 n.3 (6th Cir. 2020) (observing that "the Ninth Circuit has since done away with the presumption, finding it inconsistent with modern Supreme Court caselaw regarding injunctions."). *See Flexible Lifeline Sys, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 990 (9th Cir. 2011) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008), and *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006))). The Court should determine where this case should be litigated *first,* so that the parties know which legal standard applies to the Plaintiffs' preliminary injunction motion and can proceed accordingly.

14

Anthropic may use alleged copies of Plaintiffs' works—*without making those copies accessible to the public*—as some of the trillions of pieces of textual data that its model uses to derive or learn the facts, statistical correlations, and context that enable it to interact with users in a way that resembles human cognition.

Plaintiffs present no relevant evidence about how they will be "irreparably harmed" without the second type of relief, relating to *training*. And with respect to Plaintiffs' other requested relief—enhanced guardrails that prevent Anthropic's AI model from producing certain kinds of "*outputs*"—Plaintiffs' only evidence of alleged harm is the direct result of Plaintiffs' own use of Anthropic's product to generate allegedly infringing "outputs." On this showing, sequencing the motions as Anthropic proposes will not prejudice Plaintiffs.

Specifically, Plaintiffs have alleged that Anthropic's AI model, Claude, improperly responded to user prompts with "outputs" containing copyrighted material from Plaintiffs' works. But actually, it was ***Plaintiffs themselves***—and their employees, agents, and attorneys—who went onto Anthropic's website and entered the unique prompts that allegedly returned the "outputs" Plaintiffs now complain about. That is neither a copyright law violation nor any conduct that could cause Plaintiffs themselves any harm. Tellingly, Plaintiffs do not allege that anyone other than themselves ever "prompted" Claude into producing outputs that are substantially similar to Plaintiffs' copyrighted works. Indeed, Anthropic believes no such outputs naturally occurred before Plaintiffs filed their Complaint. Nor would there be any reason for any typical user to use

Anthropic's model in that way: the full lyrics to Plaintiffs' works are freely available on a variety of other licensed or unlicensed websites to anyone with an internet connection.[7]

Plaintiffs also will not be prejudiced by sequencing—nor will sequencing compound any alleged "irreparable harm"—for another reason: Anthropic already offered to give Plaintiffs the primary relief they are asking for in their preliminary injunction motion, relating to Anthropic's "outputs." Specifically, Anthropic told Plaintiffs that it was working to construct technological barriers to prevent Claude from generating outputs that contain the works in suit, even if a user were to input the same prompts that Plaintiffs designed to elicit copies of Plaintiffs' works. The Parties' counsel corresponded extensively about this topic well before the filing of Plaintiffs' motion.[8] Given these additional efforts from Anthropic, the Court can safely sequence the Parties' Initial Motions to ensure that the case is in the right court before requiring the Parties and the Court to litigate Plaintiffs' preliminary injunction request. Doing so will not prejudice Plaintiffs under the circumstances.

---

[7] Even if other users *did* prompt Claude to produce infringing outputs, money damages could fully compensate Plaintiffs for that purported "harm", meaning that Plaintiffs are not entitled to injunctive relief. Courts in copyright cases routinely deny preliminary injunctions for exactly that reason: plaintiffs cannot establish "irreparable harm" for copyright infringement that can easily be addressed through money damages. *See, e.g.*, *Tailgate Beer, LLC v. Boulevard Brewing Co.*, 2019 WL 5208186, at *15 (M.D. Tenn. Oct. 16, 2019) (finding no irreparable harm where, among other things, plaintiff could be "made whole via eventual monetary damages"); *Hoge v. Schmalfeldt*, 2014 WL 3052489, at *16 (D. Md. July 1, 2014) (finding no irreparable harm where monetary damages would provide sufficient remedy); *cf. IBM Corp. v. BGC Partners, Inc.*, 2010 WL 1924715, at *1 (S.D.N.Y. May 12, 2010) (rejecting claim of irreparable harm where alleged infringement was fully compensable through monetary damages).

[8] Plaintiffs have, if anything, tried to hinder Anthropic's efforts. Specifically, Anthropic asked Plaintiffs for information regarding Plaintiffs' full catalog of works (including works that are not the subject of this lawsuit), which would help Anthropic build the "enhanced guardrails" that Plaintiffs want and would speed up Anthropic's process. But Plaintiffs' counsel refused to provide that information. Anthropic's process is underway nevertheless and will be complete in short order.

16

Anthropic thus respectfully requests that the Court reserve all remaining briefing on Plaintiffs' preliminary injunction motion until the Court has resolved Anthropic's motion to dismiss or transfer venue. If the Court denies any or all parts of its motion, Anthropic proposes that the parties promptly confer regarding an appropriate briefing schedule for Plaintiffs' preliminary injunction motion and submit that revised schedule to the Court. In the alternative, Anthropic proposes that it will submit any opposition to Plaintiffs' motion no later than 60 days from an order by this Court denying Anthropic's motion to dismiss or transfer venue.

\* \* \*

Despite this dispute, in the spirit of cooperation and to ensure both Parties are fully prepared to engage with the Court on all issues during the November 29 conference, the Parties have conferred and agreed on what an appropriate schedule would be if the Court directs the Parties to litigate both motions concurrently.

Dated: November 27, 2023

/s/ Aubrey B. Harwell III w/permission
Aubrey B. Harwell III (No. 017394)
Nathan C. Sanders (No. 33520)
Olivia R. Arboneaux (No. 40225)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: 615.244.1713
tharwell@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

Joseph R. Wetzel
Andrew M. Gass
(admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000

Respectfully submitted,

/s/ Steven A. Riley
Steven A. Riley (No. 6258)
Tim Harvey (No. 21509)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
sriley@rjfirm.com
tharvey@rjfirm.com

Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016

17

San Francisco, CA 94111
Telephone: 415.391.0600
joe.wetzel@lw.com
andrew.gass@lw.com

Allison L. Stillman
(admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864
alli.stillman@lw.com

Sarang V. Damle
(admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
sy.damle@lw.com

*Attorneys for Defendant*

Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

Richard S. Mandel
Jonathan Z. King
Richard Dannay
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Aubrey B. Harwell III (No. 017394)<br>Nathan C. Sanders (No. 33520)<br>Olivia R. Arboneaux (No. 40225)<br>NEAL & HARWELL, PLC<br>1201 Demonbreun Street, Suite 1000<br>Nashville, TN 37203<br>tharwell@nealharwell.com<br>nsanders@nealharwell.com<br>oarboneaux@nealharwell.com | Joseph R. Wetzel<br>Andrew M. Gass<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>joe.wetzel@lw.com<br>andrew.gass@lw.com |
| Allison L. Stillman<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>alli.stillman@lw.com | Sarang V. Damle<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>sy.damle@lw.com |

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Steven A. Riley*