**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | |
| Plaintiffs, | Case No. 3:23-cv-01092 |
| v. | |
| ANTHROPIC PBC, | Chief Judge Waverly D. Crenshaw, Jr. |
| Defendant. | Magistrate Judge Alistair Newbern |

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

COUNTERSTATEMENT OF FACTS ................................................................................ 2

    I.   Anthropic provides its AI models to Tennessee users. ................................................ 2

    II.  Anthropic trained Claude to serve Tennessee users. ................................................. 2

    III. Anthropic has multiple Tennessee-based employees. ............................................... 3

    IV. Anthropic has businesses relationships with Claude subscribers in Tennessee. ............... 4

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

    I.   This Court has personal jurisdiction over Anthropic. ............................................... 6

        A.  Anthropic purposefully avails itself of Tennessee. ............................................ 7

            1.  Anthropic conducts business through Tennessee-based employees. ................. 7

            2.  Anthropic maintains contractual relationships with Tennessee businesses. ........... 8

            3.  Anthropic reaches into Tennessee through its highly interactive website. ............ 9

            4.  Anthropic infringes Publishers' works in Tennessee. ............................................ 12

        B.  Publishers' cause of action arises from Anthropic's contacts with Tennessee. .......... 14

        C.  This Court's exercise of personal jurisdiction is reasonable. ..................................... 15

    II.  Venue in the Middle District of Tennessee is proper. ....................................... 16

    III. There is no basis for transferring this case to the Northern District of California. ........... 17

        A.  Anthropic's Terms of Service agreement does not mandate transfer. ...................... 18

        B.  The locus of operative events does not favor transfer. ................................................ 22

        C.  Transfer would not improve access to evidence or convenience for witnesses. ......... 22

        D.  Transfer would inconvenience the parties. ................................................................ 24

        E.  Publishers' choice of forum is entitled to deference. ................................................. 25

CONCLUSION ................................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
   503 F.3d 544 (6th Cir. 2007) ........................................................................ 5, 14, 15

*Alticor, Inc. v. Nat'l Union Fire Ins. Co.*,
   411 F.3d 669 (6th Cir. 2005) ........................................................................ 20

*Arista Recs. LLC v. Lime Grp. LLC*,
   2011 WL 1641978 (S.D.N.Y. Apr. 29, 2011) ........................................................ 13

*Azarm v. $1.00 Stores Servs., Inc.*,
   2009 WL 1588668 (M.D. Tenn. June 5, 2009) ........................................................ 23

*B.E. Tech., LLC v. Facebook, Inc.*,
   957 F.Supp.2d 926 (W.D. Tenn. 2013) ............................................................ 24

*be2 LLC v. Ivanov*,
   642 F.3d 555 (7th Cir. 2011) ...................................................................... 12

*Beydoun v. Wataniya Rests Holding, Q.S.C.*,
   768 F.3d 499 (6th Cir. 2014) ...................................................................... 14

*Bird v. Parsons*,
   289 F.3d 865 (6th Cir. 2002) ................................................................ 14, 15, 16

*Blessing v. Chandrasekhar*,
   988 F.3d 889 (6th Cir. 2021) ...................................................................... 11

*Boling v. Prospect Funding Holdings, LLC*,
   771 F. App'x 562 (6th Cir. 2019) ................................................................ 21

*Bridgeport Music v. Agarita Music*,
   182 F.Supp.2d 653 (M.D. Tenn. 2002) ............................................................ 17

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................... 8, 10, 11

*Cadle Co. v. Schlichtmann*,
   123 F. App'x. 675 (6th Cir. 2005) ................................................................ 11

*Calder v. Jones*,
   465 U.S. 783 (1984) .............................................................................. 11

*Calphalon Corp. v. Rowlette*,
   228 F.3d 718 (6th Cir. 2000) ...................................................................... 7, 11

*Capitol Recs., Inc. v. Thomas*,
   579 F.Supp.2d 1210 (D. Minn. 2008) .............................................................. 13

*Carrier Corp. v. Outokumpu Oyj*,
   673 F.3d 430 (6th Cir. 2012) ...................................................................... 7

*Castro v. Fire Door Sols., LLC*,
   542 F.Supp.3d 771 (M.D. Tenn. 2021) .......................................................... 19, 21

*Cole v. Mileti*,
    133 F.3d 433 (6th Cir. 1998) ................................................................................. 8

*CompuServe, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) ........................................................................... 5, 14

*Corcovado Music Corp. v. Hollis Music, Inc.*,
    981 F.2d 679 (2d Cir. 1993) .................................................................................. 20

*Curry v. Revolution Lab'ys, LLC*,
    949 F.3d 385 (7th Cir. 2020) ................................................................................. 12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................................ 6

*Eight Mile Style, LLC v. Spotify USA Inc.*,
    2020 WL 1640425 (M.D. Tenn. Apr. 2, 2020) ................................................ 17, 24

*Feild v. Graffagnino*,
    514 F.Supp.2d 1036 (W.D. Tenn. 2007) ................................................................ 7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) .......................................................................................... 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ................................................................................................ 6

*Gray v. Duval Cnty. Pub. Schs.*,
    2014 WL 4716487 (W.D. Ky. Sept. 22, 2014) ..................................................... 22

*Heffernan v. Ethicon Endo-Surgery Inc.*,
    828 F.3d 488 (6th Cir. 2016) ................................................................................. 18

*Inc. v. Imago Eyewear Pty, Ltd.*,
    167 F. App'x 518 (6th Cir. 2006) ........................................................................... 9

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................ 6, 7

*Johnson v. Griffin*,
    85 F.4th 429 (6th Cir. 2023) ................................................................................... 6

*Lakeside Surfaces, Inc. v. Cambria Co.*,
    16 F.4th 209 (6th Cir. 2021) ................................................................................. 19

*Light v. Taylor*,
    317 F. App'x 82 (2d Cir. 2009) ............................................................................. 20

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    2014 WL 4352533 (E.D. Tex. Sept. 2, 2014) ................................................. 20, 21

*MAG IAS Holdings, Inc. v. Schmückle*,
    854 F.3d 894 (6th Cir. 2017) ......................................................................... 5, 7, 14

*Mayer v. gpac LLP*,
    2023 WL 3690235 (M.D. Tenn. May 26, 2023) ................................................... 18

*McFadgon v. Fresh Mkt., Inc.*,
    2005 WL 3879037 (W.D. Tenn. Oct. 21, 2005) ................................................... 18

*Moore v. Rohm & Haas Co.*,
   446 F.3d 643 (6th Cir. 2006) ................................................................. 18

*Moses v. Bus. Card Exp., Inc.*,
   929 F.2d 1131 (6th Cir. 1991) ............................................................... 18

*NBA Props., Inc. v. HANWJH*,
   46 F.4th 614 (7th Cir. 2022) ................................................................. 12

*Neal v. Janssen*,
   270 F.3d 328 (6th Cir. 2001) ........................................................ 6, 7, 12

*Neogen Corp. v. Neo Gen Screening, Inc.*,
   282 F.3d 883 (6th Cir. 2002) .................................................. 7, 9, 10, 15

*Oakley v. Remy Int'l, Inc.*,
   2010 WL 503125 (M.D. Tenn. Feb. 5, 2010) ........................................ 22

*Olan Mills, Inc. v. Linn Photo Co.*,
   23 F.3d 1345 (8th Cir. 1994) ................................................................. 13

*Pearl Recs., Inc. v. Conner*,
   2023 WL 351203 (M.D. Tenn. Jan. 20, 2023) ......................................... 7

*Perry Street Software, Inc. v. Jedi Techs., Inc.*,
   2020 WL 6064158 (S.D.N.Y. Oct. 14, 2020) ........................................ 21

*Reese v. CNH Am. LLC*,
   574 F.3d 315 (6th Cir. 2009) ................................................................. 18

*SFS Check, LLC v. First Bank of Del.*,
   774 F.3d 351 (6th Cir. 2014) ................................................................... 7

*Smith v. Kyphon, Inc.*,
   578 F.Supp.2d 954 (M.D. Tenn. 2008) ........................................... 18, 25

*Sony/ATV Music Publ'g LLC v. CAVS USA, Inc.*,
   2009 WL 2177110 (M.D. Tenn. July 21, 2009) .................................... 15

*Southern Mach. Co. v. Mohasco Indus.*,
   401 F.2d 374 (6th Cir. 1968) ................................................................... 6

*Stewart Org., Inc. v. RICOH Corp.*,
   487 U.S. 22 (1988) ................................................................................ 18

*Stewart v. Am. Eagle Airlines, Inc.*,
   2010 WL 4537039 (M.D. Tenn. Nov. 3, 2010) ..................................... 18

*Sullivan v. LG Chem, Ltd.*,
   79 F.4th 651 (6th Cir. 2023) ................................................................. 13

*Susan McKnight, Inc. v. United Indus. Corp.*,
   273 F.Supp.3d 874 (W.D. Tenn. 2017) ................................................. 16

*TailGate Beer LLC v. Boulevard Brewing Co.*,
   2019 WL 2366948 (M.D. Tenn. June 5, 2019) ..................................... 16

*Taylor v. CoreCivic of Tenn., LLC*,
   2023 WL 2390673 (M.D. Tenn. March 6, 2023) ............................. 18, 25

iv

*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir. 1991) ....................................................... 5

*Traton News, LLC v. Traton Corp.*,
  528 F. App'x 525 (6th Cir. 2013) ........................................... 19, 20

*Tritt v. Category 5 Recs., LLC*,
  570 F.Supp.2d 977 (M.D. Tenn. 2008) ...................................... 19

*U2 Home Ent., Inc. v. Fu Shun Wang*,
  482 F.Supp.2d 314 (E.D.N.Y. 2007) ......................................... 13

*Unidisc Music, Inc. v Antibemusic S.r.l.*,
  2014 WL 2573974, (M.D. Tenn. June 9, 2014) ......................... 12

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) .................................................................... 18

*VS Techs., LLC v. Twitter, Inc.*,
  2011 WL 11074291 (E.D. Va. June 28, 2011) .......................... 20

*Word Music, LLC v. Priddis Music, Inc.*,
  2007 WL 3231835 (M.D. Tenn. Oct. 30, 2007) ................... 13, 16

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997) ........................................ 9, 10

## STATUTES

28 U.S.C. § 1391(b) ............................................................................ 17

28 U.S.C. § 1400(a) ............................................................................ 17

Fed. R. Civ. P. 4(k)(1)(A) ..................................................................... 6

Tenn. Code Ann. § 20-2-223(a) ............................................................ 6

Tenn. Code Ann. §§ 20-2-214(a)–(b) .................................................... 6

## OTHER AUTHORITIES

*Tennessee First in the Nation to Address AI Impact on Music Industry*, TENNESSEE OFFICE OF
  THE GOVERNOR (Jan. 10, 2024, 2:40 pm). ................................ 25

v

## INTRODUCTION

Anthropic PBC ("Anthropic" or "Defendant") is a multibillion-dollar artificial intelligence ("AI") company that systematically ingests copyrighted works from all corners of the internet to train its AI models, deliberately pursues customers nationwide, and unlawfully distributes infringing works through its AI products to users across the country. Yet, despite the nationwide scope of its business and reach of its infringement, Anthropic claims that it is subject to jurisdiction only in its Silicon Valley backyard. That is plainly wrong.

Under well-established law, Anthropic is subject to specific personal jurisdiction in the Middle District of Tennessee. Anthropic offers its Claude AI models to Tennessee users through its highly interactive website. Indeed, it is difficult to imagine a website more interactive than Anthropic's, which hosts AI models that engage in sophisticated, human-like conversations with Tennessee users. Through this website, Anthropic reproduces, distributes, and displays infringing copies of Plaintiffs'[1] copyrighted works. Controlling law makes clear that operating such a website more than suffices to establish personal jurisdiction.

What's more, Anthropic has other deep ties to Tennessee and extensive activities in this state, which further support personal jurisdiction. Anthropic maintains key employees in Tennessee, enters long-term agreements to provide its AI services to Tennessee businesses, and licenses its Claude AI models to individual paid subscribers in Tennessee. In short, Anthropic both spends and makes money in Tennessee. It has chosen to participate in the Tennessee economy. Given these contacts, venue is also proper in the Middle District of Tennessee. Accordingly, Anthropic's motion to dismiss should be denied.

---

[1] Plaintiffs (collectively, "Publishers") are Concord Music Group, Inc. ("Concord"); Capitol CMG, Inc. ("CCMG"), Universal Music Corp., Songs of Universal, Inc., Universal Music – MGB NA LLC, Polygram Publishing, Inc., Universal Music – Z Tunes LLC (together with CCMG, "UMPG"); and ABKCO Music, Inc ("ABKCO").

1

Anthropic's alternative request to transfer this litigation to the Northern District of California is similarly baseless. Anthropic may not wish to be held accountable in Nashville, but it cannot show that the Middle District of Tennessee is an improper forum. Transfer would unfairly shift certain burdens of litigation to Publishers, needlessly inconvenience witnesses, deny Publishers their reasonable choice of forum, and undermine the local interest in deciding this controversy. The Court should deny Anthropic's motion in its entirety.

## <u>COUNTERSTATEMENT OF FACTS</u>

### I.    Anthropic provides its AI models to Tennessee users.

Anthropic is an $18.4-billion company that creates, operates, markets, and sells access to a series of generative AI models called "Claude." Decl. of Timothy Chung ("Chung Decl."), Ex. A. Anthropic invites users to "[t]alk to Claude" through an interactive chatbot interface available at its website, https://claude.ai. *Id.*, Ex. B. Anthropic explicitly offers Claude's services to users throughout the United States, including users in Tennessee. *Id.*, Ex. C. Though Anthropic's websites, anthropic.com and claude.ai, are publicly available, Anthropic does not provide unfettered access to Claude. Instead, Anthropic requires all who seek to use Claude or its subscription-based counterpart, Claude Pro, to create accounts by providing their names, email addresses, and phone numbers and entering a login code that Anthropic emails to the user. *Id.*, Ex. D. Only then does Anthropic permit users to engage in "dialogue" with Claude. *Id.*, Ex. B, at 1.

### II.    Anthropic trained Claude to serve Tennessee users.

Anthropic anticipates Tennessee users and tailors its product to them. Indeed, during Claude's development process, Anthropic prompted Claude with Tennessee-specific requests, training Claude to better respond to Tennessee users. By way of background, and as Anthropic's website explains: "Claude is not a bare language model; it has already been trained with RLHF [Reinforcement Learning from Human Feedback] to be a helpful assistant." *Id.*, Ex. E. During the

2

"fine-tuning" process, Anthropic prompts Claude with queries and rewards the model for generating preferred outputs, which "causes the model to start representing and mimicking the fine-tuning dataset." *Id.* Anthropic's training prompts and preferred responses illuminate how Anthropic expected and intended its AI models to be used.

Critically, "the human feedback data used to finetune Claude" included ***dozens*** of Tennessee-specific training prompts. *See* Kaplan Decl., Ex. A, at 2, 13. In particular, Anthropic employees repeatedly prompted Claude with the following Tennessee-focused queries:

- "What is the best grocery store in Tennessee?"
- "What is a good neighborhood to live in outside of Nashville?"
- "Where are some places I can go dancing in Nashville[,] Tennessee?"
- "What are good places to visit in Nashville?"
- "What are places to visit in Chattanooga?"
- "What are some fun things to do while in Memphis?"

Chung Decl., Ex. F, at 2–8, 13, 31, 44, 56. During Anthropic's training, Claude also generated outputs tailored to Tennessee users. Those outputs, which also form part of Claude's training data, include 22 itineraries for trips to Tennessee; driving directions from Bowling Green, Kentucky to Nashville; a ranking of Tennessee grocery stores; recommendations of Green Hills and Bellevue as "good neighborhood[s] to live in outside of Nashville"; and a suggestion to "check out Nashville.com for more information about available dancing options." *Id.*, Ex. F, at 5, 8, 22, 31. When Anthropic launched Claude 2 in July 2023, it had been trained "to represent[] and mimic[] the fine-tuning dataset" containing those Tennessee-specific prompts and outputs. *Id.*, Ex. E.

### III.  Anthropic has multiple Tennessee-based employees.

Beyond its online presence, Anthropic also has several employees in Tennessee. Most notably, Thompson Paine, Anthropic's current Head of Product and Head of Business Operations, lives and works in Nashville. Kaplan Decl. ¶ 7(c), ECF No. 55-1; Chung Decl., Ex. G. From Nashville, Paine has promoted Anthropic's AI models, including Claude 2 and Claude 2.1. For

3

example, on July 11, 2023, Paine posted on X that he was "[e]xcited and proud to share what the team at @AnthropicAI has been working on" and retweeted an Anthropic post "[i]ntroducing Claude 2." Chung Decl., Ex. H. On September 7, Paine shared a post "introducing Claude Pro," and listed the prices for a subscription to the service. *Id.*, Ex. I. And on November 21, he shared a post on LinkedIn announcing the launch of Claude 2.1 and touting the features of the new model. *Id.*, Ex. J. From Nashville, Paine has extended API access to business subscribers. *Id.*, Ex. K. More broadly, Paine has also advertised open positions and solicited applications for a wide range of roles in "engineering, product management, design, business operations, sales, support, data science, trust & safety, and more" with Anthropic. *Id.*, Ex. L.

Two other Anthropic employees—a recruiter and a research engineer—also live in Tennessee. *See* Kaplan Decl. ¶ 7(a)–(b); Chung Decl., Ex. M, at 1. Despite Anthropic's attempts to downplay these employees' connections to Claude, there is no dispute that Claude is Anthropic's sole product. Thus, Anthropic's recruiters and research engineers—and most obviously, its Head of Product and Head of Business Operations—necessarily play a role with respect to Claude.

**IV.    Anthropic has businesses relationships with Claude subscribers in Tennessee.**

Anthropic maintains ongoing relationships with the Tennessee businesses to which it licenses the Claude API. By its own description, Anthropic handpicks the businesses who may use the Claude API and "work[s] with select partners to roll out Claude in their products." Chung Decl., Ex. N. Businesses who wish to use the API must first "[]apply for access." *Id.* Anthropic requires applicants to provide the company or organization's name, "a company or organization email address," and its website. *Id.*, Ex. O. Only "a limited set" of businesses that Anthropic specifically approves may use its Claude API. *Id.*

Lonely Planet USA, LLC ("Lonely Planet"), a well-known travel publisher incorporated in Tennessee, is a high-profile Anthropic customer and Claude licensee. *Id.*, Ex. P. When

Anthropic announced that it would offer cloud-based access to the Claude API, Anthropic highlighted Lonely Planet as one of "a few examples of teams building with [Claude 2]" to "synthesiz[e] its decades of travel content to deliver cohesive, highly accurate travel recommendations." *Id.*, Ex. Q, at 1; Ex. R, at 1. In fact, in press statements, Anthropic CEO Dario Amodei called out Tennessee's Lonely Planet by name as an Anthropic customer. *Id.*, Ex. S, at 3. Anthropic has entered at least two other long-term business relationships in Tennessee relating to its AI models. Anthropic provides API access to Preverity, Inc., a Nashville healthcare analytics company, and LivTech, a Knoxville healthcare software company. *Id.*, Ex. T; Ex. U. Both companies list their Tennessee addresses on the landing page of their websites. *Id.*, Ex. V, at 2; Ex. X, at 2. When Preverity and LivTech integrate Anthropic's AI models into their own software through the Claude API, Anthropic interacts with those businesses' Tennessee customers through Claude. Publishers identified these Tennessee businesses relationships after only a limited review of public materials, but Anthropic likely has far more customers in Tennessee.

## LEGAL STANDARD

Publishers can carry their "relatively slight" burden of making a "prima facie" jurisdictional showing, *Air Prods. & Controls, Inc. v. Safetech Int'l*, 503 F.3d 544, 549 (6th Cir. 2007), by "set[ting] forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In this posture, the Court must "consider [the] pleadings and affidavits 'in a light most favorable to the plaintiff[s]'" and "do[es] not weigh 'the controverting assertions of the party seeking dismissal.'" *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459). "[O]nly if all the specific facts" that Publishers allege "collectively fail to state a prima facie case" is dismissal proper. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

## ARGUMENT

**I.    This Court has personal jurisdiction over Anthropic.**

Anthropic's conduct and contacts with Tennessee clearly establish specific personal jurisdiction.[2] A federal district court's jurisdictional reach is determined by the law of the state in which it sits. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Under Tennessee's long-arm statute, this Court may exercise personal jurisdiction over a nonresident corporation that transacts business in Tennessee, Tenn. Code Ann. § 20-2-223(a), or on any basis not inconsistent with the U.S. Constitution, *id.* §§ 20-2-214(a)–(b). Because Tennessee law extends this Court's jurisdiction to the limits of federal due process, *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023), the jurisdictional inquiry boils down to whether Anthropic has "minimum contacts with [Tennessee] such that the maintenance of [Publishers'] suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs must satisfy three elements to establish minimum contacts sufficient for specific jurisdiction: (1) "The defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action must arise from the defendant's activities" in the forum state, and (3) "[t]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable." *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968); *accord Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). Because all three elements are satisfied here, this Court has specific personal jurisdiction over Anthropic.

---

[2] Though Anthropic has significant ties to Tennessee, Publishers do not assert general jurisdiction.

**A.  Anthropic purposefully avails itself of Tennessee.**

A defendant purposefully avails itself of a forum when he "personally takes actions that create a 'substantial connection' with the forum state such that he can 'reasonably anticipate being haled into court there.'" *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)). "In evaluating these contacts, the Court's inquiry is ultimately guided by the '*quality* rather than the quantity of the contacts.'" *Pearl Recs., Inc. v. Conner*, 2023 WL 351203, at *4 (M.D. Tenn. Jan. 20, 2023) (Crenshaw, C.J.) (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)). "[E]ven a single act by defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal*, 270 F.3d at 332. Anthropic has purposefully availed itself of Tennessee in at least four ways. Each provides an independent basis for jurisdiction.

**1.  Anthropic conducts business through Tennessee-based employees.**

It is well established that a defendant purposefully avails itself of a state by maintaining employees in that state. *See, e.g.*, *Int'l Shoe*, 326 U.S. at 313, 320 (finding specific jurisdiction when nonresident corporation employed 11 to 13 salesmen in the forum).[3]

Here, Anthropic maintains three full-time employees in Tennessee, including Head of Product & Operations Thompson Paine and Recruiter Brian Kustera. Anthropic uses Paine and Kustera's locations in Nashville, Tennessee to attract employees and solicit business in the state.

---

[3] *See also Schmückle*, 854 F.3d at 902 (reasoning that purposeful availment is met when "defendant's employees conducted business in" the forum); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012) (finding purposeful availment when, *inter alia*, "certain [of defendant's] officers lived in the [forum]" and "employees traveled [there] to conduct business"); *Feild v. Graffagnino*, 514 F.Supp.2d 1036, 1042 (W.D. Tenn. 2007) ("A principal may be subjected to personal jurisdiction through the acts of its agent when the agent acts on behalf of its principal in a jurisdiction.").

Moreover, these Tennessee-based employees play a specific role with respect to Claude, including recruiting the engineers, product managers, and data scientists who train and operate Claude and soliciting Claude subscribers. In fact, Anthropic's employees in Nashville have even provided direct access to Claude's API to interested business subscribers. Chung Decl., Ex. K. By conducting business operations in Tennessee through multiple Tennessee-resident employees, Anthropic purposefully avails itself of the privilege of doing business in Tennessee.

### 2. Anthropic maintains contractual relationships with Tennessee businesses.

Courts also recognize that a defendant purposefully avails itself of a state by entering contractual relationships with businesses in that state. "If, as here, a nonresident defendant transacts business by negotiating and executing a contract . . . [with a forum-state] resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in [the forum state]." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

Here, Anthropic purposefully avails itself of Tennessee through contractual relationships with numerous Tennessee businesses—such as Lonely Planet, Preverity, and LivTech—granting access to Anthropic's Claude API. Once Anthropic grants API access to these businesses, the businesses can deploy Claude on their own systems and websites, and Anthropic can interact with the Tennessee customers of the businesses to whom the API is provided. Anthropic not only maintains contractual relationships with these Tennessee businesses but also trumpets these relationships—its partnership with Lonely Planet in particular—to advertise and promote its AI models trained on Publishers' copyrighted material. Anthropic's agreements to provide its infringing AI products to Tennessee businesses are "carefully structured" partnerships "that envision[] continuing and wide-reaching contacts" with the state, providing an additional basis for purposeful availment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985).

8

### 3.   Anthropic reaches into Tennessee through its highly interactive website.

As Anthropic acknowledges in its motion, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)); *see* Def. Br. 10. The Sixth Circuit has identified three levels of website interactivity: "(1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer." *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006).

Anthropic's website lies at the highly interactive end of this scale and demonstrates that Anthropic specifically intended its contact with Tennessee residents. Contrary to Anthropic's claims, Anthropic does far more than simply "ma[ke] Claude available to Tennessee users and licensees." Def. Br. 8. Anthropic specifically invites users to "[t]alk to Claude," emphasizing that the model can engage in "dialogue" and information exchange with users through Anthropic's website. Chung Decl., Ex. B., at 1, 3. Claude's dialogue with Tennessee's users—engaging with them as if it were human—is the crux of Anthropic's business. Given the extent of these back-and-forth, conversation-like interactions, there is no question that "the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890.

Anthropic also reaches into Tennessee to perform services through its highly interactive website in many other ways, including by entering into licensing agreements with, creating accounts for, electronically exchanging information with, and processing payments from Tennessee users. Before a Tennessee user can interact with Claude, they must first make a series of exchanges with Anthropic through the website. First, the user provides Anthropic an email address. Next, Anthropic emails the user a verification code. The user then enters that code, gives

9

their full name, confirms their age, checks a box accepting the hyperlinked website Terms of Service as a precondition to using Claude, and provides a cell phone number for account verification. The multistep process through which Anthropic creates accounts—required for users to query Claude, for Claude to respond, and for Anthropic to receive payments—reflects a deliberate choice to interact with accountholders, including those in Tennessee.

In the canonical example of purposeful availment online, the *Zippo* court held that the defendant purposefully availed itself of the forum when it "repeatedly and consciously chose to process [forum] residents' applications and to assign them passwords," knowing "that the result of these internet contacts would be to transmit electronic messages into" the forum. 952 F. Supp. at 1126. Following suit, the Sixth Circuit in *Neogen* held that a defendant's operation of a website "support[ed] a finding of purposeful availment" of Michigan, because "the granting of passwords to Michigan residents as part of a contract for [defendant's] services is an interactive usage showing that [defendant] has intentionally reached out to Michigan customers and enabled them to use [defendant's] services from Michigan." *Neogen*, 282 F.3d at 890–91.

So too here. Prospective users cannot access Claude until Anthropic grants them access. Anthropic creates accounts and login codes for Tennessee users with the expectation that it will maintain "continuing relationships and obligations" in Tennessee. *Burger King*, 471 U.S. at 473. As in *Neogen*, when Anthropic shares Claude's responses with Tennessee users, "or sends them a password to be used interactively on its website, [Anthropic] reaches out to [Tennessee] to perform its services there." *Neogen*, 262 F.3d at 892. This constitutes purposeful availment.

Moreover, the Claude Terms of Service emphasize that Anthropic maintains complete control over who may maintain an account or interact with Claude. Anthropic "reserve[s] the right to temporarily or permanently modify, suspend, or discontinue the Services or your access to the

Services or account at any time, in our sole discretion, without notice." Kaplan Decl., Ex. B, at 3 (Section 8). While users may engage in a highly interactive dialogue with the Claude chatbot, their relationship with Anthropic itself is structured and one-sided. Anthropic's ongoing course of dealing with its Tennessee users is far from unilateral, "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475; *see also Calphalon*, 228 F.3d at 722 (focusing on "the actual course of dealings between the parties"). Anthropic purposely avails itself of Tennessee by structuring its contracts with Tennessee users in a meaningful, ongoing, and authoritative way.

While Anthropic tries to recast prevailing case law as requiring "that Anthropic targeted Tennessee" specifically, that argument is unfounded. Def Br. 10. The cases on which Anthropic relies—*Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021), and *Cadle Co. v. Schlichtmann*, 123 F. App'x. 675 (6th Cir. 2005)—are easily distinguished. In both cases, plaintiffs sued out-of-state individuals who had allegedly defamed them on social media and invoked the "effects test" for intentional tortious conduct, *see Calder v. Jones*, 465 U.S. 783 (1984), to argue that personal jurisdiction was proper although defendants had no ties to or interactions with the forum state. The Sixth Circuit required plaintiffs to show that the defendants' "allegedly tortious postings" were "specifically directed at the forum state" to establish jurisdiction. *Blessing*, 988 F.3d at 904–05; *accord Cadle*, 123 F. App'x at 679. But neither case purported to set a rule outside the intentional tort context that a defendant's online activity must precisely focus on the forum to establish personal jurisdiction. In fact, in *Blessing*, the court drew a line between cases asserting jurisdiction based ***only*** on a generally available internet posting and those that "involved a pre-existing business relationship" tying defendants to the forum—like Anthropic's Tennessee employees, subscribers, and licensees. *Blessing*, 988 F.3d at 906. Setting aside that Anthropic's fine-tuning dataset filled with Tennessee-specific prompts reveals that Anthropic expected and

"hop[ed] to reach [Tennessee] specifically," *see id.*, no such targeting requirement exists here.[4]

### 4. Anthropic infringes Publishers' works in Tennessee.

Anthropic also makes minimum contacts with Tennessee by unlawfully reproducing, distributing, and displaying infringing copies of Publishers' works to users in Tennessee. Even "a single act" of infringement "can support a finding of minimum contacts sufficient to exercise personal jurisdiction" over Anthropic in Tennessee. *See Neal*, 270 F.3d at 331.

For example, as detailed in Publishers' Motion for Preliminary Injunction, Kenton Draughon, a Tennessee resident and Vice President of Administration and Operations for Plaintiff CCMG, accessed Claude through Anthropic's website and "received various responses from Claude that copy portions of CCMG's lyrics." ECF No. 45, at ¶ 19. Likewise, Duff Berschback, Executive Vice President of Business and Legal Affairs for Plaintiff Concord Music Group, who "work[s] in Concord's headquarters located in Nashville, Tennessee," ECF No. 42, at ¶ 1, also "entered queries into Claude requesting lyrics to certain Concord Works and . . . received output from Claude that copies lyrics from those Concord Works." ECF No. 42, at ¶¶ 1, 18.[5] Publishers

---

[4] Anthropic also cites *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011), for the proposition that an interactive website must "target" the forum state. Even if Seventh Circuit case law were binding here, Anthropic would satisfy the purposeful availment requirement. In the Seventh Circuit, as here, "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 399 (7th Cir. 2020). Because Anthropic sent its "product [its Claude messages] to the forum only after it had structured its sales activity in such a manner as to invite orders from [the forum] and developed the capacity to fill them," even "a single transaction" in the forum shows purposeful availment. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624–25 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577 (2023). Whether that transaction is an infringing distribution to plaintiff's agent or to some other user is "in no way relevant to an assessment of whether [defendant] has established sufficient contacts." *Id.* at 624.

[5] While these infringements took place after the suit was filed, they nevertheless show infringement is occurring in Tennessee. *See Unidisc Music, Inc. v Antibemusic S.r.l.*, 2014 WL 2573974, at *2 (M.D. Tenn. June 9, 2014) (finding purposeful availment based on "Declarations from four Tennessee consumers who accessed Defendant's website" and bought infringing songs after suit was filed); Jubeck Decl., Ex. 1, *id.* (ECF No. 17-1). Further, it is well established that distributions

have alleged, Compl. ¶¶ 16, 18, and the Court can infer from these infringing distributions to Plaintiffs' agents in Tennessee that other Tennessee users have received similar infringing outputs. Such infringing distributions to users in Tennessee establish specific jurisdiction in this District. *See Word Music, LLC v. Priddis Music, Inc.*, 2007 WL 3231835, at *3, 7 (M.D. Tenn. Oct. 30, 2007) (holding that distribution of infringing karaoke disk to "a paralegal in the offices of Plaintiffs' legal counsel in Nashville" was a "sale within Tennessee of music products that allegedly violated Plaintiffs' copyrights" and "establish[ed] a *prima facie* showing of 'purposeful availment'"). In short, Anthropic is wrong that "there is no allegation that any of the allegedly infringing 'outputs' of the model were made or received here." Def. Br. 1. By committing infringement in this District, Anthropic subjected itself to this Court's jurisdiction.

*      *      *

Anthropic's assertion that it has no "relevant link" to Tennessee—because "Claude was created, trained, and developed at Anthropic's headquarters in San Francisco" and its "website and API are maintained by employees based in California." Def. Br. 5; Kaplan Decl. ¶¶ 20, 23—is wrong both factually and legally. Anthropic ignores the fact that its Head of Product and Business Operations, a key member of the Claude team, lives and works in Tennessee. Anthropic also misunderstands the law. "The Due Process Clause does not limit specific jurisdiction over a defendant to the states only where a product 'was designed, manufactured, or first sold.'" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 672 (6th Cir. 2023). Rather, specific jurisdiction "may be satisfied

---

to plaintiffs' agents are actionable infringements. *E.g.*, *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1347–48 (8th Cir. 1994) (holding distributions to investigator to be copyright infringement); *Capitol Recs., Inc. v. Thomas*, 579 F.Supp.2d 1210, 1214–16 (D. Minn. 2008) (same); *U2 Home Ent., Inc. v. Fu Shun Wang*, 482 F.Supp.2d 314, 317–18 (E.D.N.Y. 2007) (same); *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1641978, at *8 (S.D.N.Y. Apr. 29, 2011) ("Courts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work.").

13

by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014). Anthropic's purposeful availment and direction of activities at Tennessee are clearly enough to establish personal jurisdiction here.

### B. Publishers' cause of action arises from Anthropic's contacts with Tennessee.

Publishers satisfy the second element of the *Mohasco* test for specific jurisdiction, because Publishers' copyright infringement claims "arise out of or relate to" Anthropic's contacts with Tennessee. Courts have emphasized that this is a "lenient standard," under which "the cause of action need not 'formally' arise from defendant's contacts." *Air Prods.*, 503 F.3d at 553 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Rather, Publishers have carried their burden if their copyright infringement claim has a "substantial connection to [Anthropic's] activity in the state," *Schmückle*, 854 F.3d at 903, if Anthropic's "contacts with the forum state are related to the operative facts of the controversy," *CompuServe*, 89 F.3d at 1267, or "lie in the wake of" Anthropic's contacts, *Air Prods.*, 503 F.3d at 553. Notably, the Supreme Court has made clear that Publishers need not prove "a strict causal relationship between the defendant's in-state activity and the litigation." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).

Publishers handily meet this test. The core of Publishers' complaint is this: Anthropic's series of Claude AI models are unlawfully built on input containing Publishers' copyrighted works, and these AI models distribute illegal copies and derivatives of those works as output. All Anthropic's contacts with Tennessee support and relate to this claim. Claude is Anthropic's sole, "signature" product. Anthropic's Head of Product & Operations is based in Tennessee and, from Nashville, promotes Anthropic's infringing Claude product on social media to other Tennessee residents. Anthropic sells Tennessee businesses access to its AI models built on Publishers' copyrighted material. Anthropic operates a highly interactive website through which it knowingly

communicates with Tennesseans, enters agreements to provide them access to Claude, and thereby enables Claude to send infringing outputs into Tennessee. In sum, Anthropic conducts business in Tennessee to support and promote a product trained on unlawful copies of Publishers' works, sells that product to Tennessee residents, and disseminates infringing material to Tennessee users. This suit turns on those infringing activities, which "lie in the wake of" Anthropic's contacts with Tennessee. *Air Prods.*, 503 F.3d at 553; *see also Bird*, 289 F.3d at 875 (claim that domain-name registrar defendants infringed copyright by enabling an out-of-state user to register plaintiff's domain name "stem[med] from these defendants' operation of the [registration] website" that accepted business from forum-state users). Further, the injuries Publishers suffer because of Anthropic's widespread copyright infringement relate to defendant's transactions with Tennessee residents and its operations in this state. *See Neogen*, 282 F.3d at 892 (finding relatedness satisfied when defendant's in-state activities "caused economic injury" to plaintiff).

Further, Anthropic's infringements cause Publishers copyright-related injury ***in*** Tennessee, where Concord is headquartered, CCMG maintains its only office, and all Publishers conduct meaningful portions of their businesses. *See* Compl. ¶¶ 21, 23, 30, 32. Where, as here, Plaintiffs allege "that Defendant[] committed violations of copyright law by selling and soliciting sales of [services] that infringe Plaintiffs' copyrights throughout the United States (including Tennessee), and that such sales caused them injury in Tennessee where Plaintiffs conduct business," that allegation "is sufficient to meet the 'related to' prong of *Mohasco*." *Sony/ATV Music Publ'g LLC v. CAVS USA, Inc.*, 2009 WL 2177110, at *7 (M.D. Tenn. July 21, 2009).

### C.  This Court's exercise of personal jurisdiction is reasonable.

Third, the Court's exercise of personal jurisdiction is reasonable. Factors relevant to reasonableness include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution

of controversies." *Bird*, 289 F.3d at 875. An inference of reasonableness arises if the first two *Mohasco* factors are met. *Id.* The burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *TailGate Beer LLC v. Boulevard Brewing Co.*, 2019 WL 2366948, at *6 (M.D. Tenn. June 5, 2019) (quoting *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F.Supp.3d 874, 888 (W.D. Tenn. 2017)). The defendant's burden is high and generally limited to "rare situations 'where the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.* (quoting *Susan McKnight*, 273 F.Supp.3d at 888).

Publishers easily satisfy the first two *Mohasco* factors, giving rise to an inference of reasonableness. Even if the Court were to ignore this inference, the reasonableness factors each still favor jurisdiction. Tennessee has a "legitimate interest in protecting the business interests of its citizens," including Publisher Concord and the Tennessee-based songwriters represented by all Publishers. *Priddis Music*, 2007 WL 3231835, at *10. Publishers have "an interest in obtaining relief as efficiently and expeditiously as possible," and their connections to Tennessee—through their Tennessee-based offices, employees, and business relationships with songwriters—are far from "attenuated" links to the forum. *Id.* Finally, Anthropic's residency in California and any associated burden of litigating in Tennessee should "not override the other factors showing it is reasonable to exercise jurisdiction over [Anthropic] here." *Id.*

## II.    Venue in the Middle District of Tennessee is proper.

Venue is proper in this District for the same reasons that the Court has personal jurisdiction over Anthropic. Venue is proper in any judicial district "[1] in which a substantial part of the events or omissions giving rise to the claim occurred; [2] or a substantial part of property that is the subject of the action in situated; or . . . [3] in which any defendant is subject to the court's personal

16

jurisdiction." 28 U.S.C. § 1391(b). In copyright infringement actions specifically, a civil action "may be instituted in the district in which the defendant or his agent resides or may be found." *Id.* § 1400(a). As Anthropic itself acknowledges: "It is widely accepted that, for the purposes of this venue provision, a defendant is 'found' wherever personal jurisdiction can be properly asserted against it." *Bridgeport Music v. Agarita Music*, 182 F.Supp.2d 653, 659 (M.D. Tenn. 2002); *see also* Def. Br. 12. "Therefore, if [defendant] is subject to the personal jurisdiction of this Court, then venue would properly lie in this District." *Agarita*, 182 F.Supp.2d at 659.

First, Anthropic's agents reside in this District, making venue proper. *See* 28 U.S.C. § 1400(a). Anthropic concedes that three of its employees reside in Tennessee, Kaplan Decl. ¶ 7, and at least two of those employees reside in Nashville. Second, Anthropic is subject to personal jurisdiction here, and so venue is likewise proper. *See Agarita*, 182 F.Supp.2d at 659; *Eight Mile Style, LLC v. Spotify USA Inc.*, 2020 WL 1640425, at *8 (M.D. Tenn. Apr. 2, 2020) (holding "[t]he court's analysis of personal jurisdiction is [] determinative under § 1400(a)" and because defendant "is subject to specific jurisdiction in the Middle District, it 'may be found' here" (quoting 28 U.S.C. § 1400(a))). Anthropic's arguments against venue in this District rehash their meritless claims regarding jurisdiction, and these arguments fail for the same reasons.

### III.    There is no basis for transferring this case to the Northern District of California.

Anthropic's meritless attempt to have this case transferred to California should also be rejected. District courts may transfer a case "to any other district or division where it might have been brought" when doing so promotes "the convenience of the parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a). Courts considering transfer must balance the "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647

n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).

Anthropic bears the burden of showing that transfer is warranted under Section 1404(a). *See Heffernan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 498 (6th Cir. 2016). That burden is "substantial," *Taylor v. CoreCivic of Tenn., LLC*, 2023 WL 2390673, at \*1 (M.D. Tenn. March 6, 2023) (Crenshaw, C.J.), and cannot be carried by "[m]erely shifting the inconvenience from one party to another," *McFadgon v. Fresh Mkt., Inc.*, 2005 WL 3879037, at \*2 (W.D. Tenn. Oct. 21, 2005). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should ***rarely*** be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (emphasis added). If the Court finds that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail." *Stewart v. Am. Eagle Airlines, Inc.*, 2010 WL 4537039, at \*2 (M.D. Tenn. Nov. 3, 2010).

This is a case about the rights of songwriters and music publishers, including those with headquarters and operations in Nashville. It should be litigated in the Middle District of Tennessee.

### A. Anthropic's Terms of Service agreement does not mandate transfer. [6]

Anthropic is wrong that a forum-selection clause in its website's Terms of Service warrants transfer to the Northern District of California. A valid, enforceable forum-selection clause is "not dispositive" of a motion to transfer, and thus the Court must still balance the parties' interest in enforcing the clause against the private and public interests under Section 1404(a). *Smith v. Kyphon, Inc.*, 578 F.Supp.2d 954, 958 (M.D. Tenn. 2008); *see also Stewart Org., Inc. v. RICOH Corp.*, 487 U.S. 22, 31 (1988). When evaluating a forum-selection clause, the Court must

---

[6] Anthropic mentions in a footnote that its Terms of Service previously included a mandatory arbitration clause, *see* Def. Br. 5 n.2, but does not move to compel arbitration. "Because the defendant has not invoked the arbitration provision, the validity of that clause is not at issue." *Mayer v. gpac LLP*, 2023 WL 3690235, at \*4 n.2 (M.D. Tenn. May 26, 2023). Nevertheless, because arbitration clauses are a species of forum-selection clause, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022), Publishers' arguments apply equally to the arbitration clause.

determine whether the clause is "applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021). If a "forum selection clause does not apply to [plaintiffs'] claims in [the] case, the Court will not enforce that clause by dismissing or transferring th[e] case under § 1404(a)." *Castro v. Fire Door Sols., LLC*, 542 F.Supp.3d 771, 778 (M.D. Tenn. 2021) (Crenshaw, C.J.).

Anthropic's argument fails at the first step: the forum-selection clause does not encompass Publishers' copyright claims. Under the clause Anthropic invokes, "You [the user] and Anthropic agree that any disputes ***arising out of or relating to these Terms*** will be resolved exclusively in the state or federal courts located in San Francisco, California." Kaplan Decl., Ex. B, at 4 (emphasis added). By its terms, the clause encompasses contractual disputes related to the Terms of Service agreement itself, or other claims asserting rights or duties under the agreement. Anthropic's Terms of Service designate an exclusive forum for "disputes arising out of relating to these Terms," *id.*, and is thus considered a "broad" forum-selection clause. *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 528 (6th Cir. 2013) ("Broad arbitration clauses typically require arbitration of disputes arising out of or relating to *the agreement* containing the arbitration clause"). "[A] claim likely falls outside the scope of a broad [forum-selection] clause 'if the action could be maintained without reference to the contract or relationship at issue." *Id.* at 528–29; *see also Tritt v. Category 5 Recs., LLC*, 570 F.Supp.2d 977, 980–81 (M.D. Tenn. 2008).

Publishers' claims do not arise from a contractual relationship with Anthropic. Publishers do not seek any remedies under the Terms of Service, and the rights Publishers assert sound in copyright law, not the agreement. In fact, Publishers do not mention the Terms of Service in their Complaint. Because this "action could be maintained without reference to" the Terms of Service, the forum-selection clause is inapplicable and unenforceable as to Publishers' copyright

19

infringement claims.[7] *See Traton*, 528 F. App'x at 529; *accord Alticor, Inc. v. Nat'l Union Fire Ins. Co.*, 411 F.3d 669 (6th Cir. 2005) (holding unenforceable an arbitration provision "limited to 'disputes or differences arising out of or relating to' the Premium Payment Agreement [when] the dispute between the parties relates not to that agreement, but to [an] insurance policy").

Decisions by numerous other courts are instructive. The Second Circuit has recognized that, "where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect." *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993); *see also, e.g.*, *Light v. Taylor*, 317 F. App'x 82, 83–84 (2d Cir. 2009). Similarly, the Eastern District of Virginia refused to apply a forum-selection clause in a Terms of Service agreement to a patent infringement claim. *VS Techs., LLC v. Twitter, Inc.*, 2011 WL 11074291, at *5 (E.D. Va. June 28, 2011).

Plaintiffs' copyright claims are wholly distinct from any "disputes arising out of or relating to these Terms [of Service]" governed by the forum-selection clause. Kaplan Decl., Ex. B, at 4. Publishers neither refer to the Terms of Service in their Complaint nor premise their right to recovery on any aspect of the agreement. Likewise, Anthropic can find no defense to its infringing acts in the terms of the agreement. In sum, Publishers did not agree to litigate their copyright infringement claims in the Northern District of California, and Anthropic's Terms have no bearing on where Publishers may file the present suit. "Given the unenforceability of the forum-selection clause contained in the [Terms of Service] agreement, the Court must conduct a § 1404(a) analysis

---

[7] Nor can Anthropic show that Publishers' claims fall within the arbitration clause because they "aris[e] from or relate[] to . . . use of the Services," Kaplan Decl., Ex. C, at 9, by Publishers' agents investigating infringement. *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4352533, at *4 (E.D. Tex. Sept. 2, 2014) ("Evidence relating to the charged infringement may have been obtained through the use of the website, but that does not render the patent action one that arose from or was connected to . . . use of the website.").

to determine whether the other [private and public interest] factors weigh heavily in favor of the defendant['s] motion to transfer venue." *Kyphon*, 578 F.Supp.2d at 961.

Moreover, the Terms of Service are not enforceable against Publishers because their agents accepted the Terms for the sole purpose of investigating copyright infringement. *See, e.g.*, Decl. of Kenton Draughon ("CCMG Decl.") ¶¶ 14–16; Decl. of Duff Berschback ("Concord Decl.") ¶¶ 10–15. When plaintiffs accepted Terms of Service agreements to investigate infringement, courts have refused to enforce the forum-selection and arbitration clauses therein. For instance, in *Perry Street Software, Inc. v. Jedi Technologies, Inc.*, 2020 WL 6064158 (S.D.N.Y. Oct. 14, 2020), the district court held that a defendant's lawyer did not bind his client to an arbitration clause in Terms of Service agreement on the plaintiff's website by creating an account to investigate patent infringement claims. *Id.* at *3, 6–7. Similarly, in *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014), the court observed that when an employee of Loyalty Conversion Systems Corp. ("Loyalty") accessed JetBlue's website "to obtain evidence of Loyalty's patent infringement," the forum-selection clause "limit[ed] the remedies [the individual employee] could assert against JetBlue," but "ha[d] no effect on Loyalty's rights to sue for patent infringement." *Id.* at *1, 4. Here too, Publishers' intent to investigate infringement precludes binding Publishers to the Terms of Service's forum-selection clause.

The forum-selection clause does not represent the parties' agreement that the Northern District of California is the sole forum for copyright infringement disputes. Thus, the clause should be given no weight in the transfer analysis. *See, e.g.*, *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 571 (6th Cir. 2019) (applying presumption favoring plaintiff's choice of forum when forum-selection clause invoked did not bar suit); *Castro*, 542 F.Supp.3d at 777 (denying transfer when asserted "forum selection clause does not apply to [plaintiff's] claims in this case").

**B.  The locus of operative events does not favor transfer.**

This litigation's locus of operative events or "center of gravity" does not favor transfer. *See Oakley v. Remy Int'l, Inc.*, 2010 WL 503125, at *5 (M.D. Tenn. Feb. 5, 2010). Anthropic's argument that the case's center of gravity is in California ignores key facts, including that Anthropic's Head of Product operates from Tennessee and that Publishers have alleged that infringements occurred in this District. Unlike the plaintiff in *Gray v. Duval County Public Schools*, Publishers have done far more than merely allege that they suffer injury in Tennessee and do not concede that infringement occurred solely in the transferee forum. *See* 2014 WL 4716487, at *3 (W.D. Ky. Sept. 22, 2014) ("[The] Complaint alleges that the infringement underlying his action occurred in Florida [the transferee forum]"). Rather, Publishers have shown that Anthropic has substantial ties to Tennessee and reaches into the state to interact with its citizens, and that Publishers' copyright claims have a clear nexus to Anthropic's activities in this District.

**C.  Transfer would not improve access to evidence or convenience for witnesses.**

Transferring the case to the Northern District of California would not be more convenient for accessing evidence or for the witnesses.

First, transfer would not improve access to evidence. Anthropic incorrectly argues that "the vast majority of th[e] evidence necessary for this case is likely to 'be housed at the headquarters of the alleged infringer, Anthropic" in California. Def. Br. 21. But Anthropic concedes that "the computers and data used to train Claude are hosted in Northern Virginia," far closer to the Middle District of Tennessee than the Northern District of California. *See* Kaplan Decl. ¶ 22. Likewise, Anthropic reproduces, distributes, and displays Publishers' copyrighted works from servers in Iowa, closer to this District than the proposed transferee forum. *See id.* Further, Publishers' evidence of Claude's infringing outputs was collected in Tennessee and in Washington, D.C. *See* ECF No. 42, at ¶ 18; ECF No. 45, at ¶ 19; ECF No. 49. None of Publishers' experts—already

identified in Publishers' preliminary injunction briefing—are in California. Professor Ben Zhao lives in Chicago, Illinois; Professor Michael D. Smith teaches in Pittsburgh, Pennsylvania; and Dr. Robert Leonard teaches in Hempstead, New York. ECF No. 47, at ¶ 1; ECF No. 50, at ¶ 2; ECF No. 52, at ¶ 1. The same is true of Anthropic's recently disclosed expert witnesses, Dawn Hall and Steven Peterson. Ms. Hall works in New York City and Dr. Peterson is based in Boston. Surely, Nashville is a more convenient forum for these individuals than the Northern District of California.

Anthropic's own requests for production from Plaintiff Concord undermine its claim that all relevant evidence is in California. Those requests seek a broad range of documents—including internal communications, contracts, reports, analyses, and financial documents—likely located at Concord's headquarters in Nashville. Key materials relevant to Publishers' claims and Anthropic's fair-use defense, including evidence of the irreparable injury Publishers and their songwriters suffer and the damage Anthropic causes to the market for Publisher's copyrighted works, are also easier to access from this District. That includes evidence from nonparty songwriters in Nashville and associations like the Nashville Songwriters Association International. *See* Herbison Decl., Ex. A, ECF No. 46-1 (attesting to irreparable harm). "The convenience of [these] potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration." *See Azarm v. $1.00 Stores Servs., Inc.*, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009).

Second, Anthropic has not identified a single witness who would be inconvenienced by litigation in Tennessee or who would be unwilling or unable to testify in this judicial district. Instead, Anthropic gestures vaguely at the possibility that "other relevant third parties" may be "located near Anthropic's headquarters" and that "the Court would lack subpoena power to compel their testimony in Tennessee in the event those witnesses decline to appear voluntarily." Def. Br. 22. Anthropic also claims without any specific evidence that "[t]he primary witnesses with

information about Claude are likely to be Anthropic witnesses," Def. Br. 21, and that its software engineers and key decisionmakers are based in California, Kaplan Decl. ¶¶ 20–21. But because employers are presumed to be able to compel its employees to testify, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." *B.E. Tech., LLC v. Facebook, Inc.*, 957 F.Supp.2d 926, 934 (W.D. Tenn. 2013) (holding that a defendant who "does not provide any evidence showing that any employees will be unwilling to testify in this district if asked to do so . . . does not satisfy its burden").

Anthropic invokes only the minimal inconvenience of compelling employee testimony, which does not outweigh the burden of transfer on Publishers' potential witnesses. Many of those witnesses live in or often travel to this District but cannot say the same for the Northern District of California. Certain witnesses and evidence lie outside either forum, such as the computers and data used to train Claude, the servers that host Claude, and both parties' experts. Where "no district would be totally free of . . . inconvenience related to obtaining testimony from out-of-district witnesses," this factor weighs against transfer. *Spotify*, 2020 WL 1640425, at *9.

### D. Transfer would inconvenience the parties.

Transfer to the Northern District of California would unfairly shift the burden of distant litigation from Anthropic to Publishers and force Publishers to litigate in a more expensive, congested forum. Concord is headquartered in Nashville, and the bulk of its relevant documentary evidence, including its corporate documents and records, are in this District. Compl. ¶¶ 21–22; Concord Decl. ¶ 9. CCMG has its only office and all but four of its employees in Brentwood, Tennessee, while UMPG has Nashville and Franklin offices, making litigation in this District preferable to the Northern District of California, where they have no meaningful presence. *See* CCMG Decl. ¶¶ 10, 12–13; Decl. of David Kokakis ("UMPG Decl.") ¶¶ 6–9. ABKCO is headquartered in New York, making Tennessee a far more convenient forum than Northern

California. Decl. of Alisa Coleman ("ABKCO Decl.") ¶¶ 5, 7. While certain Publishers are headquartered in Southern California, all Publishers represent songwriters here and their agents regularly travel to this District, while the same is not true for the Northern District of California. ABKCO Decl. ¶¶ 6–7; Concord Decl. ¶¶ 7–8; CCMG Decl. ¶¶ 10–12; UMPG Decl. ¶¶ 9–10. Finally, the Middle District of Tennessee has a significant interest in adjudicating the rights of songwriters and publishers located here.[8] Since Anthropic is the only party for whom transfer might prove more convenient, this factor is either neutral or favors Publishers.

### E.  Publishers' choice of forum is entitled to deference.

Finally, "[a] plaintiff's choice of forum is usually entitled to substantial consideration in balancing the 28 U.S.C. § 1404(a) factors." *Kyphon*, 578 F.Supp.2d at 956. In fact, "[t]his is especially true when plaintiffs reside within their chosen forum." *CoreCivic*, 2023 WL 2390673, at *3. Anthropic has offered no reason to discount Publishers' choice of forum here, particularly given that one Publisher resides in Tennessee and all Publishers have offices, employees, or songwriters in Tennessee; acts giving rise to Publishers' infringement claims occurred in Tennessee; key evidence is in Tennessee; and nonparty witnesses are equally, if not more, accessible from Tennessee. Plaintiffs' choice of forum weighs heavily against transfer.

## <u>CONCLUSION</u>

Publishers respectfully request that the Court deny Anthropic's motion in full.

---

[8] The Governor of Tennessee recently announced proposed legislation that would prohibit the use of artificial intelligence to mimic the voices and likenesses of songwriters and performers. *Tennessee First in the Nation to Address AI Impact on Music Industry*, TENNESSEE OFFICE OF THE GOVERNOR (Jan. 10, 2024, 2:40 pm), https://perma.cc/4BFP-UYSZ. The announcement emphasized that "Tennessee's music industry creates 61,617 jobs and contributes $5.8 billion dollars to Tennessee's GDP" and recognized that "generative AI cloning models and services that enable human impersonation and allow users to make unauthorized fake works in the image and voice of others . . . . threaten[] the future of Tennessee's creators." *Id.* While this case does not involve voice and likeness rights, this announcement underscores Tennessee's interest in ensuring that AI technology does not develop at the expense of songwriters and publishers.

Dated: January 22, 2024

Respectfully submitted,

/s/ *Steven A. Riley*
Steven A. Riley (No. 6258)
Tim Harvey (No. 21509)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
sriley@rjfirm.com
tharvey@rjfirm.com

Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036-1525
Telephone: 212-790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I authorized the electronic filing of a true and exact copy of the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to the following counsel of record:

Aubrey B. Harwell III (No. 017394)
Nathan C. Sanders (No. 33520)
Olivia R. Arboneaux (No. 40225)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
tharwell@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

Joseph R. Wetzel
Andrew M. Gass
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
joe.wetzel@lw.com
andrew.gass@lw.com

Allison L. Stillman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
alli.stillman@lw.com

Sarang V. Damle
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
sy.damle@lw.com

Kevin C. Klein
Klein Solomon Mills, PLLC
1322 4th Avenue North
Nashville, TN 37208
kevin.klein@kleinpllc.com

Eric P. Tuttle
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
eric.tuttle@wsgr.com

Nicole Saad Bembridge
NetChoice, LLC
1401 K St. NW, Suite 502
Washington, DC 20005
nsaadbembridge@netchoice.org

/s/ Steven A. Riley
Steven A. Riley