Benjamin S. Akley (State Bar No. 278506)
bakley@pryorcashman.com
**PRYOR CASHMAN LLP**
1801 Century Park East
Los Angeles, CA 90067
(310)683-6900

Frank P. Scibilia (*pro hac vice* admission pending)
fscibilia@pryorcashman.com
Joshua Weigensberg (*pro hac vice* admission pending)
jweigensberg@pryorcashman.com
Maya Katalan (*pro hac vice* admission pending)
mkatalan@pryorcashman.com
**PRYOR CASHMAN LLP**
7 Times Square, 40th Fl.
New York, NY 10036
(212) 421-4100

*Counsel for below-identified amici*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., et al., <br><br>Plaintiffs, <br><br>v. <br><br>ANTHROPIC PBC, <br><br>Defendant. | Case Number: 3:24-cv-03811-JSC <br><br>Hon. Jacqueline Scott Corley <br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br>**Hearing:** <br>**Date:** Sept. 19, 2024 <br>**Time:** 10:00 a.m. <br>**Place:** Courtroom 8 |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Sept. 19, 2024, at 10:00 a.m., before United States District Judge Jacqueline Scott Corley, in Courtroom 8 – 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Recording Industry Association of America ("RIAA"), National Music Publishers' Association ("NMPA"), the Association of American Publishers, Inc. ("AAP"), News/Media Alliance (the "Alliance"), Songwriters of North America ("SONA"), Black Music Action Coalition ("BMAC"), Artist Rights Alliance ("ARA"), the Music Artists Coalition ("MAC"), and American Association of Independent Music ("A2IM") (collectively, "*Amici*") will and hereby do move, pursuant to Fed. R. Civ. P. 7(b) and Local Rules 7-1 and 7-2, for leave to file a brief as *amici curiae* (the "Brief") in support of the plaintiffs' ("Publishers'") motion for preliminary injunction filed in this Court on August 1, 2024 (the "Preliminary Injunction Application," ECF No. 179 *et seq.*). The Brief is annexed to this motion (the "Motion") as Exhibit A. Counsel for *Amici* conferred with counsel for the parties regarding this Motion, who have confirmed that they do not object to the Motion.

Specifically, *Amici* seek leave to file the Brief and to have the Brief deemed to have been filed as of August 5, 2024, by virtue of its inclusion herewith. *Amici* are trade groups representing hundreds of owners and creators of valuable copyrighted content. *Amici* respectfully submit that the Brief will be useful to the Court's evaluation of the issues raised by the Preliminary Injunction Application, because it will provide the Court with key market context and historical background showing, *inter alia*, that unlike Anthropic PBC ("Anthropic"), many companies in the artificial intelligence field are obtaining licenses from copyright owners, that the position Anthropic has taken that copyright law principles are supposedly incompatible with technological progress is a false choice that has previously been advanced by other mass infringers and rejected by the courts, and that there are a number of other compelling reasons to grant the Preliminary Injunction Application.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; and all documents on file in this action.

Dated: August 5, 2024

Respectfully submitted,

PRYOR CASHMAN LLP

<u>s/ Benjamin S. Akley</u>
Benjamin S. Akley (State Bar No. 278506)
1801 Century Park East
Los Angeles, CA 90067
(310)683-6900
bakley@pryorcashman.com

Frank P. Scibilia (*pro hac vice* admission pending)
Joshua Weigensberg (*pro hac vice* admission pending)
Maya Katalan (*pro hac vice* admission pending)
7 Times Square, 40th Fl.
New York, NY 10036
(212) 421-4100
fscibilia@pryorcashman.com
jweigensberg@pryorcashman.com
mkatalan@pryorcashman.com

*Counsel for Amici*

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 7(b) and Local Rules 7-1 and 7-2, *Amici* respectfully submit this memorandum of points and authorities in support of their Motion.[1] Counsel for *Amici* conferred with counsel for the parties regarding this Motion, who have confirmed that they do not object to the Motion.

## INTERESTS OF *AMICI CURIAE*

*Amici* are trade groups representing owners and authors of some of this country's most valuable creative content. Many of the *Amici* have previously submitted comments to the U.S. Copyright on artificial intelligence ("AI") issues,[2] and many are members of the Human Artistry Campaign.[3]

RIAA is a nonprofit trade organization that supports and promotes the creative and financial vitality of recorded music and the people and companies that create it. RIAA's several hundred members – ranging from major American music companies with global reach to artist-owned labels and small businesses – make up this country's most vibrant and innovative music community. RIAA's members create, manufacture, and/or distribute sound recordings representing the majority of all legitimate recorded music consumption in the U.S., and own the copyrights and/or other exclusive rights in sound recordings embodying the performances of some of the most popular and successful recording artists of all time. RIAA has been actively involved in representing the interests of its members as they relate to AI issues.

NMPA is the principal trade association representing the U.S. music publishing and songwriting industry. NMPA's membership includes publishers of all sizes, from "major" music publishers to independently owned and operated publishers, who represent musical works of all genres. Taken together, compositions owned or controlled by NMPA's hundreds of members account for the vast majority of musical compositions licensed for commercial use in the U.S. NMPA has been

---

[1] No counsel for any party authored the Motion, this Memorandum of Points and Authorities, the Brief, or any other submission being made herein on behalf of *Amici*, whether in whole or in part, and no entity or person other than *Amici*, their members, or their counsel made any monetary contribution intended to fund the preparation or submission of this brief. Certain of the plaintiff music publishers in this lawsuit are among the members (or affiliates of such members) of *amici* the NMPA and the RIAA, each of whom also represents the interests of hundreds of other companies in the music industry.

[2] *See* https://www.regulations.gov/docket/COLC-2023-0006/comments.

[3] *See* https://www.humanartistrycampaign.com.

1

Case No. 3:24-cv-3811-JSC
Notice of Motion and Motion for Leave to File Amicus Brief

actively engaged in the conversation around generative AI and its relationship with, and impact on, the creative economy, and has participated in numerous panels, roundtables and other industry discussions.

AAP represents book, journal, and education publishers in the U.S. on matters of law and policy, including major commercial houses, small and independent houses, and university presses and other noncommercial scholarly publishers.  AAP seeks to promote an effective and enforceable framework that enables publishers to create and disseminate a wide array of original works of authorship to the public on behalf of their authors.  AAP members support and embrace innovation, including responsibly designed AI tools that are accountable, transparent, and respect copyright protections.  The works AAP members publish are especially valuable to training generative AI systems, including because they provide high quality expression that results in commercially valuable, expressive output.  AAP has been actively involved in representing the interests of its members as they relate to AI issues.

The Alliance represents over 2,200 diverse publishers in the U.S. and internationally, ranging from the largest news and magazine publishers to hyperlocal newspapers, and from digital-only outlets to papers who have printed news since before the Constitutional Convention.  Its membership creates quality journalistic content that accounts for nearly 90 percent of daily newspaper circulation in the U.S., over 500 individual magazine brands, and dozens of digital-only properties.  The Alliance diligently advocates for newspapers, magazine, and digital publishers, and like the other *amici*, has been active on AI issues, including publishing a White Paper documenting systemic uses of media content in generative AI training, leading the development of global publisher AI principles and participating in numerous discussions, including the U.S. Senate's AI Insight Forum.

SONA is a membership-based advocacy organization formed by and for professional songwriters in 2015.  SONA advocates on behalf of songwriters' interests before legislative bodies, administrative agencies, and the courts.  SONA is an open and diverse community that unites enthusiastic music creators and thoughtful business leaders to create a unified voice to protect artistic expression, compensation, and the rights of songwriters in North America.  Regarding AI, SONA represented its members by participating in the recent U.S. Copyright Office Listening Sessions and continues to advocate for and educate songwriters about AI developments.

BMAC works to create a unified force of action for racial equity and justice within the music industry and to use the power of its collective voice to improve communities and drive systemic change. BMAC advocates on behalf of Black artists, songwriters, producers, managers, agents, executives, and lawyers to create access, equity and opportunity for Black artists and industry professionals. BMAC works together with business leaders to hold companies accountable and ensure change takes root. BMAC works to drive policy change around social and racial justice and protection of artists with a focus on causes that directly impact Black people and Black communities. Regarding AI, BMAC advocates on behalf of a network of music managers, entertainment attorneys, and Black creatives, and participated in the U.S. Copyright Office's Listening Sessions. In its ongoing fight for economic justice, AI is at the forefront of BMAC's agenda.

MAC was founded by music creators and industry leaders to advocate on pressing topics that impact music creators. MAC represents artists' and songwriters' interests without compromise because music creators should be driving the conversation about the issues that shape their lives. MAC believes artists should have the opportunity to decide how best to protect the fate of their music, and that the advancement of AI can be a benefit to music creators and music lovers, but only if properly regulated so that artists' interests are protected.

ARA is an artist-run, non-profit organization fighting for the rights of working musicians in the modern music economy. Co-founded by a group of dedicated artists including GRAMMY winner Rosanne Cash, ARA's Board of Directors includes award-winning producer/songwriter/engineer Ivan Barias, music manager Thomas Manzi, John McCrea of CAKE, critically acclaimed singer/songwriter Tift Merritt, guitar innovator Matthew Montfort, and Indie label executive and musician Maggie Vail.

A2IM is a 501(c)(6) not-for-profit trade organization headquartered in New York City that exists to support and strengthen the independent recorded music sector and the value of recorded music copyrights. Membership currently includes a broad coalition of hundreds of independently owned American music labels. A2IM represents these small and medium-sized enterprises' interests in the marketplace, in the media, on Capitol Hill, and as part of the global music community. In doing so, it supports a key segment of America's creative class that represents America's diverse musical and

cultural heritage. Billboard Magazine identified the independent music label sector as over 40% of the music industry's global recorded music revenue in 2020 based on copyright ownership.

## PROCEDURAL HISTORY

This action was originally filed in U.S. District Court for the Middle District of Tennessee and was transferred to this Court on June 26, 2024. *Amici* sought leave to file an amicus brief in support of Publishers' motion seeking a preliminary injunction in the Tennessee action, and *Amici's* motion for leave was pending when this case was transferred. In their prior amicus brief, *Amici* had, *inter alia*, responded to certain erroneous arguments made by Anthropic and putative *amici* supporting Anthropic, Chamber of Progress and NetChoice, LLC (together, "COP").

In this Motion, *Amici* seek leave from this Court to submit their Brief, annexed to this Motion as Exhibit A, in support of Publishers' Preliminary Injunction Application filed in this Court on August 1, 2024.[4]

## ARGUMENT

The decision of whether to permit an *amicus* brief rests within the "broad discretion" of the Court. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). As this Court has observed, "Amici need show only that their participation is useful to the court" to be permitted to participate. *NetChoice, LLC v. Bonta*, No. 22-cv-08861-BLF, 2023 WL 6131619, at *1 (N.D. Cal. Sept. 18, 2023); *see also, e.g.*, *California ex rel. Becerra v. United States Dep't of the Interior* (*Becerra*), 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019) ("There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful or otherwise desirable to the court.").

*Amicus* briefs can be valuable to the courts by, for example, "round[ing] out the arguments presented by the parties," *NetChoice, LLC*, 2023 WL 6131619, at *1, or by "amplify[ing] a number of points raised in parties' papers," *Becerra*, 381 F. Supp. 3d at 1164. They can also be useful by

---

[4] *Amici* reserve the right to seek leave to respond to any new or different arguments advanced by Anthropic or any putative *amici* in support of Anthropic's opposition to the Preliminary Injunction Application.

4

"collect[ing] background or factual references," or "explain[ing] the impact a potential holding might have on an industry or other group," *Neonatology Assocs., P.A.*, v. *C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.); *see also New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1176 (10th Cir. 2021) (granting leave to file *amicus* briefs that addressed the impact of jurisprudence on an industry and "provide[d] more information about the Defendants' practices").

*Amici* respectfully submit that the Brief they hereby seek leave to file does all of those things, and is useful to the Court's consideration of the issues raised by the Preliminary Injunction Application. In the Brief, the *Amici* trade groups, who represent hundreds of owners and creators of valuable copyrighted content: (1) provide market context and historical background showing that competitors of Anthropic are licensing copyrighted content for use in their AI products, that copyright law principles are compatible with technological progress, and that artificial intelligence can reach its full potential while respecting the rights of creators and owners of copyrighted works; (2) show that the legal positions Anthropic has taken in this case are the same arguments previously advanced, unsuccessfully, by others who have deployed technology to infringe copyrighted content on a massive scale, and are otherwise baseless; (3) explain how the preliminary relief that Publishers seek is particularly appropriate where Anthropic admitted many of the facts that are fundamental to the Preliminary Injunction Application, the Court can apply well-established copyright principles to such admitted facts, and Anthropic cannot plausibly claim any cognizable harm from the requested injunction; and (4) show that the public interest is best served by granting the Preliminary Injunction Application before the harm from Anthropic's platform to the creators, owners, and licensees of copyrighted content, including those represented by *Amici*, is further entrenched or compounded.

While no Federal Rule of Civil Procedure or Local Rule addresses *amicus* briefs, this Court has previously granted leave to file *amicus* briefs in other cases involving technology and intellectual property law issues. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, No.: 11-CV-01846-LHK, 2011 WL 13391030, at *1 (N.D. Cal. Sept. 30, 2011) (accepting amicus briefs related to preliminary injunction motion); *Infineon Techs. N. Am. Corp. v. Mosaid Techs., Inc.*, No. C 02–5772 JF(RS), 2006 WL

3050849, at *3 (N.D. Cal. Oct. 23, 2006). It has accepted *amicus* briefs in numerous other cases as well. *See e.g.*, *Becerra*, 381 F. Supp. 3d at 1164; *NetChoice, LLC*, 2023 WL 6131619, at *1 (accepting amicus briefs related to preliminary injunction motion); *Oakley v. Devos*, No.20-cv-03215-YGR, 2020 WL 3268661, at *18 n.34 (N. D. Cal. June 17, 2020) (same); *Inst. Of Med. Educ., Inc. v. W. Ass'n of Schs. & Colls.*, No.: 11–CV–05755–LHK, 2013 WL 6672443, at *3 n.1 (N.D. Cal. Dec. 18, 2013). *Amici* respectfully submit that their brief should likewise be accepted.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully submit that their Brief (annexed hereto as Exhibit A) will be useful to the Court and request that the Court grant their Motion for leave to file it. *Amici* welcome the opportunity to give voice to thousands of creators and copyright owners who reject Anthropic's practices and together hope that this Court will enjoin Anthropic from causing further harm to the creative communities.

Dated: August 5, 2024

Respectfully submitted,
PRYOR CASHMAN LLP

*s/ Benjamin S. Akley*
Benjamin S. Akley (State Bar No. 278506)
1801 Century Park East
Los Angeles, CA 90067
(310)683-6900
bakley@pryorcashman.com

Frank P. Scibilia (*pro hac vice* admission pending)
Joshua Weigensberg (*pro hac vice* admission pending)
Maya Katalan (*pro hac vice* admission pending)
PRYOR CASHMAN LLP
7 Times Square, 40th Fl.
New York, NY 10036
(212) 421-4100
fscibilia@pryorcashman.com
jweigensberg@pryorcashman.com
mkatalan@pryorcashman.com

*Counsel for Amici*

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on August 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing to all counsel of record.

*s/ Benjamin S. Akley*
Benjamin S. Akley
