[Counsel on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | Case Number: 3:24-cv-03811-JSC |
| Plaintiffs, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| ANTHROPIC PBC, | Initial CMC Date: August 15, 2024 |
| Defendant. | Time: 1:30 PM |
| | Hon. Jacqueline Scott Corley |

Pursuant to Fed. R. Civ. P. 16, Civil L.R. 16-9, the Standing Order for All Judges of the Northern District of California, and this Court's Civil Standing Order, counsel for the Parties in the above-captioned case hereby submit this Joint Case Management Statement.

## A. JURISDICTION AND SERVICE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) because this dispute involves claims brought by Plaintiffs (collectively, "Publishers")[1] against Defendant Anthropic PBC under the Copyright Act, 17 U.S.C. § 101 *et seq*. On June 24, 2024, the U.S. District Court for the Middle District of Tennessee granted in part and denied in part Anthropic's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue, finding that it lacked personal jurisdiction, and transferred the case to this Court in the Northern District of California under 28 U.S.C. § 1631. ECF No. 124. Accordingly, there are no outstanding issues concerning personal jurisdiction or venue. No Parties remain to be served at this time.

---

[1] Plaintiffs are Concord Music Group, Inc. ("Concord"); Capitol CMG, Inc., Universal Music Corp., Songs of Universal, Inc., Universal Music - MGB NA LLC, Polygram Publishing, Inc., Universal Music - Z Tunes LLC (collectively, "Universal"); and ABKCO Music, Inc ("ABKCO").

**B.  FACTS**

**Publishers' Position**. Publishers allege that Anthropic systematically infringes their copyrighted song lyrics, including the 500 musical compositions listed on Exhibit A to the Complaint (the "Asserted Works"), through Anthropic's AI models. ECF No.1.

Anthropic unlawfully copies and disseminates vast amounts of copyrighted works as the input and output of its AI models—including the lyrics to myriad musical compositions owned or controlled by Publishers. By copying and distributing Publishers' lyrics in this manner without permission, Anthropic violates Publishers' copyrights, unlawfully enriches itself at the expense of Publishers and songwriters, and diminishes the inherent value of their works. Anthropic is acutely aware that it is copying wide swaths of copyrighted materials without permission or legal authority to support its fair use defense, yet persists in its illegal conduct in order to build a multi-billion dollar business. Anthropic could choose to license the content it requires to create its AI products, but it would rather steal that content to reduce its costs. This makes Anthropic's conduct willful.

Publishers assert four claims against Anthropic. <u>First</u>, Publishers allege that Anthropic directly infringes Publishers' copyrighted lyrics by reproducing these works in training datasets and as part of its AI models, as well as by reproducing, distributing, displaying, and preparing derivative works based on these works as the output of its AI models. <u>Second</u>, Publishers allege that Anthropic contributorily infringes Publishers' copyrighted works, given that Anthropic is aware of its licensees and users' infringing activity, but nevertheless facilitates and encourages that infringement, by providing access to its infringing AI models through its website, apps, and commercial application programming interface ("API"), and by hosting and transmitting content it knows to be infringing through those models. <u>Third</u>, Publishers allege that Anthropic vicariously infringes Publishers' copyrighted works, because Anthropic has the right and ability to supervise and control the infringing outputs of its AI models but fails to take reasonable steps to curb that infringing activity, and because Anthropic profits from that failure. <u>Fourth</u>, Publishers allege that Anthropic removes or alters copyright management information in violation of 17 U.S.C. § 1202, because Anthropic intentionally copies and disseminates Publishers' copyrighted lyrics through its AI models while omitting or altering the corresponding song titles, songwriter names, copyright

ownership information, and other copyright management information.

Given the irreparable and ongoing harm caused to Publishers by Anthropic's ongoing infringement, Publishers promptly filed a Motion for Preliminary Injunction in November 2023 when this case was first filed in the Middle District of Tennessee. ECF No. 40.[2] Now that the case has been transferred to this Court, Publishers have filed an updated Motion for Preliminary Injunction renewing that request. ECF No. 179. Publishers' motion requests a narrowly tailored preliminary injunction to stem the significant harm from Anthropic's conduct while the case proceeds.

Although the AI technology involved in this case may be complex, the legal issues presented in this case and by Publishers' Motion for Preliminary Injunction are straightforward. Indeed, Anthropic concedes the critical facts of its infringement: Anthropic has not disputed that it copies Publishers' lyrics on a massive scale to train its AI models; that its models reproduced, distributed, and displayed copies of those lyrics; and that, additionally, its models generated twisted derivatives of those lyrics that are antithetical to their creators' intent—all without permission (as is made clear in Anthropic's prior preliminary injunction opposition, ECF No. 67).

Anthropic's defenses stated below are baseless. In short, Anthropic cannot pin the blame for its infringement on users of its AI models, when it is Anthropic that chose to copy Publishers' works as input to train those models and when it is Anthropic that controls the output of those models; Anthropic cannot meet its burden of proving that its commercial exploitation of Publishers' works to build and operate its AI models constitutes fair use, which is contrary to the caselaw and the record in this case; and Anthropic cannot evade entry of a preliminary injunction on the basis of its unfounded—and self-contradictory—claims that Publishers are somehow simultaneously rushing to judgment and delaying. Likewise, Publishers intend to oppose Anthropic's anticipated Motion to Dismiss, and will address those arguments in detail in their opposition after Anthropic's motion is filed.

---

[2] That court did not rule on that motion before transferring the case to this Court.

Because Anthropic directly, contributorily, and vicariously infringes Publishers' copyrights, and omits or alters copyright management information, Publishers seek judgment in their favor on each of these claims, preliminary and permanent injunctive relief, statutory and/or actual damages, and additional relief as detailed in Publishers' complaint.

**Anthropic's Position.** Anthropic argues that preliminary relief is unwarranted, that Publishers' ancillary claims should be dismissed, and that a full record in this case will demonstrate that Plaintiffs' core claim fails because the transformative use of copyrighted materials to train revolutionary Large Language Models (LLMs) like Claude is a paradigmatic fair use. Far from "conced[ing]" infringement or the alleged facts underlying Plaintiffs' claims, Anthropic looks forward to setting the record straight regarding how it trains its models, for what purpose, and the outputs Claude generates as this case proceeds past the pleading stage.

This lawsuit against Anthropic is one of over two dozen cases of first impression making their way through the federal courts, all of which raise similar copyright infringement claims against generative AI companies—and none of which seeks the extraordinary preliminary injunctive relief sought in this case. The Court should decline Plaintiffs' invitation to rush to judgment on the novel question of whether training LLMs is fair use on the truncated record of Plaintiffs' outlier preliminary injunction motion, which Plaintiffs have renewed over a year after they first discovered the conduct giving rise to their claims and almost ten months after prioritizing forum shopping over a speedy resolution of those claims. ECF No. 179. As the transferor Court explained, "Plaintiffs made a strategic decision to sue a California-based company in the Middle District of Tennessee, and in doing so ran the risk of encountering a jurisdictional hurdle too high to climb." ECF No. 123. Plaintiffs' decision to risk delay in favor of the convenience of their preferred forum, while knowing Anthropic would move to dismiss or transfer, belies the purported exigency of Plaintiffs' preliminary injunction motion. Plaintiffs have made no meaningful document production, no depositions have occurred, and the record is otherwise completely underdeveloped for this Court to rule on an issue of first impression of this magnitude.

Now that the case is in the proper court, Anthropic also intends to move to dismiss Plaintiffs' ancillary claims for contributory and vicarious infringement and for violation of section 1202 of

the DMCA, because Plaintiffs have failed to state a claim as to any of those causes of action. *See*

*infra* § D.2. Courts in this district have pared similar claims away from other pending generative

AI litigations in favor of focusing on the core issue of whether training generative AI models is a

fair use of publicly available copyrighted works. Resolving Anthropic's motion at the outset here

will allow the parties and the Court to focus on that core claim of first impression.

To the extent any of Plaintiffs' claims are permitted to proceed past the pleading stage, they

will ultimately fail on the merits. First, any alleged intermediate use of Plaintiffs' song lyrics to

train Anthropic's generative AI models—specifically, as part of a back-end process to learn facts

and capture statistics about how humans use language—is fair use.[3] No court has ever held that

the making of an intermediate, internal copy of a copyright-protected work in service of generating

an ultimately non-infringing output constitutes copyright infringement.[4] Further, such intermediate

use neither has nor will adversely impact any existing or potential legitimate market for Plaintiffs'

copyrighted works. There is not currently, nor is there likely to ever be, a workable market for

licenses to use Plaintiffs' lyrics to train general purpose text-generative AI models like Claude.

Anthropic's inclusion of copyrighted works in the training corpus does not interfere with any

existing market for Plaintiffs' lyrics, for example, in karaoke programs or lyric-aggregating

websites. And it certainly doesn't interfere with any market for the non-lyric (i.e., musical) aspects

of Plaintiffs' musical works. The alleged inclusion of Plaintiffs' works in Claude's training corpus

is therefore a quintessential fair use. 17 U.S.C. § 107.

Nor can Anthropic be held secondarily liable for any alleged infringement by its users,

including because it lacks actual knowledge of specific instances of infringement (as would be

---

[3] *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 217 (2d Cir. 2015) (discussing Google's "ngrams" tool, which "allows researchers to comb over the tens of millions of books Google has scanned in order to examine 'word frequencies, syntactic patterns, and thematic markers'").

[4] *See, e.g.*, *id.* (fair use to copy all books in numerous university libraries to create a commercial, full-text searchable index); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) (fair use to copy images on the open internet and show thumbnail versions to users to offer image-search functionality); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) (fair use to copy student papers into a plagiarism detection tool).

required for contributory infringement) and because it does not obtain any financial benefit from users' infringement of Plaintiffs' lyrics specifically (as would be required for vicarious infringement). *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671, 673–74 (9th Cir. 2017).

Finally, Plaintiffs' claim that Anthropic violated the law by allegedly removing or altering copyright management information from lyrics fails because—even assuming Plaintiffs can show that such information has been removed or altered—they cannot prove that Anthropic acted with the requisite intent for liability to attach. 17 U.S.C. § 1202. Plaintiffs' claims should be rejected, and judgment entered in Anthropic's favor.

## C.  LEGAL ISSUES

The Parties identify the following legal issues that remain in dispute. These legal issues are not intended to be final or exhaustive; the Parties reserve the right to revise or include any other appropriate issues as they develop or become known to the Parties:

**Publishers' Claims/Issues**.

- Whether Anthropic has directly infringed Publishers' registered copyrights;
- Whether Anthropic has contributorily infringed Publishers' registered copyrights;
- Whether Anthropic has vicariously infringed Publishers' registered copyrights;
- Whether Anthropic's infringing conduct was willful;
- Whether Anthropic has violated the Copyright Act, 17 U.S.C. § 1202(b), such as by intentionally removing or altering Publishers' copyright management information;
- Whether Publishers are entitled to injunctive relief and to what extent, including preliminary injunctive relief;
- Whether Publishers are entitled to actual or statutory damages and in what amounts; and
- Whether any other forms of relief are due to any party, including attorneys' fees.

**Anthropic's Defenses/Issues**.

- Whether Publishers have standing to bring suit for each of the asserted works under 17 U.S.C. § 501;

- Whether Publishers can satisfy their burden of establishing that they own and maintain exclusive rights to the works for which they assert copyright infringement claims;

- Whether any alleged infringing conduct constitutes innocent infringement or non-willful infringement under 17 U.S.C. § 504; and

- The applicability of the fair use doctrine or other affirmative defenses raised or to be raised by Anthropic.

**D. MOTIONS**

**1. Prior Motions**

<u>Anthropic's Motion to Dismiss or, In the Alternative, to Transfer Venue (granted in part).</u> Anthropic previously filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue while this case was pending in the U.S. District Court for the Middle District of Tennessee. ECF No. 54. That court granted the motion in part, finding it lacked personal jurisdiction, and ordered the transfer of the case to this Court. ECF No. 124.

**2. Pending Motions/Disputes**

<u>Publishers' Motion for Preliminary Injunction (renewed motion filed August 1, 2024, ECF No. 179).</u> Publishers previously filed a Motion for Preliminary Injunction while this case was pending in the Middle District of Tennessee. ECF No. 40. That motion was filed on November 16, 2023, fully briefed as of February 14, 2024, and never ruled on. ECF No. 92.

Following the case's transfer to this Court, Publishers updated their Motion for Preliminary Injunction, including to address the application of relevant and controlling case law from this Court and Circuit, as well as intervening developments, and filed a renewed motion in this Court on August 1, 2024. ECF No. 179.

Putative *amici curiae* Recording Industry Association of America, National Music Publishers' Association, the Association of American Publishers, Inc., News/Media Alliance, Songwriters of North America, Black Music Action Coalition, the Music Artists Coalition, Artists Rights Alliance, and American Association of Independent Music moved for leave to file an *amicus* brief in support of Publishers' Motion for Preliminary Injunction on August 5, 2024. ECF

No. 193. Motions by putative *amici curiae* relating to the previously filed Motion for Preliminary Injunction in the Middle District of Tennessee also remain outstanding for this Court's consideration (although the *amici curiae* above indicated that their August 5 filing, ECF No. 193, incorporated and superseded their prior brief).[5]

Pursuant to the Parties' stipulated briefing schedule and the order entered by the Court, Anthropic's opposition to the Motion for Preliminary Injunction will be filed on August 22, 2024; and Publishers' reply will be filed on September 12, 2024. ECF No. 176. A hearing on this motion will take place on October 10, 2024. For witness-scheduling purposes, the Parties request the Court's guidance regarding whether the October 10 hearing will be an evidentiary hearing. Unless the Court would like to hear from witnesses in connection with Publishers' Motion for Preliminary Injunction, Publishers do not believe that an evidentiary hearing is necessary at this time, and that oral argument by counsel will assist the Court in sorting through the competent expert opinions and analyzing the law; that position is based on Publishers' submission of its motion and supporting documents, and Publishers reserve the right to update their position based on Anthropic's forthcoming opposition filing. Anthropic reserves its position on whether an

---

[5] While this case was pending in the Middle District of Tennessee, putative *amici curiae* Chamber of Progress and NetChoice, LLC moved for leave to file an amicus brief in opposition to Publishers' Motion for Preliminary Injunction on January 19, 2024, ECF No. 75; and putative *amici curiae* Recording Industry Association of America, National Music Publishers' Association, Association of American Publishers, Inc., News/Media Alliance, Songwriters of North America, Black Music Action Coalition, Artists Rights Alliance, the Music Artists Coalition, and American the Association of Independent Music moved for leave to file an *amicus* brief in support of Publishers' Motion for Preliminary Injunction on February 14, 2024, ECF No. 102. Both motions remain pending. Related motions to seal the Parties' filings regarding the Motion for Preliminary Injunction filed in the Middle District of Tennessee remain pending. *See* ECF Nos. 66, 104. Anthropic's opposition to Publishers' *amici* rested primarily on the fact that Publishers' *amici* did not seek leave until after Anthropic's opposition and *amici* were on file, even though they were filing in support of the movant Publishers. ECF No. 115. Publishers' *amici* responded to that argument in detail. ECF No. 117. As noted above, on August 5, 2024, Publishers' *amici* submitted a motion for leave to file an updated *amicus* brief, to which Anthropic has not objected and may address in its updated opposition. ECF No. 193. Anthropic's *amicus* NetChoice, LLC intends to submit a similar motion for leave to file an updated *amicus* brief. In light of the consent given to Plaintiffs' *amici*, Anthropic expects Plaintiffs will consent with respect to that updated brief.

evidentiary hearing is warranted until briefing has closed and defers to the Court on whether such a hearing would aid in the disposition of Plaintiffs' motion.

Anthropic's Motion to Dismiss (to be filed August 15, 2024). Anthropic intends to file a Rule 12(b)(6) Motion to Dismiss Publishers' non-direct infringement claims, which Publishers intend to oppose. Anthropic's anticipated motion will seek dismissal of (1) Publishers' contributory infringement claim (Count II), (2) Publishers' vicarious infringement claim (Count III), and (3) Publishers' claim under 17 U.S.C. § 1202(b) (Count IV). Pursuant to the Parties' stipulated briefing schedule and the order entered by the Court, Anthropic's motion will be filed on August 15, 2024; Publishers' opposition will be filed on September 5, 2024; and Anthropic's reply will be filed on September 17, 2024. ECF No. 176. A hearing on this motion will take place on October 10, 2024.

Dispute as to the timing of Anthropic's filing of its Answer relative to the Motion to Dismiss. The Parties disagree as to the timing of when Anthropic must file its Answer to Publishers' Complaint relative to the Motion to Dismiss. The Parties set forth their respective positions below.

**Publishers' Position.** The Federal Rules of Civil Procedure make crystal clear that Anthropic must answer Publishers' Complaint concurrently with or before filing another Rule 12 motion on August 15, 2024. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(2).

Anthropic previously filed a Rule 12 motion to dismiss, in which it could have—but did not—assert a failure-to-state-a-claim defense under Rule 12(b)(6). *See* ECF No. 55. Now, Anthropic seeks to file a ***second*** Rule 12 motion to dismiss, in which it intends to assert a Rule 12(b)(6) defense for the first time.

In such circumstances, the Federal Rules plainly state that Anthropic cannot assert such a 12(b)(6) defense until it first answers Publishers' Complaint. *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.").

Indeed, the Ninth Circuit has affirmed that, "[i]f a failure-to-state-a-claim defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised, but ***only*** in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (emphasis added), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). Numerous courts in this Circuit have gone so far as to deny 12(b)(6) motions on these grounds.[6]

Notably, Publishers do ***not*** argue that Anthropic should be precluded from asserting its 12(b)(6) defense entirely or that its anticipated Rule 12 motion should be denied on these grounds alone (though Publishers certainly intend to oppose the motion and believe it should ultimately be denied).

Rather, Publishers' position is simply that Anthropic cannot assert a 12(b)(6) defense now unless it does so concurrently with or after answering the Complaint, as required by the Rules.

Given that Anthropic has already agreed to have its Answer prepared and ready to file by August 15, *see* ECF No. 175 at 3 n.2, there is no conceivable prejudice to Anthropic in requiring it to file that already-prepared Answer at the same time it asserts its 12(b)(6) defense. Nor could allowing Anthropic to further delay filing that already-prepared Answer possibly "conserve resources" or otherwise promote efficiency, as it claims. Moreover, because Anthropic is not seeking to dismiss Publishers' direct infringement claim, there is no possibility that Anthropic's anticipated Motion to Dismiss will resolve the case in its entirety or render an Answer unnecessary.[7]

By contrast, Publishers would be seriously prejudiced by allowing Anthropic to further delay answering the Complaint. Publishers filed their Complaint almost a year ago, in October

---

[6] *See, e.g.*, *Shah v. General Motors LLC*, No. 23-CV-04319-SI, 2023 WL 8852491, at *9 (N.D. Cal. Dec. 21, 2023); *Sousa v. Walmart, Inc.*, No. 1:20-CV-00500-EPG, 2023 WL 5278662, at *11 (E.D. Cal. Aug. 16, 2023); *Harrell v. City of Gilroy*, No. 17-CV-05204-LHK, 2019 WL 452039, at *7 (N.D. Cal. Feb. 5, 2019).

[7] Nor is requiring Anthropic to file its Answer concurrently with its 12(b)(6) defense, as required by the Federal Rules, inconsistent with the prior stipulation referenced by Anthropic below, ECF No. 64, which certainly did not contemplate or permit Anthropic to violate the Federal Rules.

2023, yet Anthropic has still not filed its Answer and seeks to delay doing so indefinitely. Anthropic's Answer is directly relevant to, among other things, Publishers' renewed Motion for Preliminary Injunction, which is already pending (and which is based on Publishers' direct infringement claim that Anthropic does not seek to dismiss). If Anthropic were permitted to delay filing its Answer even longer, then Publishers and the Court would not have the benefit of that Answer in connection with resolving the Motion for Preliminary Injunction, which would further prejudice Publishers.

While courts have interpreted Rules 12(g) and (h) in light of the broader policy considerations of Rule 1, which promotes the "just, speedy, and inexpensive determination of every action and proceeding," here, those considerations clearly weigh in favor of requiring Anthropic to answer the Complaint now, consistent with the Rules, so as to avoid further delay in Anthropic's answering the Complaint.

None of the cases cited by Anthropic address a situation like the present case, where Publishers have raised the issue of the sequencing of Anthropic's Answer and Motion to Dismiss well **in advance** of the filing of the Motion to Dismiss, and where Anthropic has **already agreed** to have its Answer prepared and ready to file by August 15, *see* ECF No. 175 at 3 n.2. Rather, the cases Anthropic relies upon address instances in which Rule 12(g) and (h) arguments were made after the fact, and none of the alleged inefficiencies or prejudices addressed in those cases support Anthropic's position—to the contrary, they support Publishers. More broadly, Anthropic's reliance on the Ninth Circuit's *In re Apple* decision is misplaced. As numerous other district courts have recognized, *In re Apple* "does **not** stand for the blanket proposition that district courts may freely flout the Federal Rules whenever a party asks them to do so." *Coles Valley Church v. Oregon Land Use Bd. of Appeals*, No. 6:20-CV-00661-MK, 2021 WL 1950181, at *8 (D. Or. May 14, 2021) (emphasis added).[8] Yet flout the Federal Rules is precisely what Anthropic seeks do here.

---

[8] *See also, e.g.*, *In re Packaged Seafood Prod. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1174–75 (S.D. Cal. 2017) (recognizing that "it was not the *Apple* court's purpose to completely strike Rule 12(g)(2) from the rulebook," and "declin[ing] to exercise its discretion to disregard Rule 12(g)(2)"); *Harrell*

1       **Anthropic's Position**. As Publishers acknowledge, Anthropic did not waive its right or

2 ability to file a Rule 12(b)(6) motion by first filing a motion to dismiss or transfer due to the

3 original court's lack of personal jurisdiction. Anthropic was required to raise lack of personal

4 jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3) in its first Rule 12 motion,

5 or else waive those defenses. Fed. R. Civ. P. 12(g)(2)–(h)(1)(a). But the same was not true of

6 Anthropic's arguments under Rule 12(b)(6), which were not waived by the fact that Anthropic did

7 not assert them in the first instance. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th

8 Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). Indeed, it would have been

9 inefficient and a waste of party and judicial resources for the parties to have briefed a motion

10 concerning the merits of Publishers' pleading before a court that Anthropic correctly believed

11 lacked the authority to even hear the case. Instead, Anthropic reasonably reserved its Rule 12(b)(6)

12 defense for a court that has jurisdiction and in which venue is proper, and this Court can and should

13 consider its forthcoming motion before requiring Anthropic to file its Answer. *See Peterson v.*

14 *Gannett Co.*, 2020 WL 1935520, at *2 n.4 (D. Ariz. Apr. 22, 2020) (granting Rule 12(b)(6) motion

15 that defendants filed after successfully moving to transfer from District of Massachusetts for

16 improper venue pursuant to Rule 12(b)(3)). In fact, this is the ordering of events expressly

17 contemplated in a stipulation filed with the transferor court, in which the parties agreed to

18 Anthropic's time to "answer *or otherwise respond*" to the Complaint after the court ruled on

19 Anthropic's initial Rule 12 motion. ECF No. 64 at 6 (emphasis added).

20       Ample Ninth Circuit precedent (including the case Publishers cite) permits this Court to

21 consider and resolve Anthropic's motion where doing so would promote judicial economy and

22 efficiency. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d at 317–18 (noting that the Ninth Circuit

23 is "forgiving" when a district court rules "on the merits of a late-filed Rule 12(b)(6) motion" to

24 avoid the "unnecessary and costly delays" that strict adherence to Rule 12(g)(2) can produce).

---

*v. City of Gilroy*, No. 17-CV-05204-LHK, 2019 WL 452039, at *8-9 (N.D. Cal. Feb. 5, 2019)
(distinguishing *In re Apple*, noting that it addresses only "whether a district court may"—not
must—"permissibly excuse a Rule 12(g)(2) violation," and ultimately "conclud[ing] that Rule
12(g)(2) bars [defendants'] motion to dismiss").

Similarly situated courts in this District have recently resolved successive pre-answer Rule 12(b)(6)

motions, including in other generative AI cases, even where the movant could have raised the same

grounds in its first Rule 12(b) motion. *See Tremblay v. OpenAI, Inc.*, No. 23-cv-03223-AMO, ECF

No. 162 at 3 n.4 (N.D. Cal. July 30, 2024) (granting OpenAI's motion to dismiss unfair competition

claim under Rule 12(b)(6), even though same arguments could have been made in OpenAI's initial

motion to dismiss); *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, ECF No. 253, at 7 (N.D. Cal.

June 24, 2024) (agreeing to consider successive Rule 12(b)(6) motion to "materially expedite[] the

district court's disposition of the case"); *see also AshBritt, Inc. v. Ghilarducci*, No. 20-c-v04612-

JSC, 2020 WL 7388071, at *5 (N.D. Cal. Dec. 16, 2020) (Corley, J.) (exercising discretion to

consider defendants' successive Rule 12(b)(6) motion "in the interests of judicial economy"). Here,

too, resolving Anthropic's pre-Answer motion to dismiss will conserve resources and promote the

efficient disposition of this litigation. If the Court grants Anthropic's motion, all but one of

Publishers' claims will be pruned from the case, allowing the parties and the Court to focus their

energies on the direct infringement allegations at the heart of the dispute. Considering the Rule

12(b)(6) motion now, rather than requiring Anthropic to re-file at a later date as a Rule 12(c) motion,

will thus narrow the issues, streamline discovery, shortcut potential disputes, and facilitate the

efficient progression of the case.

Publishers' argument that they would somehow be prejudiced by the Court hearing

Anthropic's motion before Anthropic answers the Complaint strains belief. Courts regularly decide

motions for temporary injunctive relief without the defendant having filed an Answer,[9] and here,

Publishers will have had ample opportunity to understand Anthropic's positions on the merits and

anticipated defenses through multiple rounds of briefing on Publishers' preliminary injunction

motion. It is Anthropic that would be prejudiced with having to prematurely answer and begin to

litigate Publishers' ancillary claims—which are not even the subject of the preliminary injunction

---

[9] *See, e.g., Demartini v. Microsoft Corp.*, No. 22-cv-08991-JSC, 2023 WL 3569993 (N.D. Cal.
May 19, 2023) (Corley, J.) (denying motion for preliminary injunction while Rule 12(b)(6) motion
still pending).

motion—when those claims may not survive a 12(b)(6) motion. The posture of the case is no different than what Publishers successfully insisted on, over Anthropic's objection, while the case was in M.D. Tenn., when they opposed sequencing Anthropic's motion to dismiss ahead of their preliminary injunction motion. ECF No. 56 at 3–10. And Anthropic has already been prejudiced by having to brief its preliminary injunction opposition before the case was in the right court and then to rebrief it here months later. It should not have to answer Publishers' Complaint before it is in final form.

### 3.  Anticipated Motions

Discovery dispute submissions. Following the beginning of fact discovery in this case in the Middle District of Tennessee on March 22, 2024, the Parties exchanged written discovery requests, exchanged responses and objections thereto, and discussed various alleged deficiencies in this discovery. Immediately prior to the case's transfer from the Middle District of Tennessee to this Court, the Parties were preparing a joint submission of discovery disputes to submit to that court. Following the transfer of the case to this Court, the Parties intend to continue to meet and confer in good faith, including with lead counsel, regarding these discovery disputes in an attempt to resolve any outstanding issues. If the Parties are unable to reach resolution, they will submit joint discovery dispute statements, addressing each dispute in a separate statement, consistent with Section F.2 of this Court's Standing Order. The Parties anticipate that they will submit joint discovery dispute statements to the Court regarding a number of discovery issues relating to outstanding discovery requests, pending a final meet and confer between lead counsel and finalization of the joint statements consistent with this Court's practices.

Other anticipated motions. The Parties further anticipate filing motions for summary judgment, *Daubert* motions, motions *in limine*, and other pre-trial, trial, and post-trial motions.

1  **E.  AMENDMENT OF PLEADINGS**

2       Publishers filed their Complaint in the United States District Court for the Middle District

3  of Tennessee on October 18, 2023. ECF No. 1. No other pleadings have been filed, and no other

4  claims, defenses, or counterclaims have been asserted.

5       **Publishers' Position.** Publishers propose that any motions to amend or to add Parties shall

6  be filed no later than December 2, 2024, and believe that the earlier date proposed by Anthropic is

7  not appropriate or realistic, given the significant discovery that remains to be completed in this

8  case (among other things, Anthropic has not yet produced any documents in response to Publishers'

9  March 22, 2024 discovery requests) and the fact that Anthropic's anticipated Motion to Dismiss is

10 not scheduled to be argued until October 10, 2024 and may not be resolved by Anthropic's

11 proposed amendment date, among other reasons discussed in Section O below. Contrary to

12 Anthropic's claim below, Publishers have diligently pursued discovery to date.[10]

13      **Anthropic's Position.** Anthropic proposes that any motions to amend or to add Parties

14 shall be filed no later than October 21, 2024, and believes a later date is not appropriate particularly

15 given that Publishers' stipulated deadline to amend under the existing case schedule (August 12,

16 2024) will have already passed by the time of the upcoming Case Management Conference, and

17 Publishers have not pursued discovery with any urgency since general fact discovery opened

18 several months ago in the Middle District of Tennessee.

19      In accordance with Civil L.R. 10-1, any party filing or moving to file an amended pleading

20 will reproduce the entire proposed pleading and may not incorporate any part of a prior pleading

21 by reference. Before filing the motion to amend, counsel for the moving party shall discuss the

22

23

24

25 _____

26 [10] At the time the case was transferred to this Court, Publishers were finalizing a joint discovery

27 dispute submission to the Middle District of Tennessee outlining over a dozen outstanding issues
   with respect to Anthropic's discovery responses; Publishers have requested to meet and confer

28 with Anthropic again in advance of promptly raising these issues as needed with this Court.

proposed amendment with all other counsel and shall state in the motion to amend whether the motion is opposed.

**F.  EVIDENCE PRESERVATION**

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues in this action.

**G.  DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26, the Parties exchanged their initial disclosures on March 22, 2024 while this case was pending in the Middle District of Tennessee.

**H.  DISCOVERY**

Fact discovery began on March 22, 2024 while this case was pending in the Middle District of Tennessee. On March 22, 2024, the Parties exchanged written discovery, including requests for document production, interrogatories, and requests for admission. The Parties exchanged responses and objections to the respective discovery requests on April 22, 2024.

In light of the transfer of this case to this Court, the Parties have mutually agreed to permit the withdrawal of any discovery requests or interrogatories that are no longer relevant or applicable (e.g., requests related to jurisdictional issues concerning the state of Tennessee).

The Parties also previously exchanged limited written discovery and produced documents in connection with Publishers' previously filed Motion for Preliminary Injunction in the Middle District of Tennessee. The Parties intend to start rolling productions shortly.

**Rule 26(f)(3)(A) – Timing and Scope of Initial Disclosures:** The Parties do not believe any changes need to be made in the timing, form, or requirement for disclosures under Rule 26(a). The parties served initial disclosures on March 22, 2024.

**Rule 26(f)(3)(B) – Scope of Anticipated Discovery:** Consistent with the Parties' discovery served to date, the Parties anticipate that the scope of fact discovery will include, but not be limited to, Publishers' claims of infringement, standing, and Anthropic's affirmative defenses.

Since exchanging initial written discovery, the Parties have mutually served on one another correspondence identifying alleged deficiencies with one another's responses and objections. The Parties have met and conferred in good faith several times in attempts to resolve their discovery disputes but anticipate the need for Court intervention on several issues. As noted in Sec. D.3, the Parties will continue to meet and confer to further narrow the issues that will require the Court's resolution. Where resolution cannot be reached, the Parties will submit joint statements stating the nature and status of these discovery disputes, consistent with the Court's Standing Orders. The Parties anticipate that they will submit joint discovery dispute statements to the Court regarding a number of discovery issues relating to outstanding discovery requests, pending a final meet and confer between lead counsel and finalization of the joint statements consistent with this Court's practices.

The Parties believe discovery need not be paused pending resolution of the forthcoming motions, and the Parties have agreed not to stay fact discovery while the Parties await a new case schedule entered by the Court.

**Rule 26(f)(3)(C)-(D) – ESI Protocol, Protective Order, and Federal Rule of Evidence 502(d) Order:** The Parties anticipate that they will stipulate to modestly updated versions of the ESI Protocol and Protective Order previously filed in the Middle District of Tennessee to ensure the orders conform with the Northern District of California Local Rules and practices and this Court's Standing Order. Those updated versions will be submitted to the Court for consideration and entry in short order.

In the interim, the Parties have agreed to provisionally adhere to the Protective Order entered in the Middle District of Tennessee, ECF No. 62.

**26(f)(3)(E) – Limitations on Fact Discovery:** The Parties agree that no changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure and the Local Rules are necessary at this time.

**I.   CLASS ACTIONS**

The matter is not a class action.

**J.   RELATED CASES**

To the Parties' knowledge, there are no related cases as defined by Civil L.R. 3-12.

**K.   RELIEF**

**Publishers' Position.** Publishers seek the following relief from the Court, as detailed more fully in their Complaint:

- A finding that Anthropic has directly infringed Publishers' copyrights under the Copyright Act, including for the Asserted Works;

- A finding that Anthropic has secondarily infringed Publishers' copyrights under the Copyright Act, including for the Asserted Works;

- A finding that Anthropic has unlawfully removed and/or altered Publishers' copyright management information in violation of the Copyright Act, including for the Asserted Works;

- A finding that such infringements and unlawful activity was willful;

- Under 17 U.S.C. § 504, statutory damages including in an amount up to $150,000 per Asserted Work infringed, or in the alternative, at Publishers' election, Publishers' actual damages and Anthropic's infringing profits for willful infringements of Publishers' copyrights;

- Under 17 U.S.C. § 1203(c), statutory damages in an amount up to $25,000 per violation, arising from Anthropic's removal and/or alteration of Publishers' copyright management information in violation of the Copyright Act, or in the alternative, at Publishers' election, Publishers' actual damages and Anthropic's profits.

- An order for such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Publishers' copyrights and removal or alteration of Publishers' copyright management information, including preliminary and permanent injunctive relief;

- Pursuant to Publishers' Motion for Preliminary Injunction, an order requiring Anthropic to refrain from reproducing Publishers' copyrighted works, including Publishers' Asserted Works, to train future AI models;

- Pursuant to Publishers' Motion for Preliminary Injunction, an order requiring Anthropic to maintain effective guardrails in its currently available AI models to prevent outputs that reproduce, distribute, or display Publishers' lyrics or create derivative works using those lyrics, including Publishers' Asserted Works;

- An order requiring Anthropic to provide an accounting of the training data, training methods, and known capabilities of its AI models, including requiring that Anthropic identify the Publishers' lyrics and other copyrighted works on which it has trained its AI models;

- An order requiring that Anthropic destroy under the Court's supervision all infringing copies of Publishers' copyrighted works in Anthropic's possession or control, and then file a sworn report setting forth in detail the manner in which it has complied with the aforesaid order, pursuant to 17 U.S.C. § 503(b);

- Publishers' reasonable attorneys' fees and costs in this action, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(4)-(5); and

- Pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Anthropic; and

- Such other and further relief as the Court deems proper.

**Anthropic's Position**. Anthropic disputes that Plaintiffs are entitled to any relief and reserves all of its defenses to liability and damages. Anthropic further reserves the rights to seek costs and expenses, including its reasonable attorneys' fees.

## L. SETTLEMENT AND ADR

Pursuant to ADR L.R. 3-5(b), ADR Certifications were filed by Publishers and Anthropic on July 11, 2024, ECF Nos. 138–142, 144. Pursuant to the Initial Case Management Order issued by the Middle District of Tennessee, ECF No. 64, the Parties previously discussed settlement in early May 2024 and concluded that the issues in this case were not sufficiently ripe for ADR or productive settlement discussions. That remains each side's view at this time. Nonetheless, the Parties will be prepared to discuss ADR options with the Court during the initial CMC.

**M. OTHER REFERENCES**

At this time, the Parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation. The Parties do not oppose having discovery disputes heard by a magistrate judge, to the extent the Court assigns a magistrate judge to this case.

**N.  NARROWING OF ISSUES**

The Parties are currently unable to narrow any issues by agreement or otherwise.

**O.  SCHEDULE**

The Parties have met and conferred and propose the respective case schedules as set forth in **Exhibit A**.

**Publishers' Position.** Publishers have proposed a case schedule that adjusts the deadlines initially entered in the Middle District of Tennessee by approximately four months, to reasonably account for the current status of fact discovery and the transfer of the case to this Court. Publishers believe that the ongoing irreparable harm to them from Anthropic's conduct can be stemmed through the entry of a preliminary injunction, but the case schedule should ultimately allow for sufficient discovery to enable the Court and jury to weigh all the issues. Significant fact discovery remains to be completed. Anthropic has not yet produced any documents in response to Publishers' March 22, 2024 requests for production (nor has it fully responded to various other initial written discovery from Publishers), and fact discovery in this case will require review and analysis of source code and other technical documents. Anthropic's suggestion that such discovery can be completed by early December of this year is unrealistic (particularly given that Anthropic has not yet even answered the Complaint) and demonstrates that its strategy is simply to try to run out the clock on discovery.

**Anthropic's Position.** Anthropic has proposed a schedule that departs only minimally from the deadlines the Parties had previously agreed to and the transferor court had approved. Given that the Parties agreed discovery would not be stayed pending the Court's consideration of Anthropic's motion to dismiss and Publishers' renewed preliminary injunction motion, there is no cause to depart substantially from that original schedule.

**P.  TRIAL**

Publishers have requested a trial by jury on all claims. The Parties anticipate trial will last approximately **ten (10) days**. Publishers request a trial date no earlier than March 16, 2026 and no later than April 1, 2026. Anthropic requests a trial date no earlier than December 2, 2025 and no later than January 13, 2026.

**Q.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-15, Publishers and Anthropic filed their Certifications of Interested Entities or Persons, ECF Nos. 134, 145–52,  certifying that apart from named parties, the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Publishers:

- ABKCO Music & Records, Inc., a New York corporation with its principal place of business in New York.

- Universal Music Publishing, Inc., a California Corporation with a principal place of business in California, which is wholly owned by Universal Music Group, Holdings, Inc.

- Universal Music Group Holdings, Inc., which is wholly owned by Universal Music Group, Inc.

- Universal Music Group, Inc., which is wholly owned by Universal Music Group, N.V, a publicly held corporation. More than 10% of Universal Music Group, N.V.'s stock is held by Compagnie de Cornouaille SAS and PS VII Master, L.P.

Anthropic:

- Google LLC, which is a wholly owned subsidiary of Alphabet, Inc.

**R.  PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## S.  OTHER MATTERS

The Parties have not identified any other matters that may facilitate the just, speedy, and inexpensive disposition of this action at this time.

1   Dated: August 8, 2024

2   By: */s/* Timothy Chung

3   **OPPENHEIM + ZEBRAK, LLP**
    Matthew J. Oppenheim

4   Nicholas C. Hailey
    Audrey L. Adu-Appiah

5   (admitted *pro hac vice*)
    4530 Wisconsin Ave., NW, 5th Floor

6   Washington, DC 20016
    Telephone: (202) 480-2999

7   matt@oandzlaw.com
    nick@oandzlaw.com

8   aadu-appiah@oandzlaw.com

9   Jennifer Pariser

10  Andrew Guerra
    Timothy Chung

11  (admitted *pro hac vice*)
    461 5th Avenue, 19th Floor

12  New York, NY 10017
    Telephone: (212) 951-1156

13  jpariser@oandzlaw.com
    andrew@oandzlaw.com

14  tchung@oandzlaw.com

15  **COBLENTZ PATCH DUFFY & BASS LLP**

16  Jeffrey G. Knowles (SBN 129754)
    Thomas A. Harvey (SBN 235342)

17  Christopher J. Wiener (SBN 280476)
    Bina G. Patel (SBN 315352)

18  One Montgomery Street, Suite 3000

19  San Francisco, CA 94104
    Telephone: (415) 391-4800

20  ef-jgk@cpdb.com, ef-tah@cpdb.com,
    ef-cgw@cpdb.com, ef-bgp@cpdb.com

21
    **COWAN, LIEBOWITZ & LATMAN, P.C.**

22  Richard S. Mandel

23  Jonathan Z. King
    Richard Dannay

24  (admitted *pro hac vice*)
    114 West 47th Street

25  New York, NY 10036-1525
    Telephone: (212) 790-9200

26  rsm@cll.com
    jzk@cll.com

27  rxd@cll.com

28
    *Attorneys for Plaintiffs*

Respectfully submitted,

By: */s/* Joseph R. Wetzel
**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
britt.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle
(admitted *pro hac vice*)
sy.damle@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman
(admitted *pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant*

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 8, 2024

_/s/_ Timothy Chung
Timothy Chung