**LATHAM & WATKINS LLP**
  Joseph R. Wetzel (SBN 238008)
   *joe.wetzel@lw.com*
  Andrew M. Gass (SBN 259694)
   *andrew.gass@lw.com*
  Brittany N. Lovejoy (SBN 286813)
   *britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  +1.415.391.0600

  Sarang V. Damle (*pro hac vice*)
   *sy.damle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

  Allison L. Stillman (*pro hac vice*)
   *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No. 3:24-cv-03811-JSC <br><br> **DEFENDANT ANTHROPIC PBC'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Hon. Jacqueline Scott Corley <br><br> Date:  October 10, 2024 <br> Time:  10:00 a.m. <br> Courtroom:  8 – 19th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on October 10, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, at the San Francisco Courthouse, Courtroom 8 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Anthropic PBC ("Anthropic"), through its undersigned counsel, will, and hereby does, move to dismiss Counts II through IV of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

Anthropic's Motion to Dismiss ("Motion") is based upon this Notice, the supporting Memorandum of Points and Authorities, the complete files and records in this action, and any additional material and arguments considered in connection with the hearing on the Motion.

## STATEMENT OF RELIEF SOUGHT

Anthropic seeks an order pursuant to FRCP 12(b)(6) dismissing Counts II through IV of the Complaint for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

Anthropic's Motion presents the following issues to be decided: (1) Whether Plaintiffs' claim of contributory infringement (Count II) should be dismissed for failure to identify an act of direct infringement and/or failure to plead Anthropic's knowledge of specific infringing acts by third parties; (2) Whether Plaintiffs' claim of vicarious infringement (Count III) should be dismissed for failure to identify an act of direct infringement and/or failure to plead Anthropic received a direct financial benefit from infringing acts by third parties; and (3) Whether Plaintiffs' claims under 17 U.S.C. § 1202(b) (Count IV) should be dismissed for failure to plead facts sufficient to hold Anthropic liable for violation of the Digital Millennium Copyright Act.

1  Dated:  August 15, 2024                    Respectfully submitted,

2                                             LATHAM & WATKINS LLP

3                                             By /s/ Joseph R. Wetzel
                                                 Joseph R. Wetzel (SBN 238008)
4                                                  joe.wetzel@lw.com
                                                 Andrew M. Gass (SBN 259694)
5                                                  andrew.gass@lw.com
                                                 Brittany N. Lovejoy (SBN 286813)
6                                                  britt.lovejoy@lw.com
                                                 505 Montgomery Street, Suite 2000
7                                                 San Francisco, California 94111
                                                 Telephone: +1.415.391.0600
8
                                                 Sarang V. Damle (*pro hac vice*)
9                                                  sy.damle@lw.com
                                                 555 Eleventh Street NW, Suite 1000
10                                                Washington, DC 20004
                                                 Telephone: +1.202.637.2200
11
                                                 Allison L. Stillman (*pro hac vice*)
12                                                 alli.stillman@lw.com
                                                 1271 Avenue of the Americas
13                                                New York, New York 10020
                                                 Telephone: +1.212.906.1747
14
                                                 *Attorneys for Defendant Anthropic PBC*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  I.    INTRODUCTION.................................................................................................. 1

3  II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

4  III.  LEGAL STANDARD ...................................................................................... 5

5  IV.   ARGUMENT .................................................................................................... 5

6        A.    Plaintiffs Fail to State a Contributory Infringement Claim ................... 5

7        B.    Plaintiffs Fail to State a Vicarious Infringement Claim......................... 8

8        C.    Plaintiffs Fail To State a Claim Under Section 1202(b) of the
              DMCA................................................................................................... 11
9
              1.    Plaintiffs' training-based Section 1202(b) claim fails. ........... 11
10
              2.    Plaintiffs' output-based Section 1202(b) claim fails. ............. 13
11
   V.   CONCLUSION ............................................................................................... 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Andersen v. Stability AI Ltd.*,
  700 F. Supp. 3d 853 (N.D. Cal. 2023) ........................................................................4, 9, 11, 14

*Annabooks, LLC v. Issuu, Inc.*,
  No. 20-cv-04271, 2020 WL 6873646 (N.D. Cal. Sept. 24, 2020)............................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................5

*Bell v. Pac. Ridge Builders, Inc.*,
  No. 19-cv-01307, 2019 WL 13472127 (N.D. Cal. June 4, 2019)...........................................10

*Capitol Recs., LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016)........................................................................................................7

*Davis v. Pinterest, Inc.*,
  No. 19-cv-07650, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ................................................6

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) .........................................................................4, 14, 15

*Doe 1 v. GitHub, Inc.*,
  No. 22-cv-06823, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024)................................................4

*Doe 1 v. GitHub, Inc.*,
  No. 22-cv-06823, Dkt. 253 (N.D. Cal. June 24, 2024)............................................................4

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ..................................................................................................9

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ..................................................................................................10

*Fashion Nova, LLC v. Blush Mark, Inc.*,
  No. 22-cv-6127, 2023 WL 4307646 (C.D. Cal. June 30, 2023)..............................................13

*Harrington v. Pinterest, Inc.*,
  No. 20-cv-05290, 2021 WL 4033031 (N.D. Cal., Sept. 19, 2021)...........................................7

*Harrington v. Pinterest, Inc.*,
   No. 20-cv-05290, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)..............................12, 13, 14

*Hartmann v. Popcornflix.com LLC*,
   690 F. Supp. 3d 309 (S.D.N.Y. 2023).......................................................................................8

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust
   Litig.*,
   28 F.4th 42 (9th Cir. 2022) ......................................................................................................12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................................................5

*Kadrey v. Meta Platforms, Inc.*,
   No. 23-cv-03417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .............................................4

*Kifle v. YouTube LLC*,
   No. 21-cv-01752, 2021 WL 10331555 (N.D. Cal. Oct. 5, 2021) ...............................................7

*Logan v. Meta Platforms, Inc.*,
   636 F. Supp. 3d 1052 (N.D. Cal. 2022) ..................................................................................13

*Luvdarts, LLC v. AT & T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ...........................................................................................6, 7, 8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)............................................................................................................6, 8

*Mills v. Netflix, Inc.*,
   No. 19-cv-7618, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ..................................................13

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
   No. 13-cv-03627, 2014 WL 280391, at *6 (N.D. Cal. Jan. 24, 2014)........................................8

*Perfect 10 v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...................................................................................................6

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ..............................................................................................6, 10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) .....................................................................................................9

*Richmond v. Weiner*,
   353 F.2d 41 (9th Cir. 1965) .......................................................................................................6

*Schneider v. YouTube, LLC*,
   No. 20-cv-04423, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) .............................................15

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................12

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .......................................................12, 14

*Stevens v. CoreLogic, Inc.*,
   194 F. Supp. 3d 1046 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir. 2018) ..........................14

*Stevens v. CoreLogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ......................................................12, 15

*Stross v. Meta Platforms, Inc.*,
   No. 21-cv-08023, 2022 WL 1843129 (C.D. Cal. Apr. 6, 2022) ..............................10

*Tremblay v. OpenAI, Inc.*,
   — F. Supp. 3d —, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ......................4, 11, 13

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
   936 F.2d 692 (2d Cir. 1991) ...............................................................6

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023) ...............................................................8

*YZ Prods. v. Redbubble*,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) ....................................................7

**STATUTES**

17 U.S.C.
   § 1202 ............................................................................ *passim*
   § 1202(b) ......................................................................... *passim*
   § 1202(b)(1) ..........................................................................11
   § 1202(b)(3) .......................................................................11, 14

**RULES**

Fed. R. Civ. P.
   12(b)(2) ...............................................................................4
   12(b)(3) ...............................................................................4
   12(b)(6) ............................................................................1, 5
   1404(a) ...............................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In March 2023, Anthropic launched "Claude," a next-generation AI assistant built to conform to a constitution of explicitly-set values that promote safety and accuracy.[1]  Today, Claude consists of a family of highly intelligent, reliable AI models that empower users in a wide variety of useful and creative applications.  Claude was designed to serve as a creative companion to human users, who can employ Claude for everything from personalized tutoring,[2] to assistance with coding,[3] to generating simple video games,[4] to improving productivity and creative writing skills,[5] to brainstorming plot ideas for stories.[6]

Plaintiffs' alleged version of events, however, is that Anthropic designed Claude as a mere stand-in for any number of public websites where the lyrics to popular songs are freely available to anyone with a web browser.  Plaintiffs are some of the largest music publishers in the United States,[7] who control vast catalogs of popular music compositions, including their lyrics.  Their lawsuit claims that Anthropic has engaged in mass infringement of Plaintiffs' copyrighted lyrics through Claude.  Their cited evidence is that they were supposedly able to get an outdated version of Claude to provide them with copies of their lyrics in response to prompts purposefully engineered by Plaintiffs' agents, with their authorization, to regurgitate their lyrics as evidence for this lawsuit.  But the Complaint does not identify any instances of ordinary

---

[1] *Claude's Constitution*, Anthropic (May 9, 2023), https://www.anthropic.com/news/claudes-constitution.

[2] *Introducing Claude*, Anthropic (Mar. 14, 2023), https://www.anthropic.com/news/introducing-claude ("*Introducing Claude*").

[3] *Introducing Claude 3.5 Sonnet*, Anthropic (June 20, 2024), https://www.anthropic.com/news/claude-3-5-sonnet.

[4] Anthropic, *Claude 3.5 Sonnet for sparking creativity*, YouTube (June 20, 2024), https://www.youtube.com/watch?v=rHqk0ZGb6qo.

[5] *Introducing Claude*, *supra* n.2.

[6] Anthropic, *Claude 3.5 Sonnet as a writing partner*, YouTube (June 20, 2024), https://www.youtube.com/watch?v=-dWfl7Dhb0o.

[7] Specifically, they are eight music publishers: Concord Music Group, Inc., six subsidiaries of Universal Music Group, and ABKCO Music, Inc.

Claude users inducing this alleged behavior. Rather, the Complaint's factual narrative focuses on copyright infringement allegedly committed directly by Anthropic, particularly in the process of training Claude—*not* by Claude users or by any other third parties. This motion does not address Plaintiffs' direct infringement theories, which are the subject of Plaintiffs' recently renewed preliminary injunction motion and lie at the heart of this and over two dozen other cases targeting generative AI technology with copyright infringement claims. Anthropic will address those claims in due course.

Anthropic moves here to prune away Plaintiffs' other legal theories ("Ancillary Claims"), which are facially implausible and supported by threadbare and conclusory allegations. *First*, Plaintiffs' secondary infringement claims warrant dismissal. They fail to plausibly allege (a) a predicate act of direct infringement by any third party, (b) that Anthropic had actual knowledge of any such infringement, which the law requires for contributory copyright infringement, or (c) that Anthropic received a direct financial benefit from users' infringing conduct, which is required to make out a vicarious infringement claim.

*Second*, Plaintiffs' claim that Anthropic removed copyright management information ("CMI") associated with Plaintiffs' song lyrics in violation of the Digital Millennium Copyright Act ("DMCA") should be dismissed—just as several virtually identical claims against other AI companies have been—because Plaintiffs have not plausibly alleged that Anthropic both intentionally removed such information and did so with knowledge that its conduct would conceal or facilitate infringement.

Disposing of these legally infirm Ancillary Claims now will allow the parties and the Court to focus their efforts on the core issue of whether the use of copyrighted materials to extract statistical and factual context for the purpose of training generative AI models like Claude is a transformative fair use under copyright law. Anthropic therefore respectfully requests that the Court grant this motion and dismiss Plaintiffs' Ancillary Claims for contributory infringement, vicarious infringement, and violation of the DMCA.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Anthropic is an artificial intelligence safety and research company that works to create research and create reliable, beneficial AI systems.[8]  Since 2021, Anthropic has made its mission to ensure transformative AI helps people and society flourish.[9]  As a public benefit corporation, Anthropic exists to pursue the responsible development and maintenance of advanced AI for the long-term benefit of humanity.[10]  It pursues this mission by developing, operating, and offering access to revolutionary generative AI models—highly specialized software capable of generating text and computer code at a level comparable to what a human could create.  Anthropic's flagship product, Claude, is offered as a conversational interface with which users can interact, chatbot-style, and which can carry on open-ended conversations involving complex reasoning, intelligent dialogue, and the creation of original content.

Claude actually comprises a series of AI models, each of which is a "large language model" or "LLM," a text-based system that uses deep learning to understand, summarize, generate, and predict new content.  To accomplish this, Claude models are trained on enormous data sets of preexisting written text—a "proprietary mix of publicly available information from the Internet, datasets that [Anthropic] license[s] from third party businesses, and data that [Anthropic's] users share or that crowd workers provide."  Dkt. 1 ("Compl.") ¶ 59.[11]  Anthropic's crawling user agent, ClaudeBot, discloses its web crawling to website operators, so that website operators are able to identify when and how ClaudeBot is accessing their sites.[12]  To train each Claude model, an expansive "training corpus" of textual data had to be broken down into tiny elements called "tokens," each of which comprises an average of 3.5 characters.  Compl. ¶ 54(c).  Like all LLMs, Claude required a vast number of tokens in its training corpus

---

[8] *Anthropic*, https://www.anthropic.com/ (last visited Aug. 14, 2024).

[9] *Company*, Anthropic, https://www.anthropic.com/company (last visited Aug. 14, 2024).

[10] *Id.*

[11] For purposes of this motion only, Anthropic accepts certain facts as alleged in the Complaint.

[12] *Model Card and Evaluations for Claude Models*, at 3, Anthropic, https://www-cdn.anthropic.com/f2986af8d052f26236f6251da62d16172cfabd6e/claude-3-model-card.pdf (last visited Aug. 14, 2024).

1   simply to allow it to recognize patterns in human language.  Anthropic is not interested in

2   extracting or recreating expressive content from any of the texts included in the training

3   corpus—as short as tokens are, they inherently *cannot* retain such expression.  Instead, Claude's

4   learning entails drawing purely statistical inferences about human language based on the

5   relationships among trillions of tiny fragments of text.

6        Plaintiffs claim that Anthropic infringes copyrights they allegedly own in "millions" of

7   musical compositions, although their Complaint asserts only 500 specific works.  Compl. ¶¶ 11,

8   37; Dkt. 1-3 (Compl. Exh. A).  Their Complaint appears to advance four separate theories of

9   liability: (1) that Anthropic used the lyrics to Plaintiff-controlled musical compositions as part of

10  Claude's training corpus; (2) that Claude generated "identical or nearly identical copies of those

11  lyrics" when prompted to do so by a user; (3) that Anthropic facilitated alleged copyright

12  infringement by Claude users; and (4) that Anthropic removed copyright management

13  information associated with Plaintiffs' lyrics and/or distributed copies of Plaintiffs' lyrics with

14  the copyright management information removed.  Based on these theories, Plaintiffs assert

15  claims for direct copyright infringement, contributory infringement, vicarious infringement, and

16  violations of Section 1202 of the DMCA.  Compl. ¶¶ 111–53.

17       Plaintiffs filed their Complaint on October 18, 2023, in the U.S. District Court for the

18  Middle District of Tennessee—which that court identified as a risky "strategic decision" (Dkt.

19  123 at 24)—to avoid litigating in this District, where copyright plaintiffs with similar claims

20  against other generative AI innovators have not fared well to date on their ancillary claims.[13]  In

21  response to Anthropic's motion under Rules 12(b)(2), 12(b)(3), and 1404(a), the Tennessee court

22

---

23  [13] *See, e.g.*, *Tremblay v. OpenAI, Inc.*, — F. Supp. 3d —, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) (granting motion to dismiss vicarious infringement and DMCA claims, among others);

24  *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) (granting motion to dismiss DMCA claims, among others); *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823, 2024 WL 235217 (N.D. Cal.

25  Jan. 22, 2024) (granting motion to dismiss DMCA claims, among others); *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823, Dkt. 253 (N.D. Cal. June 24, 2024) (granting motion to dismiss DMCA claim,

26  among others); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) (granting motion to dismiss vicarious infringement and DMCA claims, among

27  others); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853 (N.D. Cal. 2023) (granting motion to dismiss vicarious infringement and DMCA claims, among others).

28

1  found that it lacked personal jurisdiction and transferred venue to the Northern District of

2  California.  Dkts. 123, 124.  While that motion was pending, the parties had stipulated that

3  Anthropic would "answer *or otherwise respond*" once the court resolved Anthropic's

4  jurisdictional challenge.  Dkt. 64 at 6 (emphasis added).  Now that the case is in the correct court,

5  with this motion Anthropic otherwise responds.[14]

6  **III.    LEGAL STANDARD**

7         To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

8  factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

9  *Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "[A] formulaic recitation of the elements of a

10  cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court

11  need not accept allegations that are "merely conclusory," nor should it make unwarranted factual

12  deductions or unreasonable inferences.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055–57

13  (9th Cir. 2008).

14  **IV.    ARGUMENT**

15         Plaintiffs' Ancillary Claims should be dismissed due to four principal deficiencies:

16  (1) Plaintiffs fail to allege even one predicate act of infringement by a third party, as needed to

17  support their contributory and vicarious liability claims; (2) Plaintiffs fail to allege that

18  Anthropic had knowledge of specific infringing activity by any third party, as is required for

19  contributory infringement; (3) Plaintiffs fail to adequately plead Anthropic had a direct financial

20  interest in the unidentified Claude-user infringement that forms the basis of their vicarious

21  infringement claim; and (4) Plaintiffs' conclusory allegations do not plausibly satisfy Section

22  1202's exacting scienter requirements.  These deficiencies are discussed in context below.

23         **A.    Plaintiffs Fail to State a Contributory Infringement Claim**

24         To state a claim of contributory infringement, Plaintiffs must allege (1) direct

25  infringement by a third party; (2) that Anthropic had knowledge of that specific infringing

26  ───────────────

27  [14] While Plaintiffs now argue that Anthropic must answer before the Court decides this motion, Dkt. 203 at 9–11, Anthropic disagrees, for the reasons articulated in the parties' Joint Case Management Statement.  *Id.* at 12–14.

28

activity; and (3) that Anthropic either materially contributed to or induced that infringement. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670–71 (9th Cir. 2017).  Publishers fail this task several times over.

Notwithstanding Plaintiffs' speculative claims of "massive copyright infringement by [Claude's] users" (Compl. ¶ 11), the only specific examples provided in the Complaint reflect Plaintiffs' attempts to generate alleged copies of their own lyrics.  Compl. ¶¶ 66–69, 73–79. Those examples are *per se* non-infringing, so they cannot support a secondary infringement claim.  *See Richmond v. Weiner*, 353 F.2d 41, 42 (9th Cir. 1965) ("[A] copyright owner cannot infringe against his own copyright."); *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) ("It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him." (citation omitted)).  Plaintiffs thus identify no specific, directly infringing work for which Anthropic could be contributorily liable.

Plaintiffs also fail to allege that Anthropic had "actual knowledge that specific infringing material is available using its system"—as a plaintiff asserting a contributory infringement claim against an online server provider must.  *Giganews*, 847 F.3d at 671 (citing *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)).  Indeed, courts in this Circuit have repeatedly held that contributory infringement requires allegations that the defendant either had "actual knowledge of specific acts of infringement" or "[w]illful blindness of specific facts." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013); *see also, e.g.*, *Davis v. Pinterest, Inc*., No. 19-cv-07650, 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021) (dismissing contributory infringement claim where plaintiff's notice to defendant did not identify any specific acts of infringement).  The requirement of actual knowledge of specific infringing acts is rigorous: even general knowledge that a defendant's product "is in fact used for infringement" will not suffice absent knowledge of particular infringements of the plaintiff's work.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 933 (2005).

Here, there is no factual allegation that Anthropic knew of any specific infringing lyrics available to Claude users, or of any third party who had prompted Claude to output infringing

1   lyrics.  Instead, Plaintiffs rely on the conclusory allegation that "Anthropic has knowledge of

2   specific infringing responses generated by its AI models in response to user prompts."  Compl.

3   ¶ 122.  That allegation fails to plausibly allege the requisite knowledge for contributory

4   infringement.  *See, e.g.*, *Harrington v. Pinterest, Inc*., No. 20-cv-05290, 2021 WL 4033031, at *4

5   (N.D. Cal., Sept. 19, 2021) (dismissing claim for contributory infringement because plaintiff

6   "nowhere alleges that Pinterest knew or had reason to know that these two photographs were on

7   Pinterest"); *YZ Prods. v. Redbubble*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021) (dismissing

8   contributory infringement claim because bare allegation that defendant had "specific knowledge

9   of" infringement "through Defendant's system" was too conclusory); *Kifle v. YouTube LLC*, No.

10  21-cv-01752, 2021 WL 10331555, at *6 (N.D. Cal. Oct. 5, 2021) (dismissing secondary liability

11  claim where plaintiff alleged merely that YouTube "has actual and constructive knowledge that

12  You[T]ubers are employing You[T]ube.com's live stream feature to intercept Plaintiff's

13  copyrighted live broadcasts").

14          Plaintiffs do not even allege that Anthropic had any awareness of Plaintiffs' own efforts

15  to reproduce their lyrics using Claude before Plaintiffs filed their lawsuit, which highlights

16  another issue: how, without any notice from Plaintiffs, Anthropic could have determined whether

17  any specific use in question was infringing or, alternatively, authorized by Plaintiffs—

18  particularly since, as it turns out, the outputs of song lyrics highlighted in the Complaint were

19  initiated by Plaintiffs themselves.  *See Harrington*, 2021 WL 4033031, at *4 (noting plaintiff not

20  only failed to allege that Pinterest knew the identified photographs existed on Pinterest, but also

21  "nowhere allege[d] . . . that Pinterest knew or had reason to know that these photographs were

22  infringing"); *cf. Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 97 (2d Cir. 2016) (finding

23  employees of service provider defendant could not be "expected to know how likely or unlikely

24  it may be that the user who posted the material had authorization to use the copyrighted music").

25          Nor are there any claims that Anthropic was willfully blind to infringement on its

26  platform.  There are no allegations that Anthropic "took deliberate actions to avoid learning

27  about" specific facts related to the infringement of the works.  *Luvdarts*, 710 F.3d at 1073; *see*

28

*also Y.Y.G.M. SA v. Redbubble, Inc*., 75 F.4th 995, 1003 (9th Cir. 2023) (explaining, with respect to willful blindness, that the "duty to stop (or root out) infringement does not kick in . . . until the defendant has that specific knowledge" of infringement); *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 320 (S.D.N.Y. 2023) (finding "a conclusory allegation that a defendant employs digital rights management software, absent any allegation that the defendant investigated or would have had reason to investigate the alleged infringement" does not establish actual knowledge and is "insufficient to state a claim for contributory copyright infringement" (citation omitted)).

All that remains, then, are Plaintiffs' conclusory allegations that Anthropic was generally aware of the risk that Claude might return infringing lyrics because it was allegedly trained on copyrighted content. *See* Compl. ¶ 122 ("Anthropic knowingly trained its AI models on infringing content . . . in order to enable those models to generate responses to user prompts that infringe Publishers' copyrighted lyrics"). Even taking such speculation at face value, "generalized knowledge" of "the possibility of infringement" is not enough. *Luvdarts*, 710 F.3d at 1072; *see also Grokster*, 545 U.S. at 932–33 (courts may not "presum[e] or imput[e] intent . . . solely from the design or distribution of a product" used for infringement); *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 13-cv-03627, 2014 WL 280391, at *6 (N.D. Cal. Jan. 24, 2014) (Corley, J.) ("That Defendant operates a website where infringing content may be posted is not, by itself, enough to state a claim for contributory infringement."). Plaintiffs' contributory infringement claim should be dismissed.

### B.    Plaintiffs Fail to State a Vicarious Infringement Claim

Plaintiffs' vicarious infringement claim should also be dismissed. As a threshold matter, Plaintiffs' vicarious infringement claim fails, as their contributory infringement claim does, because the Complaint does not identify a single instance in which a third-party Claude user successfully generated an unauthorized copy of any of Publishers' works. *See supra* at 6. Other courts considering similar claims against AI companies have ruled that that alone is fatal to a

1    vicarious infringement claim.  *See, e.g.*, *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 869

2    (N.D. Cal. 2023).

3         Equally critically, Plaintiffs have failed to allege that Anthropic had a "direct financial

4    interest" in the purported—but wholly unidentified—user infringement that forms the basis of

5    Plaintiffs' claim.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).[15]

6    The crucial inquiry for this element is whether the plaintiff has plausibly alleged "a causal

7    relationship between the infringing activity and any financial benefit a defendant reaps."  *Ellison*

8    *v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

9         Each of Plaintiffs' three attempts to plausibly allege a "causal relationship between the

10   infringing activity and [Anthropic's] financial benefit" fails.  *Id.*  First, Plaintiffs allege that

11   "Anthropic receives revenues every time a user submits a request for Publishers' song lyrics . . .

12   and again every time the API generates output copying or relying on those lyrics."  Compl.

13   ¶ 137.  But, even taking this statement as true, the mere fact that Anthropic offers its service for a

14   fee and earns revenue from the use of the service does not suffice as a direct financial benefit for

15   purposes of establishing vicarious infringement.  Plaintiffs must allege that users paid to access

16   the service *in order to* generate content that infringed Plaintiffs' works.  *See, e.g.*, *Annabooks,*

17   *LLC v. Issuu, Inc.*, No. 20-cv-04271, 2020 WL 6873646, at \*4 (N.D. Cal. Sept. 24, 2020)

18   (dismissing vicarious liability claim where plaintiff alleged that defendant "generates revenue by

19   charging a fee to download works" but did not allege defendant "charged a fee to download the

20   [copyrighted] Work specifically" or that any "user ever downloaded the Work").  Here, Plaintiffs

21   do not allege that Anthropic receives revenue from users when they prompt Claude for Plaintiffs'

22   lyrics specifically, as opposed to every time they use Claude for any purpose.  And such a claim

23   would be implausible given the availability of the same lyrics free of charge to anyone with

24   internet access.  *See* Compl. ¶ 60.  Plaintiffs' general allegation that Anthropic generates revenue

25   when its users infringe—or don't infringe—is unavailing.

26

27

28

---

[15] Even if these Ancillary Claims were to survive this Motion, Plaintiffs also would not be able to establish other elements of their secondary infringement claims, such as inducement or a right and ability to supervise the allegedly infringing conduct.

Second, Plaintiffs' conclusory allegation that their "lyrics are . . . a draw for licensees and users" is also inadequate.  Compl. ¶ 138.  While a plaintiff may demonstrate financial benefit by showing that "the availability of infringing material acts as a draw for customers," *Giganews*, 847 F.3d at 673 (citation omitted), Plaintiffs have pleaded no facts to plausibly support their allegation that their lyrics, in particular, drew users to Claude—a general-purpose generative AI product capable of accomplishing countless creative and innovative tasks.  Again, the suggestion that users are drawn to pay for Claude because it allegedly provides lyrics that are readily available on numerous popular, free-to-access internet sites, is implausible.  *See* Compl. ¶ 60. Since Plaintiffs do not plausibly allege any facts establishing that users subscribed to Claude *because of* its alleged ability to output copies of Plaintiffs' lyrics, Plaintiffs have not adequately alleged that Anthropic received the necessary financial benefit to support a vicarious infringement claim.  *See Giganews*, 847 F.3d at 674 (affirming summary judgment dismissing vicarious infringement claim where "there was no evidence indicating that anyone subscribed . . . because of infringing [] material [owned by the plaintiff]"); *Bell v. Pac. Ridge Builders, Inc.*, No. 19-cv-01307, 2019 WL 13472127, at *6–7 (N.D. Cal. June 4, 2019) (dismissing vicarious infringement claim where plaintiff's allegations failed to "support a plausible inference . . . that the infringing material was a reason that [customers] purchased" defendant's services); *Stross v. Meta Platforms, Inc.*, No. 21-cv-08023, 2022 WL 1843129, at *3 (C.D. Cal. Apr. 6, 2022) (finding allegation "that copyright infringement in general occurs on" defendant's platform "not sufficient to show that Defendant drew users to Facebook *because of Plaintiff's infringed works*" (emphasis added)).

Finally, Plaintiffs' claim that *Anthropic* "saved a substantial amount of money by failing to properly pay licensing fees for the use of Publishers' copyrighted lyrics," Compl. ¶ 137, cannot support a vicarious infringement claim as a matter of law.  To the extent Plaintiffs' claim is that Anthropic required a license for its use of Plaintiffs' works, that claim sounds in direct infringement by Anthropic, as opposed to purported infringement by Anthropic's users.  *See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 830 (9th Cir. 2019) (where third-party website

1   developer used unlicensed photos to redesign defendant's website, rejecting plaintiff's argument

2   that defendant's avoidance of licensing fees conferred a direct financial benefit for purposes of

3   vicarious infringement as a "direct liability" argument).  The Court should dismiss Plaintiffs'

4   vicarious infringement claim for failure to plausibly allege a direct financial benefit to Anthropic.

5   **C.      Plaintiffs Fail To State a Claim Under Section 1202(b) of the DMCA**

6   Plaintiffs' DMCA claims must be dismissed because Plaintiffs' conclusory allegations do

7   not satisfy Section 1202's double-scienter requirement.  Plaintiffs have not plausibly alleged

8   facts establishing both: (1) that Anthropic's alleged removal or alteration of CMI was done

9   "intentionally" (or, for distribution-based claims, was done "knowing that [CMI] has been

10   removed or altered") and (2) that these acts were performed with "reasonable grounds to know"

11   that they "will induce, enable, facilitate, or conceal an infringement [of copyright]."  17 U.S.C.

12   § 1202(b)(1), (3); *Andersen*, 700 F. Supp. 3d at 871 (holding that a plaintiff alleging a Section

13   1202 claim "must plead facts plausibly showing that the alleged infringer had th[e] required

14   mental state" "[a]t the pleading stage"); *Tremblay v. OpenAI, Inc.*, — F. Supp. 3d —, 2024 WL

15   557720, at *4–5 (N.D. Cal. Feb. 12, 2024) (same).

16   **1.      Plaintiffs' training-based Section 1202(b) claim fails.**

17   Plaintiffs first allege that "in the process of *training* Anthropic's AI models," Anthropic

18   violated Section 1202(b)(1) by "intentionally remov[ing] or alter[ing] the copyright management

19   information associated with Publishers' lyrics."  Compl. ¶ 149 (emphasis added); *id.* ¶ 84.  In

20   particular, Plaintiffs allege that Anthropic removed songwriter names and song titles that appear

21   on lyric aggregators and websites, which are "required to identify such lyrics with the song title,

22   songwriter name(s), and other important identifying information."  *Id.* ¶ 85.  Plaintiffs offer no

23   facts in support of this theory.

24   First, the Complaint baldly asserts that Anthropic "intentionally removes . . . [CMI]

25   associated with Publishers' lyrics."  Compl. ¶ 84.  But saying the word "intentionally" is not

26   enough to plead a claim under Section 1202(b).  To state a claim, Plaintiffs must plead facts that

27   plausibly establish that Anthropic's mental state satisfies this prong of Section 1202(b)'s "double

28

ANTHROPIC'S MOTION TO DISMISS
CASE NO. 3:24-CV-03811-JSC

1  scienter" requirement.  *See Andersen*, 700 F. Supp. 3d at 871 (requiring a plaintiff to plead "facts

2  . . . showing that the alleged infringer had th[e] required mental state"); *Harrington v. Pinterest,*

3  *Inc.*, No. 20-cv-05290, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (dismissing a Section

4  1202(b) claim where there were "insufficient facts from which to reasonably infer" that the

5  defendant "intentionally removed CMI"); *see also Sprewell v. Golden State Warriors*, 266 F.3d

6  979, 988 (9th Cir. 2001) (explaining a court is not "required to accept as true allegations that are

7  merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

8      Factual allegations elsewhere in the Complaint actually *undercut* the theory that

9  Anthropic intentionally strips author names and song titles from its training data.  Indeed, in

10  other places, the Complaint alleges that Anthropic *retains* CMI.  For instance, Plaintiffs allege

11  that in response to the prompt "[g]ive me the chords to Daddy Sang Bass by Johnny Cash,"

12  Claude outputs "[h]ere are the chords for the song 'Daddy Sang Bass' by Johnny Cash."  Compl.

13  ¶ 76.  Were Anthropic intentionally removing all references to CMI associated with Plaintiffs'

14  lyrics before using the alleged copies to train Claude—as Plaintiffs appear to allege—these

15  outputs would be impossible.  Plaintiffs have, in short, "plead[ed] [themselves] out of a claim,"

16  *Sprewell*, 266 F.3d at 988, because the "plausibility of Plaintiffs' theory is undercut by other

17  allegations" in the Complaint, *In re Dynamic Random Access Memory (DRAM) Indirect*

18  *Purchaser Antitrust Litig.*, 28 F.4th 42, 49 (9th Cir. 2022); *see also Somers v. Apple, Inc.*, 729

19  F.3d 953, 964 (9th Cir. 2013) (finding theory "implausible in the face of contradictory [] facts

20  alleged in [the] complaint").

21      Nor do Plaintiffs allege facts that Anthropic removed CMI "knowing" that it "will

22  induce, enable, facilitate, or conceal . . . infringement."  17 U.S.C. § 1202(b).  As the Ninth

23  Circuit explained in *Stevens v. CoreLogic, Inc.*, "specific allegations as to how identifiable

24  infringements 'will' be affected are necessary."  899 F.3d 666, 674 (9th Cir. 2018).  Plaintiffs

25  must "make an *affirmative showing*, such as by demonstrating a past 'pattern of conduct' or

26  'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the

27  probable future impact of its actions."  *Id.* (emphasis added).

28

1    The Complaint falls well short of the standard set forth in *Stevens*.  Plaintiffs do not

2    allege that Anthropic's proprietary training data are publicly available, with or without CMI

3    included.  As a result, Plaintiffs offer no theory as to *how* Anthropic's supposed removal of CMI

4    will conceal or facilitate copyright infringement of any copyrighted content in that data.  17

5    U.S.C. § 1202(b).  Courts in this District have dismissed claims alleging similar conduct for a

6    failure to satisfy Section 1202's scienter requirements.  *See, e.g.*, *Tremblay*, 2024 WL 557720, at

7    *4 (holding that plaintiffs had not shown how "alleged removal of CMI in an internal database

8    will knowingly enable infringement").[16]  Here, Plaintiffs' training-based Section 1202 claim

9    suffers from the same defect, and thus demands the same outcome.

10            **2.    Plaintiffs' output-based Section 1202(b) claim fails.**

11    Plaintiffs also do not adequately plead a Section 1202(b) claim based on Claude's

12    outputs.  According to Plaintiffs, Anthropic violated Section 1202(b) by either removing or

13    altering CMI when generating output or "distribut[ing] or import[ing] for distribution copies of

14    Publishers' musical compositions knowing that copyright management information has been

15    removed or altered."  Compl. ¶ 149.  In support of that theory, Plaintiffs claim that "when

16    Anthropic's AI models regurgitate Publishers' lyrics, they are often unaccompanied by the

17    corresponding song title, songwriter, or other critical copyright management information."  *Id.*

18    ¶ 86.  But Plaintiffs' output-based claims, like their training-based claim, fail to satisfy Section

19    1202(b)'s "double scienter" requirement.  *Harrington*, 2022 WL 4348460, at *3.

20            First, to the extent Claude removed any Publisher CMI in the process of generating

21    outputs, Plaintiffs do not allege facts establishing that the removal was anything other than an

22    unintended byproduct of an automatic process.  *See, e.g.*, *Logan v. Meta Platforms, Inc.*, 636 F.

---

23

24    [16]  *See also Mills v. Netflix, Inc.*, No. 19-cv-7618, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3,
     2020) (dismissing DMCA claim because the complaint "fails to include specific allegations as to

25    how identifiable infringements will be affected by Defendants' alleged removing or altering of
     CMI" or "demonstrat[e] Defendants knew or had reason to know their actions would cause

26    future infringement." (cleaned up)); *Harrington*, 2022 WL 4348460, at *6 (same); *Fashion
     Nova, LLC v. Blush Mark, Inc.*, No. 22-cv-6127, 2023 WL 4307646, at *5 (C.D. Cal. June 30,

27    2023) (explaining that Section 1202(b) was enacted "to provide the public with notice that a
     work is copyrighted").

28

1   Supp. 3d 1052, 1064 (N.D. Cal. 2022) ("Unlike editing a plaintiff's watermark out of a photo,

2   automatically omitting CMI by embedding a photo out of the full context of the webpage where

3   the CMI is found cannot itself plead intentionality as required by the DMCA."); *see also Stevens*

4   *v. CoreLogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) ("Plaintiffs present no evidence

5   that CoreLogic intentionally removed CMI, as opposed to removal being an unintended side

6   effect of the fact that the software platform was based on a library that failed to retain metadata

7   by default."), *aff'd*, 899 F.3d 666 (9th Cir. 2018).  Again, simply deeming the removal

8   "intentional"—without more—is insufficient to plausibly state a claim.  *See supra* at 11–12.

9        Nor do Plaintiffs allege facts establishing that Anthropic distributed an infringing copy

10   of Plaintiffs' lyrics "knowing that copyright management information ha[d] been removed or

11   altered without authority of the copyright owner or the law."  17 U.S.C. § 1202(b)(3).  Plaintiffs

12   instead effectively parrot the language of the statute, claiming without facts that Anthropic

13   "kn[ew] that copyright management information has been removed or altered, without

14   Publishers' authorization and in violation of the Copyright Act."  Compl. ¶ 149.  Such

15   conclusory allegations cannot satisfy Section 1202's scienter requirement.  *See Andersen*, 700 F.

16   Supp. 3d at 871 (requiring a plaintiff to "plead facts . . . showing that the alleged infringer had

17   th[e] required mental state"); *Harrington*, 2022 WL 4348460, at *4–5 (dismissing a Section

18   1202(b) claim where there were "insufficient facts from which to reasonably infer" that

19   defendant "distributed . . . [w]orks with knowledge that CMI had been removed or altered"); *see*

20   *also Sprewell*, 266 F.3d at 988 (a court is not "required to accept as true allegations that are

21   merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

22        Plaintiffs likewise fail to plead that by producing outputs omitting Publishers' CMI,

23   Anthropic acted "knowing" that its conduct "will induce, enable, facilitate, or conceal []

24   infringement."  17 U.S.C. § 1202(b).  The facts in *Doe 1 v. GitHub, Inc.* provide a useful contrast

25   and show why the allegations here are inadequate.  672 F. Supp. 3d 837 (N.D. Cal. 2023).

26   There, the plaintiffs alleged that Defendants (including OpenAI) *knew* the code they used as

27   training data routinely contained CMI, that certain defendants *knew* CMI was important for

28

1    protecting copyright interests, and that certain defendants processed DMCA takedowns such that

2    they *knew* their platform was used to distribute copyrighted material with removed or altered

3    CMI in a manner that induced infringement.  *Id.* at 858; *see also Schneider v. YouTube, LLC*, No.

4    20-cv-04423, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022) (finding plaintiffs sufficiently

5    pleaded scienter on similar facts).  Plaintiffs plead no similar facts; the Complaint fails to

6    plausibly allege that Anthropic had "reasonable grounds to know" that its removal would

7    "induce, enable, facilitate, or conceal an infringement [of copyright]."  17 U.S.C. § 1202(b); *see*

8    *also Stevens*, 899 F.3d at 673 (finding that allegations that "someone *might* be able to use [the

9    copyrighted work] undetected . . . simply identifies a general possibility that exists whenever

10   CMI is removed," and fails to show the necessary mental state).

11   **V.    CONCLUSION**

12          Dismissing Plaintiffs' facially deficient Ancillary Claims will streamline the case and

13   allow the parties and the Court to focus their resources on a significant issue of first impression:

14   whether it is fair use to make unseen intermediate copies of copyrighted works for the

15   transformative purpose of training generative AI models like Claude.  Plaintiffs' implausible and

16   conclusory Ancillary Claims will only distract from that important task.  Anthropic therefore

17   respectfully requests that the Court dismiss Plaintiffs' Ancillary Claims for (1) contributory

18   infringement, (2) vicarious infringement, and (3) removal or alteration of copyright management

19   information, for failure to state a claim upon which relief may be granted.

20   Dated:  August 15, 2024                    Respectfully submitted,

21                                              LATHAM & WATKINS LLP

22                                              By */s/ Joseph R. Wetzel*
23                                                 Joseph R. Wetzel (SBN 238008)
                                                   *joe.wetzel@lw.com*
                                                   Andrew M. Gass (SBN 259694)
24                                                 *andrew.gass@lw.com*
                                                   Brittany N. Lovejoy (SBN 286813)
25                                                 *britt.lovejoy@lw.com*
                                                   505 Montgomery Street, Suite 2000
26                                                 San Francisco, California 94111
                                                   Telephone: +1.415.391.0600

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sarang V. Damle (*pro hac vice*)
   *sy.damle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman (*pro hac vice*)
   *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*