**LATHAM & WATKINS LLP**
  Joseph R. Wetzel (SBN 238008)
    *joe.wetzel@lw.com*
  Andrew M. Gass (SBN 259694)
    *andrew.gass@lw.com*
  Brittany N. Lovejoy (SBN 286813)
    *brittany.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  +1.415.391.0600

  Sarang V. Damle (*pro hac vice*)
    *sy.damle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

  Allison L. Stillman (*pro hac vice*)
    *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:24-cv-03811-EKL<br><br>**DEFENDANT ANTHROPIC PBC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hon. Eumi K. Lee<br><br>Date:  October 24, 2024<br>Time:  2:00 p.m.<br>Courtroom:  7, 4th Floor |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

I.     THE COURT SHOULD CONSIDER ANTHROPIC'S MOTION ................................. 1

II.    THE COURT SHOULD GRANT ANTHROPIC'S MOTION ...................................... 4

     A.    Plaintiffs' Secondary Infringement Claims Fail ...................................... 4

          1.     Plaintiffs still do not plausibly allege predicate acts of
                direct infringement.......................................................................... 4

          2.     Plaintiffs still fail to state a contributory infringement
                claim................................................................................................ 7

          3.     Plaintiffs still fail to state a vicarious infringement claim. ..................... 10

     B.    Plaintiffs' DMCA Claims Fail ............................................................... 12

          1.     Plaintiffs still fail to state a Section 1202(b) claim based on
                Anthropic's training. ..................................................................... 12

          2.     Plaintiffs still fail to state a Section 1202(b) claim based on
                Claude's outputs........................................................................... 14

CONCLUSION................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011) ...................................................................2

*Annabooks, LLC v. Issuu, Inc.*,
   2020 WL 6873646 (N.D. Cal. Sept. 24, 2020) .........................................................10

*Arista Records LLC v. Usenet.com, Inc.*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009).......................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................6, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................15

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
   2024 WL 1098786 (C.D. Cal. Feb. 12, 2024).............................................................9

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
   644 F. Supp. 3d 602 (C.D. Cal. 2022) ........................................................................9

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
   2018 WL 11361335 (N.D. Cal. Nov. 19, 2018) .........................................................3

*DeSoto Cab Co. v. Uber Techs., Inc.*,
   2020 WL 10575294 (N.D. Cal. Mar. 25, 2020) ..........................................................2

*DISH Network L.L.C. v. Jadoo TV, Inc.*,
   2020 WL 5816579 (N.D. Cal. Sept. 30, 2020) ..........................................................11

*Doe 1 v. GitHub*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) ......................................................................14

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) .....................................................................................7

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
   2015 WL 12655556 (C.D. Cal. Oct. 1, 2015)..............................................................4

*Harrell v. City of Gilroy*,
   2019 WL 452039 (N.D. Cal. Feb. 5, 2019) .................................................................2

*Harrington v. Pinterest, Inc.*,
  2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) .................................................................15

*In re Apple iPhone Antitrust Litig.*,
  846 F.3d 313 (9th Cir. 2017) ............................................................................................2, 3

*Intus Care, Inc. v. RTZ Assocs., Inc.*,
  2024 WL 2868519 (N.D. Cal. June 5, 2024) ........................................................................2

*Jacksonville Police Officers & Fire Fighters Health Ins. Tr. v. Gilead Scis., Inc.*,
  2023 WL 5600098 (N.D. Cal. Aug. 28, 2023) .....................................................................2

*Keck v. Alibaba.com Hong Kong Ltd.*,
  369 F. Supp. 3d 932 (N.D. Cal. 2019) ..........................................................................10, 11

*London-Sire Recs., Inc. v. Doe 1*,
  542 F. Supp. 2d 153 (D. Mass. 2008) ..................................................................................7

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ....................................................................................7, 8, 9

*Malibu Media, LLC v. Dhandapani*,
  2020 WL 6120175 (N.D. Tex. Feb. 12, 2020).....................................................................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*,
  545 U.S. 913 (2005)..............................................................................................................7

*Microsoft Corp. v. EEE Bus. Inc.*,
  555 F. Supp. 2d 1051 (N.D. Cal. 2008) ...............................................................................4

*Microsoft Corp. v. Rivera*,
  2019 WL 1641349 (C.D. Cal. Apr. 16, 2019) ......................................................................6

*Olan Mills v. Linn Photo Co.*,
  23 F.3d 1345 (8th Cir. 1994) ...............................................................................................4

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ...............................................................................................7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .............................................................................................10

*Peterson v. Sutter Med. Found.*,
  615 F. Supp. 3d 1097 (N.D. Cal. 2022) ...............................................................................3

*Rearden LLC v. Walt Disney Co.*,
  2018 WL 3031885 (N.D. Cal. June 18, 2018) ...................................................................12

*Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*,
   2013 WL 3462078 (N.D. Cal. July 8, 2013)..........................................................6

*Ryan v. CARL Corp.*,
   23 F. Supp. 2d 1146 (N.D. Cal. 1998) ..................................................................4

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .........................................................................6, 13

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
   93 F.4th 222 (4th Cir. 2024) ...............................................................................10

*Splunk Inc. v. Cribl, Inc.*,
   662 F. Supp. 3d 1029 (N.D. Cal. 2023) ...............................................................9

*Symantec Corp. v. Zscaler, Inc.*,
   2018 WL 1456678 (N.D. Cal. Mar. 23, 2018).....................................................2

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...............................................................6

*Tremblay v. OpenAI, Inc. (Tremblay I)*,
   2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ...........................................12, 13, 14

*Tremblay v. OpenAI, Inc. (Tremblay II)*,
   2024 WL 3640501 (N.D. Cal. July 30, 2024).......................................................2

*UMG Recs., Inc. v. Alburger*,
   2009 WL 3152153 (E.D. Pa. Sept. 29, 2009) ......................................................7

*Universal City Studios Productions LLLP v. TickBox TV LLC*,
   2018 WL 1568698 (C.D. Cal. Jan. 30, 2018) ......................................................5

*Utne v. Home Depot U.S.A., Inc.*,
   2022 WL 2954330 (N.D. Cal. July 26, 2022).......................................................2

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023) ...............................................................................8

*YZ Prods., Inc. v. Redbubble, Inc.*,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) .................................................................8

## STATUTES

17 U.S.C. § 1202(b) ...............................................................................................12

1          **INTRODUCTION**

2          Anthropic filed its Motion to Dismiss to promote efficiency. Recognizing that the cause

3   of action at the heart of this case—like the dozens of other pending lawsuits against generative

4   AI companies—is Plaintiffs' direct infringement claim concerning AI training data, Anthropic

5   seeks to trim away Plaintiffs' other, inadequately pleaded Ancillary Claims to allow the parties

6   and Court to focus on that central issue of first impression. Plaintiffs' Opposition only

7   underscores the deficiencies in their secondary liability and DMCA claims, highlighting the

8   unreasonable inferences they would require the Court to draw from the Complaint's threadbare

9   and speculative factual allegations. Excising these claims will permit the Court and the parties to

10  concentrate their resources on the merits of Plaintiffs' core direct infringement allegations.

11         Plaintiffs' procedural objection to Anthropic's Motion likewise fails as a matter of law

12  and would lead to inefficient resolution of the issues before the Court. After Plaintiffs gambled

13  on filing suit in a court that lacked personal jurisdiction to hear their case, the parties stipulated

14  to a schedule that by its terms allowed Anthropic to save its pre-answer Rule 12(b)(6) motion

15  until after its jurisdictional challenge was resolved. That timing promoted the efficient use of

16  party and court resources by avoiding a briefing on the merits before the wrong court. Moreover,

17  considering Anthropic's Motion now would be consistent with the flexible approach to Rule 12

18  applied by the courts of this Circuit, minimize prejudice to the parties, and advance the

19  efficiency considerations that motivated Anthropic's procedural approach in the first place.

20  Anthropic respectfully requests that the Court grant its Motion.

21  **I.      THE COURT SHOULD CONSIDER ANTHROPIC'S MOTION**

22         . Plaintiffs' argument that Anthropic's motion should be denied as untimely fails because

23  the parties negotiated and stipulated to a case schedule that permitted Anthropic to "answer *or*

24  *otherwise respond*" within 30 days of a decision on Anthropic's challenge to personal

25  jurisdiction. ECF No. 64 at 6, "Responsive Pleading" (emphasis added). Anthropic did not

26  "flout" the Rules by exercising its staged approach—Plaintiffs reneged on the parties' stipulated

27  schedule.

28

1     But even if the matter were not resolved by the stipulated scheduling order, this Court has

2  discretion to consider Anthropic's motion. The Ninth Circuit has adopted a "flexible and

3  efficiency-oriented" approach to successive motions to dismiss. *Symantec Corp. v. Zscaler, Inc.*,

4  2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018) (discussing *In re Apple iPhone Antitrust*

5  *Litig.*, 846 F.3d 313, 318 (9th Cir. 2017)). Indeed, in line with *In re Apple*, courts in this district

6  regularly consider such motions on the merits when doing so will "secure the just, speedy, and

7  inexpensive determination of [the] action" and avoid "unnecessary and costly delays." *Intus*

8  *Care, Inc. v. RTZ Assocs., Inc.*, 2024 WL 2868519, at *2 (N.D. Cal. June 5, 2024) (internal

9  quotation marks omitted); *see, e.g.*, *Tremblay v. OpenAI, Inc.* (*Tremblay II*), 2024 WL 3640501,

10  at *1 n.4 (N.D. Cal. July 30, 2024); *Jacksonville Police Officers & Fire Fighters Health Ins. Tr.*

11  *v. Gilead Scis., Inc.*, 2023 WL 5600098, at *2 (N.D. Cal. Aug. 28, 2023); *Utne v. Home Depot*

12  *U.S.A., Inc.*, 2022 WL 2954330, at *3 (N.D. Cal. July 26, 2022); *see also Harrell v. City of*

13  *Gilroy*, 2019 WL 452039, at *8 (N.D. Cal. Feb. 5, 2019) (recognizing that courts have discretion

14  to consider a successive motion to dismiss if it "does not prejudice the plaintiff and expedites

15  resolution of the case").

16     Considering Anthropic's motion would not contravene the purpose of Federal Rule of

17  Civil Procedure 12(g) "to avoid *repetitive* motion practice, delay, and ambush tactics." *In re*

18  *Apple*, 846 F.3d at 318 (emphasis added) (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*,

19  824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011)). The obvious target of Rule 12(g) is repeated

20  motions *of the same type*—for example, multiple Rule 12(b)(6) motions. *See, e.g.*, *Harrell*, 2019

21  WL 452039, at *8 (declining to allow a successive 12(b)(6) motion to dismiss where "[i]t would

22  have been far more efficient for [the defendants] to raise all Rule 12(b)(6) objections in one

23  motion" and concluding that the defendants' "scattershot approach to attacking [the plaintiff's]

24  causes of action impedes speedy resolution of the case"); *DeSoto Cab Co. v. Uber Techs., Inc.*,

25  2020 WL 10575294, at *3 (N.D. Cal. Mar. 25, 2020) (discussing multiple 12(b)(6) motions). But

26  this is Anthropic's first motion to dismiss directed at the merits, and the first motion to address

27  Plaintiffs' Ancillary Claims at all.

28

1       Resolving Anthropic's motion on the merits also serves judicial economy. Even if the

2  Court denied Anthropic's motion as untimely, Anthropic could file its answer and then raise the

3  same arguments in a Rule 12(c) motion for judgment on the pleadings. There is no reason to

4  require that exercise when the viability of Plaintiffs' Ancillary Claims turns on the contents of

5  the Complaint alone, and the Court could simply resolve this fully briefed motion on the merits

6  now. *See In re Apple*, 846 F.3d at 318–19; *see, e.g.*, *Peterson v. Sutter Med. Found.*, 615 F.

7  Supp. 3d 1097, 1110 (N.D. Cal. 2022) (considering successive 12(b)(6) motion on the merits to

8  avoid "unnecessary burden and delay" from addressing the same arguments in a later 12(c)

9  motion); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2018 WL

10  11361335, at *5 (N.D. Cal. Nov. 19, 2018) (same).

11       Plaintiffs are wrong that it would have been more efficient for Anthropic to have moved

12  to dismiss Plaintiffs' Ancillary Claims last November. Opp. 8. Briefing those issues in the wrong

13  jurisdiction and applying the wrong circuit's case law would have necessitated supplemental

14  briefing applying operative Ninth Circuit law after transfer. This would have undermined the

15  very goals that Rule 12(g) was designed to advance. *See In re Apple*, 846 F.3d at 318 (observing

16  that Rule 12(g) was designed to avoid repetitive motion practice). Anthropic's staged approach,

17  in contrast, avoided this additional waste of resources.

18       Finally, Plaintiffs cannot demonstrate any prejudice from considering Anthropic's motion

19  now on the merits. Their chief complaint is Anthropic's purported delay in filing its answer.

20  Opp. 7. But that is a problem of Plaintiffs' making. They "made a strategic decision to sue a

21  California-based company in the Middle District of Tennessee, and in doing so ran the risk of

22  encountering a jurisdictional hurdle too high to climb." Op. on Mot. to Dismiss for Lack of

23  Personal Jurisdiction, ECF No. 123 at 24. And they have offered only speculation to support

24  their claim of prejudice if their preliminary injunction motion is decided before Anthropic files

25  its answer. *See* Opp. 7. Courts routinely decide motions for preliminary relief without the benefit

26  of a defendant's answer, and Plaintiffs themselves advocated for this approach in the Middle

27

28

ANTHROPIC'S REPLY ISO
MOTION TO DISMISS
CASE NO. 5:24-cv-03811-EKL

1    District of Tennessee. *See* ECF No. 56 at 3–6. There is no reason the Court should not resolve

2    Anthropic's motion on the merits now.

3    **II.    THE COURT SHOULD GRANT ANTHROPIC'S MOTION**

4         Plaintiffs have failed to plausibly allege claims for contributory infringement, vicarious

5    infringement, and under the DMCA.  Their opposition does not save those claims.

6         **A.    PLAINTIFFS' SECONDARY INFRINGEMENT CLAIMS FAIL**

7         **1.    Plaintiffs still do not plausibly allege predicate acts of direct**
8              **infringement.**

9         For Plaintiffs to state a secondary infringement claim against Anthropic, Plaintiffs need

10   to adequately plead infringement by a third party—i.e., someone *other than* Plaintiffs, Plaintiffs'

11   agents, or Anthropic. That's why these claims are called *secondary*, not *direct*. Mot. 5–6. As

12   Anthropic explained, however, Plaintiffs' only specific, non-speculative allegations of directly

13   infringing outputs to support their secondary infringement claims are *their own agents'* uses of

14   Claude to generate purportedly infringing responses. Those uses of Plaintiffs' own works are *per*

15   *se* non-infringing because Plaintiffs' agents are extensions of Plaintiffs themselves. *Id.* at 6.

16        Plaintiffs respond that these allegations are sufficient, because a "defendant who, without

17   authorization, distributes or displays copyrighted works to a plaintiff's agent or investigator is

18   liable for infringement." Opp. 11. But this statement addresses a defendant's direct infringement,

19   not the creation of secondary liability based on the plaintiff's agent's "infringement." And

20   Plaintiffs' cases cited for this proposition are similarly focused on defendants' direct

21   infringement, induced by plaintiffs or their agents. *See Elohim EPF USA, Inc. v. Total Music*

22   *Connection, Inc.*, 2015 WL 12655556, at *12 (C.D. Cal. Oct. 1, 2015) (relying on plaintiff-

23   induced conduct to support direct infringement claims); *Microsoft Corp. v. EEE Bus. Inc.*, 555 F.

24   Supp. 2d 1051, 1058–59 (N.D. Cal. 2008) (relying on sales to plaintiffs' agents to support direct

25   infringement claim); *Ryan v. CARL Corp.*, 23 F. Supp. 2d 1146, 1148–49 (N.D. Cal. 1998)

26   (citing *Olan Mills v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir. 1994)) (analyzing standing to sue for

27   direct infringement). Plaintiffs' argument on this point is therefore irrelevant.

28

1    Plaintiffs' other cases are similarly unhelpful to them. Plaintiffs rely heavily on *Arista*

2  *Records LLC v. Usenet.com, Inc.*, to argue that allegations about investigators' activities were

3  "evidently sufficient" to support the plaintiffs' secondary infringement claims at the pleading

4  stage. Opp. 12–13. But *Arista* is distinguishable on multiple grounds. It was a summary

5  judgment decision—the court never resolved a 12(b)(6) motion. And *Arista*'s reasoning did not

6  rest solely, or even primarily, on evidence that plaintiffs' investigators had downloaded copies of

7  the works. In fact, the investigator evidence was unnecessary to the court's decision because the

8  court had already concluded (as the result of an adverse inference sanction) that each of

9  plaintiffs' copyrighted works had been downloaded by defendants' subscribers, which was alone

10  sufficient to support secondary liability. 633 F. Supp. 2d 124, 149–50 (S.D.N.Y. 2009).

11    *Universal City Studios Productions LLLP v. TickBox TV LLC* similarly does not hold that

12  plaintiffs' agents can supply the predicate acts of alleged "direct infringement" to support

13  secondary infringement claims. There, plaintiffs' investigator's ability to access copyrighted

14  content via the defendant's streaming device was offered as evidence that the defendant was an

15  "intermediary between *third parties* who directly infringe[d]" by broadcasting copyrighted works

16  using the defendant's service to the "[defendant's] customers." 2018 WL 1568698, at *10 (C.D.

17  Cal. Jan. 30, 2018) (emphasis added). Unlike here, the defendants' customers (in whose stead

18  plaintiffs' investigator was accessing content) were not alleged direct infringers,[1] and so

19  plaintiffs' agents' conduct was not offered to establish the predicate element of direct

20  infringement by a third party.

21    Unable to rely on their own acts to support secondary liability, Plaintiffs fall back on the

22  argument that if Plaintiffs' investigators were able to produce infringing outputs, that raises an

23  inference that other users "*would*" or "*could*" or "*may*" do so as well and therefore that specific

24  instances of direct infringement could exist. *See* Opp. 9–10, 12–13; *see also, e.g.*, Compl. ¶ 65.

25  That speculation cannot satisfy Plaintiffs' pleading burden—they must allege facts that "permit

---

26  [1] Instead, the direct infringers were third-party providers of streaming content displayed or
27  broadcasted to defendants' customers via defendants' streaming television device. 2018 WL
    156898, at *9–10.

28

the court to infer more than the *mere possibility* of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added); *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (plaintiff "must allege facts that rise beyond mere conceivability or possibility"). Implicitly acknowledging the Complaint's weaknesses, Plaintiffs seek to shore up these allegations with a new theory they did not plead with any specificity: that third-party users or business customers actually *are* causing Claude to generate infringing song lyrics. Plaintiffs now suggest that "[w]hen the third-party business itself or its end customer prompts the [*sic*] Claude to '[w]rite a short piece of fiction in the style of Louis Armstrong,' . . . the third-party business relays that prompt to an Anthropic server . . . ." Opp. 10 (citing Compl. ¶¶ 52, 79). This theory is nothing more than a new unsupported speculation. Plaintiffs cannot plead *any* concrete instance of a user—other than Plaintiffs' agents—who allegedly induced those outputs. Their hypothetical instances of infringement do not suffice.

Plaintiffs finally protest that they should not be required to "name and date every instance of direct infringement" to state a claim for secondary liability. Opp. 12. But Anthropic has never argued that: Instead, Plaintiffs must merely meet the basic pleading requirement to raise a plausible inference that *any* instance of direct infringement by an Anthropic user exists at all. Plaintiffs' remaining cases only highlight their failures to meet that requirement. These cases fall into two groups. In the first, although the *identity* of direct infringers was unknown, it was essentially uncontested that third-parties had committed acts of direct infringement. *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1159, 1165–66 (C.D. Cal. 2018) (plaintiff alleged facts to support predicate acts of infringement by anonymous third-party bot developers whose existence and actions were not in dispute); *Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*, 2013 WL 3462078, at *3–4 (N.D. Cal. July 8, 2013) (in case alleging infringement of method patents, finding that plaintiff plausibly stated inducement claim where its allegation that some customers purchased and used infringing device was not contested, but specific customers were unidentified); *Microsoft Corp. v. Rivera*, 2019 WL 1641349, at *3 (C.D.

1   Cal. Apr. 16, 2019) (default judgment case where it was "undisputed that [defendant's]

2   customers have unwittingly infringed"). There are no similar allegations here.

3          In the second group of cases Plaintiffs cite, courts found a defendant's *direct*

4   infringement of the distribution right was adequately pleaded where the plaintiff alleged the

5   defendant made the work available for download but not that any user actually downloaded it.

6   *Cf. Malibu Media, LLC v. Dhandapani*, 2020 WL 6120175, at *3 (N.D. Tex. Feb. 12, 2020);

7   *UMG Recs., Inc. v. Alburger*, 2009 WL 3152153, at *3 & n.41 (E.D. Pa. Sept. 29, 2009);

8   *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 169 (D. Mass. 2008). These direct

9   infringement cases do not save Plaintiffs' secondary liability claims, again, because Plaintiffs

10  must identify a third-party direct infringer as an element of those claims. Alleged direct

11  infringement of Plaintiffs' distribution right *by Anthropic* cannot also support a secondary

12  infringement claim against Anthropic.

13         Plaintiffs' failure to allege that anyone *other* than Anthropic committed any act of direct

14  infringement alone calls for dismissal of both of Plaintiffs' secondary liability claims.

15                 **2.     Plaintiffs still fail to state a contributory infringement claim.**

16         Plaintiffs' contributory infringement claim also fails for the independent reason that the

17  Complaint fails to plausibly allege that Anthropic either had "knowledge of specific acts of

18  infringement" or was "willfully blind" to "specific facts" about infringement. Mot. 6–8

19  (discussing *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013));

20  *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670–71 (9th Cir. 2017). Plaintiffs'

21  responses fail to cure this fatal deficiency.

22          Plaintiffs assert that they need only show Anthropic had "reason to know of direct

23  infringement." Opp. 15 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). But

24  that is no longer the standard in the Ninth Circuit. *Ellison* predated the Supreme Court's decision

25  in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*, which clarified the requirement of actual

26  knowledge of particular infringements of the plaintiff's work. 545 U.S. 913, 933–34 (2005).

27  Since *Grokster*, the Ninth Circuit has required a plaintiff to demonstrate *actual* knowledge of

28

1  "specific" infringements or willful blindness as to "specific facts." *Luvdarts*, 710 F.3d at 1072–

2  73; *see also Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023) (noting that "for

3  contributory copyright infringement, we require knowledge of specific infringers or instances of

4  infringement" (emphasis omitted)). Conclusory allegations about a defendant's knowledge do

5  not suffice. *See YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021).

6          Viewed under the proper standard, Plaintiffs' allegations that "Anthropic has knowledge

7  of specific infringing responses generated by its AI models in response to user prompts" and "is

8  well aware of its licensees' and users' infringing activity through its AI products" are

9  insufficient. Opp. 15 (citing Compl. ¶ 122). These high-level, generalized allegations about what

10 Anthropic knows are nothing more than legal conclusions couched as factual allegations and

11 cannot plausibly support Plaintiffs' claim. *See, e.g.*, *YZ Prods.*, 545 F. Supp. 3d at 764

12 (conclusory allegation that defendant had "specific knowledge of" infringement "through

13 Defendant's system" did not plausibly support contributory infringement claim).

14         Plaintiffs argue that their "numerous examples of specific Claude outputs copying

15 Publishers' lyrics identified in the Complaint" are sufficiently "specific" acts of infringement—

16 but Plaintiffs make no allegations about Anthropic's knowledge of those examples prior to the

17 filing of the Complaint. Opp. 15 (citing Compl. ¶¶ 66–79). Plaintiffs' argument only works, then,

18 if one assumes that Anthropic has specific knowledge of each and every automated response that

19 all of its users have ever elicited from Claude, whether that response reproduced a copyrighted

20 work, and whether that response was reproduced with the copyright owner's, or its agent's

21 authorization. But that assumption is not alleged in the Complaint—nor could it be, as it is wildly

22 implausible (and untrue). And it is unreasonable to infer from the facts that *are* alleged.

23         The remainder of the allegations Plaintiffs highlight are allegations of direct infringement

24 by Anthropic or its general awareness of the *potential* for third-party infringement on its

25 platform. *See* Compl. ¶ 59 ("Anthropic  . . . is aware that *it* is copying copyrighted materials

26 without authorization from the copyright owners."(emphasis added)); *id.* ¶ 83 ("Anthropic

27 understands that generating output that copies others' lyrics violates copyright law."); *id.* ¶ 122

28

1    ("Anthropic knowingly trained its AI models on infringing content on a massive scale[.]"). But

2    as discussed above, Anthropic's alleged direct infringement cannot be the predicate act to

3    support Plaintiffs' secondary infringement claim, and "generalized knowledge" of "the

4    possibility of infringement" by third parties is also not enough. *Luvdarts*, 710 F.3d at 1072.

5          The cases Plaintiffs rely on here do not support their arguments. For example, in *BMG*

6    *Rights Management (US) LLC v. Joyy Inc.*, the court found the plaintiff's knowledge allegations

7    sufficient where it alleged, in its fourth amended complaint, that it made *over 1,500 specific*

8    *takedown requests* to the defendant about infringing content. 2024 WL 1098786, at *4 (C.D. Cal.

9    Feb. 12, 2024). Plaintiffs make no such allegations here. Rather, Plaintiffs' pleading has more in

10   common with a *prior* complaint in *BMG*, which the court dismissed, finding that the plaintiff had

11   identified "a handful of specific examples of infringement that *it* is aware of," but "fail[ed] to

12   identify any individual copyrighted song that *Defendants* knew was being infringed." *BMG Rts.*

13   *Mgmt. (US) LLC v. Joyy Inc.*, 644 F. Supp. 3d 602, 609 (C.D. Cal. 2022) (emphasis added).

14   Those allegations of "generalized knowledge of the possibility of infringement … amount[ed] to

15   little more than a threadbare recital of an element for contributory infringement." *Id.* The same is

16   true here.

17         *Splunk Inc. v. Cribl, Inc.* also doesn't support Plaintiffs' argument. There, the court could

18   reasonably infer the defendant CEO knew of his company's and its customers' infringement of a

19   specific copyrighted work, given allegations he had personally copied that specific work into the

20   company's code, which was included and used in all copies of the company's software sold to

21   customers. 662 F. Supp. 3d 1029, 1052 (N.D. Cal. 2023). The facts are very different here: the

22   alleged predicate infringements are neither the distribution of Claude nor users' use of Claude

23   generally, but the allegedly infringing copies of song lyrics that Plaintiffs' agents allegedly

24   prompted Claude to generate. There are no facts alleged to plausibly support the inference that

25   Anthropic directed or knew of these specific outputs, or any of the speculative and unidentified

26   instances of anyone other than Plaintiffs' using Claude to infringe Plaintiffs' asserted copyrights.

27

28

1    Because Plaintiffs fail to plausibly allege Anthropic's knowledge of specific infringing

2    activity, Plaintiffs' contributory infringement claim should be dismissed

3              **3.    Plaintiffs still fail to state a vicarious infringement claim.**

4         Plaintiffs' vicarious infringement claim fails because Plaintiffs have not alleged that

5    Anthropic has any financial interest, let alone a "direct financial interest," in any third-party

6    infringement. Mot. 9–11 (discussing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802

7    (9th Cir. 2007)).  Plaintiffs have no answer for that deficiency.

8         First, Plaintiffs argue that Anthropic has a direct financial interest in third-party

9    infringement because "Anthropic receives revenues every time a user submits a request for

10   Publishers' song lyrics . . . and again every time the API generates output copying or relying on

11   those lyrics." Opp. 17 (citing Compl. ¶ 137); *see also* Compl. ¶ 94 ("Anthropic is paid every

12   time its Claude API generates output copying and relying on those lyrics"). But, even if true,

13   Anthropic would derive the *same* financial benefit from *any* use of Claude, infringing or

14   noninfringing—it would see no financial upside specific to infringing content. Plaintiffs try

15   unsuccessfully to distinguish *Annabooks, LLC v. Issuu, Inc.* on the grounds that it does not

16   address a "pay-per-use business model" (Opp. 20), but that case makes clear that simply alleging

17   a defendant charged users on a per-action basis (whether or not such action was allegedly

18   infringing) does not plausibly plead a direct financial benefit. 2020 WL 6873646, at *4 (N.D.

19   Cal. Sept. 24, 2020) (dismissing vicarious infringement claim even though plaintiff alleged

20   defendant "generates revenue by charging a fee to download works"). For that reason, Plaintiffs'

21   allegations do not show that infringement by users causes Anthropic to receive "benefits … [it]

22   would not otherwise receive." *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 938

23   (N.D. Cal. 2019). They therefore cannot support the required "direct" causal relationship

24   between infringement and a financial benefit to Anthropic. *See, e.g.*, *Sony Music Ent. v. Cox*

25   *Commc'ns, Inc.*, 93 F.4th 222, 233 (4th Cir. 2024) ("While [defendant] profited from the sale of

26   internet service, [plaintiff] has not shown that [defendant], in any sense, had a financial interest

27   in its subscribers committing infringement.").

28

Next, Plaintiffs argue that Anthropic has a direct financial interest in infringement, because access to infringing content is a draw for users. In particular, Plaintiffs argue that "it is more than reasonable to infer that these infringing users paid to access Anthropic's AI models in order to generate this infringing content." Opp. 18. This argument relies exclusively on conjecture. Indeed, there is not a single factual allegation in the Complaint about customers' reasons for subscribing to Claude, much less that *any* paying user *subscribed* to Claude *for the express purpose* of accessing Claude's alleged ability to produce infringing lyrics, or would *not* have purchased a subscription but for that ability. Nor could there be, given Plaintiffs' exclusive reliance on their agents' alleged activity to support their vicarious infringement claims.

Plaintiffs also misstate their own Complaint in arguing that "the inclusion of Publishers' lyrics in Claude's text corpus attracts valuable publicity, subscribers, and investment funding for Anthropic." *Id.* (citing Compl. ¶ 98). That is not what the cited paragraph of the Complaint alleges. Instead, it states that "[o]ne of the reasons that Anthropic's AI models are so popular and valuable is *because of the substantial underlying text corpus* that includes Publishers' copyrighted lyrics." Compl. ¶ 98 (emphasis added). By Plaintiffs' own allegations, it is the entire text corpus, not any incidental inclusion of Plaintiffs' lyrics therein, that they allege draws users to Anthropic's AI models. At most, Plaintiffs' allegations suggest that Claude's success and popularity stems from *Anthropic*'s incorporation of allegedly infringing material in its text corpus. But that would merely restate Plaintiffs' direct infringement claim against Anthropic. It does not support a claim that users were drawn to Claude by other users' infringement or the opportunity to infringe themselves, which is necessary to support a vicarious liability claim.

Plaintiffs' cited cases are distinguishable because they involve factual allegations not made here. For example, Plaintiffs do not allege Anthropic "advertise[s] [Claude] as a means of accessing infringing content." *DISH Network L.L.C. v. Jadoo TV, Inc.*, 2020 WL 5816579, at *8 (N.D. Cal. Sept. 30, 2020). They do not allege that third-party infringement increased traffic to Claude, much less that Anthropic "monetize[s] [such] increased traffic" that results from third-party infringement. *Keck*, 369 F. Supp. 3d at 939; *see supra* 10. And they do not plausibly allege

1    Anthropic "believed" or had any reason to believe that third-party exploitation of Plaintiffs'

2    copyrighted works would ultimately "draw a wider audience to [Claude]." *Rearden LLC v. Walt*

3    *Disney Co.*, 2018 WL 3031885, at *4 (N.D. Cal. June 18, 2018). Plaintiffs' vicarious liability

4    claim must be dismissed

5              **B.      PLAINTIFFS' DMCA CLAIMS FAIL**

6              Plaintiffs advance two DMCA theories, both of which fail. Plaintiffs' first theory, that

7    Anthropic intentionally strips author names and song titles from its training data, fails because

8    the Complaint offers no facts to support the conclusory assertion that this alleged removal occurs

9    with the "double scienter" the DMCA requires: that (1) Anthropic intentionally removed CMI

10   from training data (2) with the knowledge that any purported removal of Plaintiffs' CMI would

11   aid infringement. *See* 17 U.S.C. § 1202(b). Plaintiffs' second theory, that Anthropic intentionally

12   removes or omits CMI from Claude outputs, fails for the same reasons. *See* Mot. 11–15.

13             **1.      Plaintiffs still fail to state a Section 1202(b) claim based on
14                       Anthropic's training.**

15             Plaintiffs' training-based Section 1202(b) claim is wholly conclusory and is undercut by

16   *other* allegations in the Complaint. Mot. 11–13.

17             First, Plaintiffs' claim should be dismissed because the Complaint fails to allege *any* facts

18   supporting the bald assertion that Anthropic "intentionally removes or alters" CMI during

19   training. *See Tremblay v. OpenAI Inc.*, 2024 WL 557720 (*Tremblay I*), at *4 (N.D. Cal. Feb. 12,

20   2024) (dismissing Section 1202(b) claim where "there are no facts to support the assertion that

21   by design, the [AI] training process does not preserve any CMI" (internal quotation marks

22   omitted and alterations adopted)). Plaintiffs' response doubles down on this conclusory assertion,

23   but cannot point to allegations in the Complaint that actually demonstrate this is plausibly true.

24   For example, Plaintiffs argue that "Anthropic removes CMI from the lyrics during the process of

25   making copies of those lyrics to train its AI models." Opp. 21; *see also id.* at 23 ("Publishers

26   have alleged facts that Anthropic affirmatively copied, cleaned, and processed its training data

27   before training its models to reproduce Publishers' copyrighted lyrics without CMI"). But there

28

1    are no such allegations in the Complaint. The factual allegations Plaintiffs cite do not even

2    *mention* removing CMI. Instead, they focus on Anthropic's alleged decision *not* to remove

3    copyrighted materials from its training corpus. *See* Compl. ¶¶ 54(b), 62. Plaintiffs also argue that

4    "Anthropic carefully trains and finetunes its AI models to generate the specific outputs that it

5    desires," which itself says nothing about CMI specifically. Opp. 22 (citing Compl. ¶¶ 54–55).

6    But the Complaint does not even allege this. Instead, it alleges that "[o]nce [Anthropic's] input

7    and training process is complete, Anthropic's Claude AI models generate output *consistent in*

8    *structure and style* with both the text in their training corpora and the reinforcement feedback."

9    Compl. ¶ 55 (emphasis added). That allegation, like the rest of Plaintiffs' allegations, does not

10   support the conclusion that Anthropic "carefully train[ed] and finetune[d]" its models to

11   specifically and intentionally remove CMI. Opp. 22.

12           In fact, Plaintiffs' own contradictory allegations render their claim implausible. *See*

13   *Somers*, 729 F.3d at 964. As Anthropic explained, Plaintiffs' allegations that Anthropic removes

14   or alters CMI is inconsistent with Plaintiffs' allegations that Claude generated responses

15   identifying the lyrics to particular songs by particular artists, which would be impossible if CMI

16   were removed. Mot. 12. Plaintiffs respond that "Claude parrot[ing] parts of the user prompt in its

17   infringing response does *not* show that Anthropic's training data necessarily includes CMI—only

18   that the prompt identified a songwriter for a given title." Opp. 23. Plaintiffs miss the point. As

19   alleged, Anthropic cannot simultaneously understand and allegedly respond to a prompt

20   identifying a specific song title or artist—in other words, match lyrics to a title/author—while

21   systematically stripping away author names and titles during the training process. *Compare*

22   Compl. ¶¶ 66, 76 *with id.* ¶ 84; *see also Tremblay I*, 2024 WL 557720, at *4 (dismissing

23   training-based Section 1202(b) claim where "the Complaints include excerpts of ChatGPT

24   outputs that include multiple references to Plaintiffs' names, suggesting that OpenAI did not

25   remove all references to 'the name of the author'").

26           Finally, Plaintiffs' training-based DMCA claim fails for the independent reason that

27   Plaintiffs have not alleged Anthropic *knew* that any purported removal of Plaintiffs' CMI would

28

1    aid infringement. Indeed, they do not include *any* allegation to this effect. Mot. 12–13. Plaintiffs'

2    argument boils down to the contention that there is a "reasonable inference" that Anthropic had

3    the requisite knowledge, because "Anthropic knew that Publishers' lyrics and their CMI

4    appeared on popular lyric display sites," "knowingly incorporated the contents of those sites into

5    its training datasets," and could have created guardrails to prevent reproduction of content

6    without CMI. Opp. 24 (citing Compl. ¶¶ 46, 54, 60, 83). But none of the allegations Plaintiffs

7    cite for support demonstrates anything about Anthropic's *knowledge* that any of this would

8    "induce, enable, facilitate, or conceal infringement." *See Tremblay I*, 2024 WL 557720, at *4

9    (dismissing Section 1202(b) claim where the plaintiffs had not shown how "alleged removal of

10   CMI in an internal database will knowingly enable infringement"); *cf. Doe 1 v. GitHub*, 672 F.

11   Supp. 3d 837, 858 (N.D. Cal. 2023) (declining to dismiss a Section 1202(b) claim based on

12   allegations showing that the defendants *knew* the code they used as training data contained CMI

13   and that their platform was being used to distribute copyrighted material with removed or altered

14   CMI in a manner that induced infringement). Plaintiffs' training-based Section 1202(b) claim

15   should be dismissed for this reason as well.

16           **2.**       **Plaintiffs still fail to state a Section 1202(b) claim based on Claude's**

17                             **outputs.**

18        With respect to their output-based claim, Plaintiffs likewise fail to allege sufficient facts

19   to meet Section 1202(b)'s double-scienter requirement. Plaintiffs make no adequate allegations

20   establishing that Anthropic *intentionally* removes or omits CMI from Claude outputs, or that

21   Anthropic *knew* that this omission would induce, enable, facilitate, or conceal copyright

22   infringement. *See* Mot. 13–15; *cf. Tremblay I*, 2024 WL 577720, at *5 (the DMCA "does not

23   prohibit merely omitting CMI from an infringing work." (internal quotation omitted)).

24        Plaintiffs' primary argument in response is that it is "reasonable to infer that whenever

25   the models' responses omit CMI, such CMI was intentionally removed during the training

26   process." Opp. 22. But permitting such an inference would write the scienter requirement out of

27   Section 1202(b). Plaintiffs provide no facts that would support the conclusion that this inference

28

1    is "reasonable." Simply labeling the purported removal "intentional," without more, is not

2    enough. *See* Compl. ¶ 84; *cf. id.* ¶ 122 (including the threadbare allegation that "Anthropic has

3    knowledge of specific infringing responses generated by its AI models in response to user

4    prompts, among other knowledge."). Plaintiffs' lack of factual support for this argument,

5    combined with the lack of any plausible allegations that Anthropic was aware of infringing

6    outputs prior to the filing of the Complaint, dooms Plaintiffs' claim. *See Harrington v. Pinterest,*

7    *Inc.*, 2022 WL 4348460, at *6 (N.D. Cal. Sept. 19, 2022) (no scienter when defendant was "on

8    notice," "[a]t most," after lawsuit filed). This claim should also be dismissed

9                                    **CONCLUSION**

10         The conclusory, speculative, and unsupported allegations Plaintiffs highlight in their

11    Opposition "stop[] short of the line between possibility and plausibility of 'entitlement to

12    relief.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

13    Anthropic therefore respectfully requests that the Court grant its Motion and dismiss Plaintiffs'

14    claims for (1) contributory infringement, (2) vicarious infringement, and (3) removal or

15    alteration of CMI, each for failure to state a claim upon which relief may be granted.

16

17    Dated:  September 17, 2024                Respectfully submitted,

18                                    LATHAM & WATKINS LLP

19                                  By */s/ Joseph R. Wetzel*

20                                    Joseph R. Wetzel (SBN 238008)
                                     *joe.wetzel@lw.com*

21                                  Andrew M. Gass (SBN 259694)
                                       *andrew.gass@lw.com*

22                                  Brittany N. Lovejoy (SBN 286813)
                                       *brittany.lovejoy@lw.com*

23                                  505 Montgomery Street, Suite 2000
                                       San Francisco, California 94111

24                                  Telephone: +1.415.391.0600

25

26

27

28

Sarang V. Damle (*pro hac vice*)
  *sy.damle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman (*pro hac vice*)
  *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*