**LATHAM & WATKINS LLP**
   Joseph R. Wetzel (SBN 238008)
    *joe.wetzel@lw.com*
   Andrew M. Gass (SBN 259694)
    *andrew.gass@lw.com*
   Brittany N. Lovejoy (SBN 286813)
    *brittany.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

   Sarang V. Damle (*pro hac vice*)
    *sy.damle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

   Allison L. Stillman (*pro hac vice*)
    *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ANTHROPIC PBC,<br><br>    Defendant. | Case No. 5:24-cv-03811-EKL<br><br>**DEFENDANT ANTHROPIC PBC'S [PROPOSED] SURRESPONSE TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hon. Eumi K. Lee<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 7—4th Floor |

Plaintiffs' reply evidence cannot save their twice-filed, year-old preliminary injunction motion. As discussed below, and in the brief accompanying declarations, Plaintiffs still cannot point to any harm, let alone irreparable harm they would suffer between now and trial if an injunction does not issue. If anything, Plaintiffs' trickle of piecemeal evidentiary submissions over the past year, plus their consistent opposition to an evidentiary hearing, only highlights the incompleteness of the record on which they ask the Court to order such consequential relief. As of this filing, the parties have only just begun to produce documents, no depositions have taken place, and no expert reports have been submitted. Plaintiffs' decision to pursue this case in the wrong court and to prioritize serial preliminary injunction filings over litigating this case to a final resolution counsels against the need for an injunction. The Court should decline to grant Plaintiffs' requested injunction on a sparse and developing record.

**A. Plaintiffs' reply evidence still fails to establish irreparable harm.** Despite having had a full year to do so, Plaintiffs have not produced any evidence that Anthropic has harmed them, let alone irreparably so. Nowhere in Plaintiffs' four reply declarations do they point to, for example, any document showing actual financial harm to Publishers, any songwriter who has taken her business elsewhere, any lyric website that refused to pay a license fee—or, indeed, any evidence of actual, present harm whatsoever.

Plaintiffs' newly-concocted "evidence" that Claude can be laboriously coaxed to generate bizarrely formatted copies and mashups of Plaintiffs' lyrics does not fill the gap in their irreparable harm arguments. Reply at 2; Dkt. 229 (Newton-Rex Reply Decl.) ¶¶ 13–15 & Exs. B-D; Dkt. 226-1 (Chung Reply Decl. Ex. A). The cumbersome "jailbreak" Plaintiffs used to circumvent Claude's guardrails was created and published by a hacker and does not reflect ordinary, good-faith use of Claude. Kaplan Sur. Decl. ¶¶ 2–4. The fact that Plaintiffs had to resort to this hack to force Claude to produce their lyrics only undermines their argument that Claude was intentionally designed to output copyrighted material.[1] In short, it remains true that

---

[1] Indeed, Claude's guardrails—which Plaintiffs are moving to keep in place to "simply preserve the status quo," Reply at 2—seek to prevent regurgitation as well as other potentially harmful outputs. See Kaplan Sur. Decl. ¶¶ 5–6.

1   Anthropic's guardrails are effective, and there is no evidence of any material or widespread use
2   of Claude by anyone *other than* Plaintiffs or their agents to regurgitate song lyrics or create
3   mashups. And the fact that Plaintiffs themselves published, on the public docket, the so-called
4   "bastardized derivatives" they claim to have elicited from Claude belies any dire risk to their
5   songwriters' reputations. Reply at 5 (citing Dkt. 50 ¶¶ 42–43, 49–51); *see also* Dkt. 229-3 &
6   229-4 (Newton-Rex Reply Decl. Exs. C–D).

7   Because Plaintiffs lack evidence that anyone besides their own agents has used Claude as
8   a lyric-reproducing machine, they resort to mischaracterizing discovery communications
9   between the parties' counsel. Reply at 4 (citing Chung Reply Decl. ¶ 6). But their argument
10  omits that Plaintiffs' overbroad proposed search terms "song" and "lyric" overwhelmingly led to
11  false positives—*not* evidence of real-world users asking Claude to reproduce lyrics. Dukanovic
12  Sur. Decl. ¶ 4 & Ex. A at 2. The parties continue to negotiate in an effort to develop workable
13  search terms. *Id.* ¶ 4.

14  Even if Plaintiffs are able to demonstrate on a full and fair record that Claude users have
15  generated outputs infringing their asserted works, which they have not done so far, any such
16  harm would be eminently compensable. There is an established market for the display of song
17  lyrics on the internet that could readily be used to inform damages for such outputs. Hall Sur.
18  Decl. ¶¶ 3, 6–7. So too is there a market for authorized mashups and other derivative works,
19  assuming those uses are not fair uses. *Id.* ¶ 3.

20  With respect to training data, Plaintiffs argue that they are irreparably harmed because
21  "there is no line item" in any existing license for their lyrics "to use as a basis for a damages
22  award." Reply at 7. Taken at face value, that point works against them: it shows that any use of
23  their lyrics causes no harm to an existing or potential licensing market. Opp. 22–24. But
24  Plaintiffs attempt to have it both ways by pointing to examples of agreements between other
25  content owners and other AI companies that they claim do cover training uses. Dkt. 227 (Smith
26  Reply Decl.) ¶¶ 17–21. Either there is no real value to the use of lyrics for training, or that value

can be extrapolated from agreements like the ones cited by Dr. Smith. In either case, Plaintiffs have failed to show that any alleged harm cannot be adequately compensated.

**B. Plaintiffs' reply evidence does not improve their likelihood of success on the merits.** Plaintiffs' reply arguments and new expert declarations attempt to undermine Anthropic's fair use arguments by bemoaning the alleged harm Anthropic's training of its AI models will cause to a nonexistent licensing market. *E.g.* Dkt. 227 (Smith Reply Decl.) ¶¶ 7–9, 12–21, 25–27. But none of Plaintiffs' reply submissions changes the reality that any alleged use of their lyrics in Claude's training data is paradigmatic fair use, as courts have found invariably and without exception with respect to intermediate copies used in the service of developing new, non-infringing technologies. Opp. 17–24.

Anthropic's use of training data is quintessentially transformative: it uses texts not for their authors' original purposes, but to teach a neural network how to understand and use human language in order to generate entirely new responses to queries. Dkt. 209 (Kaplan Decl.) ¶¶ 17–24. Plaintiffs don't allege that Anthropic used the entirety of their compositions—only the text of the lyrics, and not the rhythms, melodies, harmonies, arrangements, or other musical elements. And any alleged use of that text is only for the limited, transformative purpose of extracting statistical relationships between words and concepts. *Id.* ¶¶ 19–20.

Plaintiffs' nonsensical argument, raised for the first time on reply, that Anthropic could somehow "examine" these relationships "without copying" misunderstands how the technology works. Reply at 10. For Anthropic to teach its AI models human language, in all its diverse forms, it needs to be able to make intermediate copies of textual data and, indeed, "disassemble" that data into tiny tokens so that its large language models can derive the probabilistic relationships between them. Dkt. 209 (Kaplan Decl.) ¶¶ 19–23; *cf.* Reply at 10 (claiming "Anthropic asserts no need to 'disassemble' Publishers' lyrics to gain access to the functional elements of the copyrighted product").

With respect to the fourth fair use factor, Plaintiffs' reply evidence does not prove that using their lyrics to train Claude would supplant a viable licensing market. Plaintiffs' reply

testimony does not change the fact that there is no coherent, workable market for the mass-licensing of all copyrighted textual works that would be necessary to train general-purpose LLMs, either today or in the future. Dr. Smith speculates that the existence of certain, unseen licenses between other AI companies and other content owners must imply such a licensing market. Dkt. 227 (Smith Reply Decl.) ¶¶ 7–27. But he fails to account for the likelihood that the value of these agreements comes from other, non-training uses of data, and mistakenly assumes that the existence of *some* transactions means an AI company like Anthropic could viably license *all* the copyrighted text needed for training. Peterson Sur. Decl. ¶¶ 4–10.

Dr. Zhao's and Mr. Newton-Rex's reply opinions are similarly irrelevant to the core issue: despite claims of marginally improving LLM training efficiency (Dkt. 228 (Zhao Reply Decl.) ¶¶ 8–13) or using some synthetic training data (*id.* ¶ 10; Dkt. 229 (Newton-Rex Reply Decl.) ¶ 8), it remains wholly impracticable to license all of the data required to train general purpose AI models like Claude. Kaplan Sur. Decl. ¶¶ 7–10; Peterson Sur. Decl. ¶¶ 10–14. Plaintiffs have not come close to establishing a likelihood of success on the merits on the core issue of infringement with respect to training data, even on their selective and incomplete record.

As for Plaintiffs' claim that Claude's outputs separately infringe, Plaintiffs offer no evidence that anyone other than Plaintiffs and their agents used Claude to generate an allegedly infringing copy of their lyrics. Nor have they demonstrated why it would make sense for anybody to use Claude in that way—particularly when their expert's analysis implausibly contends that a user would have to employ a complicated, unwieldy hack to circumvent Claude's copyright guardrails, and would need to choose to do *that* over accessing Plaintiffs' lyrics from any of the many websites where they are readily available. Plaintiffs' newly introduced evidence still does not make it likely that they can show infringement by Anthropic or anyone else.

**C. Plaintiffs' reply evidence underscores the imbalance of hardships and the need for a substantial bond if an injunction were to issue.** As their Reply makes clear, Plaintiffs are asking this Court to dramatically disrupt one of the leading developers of a fundamentally generative technology. That request will have significant consequences for Anthropic's users and

business customers who rely on Claude for its intended beneficial uses—uses that are a far cry from Plaintiffs' imagined Rube Goldberg lyric-display machine. Dkt. 209 (Kaplan Decl.) ¶¶ 9–16. As for what is at stake for Anthropic if Plaintiffs' requested injunction were granted, Anthropic respectfully asks the Court to credit its Chief Science Officer's first-hand testimony over Plaintiffs' expert's unfounded "doubt." Dkt. 228 (Zhao Reply Decl.) ¶ 14; Kaplan Sur. Decl. ¶¶ 11–13. Plaintiffs continue to ignore the substantial costs Anthropic would incur to examine and modify the training of even future Claude models. Dkt. 209 (Kaplan Decl.) ¶¶ 62–65; Hall Sur. Decl. ¶ 9.

*   *   *

With the benefit of a complete record, Anthropic welcomes the final disposition of Plaintiffs' legal challenge to the foundations of its AI technology. Anthropic is confident this Court will ultimately uphold Anthropic's development and training of its AI models as quintessential fair use. But it is premature to decide that issue now, on a record that remains incomplete despite Plaintiffs' successive evidentiary submissions, and where there has been no showing whatsoever that Plaintiffs have been irreparably harmed. Anthropic respectfully urges the Court to deny Plaintiffs' motion.

Dated: October 7, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Joseph R. Wetzel
  Joseph R. Wetzel (SBN 238008)
   joe.wetzel@lw.com
  Andrew M. Gass (SBN 259694)
   andrew.gass@lw.com
  Brittany N. Lovejoy (SBN 286813)
   brittany.lovejoy@lw.com
  505 Montgomery Street, Suite 2000
  San Francisco, California 94111
  Telephone: +1.415.391.0600

Sarang V. Damle (*pro hac vice*)
  sy.damle@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman (*pro hac vice*)
  alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*