1   [Counsel on signature page]

2   **UNITED STATES DISTRICT COURT**

3   **NORTHERN DISTRICT OF CALIFORNIA**

4   **SAN JOSE DIVISION**

5

6   CONCORD MUSIC GROUP, INC., ET AL.,

7       Plaintiffs,

8       v.

9   ANTHROPIC PBC,

10      Defendant.

Case Number: 5:24-cv-03811-EKL-SVK

**JOINT DISCOVERY DISPUTE STATEMENT REGARDING ANTHROPIC'S SEARCHES AND PRODUCTION OF CLAUDE PROMPTS AND OUTPUT**

**REDACTED**

Judge Eumi K. Lee
Magistrate Judge Susan van Keulen

Pursuant to Section 8 of the Court's Civil Standing Order, and Local Rules 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement. The Parties seek the Court's intervention in resolving a dispute arising from Publishers' Requests for Production 50 and 51, Ex. 1, and Anthropic's responses and objections to those requests, Ex. 2. The Parties' joint chart is attached as Ex. 3. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference (including on December 18, 2024) and by email. However, the Parties have been unable to reach agreement on the issues below. The current fact discovery deadline is April 14, 2025. ECF No. 262, at 1.

## I.   <u>Publishers' Position</u>: **Publishers are entitled to discovery regarding the full scope of Claude prompts and output relating to song lyrics generally, not just Works in Suit.**

Anthropic should be required to search for and produce prompts and output of its Claude AI models relating to song lyrics, without unduly restricting such discovery to only lyrics to the Works in Suit. This discovery is necessary to respond to Anthropic's broad assertions that Claude users do not seek lyrics and that Claude does not output lyrics (not limited to just the list of Works in Suit), and to support Publishers' allegations that Anthropic infringes their copyrighted lyrics when Claude generates output containing those lyrics (again not limited to just the Works in Suit).

In particular, Publishers have requested that Anthropic produce the following:

- <u>RFP 50</u>: "Documents sufficient to show, by Claude model and by date, all User or Subscriber prompts instructing Claude to search for, identify, recite, or otherwise generate songs or their lyrics; to combine lyrics from one source with lyrics from another source; or to combine lyrics from one source with lyrics generated by Claude." Ex. 1, at 12–13.

- <u>RFP 51</u>: "Documents sufficient to show all Claude responses or outputs containing song lyrics, including a breakdown by Claude model and date." *Id.* at 13.

Anthropic, however, has refused to search for or produce any prompts or output records for lyrics other than Publishers' non-exhaustive list of Works in Suit. What's more, even as to the Works in Suit, Anthropic's proposed searches—which, in many cases, are limited to just one or two lines of lyrics to a given Publisher's song—are plainly insufficient to identify anything close to the full set of responsive prompts and output. By refusing this discovery, Anthropic seeks to conceal vast amounts of evidence of its infringement of Publishers' works, as well as key evidence going to Claude's purpose and use. Anthropic's unduly narrow approach is particularly

inappropriate given Anthropic's belated admission to altering its Claude prompt and output records—by removing songwriter and artist names from those records in a way that "cannot be reversed"—which will make it all the more difficult to identify infringing prompts and output.

### A. After months of negotiation, Anthropic will not agree to reasonable searches.

Publishers have spent months attempting to negotiate search terms with Anthropic to identify Claude prompts and output responsive to RFPs 50 and 51. Publishers first proposed six searches to run across Anthropic's database of Claude prompts and output—(1) song! w/3 lyric!; (2) "words to" w/3 song!; (3) [song title for each Work in Suit (as listed in Ex. A to the Complaint)] + lyric!; (4) [song title for each Work in Suit] + "words to"; (5) [name of performing artist(s) for each Work in Suit] + lyric!; and (6) [name of performing artist(s) for each Work in Suit] + "words to." Searches 1–2 were intended to capture relevant requests regarding lyrics more broadly, while searches 3–6 were targeted more specifically at prompts and output regarding Works in Suit.

Anthropic objected to these searches on various grounds. To date, Anthropic has agreed only to run modified versions of searches 3–4 for a six-month period. Specifically, for 183 of the 500 Works in Suit, for which Anthropic stated the song titles contained too many common or "noisy" words to search its database, Anthropic replaced the song titles in searches 3–4 with a lyrics "snippet" (1–2 lines) ("Lyric String Searches"). For the remaining 317 Works in Suit, Anthropic narrowed searches 3–4 with a "w/5" proximity operator ("Song Title Proximity Searches"). While these narrow searches alone are insufficient to identify all responsive prompts and output, Publishers agreed that Anthropic could proceed with these searches to avoid further delay while the parties resolved their disputes as to other necessary searches.

Anthropic, however, flatly refuses to run any other searches. Anthropic claims, among other things, that searches 1–2 are "unworkable" because the number of prompts and output with the terms "lyric" and "song" is too large for it to review. As for searches 5–6, Anthropic initially claimed that these searches would not work due to common or "noisy" artist names.

### B. Anthropic has admitted to irreversibly altering prompt and output records.

Publishers have since learned the real reason searches 5–6 will not work: Anthropic admitted on Feb. 6, 2025 that it has permanently removed songwriter, performing artist, and other

individual names from prompt and output records, and replaced them with a "placeholder string" of numbers and letters, thus "mask[ing]" those names so they cannot be identified, in a process that "cannot be reversed." Anthropic now tries to dismiss its alteration of these key records as a "red herring." That is wrong. As a result of Anthropic's alteration of these records, it now appears impossible to run searches in Anthropic's database to identify prompts and output by songwriter or performing artist name, along the lines of searches 5–6, which is critical to identifying both infringements and instances in which copyright management information (*e.g.*, author names) has been removed or altered in violation of 17 U.S.C. § 1202(b). Contrary to Anthropic's claims, unilaterally removing references to Don McLean, Bob Dylan, and countless other famous artists from its prompts and output records serves no conceivable purpose of "protecting sensitive personal data"—it just makes these records exceedingly more difficult to search and understand.

Publishers are still gathering information as to Anthropic's alteration of this data and reserve all rights. For purposes of this submission, Publishers emphasize simply that the critical holes in these records underscore the importance of the broader searches Publishers propose.

### C.    Anthropic cannot limit prompt and output discovery to the Works in Suit.

There is no basis for limiting prompt and output discovery to just the Works in Suit. To the contrary, Claude prompts and output regarding lyrics beyond the Works in Suit are directly relevant to supporting Publishers' claims and rebutting Anthropic's defenses, for many reasons.

First, Anthropic itself has put squarely at issue the questions of (1) whether Anthropic's users prompt Claude for song lyrics *generally*, and (2) whether Claude generates output containing lyrics or other copyrighted works *more broadly*. For example, Anthropic has repeatedly represented to the Court that "[t]ypical Anthropic users do not request song lyrics from Claude," ECF No. 285, at 3; "Claude customers are not using Claude to generate song lyrics," Hr'g Tr. 49:22 (Nov. 25, 2024); "Anthropic has never wanted Claude to output lyrics," *id.* at 41:23–24; and "[Claude] is not designed to output existing works," *id.* at 49:8–9. Anthropic cannot make these blanket representations to the Court about the purpose and use of Claude and then refuse to produce the prompts and output evidence necessary for Publishers to respond to and rebut these arguments, which are directly relevant to Anthropic's infringement, its willfulness, and its fair use defense.

Second, Publishers clearly allege that Anthropic's infringement via the output of its Claude models extends to lyrics **beyond** the Works in Suit. *E.g.*, Compl. ¶¶ 6, 8, 58, 60, 65, 70–72, 89, ECF No. 1. While the Works in Suit are an "illustrative and non-exhaustive list of the musical compositions owned by Publishers that Anthropic infringed," *id.* ¶ 37; *see also id.* ¶¶ 113, 127, 141, the Complaint makes clear that this list "will be amended as necessary as the case proceeds," *id.* ¶ 37—including based on Claude prompts and output in Anthropic's possession, which were not available to Publishers prior to bringing suit, but which should now be produced via discovery.

Thus, contrary to Anthropic's claims, this is no "fishing expedition" and there is nothing "hypothetical" about Publishers' claims. Even the very limited discovery Anthropic has produced so far shows that its Claude models are (1) prompted for lyrics beyond the Works in Suit and (2) generate output copying such lyrics. But that is just the tip of the iceberg. Anthropic cannot conceal other evidence of infringing prompts and output regarding lyrics beyond the Works in Suit, where Publishers' allegations are not limited to those works, and where Anthropic has never disputed that it trains its Claude models on Publishers' lyrics more broadly. *See, e.g.*, *B&P Littleford, LLC v. Prescott Mach., LLC*, No. 1:20-cv-13025, 2022 WL 625069, at *6 (E.D. Mich. Mar. 3, 2022) ("[B]ecause Plaintiff alleges a scheme to manipulate and misuse its copyrighted drawings, the information it seeks in its interrogatories [identification of all plaintiff's drawings in defendant's possession] is relevant, regardless of whether the complaint specifically identifies every drawing."); *Scholz Design Texas, LLC v. Lampert Yards - US LBM, LLC*, No. 18-CV-4074-CJW, 2019 WL 13216582, at *4 (N.D. Iowa Sept. 4, 2019) (finding plaintiff entitled to discovery on copyrighted works beyond those identified in complaint, because complaint "raise[s] a reasonable expectation that discovery will reveal evidence of other" infringements); *Design Basics LLC v. Best Built Inc*, No. 14-CV-597, 2016 WL 1060253, at *3 (E.D. Wis. Mar. 15, 2016) (similar); *Io Grp., Inc. v. Veoh Networks, Inc.*, No. C06-03926 HRL, 2007 WL 1113800, at *6 (N.D. Cal. Apr. 13, 2007) (granting plaintiff's discovery request for "all files containing adult material . . . ever published" on defendant's website, "[b]ecause any information as to plaintiff's works is indisputably relevant, and since it appears that there is no way for plaintiff's works to be identified except through a review of all adult material published on [defendant's] website").

None of the cases cited by Anthropic apply, given Publishers' allegations of infringement of their lyrics beyond the Works in Suit, the evidence of Anthropic's infringement of those other lyrics, and Anthropic's non-denial of training its AI models on Publishers' lyrics more broadly.

Third, Anthropic contends as a centerpiece of its defense that its "guardrails" prevent Claude from outputting lyrics or other copyrighted works more broadly, and Publishers are entitled to test that claim. In fact, the Parties stipulated, and the Court subsequently ordered, that Anthropic must maintain such guardrails on its Claude AI models to broadly "prevent infringing outputs of copyrighted content, including Publishers' works"—without limiting those guardrails to just the Works in Suit. ECF No. 291, at ¶¶ 5–6. Publishers are entitled to discovery as to prompts and output to evaluate these guardrails' efficacy and to follow up regarding their failures. *Id.* ¶ 6(a).

### D.    Even as to the Works in Suit, Anthropic's proposed searches are insufficient.

Finally, even if prompt and output discovery were limited to the Works in Suit alone, Anthropic's proposed searches and production would still clearly be insufficient. Anthropic's Lyric String Searches are aimed at capturing prompts and output limited to just ***one or two lines*** of a given Publisher's song's lyrics, ignoring prompts and output copying other portions of the song's lyrics. The Song Title Proximity Searches (with their narrow proximity operator) likewise exclude vast swaths of prompts and output regarding those Works in Suit. To identify the full set of responsive prompts and output implicating Publishers' Works in Suit, Anthropic must search for more general prompts and output regarding lyrics to these Works, as Publishers propose.

### E.    Anthropic's burden claims are overstated and unavailing.

Anthropic cannot invoke the massive scale of its own infringement as an excuse to conceal the evidence of that infringement. Any challenges to producing this evidence are of Anthropic's own making—including its alteration of its records such that they cannot be searched by artist names. While Anthropic claims Publishers' searches are "overbroad" and "poorly tailored," it has never during months of negotiations proposed reasonable alternative searches to identify prompts and output regarding lyrics generally. Publishers' need for this core discovery outweighs any burden, especially given Anthropic's considerable resources as a company valued at $61.5 billion.

**Proposed compromise**: If Anthropic does not agree to Publishers' proposed searches 1–2

(or similar searches), Publishers request that the Court order that (1) discovery regarding prompts and output relating to song lyrics generally, as requested by RFPs 50 and 51, is relevant and proportional to the needs of the case; and (2) Anthropic cooperate in good faith to finalize search terms that will capture prompts and output responsive to RFPs 50 and 51.

## II.   Anthropic's Position

### A.  Plaintiffs' Request for Discovery Into All Prompts and Outputs Regarding Song Lyrics Is Overbroad and Not Proportional to the Needs of the Case

Plaintiffs seek an order requiring Anthropic to run overbroad, poorly tailored searches across eight eDiscovery workspaces containing more than ▓▓▓▓▓ records from September 2023 to March 2024. They then want Anthropic to review nearly a million of those records, some of which are hundreds of pages long, so that they can fish for hypothetical output-based claims unrelated to the 500 works in suit. This infeasible and burdensome fishing expedition is not permitted by Federal Rule of Civil Procedure 26(b)(1). Plaintiffs' request should be denied.

**Plaintiffs' proposed searches for "song lyrics generally" are technically infeasible and unduly burdensome.** Users submit ▓▓▓▓ of prompts to, and receive ▓▓▓▓ of responses from, Claude every single day. The technical challenge of collecting, indexing, and searching that enormous volume of data is difficult to overstate. Anthropic has collected and processed over ▓▓▓▓ prompt and output records for the Claude.ai product alone. Anthropic's discovery vendor reports this is the largest text-only dataset it has ever heard of in the eDiscovery industry.

In June 2024, Anthropic investigated the feasibility of running four single-term searches proposed by Plaintiffs: "Song," "Lyric," "Musical Work," and "Musical Composition." Anthropic's investigation revealed (1) an unmanageable number of search results—for example, a search for the word "song" over a single week of data crashed; and (2) the overwhelming majority of the results for the other searches were false positives. In August, Plaintiffs proposed the search terms they continue to press today, principally "song! w/3 lyric!" and "'words to' w/3 song!" Anthropic investigated these terms, too, and, based on one sample week of data, determined that the searches would still return ▓▓▓▓▓ of unresponsive records for just a single week (an approximate ▓▓% false positive rate). These searches predominantly returned prompts that ask Claude to do innocuous things like: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1 �— ███████████████████████████████████████

2 ██ ██. Plaintiffs' insistence that Anthropic sift through nearly a million similarly

3 nonresponsive records across the collected data universe, in the hope some tiny fraction might

4 relate to their claims, is profoundly disproportionate to the needs of this case and, as explained

5 below, inconsistent with Rule 26.

6     Alternative searches are likewise unworkable. The dataset's indices—which store the

7 locations of key words in the underlying text data used for running search terms—are, all together,

8 ████████████ than the industry standard limit of *1 terabyte* of data.[1] It is thus infeasible to add

9 ubiquitous "noise" words like "me," "you," "a," "the," and "to"—which are excluded by default—

10 to the indices. As a result, Anthropic cannot run an exact search for "what are the lyrics to" because

11 all the words in this search except for "lyrics" are noise words not present in the index. A search

12 for "what are the lyrics to" would result in a search for the single word "lyrics" across over ████

13 ████ collected records. While the word "lyrics" alone may hit on a relevant record, it also hits

14 on many more that are not, resulting in excessive false positives (e.g., in response to a prompt from

15 a ██████████████████████████████████).

16     Plaintiffs also mischaracterize Anthropic's use of Google DLP, a standard Cloud-based

17 service for protecting sensitive personal data. The masking of certain artist names was the result

18 of routine privacy protections and reflects the data available to Anthropic—not an attempt to

19 "alter" records. Plaintiffs' suggestion that Anthropic opposes discovery into unasserted works

20 because Google DLP inadvertently masks artists names in some prompt and output data is a red

21 herring in the context of this discovery dispute; artist names have never been the focus of Plaintiffs'

22 demands, and the parties have been negotiating search terms unrelated to artist names for the past

23 3.5 months.

24     **Rule 26 does not permit Plaintiffs' fishing expedition for hypothetical additional**

25 **claims.** Copyright infringement claims are work-specific, requiring separate proof of registration

26

---

27 [1] *See* https://support.dtsearch.com/faq/dts0142.htm. This number is based on the combined size of the
indices for all eight separate eDiscovery workspaces, as of the date of the filing of this statement. To
28 accommodate the volume of the records and corresponding indices, Anthropic's vendor has split the records
into eight separate eDiscovery workspaces with a separate index for each.

and ownership for each allegedly infringed work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). Here, the Complaint asserts copyright infringement claims for 500 specific musical compositions. *See* Dkt. 1-3. Indeed, Plaintiffs' Rule 11 basis for their claims concerning these 500 works appears to be Plaintiffs' alleged successful attempts to induce Claude to regurgitate training data. *See* Dkt. 1 ¶¶ 66–70. They have conceded, however, that they were not always successful in doing so. *See* Dkt. 208-2 at 6 (RFA 7). Plaintiffs are not entitled to seek discovery into separate claims for works that they apparently lacked a Rule 11 basis to assert in their complaint. *See* Fed. R. Civ. P. 26(b), Adv. Comm. Note to Subdivision (b)(1) (plaintiffs "have no entitlement to discovery to develop new claims . . . that are not already identified in the pleadings").

Courts regularly reject plaintiffs' attempts to obtain discovery regarding unasserted copyrighted works, characterizing them as "fishing expeditions," rather than the proper exercise of developing evidence to prove the claims that the plaintiff has asserted. *See, e.g., Psihoyos v. Pearson Educ., Inc.*, No. 10-cv-5912, 2010 WL 11889066, at *1 (S.D.N.Y. Dec. 7, 2010) (treating different works as separate infringement claims and "find[ing] that plaintiffs' request for documents concerning images not identified in their Complaint" was "grossly overbroad" and "an impermissible fishing expedition"); *UMG Recordings, Inc. v. Internet Archive*, No. 23-cv-06522, Dkt. No. 154 at 7–8 (N.D. Cal. Dec. 19, 2024) (denying the plaintiffs' request for discovery into unasserted works because "at a minimum, [such] discovery is not proportional"); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 20-cv-02713, 2022 WL 18397125, at *6 (C.D. Cal. Dec. 22, 2022) (denying discovery into unasserted copyrights and finding that, when it came to requests seeking "evidence of potential copyright infringement [for works] not currently at issue, the Court need not allow Plaintiff to engage in a fishing expedition for new causes of action" related to those unasserted works); *Epidemic Sound, AB v. Meta Platforms, Inc.*, 22-cv-04223, 2024 U.S. Dist. 185597 at *3 (N.D. Cal. Oct. 10, 2024) (denying discovery into unasserted works). And courts have rejected attempts by plaintiffs to argue that the works asserted in their complaint are "non-exhaustive," as Plaintiffs do here, reasoning that a defendant "is entitled to clear notice" of the

"copyrights he is alleged to have infringed." *Adobe Sys. Inc. v. Software Speedy,* C-14-2152, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014); *see also Oracle Am., Inc. v. HPE*, 16-cv-01393, 2016 WL 11806000, at *2 (N.D. Cal. Nov. 7, 2016) (denying motion to compel discovery into unasserted works and finding that "[t]he vague placeholder language" in the complaint "'includes, without limitation' does nothing to expand the scope of discovery to software not specifically put at issue by the complaint").

Plaintiffs' discovery here should be limited to the copyright infringement claims they have actually brought—i.e., those that pertain to the works in suit. Indeed, their cited cases do not compel a different outcome. The only in-circuit case Plaintiffs cite in support of their position, *Io Group Inc.*, is at odds with the more recent in-circuit authority cited above and lacks any analysis or support for the proposition that "any information as to plaintiff's works is indisputably relevant." 2007 WL 1113800, at *6. Plaintiffs' out-of-circuit authority fares no better. *B&P Littleford*, too, is inconsistent with in-circuit authority, and focused on requests for additional information about drawings the defendant had already produced, a far cry from the free-wheeling fishing expedition Plaintiffs now seek. 2022 WL 625069, at *6–7; *contrast with Teradyne*, 2022 WL 18397125, at *3 n.3 & 6 (denying a motion to compel that relied on *B&P Littleford*). And in *Best Built* and *Scholz Design Texas*, the defendants there failed to show *any* burden associated with responding to the plaintiffs' requests. *See* 2016 WL 1060253, at *3 (noting that the defendant relied on only the "bare assertion that the request is not proportional"); 2019 WL 13216582, at *2, 4 (failing to raise a burden objection at all). Anthropic has more than adequately demonstrated the burden of responding to Plaintiffs' overbroad discovery requests here.

**There are more proportional alternatives.** Anthropic agrees that evidence regarding Claude's typical uses, which Anthropic intends to show do not include searching for song lyrics, could be relevant. But searching massive sets of prompt and output data for references to unasserted works is not a rational or proportional course. Discovery here must address the wide range of Claude's uses, not just one. A search for prompts and outputs related to "songs" or "lyrics" will miss millions of interactions with Claude that put in context how rare this use case is. As such, Anthropic has suggested a discovery process focused on sampling data related to Claude's uses

during a given time period as well as on Anthropic's publicly available studies regarding Claude's uses. *See* https://www.anthropic.com/research/clio.

### B. Broader Search Terms for the Works in Suit Are Not Proportional

Anthropic has already run two searches for each of the 500 works in suit. Plaintiffs argue that these 1,000 searches are "insufficient" because they "ignore[e] prompts and outputs copying other portions of the song's lyrics" and "exclude vast swaths of prompts and output[s]" regarding those works. Notably, these searches are already requiring Anthropic to review ▮▮▮▮ records for the Claude.ai consumer-facing product alone. And that does not include the Parties' agreement that Anthropic will search a subset of Claude API prompt and output records for three different customers, which will substantially increase the review universe.

Plaintiffs have no reason to expand the Song Title Searches to a "w/10" proximity operator. They offer no example of a user request that would result in a song title and the word "lyric" (or "words to") being more than five words apart. Plaintiffs' own example of a 'broader" lyric search request undermines their position. "What are the lyrics to [song name] . . . ?" places "lyrics" and "song" immediately adjacent to each other. *See, e.g.*, Compl., Dkt. 1¶ 66. Plaintiffs' objection to the Lyric String Searches—used only for about a third of works where searching song titles did not work—overlooks a key technical constraint: proximity searches are impracticable for phrases made up exclusively of noise and/or common words. For example, in a search for [song title] w/5 lyric! where the song title consists solely of noise words (e.g., "With You"), the song title will not be searched at all. Without the title, the search would effectively be the same as searching for "lyric!" alone across the entire set of prompt and output data. Anthropic's solution—running the Lyric String Searches where the Song Title Proximity Searches are impracticable—balances Anthropic's burden against Plaintiffs' need for the information sought.

**Proposed Compromise.** The parties have spent eight months negotiating search terms for these RFPs with various tests and searches. To the extent the Court does not deny Plaintiffs' request for broader discovery outright—which it should do—Anthropic respectfully asks the Court to order the parties to negotiate the provisions of a statistical sample of prompt and output data from a given time period that the parties' experts can use to analyze typical Claude user behavior.

Dated: March 5, 2025

By: */s/ Timothy Chung*
**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

Respectfully submitted,

By: */s/ Joseph R. Wetzel*
**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
britt.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle
(admitted *pro hac vice*)
sy.damle@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman
(admitted *pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

Rachel Horn (SBN 335737)
rachel.horn@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600

*Attorneys for Defendant*

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.


Dated: March 5, 2025                                              */s/ Timothy Chung*
                                                                                    Timothy Chung