[Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **JOINT DISCOVERY DISPUTE STATEMENT REGARDING ANTHROPIC USER INFORMATION ASSOCIATED WITH CLAUDE PROMPTS AND OUTPUT** <br><br> REDACTED <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

Pursuant to Section 8 of the Court's Civil Standing Order, and Local Rules 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement. The Parties seek the Court's intervention in resolving a dispute arising from Publishers' Requests for Production 50 and 51, Ex. 1, and Anthropic's responses and objections to those requests, Ex. 2. The Parties' joint chart is attached as Ex. 3. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference (including on February 24, 2025) and by email. However, the Parties have been unable to reach agreement on this dispute. The current fact discovery deadline is Sept. 11, 2025. ECF No. 305.

**I.     Publishers' Position: Publishers are entitled to discovery regarding the specific Claude users associated with relevant prompts and output relating to song lyrics.**

Anthropic seeks to hide information regarding its users who prompted its Claude AI models for song lyrics and received infringing output containing lyrics. That is plainly improper.

By way of background, one of Publishers' core claims in this case is that Anthropic infringes Publishers' copyrighted song lyrics—both directly and secondarily—when Anthropic's Claude AI models generate output containing those lyrics in response to user prompts. Accordingly, Publishers have requested that Anthropic produce user prompts and Claude output that relate to song lyrics. *See* Ex. 1 at 12-13 (Publishers' RFPs 50 and 51).

But Anthropic is impermissibly withholding information about the users associated with responsive prompts and output. It has unilaterally redacted usernames and email addresses from prompts and output, and anonymized the records in a way that makes them difficult to understand.

Publishers are entitled to understand who is prompting Claude for lyrics and receiving infringing output with lyrics. This user information is relevant for a whole host of reasons—not the least of which is that Anthropic tries to pin the blame for its infringement on the very users it now tries to conceal. By obscuring this information, Anthropic hamstrings Publishers' ability to analyze and understand this important discovery and needlessly burdens Publishers in their review.

**A.     User information is directly relevant and proportional to Publishers' claims.**

To start, it bears emphasis that it is Anthropic that must justify its unilateral redactions—not Publishers who must show the redactions are improper. "As a general matter, it is improper to

redact portions of otherwise responsive documents on the grounds that those portions are not relevant or responsive." *DiGiacinto v. RB Health*, No. 22-cv-04690, 2024 WL 4660917, at *1 (N.D. Cal. Feb. 16, 2024) (citing cases). "[U]nilateral redaction[s] . . . make documents confusing or difficult to use," and even "irrelevant information within an otherwise relevant document may provide context necessary to understand the relevant information." *Id.* (citation omitted).

In any event, usernames and email addresses of users who sought and received Claude output copying lyrics are clearly relevant and proportional to Publishers' claims, for many reasons.

First, while Publishers allege that Anthropic is directly and secondarily liable for copyright infringement, Anthropic seeks to evade direct liability for the infringing output of its Claude AI models by denying volition and pinning the blame for infringement **on its users**. *See, e.g.*, Hr'g Tr. at 106:3-4, 107:9-20 (Nov. 25, 2024); ECF No. 285 at 25-26. Anthropic cannot point the finger at its users while simultaneously hiding information about those users. Even under Anthropic's theory, Anthropic and its users would still be liable as joint tortfeasors. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1263 (9th Cir. 2021).

Moreover, individual Claude users who have prompted and received lyric-related output from Claude may possess other critical information to Publishers' claims. For example, Anthropic says it has not preserved ***any*** evidence of user prompts or Claude output prior to September 22, 2023, but users may have access to earlier prompts and output through their Claude accounts. Users can also speak to how often and why they prompted Claude for lyrics, how often Claude delivered lyrics without specific prompting, and how they used the lyric-related output they obtained. Publishers are entitled to seek this discovery as needed. *Real Est. Indus. Sols. v. Concepts in Data Mgmt. U.S., Inc.*, No. 6:10-CV-1045, 2012 WL 12903171, at *6 (M.D. Fla. Jan. 30, 2012) (ordering production of unredacted agreements with customers' identifying information, because "customers may possess relevant information related to the issues of liability and/or damages").

More broadly, Publishers must be able to understand who is prompting Claude for lyrics and receiving infringing output with lyrics—to, among other things, (1) differentiate between prompts by Anthropic's employees and agents (which goes to Anthropic's direct liability, volition, and willfulness), third-party Claude users (relevant to both direct and secondary liability, and to

rebut Anthropic's blanket claim that typical Claude users do not ask for lyrics), and Publishers (particularly given Anthropic's contention that Publisher prompts cannot support infringement claims); (2) link specific prompts and output associated with given users to subscriptions or other payments Anthropic received from those users, which goes to actual damages, financial benefit for purposes of vicarious liability, and willfulness; (3) identify whether given users have repeatedly requested lyrics under the same and/or similar usernames or email addresses, which goes to knowledge and willfulness; and (4) understand how prompts and output fit with other information developed in the case, *e.g.*, public statements by users regarding their use of Claude.

Another court in this District recently rejected an attempt by a defendant to withhold similar user information. In *AdTrader, Inc. v. Google LLC*, 2019 WL 93504 (N.D. Cal. Jan. 3, 2019), the court denied Google's attempt "to anonymize the identities of [customers] whose relevant substantive information the parties have already agreed Google will produce, even if the identities of these entities are not relevant for all of the purposes . . . ." *Id.* at *3. The court reasoned:

> At a minimum, [plaintiff] should be able to know which [customers] are associated with the responsive substantive information that Google has already agreed to produce for the purely practical reason that ***such a production permits [plaintiff] to understand and analyze the information*** it receives from the sample, and to ***understand how the information relates to other information*** it has developed or discovered in the case. Moreover, there is simply ***no legitimate reason*** for Google to specially curate its production to edit out information it considers irrelevant where the underlying substantive information is relevant and responsive.

*Id.* (emphases added). Here, Publishers are entitled to this user information for the same reasons.

**B.      Anthropic has no legitimate privacy basis for withholding user information.**

There is no reason to redact the usernames or email addresses of individuals who prompted Claude for lyrics and received output copying lyrics for "privacy interests," as Anthropic claims.

The Stipulated Protective Order already ensures the confidentiality of sensitive information, and Anthropic has designated this content "Highly Confidential," obviating any need for redactions on top of that. "Redactions are ***highly disfavored*** where there is a protective order in place." *Magana-Munoz v. W. Coast Berry Farms, LLC*, No. 5:20-cv-02087-EJD, 2022 WL 6584545, at *2 (N.D. Cal. Sept. 29, 2022) (emphasis added). "[I]f materials are already shielded by a protective order, unilateral redactions do little more than breed suspicion between the parties,

generate discovery disputes, and invite unnecessary intervention by the court." *United States v. McGraw-Hill Cos.*, No. CV 13-0779, 2014 WL 8662657, at *3 (C.D. Cal. Sept. 25, 2014).

Nor do Anthropic's users expect privacy in their interactions with Claude, as Anthropic warns it may "disclose [their] personal data to third parties in connection with claims, disputes or litigation." PRIVACY POLICY, ANTHROPIC (Feb. 19, 2025), www.anthropic.com/legal/privacy.

### C.    The Stored Communications Act (SCA) clearly does not apply here.

Anthropic cannot invoke the SCA as an excuse to hide user information, for many reasons.

First, Anthropic is clearly not a "remote computing service" (RCS) subject to the SCA. An RCS provides "computer storage or processing services." 18 U.S.C. § 2711(2). "Congress made clear what it meant by 'storage and processing of information'": (1) "storage" refers to a "virtual filing cabinet," such as when "physicians and hospitals maintain medical files in offsite data banks," and (2) "processing" refers to instances when, "before the advent of advanced computer processing programs such as Microsoft Excel, businesses had to farm out sophisticated processing to a service that would process the information." *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 902 (9th Cir. 2008), *rev'd and remanded on other grounds sub nom. City of Ontario v. Quon*, 560 U.S. 746 (2010). Clearly, neither applies to Anthropic. Anthropic does not merely store customer data like a "virtual filing cabinet," nor is it simply a data processing service. Rather, Anthropic offers AI models that respond to a range of user prompts with AI-generated output.

No court has *ever* found an AI company like Anthropic is an RCS under the SCA. Nor are Publishers aware of any other AI company *ever even making* such an argument. There is no basis for this Court to become the first to endorse Anthropic's novel, unsupported assertion. The SCA "is *not* meant to provide a 'catch-all . . . to protect the privacy of stored internet communications,'" and Anthropic's proposed "interpretation stretches the SCA beyond its reasonable limits and *must be rejected*." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 686 (N.D. Cal. 2021) (emphases added) (citation omitted). Courts frequently reject similar attempts to expand the limits of what qualifies as an RCS. *See, e.g.*, *Quon*, 529 F.3d at 901 (wireless communications provider did not become RCS simply "[b]y archiving the text messages on its server"); *In re Zynga Priv. Litig.*, No. C10-04680 JW, 2011 WL 13240366, at *3 (N.D. Cal. Nov. 22, 2011) (rejecting argument that Facebook

was an RCS). None of the cases Anthropic cites supports the vast extension of the SCA it demands.

Second, even if Anthropic were an RCS, the SCA bars disclosure of user communications *only* when (i) the content is maintained by the RCS on behalf of users "solely for the purpose of providing storage or computer processing services" to users, and (ii) the RCS "is not authorized to access the contents . . . for purposes of providing any services other than storage or computer processing." 18 U.S.C. § 2702(a)(2)(B). Neither applies here. Anthropic clearly provides services beyond just storage or computer processing. And Anthropic is obviously authorized to access the contents of user prompts, for purposes of creating AI-generated responses to those prompts.

Third, while the SCA may prohibit certain disclosures of "contents of a communication," it explicitly permits an RCS to disclose "information pertaining to a subscriber or to a customer of such service" "to any person other than a governmental entity." *Loop AI Labs Inc v. Gatti*, No. 15-cv-00798, 2016 WL 787924, at *3 (N.D. Cal. Feb. 29, 2016) (quoting 18 U.S.C. § 2702(c)(6)) (allowing AT&T to disclose subscriber information). Thus, Anthropic's position—agreeing to produce prompts/output content, while hiding user information—is precisely backwards. What's more, **nowhere** does the SCA permit disclosing content of "anonymized" communications. Anthropic's disclosure of such content betrays its understanding that the SCA does not apply to it.

Fourth, the SCA expressly allows Anthropic to disclose both Claude prompts (given Anthropic is the "addressee or intended recipient" of such communications from users) and Claude output (since Anthropic is the "originator" of those communications). 18 U.S.C. § 2702(b)(1), (3).

Fifth, the SCA does not preclude disclosure where Anthropic is a party to both the communication and the case. *Mintz v. Mark Bartelstein & Assocs.*, 885 F. Supp. 2d 987, 994 (C.D. Cal. 2012) (finding defendant could discover text message content through discovery on plaintiff, as opposed to third-party discovery on AT&T). "Where a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions." *O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 88 (2006).

**Proposed compromise**: If Anthropic does not produce the requested user information (*i.e.*, usernames, email addresses, other user information) for responsive prompts and output, Anthropic should be precluded from making any argument based on the user information it failed to disclose,

including arguing that prompts were submitted by Publishers, not third-party users. Fed. R. Civ. P. 37(c)(1). Alternatively, Anthropic should disclose the first six characters of all usernames and email addresses (and the "@anthropic.com" domain for Anthropic employee users) in the first instance, without prejudice to Publishers' ability to later seek full user information as necessary.

## II. **Anthropic's Position**

Anthropic has already agreed to produce responsive prompts and outputs in a manner that does not reveal its users' identities. Now, Plaintiffs seek to compel production of user-identifying information that Anthropic cannot produce alongside prompt and output data without violating the SCA. Even if the SCA did not bar disclosure, third-party users' privacy expectations outweigh Plaintiffs' marginal interest in this information. The compromise of providing unique, anonymous user IDs is sufficient to address Plaintiffs' concerns. The Court should deny Plaintiffs' request.

### A. The Stored Communication Act Prohibits Disclosure

Claude acts as an RCS because it "is an off-site provider that processes and stores data." *Casillas v. Cypress Ins. Co.*, 770 F. App'x 329, 331 (9th Cir. 2019). It fulfills both functions of an RCS, even though the definition requires only one. *See* 18 U.S.C. § 2711(2) (a service is an RCS if it provides either "computer storage *or* processing services") (emphasis added). First, users submit prompts, ranging from simple questions to lengthy text documents or data files. Anthropic then remotely processes and analyzes these prompts using its AI models and computing power to generate processed outputs for its users. *See, e.g.*, *Crispin v. Christian Audigier*, 717 F. Supp. 2d 965, 978 n.26 (C.D. Cal. 2010) (an RCS "provide[s] sophisticated and convenient computing services"); *United States v. Standefer*, 2007 WL 2301760, at *5 (S.D. Cal. Aug. 8, 2007) ("'processing services' refer to outsourcing functions"). Second, Anthropic stores users' prompts and outputs for users' future reference and processing.[1] Thus, Claude is like a "virtual filing cabinet" because users can save and retrieve the contents of their work. *Quon*, 529 F.3d at 902. Plaintiffs suggest that AI-based processing is somehow different from other processing services,

---

[1] *See* https://privacy.anthropic.com/en/articles/7996878-can-you-delete-data-that-i-sent-via-free-claude-ai-or-the-claude-pro-plan ("prompts and conversations in the product are maintained so you can see your conversation history in the product until you decide to delete your content or your account").

but they do not seriously question that Anthropic processes and stores users' content here.

Contrary to Plaintiffs' argument, Congress need not have anticipated generative AI models for the SCA's protections to apply. It designed the SCA flexibly to account for a wide variety of computer processing technologies, including emerging technologies like AI. *See* S. REP. 99-541, 3. Indeed, many services that Americans use to store, process, and safeguard their private data rely on modern technologies that fall within the SCA's scope. *See, e.g.*, *In re United States for an Ord. Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 208-09 (D.D.C. 2018) (Airbnb); *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (YouTube).

The SCA prohibits Anthropic from disclosing users' prompts and outputs in a way that ties this content to individual users. Users' prompts and outputs reflect the "contents" of electronic communications protected by the SCA. *See* 18 U.S.C. § 2510(8) ("contents" means "any information concerning the substance, purport, or meaning of that communication"). RCS providers can only divulge identifiable users' communications contents under extremely limited exceptions, none of which is present here. *See id.* § 2702(a), (b) (including exceptions for, e.g., a search warrant, or "emergency involving danger of death or serious physical injury"). The SCA contains no exception for civil discovery. *See, e.g.*, *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011) (SCA has no "implicit exception … for civil litigation" and prohibits disclosure of content in civil discovery); *Mintz,* 885 F. Supp. 2d at 991 (similar); *YouTube,* 253 F.R.D. at 264 (denying motion to compel subscriber content in civil copyright suit).

Plaintiffs quote SCA exceptions relevant only to Electronic Communications Services ("ECS") to argue Anthropic may divulge the contents of users' electronic communications here. *See* 18 U.S.C. § 2702(b)(1), (3). But their argument that Anthropic is the "addressee" or "originator" of users' prompts and outputs misses the point. To be an RCS, a service must be able to first receive content from a user, process or store that content, and then send it back to the user. Electronic communications between the provider and user are precisely what make a service a *remote* computing service. *See* 18 U.S.C. § 2711(2) (an RCS functions "by means of an electronic communications system"). If an RCS provider could consent to the disclosure of a user's content simply because the user sent that content to the provider, the consent exception would eliminate

the SCA's protections for RCS users. Plaintiffs' interpretation would, for example, eliminate protections for content a user entrusts to a cloud-storage provider simply because they must first transmit that content to the provider. Because Claude is an RCS, Anthropic cannot disclose identifiable users' prompts and outputs without their "lawful consent." *Id.* § 2702(b)(3).

Anthropic has already disclosed as much as the SCA reasonably allows: deidentified prompts and outputs that cannot be tied back to individual users. Plaintiffs' argument that the SCA allows Anthropic to disclose the name and email addresses of its users ignores Plaintiffs' stated intent to tie those users to their communications contents. Even Plaintiffs' proposed compromise—production of the first six characters of each username and email address—could easily reveal the totality of many usernames and email addresses. Plaintiffs cite no case permitting an RCS to disclose users' identifying information in a way that would permit a civil litigant to match anonymous communications content with individual users. No such case exists.

Courts in this District have squarely rejected similar end-runs around the SCA's protections. In *Rainsy v. Facebook*, a litigant argued that identifying users who had "liked" a Facebook page would not violate the SCA because he sought only identifying information. 311 F. Supp. 3d 1101, 1114-15 (N.D. Cal. 2018). The court disagreed, reasoning that "[t]he identity of a speaker is an important component of the message," and concluding that, by seeking data on "who approved" of the Facebook page, the litigant sought the contents of users' communications. *Id.* at 1115. In *Optiver v. Tibra Trading*, a litigant sought the identities of Gmail subscribers who used certain keywords in the bodies of their emails, arguing that, because he stopped short of requesting the full text of those email messages, the SCA permitted disclosure. *See* 2013 WL 256771, at *1–2 (N.D. Cal. Jan. 23, 2013). The court disagreed. By seeking the identities of subscribers whose emails contained specific content, the litigant sought information that "would necessarily reveal" the content of users' communications, which is "exactly the sort of information the SCA sought to protect." *Id.* at *2. Plaintiffs seek to engage in a similar end-run here. *The SCA prohibits it*.

**B. Providing Deanonymized User Information Would Be Disproportional**

Even if the SCA did not prohibit disclosing the information Plaintiffs seek, the privacy interests of Anthropic's users independently weigh against disclosure. Here, Plaintiffs "must

1  demonstrate a compelling need for the discovery" that outweighs users' privacy interests when
2  "carefully balanced." See *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011); see also
3  *Henson v. Turn, Inc.*, 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018). Plaintiffs cannot show
4  a need, much less a compelling one, that outweighs the privacy interests of Anthropic's users.

      The prompts and outputs that Anthropic has already produced include questions about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, questions about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and requests ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Tying these sensitive, personal prompts and outputs to names and email addresses would disproportionately intrude on users' privacy. See *Satmodo, LLC v. Whenever Commc'ns, LLC*, 2018 WL 3495832, at *6 (S.D. Cal. July 20, 2018) (refusing to order production of unredacted print outs of browser histories as "intrusive" and "disproportionate to the needs of the case"). These privacy interests are not extinguished simply because Anthropic advises it "may" disclose certain personal data to third parties in connection with claims, disputes, or litigation. See https://www.anthropic.com/legal/privacy ("[W]e strive to prioritize the protection of personal data, and comply with all applicable privacy laws.").

      In contrast, Plaintiffs fail to put forward any legitimate "need" for the de-anonymized information that they seek. Plaintiffs clarified during the Feb. 24 conferral that their primary objective is identifying their own agents' prompts and outputs—yet they refuse to disclose a list of those same agents (the subject of a forthcoming discovery dispute). Any claimed "burden" or "difficulty" in achieving this objective is entirely self-imposed. Moreover, Anthropic's proposed compromise below will allow Plaintiffs to "differentiate between prompts" from Plaintiffs, Anthropic, and third-party users, so long as Anthropic can clearly identify Plaintiffs' agents.

      Plaintiffs' other arguments fare no better. They have not served any discovery seeking fees on a per-user basis, so de-anonymizing the names and emails associated with prompts will not enable Plaintiffs to "link" those prompts "to subscriptions or other payments." See Ex. A at 8–9 (RFPs 16–18). Plaintiffs also speculate that users "may have access" to prompts and outputs from months before Plaintiffs surfaced their claims, but do not articulate a basis or need for such

evidence. Finally, Plaintiffs refer vaguely to their need to understand "public statements by users regarding their use of Claude." To the extent that Plaintiffs can find such users and obtain their consent, Anthropic will not object to producing those users' de-anonymized prompts and outputs.

More broadly, Anthropic's proposal to provide unique user IDs along with anonymized prompt and output data will also allow Plaintiffs to group multiple prompts and outputs from the same user. The use of unique IDs is a common discovery practice that appropriately weighs the privacy interests here. *See, e.g.*, *Nance v. May Trucking Co.*, 2012 WL 1598070, at *3 (S.D. Cal. May 7, 2012); *James v. Cuyahoga Cnty.*, 648 F. Supp. 3d 897, 908 (N.D. Ohio 2022); *In re Wells Fargo Bank, N.A.*, 2019 WL 3069211, at *2 (S.D. Cal. July 12, 2019) (refusing to compel production of depositor names where the defendant offered to provide unique IDs).

Plaintiffs fail to cite any authority where a court required the production of unredacted *personal* communications after balancing the privacy—rather than commercial—interests of a third party. In *Real Est. Indus. Sols*, the court ordered production of 35 unredacted customer agreements regarding *commercial* real estate software. 2012 WL 12903171, at *6. And in *AdTrader*, the court granted a request for *publisher and advertiser* names (but denied the request for their contact information). 2019 WL 93504, at *3-4. Neither defendant raised user privacy as a competing concern. The same is true of Plaintiffs' other cases. *See Magana-Munoz*, 2022 WL 6584545, at *2 (disallowing redactions that were likely made on the basis of relevancy and responsiveness, not privacy); *DiGiacinto*, 2024 WL 4660917, at *1 (same); *McGraw-Hill Cos.*, 2014 WL 8662657, at *2 (plaintiff challenged responsiveness redactions but not privacy redactions). These cases do not support Plaintiffs' motion, which should be denied.

**Proposed Compromise**: Producing anonymized prompt and output data with unique user IDs is a reasonable compromise. Moreover, Anthropic will produce the names and email addresses of Plaintiffs' agents, to the extent they can be identified by Anthropic, and will not redact the @anthropic.com domain from email addresses associated with Anthropic's agents. Anthropic will also agree not to make affirmative arguments based on redacted information. But Anthropic cannot determine, much less concede, that none of the redacted user information is associated with Plaintiffs' agents, since Plaintiffs refuse to provide a list of their agents who used Claude.

| | | |
|---|---|---|
| 1 | Dated: March 14, 2025 | Respectfully submitted, |
| 2 | By: */s/ Timothy Chung* | By: */s/ Joseph R. Wetzel* |
| 3 | **OPPENHEIM + ZEBRAK, LLP** | **LATHAM & WATKINS LLP** |
|   | Matthew J. Oppenheim | Joseph R. Wetzel (SBN 238008) |
| 4 | Nicholas C. Hailey | joe.wetzel@lw.com |
|   | Audrey L. Adu-Appiah | Andrew M. Gass (SBN 259694) |
| 5 | (admitted *pro hac vice*) | andrew.gass@lw.com |
|   | 4530 Wisconsin Ave., NW, 5th Floor | Brittany N. Lovejoy (SBN 286813) |
| 6 | Washington, DC 20016 | britt.lovejoy@lw.com |
|   | Telephone: (202) 480-2999 | 505 Montgomery Street, Suite 2000 |
| 7 | matt@oandzlaw.com | San Francisco, California 94111 |
|   | nick@oandzlaw.com | Telephone: +1.415.391.0600 |
| 8 | aadu-appiah@oandzlaw.com | |
| 9 | | Sarang V. Damle |
|   | Jennifer Pariser | (admitted *pro hac vice*) |
| 10 | Andrew Guerra | sy.damle@lw.com |
|   | Timothy Chung | 555 Eleventh Street NW, Suite 1000 |
| 11 | (admitted *pro hac vice*) | Washington, DC 20004 |
|   | 461 5th Avenue, 19th Floor | Telephone: +1.202.637.2200 |
| 12 | New York, NY 10017 | |
| 13 | Telephone: (212) 951-1156 | Allison L. Stillman |
|   | jpariser@oandzlaw.com | (admitted *pro hac vice*) |
| 14 | andrew@oandzlaw.com | alli.stillman@lw.com |
|   | tchung@oandzlaw.com | 1271 Avenue of the Americas |
| 15 | | New York, New York 10020 |
| 16 | **COBLENTZ PATCH DUFFY & BASS LLP** | Telephone: +1.212.906.1747 |
|   | Jeffrey G. Knowles (SBN 129754) | |
| 17 | One Montgomery Street, Suite 3000 | *Attorneys for Defendant* |
|   | San Francisco, CA 94104 | |
| 18 | Telephone: (415) 391-4800 | |
|   | ef-jgk@cpdb.com | |
| 19 | | |
| 20 | **COWAN, LIEBOWITZ & LATMAN, P.C.** | |
|   | Richard S. Mandel | |
| 21 | Jonathan Z. King | |
|   | Richard Dannay | |
| 22 | (admitted *pro hac vice*) | |
|   | 114 West 47th Street | |
| 23 | New York, NY 10036-1525 | |
| 24 | Telephone: (212) 790-9200 | |
|   | rsm@cll.com | |
| 25 | jzk@cll.com | |
|   | rxd@cll.com | |
| 26 | | |
| 27 | *Attorneys for Plaintiffs* | |
| 28 | | |

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of the document was obtained from the document's signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2025                                     */s/ Timothy Chung*
                                                             Timothy Chung