# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No. 3:23-cv-01092 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

## PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Federal Rules of Civil Procedure 26 and 34, the Local Rules of the U.S. District Court for the Middle District of Tennessee, and this Court's Initial Case Management Order, ECF No. 64, Plaintiffs serve their Second Set of Requests for Production of Documents and Things ("Requests") upon Defendant Anthropic PBC. Plaintiffs request that Anthropic respond in writing in accordance with the Federal Rules of Civil Procedure and the Definitions and Instructions herein and produce any documents or things at the offices of Oppenheim + Zebrak, LLP, 4530 Wisconsin Avenue NW, 5th Floor, Washington, DC 20016, or at such other place as the parties may agree upon, within thirty (30) days of the date of service.

## DEFINITIONS

Unless otherwise indicated, the following definitions apply to these Requests:

1.  The terms "Defendant," "Anthropic," "you," or "your" mean Anthropic PBC, including its parents, subsidiaries, predecessors, successors, affiliates, officers, directors, employees, contractors, freelancers, and/or any other person or entity currently or previously acting or purporting to act on behalf or at the direction of Anthropic PBC.

1

2. The terms "Plaintiffs" or "Publishers" refer collectively to Concord Music Group, Inc.; Capitol CMG, Inc. d/b/a Ariose Music, d/b/a Capitol CMG Genesis, d/b/a Capitol CMG Paragon, d/b/a Greg Nelson Music, d/b/a Jubilee Communications, Inc., d/b/a Meadowgreen Music Company, d/b/a Meaux Hits, d/b/a Meaux Mercy, d/b/a River Oaks Music, d/b/a Shepherd's Fold Music, d/b/a Sparrow Song, d/b/a Worship Together Music, d/b/a Worshiptogether.com Songs; Universal Music Corp. d/b/a Almo Music Corp., d/b/a Criterion Music Corp., d/b/a Granite Music Corp., d/b/a Irving Music, Inc., d/b/a Michael H. Goldsen, Inc., d/b/a Universal - Geffen Music, d/b/a Universal Music Works; Songs of Universal, Inc. d/b/a Universal - Geffen Again Music, d/b/a Universal Tunes; Universal Music - MGB NA LLC d/b/a Multisongs, d/b/a Universal Music - Careers, d/b/a Universal Music - MGB Songs; Polygram Publishing, lnc. d/b/a Universal - Polygram International Tunes, Inc., d/b/a Universal - Polygram International Publishing, Inc., d/b/a Universal - Songs of Polygram International, Inc.; Universal Music - Z Tunes LLC d/b/a New Spring Publishing, d/b/a Universal Music - Brentwood Benson Publishing, d/b/a Universal Music - Brentwood Benson Songs, d/b/a Universal Music - Brentwood Benson Tunes, d/b/a Universal Music - Z Melodies, d/b/a Universal Music - Z Songs; and ABKCO Music, Inc.

3. "AI" means artificial intelligence.

4. "AI company" means any business or organization that provides generative AI services, including for commercial applications, such as Anthropic, OpenAI, Stability, or Meta.

5. "Claude" refers to any general purpose generative-AI large language model created, developed, maintained, or made publicly available by Anthropic, including large language models created by Anthropic but licensed to or hosted by third parties.

6. "Communicate" or "communication" means, without limitation, any transmittal, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, demand,

question, or other information in any medium, whether by written, oral, or other means, including but not limited to electronic communications and electronic mail.

7. "Concern," "concerning," "evidence," "evidencing," "relating to," "relates to," "related to," "referring or relating to," "referring to," "regarding," and "refer or relate to" are construed broadly to mean relating to, referring to, describing, evidencing, or constituting or in any way relevant within the meaning of Fed. R. Civ. P. 26(b)(1).

8. "Date" means the exact day, month, and year, if so ascertainable or, if not, the best approximation (including relationship to seasons and/or other events).

9. "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a) and includes Electronically Stored Information ("ESI") existing in any medium from which information can be translated into reasonably usable form, including but not limited to email and attachments, word processing documents, spreadsheets, graphics, presentations, images, text files, databases, instant messages, transaction logs, audio and video files, voicemail, internet data, computer logs, text messages, and backup materials. Publishers interpret ESI to mean information that is stored electronically as files, documents, or other data on computers, servers, mobile devices, online repositories, disks, USB drives, tape or other real or virtualized devices or digital media. By way of illustration and without limitation, documents include at least the following: originals, drafts, and all non-identical copies. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document. For the avoidance of doubt, any Documents or data shall include their associated metadata.

10. "Electronically stored information" or "ESI" is information that is stored

electronically as files, documents, or other data on computers, servers, mobile devices, online repositories, disks, USB drives, tape, or other real or virtualized devices or digital media.

11. "Employee" means any director, trustee, officer, employee, partner, subsidiary, or servant of the designated entity, whether full-time or part-time, and compensated or not.

12. The terms "identify," "identity," and "identification" mean, as the context shall make appropriate:

   a. With respect to a person, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment;

   b. With respect to a document, to the extent known, the type of document, subject matter, date of the document, author(s), addressee(s), and recipient(s);

   c. With respect to a telephone conversation, to the extent known, the participants' full names, present or last known place of employment, present or last known address, the date of the conversation, and the subject matter discussed;

   d. With respect to an oral conversation other than a telephone conversation, to the extent known, the participants' full names, present or last known place of employment, present or last known address, the date of the conversation, and the subject matter discussed;

   e. With respect to a corporation, partnership, association, or other entity, to the extent known, its full name and present or last known address; and

   f. With respect to any event or action, to the extent known, the dates or approximate dates thereof, a description of what occurred, and all identifiable persons involved.

13. "Person" and "individual" mean any natural person or any business, legal, or government entity, or association—including, but not limited to, any proprietorship, partnership, firm, company, or corporation.

14. The term "Subscriber" refers to any past or present accountholder who pays or paid Anthropic for access to any Claude model.

15. "Thing" has the full meaning ascribed to it by the Federal Rules of Civil Procedure.

16. "Training Corpus" means the collection of materials used to train a generative AI

4

model.

17. The term "User" refers to any person who currently uses or previously used Anthropic's Claude services.

18. "Works" or "Publishers' Works" refers to the 500 musical compositions, to which Publishers own or control exclusive rights, that are listed in Exhibit A of the Complaint.

19. Plaintiffs' use of terms, phrases, and definitions is for convenience, and no term, phrase, or definition shall be construed as an admission by Publishers.

20. As used herein, the term "facts" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of the law to fact.

## INSTRUCTIONS

1. The following shall apply to all Requests:

    a. The singular form of each word shall be construed to include its plural, and the plural of each word shall be construed to include and encompass its singular form;

    b. The conjunctions "and" as well as "or" shall be construed either conjunctively or disjunctively, whichever is more inclusive in context;

    c. "Each" and "every" shall be construed to include "all" and "any," and vice versa; and

    d. The use of a verb in any tense shall be construed to include the use of the verb in all other tenses.

2. These Requests are continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure. If you receive or otherwise become aware of information responsive to any Request after you have served your responses to these Requests, you must promptly supplement your responses to these Requests to provide such information.

3. Unless otherwise indicated, these Requests seek information from 2020 through the present. These Requests shall be deemed continuing so as to require a prompt and further

supplemental response if you obtain additional responsive information at any time between the time for the initial response and the time of hearing or trial.

4. Each Request shall operate and be responded to independently and, unless otherwise indicated, no Request limits the scope of any other Request. This instruction does not require you to re-produce documents to the extent they are duplicative documents responsive to other Requests.

5. In responding to these Requests, you are required to furnish relevant and responsive information that is available to you or subject to your reasonable inquiry, including information in the possession, control, or custody of your present and former attorneys, accountants, advisors, representatives, agents, employees, or other persons directly or indirectly employed by you, and anyone else otherwise subject to your control. All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

6. If there are no Documents or Things responsive to a particular Request following a reasonable inquiry, you should state so in writing.

7. If any Document or Communication covered by this set of Requests is withheld by reason of a claim of privilege (including work-product immunity), you shall furnish within a reasonable timeframe a list providing information on the nature of each withheld Document sufficient to allow Publishers to assess the claim of privilege, as required by Fed. R. Civ. P. 26(b)(5).

8. In the event you contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore and respond to the remainder of the Request to the extent that you are not objecting to it.

9. If you object to any Request on the grounds of overbreadth, specifically state the manner in which you contend the Request is overly broad and respond to the Request as narrowed to conform to such objection.

10. If any Request is ambiguous or unclear to you, you are requested to contact the undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

11. If you do not agree with any Definition of the terms provided herein, you are instructed to provide a reasonable alternative Definition for that term, consistent with industry custom and usage.

12. Each of the Definitions and Instructions contained herein shall be fully applicable to each Request notwithstanding that a Definition or Instructions above may, in whole or in part, be reiterated in a particular Request and notwithstanding that a particular Request may incorporate supplemental Instructions or Definitions. If, however, you provided any alternate Definitions in accordance with these Instructions, indicate whether and how, any answer to any Request would differ if you relied on your alternate Definition in responding to that Request instead of the Definitions provided.

13. Each and every copy of a Document that is different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate Document that must be produced.

14. Pursuant to Federal Rule of Civil Procedure 34(b), you are instructed to produce Documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in this set of requests. Documents shall be produced in their original folders, binders, covers, or containers, or photocopies thereof. Such Documents shall be designated as

responsive to the particular request as designated herein.

15. If a Document otherwise responsive to a request was, but no longer is, in your actual or constructive possession, custody, or control, please state whether the Document (a) is lost or destroyed; (b) has been transferred to another person or entity either voluntarily or involuntarily; or (c) has been otherwise disposed of; and in each instance, (d) explain the circumstance surrounding the disposition, including the date or approximate date of the disposition.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 13:** Documents sufficient to identify Anthropic's personnel, including the job titles and responsibilities of such personnel, responsible for developing, interpreting, or implementing any policies, practices, procedures, or strategies related to the use, reproduction, distribution, or display of copyrighted material in Claude's Training Corpus and/or outputs.

**REQUEST NO. 14:** Documents sufficient to identify Anthropic's personnel, including the job titles and responsibilities of such personnel, responsible for training Claude, including persons responsible for selecting training inputs, collecting training inputs, maintaining training data, tokenizing data, and finetuning Claude models.

**REQUEST NO. 15:** Documents sufficient to identify Anthropic's personnel, including job titles and responsibilities of such personnel, responsible for addressing violations of Anthropic's Terms of Service and Acceptable Use Policies.

**REQUEST NO. 16:** Documents sufficient to show Anthropic's total revenues and profits, by month and year, including a breakdown by service provided.

**REQUEST NO. 17:** Documents sufficient to show Anthropic's fee structure for selling, licensing, or otherwise granting access to Claude and the total revenue Anthropic derived from charging Users or Subscribers on a per-token, per-input, or per-output basis.

**REQUEST NO. 18:** Documents sufficient to show the total revenue that Anthropic

derived from User and Subscriber uses of Claude to search for, identify, or generate preexisting songs or their lyrics.

**REQUEST NO. 19:** All contracts, licenses, or any other agreements between Anthropic and any other person or entity to provide training data to Anthropic.

**REQUEST NO. 20:** All Documents and Communications concerning Anthropic's use or potential use of data generated internally or synthetic data to train Claude.

**REQUEST NO. 21:** All Documents and Communications concerning policies, manuals, guidelines, instructions, and evaluations concerning the dataset, prompts, or human feedback used to finetune Claude.

**REQUEST NO. 22:** All Documents and Communications directed to Anthropic's employees, agents, contractors, data work platforms, or crowdworkers concerning prompts or human feedback used to finetune Claude.

**REQUEST NO. 23:** All Documents and Communications directed to Anthropic employees, agents, contractors, data work platforms, or crowdworkers, concerning outputs generated while finetuning Claude.

**REQUEST NO. 24:** All Documents and Communications concerning the selection and use of human feedback data to train and/or finetune Claude.

**REQUEST NO. 25:** All Documents concerning criteria Anthropic used or considered to select the data, datasets, and sources of data used to train and/or finetune Claude.

**REQUEST NO. 26:** All Documents and Communications concerning Anthropic's diligence, review, assessment, or efforts to select among data or datasets used or considered for use to train and/or finetune Claude.

**REQUEST NO. 27:** All Documents and Communications concerning Anthropic's

methods and criteria for cleaning, filtering, editing, or otherwise modifying data used to train Claude.

**REQUEST NO. 28:** Documents sufficient to show every instance of the Works contained in the Training Corpus for each Claude model.

**REQUEST NO. 29:** All Documents concerning the use of copyrighted materials to train Claude.

**REQUEST NO. 30:** All Documents concerning the appearance or inclusion of copyrighted materials in outputs generated by Claude.

**REQUEST NO. 31:** All Documents concerning policies, practices, procedures, protocols, or capabilities, that Anthropic considered, formulated, rejected, or adopted concerning the use of copyrighted materials to train Claude, the appearance of copyrighted materials in Claude's outputs, or the actual or potential infringement of copyrights in any aspect of Claude.

**REQUEST NO. 32:** All policies, statements of policy, guidelines, or instructions related to copyright infringement directed to Anthropic's employees, contractors, crowdworkers, or other individuals or entities working on behalf of, at the direction of, or under the supervision of Anthropic.

**REQUEST NO. 33:** All policies directed to Anthropic's Users and Subscribers relating to copyright infringement, including any Documents or Communications discussing such copyright infringement policies.

**REQUEST NO. 34:** Documents sufficient to show the metrics that Anthropic tracks or data that Anthropic collects about Users and Subscribers who violate Anthropic's Acceptable Use Policy or Terms of Service.

**REQUEST NO. 35:** All Documents concerning the impact or effectiveness of any

policies, procedures, or protocols intended to stop alleged copyright infringement in the training or use of Claude, including any reports, plans, studies, analysis, research, audits, or evaluations.

**REQUEST NO. 36:** All Documents and Communications concerning the potential or actual use of technologies, tools, or devices to modify outputs generated by Claude.

**REQUEST NO. 37:** All Documents and Communications concerning the potential or actual use of technologies, tools, or devices to modify prompts submitted by Users or Subscribers.

**REQUEST NO. 38:** All Documents concerning any technological or other means, including guardrails, output filters, or modification of User prompts, that Anthropic considered or implemented to detect, address, limit, prevent, or remedy the use of Claude to infringe copyrights.

**REQUEST NO. 39:** All Documents and Communications concerning any potential or actual use of technologies, tools, devices, or other mechanisms to detect, address, limit, or prevent Claude's generation of copyrighted material in its output.

**REQUEST NO. 40:** All Documents and Communications concerning any potential or actual use of technologies, tools, devices, or other mechanisms to detect, limit, or prevent the use of copyrighted materials in Claude's Training Corpus.

**REQUEST NO. 41:** All Documents and Communications concerning any potential or actual use of technologies, tools, devices, or other mechanisms to detect, limit, or prevent uses of Claude that violate Anthropic's Acceptable Use Policy or Terms of Service.

**REQUEST NO. 42:** All Documents and Communications regarding technological or other means or mechanisms that Anthropic has implemented to detect, address, limit, prevent, or remedy violations of Anthropic's Terms of Service or Acceptable Use Policy unrelated to copyright.

**REQUEST NO. 43:** All Documents and Communications concerning any failure,

malfunction, or defect in Claude guardrails or output filters, including but not limited to vulnerabilities reported under Anthropic's Responsible Disclosure Policy, bug reports, and reports concerning jailbreaks or "harmlessness" issues.

**REQUEST NO. 44:** All manuals and handbooks concerning the Claude models directed to Anthropic employees, contractors, or any other individual or entity working on behalf, at the direction, under the supervision, or for the benefit of Anthropic.

**REQUEST NO. 45:** All Documents and Communications concerning the relative success or failure, including success or failure rates, of Anthropic's guardrails, output filters, or other technological measures in preventing the output of copyrighted works or the use of copyrighted materials in the Training Corpus for Claude.

**REQUEST NO. 46:** Documents sufficient to show the failure or error rate of Anthropic's guardrails, output filters, or other technological measures in preventing outputs in violation of Anthropic's Acceptable Use Policy, Terms of Service, or Claude's constitutional principles.

**REQUEST NO. 47:** All Documents and Communications concerning Anthropic's first awareness of the use of copyrighted materials in the Training Corpus for Claude.

**REQUEST NO. 48:** All Documents and Communications concerning Anthropic's first awareness of the inclusion or appearance of copyrighted materials in outputs generated by Claude.

**REQUEST NO. 49:** All Documents and Communications, including but not limited to reports, plans, studies, consumer research materials, advertising or marketing materials, or presentations, concerning the use or potential use of Claude to search for, identify, or generate songs or their lyrics; to combine lyrics from one source with lyrics from another source; or to combine lyrics from one source with lyrics generated by Claude.

**REQUEST NO. 50:** Documents sufficient to show, by Claude model and by date, all

User or Subscriber prompts instructing Claude to search for, identify, recite, or otherwise generate songs or their lyrics; to combine lyrics from one source with lyrics from another source; or to combine lyrics from one source with lyrics generated by Claude.

**REQUEST NO. 51:** Documents sufficient to show all Claude responses or outputs containing song lyrics, including a breakdown by Claude model and date.

**REQUEST NO. 52:** Any report, study, presentation, or analysis concerning the degree to which Claude generates outputs containing copyrighted material.

**REQUEST NO. 53:** All Documents and Communications with third parties concerning alleged copyright infringement, including Communications with any employee, officer, or director of any other AI company; with any employee, officer, or director of any company in the music industry; or with any copyright holders, their agents, or their vendors.

**REQUEST NO. 54:** Documents sufficient to show on a monthly, quarterly, and yearly basis the number of copyright infringement notices that Anthropic received concerning Claude.

**REQUEST NO. 55:** All Documents and Communications regarding the inclusion or exclusion of principles from Claude's Constitution, including but not limited to principles or policies concerning copyrights, moral rights, or other intellectual property rights.

**REQUEST NO. 56:** Documents sufficient to identify all statements directed to Users regarding the use of Claude to search for copyrighted material or generate outputs containing copyrighted material, including copyrighted compositions and their lyrics.

**REQUEST NO. 57:** Documents sufficient to show on a monthly, quarterly, and annual basis the number of instances in which Anthropic notified a User or Subscriber that the User or Subscriber's use of Claude infringed on copyrights or violated an infringement-related provision of Anthropic's Terms of Service.

**REQUEST NO. 58:** Documents sufficient to show on a monthly, quarterly, and annual basis the number of instances in which Anthropic removed or disabled access to material identified as infringing or potentially infringing third-party copyrights.

**REQUEST NO. 59:** Documents sufficient to show on a monthly, quarterly, and annual basis the number of Users or Subscribers whose accounts or service Anthropic restricted, cancelled, or terminated due to alleged copyright infringement or violation of provisions in Anthropic's Terms of Service or Acceptable Use Policy concerning intellectual property.

**REQUEST NO. 60:** Documents sufficient to show on a monthly, quarterly, and annual basis the number of Users or Subscribers whose accounts or service Anthropic restricted, cancelled, or terminated for reasons unrelated to alleged copyright infringement, including due to violations of Anthropic's Acceptable Use Policy or Terms of Service.

**REQUEST NO. 61:** All Documents and Communications concerning any review or analysis of the adequacy, reasonableness, or efficacy of Anthropic's policies or procedures concerning copyright infringement, including without limitation any current or former copyright or repeat infringer policy.

**REQUEST NO. 62:** Documents sufficient to show on a monthly, quarterly, and annual basis the number of instances in which Anthropic removed or disabled access to material identified as violating Anthropic's Terms of Use or Acceptable Use Policy on grounds other than copyright infringement.

**REQUEST NO. 63:** Documents sufficient to show the resources and budget for each Anthropic team responsible for receiving, responding to, processing, and addressing infringement notices or for detecting, monitoring, or preventing instances of copyright infringement using Claude.

**REQUEST NO. 64:** Documents sufficient to show the resources and budget for each team responsible for receiving, responding to, processing, and addressing notices of non-copyright infringement violations of Anthropic's Terms of Use or Acceptable Use Policy and for detecting, monitoring, or policing content for such violations.

**REQUEST NO. 65:** All Documents on which you rely in responding to Plaintiffs' Interrogatories.

**REQUEST NO. 66:** All Documents concerning Anthropic's retention of User or Subscriber prompts and outputs generated by Claude, including any retention policy.

Dated: March 22, 2024

Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036-1525
Telephone: 212-790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

Respectfully submitted,

*/s/ Timothy Chung*

Timothy Chung
Jennifer Pariser
Andrew Guerra
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
tchung@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com

Steven A. Riley (No. 6258)
Tim Harvey (No. 21509)
Grace Peck (No. 38558)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
sriley@rjfirm.com
tharvey@rjfirm.com
gpeck@rjfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, I caused the foregoing document to be served on the following counsel via the methods indicated:

**VIA EMAIL**

Aubrey B. Harwell III
Nathan C. Sanders
Olivia R. Arboneaux
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
tharwell@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

**VIA EMAIL**

Allison L. Stillman
LATHAM & WATKINS, LLP
1271 Avenue of the Americas
New York, NY 10020
alli.stillman@lw.com

**VIA EMAIL**

Andrew M. Gass
Joseph R. Wetzel
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
andrew.gass@lw.com
joe.wetzel@lw.com

**VIA EMAIL**

Sarang V. Damle
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
sy.damle@lw.com

*/s/ Timothy Chung*
Timothy Chung