[Counsel on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **JOINT DISCOVERY DISPUTE STATEMENT REGARDING PUBLISHERS' RESPONSES TO ANTHROPIC'S INTERROG. NO. 1 AND RFP NOS. 37-43** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Statement regarding Publishers' responses to Anthropic's Interrogatory No. 1 and Request for Production (RFP) Nos. 37–43. This dispute concerns whether Anthropic may seek discovery into (1) the undisclosed prompts and outputs that Publishers and their agents obtained from Claude during their legal investigations and (2) corresponding Claude account information and settings. The relevant requests are attached as **Exhibits A–B**. Publishers' objections and responses are attached as **Exhibits C–D**. The parties' joint chart is attached as **Exhibit E**. There are 155 days until the close of fact discovery. The parties met and conferred by videoconference on May 9, June 3, and August 15, 2024, and exchanged correspondence on December 20, 2024 and January 6, 2025, but were unable to resolve these disputes. Anthropic proposes the following compromise: (1) Publishers identify under oath the user names and emails of all agents involved in their investigation of Claude, and Anthropic will exclude Publishers' (and its own) agents' prompts/outputs from its review universe and the negotiated sample ordered by the Court, Dkt. 318 at 2; (2) Publishers stipulate that they will not rely on their agents' prompts/outputs as evidence of infringement for any purpose; and (3) Publishers respond to an interrogatory with the dates, times, user names, and emails associated with their agents' prompting and the total number of prompts required to elicit the allegedly infringing outputs cited in the Complaint and their Preliminary Injunction Motion, including any unsuccessful prompts for unasserted works. However, Publishers cannot agree to Anthropic's proposal, which would violate their work product privilege and invade the protected details of their legal investigations, and Publishers cannot offer an alternative compromise position at this time, for the same reasons.

## I.   ANTHROPIC'S POSITION

Publishers use their own prompts and outputs to make sweeping claims about Claude, including that (1) it is easy obtain lyrics from Claude, (2) users obtain lyrics from Claude on such a "massive scale" that "users of Anthropic's AI models [no longer] visit" lyric websites that license the copyrights to Publishers' works, and (3) the *purpose* of Claude is to regurgitate Publishers' lyrics. Dkt. 1 ("Compl."), ¶¶ 8, 108, 122; *see also* Dkt. 179 ("PI Mot.") at 5–6, 21–23. The fact is, Publishers possess direct evidence of Claude's performance under adversarial testing intended to

elicit lyrics. Given their legal claims and selective reliance on this evidence, they are obligated to produce this information. However, Publishers have thus far refused, arguing that it is attorney work product. But Publishers cannot have it both ways: their prompting is either work product or evidence. If it is evidence, then Anthropic is entitled to test it. If it is work product, then it is supposedly confidential and Publishers should not be able to rely on evidence of their results.

Publishers identified 500 examples where Claude allegedly provided infringing outputs in response to certain Publisher prompts. PI Mot. at 5–6; Dkt. 49. The Complaint provides ten examples of a similar regurgitation exercise. Compl. ¶¶ 66–79. *See, e.g.*, Dkt. 225 ("PI Reply") at 2 ("[D]espite the guardrails, Claude continues to deliver infringing output to users."); Nov. 25, 2024 Hr'g Tr. 79:11–17 (claiming Claude is "intended to regurgitate portions or in full pieces of our works. And we know that because it's done it... over and over again. That's why we have so many copies of the works"). Publishers put Claude's behavior, these prompts/outputs, and the alleged failure of Anthropic's copyright guardrails (including under their own testing) at the center of the case, including to challenge Anthropic's fair use defense.

Anthropic asserts that using Claude to find song lyrics is atypical and Claude is not designed for such a purpose, a claim Publishers seek to test. By the same token, Anthropic is entitled to test Publishers' claim that its guardrails are ineffective and obtaining lyrics from Claude is easy. If it took significant effort to obtain lyrics, it would indicate Claude is not a good substitute for a lyrics website. Just as Publishers are entitled to seek prompts and outputs in Anthropic's possession to test their claim, Anthropic is entitled to discovery into how Publishers obtained their outputs. This context is essential to assessing Publishers' claims and Anthropic's defenses.

Accordingly, Anthropic seeks: (a) documents sufficient to show all prompts and outputs that Publishers and their agents sent to and obtained from Claude, including those associated with Publishers' efforts to generate the outputs of Asserted Works referred to in the Complaint and PI Motion ("the Disclosed Outputs"), regardless of whether they succeeded or failed (RFPs 38–41, 43); (b) the Claude account names, IP addresses, and email addresses used in the same process (RFPs 37, 42–43, ROG 1); and (c) documents sufficient to show the full chat log, all account

settings applied, and date and time each output was generated (RFPs 38–39). Exs. A–B. These records facilitate basic testing of Publishers' assertions, and should be non-controversial.

Objections on the basis of attorney-client privilege and the work-product doctrine fail for two separate and independent reasons. *See* Exs. C–D.

*First*, the information Anthropic seeks is not an attorney-client communication or protectable work product. Anthropic does not seek any confidential communications between Publishers and counsel nor any document containing attorney mental impressions, commentary, or analysis. Publishers' legal strategies, theories, or opinions are not revealed by the settings and prompts they entered into Claude to trigger regurgitation, nor by their failed attempts to do so. What is discoverable is the process Publishers' experts used and the outputs they obtained in testing Claude, which embody "factual and technical information" for which work product protection is at best thin, if available at all. *See Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, 2013 WL 812484, at *2–3 & n.1 (D. Mass. Mar. 4, 2013) ("generous[ly]" "assum[ing]" fact work production protection over technical information about testing of allegedly infringing product).

*Second*, even if Publishers' prompts and outputs were work product, Publishers waived any protection by putting that information "at issue" by selectively disclosing some prompt/output data to support their claim that it is easy for Claude users to obtain song lyrics. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020); *Lexington Luminance LLC v. Feit Elec. Co.*, 2020 WL 10052401, at *10 (C.D. Cal. June 12, 2020). Moreover, Anthropic has both a "substantial" and "compelling" need for evidence in Publishers' possession. Publishers possess evidence that would directly undermine their theory of the case. *Sanmina*, 968 F.3d at 1124–25. Further, given Anthropic's data retention policies and the unknown timing/duration of Publishers' regurgitation attempts before filing suit, Publishers alone are likely to possess older prompt and output data predating the Complaint. This information asymmetry requires Publishers to produce this information. *Cf. Labbe v. Dometic Corp.*, 2024 WL 325331, at *5 (E.D. Cal. Jan. 29, 2024).

Publishers may not use work product protection "as both a shield and a sword" by asserting claims supported by some of their prompts/outputs while denying access to others, which are key evidence needed to dispute those claims. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir.

2003). In *Lexington Luminance*, the court found that plaintiff waived work product protection as to test results for all 44 products it accused of patent infringement by disclosing the results for one product because plaintiff put such results "squarely 'at issue.'" 2020 WL 10052401, at *10. Here, too, Publishers selectively disclosed certain test results. They rely on successful regurgitation attempts while simultaneously hiding their unsuccessful efforts. This cherry-picking misrepresents Claude's true functionality and undermines principles of fairness. Publishers' unsuccessful attempts should be considered together with their successes. *See Bittaker*, 331 F.3d at 719; *cf. Theranos, Inc. v. Fuisz Techs., Ltd.*, 2013 WL 2153276, at *4 (N.D. Cal. May 16, 2013) (no privilege where defendant "may have cherry-picked selective communications [] favorable to him"). By contrast, Anthropic is not relying on any of its attorneys' post-suit prompting as a sword while simultaneously shielding information about those prompts from discovery.

Further, Publishers' reliance on *Tremblay* is misguided. In that case about training, the plaintiffs used example outputs merely to show the works were in ChatGPT's training data, not as evidence of output infringement. *Tremblay*, No. 3:23-cv-03223, Dkt. 120 ¶¶ 62–69 & Ex. B (N.D. Cal. Mar. 13, 2024). Here, Publishers claim that Claude's outputs containing lyrics themselves infringe and occur "on a massive scale," threatening their licensing market. Compl. ¶¶ 8, 11, 108; *see also* PI Mot. at 5–6, 21–23. To support that claim, Publishers rely on the "successful" Claude prompts and outputs that they pointed to in support of a preliminary injunction. This argument fails if those successes required hundreds of unsuccessful attempts to coax purportedly infringing outputs from Claude. Anthropic thus has a compelling need for the full picture.

The *New York Times* order is equally inapposite. *See New York Times v. Microsoft*, No. 23-cv-11195, Dkt. 243 (S.D.N.Y. Sept. 13, 2024). Critically, unlike Publishers, the Times disclaimed reliance on the outputs cited in its complaint at summary judgment or trial, so OpenAI would not need the underlying materials to contest its claims. *Id.*, Dkt. 125 at 2 (S.D.N.Y. May 28, 2024); *see also Authors Guild v. OpenAI, Inc.*, No. 23-cv-08292, Dkt. 203 at 59:8–11, 60:4–6, 61:13–17 (S.D.N.Y. Sept. 18, 2024) (transcript of omnibus status conference for *Authors Guild* and *New York Times* cases); *compare* Dkt. 222 at 8–14; PI Mot. at 5–6; Nov. 25, 2024 Hr'g Tr. 79:11–17. As such, Anthropic is entitled to the full scope of the responsive documents and an answer to

Interrogatory No. 1 to ensure it can "adequately dispute" Publishers' claims. *Bittaker*, 331 F.3d at 719; *Lexington Luminance*, 2020 WL 10052401, at *10.

Moreover, this pattern of selective disclosure and obfuscation extends beyond this discovery dispute, revealing a broader systemic issue in Publishers' approach to work product. Publishers have also improperly leveraged attorney work product claims in connection with the parties' Stipulation (Dkt. 291), which facilitates cooperation on perceived guardrail defects. When Anthropic requested similar information in response to Publishers' first notice under the Stipulation, Publishers refused, despite their obligation to "cooperate in good faith," *id.* at 6(b).

Publishers' selective disclosure of and reliance on particular outputs while simultaneously refusing to provide the full scope of information necessary to put those outputs in context is improper and obstructs Anthropic's ability to defend itself. By arguing that certain output is reflective of Claude's intended purpose, Publishers have put the methods by which that output was obtained squarely at issue in this case.

## II.   PUBLISHERS' POSITION

The details of Publishers' legal investigation demanded by Anthropic constitute attorney opinion work product that is "protect[ed] against disclosure," Fed. R. Civ. P. 26(b)(3)(B), and "virtually undiscoverable," *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014).

Anthropic offers no legitimate basis for the massively overbroad and invasive discovery it seeks into Publishers' investigatory files. Anthropic does not need discovery into the subset of specific Claude prompts and output from Publishers' legal investigation, when Anthropic already has access to the ***full*** universe of Claude prompts and output from ***all*** Claude users, including Publishers. If Anthropic intends to make arguments about whether Claude is used to generate infringing output, it can rely on that broader set of evidence already in its sole control. What's more, Publishers have also produced ***all*** their Claude prompts and output cited in the Complaint and Motion for Preliminary Injunction, including prompts and output for all 500 Works in Suit.

In short, Anthropic already has all the information it needs to test Publishers' claims. It has no right to "pry into [Publishers'] minds and free-ride off" the details of their legal investigation, including as to Claude prompts and output on which Publishers have ***not*** relied. *In re Grand Jury*,

23 F.4th 1088, 1093 (9th Cir. 2021). Nor is Anthropic entitled to the other overly broad discovery it seeks, all of which is designed to uncover the protected details of Publishers' investigation. This information is shielded from disclosure to "uphold[] the fairness of the adversarial process." *Id.*

Numerous other AI company defendants have sought the same discovery into plaintiffs' investigations as to infringing output of AI models—and courts have repeatedly rejected those demands. *See Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO, 2024 WL 3748003, at *3 (N.D. Cal. Aug. 8, 2024) (Martínez-Olguín, J.) (denying, on opinion work product grounds, OpenAI's request to compel production of (a) "OpenAI account information for individuals who used ChatGPT to investigate [p]laintiffs' claims," (b) "prompts and outputs for [p]laintiffs' testing of ChatGPT" not cited in complaint, including "negative testing results," and (c) "documentation of [p]laintiffs' testing process"; and finding Magistrate Judge Illman's order compelling such discovery misapplied the law); *New York Times Co. v. Microsoft Corp*, No. 23-cv-11195 (S.D.N.Y. Sept. 13, 2024), ECF No. 242 (denying OpenAI's motion to compel production of plaintiff's OpenAI account information, its ChatGPT prompts and output (including "failed attempts"), and its testing process); *see* ECF Nos. 124–125; *New York Times Co. v. Microsoft Corp*, No. 23-cv-11195 (S.D.N.Y. Oct. 31, 2024), ECF No. 304 (denying Microsoft's motion to compel discovery of plaintiff's undisclosed prompts and output from pre-suit investigation); *see* ECF Nos. 284, 299.

Anthropic inexplicably fails to cite *any* of these adverse, on-point decisions for the Court—despite the fact Anthropic's outside counsel is engaged as defense counsel in each of these cases.

Nor does Anthropic disclose it has repeatedly invoked the same work product protection to withhold its *own* Claude "prompts run by [Anthropic's] outside counsel in investigation of Plaintiffs' claims." S. Sampoli Email (Dec. 18, 2024). Its discovery requests should be rejected.

A.  **Details of Publishers' investigation are protected as opinion work product.**

The discovery Anthropic seeks—undisclosed information as to Claude prompts crafted by and at the direction of Publishers' counsel, Claude output corresponding to those prompts, and other details of Publishers' legal investigation, all of which would allow Anthropic to reconstruct that investigation—is plainly protected as opinion work product. In *Tremblay*, another court in this District denied the very same discovery Anthropic seeks here, concluding that plaintiffs'

undisclosed prompts and output obtained from ChatGPT (including "negative" results), account information, and testing process were opinion work product. 2024 WL 3748003, at *3. That is because "prompts [a]re queries crafted by counsel and contain counsel's mental impressions and opinions about how to interrogate [the AI model], in an effort to vindicate [p]laintiffs' copyrights against the alleged infringements." *Id.* (citing *Mackay*, 742 F.3d at 869 n.3); *see also, e.g.*, *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003) (opinion work product includes counsel's "intended lines of proof" and "evaluation of the strengths and weaknesses of the case").

Likewise, here, the material at issue was created by Publishers in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). Just like in *Tremblay*, the prompts Publishers crafted and other details of their investigation of their legal claims directly reflect counsel's "mental impressions and opinions," including as to how to identify evidence of Anthropic's infringement to support and substantiate Publishers' claims. This information is squarely protected as opinion work product. Contrary to Anthropic's contention, the fact that the *Tremblay* plaintiffs' claims may have focused on copying during training is no reason to ignore the court's broader work product holding.

**B.    Publishers have not waived work product protection.**

Nor has Anthropic shown that Publishers waived protection over their opinion work product. Regardless of how Anthropic characterizes what may be "at issue," the caselaw is clear that subject matter waiver does not apply to opinion work product. *See, e.g.*, *Tremblay,* 2024 WL 3748003, at *3 ("[A]pplying subject matter waiver here is inapposite to Ninth Circuit law related to waiver of opinion work product."); *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21CV02450WHODMR, 2023 WL 4029892, at *9 (N.D. Cal. June 14, 2023) (subject matter waiver did not extend to opinion work product). Anthropic does not even attempt to explain how Publishers allegedly waived their opinion work product protection here.

Even if the Court were to find Publishers' investigation to be fact—as opposed to opinion—work product (which it is not), Anthropic's waiver claim would still fail. "Waiver of fact work product extends to the subject matter of the ***disclosed*** work product." *Tremblay,* 2024 WL 3748003, at *3 (emphasis added) (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)). To the extent any waiver occurred, it would be "limited in scope" and apply "only to those

[prompt and output] results specifically mentioned" by Publishers in their Complaint and Preliminary Injunction Motion. *Zeiger v. WellPet LLC*, No. 17-CV-04056, 2018 WL 10151156, at *3 (N.D. Cal. Apr. 10, 2018). Publishers have ***already*** produced their prompts and output referenced in these filings. ECF No. 179 at 5–6; ECF No. 49, Exs. B–C. There is no reason to find waiver as to undisclosed prompts and output ***not*** cited in these filings. The fact that Publishers cited examples of prompts and output collected during their investigation in these filings "does not . . . destroy work-product immunity for other documents of the same character." *Skynet Elec. Co. v. Flextronics Int'l, Ltd.*, No. C 12-06317, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013).

In this regard, Anthropic's reliance on *Lexington* is misplaced. In *Lexington*, the plaintiff brought patent infringement claims for 44 products, but disclosed test results for only 16 products. 2020 WL 10052401, at *11 (C.D. Cal. June 12, 2020). While the court found a "narrow" subject matter waiver had occurred for the 44 products, it was not a "wholesale waiver of [plaintiff's] work product protections," and did not apply to testers' "identity" or to "communications, analyses, methodology, or documents pertaining to . . . pre-litigation testing." *Id.* Here, where Publishers have already provided evidence of infringement for all 500 Works in Suit, no more is required.

### C. Anthropic cannot justify invading Publishers' opinion work product.

It is well-established that Publishers' opinion work product is "discoverable only when [1] mental impressions are at issue in a case and [2] the need for the material is compelling." *United States v. Sanmina Corp.,* 968 F.3d 1107, 1125 (9th Cir. 2020). Clearly, neither is present here.

As an initial matter, Anthropic does not even argue that Publishers' counsel's mental impressions or opinions in investigating their claims are at issue. Just the opposite—Anthropic specifically disclaims seeking discovery into "attorney mental impressions." Finding such impressions at issue here would render opinion work product "discoverable in nearly every case." *Labbe v. Dometic Corp.*, No. 2:20-CV-1975, 2024 WL 325331, at *5 (E.D. Cal. Jan. 29, 2024).

Separately, Anthropic fails to show any "compelling need" to breach Publishers' work product protections. If Anthropic wants to understand Claude's uses and test Publishers' claims, it can do so in multiple other ways without invading Publishers' legal investigation.

First, Anthropic can search and analyze the ***full*** universe of prompts and output for

Claude's entire userbase, including third-party users, Publishers, and Anthropic. This would provide the "full picture" Anthropic claims it needs. Given that this full set of records is already in Anthropic's control, its claim that Publishers possess the only "evidence that would directly undermine their theory of the case" makes no sense. Prior to discovery, Publishers **had to** rely on certain prompts and output they had collected for their Complaint and Preliminary Injunction Motion, because they did not have access to the broader set of Claude prompts and output that Anthropic controls and does not publicly disclose. But, assuming Anthropic now produces this full set of records via discovery, both parties will be able to rely equally on that evidence. Where Anthropic already possesses this full set of prompt and output records, it has no legitimate need to focus on the subset of prompts and output Publishers previously obtained during their pre-discovery investigation (particularly not prompts and output on which Publishers have not relied).

Second, Anthropic can also analyze Claude's tendencies to produce infringing output and test Publishers' claims by running its **own** test prompts on Claude, just like Publishers did.

Neither option would require Anthropic to encroach on the details of Publishers' legal investigation or selectively rely on that information. Anthropic cannot shirk the work necessary to prosecute its own case by impermissibly piggybacking off Publishers' protected work product.

Nor can Anthropic exploit the Claude sampling approach being negotiated by the parties (one it itself proposed) as an excuse to invade Publishers' work product protection. That sample is intended to address Publishers' RFPs 50-51 for Claude prompts and output regarding song lyrics—not Anthropic's unfounded demand for the protected details of Publishers' legal investigation.

Further, even if the Court were to find Publishers' investigation to be fact—not opinion—work product (which, again, it is not), Anthropic has still not demonstrated (1) a "substantial need" for Publishers' materials and (2) its inability to obtain the "equivalent of [Publishers' work product] without undue hardship." *Sanmina*, 968 F.3d at 1125. Again, Anthropic can analyze the full set of Claude prompts and output, and it offers "no substantial reason as to why it cannot perform [its] own testing of [Claude]." *Labbe*, 2024 WL 325331, at \*5 (shielding fact and opinion work product from discovery). Since Anthropic can easily obtain the equivalent of Publishers' investigation "without undue hardship, the work product doctrine's protections cannot be pierced." *Id.*

### D. Anthropic's other arguments fail.

Contrary to Anthropic's claims, Publishers have not engaged in selective disclosure or otherwise prejudiced Anthropic. As noted, Publishers have already produced all their prompts and output upon which they previously relied, Anthropic has access to the full universe of Claude prompts and output, and Anthropic is able to run its own tests of Claude. For similar reasons, the *Tremblay* court rejected the same "cherry-picking" arguments Anthropic invokes here. Likewise, Anthropic's unfounded complaints about the Parties' guardrails stipulation have no bearing on Publishers' work product here. There is no basis for Anthropic's contention that Publishers failed to "cooperate in good faith" in connection with the stipulation, or that the stipulation requires them to waive work product. Nowhere in the stipulation did Publishers assume any obligation to disclose their opinion work product or undermine their ability to investigate Anthropic's infringement.

### E. Anthropic's "compromise" is unworkable and would violate work product.

Anthropic's "compromise" is just a demand that Publishers disclose protected details of their legal investigation. Anthropic is not entitled to this discovery, and Publishers cannot agree to violate their work product protection in this manner. Nor will Publishers broadly and prematurely "stipulate that they will not rely on their agents' prompts/outputs as evidence of infringement for any purpose," when Anthropic has barely even begun to produce its own records of responsive third-party-user prompts and Claude output, and where Publishers' evidence collection may still be relevant for numerous purposes. *See e.g.,* ECF No. 222 at 11–14; ECF No. 225 at 4–5.

In sum, Publishers have not withheld information about their legal investigation to gain any unfair advantage—they seek only to protect their work product and ability to investigate and substantiate their claims. A finding that Publishers' investigation is not entitled to such protection would deprive rightsholders of the ability to conduct investigations on any AI model, lest they become obligated to serve the entirety of their investigation to current or would-be infringers. Fairness requires that the details of Publishers' legal investigation remain protected as opinion work product. Doing so "upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies—without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them." *In re Grand Jury,* 23 F.4th at 1093.

| | | |
|---|---|---|
| 1 | Dated: April 10, 2025 | Respectfully submitted, |
| 2 | By: */s/ Timothy Chung* | By: */s/ Joseph R. Wetzel* |
| 3 | **OPPENHEIM + ZEBRAK, LLP** | **LATHAM & WATKINS LLP** |

Dated: April 10, 2025

By: */s/ Timothy Chung*

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

Respectfully submitted,

By: */s/ Joseph R. Wetzel*

**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
britt.lovejoy@lw.com
Ivana Dukanovic (SBN 312937)
ivana.dukanovic@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle
(admitted *pro hac vice*)
sy.damle@lw.com
Sara Sampoli (SBN 344505)
sara.sampoli@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman
(admitted *pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

Rachel Horn (SBN 335737)
rachel.horn@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600

*Attorneys for Defendant*

# ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

DATED: April 10, 2025                                         /s/ Joseph R. Wetzel
                                                                             Joseph R. Wetzel