[Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CONCORD MUSIC GROUP, INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

Case Number: 5:24-cv-03811-EKL-SVK

**JOINT DISCOVERY DISPUTE STATEMENT REGARDING PUBLISHERS' CHALLENGES TO ANTHROPIC'S CONFIDENTIALITY DESIGNATIONS**

**REDACTED**

Judge Eumi K. Lee
Magistrate Judge Susan van Keulen

Pursuant to Section VI of the Stipulated Protective Order ("Protective Order"), ECF No. 293, Section 8 of Magistrate Judge van Keulen's Civil Standing Order, and L.R. 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement. The Parties seek the Court's intervention in resolving a dispute arising from Anthropic's confidentiality designations of various documents and Publishers' challenges to those designations as overbroad and improper. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference on April 11, 2025 and by email. However, the Parties have been unable to reach agreement. The current fact discovery deadline is 129 days away. As a compromise, Publishers propose that Anthropic remove the blanket "Highly Confidential—Attorneys' Eyes Only" ("HC-AEO") designation it has applied across its entire production of Claude prompts and output, and re-designate only those documents that meet the Protective Order's standards; as to the other challenged documents, Publishers cannot offer a compromise, given the lack of a basis for Anthropic's HC-AEO designations. Anthropic proposes that it will de-designate all prompts and outputs initiated by Plaintiffs or their agents as public and will consider de-designations of specific portions of third-party prompts and outputs, so long as those portions do not risk publicly revealing the user's identity or any other of his private details. As to the other challenged documents, Anthropic cannot offer a compromise. Anthropic respectfully requests that any hearing be sealed, in light of its position that this discovery is AEO.

## I. Publishers' Position

Anthropic is abusing the Protective Order. It has designated ***96%*** of the 13,189 documents it has produced as "Highly Confidential—Attorneys' Eyes Only." Its grossly overbroad HC-AEO deisgnations include (1) every single one of the 9,418 Claude prompt and output records it has produced, regardless of whether any given record reflects any conceivably sensitive information; (2) general Claude prompt and output figures, dating from 2023 and 2024, which pose no risk of serious competitive harm to Anthropic; and (3) the fact that Anthropic used two common AI training datasets to train Claude, which likewise poses no risk of serious harm. Anthropic's mass over-designation flouts the law, violates the Protective Order, and unfairly prejudices Publishers.

Anthropic's "[p]retrial discovery is presumptively public," *Doe 1 v. Wolf*, 2020 WL

2745266 (N.D. Cal. 2020), just as there is "a strong presumption in favor of access to court records," *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Anthropic can overcome this presumption only upon a "particularized showing of good cause." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). Even if it shows "particularized harm" from disclosure, the Court weighs that against the public interest and whether redactions could allow disclosure. *In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 425 (9th Cir. 2011).

Anthropic fails to make anything close to a particularized good cause showing here. None of this information meets the very high standard for HC-AEO treatment under the Protective Order, which limits such protections to only "[i] ***extremely sensitive*** 'Confidential Information or Items,' [ii] disclosure of which . . . would create a ***substantial risk of serious harm*** . . . [iii] that ***could not be avoided by less restrictive means***," like redactions. ECF No. 293, ¶ II.12 (emphasis added).

Judge Chhabria emphatically rejected similar over-designations by another AI company in a copyright infringement case, given that they were "not designed to protect against the disclosure of sensitive business information that competitors could use," but rather "to avoid negative publicity." *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC (N.D. Cal. 2025), ECF No. 373.

Anthropic tries to cloak this key discovery in HC-AEO designations, to obstruct Publishers' ability to use it in this case. But without the required showing of serious harm from disclosure, Anthropic cannot justify imposing onerous restrictions on access to this important information.

### A. Anthropic's indiscriminate designation of all Claude prompts and output as "Highly Confidential—Attorneys' Eyes Only" is improper.

"[T]he rule against blanket designations is well-established." *Knox v. Contra Costa Cnty.*, 2022 WL 2290686, at *37 (N.D. Cal. 2022). "[C]onfidentiality designations must be reasonably and narrowly tailored." *Id.* Despite this, Anthropic has designated ***every single*** Claude prompt and output it has produced as HC-AEO. *See* Anthropic_0000000918–10881, 016460–215981.

The impropriety of Anthropic's indiscriminate over-designation is underscored by the fact that many of these records simply regurgitate copyrighted lyrics ***owned by Publishers***, such as:

- A Claude user who [REDACTED] prompting Claude to [REDACTED] and Claude responding by generating output with a near-verbatim copy of those lyrics, to which Universal owns the copyright. Anthropic_0000003118.

- A user asking AI model [redacted], and Claude generating an unauthorized mashup mingling verbatim lyrics from "Lean on Me" and "Life is a Highway," two works to which Universal owns the copyright. Anthropic_0000007158.
- A user asking for "the lyrics to message in a bottle by the police," and Claude generating output with those lyrics, to which Universal owns the copyright. Anthropic_0000005629.

"[M]ass document designation" like this is "an abusive discovery practice" that should "not be tolerated." *McGhee v. N. Am. Bancard*, 2021 WL 2577159, at *10 n.6 (S.D. Cal. 2021). Anthropic's gross over-designation blatantly violates the Protective Order's mandate that parties exercise "restraint and care in designating material for protection" and "limit any such designation to specific material that qualifies under the appropriate standards." ECF No. 293, ¶ V.1.

What's more, even though Anthropic bears the burden as to these designations, *id.* ¶ VI.4, it does not even attempt to make the required document-by-document showing of "particularized harm." *Wolf*, 2020 WL 2745266, at *2; *see also Foltz*, 331 F.3d at 1130 (designating party must establish harm of disclosure "for each particular document it seeks to protect"). Instead, it points to purportedly sensitive information in just a handful of records. But even if those few documents were properly HC-AEO, that would not justify Anthropic's across-the-board designation of ***thousands*** of other records as HC-AEO. *See Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 2021 WL 186932, at *2 (D. Or. 2021) ("[A]n 'across-the-board' designation is improper, even if some confidential information may be found within the broader designation," and "a party misuses a protective order when it over-designates discovery materials in that way.").

Disclosure of these Claude prompts and output could not "seriously harm" user privacy, for at least three reasons: (1) Anthropic has already anonymized ***every single one*** of these records, preventing the records from being tied to any specific users; (2) Anthropic has gone even farther and—without the Court's permission—unilaterally and permanently "masked" references to other individual names in these records (including not only user names, but also the names of the very songwriters whose lyrics Anthropic is infringing), in a manner that cannot be undone and that leaves much of this key discovery indecipherable to Publishers; and (3) on top of all that, Anthropic instructs users "not to use our products and services to process personal data."[1] Anthopic offers no

[1] ANTHROPIC, https://privacy.anthropic.com/en/articles/10023555-how-do-you-use-personal-data-in-model-training?q=terms+of+use; ANTHROPIC, https://www.anthropic.com/legal/privacy.

declaration or other evidence to support its boilerplate claims about user privacy. "[G]eneralized allegations of harm are insufficient." *Wolf*, 2020 WL 2745266, at *2.

Anthropic misstates the provisions of the Protective Order. It wrongly claims any records that "reveal private details about the user in any way" qualify for HC-AEO protection, when that is not what the Order (or the law) allows. ECF No. 293, ¶ II.12. Anthropic also misleadingly quotes the Protective Order to suggest it need not undertake document-specific designations if not "practicable," when, again, that is not what the Order (or the law) requires.

Anthropic also mischaracterizes the relief Publishers seek. Contrary to Anthropic's claims, Publishers do not seek to "make public" all these documents, nor do Publishers request line-by-line designations. Publishers ask only that Anthropic comply with the Order by designating documents properly, so they can utilize this discovery without unwarranted, onerous restrictions.

Anthropic pats itself on the back for withdrawing certain designations in connection with Publishers' Amended Complaint. But Anthropic's about-face—only after Publishers were forced to raise this issue—simply shows Anthropic lacked any basis for the designations in the first place.

Rather than remedy its improper over-designations, Anthropic tries to foist the burden onto Publishers. Anthropic has it ***backwards***. "There is a burden to determine confidentiality, but that burden properly falls on the party seeking protection." *Shenwick v. Twitter, Inc.*, 2019 WL 1552293, at *2 (N.D. Cal. 2019). Publishers cannot "be forced to read and challenge every page of every [document] or to accept [Anthropic's] designation of confidentiality and spend unnecessary time and expense filing motions and documents under seal when unwarranted in many cases." *Id.* It is Anthropic's obligation under the law and Protective Order to review and designate only those specific documents that properly qualify for HC-AEO protection. It has failed to do that.

Finally, to be clear, the present dispute does not apply to the Claude sampling protocol; Publishers do not disagree that separate confidentiality provisions may need to apply to that sample.

**B. Anthropic does not establish that any serious harm would arise from disclosure of high-level Claude prompt and output figures.**

Anthropic also improperly designates as HC-AEO general Claude prompt/output figures—in particular, the fact it preserved [redacted] Claude prompt/output records from September 22 to

30, 2023 and [REDACTED] such records for the six-month period from September 2023 to March 2024 (identified in Anthropic's counsel's emails), and various monthly Claude query counts from April 2023 to November 2024 (identified in response to Publishers' Interrogatory No. 4).

This information does not qualify for HC-AEO protection, for two reasons. First, Anthropic has not established any particularized competitive harm—let alone the "serious harm" required under the Protective Order—that would result from disclosure of general Claude usage figures that are months and even years old. These are not trade secrets. Anthropic's boilerplate references to generalized competitive harms and hypotheticals do not suffice. "Information does not have value to a competitor merely because the competitor does not have access to it." *Travelers Property Cas. Co. v. Centex Homes*, 2013 WL 707918, at *1 (N.D. Cal. 2013). Particularly given the several subsequent Claude model releases since the date of these figures, "it is unclear how [Anthropic's] competitors could derive any economic benefit" from these general figures. *Id.* Second, Anthropic has not consistently treated this information as HC-AEO, having disclosed the [REDACTED] and [REDACTED] figures in communications to Publishers without designating them confidential (until Publishers drew Anthropic's attention to that failure, as part of this dispute). *E.g.*, I. Dukanovic Email (March 31, 2025); *see Kamakahi v. American Society for Reproductive Medicine*, 2014 WL 6617262, at *3 (N.D. Cal. 2014) (denying request to seal where party had disclosed materials).

**C. No serious harm would arise from disclosure of general information about Anthropic's use of two AI training datasets.**

Finally, Anthropic wrongly designates as HC-AEO the simple fact that Claude's training corpus includes data from the [REDACTED] dataset and [REDACTED] (as identified in response to Publishers' Interrogatory No. 6).[2] First, these same training datasets are commonly used by Anthropic's competitors. For instance, it is public knowledge that OpenAI's ChatGPT-3, a close competitor of Anthropic's Claude, was trained on the [REDACTED] dataset,[3] [REDACTED]

[2] More specific technical details regarding Anthropic's training of Claude using these datasets—such as its "training data mix" or the relative weighting of these datasets versus others—is not at issue here. All that is at issue is the fact that Claude's training corpus includes [REDACTED] and [REDACTED].

[3] BROWN ET AL., LANGUAGE MODELS ARE FEW-SHOT LEARNERS (2020) 27, https://arxiv.org/pdf/2005.14165.

[redacted].[4] Second, Anthropic has ***already*** publicly admitted to (1) training its AI models on the [redacted] dataset,[5] and (2) scraping data from [redacted] for training prior to [redacted].[6] Protection from disclosure is unjustified when "information has already become public." *Rodman v. Safeway, Inc.*, 2013 WL 12320765, at *2 (N.D. Cal. 2013) (denying request to seal materials that have become public or reflect outdated information).

## II. Anthropic's Position

This Court entered a Protective Order shielding from disclosure "nonpublic, sensitive, or proprietary information" that, if disclosed, "could harm the privacy or business interests of any person." Dkt. 293 § II.6, 12. Accordingly, Anthropic has designated as HC-AEO two categories of information: (1) its users' prompts and outputs, to protect those users' privacy; and (2) Anthropic's competitively sensitive information including closely guarded usage metrics and information on specific datasets used to train Claude. Good cause exists for protecting both categories from disclosure. *See Stewart v. Luna*, 2025 WL 819571, at *2 (C.D. Cal. Feb. 12, 2025) (courts consider "whether disclosure will violate privacy interests" in evaluating confidentiality disputes); *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (courts have "broad latitude" to protect from disclosure materials "including, but not limited to, trade secrets or other confidential . . . information").

### A. Disclosing Prompts and Outputs Would Severely Harm Anthropic and Its Users

Plaintiffs ask this Court to make public thousands of Claude users' private chat logs, many of which are dozens or hundreds of pages long and reflect prompts and outputs over a period of days or weeks. They contain private, highly sensitive, and deeply personal information, including, e.g., user references to pornography, sexually explicit content, and drug use (e.g., ANTHROPIC_0000019622–24; ANTHROPIC_0000036875–76; ANTHROPIC_0000079219–99), private meeting notes, and personal health and/or medical inquiries (e.g.,

---

[4] [redacted]

[5] Amanda Askell et al., *A General Language Assistant as a Laboratory for Alignment* 27, ARXIV (Dec. 9, 2021), https://arxiv.org/pdf/2112.00861; *see also* Am. Compl. ¶¶ 71-72, ECF No. 337.

[6] [redacted] *THE VERGE* [redacted]

ANTHROPIC_0000007483–524; ANTHROPIC_0000100395–510). *See, e.g.*, *San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, 2011 WL 89931, at *1 n.1 (N.D. Cal. Jan. 10, 2011) (*sua sponte* sealing confidential medical information); *Self v. Horel*, 2008 WL 4774457, at *2–3 (N.D. Cal. Oct. 30, 2008) (sealing sexually explicit material). While the chat logs have been anonymized through redaction of usernames and email addresses, they still contain private and sensitive information, including, in some instances, information that could facilitate user identification (e.g., ANTHROPIC_0000019572–73). *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1019 n.7 (N.D. Cal. 2018) (sealing private records and correspondence); *La Canada Ventures, Inc. v. MDalgorithms, Inc.*, 2024 WL 40205, at *8 (N.D. Cal. Jan. 3, 2024) (sealing private emails).

Plaintiffs point to a few cherry-picked examples from among the *thousands* of prompts and outputs Anthropic has produced to suggest these documents merely show Claude outputs "regurgitat[ing]" song lyrics such that Anthropic should de-designate *all* of them en masse or, in the alternative, engage in a burdensome line-by-line review for "sensitive information." Not only is this claim untrue, it ignores that the entirety of each particular chat log is the private communication of a third-party user who has not chosen to share it publicly. Publicizing the full contents of any of these communications, even without user-account information, risks serious harm to Anthropic's users, who reasonably believe their chat logs are private, and to Anthropic, which has publicly committed to protecting user privacy. The scale of the potential harm is massive, considering Plaintiffs are also seeking a sample of 24.5 *million* prompts and outputs. *See* Dkt. 341.

Even the examples Plaintiffs cite include more than alleged "regurgitation." ANTHROPIC_0000003118 includes a query

ANTHROPIC_0000005629 includes a query regarding And ANTHROPIC_0000007158—*a chat log 50 pages long*—discusses

Publicizing these records risks violating Anthropic users' privacy and undermines

Anthropic's commitment to keep its users' information confidential.[7] *See Humboldt Baykeeper v. Union Pac. R. Co.*, 244 F.R.D. 560, 563 (N.D. Cal. 2007) (protective orders may address "unintended but harmful collateral consequences," like the "inadvertent invasion of non-parties' rights of privacy"). This Court already determined that Anthropic's users have privacy interests that "are not extinguished simply because Anthropic advises it 'may' disclose certain personal data to third parties." Dkt. 318 at 4. And courts in this District have maintained confidentiality for analogous private user data. *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2013 WL 12212698, at *2 (N.D. Cal. Feb. 25, 2013) (documents containing specific customer information "may be designated as confidential."); *see also Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 687 (N.D. Cal. 2006) (raising, *sua sponte*, concerns regarding user privacy in "the text of search queries," which "may constitute potentially sensitive information"). Plaintiffs' own authority is in accord. *Rodman*, 2013 WL 12320765 at *2 ("much of the material proposed to be sealed is internal information not otherwise made available to the public regarding . . . customer data.").

Plaintiffs incorrectly suggest that Anthropic is treating these documents as HC-AEO solely to avoid "negative publicity" regarding Claude's potential reproduction of song lyrics. But Anthropic has never denied that Plaintiffs' song lyrics have appeared in certain Claude outputs. *See, e.g.,* Dkt. 67 at 6-8; Dkt. 290. Moreover, *Kadrey*, No. 23-cv-03417 (N.D. Cal. 2025), Dkt. 373 addressed sealing internal Meta communications, not records in which a third party had an interest. Plaintiffs' reliance on *McGhee*, 2021 WL 2577159 at *10, is misplaced for analogous reasons (defendant designated any documents not available on his public website confidential).

Anthropic has met its burden under the Protective Order by articulating a clear basis for protection of these documents: Claude users expect them to be kept private. This argument does not lose force merely because it applies equally to a large group of records. Indeed, it is "not inherently improper" to designate "a large number of documents as confidential." *See O'Neil v. City & Cnty. of S.F.*, 2021 WL 1736809, at *4 (N.D. Cal. May 3, 2021). And neither of the cases

---

[7] *See* https://www.anthropic.com/legal/privacy (Anthropic "strive[s] to prioritize the protection of personal data," "comply with all applicable privacy laws," and, by default, "will not use [its users'] Inputs or Outputs to train [its] models"); https://support.anthropic.com/en/articles/8325621-i-would-like-to-input-sensitive-data-into-free-claude-ai-or-my-pro-max-accout-who-can-view-my-conversations ("Only a limited number of staff members have access to conversation data and they will only access this data for explicit business purposes.").

Plaintiffs cite nor the Protective Order support wholesale de-designation here. Both *Shenwick*, 2019 WL 1552293, at *2 and *Knox*, 2022 WL 2290686, at *37 concerned *deposition transcripts*, which are not a useful analogy to Claude prompts and outputs. Depositions are not conducted with a background expectation of privacy, and transcripts are vastly more practical to redact. Here, the chat logs Anthropic has produced *so far* total over 200,000 pages, with more to follow, making it impractical and burdensome to require line-by-line or even page-by-page designations, particularly given the baseline sensitivity of these documents. Dkt. 293 § V.1 (the parties should designate "only those parts of material" that qualify for protection "*[t]o the extent practicable*"). While Plaintiffs dubiously assure the Court they do not intend to disclose this material, they also assert there is a "presumption of *public access*" to it, explicitly recognizing that Anthropic would be unable to prevent public disclosure should the materials be de-designated.

Plaintiffs' effort to de-designate *all* prompts and outputs in their entirety is not appropriate. *See Wolf*, 2020 WL 2745266, at *3 (denying de-designation request because opposing counsel had "full access to the designated material" as well as "a mechanism to obtain a document-specific ruling[s]"). Anthropic is willing to work with Plaintiffs in good faith, as it did ahead of Plaintiffs' filing of their amended complaint, to de-designate specific prompts and outputs where appropriate, practical, and consistent with protecting users' privacy interests.

**B. Disclosing Claude Usage Metrics Would Cause Serious Competitive Harm**

Plaintiffs seek to de-designate monthly metrics concerning the volume of Claude prompts and outputs from September 2023 to November 2024. These metrics are closely guarded: like its competitors in the AI market, Anthropic does not publicize them. *See N.Y. Times Co. v. OpenAI*, 23-cv-11195 (S.D.N.Y.), Dkt. 426 (sealing ChatGPT usage metrics (Dkt. 414)). De-designating this proprietary information would give competitors and potential business partners unfair insights into Anthropic's business strategies relating to the relative importance of Anthropic's consumer and enterprise offerings, or insights into its market share relative to competitors. *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (sealing "business information that might harm a litigant's competitive standing"). Internal business data, particularly data that has been "maintained in a confidential manner" is commercially sensitive and warrants highly confidential

treatment. *Finisar*, 2015 WL 3988132, at *4 (sealing product and business information "not intended for public disclosure"). Plaintiffs do not claim that Anthropic *ever* publicly disclosed this data, instead asserting that it cannot be commercially sensitive because the figures are "old" and concern earlier Claude models. But the data is no less confidential due to the passage of time, *Fujikura Composite Am., Inc. v. Dee*, 2024 WL 4994346, at *6 (S.D. Cal. Dec. 5, 2024) (historical data was highly confidential), and many previously launched models still serve customers. Plaintiffs' argument that Anthropic has waived confidentiality by citing certain figures in a *clawed back email to Plaintiffs' counsel* discussing confidential information in under-seal filings is also meritless and counter to the express terms of the Protective Order. *See* Dkt. 293 V.2(c), 3; VII.1.

**C. Disclosing Specific Training Dataset Would Cause Serious Competitive Harm**

Plaintiffs argue that two specific datasets used to train Claude should be disclosed because Anthropic's use of them is "already public." But Anthropic has never publicly disclosed using either dataset to train Claude, and the AI industry recognizes the selection of training data sources as competitively sensitive trade secrets. That [REDACTED] does not disclose that Anthropic used this data for training. Nor does the fact that Anthropic [REDACTED] dataset constitute an admission that Anthropic has trained Claude on [REDACTED] or [REDACTED]. Plaintiffs cannot force disclosure by combining their access to information under the Protective Order with citations from which one could speculate protected facts. *U.S. Bank v. N. Am. Title Ins. Co.*, 2023 WL 4421580, at *3 (D. Nev. July 10, 2023) (maintaining confidentiality for document "broader than the contents of the [alleged public disclosure]"). Plaintiffs' authority is inapposite. In *Rodman*, 2013 WL 12320765, at *2, the court declined to seal "*general adjectives*" used to describe certain programs. Anthropic's training data mix is one of its most closely-guarded trade secrets; publicizing this information could enable competitors to mimic or exploit Anthropic's research and development. *DeMartini*, 2023 WL 4205770 at *2 (sealing "business information that might harm a litigant's competitive standing"). This is true even if some competitors may have disclosed the use of the same or similar datasets. *See U.S. Bank*, 2023 WL 4421580, at *7 (rejecting argument that if information is "trade usage," it "is entirely non-confidential and must be unsealed").

Dated: May 5, 2025

By: /s/ Timothy Chung

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

Respectfully submitted,

By: /s/ Joseph R. Wetzel

**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
britt.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle
(admitted *pro hac vice*)
sy.damle@lw.com
Sara Sampoli (SBN 344505)
sara.sampoli@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman
(admitted *pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

Rachel Horn (SBN 335737)
rachel.horn@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600

*Attorneys for Defendant*

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2025

*/s/ Timothy Chung*
Timothy Chung

Case No. 5:24-cv-03811-EKL-SVK
JOINT DISPUTE STATEMENT RE PUBLISHERS' CHALLENGES TO ANTHROPIC'S CONFIDENTIALITY DESIGNATIONS