**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

*Attorneys for Plaintiffs*

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | Case Number: 5:24-cv-03811-EKL-SVK |
| Plaintiffs, | **DECLARATION OF KRISTOFER BUCHAN IN SUPPORT OF PUBLISHERS' STATEMENT IN JOINT DISCOVERY SUBMISSION REGARDING DISPUTE AS TO SAMPLING PROTOCOL TO ADDRESS PUBLISHERS' RFP NOS. 50-51** |
| v. | |
| ANTHROPIC PBC, | |
| Defendant. | **REDACTED** |
| | Judge Eumi K. Lee |
| | Magistrate Judge Susan van Keulen |

I, Kristofer Buchan, hereby declare pursuant to 28 U.S.C. § 1746:

1.      I am a Partner of StoneTurn Group LLP.

2.     I submit this declaration in support of Plaintiffs' ("Publishers") Statement in the Joint Discovery Submission Regarding Dispute as to Sampling Protocol to Address Publishers' RFP Nos. 50-51, in their lawsuit against Defendant Anthropic PBC ("Anthropic").

3.     My statements and opinions set forth below are based on my specialized knowledge, education, and experience, as applied to the facts and circumstances of this case. If called upon, I would and could competently testify as to the matters contained herein.

**I.     My Assignment**

4.     Publishers have asked me to consider the Parties' proposed sampling approaches and evaluate whether their respective approaches adhere to commonly-accepted practices and approaches employed by statistical modelling experts like myself.

5.     In undertaking this work, I reviewed the Parties' proposal sampling protocols, relevant correspondence between the Parties, and relevant literature related to surveying and statistical models, referenced below.

**II.     My Background**

6.     I am a Partner of StoneTurn Group LLP, a financial and economic consulting firm that provides economic studies, strategic advisory services, and independent testimony for private and public sector industries, government agencies, and law firms. I have over 20 years of business and economic consulting experience working with clients in a broad array of industries including agriculture, food service, energy and environment, healthcare, pharmaceuticals, telecommunications, computer hardware, consumer products, and hospitality.

7.     My academic background includes a bachelor's degree in economics and a Masters in Business Administration from Texas A&M University.

8.     I am also currently an Executive Professor at the Mays Business School, where I teach economics, econometrics and applied statistics, and consulting courses to graduate and undergraduate students. I have taught courses relating to econometrics, economics, and statistics and their appropriate application to a wide range of real-world circumstances including valuation and forecasting.

9.     A copy of my full CV is attached as Exhibit A.

III.        **Assembling a Statistically Reliable Sample**

10.    Statistical sampling is a methodology used to draw inferences about a population by examining a smaller, representative subset of the population—called a *sample*. This approach is grounded in probability theory and is especially useful when a full census of the population is infeasible due to size or cost.

11.    Several core concepts guide the design and interpretation of a sampling plan, including *prevalence* (or proportion), *confidence level*, and *margin of error*.

12.    The standard sample size formula for estimating a population proportion, commonly referred to as Cochran's formula, is expressed as:[1]

$$n = \frac{Z^2 \cdot p \cdot (1 - p)}{E^2}$$

Where:

- $n$ = required sample size
- $Z$ = Z-score (e.g., 1.96 for 95% confidence level)
- $p$ = expected proportion (e.g., 0.00006)
- $E$ = desired margin of error (absolute) (e.g., 0.000003 for 5% relative margin of error or 0.000015 for 25% relative margin of error)

13.    A key aspect of conducting a statistically valid sample is to determine the appropriate sample size to achieve the desired statistical confidence and margin of error. The sample size required to achieve a desired margin of error at a specified confidence level depends on the point estimate of the prevalence, the acceptable level of uncertainty (i.e., confidence level and margin of error), and the variability inherent in the data. Importantly, the more variable the underlying data (and the more subjective the issues to be analyzed), the larger the sample size necessary to achieve the desired confidence and margin of error.

---

[1] See, *e.g.*, William G. Cochran, *Sampling Techniques* 75–100 (3d ed. 1977). For finite populations, a finite population correction can be made. See, *e.g.*, Sharon L. Lohr, *Sampling: Design and Analysis* (2d ed. 2010).

Case No. 5:24-cv-03811-EKL-SVK
Declaration of Kristofer Buchan

14.     Sound statistical sampling designs require a high level of confidence and a small margin of error. In general, a larger sample size reduces the margin of error and improves statistical confidence in the resulting sample-based estimates.

## IV.     Prevalence as a Threshold Issue

15.     *Prevalence* is a measurement of a specific characteristic contained within a population.

16.     In statistical sampling, there is a fundamental difference between sampling for attributes ("qualitative sampling") and sampling for amounts ("quantitative sampling"). In the case of qualitative sampling, the simplest attribute is a binary attribute, which is an attribute with just two outcomes. For example, a question with a "Yes" or "No" answer is a binary attribute. Since there are only two outcomes, the variation for this binary attribute (and all other binary attributes for that matter) is small if one wants to estimate the proportion of respondents answering "Yes" or "No." When the same question allows three answers ("Yes", "No", "Don't remember"), then the attribute has three outcomes and there is more variation in the answers, with variation increasing with attributes with increasing numbers of outcomes.

17.     The percentage of the occurrence of one of the outcomes of the categorical variables in the population is called the prevalence or proportion of that outcome. In simple random sampling, the sample proportion is an unbiased estimate of the unknown population proportion.

18.     For example, assume there is a barrel containing N balls, with an unknown number of solid black balls, solid white balls, and black-and-white spotted balls. The prevalence rate for black balls in the barrel may be different than the prevalence rate for white balls in the barrel. Similarly, the prevalence rate for spotted balls may be different from the prevalence rates of black balls and of white balls. One can estimate the prevalence of an event (e.g., observing a black ball in the barrel) by conducting a statistically valid sample.

19.     In this case, I understand Anthropic is asserting an *estimated* prevalence of 0.006%. I am currently unable to verify the point estimate of 0.006% or the accuracy of the estimated prevalence. However, I also understand there is a great degree of variability in the data being analyzed, a high number of different attributes potentially being examined, and subjective criteria

being applied, such that the prevalence of any given outcome could potentially be much lower (or much higher) than Anthropic's estimated prevalence of 0.006%.

20.    If there is disagreement on how to measure the specific characteristic(s) for the purposes of estimating prevalence, then the study cannot proceed without obtaining highly inaccurate results. In other words, agreement on the specific statistical criteria from which to implement a statistical sampling plan is a necessary threshold issue in any sampling exercise.

21.    For purposes of the sample size discussion and calculations provided herein, I will assume the estimated prevalence of 0.006% is accurate.

V.    **Determining the Appropriate Confidence Interval**

22.    When estimating prevalence from samples, statisticians apply the concepts of *confidence levels* and *confidence intervals*. Standard confidence levels for statistical estimates are 90% and 95%. The confidence level measures the likelihood that in repeated sampling the unknown population parameter falls in the *interval* calculated from the sample or that the population parameter does not exceed an upper limit or will fall below a lower limit as calculated by the sample.

23.    For example, a 95% confidence interval means that, in 100 samples of the same size from the same population, the resulting 95% confidence intervals will contain the unknown population parameter approximately 95 times.

24.    Requiring such a high degree of confidence is consistent with the need for statistical estimation to reflect more than a mere guess. In general, the confidence level goes up with the use of larger and more representative samples.

25.    Where the sampling is insufficient to produce a statistically significant result at the required level of confidence for statistical estimates, statistical principles dictate that the estimates be rejected or that the sample size must be increased significantly.

26.    I understand that the Parties are in agreement that a 95% confidence level is appropriate for this sample. As discussed further below, I agree that a 95% confidence level is appropriate here.

1   **VI.        Determining the Appropriate Margin of Error**

2          27.    The *margin of error* measures how accurate the sample results are with respect to

3   the width of the confidence interval.

4          28.    The lower the margin of error, the more precise the measurements. Based on my

5   training and experience in statistical sampling and economic analysis, a 95% confidence level and

6   a ±5% relative margin of error reflects a widely accepted standard in the field of statistical

7   inference and is consistent with practices endorsed by academic literature, government evaluation

8   agencies, and professional research organizations.[2]

9                 **A.        Publishers' Proposal Employs a Reasonable Margin of Error**

10         29.    I understand that Publishers propose employing a ±5% relative margin of error. The

11  selection of a 5% margin of error strikes an appropriate balance between statistical reliability and

12  practical feasibility, particularly where, as here, the resulting estimates may inform monetary

13  calculations such as damages in the context of alleged copyright infringement. As noted, 5%

14  relative margin of error is supported by commonly applied statistical models and would result in a

15  reasonable range with a high level of precision.

16                **B.        Anthropic's Proposed Margin of Error is Not Appropriate Here**

17         30.    I understand Anthropic's proposal calls for a 25% relative margin of error. A relative

18  margin of error of 25% is on the very upper end of an appropriate range here. Employing 25% here

19  means that results can vary broadly by a +/- 25% margin. A 25% relative margin of error is not

20  appropriate where the Parties desire precise results because, as explained above, the lower the

21  relative margin of error is, the more precise estimates will be. If the results of a statistical sample

22  are more precise for a given confidence level, then the choice of the prevalence point estimate is a

23  reliable estimate for the true unknown prevalence in the population.

24         31.    The statistical literature points out that larger margins of error in sampling indicate

25  a higher likelihood that sample results deviate from the true population value, leading to less

26  confidence in the results. This is problematic because it suggests that the sample findings may not

27  _____

28  [2] See, *e.g.*, Sharon L. Lohr, *Sampling: Design and Analysis* (2d ed. 2010); Fed. Judicial Ctr., *Reference Manual on Scientific Evidence* (3d ed. 2011); American Statistical Association, *ASA Series: What is a Survey, What is a Margin of Error?* (1998).

accurately reflect the population as a whole, potentially leading to incorrect conclusions and decisions.

32.     In this case, applying a 25% relative margin of error to a prevalence estimate of 0.006% would result in a confidence interval ranging from approximately 0.0045% to 0.0075%, reflecting a confidence interval width of 0.003%, which equals approximately 50% of the point estimate. Such a large relative margin of error significantly reduces the statistical precision of the sample, calling into question whether the point estimate (i.e., the prevalence estimate from the sample) is a reliable estimate of the true unknown prevalence rate in the population.

## VII.      Calculating the Appropriate Sample Size

33.     As noted above, for purposes of calculating the sample size, I will assume Anthropic's estimated prevalence of 0.006% is accurate, and I will apply a 95% confidence level, given what I understand to be the parties' agreement that such a confidence interval is appropriate. I also understand that the total population from which the sample will be drawn contains approximately ▮ million electronic records.

34.     Applying these figures and Publishers' proposed ±5% relative margin of error to Cochran's formula, I calculate a statistically significant sample size of approximately 24.5 million records.

35.     By contrast, applying these same figures and Anthropic's proposed ±25% relative margin of error results in a sample size of approximately of 1 million records.

36.     For the reasons described above, Publishers' proposed sample size will constitute a more statistically reliable sample with a higher corresponding level of precision for any estimates derived from the sample, compared to Anthropic's proposed sample size.

37.     There can be practical (non-statistical) reasons for limiting the size of a sample (*e.g.,* through relaxing or increasing the margin of error), such as the costs and time required to obtain the sample data.[3] In the instant case, the incremental cost and time associated with sampling 1 million versus 24.5 million electronic records is likely negligible. Hence, I see no compelling statistical or practical basis why the Parties should not undertake the larger sample size Publishers'

---

[3] Such practical considerations are often an issue in surveys conducted door-to-door, for example.

propose. The larger the sample the Parties have to work with, the more precise the estimates calculated by both Parties will be, which is particularly appropriate in a complicated sample addressing numerous issues with large variation.

1        I declare under the penalty of perjury under the law of the United States that the foregoing

2 is true and correct to the best of my personal knowledge and belief.

3

4 Dated: __April 29__, 2025

5                                         Kristofer Buchan

6 Executed in Houston, Texas, this 29th of April, 2025

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>SIGNATURE ATTESTATION</u>

2

     Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this

3

document was obtained from all the signatory of this document. I declare under penalty of

4

perjury that the foregoing is true and correct.

5

6

 Dated: May 7, 2025

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                        */s/ Timothy Chung*
                                                          Timothy Chung

# EXHIBIT A



# Kristofer D. Buchan

Partner

T:  +1 713 547 4053
M:  +1 979 575 6728
E: kbuchan@stoneturn.com

**Houston**
One Shell Plaza
910 Louisiana Street
Suite 4910
Houston, TX 77002

Kristofer Buchan is an expert in applying empirical economic and statistical models to sophisticated issues raised in antitrust, class action and complex damages matters. With more than 20 years of experience, he has served as an expert witness in disputes involving antitrust, class actions and mass torts, breach of contract, false advertising, false claims, and other disputes involving complex data. He has worked with clients across a broad range of industries including energy, healthcare, pharmaceuticals, medical devices, retail, consumer products, agriculture, telecommunications, computer hardware, and electronics.

Kristofer is also an Executive Professor at Texas A&M University's Mays Business School, where he teaches graduate and undergraduate students how to apply statistics, economics, and valuation methodologies to real business settings. He has also lectured and presented on the economics of healthcare, forecasting, and valuation. Using his extensive professional and academic experience, he conveys complex economic and statistical concepts in clear terms that are approachable to judges and juries.

**Education**

MBA, Mays Business School, Texas A&M University

B.S., Economics, Texas A&M University

**Practice Areas**

Antitrust & Competition

Intellectual Property

Litigation

Expert Testimony



**Kristofer D. Buchan**                                                                                    **Partner**

---

## SELECT PROFESSIONAL EXPERIENCE

*Antitrust, Class Actions & Mass Torts*

- Retained on behalf of the court-appointed expert, Kenneth R. Feinberg, in *In re LTL Management LLC*, to assist the court with the estimation of economic damages associated with current and future cancer claimants.
- Retained on behalf of Official Committee of Tort Claimants to estimate claims associated with economic and non-economic damages resulting from the 2017 North Bay and 2018 Camp wildfires.
- Retained by the PG&E Fire Victim Trust to assist the Trustee and Claims administrator with updating, amending, and testing damage estimation forecasts on a rolling basis using information from more than 65,000 claims.
- Retained to provide expert opinions related to the estimation of certain expected individual plaintiff tort claims resulting from the 2023 fires in Maui, Hawai'i.
- Provided expert testimony related to alleged anticompetitive behavior by a major owner and operator of crude oil pipelines to prevent competitive entry by a rival firm.
- Retained on behalf of a major global retailer to analyze claims brought by a proposed class of California consumers alleging violations of state and federal unfair competition and false or deceptive advertising laws. Developed and implemented a study to determine the accuracy of the retailer's advertised comparison prices as compared to the same or similar items found at other department stores or specialty retailers in California. The study included a representative randomized sample selection (stratified random sample); acquisition of sample and comparison products; and statistical analysis comparing defendant and comparison prices.
- Retained on behalf of a timber mill defendant to assess antitrust claims including alleged refusal to deal and exclusionary conduct in the northwest timber industry.
- Managed damages analysis involving allegations of false advertising and deceptive trade practices brought by a class of consumers against a large branded pharmaceutical manufacturer of hormone replacement therapy products. Damages analyses included valuation of product attributes and quantification of statutory false claims damages.
- Led several projects involving claims of false and deceptive trade practices for a popular COX-II inhibitor brought separately by attorneys general in three states. Provided economic liability and damages analyses on behalf of the pharmaceutical manufacturer.
- Assisted a global pharmaceutical manufacturer in several separate class action lawsuits brought by attorneys general and consumers across multiple states involving claims of false and deceptive trade practices.
- Provided trial testimony and expert consulting on multiple cases relating to antitrust liability and economic damages on behalf of a large poultry integrator involving antitrust and damages claims brought by a group of contract growers in various jurisdictions. Performed extensive econometric modeling and analyses relating to market definition, market power, anticompetitive impact, and damages.
- On behalf of a global computer hardware manufacturer, managed a class certification analysis and calculated damages based on a product failure claims, successfully demonstrated to the court that heterogeneities within the proposed class predominated.



**Kristofer D. Buchan**                                                                    **Partner**

---

- Retained as a consulting expert to create and analyze structured data and develop economic models on behalf of co-defendant in a large multi-district litigation involving allegations relating to horizontal restraints, collusion, and price fixing claims brought by classes of direct, indirect, and institutional purchasers of food products.
- Provided damages analyses and opinion on behalf of a class of independent commercial trucking operators involving claims of breach of lease agreements against a transportation logistics company. Matter dismissed following defendant's bankruptcy.
- On behalf of several health insurance defendants, retained to assess economic issues relating to class certification of a purported class of individuals claiming RICO and Sherman Act violations involving claims of improper reimbursement denials for certain infectious disease treatments.
- Led a project team for a syringe manufacturer alleging monopolization and anticompetitive exclusionary conduct by a rival syringe manufacturer and Lanham Act counterclaims involving contracts with GPOs, hospitals, hospital systems, and other end users.
- On behalf of co-defendant in an alleged antitrust price fixing conspiracy, analyzed pricing and related economic data to assess liability and damages claims brought by direct and indirect purchasers of polyurethane foam.

## *Complex Commercial Damages & Personal Injury*

- On behalf of a major midstream energy services provider, analyzed revenues, costs, and profits related to a pipeline joint venture under various actual and but-for scenarios testing sensitivity to key inputs based on varying assumptions under the JV Agreement. Scenarios included historical and projected future revenues and profits.
- Provided expert testimony related economic damages resulting from alleged breach of contract in the beverage alcohol industry. Work involved assessing several categories of economic damages including unjust enrichment, lost profits, and outstanding accounts payable.
- Testified in federal court relating to opinions on economic damages including lost earnings and future earnings capacity in matter involving multiple personal injury and wrongful death claims a manufacturing plant explosion.
- Provided expert testimony on economic damages including lost earnings capacity and other economic damages relating to a permanently disabling injury in a gas pipeline accident.
- Retained by plaintiff to evaluate economic damages resulting from a claim of breach of fiduciary duty following a partner share buyout and subsequent third-party sale. Financial analysis included a review of historical transfer prices, business valuation, and event study analysis.
- Developed econometric forecasts to assess damages resulting from a fire and catastrophic failure of a regional water treatment facility.
- Assessed historical and econometric forecasts of future economic damages relating to alleged breach of contract and warranty claims resulting from premature failures of electrical components used in commercial lighting fixtures.
- On behalf of a national health insurance network, provided economic analysis of cost-sharing provisions and assessed economic damages resulting from cost-sharing waiver programs. Experience includes providing expert analysis in matters involving branded prescription drugs and laboratory testing facilities.



**Kristofer D. Buchan**                                                                                    **Partner**

- Provided expert opinion and testimony including quantification of lost earnings capacity resulting from permanently disabling injury in oilfield pipeline construction.
- Retained by counsel on behalf of a global commercial products manufacturer to prepare a whitepaper in response to an investigation by the SEC into restatement-related disclosures by the company. Provided economic and statistical analyses including event study analysis to demonstrate the magnitude of potential impact, if any.
- Evaluated successor liability and economic damages related to a global chemical manufacturer over a 70-year period including detailed successorship analyses and financial responsibility for liabilities associated with environmental contamination in the port of Houston.
- Provided expert opinions related to the economic and statistical differences among numerous plaintiffs in a matter involving an explosion and fire at a chemical processing plant.
- Developed an economic methodology and managed the damages estimation for a pharmaceutical developer arising from claims of breach of contract by a pharmaceutical manufacturing and marketing company. Work involved generating market demand, pricing, and product penetration forecasts to demonstrate lost profits from defendant's alleged breach.

### *Intellectual Property*

- Retained as a testifying expert on behalf of major record labels and music publishers in matters involving alleged copyright infringement relating to digital sound recordings. Work involved analyzing complex disparate databases to assess the extent of alleged infringement.
- Retained on behalf of several major textbook publishers to analyze claims related to contributory and vicarious copyright infringement and contributory trademark infringement brought against a large multinational e-commerce company.
- On behalf of a manufacturer and marketer of syndromic clinical diagnostics products, reviewed plaintiff's analysis of unjust enrichment damages relating to alleged misappropriation of trade secrets. Analysis included rebuttal of plaintiff expert's use of Monte Carlo statistical modeling and related inputs and assumptions.
- Calculated patent infringement lost profits and reasonable royalty damages on behalf of a company focused on the development and commercialization of technologies related to renewable chemicals and next generation biofuels products. Matter settled with ultimate joint development agreement between the parties.
- Retained by a global retail apparel company to analyze economic damages including lost profits resulting from alleged breach of a trademark license agreement by defendant licensor. Provided expert report and testimony.
- Project director for a wound management device manufacturer in its claims of patent infringement brought against two alleged infringers involving vacuum assisted wound therapy technologies along with antitrust counterclaims alleging anticompetitive product tying and exclusionary conduct.
- Led efforts on behalf of a large pharmaceutical developer and manufacturer to establish economic damages related to a claim of patent infringement involving a branded pharmaceutical product, including market forecasts, lost profits analysis, and reasonable royalty analysis.



**Kristofer D. Buchan**                                                                                      **Partner**

---

## EXPERT DESIGNATION AND TESTIMONY (Previous Five Years)

- Debra Morris, et al. v. Aircon Corporation, et al., Eastern District of Texas, Lufkin Division, 2017. Expert designation, report, deposition testimony, trial testimony.
- In re: ESP Petrochemicals, et al., v. Pinnacle Chemical Solutions, LLC, et al., US Bankruptcy Court for the Southern District of Texas, Victoria Division, 2017. Expert designation, report.
- Authentic Apparel Group, LLC v. United States of America, US Court of Federal Claims, 2018. Expert designation report, and deposition testimony.
- Cree, Inc. v. Shenzen Click Technology Co., Ltd, International Chamber of Commerce International Court of Arbitration, 2018. Expert designation, report, testimony.
- Cordoba Investments, Inc., Super Bravo, Inc., et al., v. Fiesta Mart LLC, District Court of Harris County, 61st Judicial District, 2018. Expert designation and preliminary report.
- Shore Chan DePumpo LLP v. Chilisin Electronics Corp. and Yageo Corp, JAMS Arbitration No. 1310023238, 2018. Expert designation, report, hearing testimony.
- United States of America ex rel. Peter D. Grubea v. Rosicki, Rosicki & Associates, P.C. et al., Southern District of New York, 2018. Expert designation.
- Swift Beef Company v. Alex Lee, Inc., Western District of North Carolina, 2018. Expert designation.
- Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California, et al., v. Insys Therapeutics, Inc., District of Arizona, 2018. Expert designation.
- Blue Cross of California d/b/a Anthem Blue Cross v. Sonoma West Medical Center, Inc., et al., Central District of California, 2019. Expert designation, report.
- PG&E Corporation Bankruptcy, California Northern Bankruptcy Court, 2019. Expert designation.
- Nathan Navarrete v. Allparts Music Corporation, American Arbitration Association No. 01-19-0000-7608, 2019. Expert designation, report.
- Lisa Torrey et al., v. Infectious Diseases Society of America, Blue Cross and Blue Shield Association, Anthem, Inc, et al., Eastern District of Texas, Texarkana Division, 2019. Expert designation.
- Breaking Free, LLC et al. v. Koch Foods, Inc. et al., Northern District of Alabama, 2020. Expert designation, deposition testimony, report.
- David P. Echols et al. v. Pilgrim's Pride Corporation, Middle District of Georgia, 2020. Expert designation, deposition testimony, report.
- Riviana Foods Inc. v. Golden Star Trading, Inc., Southern District of Texas, Houston Division, 2020. Expert designation, report.
- US Medical Networks, LLC. v. BioFire Diagnostics LLC., Northern District of Texas, 2020. Expert designation, deposition testimony, report.
- Gregory Motto and Genie Motto v. Daniel Martinez, Blue Cross Blue Shield of Texas, et al., District Court of Tarrant County, Texas, 2021. Expert designation, report.
- Warner Records Inc. (f/k/a Warner Bros. Records, Inc.), et al. v. Charter Communications, Inc., District of Colorado, 2021. Expert designation, deposition testimony, report.



**Kristofer D. Buchan**                                                    **Partner**

- UMG Recordings, Inc., et al. v. Bright House Networks, LLC., Middle District of Florida, Tampa Division, 2021. Expert designation, deposition testimony, hearing testimony, report.
- Stress Engineering Service, Inc. v. Brian Olson and Becht Engineering Co., Inc., District Court of Harris County, Texas, 2021. Expert designation, deposition testimony, report.
- United States of America v. Thomas Keller, Northern District of California, 2021. Expert designation.
- Mattress Firm, Inc. v. Bruce Levy et al., District Court of Harris County, Texas, 2022. Expert designation, deposition testimony, report.
- Michelle Lee Dollar and Chris Allen Dollar v. Texas Health Harris Methodist Hospital Fort Worth, et al., District Court of Tarrant County, Texas, 2021. Expert designation, deposition testimony, report.
- BHK Realty, LLC, et al. v. The Narragansett Electric Company, d/b/a National Grid, et al., District of Rhode Island, 2022. Expert designation, deposition testimony, report.
- Jennifer Sugg v. Midwestern University et al., Southern District of Texas, 2022. Expert designation, report.
- Bedford, Freeman & Worth Publishing Group, LLC., et al. v. Shopify, Inc., Eastern District of Virginia, 2022. Expert designation, deposition testimony, report.
- Murray LLC et al. v. Bennett Lumber Products, Inc., District Court of Latah County, Idaho, 2022. Expert designation, deposition testimony, report.
- In re: Frontier Communications Corporation, et al.; UMG Recordings, Inc., et al. v. Frontier Communications Corporation, Southern District of New York, 2024. Expert designation, deposition testimony, report.
- Aurturo Jiminez, et al.; Nehemias Hinojoza, et al. (intervenors) v. INEOS Americas, LLC, District Court of Harris County, Texas, 2024. Expert designation, report.
- Sazerac Company, Inc. v. Republic National Distributing Company, LLC, Western District of Kentucky, 2024. Expert designation, report.
- Sunoco Pipeline L.P., et al. v. Mobil Pipe Line Company and ExxonMobil Pipeline Company LLC, Texas 75th Judicial District Court, Liberty County, 2024. Expert designation, report.
- In the Matter of the Petition for the Allocation of the Aggregate Settlement Amount Between the Individual Settlement and the Class Settlement of the Maui Fire Cases, Circuit Court of the Second Circuit, State of Hawaiʻi, 2024. Expert designation, report.
- Warner Records Inc., et al. v. Altice USA, Inc. and CSC Holdings, LLC, Eastern District of Texas, 2025. Expert designation, report.



**Kristofer D. Buchan**                                                          **Partner**

---

## PREVIOUS EXPERIENCE

- 2000—2014 Associate Principal and Consulting Associate, Charles River Associates, College Station, TX
- 2011—Present Executive Professor, Mays Business School, Texas A&M University

## PROFESSIONAL AFFILIATIONS / OTHER

- Associate Member, American Bar Association ("ABA")
- Member, Houston Intellectual Property Law Association ("HIPLA")
- Member, National Association for Business Economics ("NABE")

## WHITEPAPERS/PUBLICATIONS

- "Statistical Review and Analysis of State Power Agency Solar Program Lottery." Confidential Whitepaper on behalf of solar energy provider to state power agency. April 24, 2019.
- "Advance Pricing Arrangement and Transfer Pricing Study." With Steven N. Wiggins prepared for Shell Petroleum, Inc., August 19, 2011.
- "Thoratec-HeartWare and the Rebirth of Innovation Markets Analysis at the FTC." With Robert Maness, *Antitrust Healthcare Chronicle*, American Bar Association, Vol. 23/No. 1, October 2009.
- "Analyzing the Correlation between Profitability and Size for a Sample of French Companies." With Dennis W. Jansen, a whitepaper prepared for Akin, Gump, Strauss, Hauer & Feld, LLP., May 3, 2004.

## OTHER SELECTED CONSULTING EXPERIENCE

- Staci Chester et al., v. The TJX Companies, Inc., Central District of California, Eastern Division, 2017.
- Elaine Schneider, et al. v. Jacob Allen De Leon, et al., District Court of Harris County, Texas, 2017.
- Conagra Brands, Inc. v. Silgan Containers LLC, Texas, 2024.
- WGR Operating, L.P. v. Enterprise Crude Oil LLC, Harris County, Texas, 2022.
- Trofholz Technologies, Inc. v. The Intellekt Group, LLC, et al., Superior Court of California, County of Placer, 2021.
- West Houston Fluid Systems Technologies LLP v. Swagelok Company, Harris County, Texas, 2021.
- Farid Khan, an individual, on behalf of himself and all others similarly situated v. Boohoo.com USA, Inc. et al., Central District of California, 2021.
- Hilton v. PrettyLittleThing USA Inc., et al., Central District of California, 2021.
- Lee v. NastyGal.com USA Inc., et al., Central District of California, 2021.
- T&C Devine, Ltd. and Thomas J. Devine v. Stericycle, Inc., Southern District of Texas, Houston Division, 2020.
- City of Clinton, Arkansas, v. Pilgrim's Pride Corporation, and Shelia Adams and James Adams, et al., vs. Pilgrim's Pride Corporation, Action No. 4:09-CV-386-Y (Consolidated With 4:09-CV-387-Y), 2013.
- In Re: Pilgrim's Pride Corporation, et al., Case No. 08-45664 (DML), In the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, 2013.
- Exxon Mobil Corp v. FX Networks, LLC et al., Southern District of Texas, Houston Division, 2014.
- Energy Intelligence Group, Inc. et al v. Kayne Anderson Capital Advisors, LP et al, Southern District of Texas, Houston Division, 2015.



**Kristofer D. Buchan**                                                                **Partner**

- Intellectual Ventures v. Sprint et al, Eastern District of Texas, 2016.
- M&M Poultry v. Pilgrim's Pride Corporation, Northern District of West Virginia, 2016.
- Butamax Advanced Biofuels LLC. v. Gevo, Inc., District of Delaware, 2015.
- SimpleAir, Inc. v. Google Inc. and YouTube, LLC, Eastern District of Texas, 2015.
- Optis Wireless Technology, LLC. and Panoptis Patent Mgmt LLC v. ZTE Corporation and ZTE (USA) Inc., Eastern District of Texas, Marshall Division, 2015.
- Enzo Life Sciences, Inc. v. Abbott Laboratories (f/k/a Luminex) et al, District of Delaware, 2014.
- Allure Energy, Inc. v. Nest Labs, Inc. et al, Eastern District of Texas, Tyler Division, 2014.
- Isola USA Corporation v. Taiwan Union Technology Corp., District of Arizona, 2015.
- United States ex rel. Mayes v. Berkeley HeartLab Inc., et al., Case No. 9:11-CV-01593-RMG (D.S.C.).
- East Texas Medical Center v. Blue Cross & Blue Shield of Texas, et al, District Court of Smith County, Texas, 2015.
- EMED Technologies Corporation v. Repro-Med Systems, Inc., Eastern District of Texas, Marshall Division, 2015.
- Tinnus Enterprises, LLC. and Zuru Ltd., v. Telebrands Corp., Eastern District of Texas, Tyler Division, 2016.
- Aesthetic and Acupuncture Clinic of Texas, PLLC et al v. Downey Publishing, Inc., District Court of Washington County, Texas, 2016.
- Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA Inc., Juniper Networks Inc., et al, Eastern District of Texas, Tyler Division, 2015.
- Easter Seals of Greater Houston, Inc. v. 4500 Bissonnet Associates, LP et al, District Court of Harris County, Texas, 2016.
- Foundation Medicine, Inc. v. Guardant Health, Inc., Eastern District of Texas, Marshall Division, 2017.
- In re: Polyurethane Foam Antitrust Litigation, Ohio Northern District Court, 2014.
- Allergan, Inc. v. Sandoz, et al., United States District Court, Eastern District of Texas, Marshall Division, 2013.
- Retractable Technologies, Inc., and Thomas J. Shaw v. Becton Dickinson and Company, Eastern District of Texas, Marshall Division, 2013.
- Allergan, Inc. v. Sandoz Inc., et al, United States District Court, Eastern District of Texas, Tyler Division, 2013.
- State of Louisiana v. Abbott Laboratories, Inc., et al., Louisiana District Court, 19th Judicial District, East Baton Rouge Parish, 2013.
- Exela Pharmsci, Inc. v. Teva Pharmaceuticals, USA, Inc., Circuit Court of Loudon County, Virginia, 2012.
- Shelia Adams and James Adams, et al. v. Pilgrim's Pride Corporation, Eastern District of Texas, Marshall Division, 2013.
- Mary Plubell and Ted Ivey, on behalf of themselves and all others similarly situated v. Merck, & Co., Inc., In the Circuit Court of Jackson County, Missouri at Independence, 2013.
- April Krueger, Individually and on Behalf of All Others Similarly Situated vs. Wyeth, Inc. F/K/A American Home Products, United States District Court Southern District Of California, 2013.
- MM Steel, LP vs. Reliance Steel & Aluminum Co. et al, United States District Court for the Southern District of Texas, Houston Division, 2013.



**Kristofer D. Buchan**                                                              **Partner**

- State of Louisiana, ex rel. James D. Caldwell, Jr., Attorney General v. Merck & Co., Inc., Eastern District of Louisiana, 2013.
- Michael H. Kirsch, D.D.S., et al v. Horizon Blue Cross Blue Shield of New Jersey, Inc., Superior Court of New Jersey Law, Essex Division, 2013.
- Fred Esser v. William T. Fretwell and Morris L. Freeman, Southern District of Texas, Houston Division, 2012. Expert designation, report.
- Leonor Rios and Benjamin Rios v. Farmers Texas County Mutual Insurance Company, Brazos County, Texas, 2013. Expert designation, report.
- Alcoa Inc. v. Luminant Generation Company LLC et al, District Court of Milam County, Texas, 20th Judicial District, 2013.
- Logan Farms v. Smithfield, et al, Southern District of Texas, Houston Division, 2012
- The State of Texas v. Merck & Co., Inc., District Court of Travis County, Texas, 2012.
- Board of Regents, The University of Texas System, on behalf of The University of Texas at Austin and Hydro-Québec v. Nippon Telephone and Telegraph Corporation, Western District of Texas, Austin Division, 2011.
- ReedHycalog UK, Ltd. et al v. Baker Hughes Oilfield Operations, Halliburton Energy Services, Inc., et al, Eastern District of Texas, Tyler Division; 2011.
- Champagne Metals v. Ken-Mac, Inc., et al, Western District of Oklahoma, 2011.
- Rick Love, M.D., et al, v. Blue Cross and Blue Shield of Arizona, Inc., et al., Southern District of Florida, Miami Division, 2011.
- Century Martial Art Supply, Inc. v. Martial Arts Enterprises, Inc., Western District of Oklahoma (Arbitration Number 71 181 J 00407 05), 2011.
- Brazos River Authority v. Ionics, Incorporated, U.S. District Court of Texas, Waco Division, 2010.
- Natalie M. Grider, M.D., et al. v. Keystone Health Plan Central, Inc., et al., Eastern District of Pennsylvania, 2011.
- Milissa Boisseau v. 7-Eleven, Inc., In the 68th Judicial District Court, Dallas County, Texas, 2010.
- John Ivan Sutter, M.D., P.A. et al. v. Horizon Blue Cross Blue Shield of New Jersey, Inc., Superior Court of New Jersey, Law Division Essex County, 2010.
- EEMSO, Inc. v. Compex Technologies, Inc. f/k/a Rehabilicare, Inc. and Iomed, Inc.,Northern District of Texas, Dallas Division, 2010.
- Crest Foods of Edmund, LLC v. Wal-Mart Stores, Inc., Western District of Oklahoma, 2010.
- Andrew Daugherity, et al., v. International Business Machines Corporation, In the District Court of Burleson County, Texas, 21st/335th Judicial District, 2009.
- Logan Farms, Inc. and James P. Logan, Jr. v. Honeybaked Ham, L.P., Mi., et al., Southern District of Texas, Houston Division, 2009.
- Park Cities Hotel, L.P. v. Meristar Management Company, L.L.C., In the District Court, Dallas County, Texas, B-44th Judicial District, 2009.
- Marion Crane, et al., v. International Paper Company and Canal Wood, LLC, District of South Carolina, Columbia Division, 2009.
- Richard A. Lippe, et al. v. Bairnco Corporation, et al., Southern District of New York.



**Kristofer D. Buchan**                                                        **Partner**

- IMODCO Inc. v. FMC Corporation and SOFEC, Inc., Southern District of Texas, Houston Division.
- Palacio del Rio, Ltd. v. Hilton Hotels Corporation, et al., In the 407th Judicial District Court, Bexar County, Texas.
- Gilbert Moreno Enterprises, Inc. d/b/a La Monita, et al., v. Gruma Corporation, et al., Southern District of Texas, Galveston District.
- Todd E. Samuelson, M.D. and Todd E. Samuelson, M.D., P.A., et al., Appellants V. United Healthcare of Texas, Inc. et al., Appellees, Court of Appeals of Texas, Second District, Fort Worth.
- Schlotzsky's, Ltd. v. Sterling Purchasing & National Distribution Co. and Commissary Operations, Inc. and The Sygma Network, Inc., Western District of Texas, Austin Division.
- Star Fuel Marts, LLC v. Murphy Oil USA, Inc., et al., Western District of Oklahoma.
- Port of Houston Authority v. GB Biosciences Corporation, et al., In the District Court of Harris County, Texas, 151st Judicial District.
- Biovail Pharmaceuticals, Inc. v. Eli Lilly Company, Eastern District of North Carolina, Western Division.
- Ruhrpumpen, Inc. v. Flowserve Corporation et al, USDC, North District of Texas, Dallas Division.
- Esther Kiobel et al v. Royal Dutch Petro.leum Company, et al., USDC Southern District of New York.
- BSA Enterprises, Inc. d/b/a BSA Provider Network v. Healthsmart Preferred Care II, L.P., In the 108th District Court, Potter County, Texas.
- HomeTeam Pest Defense LLC v. Curtis Warren and OnDuty Security Systems, Inc., In the 189th Judicial District, Harris County, Texas.
- KCI Licensing, Inc., et al. v. Bluesky Medical Corporation, et al., Western District of Texas, San Antonio Division.
- VAE Nortrak North America, Inc., et al. v. Progress Rail Services Corporation, Northern District of Alabama, Middle Division.

