1

**LATHAM & WATKINS LLP**
  Joseph R. Wetzel (SBN 238008)
2   *joe.wetzel@lw.com*
  Andrew M. Gass (SBN 259694)
3   *andrew.gass@lw.com*
  Brittany N. Lovejoy (SBN 286813)
4   *britt.lovejoy@lw.com*
  Ivana Dukanovic (SBN 312937)
5   *ivana.dukanovic@lw.com*
  Rachel S. Horn (SBN 335737)
6   *rachel.horn@lw.com*
505 Montgomery Street, Suite 2000
7 San Francisco, California  94111
Telephone:  +1.415.391.0600

8

  Sarang V. Damle (*pro hac vice*)
9   *sy.damle@lw.com*
  Sara Sampoli (SBN 344505)
10   *sara.sampoli@lw.com*
555 Eleventh Street NW, Suite 1000
11 Washington, D.C. 20004
Telephone: +1.202.637.2200

12

  Allison L. Stillman (*pro hac vice*)
13   *alli.stillman@lw.com*
1271 Avenue of the Americas
14 New York, New York 10020
Telephone: +1.212.906.1747

15

*Attorneys for Defendant Anthropic PBC*

16

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

19

| CONCORD MUSIC GROUP, INC., ET AL., | Case No. 5:24-cv-03811-EKL |
|---|---|
| Plaintiffs, | **DEFENDANT ANTHROPIC PBC'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| ANTHROPIC PBC, | |
| Defendant. | Hon. Eumi K. Lee |
| | Date:  July 16, 2025 |
| | Time:  10:00 a.m. |
| | Courtroom:  7 – 4th Floor |

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on July 16, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Eumi K. Lee of the United States District Court for the Northern District of California, at the San Jose Courthouse, Courtroom 7, 4th Floor, 280 South First Street, San Jose, California, 95113, Defendant Anthropic PBC ("Anthropic"), through its undersigned counsel, will, and hereby does, move to dismiss Counts II through IV of Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

Anthropic's Motion to Dismiss ("Motion") is based upon this Notice, the supporting Memorandum of Points and Authorities, the complete files and records in this action, and any additional material and arguments considered in connection with the hearing on the Motion.

## STATEMENT OF RELIEF SOUGHT

Anthropic seeks an order pursuant to FRCP 12(b)(6) dismissing Counts II through IV of the FAC for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

Anthropic's Motion presents the following issues to be decided: (1) Whether Plaintiffs' claim of contributory infringement (Count II) should be dismissed for failure to plead Anthropic's knowledge of specific infringing acts by third parties; (2) Whether Plaintiffs' claim of vicarious infringement (Count III) should be dismissed for failure to plead Anthropic received a direct financial benefit from infringing acts by third parties; and (3) Whether Plaintiffs' claims under 17 U.S.C. § 1202(b) (Count IV) should be dismissed for failure to plead facts sufficient to hold Anthropic liable for violation of the Digital Millennium Copyright Act.

ANTHROPIC'S MOTION TO DISMISS FAC
CASE NO. 5:24-cv-03811-EKL

1   Dated:  May 9, 2025                                  Respectfully submitted,

2                                                        LATHAM & WATKINS LLP

3                                                        By /s/ Joseph R. Wetzel
4                                                            Joseph R. Wetzel (SBN 238008)
                                                             joe.wetzel@lw.com
5                                                            Andrew M. Gass (SBN 259694)
                                                             andrew.gass@lw.com
6                                                            Brittany N. Lovejoy (SBN 286813)
                                                             britt.lovejoy@lw.com
7                                                            Ivana Dukanovic (SBN 312937)
                                                             ivana.dukanovic@lw.com
8                                                            Rachel S. Horn (SBN 335737)
                                                             rachel.horn@lw.com
9                                                            505 Montgomery Street, Suite 2000
                                                             San Francisco, California 94111
10                                                           Telephone: +1.415.391.0600

11                                                           Sarang V. Damle (pro hac vice)
                                                             sy.damle@lw.com
12                                                           Sara Sampoli (SBN 344505)
                                                             sara.sampoli@lw.com
13                                                           555 Eleventh Street NW, Suite 1000
                                                             Washington, DC 20004
14                                                           Telephone: +1.202.637.2200

15                                                           Allison L. Stillman (pro hac vice)
                                                             alli.stillman@lw.com
16                                                           1271 Avenue of the Americas
                                                             New York, New York 10020
17                                                           Telephone: +1.212.906.1747

18                                                       Attorneys for Defendant Anthropic PBC

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.................................................1

III.    LEGAL STANDARD ...............................................................................................3

IV.     ARGUMENT .............................................................................................................3

    A.    Plaintiffs fail to state a contributory infringement claim because
          they do not plausibly allege Anthropic had knowledge of specific
          infringing conduct....................................................................................3

          1.    Plaintiffs' amended complaint alleges only that Anthropic
               was generally aware of the possibility of infringement.............................4

          2.    Plaintiffs fail to plausibly allege a single infringing act of
               which Anthropic was actually aware. .........................................5

    B.    Plaintiffs' new allegations of third-party infringement fail to show
          Anthropic received a direct financial benefit as required for
          vicarious infringement. ............................................................7

    C.    Plaintiffs again fail to plead the necessary mental state to plead a
          CMI removal claim...................................................................8

          1.    Plaintiffs' allegations regarding "extraction" and
               "protecting [their] rights" are irrelevant to the second
               scienter requirement...............................................................8

          2.    Plaintiffs plead no facts showing Anthropic knew or had
               reasonable grounds to know removing CMI would conceal
               or facilitate any infringement...............................................9

V.      CONCLUSION .........................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*AK Futures LLC v. LCF Labs Inc.*,
   No. 21-cv-02121, 2022 WL 17883832 (C.D. Cal. Dec. 7, 2022)................................5

*Andersen v. Stability AI Ltd.*,
   700 F. Supp. 3d 853 (N.D. Cal. 2023) ................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................3

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ................................5

*Davis v. Pinterest, Inc.*,
   No. 19-cv-07650, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ................................3

*Erickson Prods., Inc. v. Kast*,
   921 F.3d 822 (9th Cir. 2019) ................................7

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................3, 5

*Harrington v. Pinterest, Inc.*,
   No. 20-cv-05290, 2021 WL 4033031 (N.D. Cal. Sept. 3, 2021)................................6

*Hartmann v. Popcornflix.com LLC*,
   690 F. Supp. 3d 309 (S.D.N.Y. 2023) ................................5

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................3

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ................................3

*Luvdarts, LLC v. AT & T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ................................3, 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)................................4, 5

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
No. 13-cv-03627, 2014 WL 280391 (N.D. Cal. Jan. 24, 2014).............................................5

*Perfect 10 v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ....................................................................................3

*Rearden LLC v. TWDC Enters. 18 Corp.*,
No. 22-cv-02464, 2024 WL 5191980 (N.D. Cal. Dec. 20, 2024)............................................6

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ......................................................................................6

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ....................................................................................6

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) ...............................................................................8, 9, 10

*Stross v. Meta Platforms, Inc.*,
No. 21-cv-08023, 2022 WL 1843129 (C.D. Cal. Apr. 6, 2022)............................................7

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ....................................................................8, 9, 10

*YZ Prods. v. Redbubble*,
545 F. Supp. 3d 756 (N.D. Cal. 2021) .............................................................................7

**STATUTES**

17 U.S.C. § 1202(b)(1), (3)..............................................................................................8

Digital Millennium Copyright Act......................................................................1, 2, 3, 11

**RULES**

Rule 12(b)(6).....................................................................................................................3

**OTHER AUTHORITIES**

*Clio: Privacy-Preserving Insights into Real-World AI Use* at 1, arXiv (Dec. 18,
2024), https://arxiv.org/pdf/2412.13678 .....................................................................6

1                             **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3         Despite over a year of discovery and a second chance to plead their claims, Plaintiffs still

4  fail to plausibly allege secondary copyright infringement or impermissible content management

5  information ("CMI") removal. The Court should dismiss these claims with prejudice.

6         First, Plaintiffs' secondary copyright infringement claims remain incurably defective.

7  Plaintiffs fail to plausibly allege that Anthropic had actual knowledge of any *specific* infringing

8  conduct by third-party users, as required for contributory infringement. (To preserve the issue for

9  later review, Anthropic also renews its argument that Plaintiffs' vicarious liability claim fails

10  because it does not adequately allege that Anthropic received a direct financial benefit tied to

11  users' alleged infringement.)

12         Second, Plaintiffs' claim that Anthropic removed CMI associated with their song lyrics in

13  violation of the Digital Millennium Copyright Act ("DMCA") fails. Plaintiffs still have not

14  plausibly alleged, as the statute requires, that Anthropic intentionally removed CMI with

15  knowledge that its conduct "*will*" conceal or facilitate infringement.

16         Dismissing these meritless claims now will allow the parties and the Court to focus on

17  the core, novel question of whether the use of copyrighted materials for the purpose of training

18  generative AI models like Claude constitutes transformative fair use under copyright law.

19  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

20         The Court is well aware of the parties, factual background, and procedural history of this

21  case. To recap, Anthropic is an artificial intelligence safety and research company whose

22  flagship family of AI models, Claude, can engage in complex tasks—including software coding,

23  document and data analysis, and creating original content—that foster creativity and enable

24  scientific progress. Plaintiffs' claims against Anthropic stem from the alleged inclusion of their

25  song lyrics in Claude's training set and from the presence of lyrics in certain outputs.

26         Anthropic originally moved to dismiss Plaintiffs' secondary liability and DMCA claims.

27  Dkt. 205. The Court granted that motion with leave to amend. Dkt. 322. With respect to

28

1    Plaintiffs' contributory and vicarious infringement claims, the Court found that Plaintiffs failed

2    to state a plausible claim because they had "not alleged a predicate act of direct third-party

3    infringement." *Id.* at 5–6. The Court also found Plaintiffs had failed to allege "actual knowledge

4    of specific acts of infringement" as required to state a contributory infringement claim. *Id.* at 6–

5    8. On Plaintiffs' Section 1202(b) claim, the Court found that "Publishers' allegations [were] too

6    conclusory to establish" that Anthropic intentionally removed CMI, that it was on notice that

7    CMI had been removed, or that Anthropic had "knowledge that the removal of CMI would

8    induce third party infringement." *Id.* at 9–12.

9        On April 25, 2025, Plaintiffs filed their First Amended Complaint ("FAC"). Dkt. 337.

10   The FAC repleads the same four causes of action against Anthropic as the original Complaint:

11   (1) direct copyright infringement, both for training and outputs; (2) contributory infringement,

12   (3) vicarious infringement, and (4) removal or alteration of CMI under the DMCA. Plaintiffs'

13   amended allegations attempt to address the Court's findings that Plaintiffs did not plausibly

14   allege a third-party predicate act of infringement by citing a handful of Claude prompts and

15   outputs where Claude users apparently sought and/or obtained some portion of Plaintiffs' lyrics.

16   *E.g.* FAC ¶¶ 86–89, 104. The cited examples cover a minuscule fraction—just ten—of Plaintiffs'

17   now 499 asserted works, often showing Claude reproducing nothing more than a snippet of

18   lyrics, if any at all. Plaintiffs also attempt to bolster their conclusory allegations that Anthropic

19   had actual knowledge of specific alleged infringing activity by rehashing their prior claims that

20   Anthropic generally knew Claude was capable of reproducing copyrighted works. *E.g.* FAC

21   ¶¶ 11, 107, 110–115. The Court already rejected that theory as the basis for a contributory

22   infringement claim. Dkt. 322 at 6–8.

23       Plaintiffs' FAC also includes new allegations about how Anthropic purportedly removed

24   CMI from copyrighted works during the training of its AI models, but Plaintiffs allege no

25   specific facts that plausibly indicate Anthropic did so "knowing" that this would "induce, enable,

26   facilitate, or conceal" infringement under the DMCA. *E.g.* FAC ¶¶ 68, 70, 73.

27

28

1    III.    LEGAL STANDARD

2        To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain

3    sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

4    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "[A] formulaic recitation of the

5    elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

6    The Court need not accept allegations that are "merely conclusory," nor should it make

7    unwarranted factual deductions or unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536

8    F.3d 1049, 1055–56 (9th Cir. 2008). A district court may dismiss a complaint without leave to

9    amend if "any amendment would be futile." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522,

10   532 (9th Cir. 2008).

11   IV.    ARGUMENT

12       The Court should dismiss with prejudice the FAC's secondary liability and DMCA

13   claims for three reasons: (1) Plaintiffs again fail to allege that Anthropic had knowledge of

14   specific infringing activity by any third party, as is required for contributory infringement; (2)

15   Plaintiffs again fail to plead Anthropic had a direct financial interest in the alleged Claude-user

16   infringement that forms the basis of their vicarious infringement claim; and (3) Plaintiffs again

17   fail to plead the requisite intent for their Section 1202 claim.

18
     **A.    Plaintiffs fail to state a contributory infringement claim because they do not
     plausibly allege Anthropic had knowledge of specific infringing conduct.**
19

20       Even after robust discovery and an opportunity to amend their complaint, Plaintiffs still

21   fail to plausibly allege that Anthropic had "actual knowledge that specific infringing material is

22   available on its system." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1173 (N.D.

23   Cal. 2019) (emphasis added) (citing *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1171–72

24   (9th Cir. 2007)). A contributory infringement claim requires allegations that a defendant either

25   had "actual knowledge of *specific acts of infringement*" or "[w]illful blindness of *specific facts*."

26   *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013) (emphases

27   added) (citation omitted); *see also, e.g.*, *Davis v. Pinterest, Inc.*, No. 19-cv-07650, 2021 WL

28

1   879798, at *3–4 (N.D. Cal. Mar. 9, 2021) (dismissing contributory infringement claim where

2   plaintiff's notice to defendant did not identify any specific acts of infringement). The

3   requirement of actual knowledge of specific infringing acts is rigorous: even a defendant's

4   general knowledge that its product "is in fact used for infringement" will not suffice absent

5   knowledge of particular infringements of the plaintiff's work. *Metro-Goldwyn-Mayer Studios*

6   *Inc. v. Grokster, Ltd.*, 545 U.S. 913, 933 (2005).

7          Plaintiffs' amended allegations do not clear this bar. The FAC still includes no plausible

8   factual allegation that Anthropic knew of or was willfully blind to any specific infringing lyrics

9   made available to Claude users, or of any third party who had prompted Claude to output

10  infringing lyrics.

11              **1.    Plaintiffs' amended complaint alleges only that Anthropic was**
12                  **generally aware of the possibility of infringement.**

13         Plaintiffs double down on their claim that Anthropic's training and testing processes

14  "demonstrat[e] that Anthropic and its employees deliberately, knowingly, and purposefully

15  designed and trained Claude to satisfy requests for lyrics," FAC ¶ 115, but their new allegations

16  merely state that Anthropic was or should have been generally aware of Claude's general

17  *capacity* to reproduce copyrighted lyrics because of its knowledge of Claude's design and

18  training. *See, e.g.*, FAC ¶ 107 (alleging that "Anthropic was aware that Claude would generate

19  verbatim copies of Publishers' lyrics and other copyrighted material within its training data" and

20  "knew … that this initial training would inevitably result in the unauthorized copying of

21  Publishers' lyrics in Claude output"); *id.* ¶¶ 108–109 (discussing Anthropic employees' general

22  awareness that AI models have a "tendency . . . to 'memorize' and regurgitate their training

23  data," without reference to any specific instances of regurgitation); *id.* ¶ 110 (alleging knowledge

24  of third-party user activity because some crowdworkers hired by Anthropic to fine-tune

25  Anthropic research models "repeatedly prompted the AI models for Publishers' lyrics"). Those

26  allegations, even if accepted as true, speak to Anthropic's alleged knowledge that Claude *could*

27  be used to infringe, and nothing more. As this Court previously recognized, such "generalized

28

1   knowledge" of "the possibility of infringement" is not enough. Dkt. 322 at 7 (citing *Luvdarts*,

2   710 F.3d at 1072); *see also Grokster*, 545 U.S. at 932-33 (courts cannot "presum[e] or imput[e]

3   intent … solely from the design or distribution of a product" used for infringement); *Nat'l Photo*

4   *Grp., LLC v. Allvoices, Inc.*, No. 13-cv-03627, 2014 WL 280391, at *6–7 (N.D. Cal. Jan. 24,

5   2014) (holding that merely operating a system where infringement could occur is insufficient to

6   establish contributory liability).

7                **2.    Plaintiffs fail to plausibly allege a single infringing act of which**
8                         **Anthropic was actually aware.**

9        Plaintiffs' other new allegations about Anthropic's knowledge fail to state a claim

10  because they would require the Court to draw "conclusions [that] cannot reasonably be drawn

11  from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

12       For example, Plaintiffs allege that Anthropic's automated guardrails—designed

13  specifically to *prevent* infringement—somehow create actual knowledge of infringement. *See*

14  FAC ¶ 121 ("[E]very time Anthropic detected user prompts relating to lyrics that triggered such

15  guardrail responses, Anthropic became aware of those specific user prompts seeking lyrics.").

16  This allegation makes no sense based on how Anthropic's guardrails are alleged to work, and is

17  therefore implausible on its face. *See Clegg*, 18 F.3d at 755; *AK Futures LLC v. LCF Labs Inc.*,

18  No. 21-cv-02121, 2022 WL 17883832, at *5–6 (C.D. Cal. Dec. 7, 2022) (dismissing contributory

19  infringement claim where allegations required a "leap in logic"). When Anthropic's guardrails

20  are triggered and prevent Claude from providing potentially infringing output (FAC ¶ 119), no

21  infringement occurs—so there's nothing for Anthropic to know about. When the guardrails fail

22  to trigger (FAC ¶ 120), Anthropic's systems haven't identified anything as potentially infringing.

23  In either case, it is unreasonable to conclude from the facts alleged that the operation of

24  Anthropic's guardrails creates the requisite "actual knowledge [of] specific infringing material."

25  *Free Speech Sys.*, 390 F. Supp. 3d at 1173; *Luvdarts*, 710 F.3d at 1072. Nor do Plaintiffs

26  plausibly allege any facts explaining how the triggering of an *automated* guardrail gives any

27  Anthropic employee actual knowledge of infringement. *Cf. Hartmann v. Popcornflix.com LLC*,

28

690 F. Supp. 3d 309, 320 (S.D.N.Y. 2023) (finding a bare "allegation that a defendant employs digital rights management software" does not establish actual knowledge).

Plaintiffs further allege that a "study of user behavior" published by Anthropic shows that Anthropic "necessarily examine[d] instances in which users request lyrics to Publishers' works and Claude outputs those lyrics and other works." FAC ¶ 117; *see also id.* ¶¶ 121, 170. But the very source they cite contradicts that claim: It highlights that the study assessed "*aggregated* usage patterns"—not specific prompts and outputs reviewed by humans. *Compare* FAC ¶ 117 (citing Alex Tamkin et al., *Clio: Privacy-Preserving Insights into Real-World AI Use* at 1, arXiv (Dec. 18, 2024), https://arxiv.org/pdf/2412.13678) *with* Tamkin et al. at 1. Indeed, that paper specifically describes a method to study user behavior "without the need for human reviewers" to examine individual "raw conversations," in order to preserve user privacy. Tamkin et al., *supra*, at 1. The Court should not accept as true "allegations which are contradicted by documents referred to in the complaint." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998)). And, even accepting Plaintiffs' allegation that Anthropic may have studied *some* "user behavior" or "instances in which the guardrails have failed," FAC ¶ 121, that allegation falls short of the mark: it does not show that Anthropic had any actual or constructive knowledge of the particular "limited instances" Plaintiffs have identified of alleged third-party infringement of the works in suit. *Rearden LLC v. TWDC Enters. 18 Corp.*, No. 22-cv-02464, 2024 WL 5191980, at *6 (N.D. Cal. Dec. 20, 2024) (general receipt of large volume of materials does not plausibly establish actual knowledge of "limited instances of infringement" therein).

Plaintiffs' remaining new allegations similarly fail to identify any *specific* instance of Anthropic examining a specific Claude output that includes any portion of a work in suit. Even in describing a Reddit post sharing a Claude output that included two lines from one asserted work, FAC ¶ 123, Plaintiffs do not allege that any Anthropic employee actually saw that post or, even if they did, "knew or had reason to know that [the Claude output was] infringing." *Harrington v. Pinterest, Inc.*, No. 20-cv-05290, 2021 WL 4033031, at *4 (N.D. Cal. Sept. 3,

2021) (dismissing contributory infringement claim). And in the instance where Plaintiffs allege Anthropic co-founder Tom Brown queried Claude for Bob Dylan lyrics, FAC ¶ 113, they do not allege that Claude returned an output that was infringing. (It is also doubtful that Mr. Brown, an Anthropic employee, could be capable of a predicate act of *third-party* direct infringement.) Because none of these allegations separately or together reasonably leads to the conclusion that Anthropic knew of specific acts of third-party infringement, the Court should not accept Plaintiffs' conclusory statement that "Anthropic therefore had knowledge of specific infringing responses generated by its AI models in response to user prompts." FAC ¶ 170; *see YZ Prods. v. Redbubble*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021) (dismissing contributory infringement claim because allegation that defendant had "specific knowledge of" infringement "through Defendant's system" was too conclusory). Instead, it should dismiss Plaintiffs' contributory infringement claims with prejudice.

**B.    Plaintiffs' new allegations of third-party infringement fail to show Anthropic received a direct financial benefit as required for vicarious infringement.**

To preserve the issue for further review, Anthropic renews its arguments that Plaintiffs fail to allege that Anthropic had a "direct financial interest" in any of the alleged acts of third-party direct infringement, as required by vicarious infringement doctrine. *See* Dkt. 205 at 8–11. Specifically, the law unambiguously requires Plaintiffs to allege facts showing a direct causal connection between infringing outputs and an increase in revenue to Anthropic. *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829-30 (9th Cir. 2019). Although the FAC includes new allegations regarding infringing outputs generated by third-party users, none of those allegations demonstrate the required causal connection. *See, e.g., Stross v. Meta Platforms, Inc.*, No. 21-cv-08023, 2022 WL 1843129, at *3 (C.D. Cal. Apr. 6, 2022) (dismissing vicarious infringement claim because allegation "that copyright infringement *in general* occurs on" defendant's platform was not sufficient to show users were drawn there specifically "*because of* Plaintiff's infringed works" (emphasis added)). For these reasons, Anthropic maintains Plaintiffs' vicarious infringement claim should be dismissed.

**C.    Plaintiffs again fail to plead the necessary mental state to plead a CMI removal claim.**

The Court should dismiss with prejudice Plaintiffs' claim for CMI removal because their conclusory allegations still do not meet Section 1202's dual-scienter requirement.

Plaintiffs must plausibly plead *both*: (1) that Anthropic's alleged removal or alteration of CMI was done "intentionally" (or, for distribution claims, was done "knowing that [CMI] has been removed or altered") *and* (2) that these acts have been performed with "reasonable grounds to know" that they "will induce, enable, facilitate, or conceal an infringement [of copyright]." 17 U.S.C. § 1202(b)(1), (3). Courts dismiss CMI-removal claims that don't plead facts plausibly demonstrating the alleged infringer had the required mental states on *both* prongs. *E.g.*, *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 871 (N.D. Cal. 2023); *Tremblay v. OpenAI, Inc*., 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024).

Even if Plaintiffs plausibly alleged facts as to the first scienter element, they fail to allege adequate facts as to the second: that Anthropic has removed CMI "knowing" that it "will induce, enable, facilitate, or conceal . . . infringement." *Andersen*, 700 F. Supp. 3d at 871 (citations omitted); *Tremblay*, 716 F. Supp. 3d at 779 (citations omitted). It is not sufficient for Plaintiffs to identify "a general possibility" of inducing, enabling, facilitating, or concealing infringement that "exists whenever CMI is removed." *Tremblay*, 716 F. Supp. 3d at 779 (quoting *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018)).

**1.    Plaintiffs' allegations regarding "extraction" and "protecting [their] rights" are irrelevant to the second scienter requirement.**

The bulk of Plaintiffs' new allegations relate to Anthropic employees' evaluation and use of "extractor algorithms." FAC ¶¶ 68–73. Those speak at most to Anthropic's desire *to* remove CMI but not at all as to *why* Anthropic allegedly did this. *Id.* ¶ 73. Indeed, it is more likely, even based on Plaintiffs' own allegations, that this purported removal had nothing to do with infringement. *Id.* ¶¶ 58(b)–(c). As Plaintiffs acknowledge, Anthropic routinely "'cleans'… text to remove material it perceives as inconsistent with its business model," such as duplicate data

1    and offensive language. *Id.* ¶ 58. They allege that process "ignore[s]" CMI, *id.*, filtering it out

2    along with other elements, *id.* ¶ 118. Rather than plausibly alleging knowledge or intent to

3    facilitate infringement, Plaintiffs' description of the data cleaning process demonstrates that if

4    CMI is removed, it is (1) done automatically, (2) along with material completely unrelated to

5    copyright, and (3) without any consideration of copyright implications at all.

6        Similarly, while Plaintiffs conclusorily allege that CMI is "critical to protecting

7    Publishers' rights," FAC ¶ 74, they do not explain *how* Publishers use that CMI to protect their

8    rights in the context of Claude outputs, or that Anthropic was aware that removal of CMI would

9    impede any such enforcement efforts. *Cf. Stevens*, 899 F.3d at 675 (explaining the kinds of

10   allegations, such as showing a particular "modus operandi" of "policing infringement by tracking

11   metadata," that would meet the second scienter bar). Indeed, the alleged removal of CMI has

12   apparently not stood in the way of Plaintiffs attempting to enforce their rights through this suit.

13               **2.    Plaintiffs plead no facts showing Anthropic knew or had reasonable
                         grounds to know removing CMI would conceal or facilitate any
14                       infringement.**

15       Plaintiffs' attempts to satisfy the second mental state requirement center on factual

16   allegations that Anthropic knew CMI removal would (1) "conceal [Anthropic's] infringement"

17   and (2) "enable[] and facilitate[] infringement by its users."[1] FAC ¶ 136. In each case, Plaintiffs'

18   contention collapses to their identifying a general possibility existing whenever CMI is removed,

19   which is futile under the law of this Circuit. *Tremblay*, 716 F. Supp. 3d at 779 (quoting *Stevens*,

20   899 F.3d at 673).

21       *First,* Plaintiffs fail to state a claim as to Anthropic's own infringement. Plaintiffs allege

22   that removing CMI from training data somehow concealed alleged infringement in the context of

23   training the model.  FAC ¶ 136.  But they—like the *Tremblay* plaintiffs—fail to explain "*how*

24   omitting CMI in the copies used in the [nonpublic] training set" would have "conceal[ed]"

25   Anthropic's infringement in the course of that training. *Tremblay*, 716 F. Supp. 3d at 779

26   _____

27   [1] The FAC includes only the barest conclusion, with no factual allegations in support, that
     Anthropic knew that CMI removal would either "induce," "enable," or "facilitate" its own
     infringement, or "conceal" or "induce" infringement by its users. FAC ¶ 200.

28

(emphasis added). Plaintiffs further allege that Anthropic "knew that stripping [CMI] from training data would prevent the models from displaying such information alongside Publishers' lyrics in outputs, thereby concealing Anthropic's infringement from Anthropic's users, Publishers, and other copyright owners." FAC ¶ 74; *see also id.* ¶ 200. But this merely alleges that Anthropic knew removing CMI (in the training data) could result in removal of CMI (in the outputs). If these allegations were sufficient, a plaintiff could satisfy the second scienter requirement merely by alleging intentional CMI removal—effectively erasing the second requirement entirely.

*Second*, Plaintiffs also fail to allege adequate scienter as to purported infringement by Anthropic's users. On this point, the FAC's only arguably relevant allegation is that "Anthropic's concealment . . . enables and facilitates infringement by its users, who are not informed that the output they receive from Claude contains copyrighted lyrics." FAC ¶ 136. Even assuming this allegation were true,[2] a user not being informed that a work is copyrighted is "a general possibility that exists whenever CMI is removed." *Tremblay*, 716 F. Supp. 3d at 779 (quoting *Stevens*, 899 F.3d at 673). Thus, in *Tremblay*, the court dismissed the plaintiffs' CMI removal claim because the plaintiffs hadn't connected the dots between the failure to reveal CMI to end users and the enablement of infringement. *Id.* Here, too, Plaintiffs include no factual allegations showing how removal of CMI from training data supposedly "enables" or "facilitates" the alleged infringements that Plaintiffs claim Anthropic's third-party users committed. Plaintiffs do not allege any facts to show, for instance, that Anthropic knew Claude's guardrails would be more likely to fail, or that Claude would be more likely to regurgitate portions of Plaintiffs' song lyrics, if CMI were removed. Plaintiffs' conclusory allegations are not enough to plead the requisite mental state.

---

[2] Plaintiffs also allege that Claude responds to prompts including song titles and artist names, and provides outputs that include song titles and artist names (*i.e.*, CMI) (*e.g.*, FAC ¶¶ 88–89, 99), which belies the allegation that users "are not informed that the output … contains copyrighted lyrics." FAC ¶ 136.

Plaintiffs' case is nothing like *Doe 1 v. GitHub*, in which the defendant "knew that CMI was important for protecting copyright interests," which the FAC doesn't allege. 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023). And crucially, the allegations in that case went beyond the defendant knowing that code was being distributed without CMI. *See id.* The *Doe 1* plaintiffs also alleged the defendant "regularly processed DMCA takedowns" alleging specific instances of copyright infringement, such that it was affirmatively made "aware its platform was used to distribute code with removed or altered CMI in a manner which induced infringement" by users on its platform. *Id.* Plaintiffs allege no comparable facts here, where Anthropic was only made aware of alleged copyright infringement through the initiation of this litigation.

Because Plaintiffs fail to plead the critical second scienter element of a CMI removal claim, the Court should dismiss their claim with prejudice.

## V.    CONCLUSION

After a year of discovery and two opportunities to plead their claims before this Court, Plaintiffs still cannot plausibly allege that Anthropic had the requisite knowledge of specific infringements for purposes of contributory liability, that Anthropic obtained a direct financial benefit for purposes of vicarious liability, or that Anthropic had the required mental state for purposes of their DMCA claim. The Court should dismiss Counts II-IV of the FAC with prejudice.

Dated:  May 9, 2025                           Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Joseph R. Wetzel*
  Joseph R. Wetzel (SBN 238008)
    *joe.wetzel@lw.com*
  Andrew M. Gass (SBN 259694)
    *andrew.gass@lw.com*
  Brittany N. Lovejoy (SBN 286813)
    *britt.lovejoy@lw.com*
  Ivana Dukanovic (SBN 312937)
    *ivana.dukanovic@lw.com*
  Rachel S. Horn (SBN 335737)
    *rachel.horn@lw.com*

1   505 Montgomery Street, Suite 2000
    San Francisco, California 94111
2   Telephone: +1.415.391.0600

3   Sarang V. Damle (*pro hac vice*)
        sy.damle@lw.com
4   Sara Sampoli (SBN 344505)
        sara.sampoli@lw.com
5   555 Eleventh Street NW, Suite 1000
    Washington, DC 20004
6   Telephone: +1.202.637.2200

7   Allison L. Stillman (*pro hac vice*)
        alli.stillman@lw.com
8   1271 Avenue of the Americas
    New York, New York 10020
9   Telephone: +1.212.906.1747

10  *Attorneys for Defendant Anthropic PBC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28