**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case Number: 5:24-cv-03811-EKL-SVK<br><br>**PLAINTIFFS' OPPOSITION TO ANTHROPIC'S DECLARATION IN SUPPORT OF SEALING (ECF NO. 362)**<br><br>Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen |

Pursuant to Civ. L.R. 79-5(f)(4), Plaintiffs ("Publishers") respectfully submit this Response in Opposition to Anthropic's Declaration in Support of Publishers' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed, ECF No. 362.

The Ninth Circuit recognizes "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). "The public has a right of access to the Court's files." Civ. L.R. 79-5(a).

As the party seeking to seal the Joint Discovery Dispute Statement, Anthropic "bears the burden of overcoming this strong presumption [of public access] by meeting the 'compelling reasons' standard," which requires Anthropic to "articulate[] compelling reasons supported by specific factual findings that outweigh the general history of access and public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz*, 331 F.3d at 1135). As part of that showing, Anthropic must demonstrate "(i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient." Civ. L.R. 79-5(c)(1). Boilerplate allegations of harm and "hypothesis or conjecture" are insufficient. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179).

Anthropic has not met this "stringent standard," *id.*, with respect to any of the non-sensitive information it seeks to seal here.[1]

I. **Anthropic does not articulate any legitimate basis for sealing the non-sensitive Claude prompt and output references at issue.**

A review of the two Claude prompt *excerpts* Anthropic seeks to seal makes clear that there is no compelling reason whatsoever to seal this information. Specifically, Anthropic seeks to seal portions of a user prompt that requests the lyrics to Publishers' work, "The Boys Are Back in Town," in extremely general language, without including any sensitive user information (ECF No. 344-2

---

[1] Even if the "good cause" standard applies rather than the "compelling reasons" standard, Anthropic still fails to make a "particularized showing" that sealing is warranted. *Kamakana*, 447 F.3d at 1180,

at 2), and a ***paraphrase*** of a second user prompt regarding lyrics that resulted in Claude output copying lyrics to two of Publishers' works, "Lean on Me," and "Life is a Highway," again without any sensitive user information (ECF No. 344-2 at 3). Likewise, there is no compelling reason to seal Anthropic's very high-level descriptions of certain other user prompts and output (ECF No. 344-2 at 7). Anthropic fails to show any privacy interest that could possibly require sealing this general language, fails to demonstrate any specific injury that would result from disclosure of these anonymous excerpts, and fails to explain why a less restrictive alternative to sealing is not available. Nor does Anthropic articulate, with respect to the ***specific prompts and output*** at issue, why there is good cause to seal.

Anthropic's claim that this information is "highly confidential" is non-sensical. There is nothing even remotely sensitive about these limited excerpts—especially the two prompt excerpts in Publishers' statement—and no conceivable way that any of these anonymous excerpts could be tied to specific users or cause "significant risk of harm for Anthropic's third-party users." Indeed, Anthropic never identifies what user details or supposedly private user information are actually contained in these specific excerpts that would warrant sealing.

Anthropic's continued insistence that this type of non-sensitive information meets the high standard for sealing is inexplicable, particularly in light of the Court's statements at the March 13, 2025 discovery hearing that "there clearly is an issue [in this litigation] of over-designation" by Anthropic, and that much of the information at issue is "definitely not [] highly confidential, AEO, and [the Court] hope[s] that was a mistake and won't be repeated." Hr'g Tr. 60:7–8; 66:23-24 (May 13, 2025).

In sum, nothing in these limited excerpts could possibly "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets" such that sealing might be warranted. *Kamakana,* 447 F.3d at 1178 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978)). Anthropic's "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning" cannot carry its burden of demonstrating a compelling reason to seal this information. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Similarly, because Anthropic only states in "general terms" Claude prompts and outputs

are confidential and does not demonstrate "**with particularity** the need to file **each document** under seal," Anthropic fails to establish good cause for sealing. *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2009 WL 10675139, at *1 (N.D. Cal. 2009) (emphasis added).

## II. Anthropic does not articulate any legitimate basis for sealing the general, high-level Claude records figures.

Anthropic also fails to identify any legitimate basis for sealing the number of prompt/output records Anthropic has preserved from the Claude.ai website for a nine-day period in September 2023 and the six-month period from September 2023 to March 2024 (ECF No. 344-2 at 4-5).

First, Anthropic does not explain how these two figures could possibly cause it competitive harm if disclosed. These general figures are not trade secrets. These numbers do not identify overall Claude usage—the number of Claude.ai website records Anthropic preserved for purposes of the litigation for these two time periods may or may not capture all Claude.ai website usage,[2] and these figures certainly do not reflect broader Claude usage through other channels (such as the API Anthropic has made available to its thousands of business customers). Nor is there anything special about these two particular time periods such that information about the number of Claude records Anthropic preserved for these times could be competitively sensitive in a manner sufficient to justify sealing. These periods pertain to this litigation—not to any Anthropic business purpose or strategy. Anthropic has not explained how the general number of Claude records for these two litigation-related periods could possibly afford any competitive advantage to another company.

The lack of any possible competitive harm is further underscored by the fact that these figures are, respectively, more than 19 months old and more than 13 months old. "[T]here are no compelling reasons to seal stale information." *Applied Materials, Inc. v. Demaray LLC*, 2023 WL 4409106, at *2 (N.D. Cal. 2023) (denying request to seal); *see also Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, 2018 WL 6601671, at *2 (S.D. Cal. 2018) (denying request to seal where defendant failed to show "why [] outdated information would have any effect on [defendant's] competitive standing at the present").

For this reason, Anthropic's reliance on *N.Y. Times Co. v. OpenAI*, No. 1:23-cv-11195-SHS-

---

[2] Publishers are separately pursuing discovery regarding whether Anthropic complied with its obligations in preserving Claude prompt and output records.

OTW, ECF No. 426, is misplaced. In that case, OpenAI sought to seal documents concerning OpenAI's obligation to preserve output log data on a going-forward basis. *See id.* ECF No. 414. That is very different from the backward-looking information at issue here.

Anthropic's boilerplate references to generalized competitive harms and hypotheticals do not suffice. "Generic rationales invite general rejection." *X Corp. v. Bright Data Ltd.*, 2025 WL 81577, at *3 (N.D. Cal. 2025). Moreover, "[i]nformation does not have value to a competitor merely because the competitor does not have access to it." *Travelers Property Cas. Co. v. Centex Homes*, 2013 WL 707918, at *1 (N.D. Cal. 2013). Particularly given the several subsequent Claude model releases since the date of these general figures, "it is unclear how [Anthropic's] competitors could derive any economic benefit" from the figures now. *Id*. For these reasons, Anthropic's request to seal should be denied.

Second, Anthropic has not consistently maintained such Claude usage figures as confidential, and similar figures are already public, further undermining its sealing request.

For example, analytics firms already publicly report on Claude usage numbers, including reporting that Claude received 3.3 million daily visits in March 2025 alone.[3] Likewise, Anthropic itself has recently boasted that the user base for Claude is "growing like crazy," and it has disclosed various Claude user figures publicly.[4] For example, in a report concerning usage patterns of Claude users, Anthropic researchers disclosed they had obtained at least 2.8 million Claude user conversations from the Claude.ai website from between November 28, 2024 and December 18, 2024,[5] and examined 4 million conversations from between December 2024 and January 2025.[6] Anthropic has even made datasets derived from those 4 million conversations publicly available.[7]

---

[3] Kyle Wiggers, *ChatGPT Isn't the Only Chatbot That's Gaining Users*, TECHCRUNCH (Apr. 1, 2025), https://techcrunch.com/2025/04/01/chatgpt-isnt-the-only-chatbot-thats-gaining-users/.

[4] Cynthia Littleton, *Anthropic Chief Says AI Tools Can Be a 'Force Multiplier' for Business*, VARIETY (Apr. 11, 2025), https://variety.com/2025/biz/news/anthropic-daniela-amodei-chief-ai-force-multiplier-1236367447/.

[5] KUNAL HANDA ET AL., WHICH ECONOMIC TASKS ARE PERFORMED WITH AI? EVIDENCE FROM MILLIONS OF CLAUDE CONVERSATIONS 27 (2025), https://assets.anthropic.com/m/2e23255f1e84ca97/original/Economic_Tasks_AI_Paper.pdf.

[6] *Id.* at 1.

[7] *The Anthropic Economic Index*, ANTHROPIC (Feb. 10, 2025), https://www.anthropic.com/news/the-anthropic-economic-index.

Anthropic has also publicly disclosed similar Claude figures in this case. *See, e.g.*, Decl. of Anthropic's Olivia Chen ¶ 2 (Apr. 30, 2025), ECF No. 341-2 (discussing Anthropic's "dataset of hundreds of millions of [Claude.ai] records spanning from September 22, 2023 to March 22, 2024"); Decl. of Jared Kaplan ¶ 12 (Aug. 22, 2024), ECF No. 209 ("On average, hundreds of thousands of users engage with Claude.ai on a daily basis, which amounts to approximately millions of conversations per day."); Joint Case Management Statement at 6 (Feb. 26, 2025), ECF No. 299 (Anthropic is reviewing "more than 170,000 prompts and outputs from its commercial-facing Claude.ai product (narrowed from a universe of hundreds of millions records)").

Where similar usage information has already been disclosed publicly, there could be no serious harm from disclosure here and no basis for sealing. *See, e.g.*, *Kamakahi v. American Society for Reproductive Medicine*, 2014 WL 6617262, at *3 (N.D. Cal. 2014) (declining to seal where party had disclosed materials); Sealing Order (Dec. 19, 2024), ECF No. 282 (the Court's denying certain sealing requests where information was already part of the public record).

**III.     There is no legitimate basis for sealing the fact that Anthropic used two common AI training datasets.**

Nor does Anthropic identify any legitimate reason to seal the fact that its training corpus for Claude includes two common AI training datasets (ECF No. 344-2 at 5-6, 10).

As an initial matter, the excerpts Anthropic seeks to seal say nothing about Anthropic's "training data mix" as Anthropic claims. Rather, the language simply refers to the fact that Anthropic includes two common AI training datasets in its overall Claude training corpus, without further discussion of any specific training process or dataset mix it employs between those and other datasets. That is no trade secret that warrants sealing.

Moreover, disclosure of the fact that Claude's training corpus includes these datasets could not possibly cause competitive harm to Anthropic, given that (1) this information is already well-known, and (2) these same training datasets are commonly used by Anthropic's competitors, as explained in the section of the underlying Joint Dispute Statement Anthropic seeks to seal here. *See* ECF No. 344-2 at 5–6. Protection from disclosure is unjustified when "information has already become public." *Rodman v. Safeway, Inc.*, 2013 WL 12320765, at *2 (N.D. Cal. 2013) (denying request to seal materials that have become public or reflect outdated information).

| | |
|---|---|
| Dated: May 16, 2025 | Respectfully submitted,<br><br>*/s/ Timothy Chung*<br>**OPPENHEIM + ZEBRAK, LLP**<br>Matthew J. Oppenheim<br>Nicholas C. Hailey<br>Audrey L. Adu-Appiah<br>(admitted *pro hac vice*)<br>4530 Wisconsin Ave., NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 480-2999<br>matt@oandzlaw.com<br>nick@oandzlaw.com<br>aadu-appiah@oandzlaw.com<br><br>Jennifer Pariser<br>Andrew Guerra<br>Timothy Chung<br>(admitted *pro hac vice*)<br>461 5th Avenue, 19th Floor<br>New York, NY 10017<br>Telephone: (212) 951-1156<br>jpariser@oandzlaw.com,<br>andrew@oandzlaw.com<br>tchung@oandzlaw.com<br><br>**COBLENTZ PATCH DUFFY & BASS LLP**<br>Jeffrey G. Knowles (SBN 129754)<br>One Montgomery Street, Suite 3000<br>San Francisco, CA 94104<br>Telephone: (415) 391-4800<br>ef-jgk@cpdb.com<br><br>**COWAN, LIEBOWITZ & LATMAN, P.C.**<br>Richard S. Mandel<br>Jonathan Z. King<br>Richard Dannay<br>(admitted *pro hac vice*)<br>114 West 47th Street<br>New York, NY 10036-1525<br>Telephone: (212) 790-9200<br>rsm@cll.com<br>jzk@cll.com<br>rxd@cll.com<br><br>*Attorneys for Plaintiffs* |