UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., et al., <br> Plaintiffs, <br> v. <br> ANTHROPIC PBC, <br> Defendant. | Case No. 24-cv-03811-EKL (SVK) <br><br> **SEALING ORDER RELATING TO DISCOVERY DISPUTES** <br><br> Re: Dkt. Nos. 340, 344, 351 |

Before the Court are Plaintiffs' ("Publishers") Administrative Motions to Consider Whether Another Party's Material Should Be Sealed pursuant to Civil L.R. 79-5(f) in connection with: (1) the Parties' Joint Statement Regarding the Dispute as to the Sampling Protocol to Address Publisher's Request for Production nos. 50-51 (Dkt. 3 Anthropic's Searches and Production of Claude Prompts and Output (Dkts. 340 and 351[1]) and (2) the Parties' Joint Statement Regarding the Discovery Dispute over Publishers' Challenges to Anthropic's Confidentiality Designations. Anthropic filed declarations pursuant to Civil Local Rule 79-5(f)(3) in support of sealing. Dkts. 354, 362 and 370 (supporting Dkts. 340, 344 and 351, respectively). Publishers oppose sealing. *See* Dkts. 357, 374-75. Having considered the Parties arguments, the relevant law and the record in this action, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motions to seal.

////

////

////

---

[1] After this Court granted Publishers' Motion to Remove Incorrectly Filed Document (Dkt. 350), Publishers re-filed the declaration of their expert, Mr. Buchan, under seal along with the additional administrative motion.

## I. LEGAL STANDARD

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 & n.7 (1978)). The standard for overcoming the presumption of public access to court records depends on the purpose for which the records are filed with the court. A party seeking to seal court records relating to motions that are "more than tangentially related to the underlying cause of action" must demonstrate "compelling reasons" that support secrecy. *Ctr. For Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016). For records attached to motions that are "not related, or only tangentially related, to the merits of the case," such as "a discovery motion unrelated to the merits of the case," the lower "good cause" standard applies. *Id.*; *see also Kamakana*, 447 F.3d at 1179. The requests at issue relate to records attached to and cited in the Parties' Joint Discovery submissions noted above, rather than motions or pleadings concerning the merits of the case.[2] Accordingly, the "good cause" standard applies.[3]

## II. DISCUSSION

### A. Anthropic's Requests to Seal Claude Metrics and Usage Information

Anthropic argues that there is good cause to seal Claude metrics and usage information, *i.e.*, metrics of how many prompts were submitted to Claude over various periods of time. Dkt. 354, ¶ 4; Dkt. 362, ¶ 6. It argues that such metrics are "competitively sensitive" and "would give [its] competitors and potential business partners unfair insights into Anthropic's business strategies," including the relative importance of Claude and Anthropic's market share. Dkt. 354, ¶ 4; Dkt. 362, ¶ 6. In so arguing, Anthropic points to a recent case in the Southern District of New

---

[2] This Sealing Order does not resolve Dkt. 336 or its related filings, which relate to Anthropic's request to seal certain material in Publisher's First Amended Complaint and are properly before the Honorable Eumi K. Lee.

[3] Anthropic addresses the "good cause" standard in all of its declarations in support of sealing. Dkts. 354, 362 and 370, ¶¶ 3. Publishers' oppositions address the "compelling reasons" standard, arguing only that "even if the 'good cause' standard applie[d]," Anthropic's sealing requests should still be denied. Dkts. 374-75, n. 1. Publishers' application of the "compelling reasons" standard is incorrect. are incorrect. However, because Anthropic bears the burden of overcoming the strong presumption in favor of access, the Court will consider Publishers' arguments to the extent they are relevant to the "good cause" inquiry.

York wherein the court sealed certain metrics related to ChatGPT usage. *See N.Y. Times Co. v. OpenAI*, No. 23-cv-11195-SHS (OTW), Dkt. 426 (S.D.N.Y. Jan. 17, 2025) (sealing ECF 414 and referring back to the reasoning in ECF 378 (erroneously cited as ECF 376)). The rationale of the court in *OpenAI*, relying on the sealing standard of the Second Circuit, was that (1) there was "a low presumption of public access" for documents related to discovery; (2) the parties had designated the documents confidential under the protective order; and (3) the documents "reference information of the type that would normally be kept strictly confidential by the parties." *OpenAi*, Dkt. 378 at 5.

Here, Publishers make several arguments against sealing "general Claude usage figures," but most of Publishers' arguments rely upon the "compelling reasons" standard. *See* Dkt. 357 at 2-5; Dkt. 374 at 3-4; Dkt. 375 at 1-3. Publishers' first argument, that the information Anthropic seeks to seal is 13 or 19 months old (depending on the metrics at issue) relies explicitly on the "compelling reasons" standard: "there are no *compelling reasons* to seal stale information." Dkt. 357 at 2-3 (citing *Applied Materials, Inc. v. Demaray LLC*, No. 5:20-CV-09341-EJD, 2023 WL 4409106, at *2 (N.D. Cal. July 7, 2023)) (emphasis added); Dkt. 374 at 3 (same); Dkt. 375 (same). Similarly, Publishers' third argument relies on the "strong presumption in favor of access to court records" that is present in the compelling reasons analysis. Dkt. 357 at 4-5; Dkt. 374 at 1; Dkt. 375 at 1. These arguments are misplaced.

The "good cause" standard is much closer to the "low presumption" applied by the court in *OpenAI*, which is persuasive here. The Ninth Circuit has explained that "discovery is largely 'conducted in private as a matter of modern practice,' so the public is not presumed to have a right of access to it." *Ctr. for Auto Safety v. Chrysler*, 809 F.3d at 1097 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)). "There is no tradition of public access to discovery, and requiring a trial court to scrutinize carefully public claims of access would be incongruous with the goals of the discovery process." *Id.* (citation omitted). Accordingly, under the "good cause" standard, "the private interests of litigants are 'the only weights on the scale.'" *Id.* Thus, Publishers' arguments based on the "strong presumption" of public access are simply not applicable. Their arguments based on "stale" information have some force, but this Court is not

3

1  persuaded that 13-month-old or 19-month-old usage metrics are sufficiently old as to categorically
2  rebut Anthropic's declared competitive interest in the information.  Rather, this Court agrees that,
3  for a company whose bread-and-butter is generative artificial intelligence, the usage metrics of
4  their most well-known AI product could give their competitors insight into their market share and
5  thus may be competitively sensitive.  *See* Dkt. 354, ¶ 4;  Dkt. 362, ¶ 6.

6  Publishers' second argument, that "Anthropic has not consistently held this type of
7  information confidential," (Dkt. 357 at 3-4), is well-taken.  Publishers cite two types of
8  disclosures:  reporting by third parties, including metrics generated by analytics firms, and
9  statements by Anthropic itself.  As to the first category, the Court is not convinced that unsourced,
10 third-party reporting is sufficient to defeat Anthropic's asserted competitive interests.  But as to
11 the second category, the Court agrees that Anthropic has disclosed isolated usage metrics in
12 limited contexts:  for example, "2.8 million Claude.ai Free and Pro conversations between
13 November 28, 2024 and December 18, 2024."  *See* Handa, K., *et al.*, *Which Economic Tasks Are*
14 *Performed with AI? Evidence from Millions of Claude* Conversations 27 (2025).  Thus,
15 Anthropic's behavior suggests that the risk of harm from disclosure of isolated usage metrics from
16 limited time periods is minimal or at least not overriding.

17 Accordingly, this Court **GRANTS-IN-PART** Anthropic's request to seal Claude usage
18 figures as set forth below.  This is also consistent with the Court's finding in its attendant
19 substantive order that, while Anthropic's detailed query counts may be maintained as "HC-AEO"
20 material, other, less comprehensive use-counts are merely "Confidential."

21 **B.     Anthropic's Request to Seal Information from Specific Prompts**

22 Anthropic next seeks to seal materials that contain "direct quotes from specific prompts by
23 Claude users."  Dkt. 362, ¶ 4.  Publishers oppose this request, arguing that descriptions of prompts
24 and the anonymous quotes at issue pose no risk of harm for Anthropic or its third-party users.  *See*
25 Dkt. 374 at 1-2.  The Court agrees with Publishers.

26 As the Court explained previously, Anthropic's users do have a privacy interest at stake in
27 their interactions with Claude.  *See* Dkt. 318 at 4-5.  But, as explained in the attendant substantive
28 order, while Anthropic may categorically designate prompts and outputs as confidential "at the

outset under the PO," it must "de-designate and/or propose tailored redactions for th[e] specific prompt/output record[s]" that it submits in filings. In this case, there is no cause to seal the descriptions and anonymous excerpts at issue. Accordingly, the Court **DENIES** Anthropic's request to seal these descriptions and prompt excerpts.

### C. Anthropic's Request to Seal the Two Datasets Used to Train Claude

Finally, Anthropic seeks to seal "two specific datasets used to train Claude." Dkt. 362, ¶ 7. Publishers oppose this request, arguing that "this information is already well-known" and "these same training datasets are commonly used by Anthropic's competitors." Dkt. 374 at 5. These arguments mirror those Publishers made in opposing Anthropic's use of the "HC-AEO" designation for these training datasets.

As the Court explains in the attendant substantive order, Anthropic maintains that it has never publicly disclosed using either dataset to train Claude and "[n]either Publishers' citations to what Anthropic's competitors have disclosed about their products, nor their citations to a 2021 article that predates Claude and does not mention Claude, refute this representation." Accordingly, the Court does not agree that Anthropic has made this information public. Additionally, while the Court does not decide whether these datasets could be maintained under seal under the compelling reasons standard, in the context of the lower "good cause" standard where "the private interests of litigants are 'the only weights on the scale,'" (*Ctr. for Auto Safety v. Chrysler*, 809 F.3d at 1097), this Court is satisfied that the datasets used to train Claude are competitively sensitive and so should remain under seal in the context of this discovery dispute. Accordingly, the Court **GRANTS** Anthropic's request to seal these materials as set forth below.

## III. CONCLUSION

In sum, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Anthropic's requests to seal certain materials, as follows:

////

////

////

////

| Document | Sealing Request | Sealing Order |
|---|---|---|
| Discovery Dispute Statement (Dkt. 340-2) | Highlighted portions at pages 1-2, 4-7, 10. | **DENIED** as to the word "seven" on ECF page 2, the number "14" on ECF pages 3, 5, and 6, the number "45" on ECF page 5, the number "8" on ECF page 7, all highlighting on ECF page 8, and the number "8" on ECF page 11.  These isolated numbers are commensurate with what Anthropic has previously, publicly disclosed and do not pose a sufficient risk of competitive harm.<br><br>Otherwise **GRANTED.** |
| Declaration of Olivia Chen (Dkt. 340-3) | Highlighted portions at ¶ 16. | **DENIED.**  *See* above. |
| Declaration of Kristofer Buchan (Dkt. 351-2) | Highlighted portion at ¶¶ 33. | **GRANTED**. |
| Discovery Dispute Statement (Dkt. 344-2) | Highlighted portions at pages 2–7, 10. | **DENIED** as to the prompt/output excerpts at ECF pages 3-4 and descriptions on ECF page 8, and **DENIED** as to the number "14 million" on ECF pages 5-6.<br><br>**GRANTED** as to highlighting related to the training datasets used by Anthropic. |

The Clerk of the Court shall unseal Dkt. 340-3.  No later than May 29, 2025, Anthropic shall file replacement redacted copies of Dkts. 340-2, and 344-2, in accordance with this Order.  Dkt. 351-2 shall remain under seal.

**SO ORDERED.**

Dated: May 23, 2025

SUSAN VAN KEULEN
United States Magistrate Judge