**LATHAM & WATKINS LLP**
  Joseph R. Wetzel (SBN 238008)
   *joe.wetzel@lw.com*
  Andrew M. Gass (SBN 259694)
   *andrew.gass@lw.com*
  Brittany N. Lovejoy (SBN 286813)
   *britt.lovejoy@lw.com*
  Ivana Dukanovic (SBN 312937)
   *ivana.dukanovic@lw.com*
  Rachel S. Horn (SBN 335737)
   *rachel.horn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

  Sarang V. Damle (*pro hac vice*)
   *sy.damle@lw.com*
  Sara Sampoli (SBN 344505)
   *sara.sampoli@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

  Allison L. Stillman (*pro hac vice*)
   *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | Case No. 5:24-cv-03811-EKL |
| Plaintiffs, | **DEFENDANT ANTHROPIC PBC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| ANTHROPIC PBC, | Hon. Eumi K. Lee |
| Defendant. | Date: July 30, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7 – 4th Floor |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ..................................................................................................... 1

    A.  Plaintiffs rely on an outdated standard for granting a motion to dismiss. ...................................................................................................... 1

    B.  The FAC fails to plausibly allege Anthropic had knowledge of specific infringing activity, as the law requires for contributory liability. ......................................................................................................... 3

        1.  Under Ninth Circuit law, Plaintiffs must plead Anthropic actually knew of specific instances of infringement. ................................. 3

        2.  The allegations in the FAC do not plausibly show Anthropic knew of specific instances of third-party infringement. ................................................................................................ 5

        3.  Plaintiffs' cited cases do not save their claim. ............................................ 8

    C.  Plaintiffs have failed to plausibly allege the second level of scienter required for a CMI removal claim. .......................................................... 9

        1.  Plaintiffs still fail to plausibly allege removing CMI would conceal any alleged infringement by Anthropic, let alone that Anthropic knew it would. .................................................... 10

        2.  Plaintiffs still fail to plausibly allege Anthropic knew removing CMI would induce, enable, facilitate, or conceal third-party infringement during output. ...................................... 10

        3.  The Court should follow *Tremblay*'s lead and decline Plaintiffs' invitation to adopt out-of-circuit decisions' flawed reasoning. ................................................................................. 11

    D.  Plaintiffs fail to plausibly allege a direct financial benefit for purposes of their vicarious liability claims. .......................................................... 13

III.  CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AK Futures LLC v. LCF Labs Inc.*,
  No. 21-cv-02121, 2022 WL 17883832 (C.D. Cal. Dec. 7, 2022)................................................6

*Andersen v. Stability AI Ltd.*,
  700 F. Supp. 3d 853 (N.D. Cal. 2023) ....................................................................................12

*Andersen v. Stability AI Ltd.*,
  744 F. Supp. 3d 956 (N.D. Cal. 2024) ......................................................................................8

*Anderson v. Intel Corp. Inv. Policy Comm.*,
  – F.4th —, 2025 WL 1463295 (9th Cir. May 22, 2025)............................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................3, 6, 7, 8

*Bartz v. Anthropic PBC*,
  No. 24-cv-05417, ECF No. 122 (N.D. Cal. Mar. 27, 2025) ....................................................1

*Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*,
  No. 23-cv-06012, 2024 WL 3522196 (N.D. Cal. July 23, 2024) ............................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................3

*BMG Rights Management (US) LLC v. Joyy Inc.*,
  716 F. Supp. 3d 835 (C.D. Cal. 2024) ....................................................................................8, 9

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ..................................................................................................4, 5

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
  644 F. Supp. 3d 602 (C.D. Cal. 2022) ......................................................................................9

*Cox Commc'ns Inc. v. Sony Music Entm't*,
  No. 24-171 (U.S. May 27, 2025) ..............................................................................................14

*Doe 1 v. GitHub*,
  No. 22-cv-06823, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024)................................................14

*Election Integrity Proj. Calif., Inc. v. Weber*,
  113 F.4th 1072 (9th Cir. 2024) ..............................................................................................2, 3

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ...................................................................................4

*Erickson Prods., Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) .....................................................................................4

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
    23 F.4th 1195 (9th Cir. 2022) ...................................................................................2

*First Call Int'l, Inc. v. S&B Glob., Inc.*,
    No. 23-cv-10016, 2024 WL 4404429 (C.D. Cal. July 5, 2024)...................................2

*Free Speech Sys., LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)...................................................................................................4

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) ...................................................................................2

*Harrington v. Pinterest, Inc.*,
    No. 20-cv-05290, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)............................12

*Kadrey v. Meta Platforms, Inc.*,
    No. 23-cv-03417, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) .................................13

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ...................................................................................14

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ...........................................................................3, 4, 5

*McDougal v. Cty. of Imperial*,
    942 F.2d 668 (9th Cir. 1991) .....................................................................................2

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)............................................................................................4, 5, 6

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .....................................................................................4

*Philpot v. Alternet Media, Inc.*,
    No. 18-cv-04479, 2018 WL 6267876 (N.D. Cal. Nov. 30, 2018)............................12

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
    360 F. Supp. 3d 1039 (S.D. Cal. 2019)....................................................................14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ........................................................................................................4

*Splunk Inc. v. Cribl, Inc.*,
    662 F. Supp. 3d 1029 (N.D. Cal. 2023) .........................................................................9

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ....................................................................................10, 12

*The Intercept Media, Inc. v. OpenAI, Inc.*,
    No. 24-cv-1515, 2025 WL 556019 (S.D.N.Y. Feb. 20, 2025) ...................................10, 13

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) .......................................................................10, 12

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
    No. 19-cv-02778, 2019 WL 5213005 (N.D. Cal. Oct. 16, 2019) ..................................2

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023) ....................................................................................4, 5

**RULES**

Rule 11 ..........................................................................................................................7

Rule 12(b)(6) ..........................................................................................................1, 13, 14

Rule 1202(b) ..........................................................................................................8, 9, 12

**OTHER AUTHORITIES**

5 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1357 (1969) ...........................................2

1  **I.     INTRODUCTION**

2       Plaintiffs claim Anthropic has "recycled" arguments from its successful Rule 12(b)(6)

3  motion. But if the current Motion sounds familiar, it is because Plaintiffs' First Amended

4  Complaint ("FAC") suffers from the same deficiencies as their original complaint, even after

5  over a year of discovery. For each of their claims other than direct infringement, Plaintiffs rely

6  on conclusory, generalized, or speculative allegations—none of which meets the requirement to

7  plausibly allege the predicate facts associated with those claims. In particular: the FAC still fails

8  to plausibly allege Anthropic knew, before this lawsuit, of any specific instance where a third

9  party caused Claude to deliver a copy of Plaintiffs' lyrics. It still fails to plausibly allege that

10  Anthropic knew removing or altering copyright management information ("CMI") would

11  conceal or enable anyone's infringement, beyond what is inherently possible whenever CMI is

12  removed. And it still fails to plausibly allege that Anthropic received a direct financial benefit

13  from any third-party infringements.

14       The Court should decline Plaintiffs' invitation to ignore the applicable legal standards

15  and should dismiss from this case, with prejudice, the three causes of action that Plaintiffs have

16  again failed to plausibly plead: (1) Plaintiffs' contributory infringement claim, for failure to

17  plead Anthropic knew of specific infringing acts; (2) Plaintiffs' CMI removal claim, for failure

18  to plead Anthropic knew removing CMI would conceal, induce, enable, or facilitate

19  infringement; and (3) Plaintiffs' vicarious infringement claim, for failure to plead a direct

20  financial benefit from any third-party infringements.

21  **II.    ARGUMENT[1]**

22       **A.     Plaintiffs rely on an outdated standard for granting a motion to dismiss.**

23       Plaintiffs' entire opposition relies on an outdated standard that has been superseded by

24  Supreme Court precedent. According to Plaintiffs, motions to dismiss are "viewed with disfavor"

25  _____

26  [1] Plaintiffs incorrectly suggest Anthropic's targeted motion to dismiss concedes certain claims.
    As Plaintiffs know (*see* Dkt. 207 at 16–26), Anthropic does dispute the merits of Plaintiff's core

27  direct infringement claims, and will address the many deficiencies with those claims at a later
    stage in the case. *See generally Bartz v. Anthropic PBC*, No. 24-cv-05417, ECF No. 122 (N.D.
    Cal. Mar. 27, 2025) (arguing at summary judgment that use of copyrighted materials to train

28

1    and "rarely granted." Opp. 4. But that is not the law, and their citation to *Ernst & Haas Mgmt.*

2    *Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022), for this proposition is misplaced. That

3    case quotes language that can be traced back (through several citations) to a 1969 treatise written

4    when notice pleading was still in force, before the Supreme Court articulated the plausibility

5    standard applied to pleadings in federal court today. *See id.* at 1199 (citing *McDougal v. Cty. of*

6    *Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) (citing *Hall v. City of Santa Barbara*, 833 F.2d

7    1270, 1274 (9th Cir. 1986) (citing 5 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1357, at 598

8    (1969)))).[2] Neither that case nor Plaintiffs "endeavor to explain why the 'viewed with

9    disfavor'/'rarely granted' concept was still viable post-*Twombly*/*Iqbal*." *First Call Int'l, Inc. v.*

10    *S&B Glob., Inc.*, No. 23-cv-10016, 2024 WL 4404429, at *1 n.3 (C.D. Cal. July 5, 2024). And

11    courts in the Ninth Circuit have routinely granted motions to dismiss under the standard set forth

12    by the Supreme Court in *Twombly* and *Iqbal*. *See, e.g.*, *Anderson v. Intel Corp. Inv. Policy*

13    *Comm.*, – F.4th —, 2025 WL 1463295, at *3, *7–8 (9th Cir. May 22, 2025) (affirming dismissal

14    with prejudice); *Election Integrity Proj. Calif., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir.

15    2024) (same).

16        Plaintiffs also make a policy argument that a laxer pleading standard should apply to

17    cases advancing "novel legal theor[ies]." Opp. 5. But they cannot evade the plausibility standard

18    the Supreme Court established in *Twombly* and *Iqbal*, no matter how "novel" the allegations may

19    be. *See Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778, 2019 WL

20    5213005, at *5 (N.D. Cal. Oct. 16, 2019) (finding "unpersuasive" the argument that plaintiffs'

21    complaint "should not be dismissed because they are asserting a novel legal theory"). Rather,

22

23    Claude is fair use). Anthropic also disputes that Plaintiffs have pleaded facts showing that third
      parties "repeatedly and systematically" elicited infringing copies of their lyrics from Claude.
      Opp. 1. For the vast majority of asserted works, and after over a year of extensive discovery,
24    Plaintiffs still point only to their own investigation of Claude, rather than alleged outputs caused
      by any third party's prompts. Anthropic has not moved to dismiss Plaintiffs' secondary liability
25    claims on this basis but does not concede any third-party act of infringement, let alone one for
      each and every one of the 499 works in suit.

26    [2] Today's edition of that same treatise clarifies it was under the *pre-Twombly* standard that a
27    motion to dismiss "*was* rarely granted." 5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1357
      (4th ed.) (section updated May 2025) (emphasis added).

28

ANTHROPIC'S REPLY ISO MOTION TO DISMISS FAC
                                                    CASE NO. 5:24-cv-03811-EKL

under *Twombly* and *Iqbal*, a motion to dismiss must be granted "if the plaintiff's well-pleaded allegations, taken as true, fail to plausibly show a legal violation." *Election Integrity Proj. Calif.*, 113 F.4th at 1081 (also stating that "[i]f the allegations of the complaint are merely consistent with a defendant's liability … the complaint will fall short of plausibly alleging a legal violation" (cleaned up)). Plaintiffs' allegations fail to plausibly allege the secondary infringement and CMI claims under established legal standards, and those claims should be dismissed with prejudice.

> **B.    The FAC fails to plausibly allege Anthropic had knowledge of specific infringing activity, as the law requires for contributory liability.**

Plaintiffs still have not plausibly pleaded that Anthropic knew, before this lawsuit, about specific instances where Claude users elicited infringing copies of Plaintiffs' lyrics. Instead, they attempt to rely on an erroneous legal standard for contributory infringement, supported only by conclusory, speculative, or generalized allegations regarding Anthropic's awareness of potential infringement by Claude users. Plaintiffs' contributory infringement claims should therefore be dismissed. *Election Integrity Proj. Calif.*, 113 F.4th at 1081 ("Conclusory statements, unreasonable inferences, and 'legal conclusion[s] couched as … factual allegation[s],' are not well-pleaded." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

> **1.    Under Ninth Circuit law, Plaintiffs must plead Anthropic actually knew of specific instances of infringement.**

Plaintiffs' efforts to salvage their contributory copyright infringement claim begin with two independent legal errors, each of which contradicts controlling Ninth Circuit case law in *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013), and its progeny.

<u>First</u>, Plaintiffs rely on an erroneous knowledge standard, arguing that it is sufficient to allege facts showing that Anthropic "should have known" or "had reason to know" of users' alleged generation of infringing outputs. Opp. 5–7. But as the Court recognized in dismissing Plaintiffs' original complaint, Ninth Circuit law requires Plaintiffs to "allege 'actual knowledge of specific acts of infringement'" of their lyrics. Dkt. 322 at 7 (citing *Luvdarts*, 710 F.3d at

1072). Plaintiffs' argument to the contrary relies on a decision—*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)—that predated the Supreme Court's clarification of the knowledge standard in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 933–34 (2005). Since *Grokster*, the Ninth Circuit cases that most squarely have addressed the knowledge standard for contributory copyright infringement have held that a plaintiff must demonstrate the defendant's "actual knowledge" of or "willful blindness" to "specific" infringements. *See, e.g.*, *Luvdarts*, 710 F.3d at 1072–73; *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017); *see also BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018) (recognizing that *Luvdarts* "clarified" the knowledge standard in the Ninth Circuit after *Ellison*). Conversely, the post-*Grokster* cases Plaintiffs cite reference the "reason to know" standard without examining or even relying on it. *See* Opp. 6; *see also Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 832 (9th Cir. 2019) (recognizing that a "should have known" jury instruction could be "erroneous," even if not "plainly" so, in light of conflicting case law). Even the Ninth Circuit form jury instruction on which Plaintiffs rely acknowledges that a system operator may be liable for contributory infringement "if it has *actual knowledge* that specific infringing material is available using its systems." Comment to Ninth Circuit Model Civil Jury Instruction 17.21 (cited at Opp. 5) (emphasis added) (citing *Giganews*, 847 F.3d at 671).[3]

Moreover, Plaintiffs' rule would run directly contrary to even more recent Supreme Court precedent in the patent context. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–71 (2011) (holding contributory patent infringement requires a showing of actual knowledge or willful blindness, and rejecting a lesser "should have known" standard). Courts regularly rely on patent law principles to inform the scope of contributory copyright infringement liability. *See, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,

---

[3] Contrary to Plaintiffs' argument (Opp. 6), Anthropic did not "concede[]" that "constructive knowledge" is sufficient by stating that the allegations in the FAC "do[] not show that Anthropic had any actual *or* constructive knowledge[.]" Mot. 6 (emphasis added).

439–42 (1984); *Grokster*, 545 U.S. at 932, 936–37; *Cox*, 881 F.3d at 308–09. The Court should reject Plaintiffs' outdated and legally erroneous knowledge standard for secondary infringement.

Second, Plaintiffs continue to point to Anthropic's alleged knowledge of the generalized possibility that Claude could be used to generate infringing outputs. *See* Opp. 4–5. But the law is clear—Plaintiffs must plausibly allege "knowledge of *specific infringers or instances of infringement*." *Y.Y.G.M.*, 75 F.4th at 1001 (emphasis added); *see also Luvdarts*, 710 F.3d at 1072–73. As discussed further below in section II.B.2, the FAC does neither.

Finally, Plaintiffs' attempt to distinguish *Luvdarts* fails. They argue *Luvdarts* is inapplicable because it involved "infringing content supplied by mobile phone users over which the defendant mobile wireless carriers had little or no control," whereas Anthropic purportedly had more control over its users' activity on its systems. Opp. 6. But Plaintiffs cite no valid authority for their apparent argument that the standard for establishing knowledge for a contributory infringement claim varies based on the technology at issue.[4] *Luvdarts* articulates the correct standard in the Ninth Circuit for all contributory copyright infringement claims and applies here.

### 2.    The allegations in the FAC do not plausibly show Anthropic knew of specific instances of third-party infringement.

The five categories of allegations Plaintiffs reference in their Opposition do not, individually or together, plausibly show Anthropic had knowledge of *specific* infringements of Plaintiffs' works by third parties. They fail for a variety of reasons: because they are conclusory, because they require the Court to draw unreasonable and speculative inferences, or because, at best, they plead nothing more than a general awareness of the potential for infringement by Claude users.

---

[4] Plaintiffs' attempt at distinguishing *Luvdarts* also appears to confuse Plaintiffs' direct infringement claims with their secondary infringement claims. If Anthropic "is supplying the infringing output" (Opp. 6), that sounds in direct infringement. While Plaintiffs may plead alternative theories of liability, their contributory infringement claims must be grounded in allegations of infringing conduct by third parties—not by Anthropic.

<u>First</u>, Plaintiffs allege generally that "Anthropic intended, designed, and trained Claude to respond to user prompts requesting copies of specific Publishers' lyrics, and it confirmed that Claude operated in the real world as it intended." Opp. 7. That is "a legal conclusion couched as a factual allegation"—namely, that Anthropic intended its users to engage in infringement. *Iqbal*, 556 U.S. at 678; *compare Grokster*, 545 U.S. at 930 ("One infringes contributorily by intentionally inducing or encouraging direct infringement[.]"). There are no actual facts alleged to support that conclusion, which is implausible in light of the other, specific allegations about guardrails Anthropic has implemented to prevent exactly this type of use. *E.g.* FAC ¶¶ 119–24. At most, Plaintiffs' allegation supports the conclusion that Anthropic knew that users *could* use Claude to infringe, rather than demonstrating that Anthropic knew that there actually *were* specific instances of third-party infringement.

Plaintiffs point to two examples where individuals affiliated with Anthropic (a temporary crowdworker in one instance, and cofounder Tom Brown in the other) each prompted Anthropic's models for lyrics to one of Plaintiffs' songs in the course of finetuning and testing. Opp. 3 (citing FAC ¶¶ 110, 113). It is not reasonable to infer, from those two instances, that (i) any third-party user later prompted Claude for those same song lyrics, or lyrics from any other asserted work, (ii) Claude provided those lyrics in response to the third-party prompts, rather than refusing the request for copyrighted material as it was designed to do, *and* (iii) Anthropic knew of that specific, unnamed third-party activity. To infer Anthropic had the requisite knowledge from those examples would be an unwarranted "leap in logic." *AK Futures LLC v. LCF Labs Inc.*, No. 21-cv-02121, 2022 WL 17883832, at *5 (C.D. Cal. Dec. 7, 2022).

<u>Second</u>, Plaintiffs allege—again, generally—that "Anthropic closely monitored and studied Claude user prompts and output, including identifying specific prompts and output copying Publishers' lyrics." Opp. 7. The only concrete example of this alleged study in the FAC is the "Clio" paper. *Id.* 9 (citing FAC ¶ 117 & n.34). And as Anthropic explained, nothing in that study supports Plaintiffs' bare assertion that Anthropic's assessment of Claude usage led it to identify specific prompts or outputs containing Plaintiffs' lyrics—including because, by design,

the Clio study did not look at individual user prompts or outputs. Mot. 6. Since that study, at its core, contradicts their allegations, Plaintiffs resort to arguing at a high level that Anthropic's (aggregated) "analysis of users' prompts and resulting outputs necessarily" somehow gave it knowledge of specific infringements "given the *large volume* of such infringements." Opp. 9 (emphasis added). No factual allegations in the FAC support that speculation. And a year into discovery, Plaintiffs have found no evidence to support it, or they certainly would have included it in the FAC. Instead, the allegedly infringing outputs identified in the FAC as prompted by third parties unaffiliated with Plaintiffs are limited to ten examples—hardly a "large volume." *See* FAC ¶¶ 9, 87–89, 94, 104–05.

Third, Plaintiffs argue that "after detecting particular instances of Claude output infringing Publishers' lyrics, and in an effort to feign respect for copyright, Anthropic implemented pre-suit guardrails (albeit extremely ineffective ones) to block certain Claude output copying Publishers' lyrics." Opp. 7. This is not true, but more importantly for purposes of this Motion, this allegation appears nowhere in the FAC. *Cf.* FAC ¶ 121 (saying nothing about Anthropic implementing guardrails because it had detected *specific* infringements of Plaintiffs' lyrics). Nor could there be an allegation, supported by a Rule 11 factual basis, that Anthropic implemented copyright guardrails prior to this suit *because* it had "detect[ed] particular instances of Claude output infringing Publishers' lyrics." Opp. 7. That is speculation that "stops short of the line between possibility and plausibility[.]" *Iqbal*, 556 U.S. at 678.

Fourth, Plaintiffs claim "Anthropic learned, through public discussions in online forums it monitored, that Claude users generated output copying specific Publishers' lyrics and circumvented guardrails." Opp. 7. As far as Anthropic can tell, this allegation is based on a *single* instance of a Reddit user posting about Claude outputting two lines of one of Plaintiffs' songs (within the context of the original short story the user had asked Claude to write). FAC ¶ 104. Plaintiffs invite the Court to make a number of speculative inferences: that Anthropic employees (i) must have seen that post, (ii) must have known that the user was not authorized to use the "House at Pooh Corner" lyrics, and (iii) must have known that the limited excerpt of the

1    lyrics Claude generated as part of an original short story was infringing (and not, *e.g.*, de minimis

2    or fair use). Those assumptions do not clear the bar between "possibility" and "plausibility."

3    *Iqbal*, 556 U.S. at 678. But even if the Court disagrees with Anthropic and finds Plaintiffs' chain

4    of inferences reasonable to allege Anthropic knew of a specific third-party infringement of

5    "House at Pooh Corner," that would not establish Anthropic knew of specific infringements of

6    *each* of the 499 works in suit, none of the rest of which was alleged to be the subject of any

7    public discussion in any forum.

8        <u>Fifth</u>, Plaintiffs allege "Anthropic indemnified its users for the infringement it knew was

9    taking place." Opp. 7. Again, at best, this would support an inference that Anthropic was

10   generally aware of the possibility of third-party infringement. But Plaintiffs make no attempt to

11   explain how having an indemnification policy reveals that Anthropic knew of specific

12   infringements of Plaintiffs' lyrics, or why, even if an out-of-circuit district court has looked to

13   indemnification policies to show general "knowledge of infringement in the context of § 1202(b)

14   claims," this Court should equate that with knowledge sufficient to establish contributory

15   infringement. *Id.* 11. The indemnification policy is especially inapt, as Plaintiffs seem to

16   recognize, because it excludes claims against customers based on uses of Claude in a manner that

17   the customer "knows or reasonably should know" is copyright infringement. FAC ¶ 127 (quoting

18   Anthropic's Commercial Terms of Service). It expressly does not apply to users' misuse of

19   Claude but rather protects users from claims based on Anthropic's conduct—the inverse of a

20   secondary infringement claim against Anthropic.

21         **3.**      **Plaintiffs' cited cases do not save their claim.**

22       The cases Plaintiffs cite do not support their argument that their allegations suffice to

23   state a contributory infringement claim. For example, *Andersen v. Stability AI Ltd.* dealt with an

24   inducement claim—not a contributory infringement claim requiring the plaintiff to allege

25   knowledge of specific infringements. 744 F. Supp. 3d 956, 968–69 (N.D. Cal. 2024). And in

26   *BMG Rights Management (US) LLC v. Joyy Inc.*, the court denied a motion to dismiss a

27   contributory infringement claim where plaintiff alleged that it made over 1,500 takedown

28

    

requests to the defendant about specific infringing content. 716 F. Supp. 3d 835, 843 (C.D. Cal. 2024); *see also* Dkt. 322 at 7 (distinguishing *BMG Rights Management* and *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023)); *cf. BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 644 F. Supp. 3d 602, 609 (C.D. Cal. 2022) (dismissing an earlier complaint because plaintiff identified "examples of infringement that *it* is aware of," but not "any individual copyrighted song that *Defendants* knew was being infringed," which supported only "generalized knowledge of the possibility of infringement" (emphasis added)). Plaintiffs have made no such allegations here.

In sum, Plaintiffs' allegations at most support an inference that Anthropic knew, or should have known, that some third-party infringement of some unspecified work or works could occur via Claude. But the FAC lacks sufficient factual allegations that Anthropic knew of (or was willfully blind to) specific instances of infringement of Plaintiffs' asserted works to support a claim. For these reasons, Plaintiffs' contributory infringement claims must be dismissed.

### C.    Plaintiffs have failed to plausibly allege the second level of scienter required for a CMI removal claim.

Regarding the CMI removal claim, Plaintiffs misunderstand Anthropic's Motion. At this stage, Anthropic is only challenging one specific issue: Plaintiffs' failure to allege the second scienter requirement under section 1202(b). Although Anthropic expects that it will ultimately show it did not intentionally remove or alter CMI or distribute lyrics knowing CMI had been removed, Anthropic does not seek to dismiss Plaintiffs' section 1202(b) allegations as legally insufficient on these alternative grounds.

Even setting aside the first of the dual scienter elements, the FAC does not adequately plead the second. Plaintiffs argue the FAC alleges that Anthropic knew removing CMI would both conceal its own alleged infringement and help third parties infringe.[5] But the FAC fails on both counts.

---

[5] The Opposition confirms that Plaintiffs do not attempt to allege Anthropic knew removing CMI would "induce, enable, [or] facilitate" its own infringement.

1

2

> ### 1. Plaintiffs still fail to plausibly allege removing CMI would conceal any alleged infringement by Anthropic, let alone that Anthropic knew it would.

3      By definition, "concealing" infringement makes it harder to identify or detect. The FAC

4   contains no plausible allegation that removing CMI from training data has made it more difficult

5   for Plaintiffs to detect alleged copies of their works in Claude's outputs. There is no allegation,

6   for example, that Plaintiffs rely on CMI in Claude outputs to identify and police alleged

7   infringement of their lyrics (as opposed to, say, searching for words in the lyrics). To the extent

8   Plaintiffs' argument is that infringement is inherently "concealed" wherever an output fails to

9   identify title, author, or other CMI, that is a "general possibility that exists whenever CMI is

10   removed," and is not sufficient to satisfy the pleading standard. *Tremblay v. OpenAI, Inc.*, 716 F.

11   Supp. 3d 772, 779 (N.D. Cal. 2024) (citing *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th

12   Cir. 2018)).

13      Plaintiffs plead nothing to suggest that removing CMI has made it any more difficult for

14   anyone to recognize alleged copies of their works in Claude's outputs, let alone that Anthropic

15   knew removing CMI would have that effect. *Cf. The Intercept Media, Inc. v. OpenAI, Inc.*, No.

16   24-cv-1515, 2025 WL 556019, at *8 (S.D.N.Y. Feb. 20, 2025) (rejecting theory that OpenAI

17   knowingly concealed its own infringement because "it is difficult to understand how the removal

18   of CMI from articles collected in a non-public database 'conceals' infringement"). And indeed,

19   Plaintiffs seem to have had no difficulty identifying alleged infringements of their works in

20   Claude outputs they elicited.

21

22

> ### 2. Plaintiffs still fail to plausibly allege Anthropic knew removing CMI would induce, enable, facilitate, or conceal third-party infringement during output.

23      Plaintiffs' claims about the effect of removing CMI on third-party infringement are

24   equally flawed. Plaintiffs point to examples of "Claude users' requesting specific Publishers'

25   lyrics and receiving output copying those lyrics." Opp. 20. But they fail to explain how removing

26   CMI actually facilitated this behavior, let alone how Anthropic knew it would. Instead, they

27   simply assert—without explanation—that Anthropic's removal of CMI somehow "induces,

28

enables, and facilitates" this alleged infringement. *Id.* This conclusory statement does not explain *how* CMI removal either (1) makes it more likely for users to prompt Claude for allegedly infringing lyrics or (2) makes it more likely that Claude would produce outputs containing allegedly infringing lyrics. Absent such an explanation, Plaintiffs have resorted to mere speculation.

What Plaintiffs appear to argue is that Anthropic knew removing CMI would keep users from *learning* that song lyrics are copyrighted. *Id.* 21 ("Only complete CMI will alert Claude's users that Publishers' song lyrics are not owned by Anthropic and are still subject to copyright protection."). That does not speak to inducement, enablement, facilitation, or concealment of alleged infringement by Anthropic's users. Plaintiffs' related argument that Claude is merely "parrot[ing]" user language when it provides the title and author of song lyrics in its outputs also does not support an allegation of concealment. *Id.* It is difficult to understand how the removal of CMI could "conceal" infringement by misleading a user that Anthropic owns song lyrics in an output where the user already knew the "song title or artist name" well enough to prompt Claude with that information. *Id.*

Finally, Plaintiffs' last-ditch argument about DuckDuckGo does not seem to be about Anthropic's knowledge at all. Plaintiffs simply claim that when users access Claude through DuckDuckGo, any infringing outputs are downloaded to users' devices, which Plaintiffs say infringes their right of reproduction. *Id.* 21–22. There is no attempt to explain how Anthropic's removal of CMI supposedly facilitated or enabled this alleged method of infringement, or that Anthropic knew it would.

### 3. The Court should follow *Tremblay*'s lead and decline Plaintiffs' invitation to adopt out-of-circuit decisions' flawed reasoning.

The Court should look to *Tremblay*, a directly on-point case from this District, as a model for analyzing the pleading standard applied to the second scienter element. Although the claims there focused on training only, the plaintiffs argued (similar to Plaintiffs here) that OpenAI knew its removal of CMI during training meant that "ChatGPT users will not know *if any output is*

1   *infringing.*" *Tremblay*, 716 F. Supp. 3d at 779 (emphasis added). That was not enough to state a

2   section 1202(b) claim: the court held "Plaintiffs have not shown how omitting CMI in the copies

3   used in the training set gave Defendants reasonable grounds to know that ChatGPT's output

4   would induce, enable, facilitate, or conceal infringement." *Id.* The Court should reach the same

5   result here.

6          Plaintiffs' criticism of *Tremblay* for relying on binding Ninth Circuit authority misses the

7   mark. It is true that the posture of *Stevens v. Corelogic* was summary judgment, not a motion to

8   dismiss, and Anthropic does not argue here that Plaintiffs must establish a "pattern of conduct"

9   or "modus operandi" as a matter of law at the pleading stage. 899 F.3d at 674. But *Stevens*

10  represents the Ninth Circuit's binding articulation of the mental state required for a section

11  1202(b) claim, and "[a]t the pleading stage, the claimant must plead facts plausibly showing that

12  the alleged infringer had" that mental state. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d

13  1162, 1175 (N.D. Cal. 2019). And *Tremblay* is not an outlier; courts in this District have

14  regularly and appropriately looked to the standard set forth in *Stevens* in deciding motions to

15  dismiss. *See, e.g.*, *Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*, No. 23-cv-06012, 2024

16  WL 3522196, at *7 (N.D. Cal. July 23, 2024); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853,

17  871–72 (N.D. Cal. 2023); *Harrington v. Pinterest, Inc.*, No. 20-cv-05290, 2022 WL 4348460, at

18  *5–6 (N.D. Cal. Sept. 19, 2022); *Philpot v. Alternet Media, Inc.*, No. 18-cv-04479, 2018 WL

19  6267876 at *5 (N.D. Cal. Nov. 30, 2018).

20         The three recently decided generative AI cases that Plaintiffs cite do not save their claim:

21  two of them are from outside the Ninth Circuit and suffer from flawed reasoning, and the third

22  does not counsel against dismissal here. In *New York Times Co. v. Microsoft Corp.*, the court in

23  the Southern District of New York found plaintiffs had adequately pleaded the second element of

24  scienter by alleging that OpenAI had publicly acknowledged that it used copyrighted works in

25  training and that its models were "capable of distributing unlicensed copies of copyrighted

26  works." No. 23-cv-11195, 2025 WL 1009179, at *17 (S.D.N.Y. Apr. 4, 2025). Similarly, in *The*

27  *Intercept Media*, the court was persuaded by allegations that OpenAI knew both that ChatGPT

28

1   regurgitated copyrighted works and that "some users would likely infringe copyright." 2025 WL

2   556019, at *8. But critically, neither court explained how those allegations showed OpenAI

3   knew that *removing CMI* in training data would conceal such infringement or make it any more

4   likely to occur. This Court should not follow those cases' faulty reasoning.

5          Nor does *Kadrey v. Meta Platforms, Inc.*, from this District, support Plaintiffs' arguments

6   here. There, the court first found that plaintiffs had not plausibly alleged that Meta's removal of

7   CMI from training data enabled or facilitated infringement, either by Meta or by anyone else.

8   No. 23-cv-03417, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025) (finding "that removing CMI

9   might make the plaintiffs' books work better as training data does not mean that removing CMI

10  made it easier for Meta to commit copyright infringement" and "the complaint does not

11  adequately allege that the CMI removal would or did aid infringement by anyone other than

12  Meta"). While it was "a closer call," the court did find that plaintiffs adequately alleged Meta

13  intended to "conceal copyright infringement"—but for reasons not alleged here. *Id.* at *1–2. The

14  court was persuaded by allegations that Meta "knew that Llama was especially 'prone' to

15  memorizing and generating outputs *of CMI* unless CMI was removed," along with several other

16  allegations. *Id.* at *2 (emphasis added). By contrast, Plaintiffs here do not allege, as the *Kadrey*

17  plaintiffs did, that Anthropic knew Claude was "especially prone" to memorizing and

18  regurgitating **CMI** specifically "unless CMI was removed." *Id.*

19         In sum, Plaintiffs have made only conclusory and speculative allegations in support of

20  their claim that Anthropic knew removing CMI from training data *would* conceal or aid

21  infringement. Those unexplained allegations fail to state a plausible claim.

22  **D.     Plaintiffs fail to plausibly allege a direct financial benefit for purposes of
23          their vicarious liability claims.**

24         As explained in the Motion, and for purposes of preserving the argument for future

25  review, Anthropic maintains its position regarding the deficiency in Plaintiffs' vicarious liability

26  claim. Mot. 7. For the reasons articulated in the briefing and hearing on Anthropic's initial Rule

27  12(b)(6) motion, and again in the current Motion, Anthropic believes Plaintiffs do not plausibly

28

allege Anthropic received a direct financial benefit from alleged third party infringements of Plaintiffs' works. *See* Dkt. 205 at 8–11; *see also* Br. for U.S. as Amicus Curiae, *Cox Commc'ns Inc. v. Sony Music Entm't*, No. 24-171, at 19–22 (U.S. May 27, 2025) ("To establish a defendant's vicarious liability, a copyright plaintiff must show that the defendant financially benefits from the acts of infringement and not . . . merely from the broader operation in which infringement occurs.").

Anthropic respects that the Court found otherwise on its first Rule 12(b)(6) motion, but Plaintiffs are wrong to suggest that the Court must now deny this Motion "because the facts on [the vicarious liability claim] have not been amended" in the FAC. Opp. 14 (citing *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1047 (S.D. Cal. 2019)). Rather, nothing precludes the Court from coming to a different conclusion this time. *See Doe 1 v. GitHub*, No. 22-cv-06823, 2024 WL 235217, at *8–9 (N.D. Cal. Jan. 22, 2024) (dismissing DMCA claim in Second Amended Complaint after the court denied a motion to dismiss the same claim in First Amended Complaint).

## III.    CONCLUSION

This is Plaintiffs' second try at pleading these causes of action in a court with jurisdiction to hear them. They have had the benefit of over a year of fact discovery. If Plaintiffs could plead facts sufficient to state their claims, they would have. Allowing them a third opportunity would be futile and a waste of the parties' and Court's time. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Anthropic therefore respectfully requests that the Court grant its Motion and dismiss Plaintiffs' claims for (1) contributory infringement, (2) removal or alteration of CMI, and (3) vicarious infringement, each with prejudice.

//
//
//
//
//

Dated:  May 30, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Joseph R. Wetzel*
 Joseph R. Wetzel (SBN 238008)
  *joe.wetzel@lw.com*
 Andrew M. Gass (SBN 259694)
  *andrew.gass@lw.com*
 Brittany N. Lovejoy (SBN 286813)
  *britt.lovejoy@lw.com*
 Ivana Dukanovic (SBN 312937)
  *ivana.dukanovic@lw.com*
 Rachel S. Horn (SBN 335737)
  *rachel.horn@lw.com*
 505 Montgomery Street, Suite 2000
 San Francisco, California 94111
 Telephone: +1.415.391.0600

 Sarang V. Damle (*pro hac vice*)
  *sy.damle@lw.com*
 Sara Sampoli (SBN 344505)
  *sara.sampoli@lw.com*
 555 Eleventh Street NW, Suite 1000
 Washington, DC 20004
 Telephone: +1.202.637.2200

 Allison L. Stillman (*pro hac vice*)
  *alli.stillman@lw.com*
 1271 Avenue of the Americas
 New York, New York 10020
 Telephone: +1.212.906.1747

 *Attorneys for Defendant Anthropic PBC*