[Counsel on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **JOINT DISCOVERY DISPUTE STATEMENT REGARDING PUBLISHERS' RFPS 101 AND 103** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

Pursuant to Section 8 of the Court's Civil Standing Order, and L.R. 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement. The Parties seek the Court's intervention in resolving two disputes arising from Publishers' RFPs 101 and 103, Ex. 1, and Anthropic's responses and objections to those requests, Ex. 2. The Parties' joint chart is attached as Ex. 3. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference on June 17 and July 22, 2025 and by email. However, the Parties have been unable to reach agreement on these issues. The current fact discovery deadline is 45 days away. As a compromise, Publishers propose that, on RFP 101, with respect to Anthropic employee Claude accounts associated with non-@anthropic.com email addresses, Publishers will identify a list of Anthropic employees to search (not to exceed 200); on RFP 103, if Anthropic does not produce the requested user information, it should be precluded from making any argument based on the user information it failed to disclose, including arguing that prompts were submitted by Publishers, not third-party users, *see* Fed. R. Civ. P. 37(c)(1). As to RFP 101, Anthropic proposes including the personal accounts for founders Jared Kaplan and Tom Brown in the search it is running across all Claude accounts associated with @anthropic.com emails ("song" OR "songs" OR "lyric" OR "lyrics"). For RFP 103, Anthropic proposes that if Plaintiffs provide a list of their agents, along with email addresses, Anthropic will provide identifying information for all records (not just any within the 33 specified) associated with Plaintiffs' agents.

I. **Publishers' Position**

Publishers have followed up on earlier discovery disputes by serving narrowed, targeted requests for two categories of key information: (A) records of how Anthropic's own employees have used Claude to seek or generate lyrics and songs, which goes directly to Claude's purpose and use; and (B) user information for a subset of Claude prompt and output records, all of which plainly copy Publishers' lyrics and go to Anthropic's direct and secondary liability. Publishers tailored these narrow requests to address Anthropic's prior burden objections and the Court's earlier discovery rulings. But Anthropic has refused to respond to key aspects of these requests.

### A. Publishers are entitled to discovery regarding Anthropic's own usage of Claude to seek and generate lyric- and song-related output (RFP 101).

First, Publishers have requested that Anthropic produce documents sufficient to show "all Claude prompts and output relating to lyrics or songs submitted or received by Anthropic employees." Ex. 1 (RFP 101). This targeted discovery as to Anthropic's own usage of Claude is directly relevant and proportional to Publishers' allegation that "Anthropic intended, expected, and designed its AI models to respond to prompts for Publishers' and others' lyrics and to copy the lyrics in output—as a feature, not a bug," ECF No. 337 ¶ 12, Claude's purpose and use more broadly, Anthropic's knowledge that its users would use Claude in the same ways, its willfulness, its fair use defense (including market harm arising from such output), and other issues.[1]

Anthropic, however, has refused to fully respond to RFP 101. Instead, Anthropic has stated that it will only search for and produce responsive Anthropic employee Claude prompt and output records for accounts specifically associated with "@anthropic.com" email addresses—***not*** for any Anthropic employee Claude accounts associated with any other email addresses. That is improper.

By way of background, it bears noting that RFP 101 is focused on a very different issue than the Court-ordered sample the parties are undertaking in response to Publishers' RFPs 50-51. Specifically, RFP 101 is aimed at understanding Claude usage by Anthropic's ***own*** employees—which goes to Anthropic's intent as to how the AI model would and should be used (among other issues)—while the separate Claude sample looks at "typical" Claude usage by third-party users.

Indeed, it is hard to imagine better evidence of how Anthropic intended for Claude to be used than the ways in which its own employees actually ***did*** use Claude during development, training, and real world use. To the extent those Claude records show Anthropic's employees used Claude to seek or generate lyric- or song-related output, that is directly probative of Anthropic's intent and knowledge. *See, e.g.*, *EMI Christian Music Grp. v. MP3tunes, LLC*, 844 F.3d 79, 90 (2d

---

[1] This discovery is also necessary to test and rebut Anthropic's representations that, among other things, it "never wanted Claude to output lyrics . . . [t]hat is not the design of the product," Hr'g Tr. 41:23-24 (Nov. 25, 2024); "[Claude] is not designed to output existing works," *id.* at 49:8-9; "the display or output of lyrics is not a desired feature of this product," *id.* at 103:23-24; "[Claude] is not designed to output copyrighted material," ECF No. 285 at 2; and "using Claude to find song lyrics is atypical and Claude is not designed for such a purpose," ECF No. 328 at 2.

Cir. 2016) (jury could infer knowledge from fact that defendant executives personally used service to copy plaintiffs' works). In fact, that is *precisely* what the limited records produced to date show:

- In January 2023, numerous Anthropic employees discussed prompting Claude for copies of Publishers' lyrics and other lyrics. One Anthropic employee prompted the AI model to "write a coherent poem made up of fragments" of "lyrics from the Beatles, Bob Dylan, and other classics from the 60s/70s," while another entered a series of queries—including "What are the lyrics to we found love by Calvin Harris?"—showing Anthropic was testing and confirming the AI model's ability to respond to requests for lyrics. ECF No. 337 ¶ 112.

- In February 2023, a month before Anthropic released Claude to the public, Anthropic's co-founder and chief compute officer Tom Brown queried, "@Claude what are the lyrics to desolation row by [Bob] Dylan?"—a Work in Suit in this case. *Id.* ¶ 113.

- Similarly, temporary employees Anthropic hired to finetune its AI models at its direction repeatedly queried the models for lyrics to Works in Suit—including "What are the lyrics to American Pie by Don McLean?"—and also prompted the models to rewrite the songs "Listen" in "Eminem['s] style" and "Not Afraid" in "Beyonce's style" *Id.* ¶¶ 103, 110.

But this handful of records only scratches the surface. Anthropic must produce documents sufficient to show all other Claude prompt and output records for its employees relating to lyrics and songs, which are directly probative of Anthropic's intended use of Claude and other key issues.

There is no legitimate basis for Anthropic's attempt to limit RFP 101 to only those Anthropic employee Claude accounts associated with "@anthropic.com" email addresses.

To the extent Anthropic employees have used Claude to seek and generate lyric and song output, that information is relevant and proportional to Publishers' claims, *regardless* of what email addresses may be associated with the Anthropic employee Claude accounts. If Anthropic's founders used Claude to seek and generate lyrics (as we already know at least one Anthropic founder did), those records are no less probative of Claude's intended purpose and use just because the accounts may be registered under email addresses other than "@anthropic.com." In an effort to hide these records, Anthropic draws a false distinction between "personal" and "business" uses of Claude by Anthropic employees. But Claude is Anthropic's core business product and the focus of this case. Any use of Claude by Anthropic employees relating to songs or lyrics—regardless of how Anthropic tries to frame that use as "personal" or "business"—is necessarily relevant here.[2]

---

[2] In any event, courts routinely order discovery into personal emails where they may contain relevant information. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 12942210, at *5 (N.D. Cal. May 29, 2015).

Further, these Claude records themselves are unquestionably within Anthropic's possession and control, regardless of the email account associated with the Claude account. Indeed, Anthropic has already preserved these records. It can identify its employees' Claude accounts within these records (e.g., by user names), and, to the extent it needs to confirm personal email addresses, it can so do. "Numerous courts have found that corporations have control over their officers and employees and that corporations may be required to produce documents in their possession." *Miniace v. Pac. Maritime Ass'n*, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006).

As another court found, excluding similar records as "somehow outside the company's reach or discovery obligations . . . would gut Rule 34 and make it way too easy for high-level executives to hide evidence." *Tradeshift, Inc. v. BuyerQuest, Inc.*, 2021 WL 1586283, at *2 (N.D. Cal. Apr. 23, 2021); *see also, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, *2 (N.D. Cal. July 12, 2017) (finding defendant "cannot hide responsive documents simply because these officers' work for [defendant] was done using their personal email accounts," and requiring defendant to "produce responsive documents in the custody, control or possession of its officers").

The burden of responding to RFP 101 is also minimal—given the request is limited to Anthropic employees only, not the much larger population of third-party Claude users—and any purported burden is far outweighed by the relevance of this key discovery. Anthropic previously refused to search for similar Claude prompts and output across the larger population of its tens or hundreds of millions of third-party Claude users, arguing that such searches were "technically infeasible and unduly burdensome." There are no similar burdens or technical issues here.

B.  **Publishers are entitled to discovery as to Claude user information for prompts and output that specifically copy Publishers' lyrics (RFP 103).**

Second, rather than seeking user information for all Claude prompts and output produced by Anthropic, Publishers served a more targeted request for only user information associated with a specific set of Claude prompts and output clearly copying Publishers' lyrics. Ex. 1 (RFP 103).

As the Court will recall, Publishers previously challenged Anthropic's across-the-board redaction of all user names, email addresses, and other identifying information for all users associated with Claude prompts and output. *See* ECF No. 310 at 2-7. The Court granted in part

and denied in part Publishers' request, allowing Anthropic to "anonymize" third-party user names and email addresses for the time being, but requiring Anthropic to "maintain for the duration of this litigation a 'key' or some other method to enable it de-anonymize usernames or emails" in the event warranted. ECF No. 318 at 4-5. In that order, the Court found that, while Anthropic's "users have a privacy interest at stake," "these privacy interests [are not] enough to deny discovery into usernames and emails entirely." *Id.* at 4. The Court went on to recognize that Publishers had identified certain "compelling" needs for this discovery. *Id.* Finally, the Court emphasized that, "in limited circumstances, Publishers may be able to show a need for information as to specific users, based on the prompts and outputs related to those users." *Id.* These are those circumstances.

Consistent with that guidance from the Court, Publishers have now followed up with Anthropic by serving a more targeted document request for user information corresponding to a set of 33 specific Claude prompts and output, reflecting clear instances in which users sought and/or received copies of Publishers' lyrics from Claude. That includes the following:[3]

- In Sept. 2023, a Claude user who "want[ed] to sing 'The Boys are Back in Town' by Thin Lizzy" prompted Claude to "print out the lyrics of the song," formatted for karaoke. Claude generated output with a near-verbatim copy of those lyrics. Anthropic_0000003399.

- In Sept. 2023, a different user queried Claude, "What are the lyrics to message in a bottle by the police." Claude generated output copying those lyrics. Anthropic_0000005629.

- In Sept. 2023, another user prompted Claude, "What are the lyrics to scars to your beautiful," and Claude generated output copying those lyrics. Anthropic_0000002159.

- In Oct. 2023, a user queried Claude, "[W]hat are the lyrics to sweet caroline," and Claude responded with output copying those lyrics. Anthropic_0000006275.

These and the similar Claude prompt/output records listed in RFP 103 are key evidence supporting Publishers' claims against Anthropic for direct and secondary infringement. But, while Anthropic has agreed to provide certain corresponding user information (subscription type, payments received), it refuses to identify any user names, email addresses, or billing addresses.

---

[3] Consistent with the Court's standing order, Publishers have not attached the full set of 33 Claude records as exhibits to this submission. To the extent it would aid the Court in addressing this dispute, Publishers would be happy to submit those records to the Court. Also, to be clear, this set of Claude records is not exhaustive, and Publishers anticipate identifying similarly relevant prompts and output based on continuing review of Anthropic's ongoing productions.

Anthropic cannot conceal this relevant user information, which is necessary to understand these plainly relevant Claude prompts and output (for all the reasons detailed more fully in Publishers' prior just dispute statement, ECF No. 310 at 3-4 (citing supporting cases)). In particular, (1) because Anthropic seeks to deny volition and pin the blame for infringement on its users, it must identify these users; (2) these users may possess other information relevant to Publishers' claims, such as earlier lyric- and song-related prompts and output Anthropic has not preserved, and additional information regarding their relevant uses of Claude; (3) Publishers need to confirm whether these prompts were entered by third-party users, Anthropic, or Publishers; and (4) Publishers need to identify whether given users have repeatedly requested lyrics under the same and/or similar usernames or email addresses, which goes to knowledge and willfulness. Neither Anthropic's arguments regarding user privacy interests nor its erroneous claims that the Stored Communications Act applies to it can justify Anthropic's refusal to produce this information—especially given the specific prompts and output here, all of which copy Publishers' lyrics and relate to core claims in the case. *See* ECF No. 310 at 4-6 (addressing privacy and SCA arguments).

## II.    Anthropic's Position

Despite the Court's prior resolution in March of disputes over the adequacy of Anthropic's prompt and output searches and whether Plaintiffs were entitled to user information for responsive prompts and outputs, *see* Dkt. 318, Plaintiffs return now for a second bite at the apple.

### A. Discovery from Anthropic employees' personal Claude accounts is improper, irrelevant and not proportional to the needs of this case (RFP 101).

Anthropic has already provided Plaintiffs with a random sample of 5 million prompts and outputs. *See* Dkt. 318 at 2; Dkt. 377 at 6. It has also reviewed over half a million prompts and outputs that hit on search terms relating to the 499 works in suit, *see* Dkt. 318 at 3, and produced over 15,000 of these records. Unsatisfied with the results, Plaintiffs now seek to scrounge through additional records from Anthropic employees. For this present dispute, Anthropic has agreed to run broad search terms ("song" OR "songs" OR "lyric" OR "lyrics") for all prompts and outputs from work-issued employee @anthropic Claude accounts and produce any responsive, non-privileged documents. But Plaintiffs *also* demand that Anthropic force its nearly 2,000 current and former employees to identify any and all personal email addresses associated with personal Claude

accounts, and turn over those personal accounts for review and possible production as well. That request goes too far. All Anthropic employees are issued a Claude account that is associated with their @anthropic email, and Plaintiffs offer no relevance nexus for prompts from any personal, private Claude accounts that these individuals might also have. Anthropic lacks control over these personal Claude accounts, and cannot force its employees to reveal this private information. And in any event, prompts sent from former or current Anthropic employees' *personal* accounts are not, as Publishers claim, "directly probative" (or reflective at all) of *Anthropic's* "intended use of Claude." Plaintiffs' request would violate important employee privacy rights, is unduly burdensome, not proportional, and should be denied.

<u>Anthropic lacks control over its employees' personal Claude accounts</u>. Without making any showing that Anthropic employees regularly use their personal Claude accounts—rather than work-issued accounts—to conduct business, Publishers demand that Anthropic require its nearly 2,000 current and former employees[4] to reveal any and all personal account details to the Company for review and potential production of private prompting. Even if Anthropic made such a demand, it lacks authority to force compliance. *See, e.g.*, *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2015 WL 8482256, at *3–4 (N.D. Cal. Dec. 10, 2015) (denying discovery from personal email accounts given lack of employer authority to demand compliance); *Nakanelua v. United Pub. Workers, AFSCME, Local 646, AFL-CIO*, 2021 WL 6498865, at *2 (D. Haw. Nov. 2, 2021) (similar).

Plaintiffs speculate that Anthropic employee prompts and outputs would be relevant and proportional "*regardless* of what email address may be associated[.]" But speculation about relevance and proportionality cannot establish the requisite "control." *See Goolsby v. Cnty. of San Diego*, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019). Rather, Plaintiffs must show that each of the private accounts they seek were actually "used for business purposes," rather than personal ones. *Id.*; *see also Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 2018 WL 6305665, at *3 (D. Or. Dec. 3, 2018) (denying discovery where there was no showing that relevant individuals "use[d] personal email for work correspondence more than a de minimus [sic] amount"). Plaintiffs

---

[4] Anthropic currently employs over 1,600 people full time, and has approximately 350 former employees.

have not made that showing. A single, non-representative example is not sufficient.[5] Indeed, the *International Longshore* court rejected a party's reliance on precisely this kind of single-example evidence. *See* 2018 WL 6305665, at *3 ("a single work-related email from [a union member's] personal account" was insufficient). And Plaintiffs' cited cases are inapposite because there was no dispute that the personal accounts at issue were *in fact used for business purposes* in those cases. *See, e.g.*, *Tradeshift*, 2021 WL 1586283, at *2 (noting CEO "*used his personal email to conduct customer business*"); *Waymo*, 2017 WL 2972806, at *2 (explaining "officers' *work for [the company]* was done using their personal email accounts"); *In re CRT Antitrust Litig.*, 2015 WL 12942210, at *5 (similar). That is not the case here. Because Anthropic does not "control" its employees' personal Claude accounts, none of which Plaintiffs have shown are regularly used for business purposes, Plaintiffs' request should be denied.

<u>These prompts and outputs are not probative of *Anthropic's* "intended use of Claude."</u> Anthropic employees' personal use of Claude does not reflect, nor is it directly probative of, "Anthropic's own usage" or Anthropic's "intended use of Claude." There is no valid basis in logic or law for such a claim. What these employees—particularly rank-and-file employees not responsible for devising overall Company strategy—query using their *personal accounts* is simply irrelevant to *Anthropic's* "intended use" of Claude. *Cf. Page v. Clark Cnty. Fire Dist. 6*, 733 F. Supp. 3d 1006, 1023 (W.D. Wash. 2024) (in the vicarious liability context, where an employee's action "is purely personal, the employer will not be liable even if the employee is using the employer's tools" or for activity "merely resembl[ing]" his employment). At best, these prompts reflect the varying ways *all* Anthropic users employ Claude, which is otherwise provided in the already produced prompt and output evidence. As the Court is aware, Anthropic has already engaged in extensive discovery to make Claude prompts and outputs available to Plaintiffs, both by running search terms relating to the works in suit and by delivering a random, 5-million record

---

[5] While Plaintiffs point to three examples, two do not reflect Claude prompts by Anthropic employees. One shows crowdworkers querying a *different model* in the context of finetuning Claude, which is the subject of a separate RFP not in dispute, and the other reflects messages sent to a Claude "bot" integrated into the Anthropic Slack workspace by people outside of Anthropic in a channel called "External_anthropic-claude-demo." (Anthropic_0000016025). Only one example reflects messages (again in Slack) sent by an Anthropic employee (Anthropic_0000016458).

sample. Plaintiffs' request for records from the personal accounts of Anthropic employees is improper, not proportional, and should be denied.

### B. Plaintiffs are not entitled to deanonymized user information (RFP 103).

Anthropic has already agreed to provide the Claude subscription type and payment histories for each account connected to the 33 specific prompt and output pairs identified by Plaintiffs. But Anthropic will not provide these users' names, email addresses, and billing addresses because Plaintiffs have failed to "demonstrate a compelling need" for the information that outweighs the users' privacy interests "when carefully balanced." *See Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011).

<u>Plaintiffs' request is not "targeted</u>." Plaintiffs argue that their latest request is different because, "rather than seeking user information for *all* Claude prompts and outputs," they only seek this information for 33 selected records they claim reflect "instances in which users sought and/or received copies of Publishers' lyrics from Claude." But that is exactly what Plaintiffs argued they were entitled to initially—an argument this Court rejected. *See* Dkt. 310 at 3 ("[U]sernames and email addresses of users who sought and received Claude output copying lyrics are clearly relevant and proportional to Publishers' claims[.]"); Dkt. 318 at 4 (finding users' privacy interests supported redactions). And Plaintiffs do not intend to cabin their request to "limited circumstances," as envisioned by the Court. In footnote 3, they state unequivocally that "this set of Claude records *is not exhaustive*" and that they "anticipate identifying relevant prompts and outputs based on continuing review of Anthropic's ongoing productions." There is no new limiting principle to Plaintiffs' position; they are simply rehashing their already rejected arguments.

<u>Plaintiffs offer no new basis to compel Anthropic to reveal private and sensitive user information</u>. Anthropic maintains its position that it cannot provide user information that would tie the content of specific prompts and outputs to individual third-party users without violating the Stored Communications Act ("SCA"), an issue the Court declined to reach in rejecting Plaintiffs' initial demands for user-identifying information. Dkt. 318 at 4; *see also* Dkt. 310 at 7–9 (explaining that because Claude acts as an RCS, the SCA prohibits Anthropic from disclosing prompts and outputs in a way that ties their contents to individual users). Even if the SCA did not prohibit

disclosure, Plaintiffs have offered no new justification for requesting this sensitive user information, even just for these 33 records, that would overcome those users' privacy interests. The Court's acknowledgement that Plaintiffs' "*may*" be able to demonstrate such a need for "*specific* users," Dkt. 318 at 4, does not excuse the requirement that Plaintiff provide "a compelling need" that outweighs user privacy interests "when carefully balanced." *Artis*, 276 F.R.D. at 352; *see also Henson v. Turn, Inc.*, 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018). But Plaintiffs rely here on the same general justifications as before: *ipse dixit* that these prompts are "key evidence supporting" their claims and the purported need to embark on additional fishing expeditions for "earlier lyric- and song-related prompts" and to "identify whether given users have repeatedly requested lyrics under the same and/or similar usernames or email addresses," among others. These justifications fail today for the same reasons they did in March. *See* Dkt. 310 at 9–11. Plus, it is unclear how Plaintiffs intend to identify whether a given user has requested lyrics using a "similar" username/email address, and they ignore that they can already determine when a user has repeatedly prompted Claude from the same username/email using the Unique ID Anthropic has provided. They offer no justification for requesting user billing addresses.

      Particularly surprising is Plaintiffs' argument that they need this private user information to "confirm" whether certain prompts are associated with their own agents. If Plaintiffs have preserved all of their and their agents' Claude prompting, as they must, they can easily "confirm" the association based on the prompt/output content and date/timestamp. And Anthropic has repeatedly asked Plaintiffs to provide the email handles of their investigating agents for just this purpose: to allow Anthropic to de-anonymize their user information in its productions. Plaintiffs' counsel has refused, citing "work product[] protections," even where Anthropic's counsel provided a list of individuals it suspects (but cannot confirm) are Plaintiffs' agents. To the extent Plaintiffs failed to preserve their agents' prompting of Claude, they cannot refuse to identify those agents while simultaneously seeking to compel production of private and sensitive user information in an attempt to cure prior missteps. Because Plaintiffs fail to offer a compelling need for the private information requested that overcomes the privacy interests of Anthropic's users, their request should (once again) be rejected.

| | |
|---|---|
| Dated: July 28, 2025 | Respectfully submitted, |
| By: */s/ Timothy Chung* | By: */s/ Joseph R. Wetzel* |
| **OPPENHEIM + ZEBRAK, LLP** | **LATHAM & WATKINS LLP** |
| Matthew J. Oppenheim | Joseph R. Wetzel (SBN 238008) |
| Nicholas C. Hailey | joe.wetzel@lw.com |
| Audrey L. Adu-Appiah | Andrew M. Gass (SBN 259694) |
| (admitted *pro hac vice*) | andrew.gass@lw.com |
| 4530 Wisconsin Ave., NW, 5th Floor | Brittany N. Lovejoy (SBN 286813) |
| Washington, DC 20016 | britt.lovejoy@lw.com |
| Telephone: (202) 480-2999 | Ivana Dukanovic (SBN 312937) |
| matt@oandzlaw.com | ivana.dukanovic@lw.com |
| nick@oandzlaw.com | 505 Montgomery Street, Suite 2000 |
| aadu-appiah@oandzlaw.com | San Francisco, California 94111 |
| | Telephone: +1.415.391.0600 |
| Jennifer Pariser | |
| Andrew Guerra | Sarang V. Damle |
| Timothy Chung | (admitted *pro hac vice*) |
| (admitted *pro hac vice*) | sy.damle@lw.com |
| 461 5th Avenue, 19th Floor | Sara Sampoli (SBN 344505) |
| New York, NY 10017 | sara.sampoli@lw.com |
| Telephone: (212) 951-1156 | 555 Eleventh Street NW, Suite 1000 |
| jpariser@oandzlaw.com andrew@oandzlaw.com | Washington, DC 20004 |
| tchung@oandzlaw.com | Telephone: +1.202.637.2200 |
| | |
| **COBLENTZ PATCH DUFFY & BASS LLP** | Allison L. Stillman |
| Jeffrey G. Knowles (SBN 129754) | (admitted *pro hac vice*) |
| One Montgomery Street, Suite 3000 | alli.stillman@lw.com |
| San Francisco, CA 94104 | 1271 Avenue of the Americas |
| Telephone: (415) 391-4800 | New York, New York 10020 |
| ef-jgk@cpdb.com | Telephone: +1.212.906.1747 |
| | |
| **COWAN, LIEBOWITZ & LATMAN, P.C.** | Rachel Horn (SBN 335737) |
| Richard S. Mandel | rachel.horn@lw.com |
| Jonathan Z. King | 140 Scott Drive |
| Richard Dannay | Menlo Park, California 94025 |
| (admitted *pro hac vice*) | Telephone: +1.650.328.4600 |
| 114 West 47th Street | |
| New York, NY 10036-1525 | *Attorneys for Defendant* |
| Telephone: (212) 790-9200 | |
| rsm@cll.com | |
| jzk@cll.com | |
| rxd@cll.com | |
| | |
| *Attorneys for Plaintiffs* | |

By: */s/ Sonal Mehta*

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Sonal Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
Fax: (650) 858-6100

Robin C. Burrell (admitted *pro hac vice*)
robin.burrell@wilmerhale.com
Ari Holtzblatt (admitted *pro hac vice*)
ari.holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6964

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
50 California Street
Suite 3600
San Francisco, CA 94111
(628) 235-1002

Louis W. Tompros (admitted *pro hac vice*)
louis.tompros@wilmerhale.com
60 State Street
Boston, MA 02109
(617) 526-6886

*Attorneys for Defendant*

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 28, 2025

*/s/ Timothy Chung*
Timothy Chung