UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No.  24-cv-03811-EKL (SVK)<br><br>**ORDER RE DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 396, 399 |

Before the Court are two Joint Discovery Submissions relating to disputes previously addressed by this Court.  First, Plaintiffs ("Publishers") seek to compel Defendant Anthropic PBC ("Anthropic") to produce documents pursuant to two Requests for Production ("RFPs"), nos. 101 and 103, seeking Claude-usage information for Anthropic employees and the identities of certain anonymized Claude users, respectively.  Dkt. 396.[1]  In the second dispute, Publishers complain that the 5-million prompt-output sample previously ordered by this Court, (*see* Dkts. 318, 377), improperly includes approximately 700,000 records that "omit entirely the corresponding Claude output" and, additionally, that Publishers should not be required to review and analyze the sample using the review environment provided by Anthropic.  Dkt. 399 at 2-7.  Anthropic opposes Publishers' requests and proposes compromises.  *See* Dkts. 396, 399.

These matters came on for a lengthy hearing on August 7, 2025.  After considering the Parties' submissions, arguments and proposed compromises, as well as the record in this matter and the relevant law, the Court stated its reasoning and rulings on the record.  For the convenience of the Court and the Parties, the Court summarizes its rulings herein.  In the event the Court's

---

[1] *See* Dkt. 318 at 3-5 (recognizing that users' privacy interest, balanced against Publishers' asserted needs, support anonymization, but that Anthropic must maintain a "key" or other method enabling it to deanonymize usernames and emails if required).

ruling on the record differs from this Order, this Order controls.

I. **PUBLISHERS' REQUEST FOR ANTHROPIC EMPLOYEES' PERSONAL CLAUDE USAGE**

Publishers first request is for personal Claude account information for Anthropic employees because, Publishers argue, how Anthropic employees use Claude, even outside of their Anthropic Claude accounts, may be relevant to willfulness. Dkt. 396 at 3, 7. Anthropic objects that employee personal accounts are not within Anthropic's custody or control and that, at least for most employees, activities outside of work are not binding on Anthropic. Dkt. 396 at 8-9. Instead, Anthropic agreed only to run search terms and produce employee prompts and outputs from work-issued @anthropic Claude accounts. *Id.* at 7.

For the reasons stated on the record, Publishers request is **DENIED** as overbroad, and the Court **ORDERS** the following:

- The Parties are to promptly exchange lists and come to agreement as to Anthropic's seven founders, executives and other managing agents.
- Anthropic is to inquire of each of these individuals as to whether they have ever used a personal Claude account to search for songs or lyrics, <u>informing each individual that the inquiry is pursuant to Court order</u>.
- Anthropic is to promptly provide the results of this inquiry to Plaintiffs in the form of an attestation by counsel with personal knowledge of the responses **no later than August 15**, 2025.
- For any founder, executive or managing agent who has used Claude for such purposes, Anthropic shall search and produce responsive prompts and outputs from their personal Claude accounts **no later than August 22, 2025**.
- If Publishers separately identify any Anthropic employees who have used their personal Claude accounts for to search for songs or lyrics, *e.g.*, based on discovery responses or deposition testimony, Publishers may request Anthropic search and produce responsive prompts and outputs information for such employees.

////

## II. PUBLISHERS' REQUEST FOR IDENTIFICATION OF 33 CLAUDE USERS

Publishers seek the de-anonymizing of user information for accounts that evidence prompts for songs or lyrics and the response reflects a Work-in-Suit. Dkt. 396 at 5-6. Publishers proffered four reasons in the Joint Submission (Dkt. 396 at 6) and at the hearing focused on the need to distinguish prompts from Anthropic users.

The Court is not persuaded that the proffered needs outweigh the privacy interests of Claude users. Publishers should be capable of cross-referencing their own records and Anthropic work-accounts. As for the personal accounts of Anthropic employees, if not swept into the ambit of the Court's order in Section I, above, such accounts are no different from unrelated third parties. Accordingly, at this time, there is insufficient justification for the de-anonymizing of user information that Publishers seek. Publishers request is **DENIED without prejudice**.

## III. PUBLISHER'S REQUEST REGARING THE 700,000 "TITLE RECORDS"

Next, Publishers seek, in various ways, to compel Anthropic to supplement its sample to correct the 700,000 prompt-output pairs that Publishers contend lack true outputs. As Anthropic explains, however, these records are simply so-called "title records," *i.e.*, "prompt-output pairs created to generate titles for user conversations," and they are naturally present in the data set. Dkt. 399 at 7-9. For this reason, the Court agrees with Anthropic that it would be improper to re-run the sampling process or replace these 700,000 records with alternate records.

However, as explored at oral argument, these pairs are incomplete in the sense that, after generating a title for the conversation, Claude would in most cases also generate a response to the user's prompt. Given Publishers' examples pointing to at least three instances where the prompt on its face appears to seek song lyrics, and the likelihood that the subsequent response contains lyrics, the Court finds it appropriate to order Anthropic to supplement—not replace—some of these title records.

Accordingly, **no later than August 22, 2025**, Anthropic shall run the four agreed upon search terms ("song" OR "songs" OR "lyric" OR "lyrics") across the 725,589 title records identified by Plaintiff. For any hits, Anthropic shall produce any secondary output for the prompt.

////

3

### IV. THE PARTIES' DISPUTE AS TO THE REVIEW PLATFORM

Finally, while the Court is persuaded by concerns relating to Publishers' need for privacy and effectiveness in reviewing the 5-million record sample, the Court finds that Anthropic's proposed compromise largely addresses these concerns. Accordingly, balancing Anthropic's interest in the security of this data, the Court **ORDERS** that Anthropic shall produce the 5-million record sample as follows:

- Anthropic shall create a separate Relativity database, either on Relativity Server or RelativityOne, only accessible by Publishers' counsel and designated experts;
- In addition to the capabilities and permissions Publishers already have, this separate environment will allow Publishers to run Search Term Hit Report, batch documents for review and create and edit dashboards, coding fields and layouts;
- Anthropic will provide a separate Project Manager and Consulting vendor team, walled off from Anthropic's counsel, that can be freely utilized by Plaintiffs for support, including formatting search terms, running analytics like CAL and day-to-day workspace support as needed without Anthropic's team input or knowledge;
- To the extent there are any additional review tools or programs needed by Publishers, they shall be able to work with the Project Manager and Consulting vendor—without notification to Anthropic's counsel—for provision of such tools;
- To the extent Publishers seek to export or otherwise have formally produced specific prompt-output pairs, they shall be able to work with the Project Manager and Consulting vendor for such production;
    - In seeking such production, Publishers shall limit their production to a reasonable, proportional number of prompt-output pairs needed for the prosecution of this action, and Anthropic shall be entitled to know the number, but not any details, of the produced records; and

////

////

////

- Anthropic shall pay for the provision of this workspace and all related costs. Any invoices for Publishers' use shall be provided to Publishers first, prior to conveyance to Anthropic, so that Publishers may redact any information that may reveal attorney work-product.

**SO ORDERED.**

Dated: August 8, 2025

_____
SUSAN VAN KEULEN
United States Magistrate Judge