**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO MODIFY SCHEDULING ORDER** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen <br><br> Date: October 8, 2025 <br> Time: 10:00 AM <br> Courtroom: 7 – 4th Floor |

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on October 8, 2025, at 10:00 a.m., or as soon thereafter as the Parties may be heard, Plaintiffs ("Publishers") will and hereby do move for leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and to modify the scheduling order pursuant to Fed. R. Civ. P. 16(b)(4).

Publishers seek an order granting their Motion for Leave to File a Second Amended Complaint and to Modify the Scheduling Order based on new evidence disclosed for the first time in recent weeks regarding Defendant Anthropic's use of BitTorrent to download and upload Publishers' works without authorization. Publishers seek leave to amend their Complaint in three ways: (1) to update Publishers' existing allegations regarding Anthropic's unlawful reproduction of Publishers' works to conform to newly discovered evidence of Anthropic's downloading works via BitTorrent; (2) to assert new claims against Anthropic for unlawful distribution of Publishers' works based on the newly discovered evidence of Anthropic's uploading works via BitTorrent; and (3) to amend Publishers' Works in Suit to include works that Anthropic downloaded and uploaded via BitTorrent. Publishers' proposed Second Amended Complaint is attached as Ex. A. Likewise, in light of this new evidence, Publishers request that the current December 2, 2024 deadline to amend the pleadings be modified to allow Publishers to amend their Complaint as described above, and that the scheduling order be otherwise adjusted to allow for necessary expedited discovery into the amended allegations and claims, as detailed in the proposed Order attached as Ex. B.

Publishers' Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers in this action, and any oral argument of counsel.

**INTRODUCTION**

For more than a year of discovery in this case, Anthropic concealed from Publishers that it used "the infamous BitTorrent protocol" to illegally copy their lyrics on a massive scale from notorious "pirate library" websites. Ex. J, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA, ECF No. 244, at 2 (N.D. Cal. July 17, 2025). Publishers did not learn this crucial information from Anthropic as part of discovery in this case, but instead from Judge Alsup's recent decision in the *Bartz v. Anthropic* case. *Id.* Anthropic cannot reasonably justify withholding these essential facts in discovery, particularly where the newly revealed evidence is critical to Publishers' claims.

Judge Alsup's *Bartz* opinion details how Anthropic used BitTorrent, a filesharing program synonymous with internet piracy, to access Library Genesis ("LibGen") and Pirate Library Mirror ("PiLiMi"), illegal websites infamous for housing pirated content, to download via "torrenting" millions of unauthorized copies of books. *Id.* Among the books Anthropic illegally torrented were many lyric and sheet music anthologies containing Publishers' musical compositions, including Works in Suit. And when Anthropic used BitTorrent to download Publishers' works via torrenting, it simultaneously uploaded to the public at large unauthorized copies of the same works, infringing Publishers' exclusive distribution rights in new ways that Anthropic previously concealed.

The revelation that Anthropic used BitTorrent to illegally download—and upload—Publishers' lyrics has major implications for this case. Anthropic's ***downloading*** of these works via torrenting impacts Publishers' existing claims that Anthropic willfully infringed their reproduction rights by copying the works to train its AI models and in AI output, while Anthropic's ***uploading*** of such works to the public via torrenting raises new claims against Anthropic for illegal distribution of Publishers' copyrighted works, necessitating amendment of the Complaint.

Publishers therefore move for leave to amend their Complaint to address this newly discovered evidence, and to modify the scheduling order both to allow for this amendment and to permit sufficient time for needed discovery into the amended claims and new works. In particular, Publishers seek to amend their Complaint to: (1) add allegations regarding Anthropic's unlawful reproduction of Publishers' works in connection with their existing direct infringement claims to conform to the new evidence of Anthropic's downloading of their works via torrenting; (2) assert

new direct infringement claims for Anthropic's unlawful distribution of Publishers' works based on the new evidence of Anthropic's uploading of their works via torrenting; and (3) amend Publishers' Works in Suit to include works that Anthropic downloaded and uploaded via BitTorrent. Publishers can make the first two amendments immediately, as reflected in Publishers' proposed Second Amended Complaint (attached as Ex. A). Publishers separately seek to modify the scheduling order to allow for necessary expedited discovery into the amended allegations and claims, and allow time to make the third amendment—updating the Works in Suit—as outlined in Publishers' proposed Order (attached hereto).

To be clear, Publishers wish to move this case forward more quickly than it is currently proceeding, and are frustrated by Anthropic's slow pace of discovery and failure to disclose this critical evidence. Because of Anthropic's failure to disclose its massive torrenting activity, Publishers must now start afresh on this issue. To minimize the delay caused by Anthropic's failure to disclose this evidence, Publishers propose adjusting the schedule to allow their claims to be considered in stages. Other courts have adopted these types of staged proceedings in large infringement cases, and this Court should follow suit.

## BACKGROUND

**I.    Judge Alsup's *Bartz* order revealed for the first time that Anthropic used BitTorrent to illegally download and upload millions of books from pirate libraries.**

On July 17, 2025, Judge Alsup certified a class of copyright infringement plaintiffs in the *Bartz* case against Anthropic. His opinion revealed for the first time that Anthropic had used "the infamous BitTorrent protocol" to illegally download at least 7 million books from "pirate libraries" including LibGen and PiLiMi. *See Bartz*, ECF No. 244, at 2.

The *Bartz* opinion details the many ways in which Anthropic used BitTorrent to torrent books from pirate libraries to create its own library of unauthorized copies and train its AI models:

> In early 2021, a co-founder of Anthropic downloaded 196,640 unauthorized copies of copyrighted books from the pirate library known as Books3 . . . to avoid the trouble of paying for them, hoping they might prove useful for training large language models (LLMs) or for something else.
>
> Later that year, Anthropic wanted still more. But centralized pirate libraries were being shut down by the government. So, in June 2021, Anthropic's co-founder used the infamous BitTorrent protocol to copy [five million] books peer-to-peer from

> decentralized copies of another pirate library—Library Genesis, or LibGen. . . .
>
> As pirate libraries were still being shuttered, third parties online copied LibGen and improved upon it to create a new pirate library, simply called "Z-Library." The FBI shut down Z-Library, too. But by then, Z-Library had itself been copied or "mirrored" to create the Pirate Library Mirror, or PiLiMi. When Anthropic's co-founder saw PiLiMi was ready for torrenting, he messaged Anthropic coworkers: "[J]ust in time!" One answered: "zlibrary my beloved."
>
> So, in July 2022, Anthropic torrented at least two million copies of pirated books from distributed copies of PiLiMi. . . .

*Id.* at 2. Judge Alsup found "[t]here is no question Anthropic torrented five million files from LibGen," "no question Anthropic downloaded via torrenting two million files from PiLiMi," and "no question Anthropic downloaded 196,640 records in the Books3 collection." *Id.* at 15, 20, 21.

As described below, Anthropic disclosed none of these facts to Publishers in this case.

## II.    The books that Anthropic illegally torrented included countless Publishers' works.

Among the millions of books Anthropic illegally torrented from LibGen and other pirate libraries are myriad books of Publishers' song lyrics and sheet music, including the Works in Suit.

Anthropic possesses detailed "catalog[s] of bibliographic metadata" listing the specific books its co-founder(s) torrented from LibGen and PiLiMi (which were attached as sealed exhibits to the *Bartz* class certification briefing), *id.* at 4, 15-16, 20-21, as well as the torrenting files of the illegally downloaded books themselves. But Anthropic has not yet produced them to Publishers.[1]

Given Anthropic's failure to produce this relevant discovery, Publishers have instead referred to other sources detailing the contents of these pirate libraries to identify their own works among the books Anthropic illegally torrented.[2] LibGen, in particular, contains well over a thousand illegal copies of sheet music, songbooks, and other lyric-related books. These include numerous standalone copies of sheet music and lyrics to Publishers' Works in Suit specifically, such as "Tiny Dancer" (written by Elton John and Bernie Taupin), "A Thousand Miles" (written by Vanessa Carlton), and "7 Rings" (recorded by Ariana Grande). These also include myriad books

---

[1] Immediately following the *Bartz* ruling, Publishers began requesting that Anthropic produce this and other key BitTorrent-related discovery that should have already been produced in this case. Anthropic initially refused. After Publishers drafted a joint dispute statement and continued to pursue the discovery, Anthropic eventually agreed to produce certain BitTorrent-related discovery. But as of the date of this filing, Anthropic has not confirmed the date by which it will produce this key discovery or clarified other requested details regarding its forthcoming production.

[2] *See, e.g.*, Alex Reisner, *Search LibGen, the Pirated-Books Database That Meta Used to Train AI*, THE ATLANTIC (Mar. 20, 2025), https://www.theatlantic.com/technology/archive/2025/03/search-libgen-data-set/682094/.

Case 5:24-cv-03811-EKL    Document 411    Filed 08/11/25    Page 6 of 13

of sheet music and lyrics to Works in Suit and other copyrighted works owned by Publishers and others, such as *The Best Songs Ever* (featuring "Candle in the Wind," "Every Breath You Take," and "What a Wonderful World," among other works); *Songs of the 1960s, The Decade Series* ("Blowin' in the Wind," "Born to Be Wild," "California Dreamin'," and others); *VH1's 100 Greatest Songs of Rock & Roll* ("All Along the Watchtower," "(Sittin' On) The Dock of the Bay," "Roxanne," and others); *The Legendary Songs of Don McLean* ("American Pie" and others); *Rolling Stones—Let It Bleed: Authentic Guitar TAB* ("Gimme Shelter" and others); *The Beach Boys—Greatest Hits* (7 Works in Suit); *Elton John—Greatest Hits Songbook* (5 Works in Suit); *Best of Coldplay for Big-Note Piano* (7 Works in Suit); *Adele—The Complete Collection* (3 Works in Suit); and *Katy Perry Songbook* (2 Works in Suit). These are just a few examples from the many books of Publishers' lyrics and sheet music that Anthropic appears to have illegally torrented.

### III. The new evidence of Anthropic's BitTorrent activity revealed for the first time that Anthropic had uploaded unauthorized copies of Publishers' works to the public.

When Anthropic decided to use BitTorrent to download unauthorized copies of books—including Publishers' works—from these pirate libraries, it was simultaneously ***uploading*** unauthorized copies of the same books to other users. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1027 (9th Cir. 2013) ("[E]ach [BitTorrent] user is both downloading and uploading several different pieces of a file from and to multiple other users."); *Strike 3 Holdings, LLC v. Doe*, 2019 WL 1277561, at *1 (N.D. Cal. Mar. 20, 2019) ("BitTorrent users . . . simultaneously download and upload pieces of the file from and to other users."). Thus, the new evidence of Anthropic's BitTorrent use shows Anthropic not only reproduced Publishers' works by downloading them, but also ***distributed*** those works by uploading them to the public at large.

### IV. Anthropic concealed its use of BitTorrent to copy Publishers' works in this case.

Even a cursory review of the books that Anthropic torrented from LibGen and other pirate libraries reveals that many, many of these books contain Publishers' works (as detailed above). Yet, inexplicably, Anthropic ***never*** disclosed to Publishers in this case that it had used BitTorrent to copy books containing their works from pirate sites in this manner, despite Publishers' discovery requests calling for exactly this type of information:

4    Case No. 5:24-cv-03811-EKL-SVK
MOT. FOR LEAVE TO FILE SECOND AM. COMPLAINT AND MODIFY SCHEDULING ORDER

- Interrogatory 6: Publishers' Interrogatory 6 (served Mar. 22, 2024) requested that Anthropic "[i]dentify and describe each dataset used to train Claude, including the dataset's origin; vendor or licensor, if any; number of tokens; contents, including whether the dataset contains song lyrics; and its use in the training process." Ex. C. **Nowhere** do Anthropic's responses to Interrogatory 6 (served Apr. 22, 2024, amended Aug. 30, 2024, and amended again Dec. 20, 2024, after the deadline to amend) disclose its use of BitTorrent to download millions of books—including myriad books with Publishers' lyrics—from pirate libraries for AI training. Ex. D. Given Judge Alsup's findings in *Bartz*, Anthropic should have, at a bare minimum, identified and described the specific files Anthropic torrented via BitTorrent and the pirate libraries from which it downloaded them.

- Requests for Production: Similarly, Publishers' document requests also call for the production of documents that would have revealed Anthropic's torrenting via BitTorrent, but Anthropic failed to produce them—despite having specifically agreed to respond to the requests. For instance, in response to Publishers' RFP 29 (which requests "[a]ll Documents concerning the use of copyrighted materials to train Claude," Ex. E), Anthropic long ago committed to produce "documents relating to the use of song lyrics to train Claude," Ex. F, S. Sampoli Email (Aug. 23, 2024). But Anthropic omitted from its production documents regarding the many books containing Publishers' lyrics that it torrented from LibGen and other pirate sites to train Claude—even though it is unmistakable that these books contain Publishers' lyrics. Anthropic has so far failed to produce the torrenting files, which will confirm Anthropic's torrenting of specific books containing specific Publishers' works. Anthropic also failed to produce BitTorrent-related documents in response to numerous other discovery requests to which it agreed to respond and should have produced such documents, including Requests for Production 25, 26, 65, and 68. *See* Exs. G, H.

Contrary to Anthropic's contention, Publishers had no reason to know of Anthropic's internal use of BitTorrent to torrent their works. Anthropic does not publicly disclose details of how it amasses AI training data. It omitted discovery as to its BitTorrent use in this case. Nowhere does the *Bartz* complaint identify its BitTorrent use. This information was not revealed until the July 17, 2025 *Bartz* decision. There is no excuse for Anthropic's failure to disclose this key information, which bears directly on Publishers' existing claims and gives rise to their amendment.

## ARGUMENT

**I.    Publishers should be permitted to amend their Complaint given this new evidence.**

Given this significant new evidence, Publishers seek leave to amend their Complaint. A party seeking to amend after a court's deadline[3] is required to first show "good cause" under Rule 16(b)(4), and then show amendment is warranted under Rule 15(a)(2). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Both Rules strongly favor amendment here.

---

[3] Publishers seek leave to amend after the Dec. 2, 2024 deadline to amend, but before the close of fact discovery.

### A. There is good cause under Rule 16 to amend the Complaint.

The good cause inquiry under Rule 16(b)(4) "focuses on the reasonable diligence of the moving party," *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing *Johnson*, 975 F.2d at 609), and "the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification," *Johnson*, 975 F.2d at 609.

Good cause exists here because it is ***Anthropic's failure*** to disclose its BitTorrent activity—not any delay or omission by Publishers—that necessitates amendment. Publishers diligently pursued discovery requests requiring Anthropic to disclose its BitTorrent activity long before the deadline to amend. Anthropic actively concealed the fact that it used BitTorrent to download and upload books containing Publishers' works from pirate libraries. Anthropic's failure to disclose this information prevented Publishers from timely amending. As soon as Judge Alsup's *Bartz* order revealed Anthropic's BitTorrent use, Publishers quickly investigated these facts, promptly requested that Anthropic cure its prior discovery omissions, and ultimately moved to amend their Complaint, all within barely three weeks. Publishers have been diligent.

Courts regularly grant leave to amend under Rule 16(b) where, as here, plaintiffs did not learn of the facts giving rise to the amendment until after the deadline to amend. *See, e.g.*, *Lee v. Amguard Ins. Co.*, 2021 WL 3161683, at *6 (N.D. Cal. July 27, 2021) (good cause to amend where plaintiffs discovered additional relevant facts in discovery produced after deadline to amend); *Ross v. AT&T Mobility, LLC*, 2020 WL 9848733, at *3 (N.D. Cal. Dec. 18, 2020) (good cause to amend where information supporting additional allegations and claims was discovered in defendant's disclosures served after deadline to amend); *Valero Ref. Co. v. Pac. Gas & Elec. Co.*, 2020 WL 6286357, at *2-3 (E.D. Cal. Oct 26, 2020) (good cause to amend where additional facts supporting amended complaint were uncovered in depositions conducted after deadline to amend); *Leines v. Homeland Vinyl Prods.*, 2020 WL 6044037, at *3 (E.D. Cal. Oct. 13, 2020) (good cause to amend where additional facts were uncovered shortly before the close of fact discovery).

Moreover, finding good cause is particularly appropriate where it is ***the defendant's conduct*** that prevented earlier amendment. *See, e.g.*, *Photography by Frank Diaz LLC v. Friends of David Schweikert*, 2023 WL 3321695, at *3 (D. Ariz. May 9, 2023) (good cause to amend where

amendment was necessitated by "[d]efendant's delay in responding to requests for production"); *Lee*, 2021 WL 3161683, at *6 (good cause to amend where defendant did not begin production of documents with facts supporting amendment until shortly before deadline to amend); *Juarez v. Auto Zone Stores, Inc.*, 2010 WL 3470759, at *2 (S.D. Cal. Sept. 3, 2010) (good cause where, *inter alia*, plaintiff could not have learned relevant facts sooner due to defendant's failure to disclose).

**B.     Rule 15 likewise favors Publishers' requested amendment.**

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Ninth Circuit applies Rule 15(a)(2) "with extreme liberality," instructing courts to grant leave unless amendment (1) causes undue prejudice to the opposing party, (2) creates undue delay, (3) is sought in bad faith, (4) or is futile. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). "The opposing party bears the burden of showing why leave to amend should not be granted." *City of Torrance v. Hi-Shear Corp.*, 2024 WL 4095876, at *2 (C.D. Cal. June 11, 2024) (citing cases). Here, all of the Rule 15 factors favor Publishers' amendment.

<u>Amendment will not unduly prejudice Anthropic</u>. Of the four factors, undue prejudice "carries the greatest weight." *Eminence*, 316 F.3d at 1052. "To overcome Rule 15(a)'s liberal policy" favoring amendment, such "prejudice must be substantial." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). The non-movant bears the burden of showing undue prejudice. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Anthropic cannot meet its burden of showing undue prejudice. Publishers' proposed amendments "do not alter the nature of the litigation," given that they "merely [assert an] additional copyright infringement claim[] against the same [d]efendant," while clarifying the existing claims to conform to the evidence. *See Star Fabrics, Inc. v. YM, Inc.*, 2015 WL 13919114, at *4 (C.D. Cal. Oct. 23, 2015). Likewise, the amendments "will not represent a radical shift in the nature or scope of discovery." *See In Re Mosaic LLM Litig.*, 2025 WL 1755650, at *3 (N.D. Cal. June 25, 2025). Discovery into Anthropic's ***downloading*** of Publishers' works via BitTorrent (which is covered by Publishers' existing claims as to Anthropic' unauthorized reproduction of their works, and should have been produced by Anthropic long ago) will be largely co-extensive with discovery into Anthropic's simultaneous ***uploading*** of the same works via BitTorrent (the subject of

Publishers' proposed new unauthorized distribution claims). Neither "the burden of having to defend a new claim" nor "the prospect of additional discovery" is sufficient to deny amendment. *Id*. (citation and quotation marks omitted). To the extent there is any prejudice, it is due to Anthropic's failure to timely disclose the evidence giving rise to the amendment. *See, e.g.*, *Synopsys, Inc. v. Real Intent, Inc.*, 2022 WL 14813727, at *4 (N.D. Cal. Oct. 25, 2022) (granting leave to amend and finding no prejudice where "any delay in the case caused by the addition of the [amended] claims is due, at least in part, to [defendant's] delay in producing [the discovery]").

<u>Amendment will not create undue delay</u>. The Parties earlier today jointly requested a two-month fact discovery extension given other discovery needs, ECF No. 409, and Publishers' proposed amendment will not require significant additional time, as detailed in Sec. II below. Further, there can be no undue delay where Publishers' proposed amendments "are a result of recent developments in discovery," *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 3149297, at *4 (N.D. Cal. July 25, 2017), and given that Publishers "diligently pursued modification upon learning of the facts giving rise to the new claims," by moving to amend within weeks of learning of this new evidence, *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 6888242, at *5 (C.D. Cal. Sept. 7, 2017). Indeed, Anthropic should have already disclosed its torrenting activity in response to Publishers' prior discovery requests. In any event, "delay alone is insufficient to deny leave to amend." *In Re Mosaic*, 2025 WL 1755650, at *2 (granting leave to amend, even where 14-month delay in moving to amend was "without a doubt significant").

<u>Amendment is not sought in bad faith.</u> Publishers merely seek to amend their Complaint to address the evidence Anthropic withheld. There is no evidence of bad faith by Publishers.

<u>Amendment is not futile</u>. "[D]enial of a motion for leave to amend on the ground of futility is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Oracle*, 2017 WL 3149297, at *4 (citation and quotation marks omitted). Here, Anthropic has never challenged via a motion to dismiss the sufficiency of Publishers' existing direct infringement claims (Count I), including Publishers' claims for unauthorized reproduction based on Anthropic's copying of their works in connection with AI training. Since Publishers seek merely to update those direct

infringement allegations to reflect the new evidence that Anthropic also reproduced and distributed their works by downloading and uploading them via BitTorrent, Anthropic has no basis to argue that amendment is futile. Similar claims have proceeded past summary judgment in other copyright infringement cases against AI companies. *See, e.g.*, *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 1752484, at *8 (N.D. Cal. June 25, 2025) (noting "plaintiffs' claim that Meta infringed their copyrights by distributing their works" via BitTorrent "remain[s] a live issue in the case" after summary judgment); *Bartz v. Anthropic*, 2025 WL 1741691, at *18 (N.D. Cal. June 23, 2025) (finding Anthropic's downloading of plaintiffs' works from pirate sites to build central library was not fair use, without addressing Anthropic's use of BitTorrent or uploading of works).

In *Kadrey*, Judge Chhabria recently addressed a similar motion, and granted plaintiffs leave to amend their complaint based on comparable new evidence of Meta's use of BitTorrent to download—and upload—their works in connection with training its AI models. *See Kadrey v. Meta Platforms, Inc.*, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025). Judge Chhabria found, under Rule 15, that plaintiffs did not "unduly delay by waiting to move for leave to amend 'until they had sufficient evidence . . . upon which they could base claims of wrongful conduct,'" *id.* (quoting *DCD*, 833 F.2d at 187); amendment would not "cause Meta significant prejudice," and the "need to defend against the new claims on the merits" or to "take additional discovery to do so does not constitute prejudice"; there was "no indication" of bad faith; the new claims were not "so obviously futile as to deny leave to amend"; and, finally, "to the degree it is necessary to modify the case schedule (such as to permit additional discovery), there is good cause to do so," *id.*

**II.    There is good cause to modify the schedule to allow for discovery into these claims.**

Likewise, there is good cause to adjust the schedule to allow for necessary expedited discovery into Publishers' amended claims and new works. Publishers propose a staged schedule to minimize any delay. *See* Proposed Order. First, the Parties earlier today jointly requested a two-month fact discovery extension given other discovery needs, ECF No. 409, and Publishers expect they can complete expedited discovery into the merits of their amended BitTorrent-related claims under that same schedule (without amending the specific Works in Suit). Publishers have already requested Anthropic produce BitTorrent-related discovery, but if additional BitTorrent written

discovery is necessary, Publishers propose that Anthropic's response time be reduced from 30 days to 14 days. Since Anthropic presumably produced the majority of this discovery in *Bartz*, there is no reason it should need 30 days. Assuming Anthropic promptly produces this discovery, Publishers can review these productions and proceed with fact depositions, expert discovery, and summary judgment on these new claims (alongside Publishers' related existing claims) within the same schedule proposed in the Parties' stipulated request to extend case deadlines. *Id*.

Second, Publishers also must amend their list of Works in Suit to identify additional works Anthropic downloaded and/or uploaded via BitTorrent. It will take time to identify Publishers' works within the millions of books Anthropic is known to have unlawfully downloaded and uploaded from pirate libraries, as will collecting and producing to Anthropic ownership documents for any such works added to the Works in Suit. However, the parties need not delay addressing the merits of these claims (pursuant to the schedule above) while the specific Works in Suit list is being updated. Publishers request that the Court modify the scheduling order to provide that, within three months after Anthropic produces documents sufficient to identify the works it torrented in violation of Publishers' rights (e.g., the torrenting files themselves and Anthropic's catalogs of bibliographic metadata), Publishers may amend their list of Works in Suit to reflect such works and produce ownership documentation for any such additional works. To the extent Anthropic wishes to challenge ownership or other issues related to the updated Works in Suit, it can do so apart from summary judgment on the merits of the claims, which can proceed without further delay, per the schedule above. Other courts have similarly staged proceedings in large infringement cases. *See, e.g.*, Ex. I, Conf. Tr. at 3:9-4:10, *Arista Records LLC v. Lime Group LLC*, No. 06-cv-5936 (S.D.N.Y. Dec. 7, 2007) (staging schedule to address liability before completing discovery as to ownership on all works); *Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 5 n.1 (S.D.N.Y. 1992) (conducting "fair use 'test case' trial" on subset of works at issue); *see also Thoma v. VXN Group LLC*, 2024 WL 4800648, at *2 (C.D. Cal. May 16, 2024) (noting that, under Rule 42, "the court also has power to limit discovery to the segregated issues" (citation omitted)).

## CONCLUSION

For the foregoing reasons, Publishers respectfully request that their Motion be granted.

| | | |
|---|---|---|
| 1 | Dated: August 11, 2025 | Respectfully submitted, |
| 2 | | */s/ Timothy Chung* |
| 3 | | **OPPENHEIM + ZEBRAK, LLP** |
| | | Matthew J. Oppenheim |
| 4 | | Nicholas C. Hailey |
| 5 | | Audrey L. Adu-Appiah |
| | | (admitted *pro hac vice*) |
| 6 | | 4530 Wisconsin Ave., NW, 5th Floor |
| | | Washington, DC 20016 |
| 7 | | Telephone: (202) 480-2999 |
| | | matt@oandzlaw.com |
| 8 | | nick@oandzlaw.com |
| | | aadu-appiah@oandzlaw.com |
| 9 | | |
| 10 | | Jennifer Pariser |
| | | Andrew Guerra |
| 11 | | Bret Matera |
| | | Timothy Chung |
| 12 | | Michelle Gomez-Reichman |
| | | (admitted *pro hac vice*) |
| 13 | | 461 5th Avenue, 19th Floor |
| | | New York, NY 10017 |
| 14 | | Telephone: (212) 951-1156 |
| | | jpariser@oandzlaw.com |
| 15 | | andrew@oandzlaw.com |
| | | bmatera@oandzlaw.com |
| 16 | | tchung@oandzlaw.com |
| | | mgomez-reichman@oandzlaw.com |
| 17 | | |
| 18 | | **COBLENTZ PATCH DUFFY & BASS LLP** |
| | | Jeffrey G. Knowles (SBN 129754) |
| 19 | | One Montgomery Street, Suite 3000 |
| | | San Francisco, CA 94104 |
| 20 | | Telephone: (415) 391-4800 |
| | | ef-jgk@cpdb.com |
| 21 | | |
| | | **COWAN, LIEBOWITZ & LATMAN, P.C.** |
| 22 | | Richard S. Mandel |
| | | Jonathan Z. King |
| 23 | | Richard Dannay |
| | | (admitted *pro hac vice*) |
| 24 | | 114 West 47th Street |
| 25 | | New York, NY 10036-1525 |
| | | Telephone: (212) 790-9200 |
| 26 | | rsm@cll.com |
| | | jzk@cll.com |
| 27 | | rxd@cll.com |
| 28 | | *Attorneys for Plaintiffs* |