SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
ALLISON BINGXUE QUE (SBN 324044)
Allison.Que@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

JOSEPH R. WETZEL (SBN 238008)
joe.wetzel@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

*Attorneys for Defendant*
**ANTHROPIC PBC**
(Additional Counsel on Next Page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No. 5:24-cv-03811-EKL-SVK <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND MODIFY SCHEDULING ORDER** <br><br> Judge: Hon. Eumi K. Lee <br> Date: October 8, 2025 <br> Time: 10:00 AM <br> Courtroom: 7, 4th Floor |

| | |
|---|---|
| Louis W. Tompros (*Pro Hac Vice*) | ANDREW M. GASS (SBN 259694) |
| Louis.Tompros@Wilmerhale.Com | andrew.gass@lw.com |
| **WILMER CUTLER PICKERING** | BRITTANY N. LOVEJOY (SBN 286813) |
| **HALE AND DORR LLP** | brittany.lovejoy@lw.com |
| 60 State Street | IVANA DUKANOVIC (SBN 312937) |
| Boston, MA 02109 | ivana.dukanovic@lw.com |
| Telephone: (617) 526-6220 | **LATHAM & WATKINS LLP** |
| | 505 Montgomery Street, Suite 2000 |
| ARI HOLTZBLATT (SBN 354361) | San Francisco, California 94111 |
| Ari.Holtzblatt@wilmerhale.com | Telephone: (415) 391-0600 |
| ROBIN C. BURRELL (*pro hac vice*) | |
| robin.burrell@wilmerhale.com | SARANG V. DAMLE (*pro hac vice*) |
| **WILMER CUTLER PICKERING** | sy.damle@lw.com |
| **HALE AND DORR LLP** | **LATHAM & WATKINS LLP** |
| 2100 Pennsylvania Ave, NW | 555 Eleventh Street NW, Suite 1000 |
| Washington, DC 20006 | Washington, DC 20004 |
| Telephone: (202) 663-6000 | Telephone: (202) 637-2200 |
| | |
| TAYLOR GOOCH (SBN 294282) | ALLISON L. STILLMAN (*pro hac vice*) |
| taylor.gooch@wilmerhale.com | alli.stillman@lw.com |
| KYLE EDWARDS HAUGH (SBN 323952) | **LATHAM & WATKINS LLP** |
| kyle.haugh@wilmerhale.com | 1271 Avenue of the Americas |
| **WILMER CUTLER PICKERING** | New York, New York 10020 |
| **HALE AND DORR LLP** | Telephone: (212) 906-1747 |
| 50 California St. | |
| San Francisco, CA 94111 | |
| Telephone: (628) 235-1000 | |

*Attorneys for Defendant*
**ANTHROPIC PBC**

# INTRODUCTION

Plaintiffs propose to fundamentally transform this case at the eleventh hour. Eight months after the Court's deadline to amend the pleadings in this case, Plaintiffs ask to vastly expand its scope by adding (1) potentially thousands of new works to the complaint, and (2) a new claim and allegations about Anthropic's alleged use of BitTorrent. Plaintiffs' motion is improper and should be denied for multiple independent reasons. Plaintiffs lack good cause to add these allegations, which they have known about—and expressly disclaimed reliance on—for over a year. And amendment would cause undue prejudice and significant delay in this two-year-old case.

To justify their request to balloon the number of works in suit at this late stage, Plaintiffs claim to have only just discovered evidence of Anthropic's alleged use of "pirated" book datasets from the recent class certification opinion in *Bartz*. Not so. Plaintiffs have long been on notice of Anthropic's alleged use of this data—both through public filings in the *Bartz* litigation (where Plaintiffs' counsel has appeared) and Anthropic's own documents produced in this case (dozens of which reference the very facts they now claim justify amendment). And yet they repeatedly opted not to pursue any such allegations here. To the contrary, Plaintiffs expressly relied on the allegations in *Bartz* regarding "pirated" datasets to *distinguish* that case and successfully oppose Anthropic's attempt to relate the two cases. Now Plaintiffs want to pull a bait and switch—forcing Anthropic to defend these allegations on two separate fronts after successfully opposing consolidation.

Plaintiffs claim to have only just now realized that works they purportedly own are included in books in the datasets at issue in *Bartz*. But if so, that has nothing to do with the *Bartz* opinion—which said nothing about song lyrics—and everything to with Plaintiffs' failure to timely investigate that possibility when they had notice of those datasets over a year ago. Plaintiffs' belated realization is therefore attributable only to a failure of diligence on their part. Anthropic's discovery responses are not to blame.

Plaintiffs' attempt to excuse their untimely addition of the BitTorrent claim and related allegations suffers from similar problems. As with the allegedly "pirated" datasets, Plaintiffs have been on notice that those datasets may be accessed via BitTorrent since at least August 2024, when

the publicly-filed *Bartz* Complaint was filed. And cursory research into other publicly available sources would have revealed that the datasets at issue in *Bartz* are routinely accessed via BitTorrent.

Because Plaintiffs failed to act diligently, they lack the good cause necessary under Rule 16 to amend after the deadline to do so. In any event, amendment is improper under Rule 15. Amendment at the eleventh hour to inject new issues into the case—including allegations that Plaintiffs expressly disclaimed in opposing Defendants' motion to relate this case to *Bartz*—would unduly prejudice Anthropic by significantly transforming the litigation and requiring significant and unjustified delays to accommodate further discovery. The Court should deny the motion.

## BACKGROUND

Plaintiffs, a group of music publishers, commenced this action against Anthropic PBC on October 18, 2023. ECF 1. Plaintiffs' complaint alleged that Anthropic infringed copyrights they claim to hold to 500 (later reduced to 499) musical compositions by using a portion of those works—the lyrics—to train its large language model, Claude, and further infringed those copyrights when Claude reproduced those lyrics in whole or in part in response to user prompts. *See* ECF 1 ¶¶111-146; ECF 1-3 (listing works); *see also* ECF 337 ¶¶159-194 ("FAC"); ECF 337-1. An initial case management order was entered in the case on January 11, 2024, and discovery commenced shortly thereafter. ECF 64. On August 15, 2024, Anthropic moved to dismiss most of Plaintiffs' claims. ECF 205.

On August 19, 2024, a group of book authors filed a complaint for copyright infringement against Anthropic on behalf of a class of authors, alleging that Anthropic had infringed their copyrights by using databases of books to train Claude. *See* Class Action Compl., *Bartz v. Anthropic*, No. 3:24-cv-5417-WHA (N.D. Cal. Aug. 19, 2024), ECF 1 ("*Bartz* Compl."). The *Bartz* Complaint included allegations that Anthropic had downloaded authors' books from certain allegedly "pirated" datasets, referencing Books3, Z-Library (which is now downloadable via PiLiMi) and Library Genesis (LibGen), and stated that those datasets are accessed through the use of BitTorrent. *Id.* ¶¶31-43 & n.25.

Shortly thereafter, on August 27, 2024, Anthropic moved to relate the actions in *Bartz* and *Concord*. ECF 215. Plaintiffs opposed. ECF 221. In their opposition, Plaintiffs explicitly

1    distinguished the allegations in *Bartz* and *Concord*, asserting that they "differ in important ways."
2    *Id.* at 2. In particular, Plaintiffs stated that the two cases involved "different sources of data"
3    requiring "different fact discovery into the events surrounding Anthropic's access to the different
4    sets of works." *Id.* Plaintiffs highlighted that while the *Bartz* plaintiffs alleged that Anthropic
5    obtained their books from allegedly "pirated" datasets, Plaintiffs here alleged that Anthropic relied
6    on different sources, "including a dataset called the Common Crawl, YouTube, social media sites,
7    and … licensed lyric aggregators." *Id.* In doing so, Plaintiffs cited directly to the allegations in the
8    *Bartz* Complaint that reference Anthropic's alleged use of "pirated" datasets and the BitTorrent
9    protocol—the same allegations they claim to have just learned about for the first time. *Compare id.*
10    (citing *Bartz* Compl. ¶¶31–43), *with* ECF 411 at 1-2 ("Mot."). The Court subsequently denied
11    Anthropic's motion to relate the two cases. ECF 239.

12    On November 7, 2024, the Court entered a further scheduling order, setting a December 2,
13    2024 deadline for Plaintiffs to move to amend or add parties. ECF 262 at 2. That date came and
14    went without Plaintiffs proposing an amendment.

15    On March 26, 2025, the Court granted Anthropic's motion to dismiss with leave to amend.
16    ECF 322. Plaintiffs filed their First Amended Complaint on April 25, 2025, and did not seek at that
17    time to add allegations regarding Anthropic's use of the "pirated" datasets or BitTorrent. *See* FAC.
18    Anthropic has filed a further motion to dismiss, which remains pending. ECF 359.

**LEGAL STANDARD**

20    Once a district court files a pretrial scheduling order in a case, that schedule "may be
21    modified only for good cause." Fed. R. Civ. P. 16(b)(4). Thus, when the pretrial scheduling order
22    imposes a deadline for the parties to amend the pleadings, a motion to amend filed after that date
23    may only be granted if the moving party establishes "good cause" for the amendment. *Johnson v.*
24    *Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). If good cause is shown, then
25    "the party must demonstrate that amendment [is] proper under Rule 15." *Id.*

**ARGUMENT**

27    Plaintiffs seek two separable categories of amendment. First, Plaintiffs seek to vastly expand
28    the scope of the case by adding thousands of works (*see* Mot. 5)—based on their supposed late

DEFENDANT'S OPP. TO MOT.      - 3 -      Case No. 5:24-cv-03811-EKL-SVK
FOR LEAVE TO AMEND

1  realization that databases at issue in *Bartz* allegedly contain some of their works. Second, Plaintiffs
2  seek to add new factual allegations and a new claim regarding alleged torrenting activity using
3  BitTorrent. Neither amendment is proper.

4  **I.     An Amendment To Add New Works Is Improper**

5          **A.     Plaintiffs Have Not Established Good Cause To Add New Works**

6  Rule 16(b)(4)'s "'good cause' standard primarily considers the diligence of the party seeking
7  the amendment." *Johnson*, 975 F.2d at 609. The district court may modify the pretrial schedule
8  only if the schedule could not "reasonably be met despite the diligence of the party seeking the
9  extension." *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's notes to the 1983 amendment).
10 Where Plaintiffs are "aware of a possible theory but failed to timely raise it or alternatively provide
11 a good reason for not doing so, the court is unable to find that Plaintiff[s] acted with diligence."
12 *Gupta v. Int'l Bus. Machs. Corp.*, 2015 WL 9204348, at *2 (N.D. Cal. Dec. 17, 2015).

13 Plaintiffs have been anything but diligent with respect to their request to vastly expand the
14 number of works in suit included in the complaint. Attempting to excuse their delay, Plaintiffs
15 claim that they have only just now learned of the existence of "pirated" datasets from the class
16 certification ruling in *Bartz* (a case in which they have appeared as counsel of record). But that is
17 simply not true. Plaintiffs cited these exact allegations from the original *Bartz* Complaint when they
18 opposed Anthropic's motion to relate in August 2024. *See* ECF 221. That complaint, filed in
19 August 2024, contains extensive allegations that Anthropic downloaded books from "pirated"
20 datasets, referencing Books3, Z-Library (downloadable via PiLiMi), and LibGen—the same
21 allegations that Plaintiffs now—a year later—propose to add to their complaint. *See Bartz* Compl.
22 ¶¶31-43 & n.25. Citing the *Bartz* allegations about "pirated" datasets like LibGen, Z-Library, and
23 Books3, ECF 221 at 2 (citing *Bartz* Compl. ¶¶31-43), Plaintiffs argued that the cases were not
24 related because they involved "different sources of data" requiring "different fact discovery into the
25 events surrounding Anthropic's access to the different sets of work," *id.* Plaintiffs were aware of
26 this information at least four months before the Court's deadline to amend, and over a year before
27 bringing this motion.

28

That year-long gap is well beyond the "eight month delay between the time of obtaining a relevant fact and seeking a leave to amend" that the Ninth Circuit has held to be "unreasonable." *AmericsourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990). *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991), is instructive. There, the Ninth Circuit upheld denial of leave to amend where "the complaint in [a] second action, which allege[d] most of the facts that [the plaintiff] relie[d] upon in its [proposed] amended complaint, was filed … a full year before [the plaintiff] attempted to amend." *Id.* at 799. The Court should hold similarly here, where Plaintiffs belatedly seek to rely on allegations that the *Bartz* complaint raised over a year ago.

Even though Plaintiffs have long known about these allegations, they claim to have only just now realized that their works are included in the datasets at issue in *Bartz*. If so, that late realization is solely attributable to Plaintiffs' own lack of diligence. The theory that datasets of books might contain lyrical songbooks is one Plaintiffs could have reasonably investigated when they reviewed the *Bartz* allegations a year ago in opposing case relation. Indeed, Plaintiffs claim they learned of the existence of the *Bartz* datasets when they read the class certification opinion but were nonetheless able to allege less than two weeks later that those datasets included their works. Plaintiffs offer no explanation for why they could not have discovered this information in August 2024, or any of the intervening months before the deadline to file. In short, Plaintiffs' delay has nothing to do with the July 2025 *Bartz* class certification ruling—a decision that says nothing about lyrics.

Nor is Anthropic to blame. Plaintiffs inappropriately suggest that Anthropic "concealed" evidence concerning the *Bartz* datasets in discovery in this case. Mot. 4-5. Not so. Of course, the operative complaint does not include claims or allegations related to allegedly "pirated" datasets or torrenting activity, and Plaintiffs explicitly disclaimed these allegations in distinguishing their case from *Bartz*. Plaintiffs have "no entitlement to discovery to develop new claims … that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment; *Oracle Am., Inc. v. Hewlett Packard Ent. Co.*, 2016 WL 11806000, at *4 (N.D. Cal. Nov. 7, 2016) (defendant need not provide discovery regarding a new theory for copyright

infringement "unless and until [the plaintiff] amends its complaint to add [that theory]" (citing FRCP 26(b)(1) advisory committee note to 2000 amendment)).

But in any event, Anthropic's productions undermine Plaintiffs' suggestion that Anthropic has attempted to "conceal[]" evidence related to "pirated" datasets. In the course of discovery, Anthropic has produced numerous documents that reference "LibGen" or "PiLiMi." *See* Decl. of Ari Holtzblatt in Supp. of Opp'n ("Holtzblatt Decl."), ¶5. In fact, Plaintiffs *quoted* one these documents—which refers to "LibGen" multiple times—in the FAC. *See* FAC ¶73 (quoting "useless junk" and "boilerplate" from Anthropic_0000014096); Holtzblatt Decl. ¶¶6-7. Plaintiffs reviewed these productions but apparently elected not to investigate the multiple references to the datasets they discuss. That is a textbook failure of diligence.

Nor is there merit to Plaintiffs' critique of Anthropic's response to Interrogatory No. 6. Anthropic rightly objected to the breadth of the interrogatory, "made a good faith effort to identify the relevant datasets that are most likely to contain song lyrics," and identified the three data sources that "are more likely to contain song lyrics than other datasets." Holtzblatt Decl. ¶4. Those sources included Common Crawl, *id.*—one of the sources that Plaintiffs themselves cited as relevant to this case in opposing Anthropic's motion to relate this case and *Bartz*, ECF 221 at 2. In addition, Anthropic explained the enormous burden that would be required to forensically analyze all datasets that Anthropic used for training to verify whether any dataset contained any song lyrics or portions of song lyrics and noted that it was willing to meet and confer regarding other datasets. Holtzblatt Decl. ¶4. Publishers did not raise any concern about that response until now—nearly eight months after Anthropic made it, and shortly before the close of fact discovery.

The bottom line is that Plaintiffs have had over a year of notice about Anthropic's alleged use of the allegedly "pirated" datasets based on the public allegations made in *Bartz*. They have given no coherent explanation for why they have only just sought to inject additional works, beyond the 499 currently at issue, into this litigation—eight months after the Court's deadline to amend the pleadings. Plaintiffs have not demonstrated the reasonable diligence required by Rule 16, and there is no good cause to amend. The Court should deny Plaintiffs' motion to add additional works in suit on this basis alone.

**B.     Adding New Works Would Prejudice Anthropic And Cause Undue Delay**

Even if good cause exists under Rule 16(b)(4) (it does not), Plaintiffs' request to add an unknown, opened-ended number of works to the suit is improper under Rule 15(a)(2). Leave to amend should be denied if "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 949 (9th Cir. 2023).

Adding new works would unduly prejudice Anthropic and delay the litigation. This Court only just recently granted a limited extension of the schedule to complete the discovery permitted on the operative allegations in this case. Plaintiffs' untimely motion would inject further and significant delay. By Plaintiffs' own admission, discovery into new works cannot occur under the recently revised schedule, and so their motion seeks another, much longer extension. Mot. 11. Plaintiffs say they will need three additional months to identify the works they wish to add to the suit, *id.*, but they make no attempt to quantify how many works they might seek to add (other than suggesting it could be thousands, *id.* at 5), and their proposed timeline ignores *Anthropic's* entitlement to discovery into, at minimum, the ownership and copyright records of *each* work to ascertain whether it is properly included in the suit—which Anthropic could not even begin to do until Plaintiffs identify the works they wish to add three months from now. Plaintiffs have struggled to provide evidence (in response to Anthropic's repeated requests) concerning the content and registration for the existing 499 works to date; adding hundreds or thousands of additional works will necessarily delay discovery further.[1]

Moreover, Plaintiffs' motion is quintessentially "untimely and prejudicial" because it would vastly "expand[] [the] scope … of liability just before the expiration of the previously scheduled discovery period." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013) (citing *Elite Ent., Inc. v. Khela Bros. Ent.*, 277 F.R.D. 444, 448 (E.D. Va. 2005)). Plaintiffs likely will seek to add *thousands* of new works—potentially tripling, quadrupling, or more

---

[1] The cases Plaintiffs cite concerning "staged proceedings" are irrelevant. Mot. 12. None of those cases supports the proposition that an untimely amendment that by itself generates a need for staged proceedings (like Plaintiffs' motion) is proper.

1  Anthropic's potential liability with only eight weeks of discovery to go as of the date of this brief
2  (even less once briefing is complete and the Court issues its decision).
3      Plaintiffs' request to add new works is also prejudicial because it pulls a "bait and switch"
4  on Anthropic. *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1122-23 (N.D. Cal. 2011)
5  (denying leave to amend). In reliance on Plaintiffs' express denial that it was pursuing allegations
6  with respect to "pirated" datasets, ECF 221 at 2, and the Court's subsequent order denying relation,
7  ECF 239, Anthropic has focused its discovery efforts and legal and factual analyses in *Concord* on
8  the 499 works at issue. Plaintiffs cannot now have it both ways by amending their complaint to add
9  the allegations they invoked to distinguish and keep this case separate from *Bartz*.

10 **II.    An Amendment To Add A Torrenting Claim And Related Allegations Is Improper**

11     **A.    Plaintiffs Lack Good Cause To Add Torrenting Amendments**

12  For many of the same reasons that Plaintiffs lack good cause to add new works, they also
13  lack good cause to add a new claim and related allegations about torrenting using BitTorrent
14  software. Like the allegations related to allegedly "pirated" datasets, Plaintiffs have been on notice
15  that those datasets could be accessed via BitTorrent since at least August 2024. The same set of
16  *Bartz* allegations that Plaintiffs cited in opposing Anthropic's motion to relate the *Bartz* case to this
17  case expressly refer to "BitTorrent" and explain that the "collections of pirated books" that
18  generative AI companies like Anthropic allegedly use—"such as Library Genesis [LibGen], Z-
19  Library [downloadable via PiLiMi], and Bibliotik"—"circulate via the BitTorrent file-sharing
20  network." *Bartz* Compl. ¶36 n.25; *see* ECF 221 at 2 (citing *Bartz* Compl. ¶¶31-43). Plaintiffs have
21  therefore known for over a year that Anthropic could have used BitTorrent to access materials from
22  datasets that allegedly include Plaintiffs' works. Plaintiffs cannot credibly claim to have learned
23  anything new from the recent class certification decision in *Bartz*.
24  In any event, it would have taken the barest of efforts for Plaintiffs to learn that the allegedly
25  "pirated" datasets alleged in the *Bartz* Complaint can be accessed via torrent systems: that
26  information has been readily ascertainable since before Plaintiffs filed their suit in this case,
27  including from a 2023 *Atlantic* article cited in the *Bartz* Complaint. *See Bartz* Compl. ¶36 n.25
28  (quoting Alex Reisner, *Revealed: The Authors Whose Pirated Books are Powering Generative AI*,

The Atlantic (Aug. 19, 2023)). And as early as December 2024, judicial decisions in similar generative AI copyright cases have drawn the connection between allegedly "pirated" datasets mentioned in the *Bartz* Complaint—like Bibliotik (Books3), Z-Library (downloadable via PiLiMi), and LibGen—and torrenting. *See Kadrey v. Meta Platforms*, 2024 WL 5008065, at *4 (N.D. Cal. Dec. 6, 2024) ("The books and other materials aggregated by these websites have also been available in bulk via torrent systems."). In fact, Plaintiffs themselves—in their motion—contend that "BitTorrent [is] a filesharing program ***synonymous*** with internet piracy." Mot. 1 (emphasis added). There were more than sufficient connections between alleged "pirated" datasets and BitTorrent to place Plaintiffs on notice that they could have investigated Anthropic's possible use of BitTorrent with respect to their works. But they did not, and that lack of diligence precludes a finding of good cause. *Gupta*, 2015 WL 9204348, at *2.

### B. Torrenting Amendments Would Cause Undue Prejudice And Delay

Amendment is also improper under Rule 15(a)(2) because it would "greatly alter[] the nature of the litigation and … require[] [Anthropic] to … undertake[], at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "[W]hen, after a period of extensive discovery, a party proposes a late-tendered amendment that would fundamentally change the case to incorporate new causes of action and that would require discovery … , the amendment may be appropriately denied as prejudicial to the opposing party." *Fresno Unified Sch. Dist.*, 980 F. Supp. 2d at 1178; *see also id.* at 1177 (a motion to "expand [the] scope and theory of liability just before the expiration of the previously scheduled discovery period" is "untimely and prejudicial").

This describes Plaintiffs' proposed torrenting amendments to a tee. This case is 19 months into discovery, and fact discovery is due to close in eight weeks (a deadline recently extended to complete outstanding discovery into the *original* works and claims in this case). The addition of torrenting allegations and a new distribution claim based on Anthropic's supposed direct uploading of Plaintiffs' works would fundamentally alter the nature of this action, transforming it from a focused case concerning the presence of lyrics in training data and outputs, to a technically and legally complex case concerning the nature of torrenting and its interaction with copyright law.

These allegations will require costly and time-intensive new discovery on issues that are foreign to this case, including testimony by new fact and expert witnesses. Plaintiffs recognize that these amendments will significantly expand the scope of discovery; since filing their motion for leave to amend Plaintiffs have served 13 requests for production of documents related to these proposed amendments, 4 related interrogatories, 17 related requests for admission, and sweeping 30(b)(6) related deposition topics. *See* Holtzblatt Decl. ¶¶8-12.

Plaintiffs' attempt to downplay this vast expansion and the significant costs it will impose on Anthropic by pointing to the discovery produced in *Bartz* does not reflect reality. Mot. 12. *Bartz* involves only *downloading* allegations—there is no copyright-infringement-by-distribution claim predicated on works allegedly uploaded via torrenting. To properly prepare a defense Anthropic will need to undertake entirely new factual investigation, complex data analysis, and witness preparation, and will need to identify, retain, and provide analysis from new experts—including about how torrenting works from a technical perspective—to permit an assessment of whether any of the specific actions Anthropic allegedly took amount to a "distribution" of a copyrighted work. Because Plaintiffs' request to add new torrenting allegations will completely upend the progress of this litigation, "the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would cause undue prejudice." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (cleaned up).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Date: August 25, 2025

JOSEPH R. WETZEL (SBN 238008)
joe.wetzel@lw.com
ANDREW M. GASS (SBN 259694)
andrew.gass@lw.com
BRITTANY N. LOVEJOY (SBN 286813)
brittany.lovejoy@lw.com
IVANA DUKANOVIC (SBN 312937)
ivana.dukanovic@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111

*/s/ Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
ALLISON BINGXUE QUE (SBN 324044)
Allison.Que@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Louis W. Tompros (*pro hac vice*)

Telephone: (415) 391-0600

SARANG V. DAMLE (*pro hac vice*)
sy.damle@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200

ALLISON L. STILLMAN (*pro hac vice*)
alli.stillman@lw.com
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1747

Louis.Tompros@Wilmerhale.Com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

ARI HOLTZBLATT (SBN 354361)
Ari.Holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*pro hac vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000

TAYLOR GOOCH (SBN 294282)
taylor.gooch@wilmerhale.com
KYLE EDWARDS HAUGH (SBN 323952)
kyle.haugh@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
50 California St.
San Francisco, CA 94111
Telephone: (628) 235-1000

*Attorneys for Defendant*
**ANTHROPIC PBC**