1  [Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ANTHROPIC PBC,<br><br>    Defendant. | Case Number: 5:24-cv-03811-EKL-SVK<br><br>**JOINT DISCOVERY DISPUTE STATEMENT REGARDING EVIDENCE OF ANTHROPIC'S TORRENTING OF PUBLISHERS' WORKS**<br><br>Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen |

Pursuant to Section 8 of the Court's Civil Standing Order, and L.R. 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement. The Parties seek the Court's intervention in resolving a dispute regarding discovery as to Anthropic's use of BitTorrent to download and upload copies of Publishers' works. The Parties' joint chart is attached as Ex. I. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference on July 22 and Aug. 18 and 22, 2025 and by email. The Parties have been unable to resolve the issues below. The current fact discovery deadline is 53 days away. ECF No. 416. As a compromise, Publishers propose that, rather than searching and producing new documents in response to Publishers' requests, Anthropic produce the discovery on these issues it has produced in the *Bartz v. Anthropic* case. Anthropic proposes that it produce the unredacted briefing from the class certification and summary judgment motions in *Bartz v. Anthropic* and produce the data from the LibGen and PiLiMi datasets.

### I. **Publishers' Position:** Anthropic must produce discovery regarding its use of BitTorrent to copy Publishers' works from pirate libraries for AI training.

Unfortunately, Publishers must seek the Court's assistance in resolving another discovery dispute—this one due to Anthropic's refusal to produce discovery regarding its previously-undisclosed use of BitTorrent to copy Publishers' works from pirate websites for AI training.

Judge Alsup recently issued a decision in *Bartz v. Anthropic*, another case pending against Anthropic, which revealed for the first time that Anthropic used BitTorrent to download copyrighted books—including books of Publishers' copyrighted lyrics—on a massive scale to train its AI models. Specifically, Judge Alsup found Anthropic used "the infamous BitTorrent protocol," a filesharing program synonymous with internet piracy, to access Library Genesis ("LibGen") and Pirate Library Mirror ("PiLiMi"), illegal "pirate library" websites infamous for housing pirated content, to download via "torrenting" at least 7 million unauthorized copies of books. *Bartz v. Anthropic PBC*, No. C24-05417 WHA, 2025 WL 1993577, at *1 (N.D. Cal. July 17, 2025). Those books include many lyric and sheet music anthologies containing Publishers' copyrighted works.

Anthropic's use of BitTorrent in this manner is critically relevant to Publishers' claims. One of Publishers' core *existing* claims in this case is that Anthropic infringed their copyrighted

lyrics by copying those works to train its AI models. Now, Judge Alsup's recent *Bartz* opinion reveals that one of the ways Anthropic copied Publishers' lyrics for AI training is by illegally torrenting books containing those lyrics from pirate sites. Yet, inexplicably, Anthropic **never** disclosed in this case that it used BitTorrent to copy song lyrics in this manner—despite Publishers' issuing numerous discovery requests calling for exactly this type of information. Anthropic's failure to timely disclose its use of BitTorrent to copy Publishers' works is astounding, as is its refusal to cure these earlier omissions and produce relevant BitTorrent-related discovery now.

Anthropic's use of BitTorrent to copy Publishers' lyrics in this way has major implications for this case. Anthropic's downloading of these works via torrenting is plainly relevant to Publishers' *existing* claims that Anthropic willfully infringed their reproduction rights by copying the works for AI training and in AI output. *See, e.g.*, First Am. Compl. ¶¶ 1-2, 6, 8, 16, 52-53, 57-58, 60-65, 75-76, 160, ECF No. 337. Thus, Anthropic's contention that this discovery is relevant only to "unasserted" claims is entirely baseless. There is absolutely no reason to defer resolution of this core outstanding discovery until after Publishers' pending Motion to Amend is resolved, as Anthropic suggests.[1] That would only delay production of this long overdue discovery even more.

Publishers have spent over a month trying to resolve this issue without involving the Court. But Anthropic has refused to produce this key discovery (despite having already produced all of it in *Bartz*) and rejected Publishers' reasonable compromise offers. Given the looming fact discovery deadline and the need for Publishers to review this key discovery relevant to their current claims sufficiently in advance of upcoming fact depositions, Publishers must file this dispute statement.

A.   **There is no question that Publishers' lyrics are included in the 7 million books that Anthropic illegally downloaded (and uploaded).**

As an initial matter, there is "no question" that Anthropic torrented millions of books from pirate libraries. *Bartz*, 2025 WL 1993577, at *9, 11, 12. Among other things, Judge Alsup found that, "in June 2021, Anthropic's co-founder used the infamous BitTorrent protocol to copy books

---

[1] Additionally, when Anthropic downloaded via torrenting Publishers' lyrics from pirate sites, it was simultaneously *uploading* to the public unauthorized copies of the same works, which raises *new* claims against Anthropic for illegal distribution of the works. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1027 (9th Cir. 2013). For that reason, Publishers moved to amend their Complaint to include these new unauthorized distribution claims. *See* Pls.' Motion to Amend, ECF No. 411. But, regardless of how that Motion to Amend is ultimately resolved, the requested BitTorrent-related discovery is still directly relevant to Publishers' existing claims.

peer-to-peer from decentralized copies of another pirate library—Library Genesis"; "in July 2022, Anthropic torrented at least two million copies of pirated books from distributed copies of PiLiMi"; and "[i]n early 2021, a co-founder of Anthropic downloaded 196,640 unauthorized copies of copyrighted books from the pirate library known as Books3." *Id.* at *1.

There is also no question that the books Anthropic downloaded from LibGen and other pirate sites included many books containing Publishers' copyrighted lyrics, including Works in Suit. LibGen, for instance, contains ***thousands*** of illegal copies of sheet music, songbooks, and other lyric-related books, including the following books containing Publishers' Works in Suit:

- *The Best Songs Ever* features lyrics and sheet music to Works in Suit "Candle in the Wind," "Every Breath You Take," and "What a Wonderful World," among other works.
- *Songs of the 1960s, The Decade Series* includes lyrics and sheet music to Works in Suit "Born to Be Wild" (for which Publishers' Complaint specifically describes how Anthropic copied the lyrics in Claude output, while omitting copyright management information, *see* ECF No. 337 ¶ 132), "Blowin' in the Wind," "California Dreamin'," "California Girls," "God Only Knows," "Good Vibrations," and "Mr. Tambourine Man," among other works.
- *Guitar World's 50 Greatest Rock Songs of All Time Songbook* features lyrics and sheet music to Works in Suit "The Boys Are Back in Town" (for which a Claude user requested lyrics, and Claude generated output copying the lyrics in full, *see* ECF No. 337 ¶ 87), "All Along the Watchtower," "Barracuda," and "Free Bird," among other works.

Countless other books with Publishers' lyrics were likewise illegally torrented by Anthropic.

**B.     Anthropic should immediately produce this long overdue discovery.**

Despite the fact that Anthropic's downloading of such files from LibGen and other pirate sites speaks directly to Publishers' existing claims, Anthropic deliberately failed to disclose this activity in response to Publishers' prior discovery requests, and it has likewise refused to produce discovery on this activity in response to Publishers' follow-up requests. That is improper.

Anthropic should have long ago produced documents regarding its use of BitTorrent to download song lyrics for AI training. For instance, Publishers' Interrogatory 6 requested that Anthropic "[i]dentify and describe each dataset used to train Claude, including the dataset's origin . . . [and] contents." Ex. A. Nowhere do Anthropic's responses to Interrogatory 6 disclose its use of BitTorrent to download millions of books—including myriad books with Publishers' lyrics— from pirate libraries for AI training. Ex. B; ECF No. 410-3. Given Judge Alsup's findings in *Bartz*, Anthropic should have, at a bare minimum, identified and described the specific files Anthropic

torrented via BitTorrent and the pirate libraries from which it downloaded them. Moreover, in response to Publishers' RFP 29 (which requests "[a]ll Documents concerning the use of copyrighted materials to train Claude," Ex. C), Anthropic a year ago agreed to produce "documents relating to the use of song lyrics to train Claude," S. Sampoli Email (Aug. 23, 2024). Despite that commitment, Anthropic failed to produce any documents regarding its use of song lyric books downloaded via BitTorrent (or otherwise) from LibGen and other pirate sites for AI training. This includes, in particular, the torrented files themselves, which will confirm Anthropic's torrenting of specific books containing specific Publishers' lyrics. In response to Publishers' RFPs 25, 26, and 68, Ex. C; Ex. D, Anthropic committed to produce documents "sufficient to show the criteria used by Anthropic to select data for training Claude," "sufficient to show Anthropic's data acquisition and data evaluation process," and "sufficient to show the 'diligence' Anthropic conducts on the data it uses for training Claude," Ex. E; Ex. F. But despite these promises, Anthropic failed to produce documents sufficient to show the criteria it used to select the training data it downloaded via BitTorrent (or otherwise) from pirate sites, its data acquisition and data evaluation process in connection with this activity, or "diligence" performed on works downloaded in this way from these pirate sites.

For the avoidance of any doubt, Publishers have also served follow-up document requests, which seek this discovery even more explicitly. That includes the following requests:

- RFP 115: "All Documents and Communications regarding Anthropic's consideration of or actual use of Pirate Sites in connection with developing and training its AI models (including, without limitation, Anthropic's downloading, uploading, or torrenting of copyrighted works from Pirate Sites [defined to include LibGen and PiLiMi])." Ex. G.
- RFP 116: "Documents sufficient to show all copyrighted song lyrics that Anthropic has downloaded from, uploaded to, or torrented from Pirate Sites, and which of those copies of lyrics Anthropic considered using and actually used to train Claude." *Id*.

Publishers refused to respond to RFP 116 altogether, and offered only to produce a small subset of relevant documents in response to RFP 115, refusing to conduct any other searches. Ex. H.

Anthropic has no legitimate basis for refusing to produce relevant BitTorrent-related discovery proportional to Publishers' claims. Anthropic cannot point the finger at Publishers for failing to divine its long-concealed BitTorrent use. Publishers could not have discovered

Anthropic's use of BitTorrent until recently, as Anthropic failed to disclose such use in this action and its BitTorrent activity was not otherwise made public prior to the *Bartz* decision. Nothing in Publishers' prior, unrelated opposition to the motion to relate the *Bartz* case is to the contrary— Publishers could not possibly have "explicitly disclaimed" claims as to Anthropic's use of BitTorrent to download their lyrics then, given Anthropic was concealing this activity at the time.

### C. As a compromise, Anthropic should produce *Bartz* discovery on these issues.

As a compromise, Publishers propose that, rather than searching and producing new documents in response to Publishers' requests, Anthropic simply produce the discovery previously produced in the *Bartz v. Anthropic* case regarding its downloading and uploading of books via BitTorrent (or otherwise) from pirate sites.[2] That would largely satisfy Publishers' outstanding discovery requests, while minimizing burden to Anthropic, given that all these documents have already been reviewed and produced in *Bartz*. Such discovery is appropriate where, as here, the two cases "'have significant factual and legal overlap' and involve the same legal claims." *Rumble, Inc. v. Google*, 2023 WL 3751797, at *7 (N.D. Cal. May 31, 2023) (quoting *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017)).

### D. Anthropic's proposed "compromise" is wholly insufficient.

After initially refusing to produce any BitTorrent-related discovery whatsoever, Anthropic suggested on Aug. 4 that it might agree to produce a small subset of BitTorrent discovery—"the LibGen metadata it acquired" and "the PiLiMi metadata it acquired"; "the LibGen and PiLiMi raw and extracted text datasets that it possesses"; and "unredacted copies of the class certification and summary judgment briefing in *Bartz*"—and that it would supplement its deficient response to Publishers' Interrogatory 6.[3] While Anthropic should certainly be required to provide this discovery, this does not come close to satisfying its discovery obligations. Anthropic must also produce the many other relevant documents regarding its downloading and uploading via BitTorrent (or otherwise) of books containing Publishers' works from pirate sites like LibGen, all of which go directly to Publishers' current claims. Anthropic appears to have already produced

---

[2] This would include documents produced in the case, written discovery, deposition transcripts and exhibits, and summary judgment and class certification briefing.

[3] Anthropic appears to have withdrawn its agreed-to Interrogatory 6 supplementation in its latest position statement.

thousands of documents across dozens of custodians in the *Bartz* case regarding this activity, many of which documents are specifically referenced in Judge Alsup's recent rulings but remain largely under seal. Anthropic cannot exclude from discovery here the huge number of BitTorrent-related documents and communications it produced in *Bartz*—including documents showing that it knowingly exploited illegal content from pirate sites, including Publishers' lyrics, to train its AI models—given that it copied the *Bartz* plaintiffs' and Publishers' works in the same way.

Anthropic cannot delay further. The fact discovery deadline is October 21, 2025, less than two months away, and Publishers must have the opportunity to review this discovery impacting their core existing claims against Anthropic sufficiently in advance of upcoming fact depositions.

## II. **Anthropic's Position**

Plaintiffs' discovery request is a transparent attempt to get discovery into a claim and allegations that they have not yet been granted leave to assert, and that are irrelevant to the claims that are presently at issue. They seek to preempt Judge Lee's decision on their late-breaking Motion for Leave to File a Second Amended Complaint (ECF 411) by moving to compel discovery related to those still-unasserted claims now. Plaintiffs attempt to distract from that glaring problem with their demands by claiming that this discovery was somehow already called for and improperly "undisclosed." *Supra* p.1. But that is simply untrue and contrary to representations that the Plaintiffs made to Anthropic and this Court. Anthropic had no obligation to produce documents regarding unasserted and *explicitly disclaimed* allegations.

Plaintiffs' proposed "compromise" to this discovery dispute—that Anthropic produce all the discovery from *Bartz*—is not only an improper request for cloned discovery but also a last-minute bait-and-switch tactic to obtain discovery from a case after vigorously opposing Anthropic's reasonable request to relate this case to that one just a year ago. ECF 221. In opposing relation, Plaintiffs expressly distinguished *Bartz* on the grounds that *Bartz* implicates the allegedly pirated books datasets while this case concerns Anthropic's purported acquisition of "song lyrics from a number of sources, including a dataset called the Common Crawl, YouTube, social media sites, and by extracting them without permission from licensed lyric aggregators." *Id.* at 2. Having successfully opposed relation on the grounds that those books datasets are irrelevant to this case,

Plaintiffs cannot now claim in the waning days of fact discovery that they were always relevant and should have been produced.

Accordingly, Anthropic respectfully requests that this Court defer ruling on the discovery dispute until resolution of the pending Motion for Leave to File a Second Amended Complaint by Judge Lee. Alternatively, Anthropic has offered to produce the unredacted briefs from the class certification and summary judgment motions in the *Bartz* case (other than information designated under the Protective Order by the *Bartz* Plaintiffs) and to produce the raw text, extracted text, and metadata from LibGen and PiLiMi.

### A. Publishers Are Not Entitled To Discovery On A Non-Operative Complaint

Plaintiffs' requested discovery is, in their words, related to the "use of BitTorrent to copy Publishers' works from pirate websites for AI training." *Supra* p.1. That is precisely the information Plaintiffs are seeking to add to the case in their Motion for Leave to File a Second Amended Complaint. *See* ECF 411 at ii, 1 (seeking leave to "assert new claims" and "allegations" regarding Anthropic's alleged "downloading" and "uploading [of] works via BitTorrent" from allegedly "pirated" datasets). Plaintiffs here suggest that their Motion seeks only to add "new unauthorized distribution claims" based on Anthropic's alleged "uploading" of works via BitTorrent. *Supra* p.2 n.3. Not so. That Motion also seeks to vastly expand the scope of this case by adding potentially thousands of new works to the complaint (*see* ECF 411 at 5)—and allegations that Anthropic downloaded those works via BitTorrent—based on Plaintiffs' supposed late realization that the allegedly pirated book datasets at issue in *Bartz* allegedly contain some of their works, embedded within some of the books in those datasets. *See* ECF 419 (Opp'n to Mot. for Leave to Amend ("Opp'n")). The amendment dispute before Judge Lee thus concerns whether Plaintiffs should be permitted to add both allegations that Anthropic copied works from allegedly pirated book datasets and allegations that Anthropic infringed Plaintiffs' works using BitTorrent— precisely what Plaintiffs are seeking discovery into now.

The allegedly pirated book datasets and BitTorrent are not relevant to any claims in this case, and Plaintiffs previously told Anthropic and the Court exactly that. A year ago, Plaintiffs opposed relating this case and *Bartz* by claiming that they were "*entirely different*." ECF 221 at 1

(emphasis added). Specifically, citing the *Bartz* allegations about "pirated" datasets like LibGen, Z-Library (now downloadable via PiLiMi), and Books3, which the *Bartz* complaint noted could be accessed via BitTorrent, *id.* at 2 (citing Class Action Compl. ¶¶31-43, *Bartz v. Anthropic*, No. 3:24-cv-5417-WHA (N.D. Cal. Aug. 19, 2024), ECF 1), Plaintiffs argued that the cases involved "different sources of data" requiring "different fact discovery into the events surrounding Anthropic's access to the different sets of work," *id.* Plaintiffs cannot now claim that discovery regarding allegations that they explicitly said were not at issue in this case has been relevant all along. Rather, the requested discovery relates only to the new claim and allegations that Plaintiffs have belatedly asked Judge Lee to let them add to this case.

That violates a settled principle of law: Discovery into unasserted claims and allegations is improper and not permitted. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"); *Oracle Am., Inc. v. Hewlett Packard Ent.*, 2016 WL 11806000, at *4 (N.D. Cal. Nov. 7, 2016) (holding defendant need not provide discovery regarding a new theory for copyright infringement "unless and until [the plaintiff] amends its complaint to add th[at] theory"). Plaintiffs should not be permitted to do an end-run around Judge Lee's decision. The Court will either grant the motion, in which case Plaintiffs' requested discovery would become relevant, or the motion will be denied—but Plaintiffs are not entitled to discovery into the unasserted claim and allegations in the meantime. *See, e.g.*, *Dardashty v. Hyundai Motor Am.*, 2024 WL 4744022, at *1 (C.D. Cal. July 3, 2024) ("[T]he Court does not consider the allegations in the amended complaint when deciding what discovery is relevant and proportional to the needs of the case. Plaintiff's Motion has not yet been granted.").

In any event, Plaintiffs are wrong to claim that the datasets were "undisclosed." Anthropic has produced at least 91 documents referencing "LibGen" or "PiLiMi," two of the allegedly "pirated" datasets. *See* Opp'n at 6. In fact, Plaintiffs *quoted* one of those documents—which refers to "LibGen" multiple times—in their First Amended Complaint filed on April 25, 2025. *See id.*; ECF 419-1 at ¶6 (Decl. of Ari Holtzblatt in Supp. of Opp'n). And they have been on notice at least since the *Bartz* complaint was filed a year ago that these datasets allegedly can be accessed

1    via BitTorrent. Plaintiffs' assertion that any of this was "conceal[ed]" is specious.

2         Nor is there merit to Plaintiffs' critique of Anthropic's response to Interrogatory No. 6. *See supra* pp.3-4. Anthropic rightly objected to the breadth of that interrogatory, "made a good faith effort to identify the relevant datasets that are most likely to contain song lyrics," and identified the three data sources that "are more likely to contain song lyrics than other datasets." *See* Opp'n 6. Those sources included Common Crawl, *id.*—one of the sources that Plaintiffs themselves cited as relevant to this case in opposing Anthropic's motion to relate this case and *Bartz*, ECF 221 at 2. In addition, Anthropic explained the enormous burden that would be required to forensically analyze all datasets that Anthropic used for training to verify whether any dataset contained any song lyrics or portions of song lyrics and noted that it was willing to meet and confer regarding other datasets. *See* Opp'n 6. Publishers did not raise any concern about that response until now—nearly eight months after Anthropic made it, and shortly before the close of fact discovery.

### B.    Plaintiffs Fail To Justify Cloned Discovery

Plaintiffs' proposed "compromise" is actually broader and more burdensome than the discovery requests at issue. They now demand that "Anthropic produce the discovery on these issues it has produced in the *Bartz v. Anthropic* case." *Supra* p.1. During the parties' conferrals on these issues Plaintiffs confirmed that they are indeed seeking *all* discovery from *Bartz*, unless Anthropic can show that specific items are irrelevant. That is not a compromise, and it remains entirely untethered to any claim in the litigation, including those they seek to add through yet another amendment.

It is also an impermissible demand for cloned discovery. "Asking for all documents produced in another matter is not generally proper," and courts routinely reject requests for cloned discovery as presumptively overbroad or irrelevant "even if the subject matter of [the] cases seem to overlap." *Ludlow v. Flowers Foods, Inc.,* 2019 WL6252926, at *18 (S.D. Cal. Nov. 22, 2019). "[S]imilarities" between cases are not "enough to require a *carte blanche* production of all documents from the prior litigation." *Kurin, Inc. v. ICU Med., Inc.*, 2024 WL 5717968, at *3 (C.D. Cal. Nov. 22, 2024). Instead, "[p]laintiff[s] must make proper discovery requests, identifying the

specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defense" in the present case. *Rumble, Inc. v. Google* LLC, 2023 WL 3751797, at *7 (N.D. Cal. May 31, 2023) (citing *King Cnty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011); *In re Volkswagen "Clean Diesel" Mktg., Sales Practice & Prods. Liabl. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017)).

Here, wholesale cloned discovery is improper because *Bartz* involves allegations and claims that are not implicated by Plaintiffs' existing or proposed amended complaint, as well as a staggering amount of discovery. *See, e.g.*, *Rodriguez v. Google, LLC*, 2021 U.S. Dist. LEXIS 23834, at *6 (N.D. Cal. Feb. 8, 2021) (prohibiting cloned discovery that "would include documents irrelevant to plaintiffs' case"). For example, the plaintiffs in *Bartz* alleged that Anthropic "purchased copyrighted books," "scanned" them, "and stored them in digitized, searchable files"—issues not in play in this case. *Bartz v. Anthropic PBC*, 2025 WL 1741691, at *1 (N.D. Cal. June 23, 2025) (granting partial summary judgment).

Plaintiffs' request for cloned discovery is both misplaced and marks a surprising reversal of their position that the allegations in *Bartz* are separate from and irrelevant to their claims in this case. *See* ECF 221. They should not be permitted to benefit from their bait-and-switch scheme just two months before the close of discovery.

### C.     Anthropic's Proposed Compromise Was Appropriate

Anthropic has offered as a compromise to provide the datasets that Plaintiffs now claim Anthropic used to train certain models that were never publicly released. Anthropic has also offered to produce the unredacted briefing from the *Bartz* motions, which is where Plaintiffs are drawing their information. If, as Plaintiffs claim, this discovery dispute concerns only Anthropic's alleged copying of works from those allegedly pirated datasets, this should provide Plaintiffs with everything they require. Their rejection of that compromise underscores their true aim here: to obtain discovery into claims they have not yet been granted leave to assert.

| | | |
|---|---|---|
| 1 | Dated: August 29, 2025 | Respectfully submitted, |
| 2 | By: */s/ Timothy Chung* | By: */s/ Joseph R. Wetzel* |
| 3 | **OPPENHEIM + ZEBRAK, LLP** | **LATHAM & WATKINS LLP** |
| | Matthew J. Oppenheim | Joseph R. Wetzel (SBN 238008) |
| 4 | Nicholas C. Hailey | joe.wetzel@lw.com |
| | Audrey L. Adu-Appiah | Andrew M. Gass (SBN 259694) |
| 5 | (admitted *pro hac vice*) | andrew.gass@lw.com |
| | 4530 Wisconsin Ave., NW, 5th Floor | Brittany N. Lovejoy (SBN 286813) |
| 6 | Washington, DC 20016 | britt.lovejoy@lw.com |
| 7 | Telephone: (202) 480-2999 | 505 Montgomery Street, Suite 2000 |
| | matt@oandzlaw.com | San Francisco, California 94111 |
| 8 | nick@oandzlaw.com | Telephone: +1.415.391.0600 |
| | aadu-appiah@oandzlaw.com | |
| 9 | | Sarang V. Damle |
| | Jennifer Pariser | (admitted *pro hac vice*) |
| 10 | Andrew Guerra | sy.damle@lw.com |
| | Bret Matera | Sara Sampoli (SBN 344505) |
| 11 | Timothy Chung | sara.sampoli@lw.com |
| | Michelle Gomez-Reichman | 555 Eleventh Street NW, Suite 1000 |
| 12 | (admitted *pro hac vice*) | Washington, DC 20004 |
| | 461 5th Avenue, 19th Floor | Telephone: +1.202.637.2200 |
| 13 | New York, NY 10017 | |
| 14 | Telephone: (212) 951-1156 | Allison L. Stillman |
| | jpariser@oandzlaw.com | (admitted *pro hac vice*) |
| 15 | andrew@oandzlaw.com | alli.stillman@lw.com |
| | tchung@oandzlaw.com | 1271 Avenue of the Americas |
| 16 | bmatera@oandzlaw.com | New York, New York 10020 |
| 17 | mgomez-reichman@oandzlaw.com | Telephone: +1.212.906.1747 |
| 18 | **COBLENTZ PATCH DUFFY & BASS LLP** | |
| | Jeffrey G. Knowles (SBN 129754) | *Attorneys for Defendant* |
| 19 | One Montgomery Street, Suite 3000 | |
| | San Francisco, CA 94104 | |
| 20 | Telephone: (415) 391-4800 | |
| | ef-jgk@cpdb.com | |
| 21 | | |
| | **COWAN, LIEBOWITZ & LATMAN, P.C.** | |
| 22 | Richard S. Mandel | |
| | Jonathan Z. King | |
| 23 | Richard Dannay | |
| 24 | (admitted *pro hac vice*) | |
| | 114 West 47th Street | |
| 25 | New York, NY 10036-1525 | |
| | Telephone: (212) 790-9200 | |
| 26 | rsm@cll.com | |
| | jzk@cll.com | |
| 27 | rxd@cll.com | |
| 28 | *Attorneys for Plaintiffs* | |

Respectfully submitted,

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
Fax: (650) 858-6100

Ari Holtzblatt (SBN 354631)
ari.holtzblatt@wilmerhale.com
Robin C. Burrell (admitted *pro hac vice*)
robin.burrell@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6964

Louis W. Tompros (admitted *pro hac vice*)
louis.tompros@wilmerhale.com
60 State Street
Boston, MA 02109
(617) 526-6886

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
50 California Street
Suite 3600
San Francisco, CA 94111
(628) 235-1002

*Attorneys for Defendant*

## SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 29, 2025                                          */s/ Timothy Chung*
                                                                                       Timothy Chung