**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO MODIFY SCHEDULING ORDER** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen <br><br> Date: October 8, 2025 <br> Time: 10:00 AM <br> Courtroom: 7 – 4th Floor |

Anthropic's Opposition neither denies that it deliberately torrented millions of copyrighted books, nor that doing so constitutes an independent copyright violation sufficient to support a new claim. The facts of Anthropic's additional unlawful acts are now beyond dispute, based on the new evidence disclosed in *Bartz v. Anthropic*. 2025 WL 1993577, at *9-12 (N.D. Cal. July 17, 2025) (finding "[t]here is no question Anthropic torrented five million files from LibGen," "downloaded via torrenting two million files from PiLiMi," and "downloaded 196,640 records in the Books3 collection"); 2025 WL 2308091, at *1 (N.D. Cal. Aug. 11, 2025) ("Anthropic's downloading of pirate libraries and its deployment of bit-torrenting to do so looms large in this case.").

Nor is there any question that the millions of books Anthropic illegally torrented included a vast trove of Publishers' copyrighted lyrics, as is revealed by even a cursory review of the books Anthropic is now known to have pirated. *See* ECF 411 at 3-4 (listing Publishers' works).

The only question now is whether Publishers will be permitted to amend their Complaint to address this critical new evidence of Anthropic's infringement—or whether Anthropic will succeed in evading liability for its illegal torrenting by exploiting its own discovery misconduct.

As in *Bartz*, the newly discovered facts of Anthropic's torrenting of Publishers' lyrics from pirate libraries "loom[] large in this case." 2025 WL 2308091, at *1. First, the fact that Anthropic deliberately downloaded Publishers' works from notorious pirate sites via torrenting shows the willfulness of its infringement. Second, that Anthropic simultaneously uploaded the same works to the public via torrenting raises new claims for illegal distribution not subject to any fair use defense. Third, that Anthropic torrented Publishers' lyrics on a massive scale requires updating the Works in Suit to capture the many additional works Anthropic is now known to have infringed.

Because Anthropic cannot defend any of this illegal activity, it instead tries to duck liability by preventing Publishers from amending their Complaint to address it. Those arguments fail.

Anthropic twists the record to try to blame its own discovery violations on Publishers. It points everywhere but its own deficient discovery responses to wrongly claim Publishers should have been "on notice" of facts it concealed. Anthropic cannot excuse its clear failure to disclose its use of BitTorrent to copy Publishers' lyrics, in spite of Publishers' direct requests for that information. Its position reflects "a stark misunderstanding" of the parties' discovery obligations:

"It is not up to the requesting party . . . to question the veracity of an adversary's" discovery responses. *De Amaral v. Goldsmith & Hull*, 2014 WL 572268, at *3 (N.D. Cal. Feb. 11, 2014).

If Anthropic had timely disclosed its BitTorrent activity, Publishers would have earlier amended their Complaint to address this clear infringement. Instead, Anthropic hid that information, which Publishers had to glean from third-party sources. Anthropic cannot now claim that it would suffer prejudice or delay by being held to account for the illegal activity it concealed. When a party "'hide[s] the ball' during discovery when requests have been made," it "should not be permitted to profit from it." *Acosta v. Austin Elec. Servs.*, 325 F.R.D. 325, 329 (D. Ariz. 2018). Precluding Publishers from amending now, particularly in light of Anthropic's discovery failures, would "result in injustice" to Publishers and reward Anthropic for its discovery omissions. *Mendoza v. Cnty. of San Bernardino*, 2021 WL 3207951, at *3 (C.D. Cal. June 4, 2021).

Equally important, denying the Motion would compel Publishers to file their new claims in a separate action, thereby splitting closely related factual and legal claims, contrary to any notions of judicial economy, efficiency, and conservation of judicial resources, and leading to piecemeal litigation and the potential for inconsistent findings and rulings. *See, e.g.*, *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 2008 WL 624771, at *4 (N.D. Cal. Mar. 4, 2008) (granting leave to amend where denial would "certainly" result in new lawsuit and motion to relate, and recognizing "it is more efficient to dispose of all the issues amongst a set of parties in one action, without splitting the litigation into various pieces in front of different judges").

**I.    There is good cause given Publishers' diligence and Anthropic's discovery failures.**

In trying to shift the blame to Publishers, Anthropic seriously mischaracterizes the record.

First, ***nothing*** in Anthropic's discovery in this case reveals that it used BitTorrent to copy Publishers' works from pirate sites. Anthropic does not explain why, in response to Interrogatory 6 requesting that it "[i]dentify and describe each dataset used to train Claude, including the dataset's origin . . . [and] contents," it omitted using BitTorrent to download masses of books of Publishers' lyrics. Despite agreeing to produce "documents relating to the use of song lyrics to train Claude" in response to RFP 29, Anthropic produced no documents regarding the many books of Publishers' lyrics it downloaded via BitTorrent for AI training, such as the "catalog[s] of

bibliographic metadata" referenced in *Bartz* and the torrented book files themselves. 2025 WL 1993577, at *11. Time after time, Anthropic ignored Publishers' requests and failed to disclose its BitTorrent use. ECF 411 at 5. Nor did it supplement this incomplete discovery—even after producing extensive discovery on this same BitTorrent activity in *Bartz*. *See* Fed. R. Civ. P. 26(e).

Anthropic cannot blame Publishers for its own discovery omissions. It is not "up to [Publishers] to ask for what hadn't been disclosed"—that is "impermissible burden-shifting." *SiteLock LLC v. GoDaddy.com LLC*, 2023 WL 4661842, at *6 & nn.9-10 (D. Ariz. July 20, 2023).

While Anthropic tries to wave away its discovery failures by pointing to a smattering of documents referencing LibGen and PiLiMi, that argument is meritless. Producing a handful of documents cannot excuse withholding thousands of other responsive documents. What's more, nothing in the documents Anthropic highlights[1] revealed its use of BitTorrent to illegally copy and distribute Publishers' works. Anthropic conflates the revelation that it employed BitTorrent to torrent pirated works—which is the basis for Publishers' new distribution claims, and was revealed for the first time in the July 17, 2025 *Bartz* ruling—with more general references in these documents to pirate libraries like LibGen and PiLiMi. None of these documents showed Anthropic used BitTorrent to access these pirate libraries (or even referenced BitTorrent in connection with them). Separately, all these documents were produced ***after*** the motion to amend deadline.

<u>Second</u>, Anthropic badly misstates the *Bartz* complaint's allegations, in multiple ways:

- Most conspicuously, **nowhere** did the *Bartz* complaint ever allege that Anthropic engaged in illegal torrenting. The word "torrent" does not even appear in the complaint. The word "BitTorrent" appears just once, in a footnote, in a parenthetical quote from a news article—not as part of any allegation that Anthropic had actually used BitTorrent. Ex. 1, ¶38, n.26.
- Likewise, **nowhere** does the *Bartz* complaint allege Anthropic torrented LibGen or PiLiMi. LibGen is referenced only indirectly in connection with the separate Books3 dataset (which Anthropic now claims it did not torrent). *Id.* at ¶37. There is no mention of PiLiMi at all.
- Further, in its *Bartz* answer, Anthropic specifically ***denied*** any allegation that even indirectly referenced LibGen. Ex. 2, ¶¶37, 58-60.

Anthropic cannot seriously argue that allegations it denied in a case brought by different plaintiffs who never alleged torrenting put Publishers on notice of the basis of the torrenting claims that must in the interests of justice be added to this case. Had Publishers alleged torrenting based on

---

[1] While Anthropic cites 91 such documents, Publishers have been able to identify only 75 in the productions to date.

all the inferences Anthropic insists they should have made, Anthropic no doubt would have balked.

<u>Third</u>, Anthropic also seriously mischaracterizes how Publishers distinguished *Bartz* in opposing relating the cases. Publishers **never** "expressly disclaim[ed]" allegations regarding Anthropic's illegal torrenting of their works, or its use of pirate libraries LibGen or PiLiMi, as part of that briefing. Nor could they have—Publishers were completely unaware of Anthropic's torrenting of their works at that time, due to Anthropic's failure to disclose that evidence to them.

<u>Fourth</u>, Anthropic's repeated suggestion that Publishers "have long been on notice" of developments in the *Bartz* case simply because "Plaintiffs' counsel has appeared" in *Bartz* is highly misleading. Publishers' counsel's law firm first appeared in *Bartz* on **August 11, 2025**.

In light of this record, Anthropic's contention that "Plaintiffs cannot credibly claim to have learned anything new from the [July 17, 2025 *Bartz* ruling]" is absurd. That ruling publicly revealed for the first time that Anthropic had used BitTorrent to illegally torrent 7 million books from pirate libraries like LibGen and PiLiMi. ECF 411 at 2-3 (quoting *Bartz*). As soon as Publishers learned this critical new information, they promptly investigated, sought to identify their works within the files Anthropic illegally torrented, asked Anthropic to produce the torrenting discovery it had inexplicably failed to provide (which it continues to refuse), and filed the Motion. That is reasonable diligence. *See, e.g.*, *Valero Ref. Co. v. Pac. Gas & Elec. Co.*, 2020 WL 6286357, at *3 (E.D. Cal. Oct. 27, 2020) (plaintiff that "faced conflicting information, acted in good faith to confirm . . ., and sought leave to amend shortly thereafter" was "sufficiently diligent").

## II.   Amendment will not cause Anthropic any undue prejudice or delay.

Anthropic cannot meet its burden of showing substantial undue prejudice sufficient to deny Publishers the opportunity to amend their Complaint to address this newly disclosed evidence.

Anthropic greatly overstates the extent to which amendment would "fundamentally transform" the case. Publishers simply seek to amend their existing direct infringement claims—which already allege unauthorized reproduction and distribution—to conform to the newly revealed evidence of Anthropic's illegal torrenting and to make clear that Anthropic separately illegally distributed their works via such torrenting. *See, e.g.*, *Star Fabrics, Inc. v. YM, Inc.*, 2015 WL 13919114, at *4 (C.D. Cal. Oct. 23, 2015) (amendments that "merely [assert] additional

copyright infringement claims against the same [d]efendant" "do not alter the nature of the litigation"). That Publishers will need to update the Works in Suit to capture the larger number of works Anthropic illegally torrented weighs in favor of—not against—amendment, as it underscores the vast scope of Anthropic's previously concealed infringement. Likewise, that Publishers have had to serve additional written discovery on Anthropic since learning of its BitTorrent activity should not preclude amendment—rather, it highlights the severe omissions in Anthropic's prior discovery (and Publishers' diligence in pursuing that overdue discovery now). Additionally, given Anthropic's settlement of the *Bartz* case, its claim that it will be prejudiced by having to "defend these [torrenting] allegations on two separate fronts" is now moot.

To the extent there is any prejudice, it is due entirely to Anthropic's own failures to timely disclose the evidence of its infringement that gives rise to amendment. *See, e.g.*, *Synopsys, Inc. v. Real Intent, Inc.*, 2022 WL 14813727, at *4 (N.D. Cal. Oct. 25, 2022); *Crime, Just. & Am., Inc. v. Jones*, 2013 WL 142084, at *1 (E.D. Cal. Jan. 11, 2013) (finding no prejudice where amendments "come at this late date largely due to [d]efendant's own delay in disclosing the bases for [p]laintiffs' proposed claims"); *Juarez v. Auto Zone Stores, Inc.*, 2010 WL 3470759, at *2 (S.D. Cal. Sept. 3, 2010) (finding no prejudice or delay where "[d]efendant could have avoided the delay and the associated cost if it had forthrightly responded to [p]laintiff's discovery in the first place").

Likewise, Anthropic fails to meet its burden of showing that amendment would cause undue delay. To the contrary, any such delay is entirely the result of Anthropic's own long-running concealment of its BitTorrent activity. Anthropic ***continues*** to withhold that discovery even today—ignoring that its torrenting of books of Publishers' lyrics from pirate libraries is clearly relevant to Publishers' ***existing*** unauthorized reproduction claims, as well as their proposed new distribution claims. In short, Anthropic cannot complain about the delay it has deliberately caused.

Publishers are loathe to extend discovery further, particularly when any delay will benefit only Anthropic. But given the new evidence of Anthropic's flagrant infringement via torrenting, Publishers have no choice but to seek to amend their Complaint to address these core violations.

## CONCLUSION

For the foregoing reasons, Publishers respectfully request that their Motion be granted.

Dated: September 2, 2025

Respectfully submitted,

/s/ Michelle Gomez-Reichman

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com