[Counsel on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | |
| Plaintiffs, | Case No. 5:24-cv-03811-EKL-SVK |
| v. | |
| ANTHROPIC PBC, | |
| Defendant. | **JOINT DISCOVERY DISPUTE STATEMENT REGARDING DAMAGES DISCLOSURES** |

1    Pursuant to Section 8 of the Court's Civil Standing Order, and L.R. 37-1 and 37-2,
2 Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this
3 Joint Discovery Dispute Statement regarding the sufficiency of Publishers' damages disclosures,
4 as reflected in Publishers' August 25, 2025 Second Amended Rule 26(a)(1) Initial Disclosures
5 (attached as **Exhibit A**). The Parties' counsel met and conferred to try to resolve this dispute via
6 videoconference and by follow-up emails, but have been unable to reach agreement. Only 47 days
7 remain before fact discovery closes on October 21, 2025 (*see* ECF 416). **Anthropic's position** is
8 that Publishers' damages disclosures are fundamentally deficient under Federal Rule of Civil
9 Procedure 26(a) such that meaningful compromise is not feasible; the only alternative, in lieu of
10 Rule 26(a) compliant damages disclosures, would be an order precluding Publishers from relying
11 at summary judgment or trial on any evidence not specifically identified in their existing
12 disclosures for purposes of establishing an amount of statutory damages and from electing either
13 actual damages or disgorgement of profits. **Publishers' position** is that they have fully complied
14 with their Rule 26 obligations and provided Anthropic with ample and detailed notice of their
15 anticipated damages theories, methodology, and sources of evidence. In terms of compromise,
16 Publishers have already attempted to compromise with Anthropic by supplementing their damages
17 disclosures multiple times in an effort to address Anthropic's claimed concerns, and Publishers'
18 disclosures will be further supplemented by expert analysis in accordance with the Court's expert
19 discovery deadlines. Alternatively, if the Court does not deny Anthropic's motion in its entirety,
20 Publishers propose that the Court hold this dispute open until after Anthropic produces evidence
21 sufficient to identify the full extent of its infringement and after expert discovery closes.

22  I.   **Anthropic's Position**

23    Publishers have three damages theories: actual damages, disgorgement of profits, and
24 statutory damages. Yet, despite two rounds of supplementation, and with the substantial
25 completion deadline having passed nearly two months ago, their damages disclosures remain
26 inadequate. Other than citing the statutory maximum per work (for the copyright claims) or per
27 violation (for the DMCA claim), Publishers have refused to provide *a dollar amount or any*
28 *methodology* to calculate claimed damages. Instead, they merely recite the relevant factors without

1  applying them. Rule 26 requires more.

2  Rule 26 requires a "computation of each category of damages" and "the documents or
3  evidentiary material … on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). This
4  is important because failure to provide adequate damages disclosures deprives defendants of the
5  ability to assess exposure and formulate an informed response, including developing its case
6  during fact discovery. *See City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219,
7  221 (N.D. Cal. 2003). As courts (including in this district) have held, damages disclosures that fail
8  to describe *how* a plaintiff computes damages are insufficient under Rule 26. *See, e.g.*, *Klein v.
9  Facebook, Inc.*, 2021 WL 12348681 (N.D. Cal. Oct. 13, 2021) (ordering plaintiffs to supplement
10 damages disclosures for failing to meet Rule 26 requirements); *Song v. Drenberg*, 2019 WL
11 1949785, at *2 (N.D. Cal. May 2, 2019) ("[a]t a minimum, plaintiffs must describe on a claim-by-
12 claim basis the nature of the damages claimed (e.g. actual damages), and how such damages may
13 be calculated (e.g. estimated value of specific lost business opportunities)"); *Quidel Corp. v.
14 Siemens Med. Sols. USA, Inc.*, 2020 WL 4747724, at *6 (S.D. Cal. Aug. 17, 2020); *EpicentRX,
15 Inc. v. Bianco*, 2024 WL 56995, at *12-13 (S.D. Cal. Jan. 4, 2024).

16 For their copyright infringement claims, Publishers assert they are entitled to the maximum
17 statutory damages as high as "$74,850,000," Ex. A at 3, but provide no explanation for *why* the
18 maximum amount is warranted. Unlike the trademark case they cite, courts assessing statutory
19 damages for copyright infringement consider multiple factors. Manual of Model Civ. Jury
20 Instructions for the Ninth Cir. No. 17.35 (listing factors for calculating statutory damages); *cf.
21 Burberry Ltd. v. Salim*, 2013 WL 12146120, at *2 (C.D. Cal. July 12, 2013) (distinguishing
22 statutory damages calculation in copyright and trademark cases). But Publishers' supplemental
23 damages disclosures do not address these factors or provide the necessary computation or analysis.
24 And their calculation—multiplying the maximum statutory damages amount by the number of
25 asserted works—is precisely the kind of generic "arithmetic" that courts have consistently rejected
26 as inadequate. *See, e.g.*, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2nd Cir. 2006)
27 ("Design's 'simple arithmetic' calculation is wholly inadequate[.]"); *see also CCR/AG Showcase
28 Phase I Owner, L.L.C. v. United Artists Theatre Circuit, Inc.*, 2010 WL 1947016, at *5 (D. Nev.

May 13, 2010) (similar). They offer even less for their DMCA claim: a recitation of the per-violation statutory maximum amount without any estimate of the number of violations they believe have occurred or how they plan to identify and prove such violations. Ex. A at 5-6.

And for each category of claimed damages, Publishers merely list the factors that might affect their damages amount, without explaining how those factors apply or how damages should be calculated. *See generally* Ex. A. Nor have they identified any supporting documents beyond a cite to a revenue document produced by Anthropic and a generic reference to "Publishers' lyric license agreements." *Id.* at 6. Courts have routinely held such disclosures insufficient. *Hartman v. Global Ultimate's LLC*, 2012 WL 13008430, at *2 (C.D. Cal. May 2, 2012) ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements[.]") (quoting *Design Strategy*, 469 F.3d at 295).

The court's order in *Klein* is illustrative. There, the plaintiffs' initial disclosures—like Publishers' here—contained no description of how they calculated damages other than a generic description of "compensatory damages" and a reference to Facebook's purported "market price" of $20.00 per month for user data. 2021 WL 12348681, at *2. Although the fact discovery cutoff in that case was still a year away, as the court explained, where the plaintiff is seeking damages for "[in]adequate compensation" for user data, Rule 26 requires disclosure of not only plaintiffs' general damages theory but also (a) the data for which insufficient compensation was provided; (b) "an estimate of its value"; (c) the "methodology used to compute the estimate"; and (d) the "evidentiary material on which they rely"; and if they are seeking something other than the uncompensated value of data, they must describe "with greater specificity": (a) "the nature of the harm for which they claim damages"; (b) "the methodology on which they rely to compute damages"; and (c) "an estimate of the amount of damages claimed." *Id*. In addition, they "must identify the documents or other evidentiary material on which they base their damages computation or produce the materials to Facebook." *Id.* Publishers should be ordered to do the same here, especially at this stage in the litigation.

That Publishers anticipate relying on "expert analysis" to support some of their damages claims does not discharge their obligations under Rule 26. *See, e.g.*, *Silvagni v. Wal-Mart Stores,*

*Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017) (noting "damages computation[s] should be more detailed as the case progresses," and that "future expert analysis does not relieve a plaintiff of providing the information reasonably available to her regarding her damages computation"); *Klein*, 2021 WL 12348681, at *3 (same); *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015); *see also MLC Intell. Prop. LLC v. Micron Tech., Inc.*, 10 F. 4th 1358, 1372 (Fed. Cir. Aug. 26, 2021) (applying Ninth Circuit law and requiring plaintiff to disclose "factual underpinnings and evidence underlying its damages theory prior to expert discovery").

Nor can Publishers evade their basic discovery obligation by claiming "a significant amount of information bearing on the subject of damages … remains in Anthropic's possession, custody, or control, or will otherwise be explored in fact discovery[.]" Ex. A at 7. *First*, the substantial completion deadline for document production has passed, and Publishers have not disputed Anthropic's compliance with that deadline. Thus, any documents Publishers purport to need from Anthropic to calculate their damages have already been produced in discovery.

*Second*, Publishers' pending motion for leave to amend the complaint does not excuse them from supplementing their *current* damages disclosures under Rule 26 based on their *currently* pled theories. This is especially so given that any additional discovery Publishers envision may come from their late-breaking amendment would relate to their new "BitTorrent-related claims," ECF 411 at 9, not the existing claims for which they have failed to provide adequate disclosures.

*Third*, Publishers' assertion that they "have been prevented from computing the full extent of Anthropic's infringement of their works and their resulting damages" (Ex. A at 2) is equally baseless. The Court has already recognized, and the parties have never disputed, that "this case includes a dataset of 6 months of Claude user prompts and outputs, encompassing a very large number of records from September 2023 to March 2024" and that "searches over the entire dataset present issues of technical infeasibility and burden." ECF 318 at 1-2. Consistent with that finding, and "based upon the Parties' agreed upon parameters," ECF 377 at 6, the Court ordered Anthropic to produce a total of 5-million prompt-output pairs. ECF 407 at 4. While Publishers may not have begun their analysis of these records until August 14, 2025, they have had access to all 5-million prompt-output pairs since July 14, nearly two months ago. And their complaint that "Anthropic

1  has refused to conduct comprehensive searches and productions of Claude prompt and output
2  records for infringements of Publishers' works" has been repeatedly rejected by the Court. ECF
3  318 (adjudicating the parties' dispute regarding RFPs 50 and 51); ECF 372, May 13, 2025 Hr'g
4  Tr. 58:7-9 ("There will be some millions of prompts and outputs, and that's what's available.
5  That's what the parties will be working from[.]"); ECF 408, Aug. 7, 2025 Hr'g Tr. 48:13-17
6  (rejecting Publishers' attempt to "re-spin the wheel on the 5 million sample"). Similarly, Publishers
7  improperly fault Anthropic for "unilaterally, permanently alter[ing] its Claude prompt and output
8  records to remove songwriter names, performing artist names, and names that appear in Publishers'
9  song titles and lyrics." Ex. A at 2. This assertion ignores two critical facts: first, Anthropic has
10 already produced supplemental data from alternative sources reflecting the previously masked
11 names[1]; and second, Publishers remain fully capable of identifying allegedly infringing prompts
12 and outputs by searching with lyrics strings consistent with the parties' prior negotiations.

     *Last*, in any event, information underlying Publishers' "lost licensing income," "loss of the underlying value of and demand for Publishers' works," or "harm to the market for Publishers' works and market dilution" has always been exclusively within Publishers' possession—not Anthropic's. Ex. A at 4; *see Fitzgerald Pub. Co. v. Baylor Pub. Co., Inc.*, 670 F. Supp. 1133, 1140 (E.D.N.Y. 1987) ("The best method available for measuring [Publishers' claimed] diminution in market value is the profit lost by the plaintiff."); *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) ("[O]ne party's damage theory and calculation cannot be disclosed by the *other* party during the course of discovery, as Plaintiff would have it.") (emphasis in original); *In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 2010 WL 1996600, at *1 (W.D. Wash. May 17, 2010) ("In keeping with Fed.R.Civ.P. 11(b), plaintiffs must have evidence to support the loss allegations in their complaints …. If this is not the case, 'there is a far more troubling problem' than a simple failure to adequately disclose under Rule 26(a)(1).") (citation omitted). Indeed, Publishers' latest initial disclosures confirm that they possess the underlying documents and

---

[1] These songwriters' names were originally masked as part of an automated process implemented before this litigation to protect sensitive personal information for privacy reasons. *See* ECF 302 at 8 (describing Anthropic's use of Google DLP).

1  information. *See, e.g.*, Ex. A at 4 (citing Publishers' licensing agreements and witness
2  declarations). Rule 26 requires them to propose a methodology now.

3        Publishers' failure to comply with Rule 26 materially hinders Anthropic's ability to
4  respond to Publishers' claims effectively. Publishers should be ordered to supplement their initial
5  disclosures in compliance with Rule 26 by September 25, 2025 at the latest. In the alternative,
6  Publishers should be precluded from relying at summary judgment or trial on any evidence not
7  specifically identified in their existing disclosures for establishing an amount of statutory damages,
8  and should be precluded from electing either actual damages or disgorgement of profits.

9  **II.**   **Publishers' Position**

10        Anthropic has refused to produce the discovery necessary to determine the full scope of its
11  infringement and Publishers' resulting damages. Now, Anthropic seeks to exploit its own
12  discovery omissions by pursuing a draconian and unprecedented preclusion sanction. Publishers
13  cannot be compelled to amend their disclosures to provide information that Anthropic has
14  withheld, nor should they be forced to disclose expert analysis ahead of Court-ordered deadlines.

15        **Publishers' current damages disclosures are more than sufficient.** Publishers' detailed
16  damages disclosures provide Anthropic with more than enough notice of the type and amount of
17  damages Publishers seek. *See* Ex. A. Publishers' disclosures specifically identify "each category
18  of damages claimed," and, for each category, they detail the relevant statutory factors, key factual
19  considerations, and sources of evidence Publishers anticipate using to support their damages
20  calculations. Nothing more is required at this stage of the case, particularly when fact discovery is
21  not complete and expert discovery has yet to even begin. As Publishers explain in their disclosures,
22  the process of calculating damages will require expert analysis to complete, including in view of
23  the novel and unprecedented effect that infringements from AI models like Claude have had on
24  the market for Publishers' works. Separately, Anthropic's discovery omissions have critically
25  undermined Publishers' ability to provide more precise damages models at this time.

26        **Anthropic has repeatedly rejected Publishers' attempts at compromise.** Publishers
27  have worked diligently and in good faith to respond to Anthropic's vague contentions about so-
28  called "deficiencies" in their disclosures and have twice supplemented their disclosures to appease

Anthropic's ever-changing demands. But Anthropic has refused all attempts at compromise.

Anthropic first alleged deficiencies in Publishers' disclosures on July 22. While Publishers disagreed that their disclosures were in any way insufficient, they nevertheless amended on July 31 in an attempt at compromise, explaining that a "detailed computation of damages is premature" because a significant amount of relevant information remained in Anthropic's sole possession. Unsatisfied, Anthropic sent a letter two days later declaring the amended disclosures still inadequate. On August 14, Publishers finally gained secure access to the Court-ordered random sample of 5 million Claude prompts and outputs, allowing them to review that critical evidence in detail for the first time, despite the Court having ordered Anthropic to produce it by July 14. *See* ECF No. 377 at 6; ECF No. 407 at 4. On August 20, Anthropic sent a dispute statement and demanded further supplementation, which Publishers sought to accommodate with second-amended disclosures on August 25. *See* Ex. A. Approximately 48 hours later, Anthropic once again declared Publishers' disclosures insufficient and sent a revised draft of the present dispute statement, reframing its arguments to attack Publishers' new disclosures. While Publishers have at all times attempted to work with Anthropic, Anthropic's course of conduct makes clear that no level of detailed disclosures will satisfy its unreasonable demands.

**Anthropic's criticisms of Publishers' disclosures are meritless for multiple reasons.**

First, Publishers' initial disclosures concerning statutory damages do not require a "computation," at any stage of litigation. Section 504(c)(1) of the Copyright Act enables courts to "impose a liability within statutory limits to sanction and vindicate the statutory policy," "[e]ven for uninjurious and unprofitable invasions of copyright." *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952). Consequently, the Ninth Circuit has "consistently held and stated that statutory damages are recoverable without regard to the existence or provability of actual damages" and that "there is no required nexus between actual and statutory damages under 17 U.S.C. § 504(c)." *New Form, Inc. v. Tekila Films, Inc.*, 357 F. App'x 10, 11 (9th Cir. 2009) (collecting cases and upholding district court's refusal to direct jury to measure statutory damages in relation to actual damages). It therefore goes against the fundamental principles underlying statutory damages, and Ninth Circuit precedent, to require "a computation" of statutory damages

or otherwise peg them to actual damages. *See, e.g.*, *Undiscovered Corp. v. Heist Studios*, 2019 WL 8219489, at *3–5 (C.D. Cal., Oct. 1, 2019) ("[W]hether the court awards statutory damages is entirely within the court's discretion, not on a particular damages computation otherwise required by Rule 26."). To that end, Anthropic cannot seriously contend that it does not know "***why***" Publishers believe they are entitled to maximum statutory damages in this case*, see supra*. Publishers' amended complaints state the reason very clearly: Anthropic's infringing conduct was "willful," thus implicating enhanced statutory damages under the Copyright Act. *See, e.g.*, ECF Nos. 337, Prayer for Relief ¶¶ a & c; 411-2 (same).

Second, it is presently impossible for Publishers to "compute" actual (or statutory) damages arising from Anthropic's infringement due to Anthropic's ongoing refusal to produce the discovery needed to determine the full scope of its infringement. *See City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220, 222 (N.D. Cal. 2003) (refusing to "mandate disclosure of precise calculations," where "many of the documents which are likely to inform the calculation remain in Defendants' hands and some level of expert analysis may be required."). For one thing, Anthropic has still refused to produce any discovery whatsoever regarding its illegal torrenting of Publishers' works from pirate websites—key evidence necessary to understanding the full extent of Anthropic's infringement. Separately, Anthropic has refused to conduct comprehensive searches and productions of Claude prompt and output records for infringements of Publishers' works. What's more, even if Anthropic did agree to run comprehensive searches (which it has not), its permanent removal of songwriter names, artist names, and names appearing in song titles and song lyrics from its Claude records makes it impossible to identify all infringing prompts and output in those records. (Anthropic's contention that it has cured these permanent alterations in its Claude records is false. The so-called "supplemental data from alternative sources" Anthropic claims will cure the deleted information is incomplete and addresses only a limited subset of Anthropic's previous productions, while Anthropic has otherwise refused to run broader searches for responsive records in these "alternative sources," guaranteeing that its searches do not capture anything close to the full extent of its infringing Claude output.)

Anthropic's reliance on the unpublished *Klein* discovery order is also inapposite. That

decision involved a putative class of "hundreds of millions" of members with alleged injuries from the sale of unspecified user data, which the at-issue disclosures did not elaborate on. *See* 5:20-cv-08570-LHK, Dkt. 156-1, at 15–16 (N.D. Cal. Sept. 28, 2021) (*Klein* disclosures). Here, Publishers precisely identified 499 works, set forth the specific circumstances and time period of infringement, explained the bases of anticipated methodology, including sources of evidence and reliance on complex expert analysis, and established Anthropic's exposure with an exact statutory damages figure. Anthropic does not cite any cases in which a defendant has withheld or destroyed evidence in a manner like this case and prevailed on such a damages disclosure demand.

Third, Anthropic's demand is premature in numerous respects. To start, fact discovery is not yet complete, and expert discovery has not yet begun. Publishers are "entitled to verify the thoroughness of the information received before supplementing its disclosures," including through upcoming review of fact discovery, fact depositions, and expert discovery. *Undiscovered Corp.*, 2019 WL 8219489, at *3. To that end, Anthropic's refusal to produce the Court-ordered sample of 5 million Claude records in a reviewable, secure format prevented Publishers from even beginning their analysis of that sample until August 14. *See* ECF No. 377 at 6; ECF No. 407 at 4. Having had access to these millions of records for less than three weeks, Publishers cannot possibly be expected to have already completed their analysis of this crucial discovery, calculated their damages, and supplemented their disclosures. More broadly, Publishers need expert assistance to perform faithful damages computations. For instance, expert assistance is required to analyze that same 5-million-record Claude sample to perform calculations and make extrapolations regarding the full scope of Anthropic's infringements. Expert assistance is also needed to analyze the fair-market value of Publishers' works and weigh the impact of Claude's infringements on that value and attendant licensing markets. Ex. A at 4. Given these complexities and others, awaiting expert testimony for precise computations is necessary, otherwise Publishers will likely be forced to serve disclosures that will later need to be redone. *See, e.g.*, *Tutor-Saliba*, 218 F.R.D. at 222 (premature to mandate "precise calculations" when discovery incomplete and expert analysis needed).

Fourth, Anthropic presses this dispute without identifying *any* specific prejudice or limitation caused by Publishers' disclosures at this time. Anthropic's *only* justification for bringing

this dispute to Court appears to be the bald contention that it cannot "respond to Publishers' claims effectively" despite propounding 124 requests for production, 1,022 requests for admission, and a full slate of interrogatories over the last year-plus of litigation. Anthropic clearly knows how to respond to Publishers' claims, as further evidenced by its vigorous litigation of the pending motion to dismiss and its current opposition to Publishers' motion to amend. ECF Nos. 54, 359, 419. In truth, Anthropic is using this dispute as a back-door attempt to force Publishers into prematurely choosing to pursue either statutory or actual damages—an election Publishers are entitled to make "at any time before final judgment." 17 U.S.C. § 504(c).

**There is no basis for the extreme sanctions Anthropic seeks.** Anthropic's principal request appears to be that Publishers further amend their initial disclosures, but Anthropic's foregoing statement does not specifically state what it wants the Court to order Publishers to do beyond some vague notion of "compliance with Rule 26." As for Anthropic's first "alternative" remedy—that Publishers be "precluded from relying . . . on any evidence not specifically identified in their existing disclosures for purposes of establishing an amount of statutory damages"—Anthropic offers *zero* authority to support such a draconian outcome, let alone any factual justification on this record. Rule 37(c)(1) does not provide for the preclusion of evidence if the "failure was substantially justified or is harmless," and neither does the weight of authority in this Circuit. *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012) ("Evidence preclusion . . . is a harsh sanction.") (cleaned up). Similarly, Anthropic's second alternative request, that Publishers' "be precluded from electing either actual damages or disgorgement of profits," is plainly contrary to law. *See* 17 U.S.C. § 504(b)–(c) (allowing plaintiff to elect actual or statutory damages "any time before final judgment is rendered").

For all these reasons, Anthropic's request should be denied in full. The current record offers no basis whatsoever to grant the extreme sanctions Anthropic seeks—particularly because Anthropic's discovery omissions have prevented Publishers from making more detailed damages computations. Alternatively, this dispute should be held open until after Anthropic produces evidence sufficient to identify the full extent of its infringement and after expert discovery closes; Publishers intend to supplement their disclosures then, which may moot Anthropic's motion.

| | | |
|---|---|---|
| 1 | Dated: September 4, 2025 | Respectfully Submitted, |
| 2 | By: */s/ Bret Matera* | By: */s/ Sonal N. Mehta* |
| | **OPPENHEIM + ZEBRAK, LLP** | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 3 | Matthew J. Oppenheim | |
| | Nicholas C. Hailey | Sonal N. Mehta (SBN 222086) |
| 4 | Audrey L. Adu-Appiah | sonal.mehta@wilmerhale.com |
| | (admitted *pro hac vice*) | Allison Bingxue Que (SBN 324044) |
| 5 | 4530 Wisconsin Ave., NW, 5th Floor | allison.que@wilmerhale.com |
| | Washington, DC 20016 | 2600 El Camino Real, Suite 400 |
| 6 | Telephone: (202) 480-2999 | Palo Alto, CA 94306 |
| | matt@oandzlaw.com | (650) 858-6000 |
| 7 | nick@oandzlaw.com | Fax: (650) 858-6100 |
| | aadu-appiah@oandzlaw.com | |
| 8 | | Ari Holtzblatt (SBN 354631) |
| | Jennifer Pariser | ari.holtzblatt@wilmerhale.com |
| 9 | Andrew Guerra | Robin C. Burrell (admitted *pro hac vice*) |
| | Bret Matera | robin.burrell@wilmerhale.com |
| 10 | Timothy Chung | 2100 Pennsylvania Avenue NW |
| | Michelle Gomez-Reichman | Washington, DC 20037 |
| 11 | (admitted *pro hac vice*) | (202) 663-6964 |
| | 461 5th Avenue, 19th Floor | |
| 12 | New York, NY 10017 | Louis W. Tompros (admitted *pro hac vice*) |
| | Telephone: (212) 951-1156 | louis.tompros@wilmerhale.com |
| 13 | jpariser@oandzlaw.com | Stephanie Lin (*pro hac vice* forthcoming) |
| | andrew@oandzlaw.com | stephanie.lin@wimlerhale.com |
| 14 | bmatera@oandzlaw.com | 60 State Street |
| | tchung@oandzlaw.com | Boston, MA 02109 |
| 15 | mgomez-reichman@oandzlaw.com | (617) 526-6886 |
| 16 | **COBLENTZ PATCH DUFFY & BASS LLP** | Joseph Taylor Gooch (SBN 294282) |
| | Jeffrey G. Knowles (SBN 129754) | taylor.gooch@wilmerhale.com |
| 17 | One Montgomery Street, Suite 3000 | Kyle Edwards Haugh (SBN 323952) |
| | San Francisco, CA 94104 | kyle.haugh@wilmerhale.com |
| 18 | Telephone: (415) 391-4800 | 50 California Street |
| | ef-jgk@cpdb.com | Suite 3600 |
| 19 | | San Francisco, CA 94111 |
| | **COWAN, LIEBOWITZ & LATMAN, P.C.** | (628) 235-1002 |
| 20 | Richard S. Mandel | |
| | Jonathan Z. King | |
| 21 | Richard Dannay | *Attorneys for Defendant Anthropic PBC* |
| | (admitted *pro hac vice*) | |
| 22 | 114 West 47th Street | |
| | New York, NY 10036-1525 | |
| 23 | Telephone: (212) 790-9200 | |
| | rsm@cll.com | |
| 24 | jzk@cll.com | |
| | rxd@cll.com | |
| 25 | | |
| | *Attorneys for Plaintiffs* | |
| 26 | | |
| 27 | | |
| 28 | | |

By: */s/ Joseph R. Wetzel*
**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
brittany.lovejoy@lw.com
Ivana Dukanovic (SBN 312937)
ivana.dukanovic@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle
(admitted *pro hac vice*)
sy.damle@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman
(admitted *pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant Anthropic PBC*

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 4, 2025                                         /s/ Sonal N. Mehta