# EXHIBIT A

| | |
|---|---|
| **OPPENHEIM + ZEBRAK, LLP**<br>Matthew J. Oppenheim<br>Nicholas C. Hailey<br>Audrey L. Adu-Appiah<br>(admitted *pro hac vice*)<br>4530 Wisconsin Ave., NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 480-2999<br>matt@oandzlaw.com<br>nick@oandzlaw.com<br>aadu-appiah@oandzlaw.com<br><br>Jennifer Pariser<br>Andrew Guerra<br>Bret Matera<br>Timothy Chung<br>Michelle Gomez-Reichman<br>(admitted *pro hac vice*)<br>461 5th Avenue, 19th Floor<br>New York, NY 10017<br>Telephone: (212) 951-1156<br>jpariser@oandzlaw.com<br>andrew@oandzlaw.com<br>bmatera@oandzlaw.com<br>tchung@oandzlaw.com<br>mgomez-reichman@oandzlaw.com | **COBLENTZ PATCH DUFFY & BASS LLP**<br>Jeffrey G. Knowles (SBN 129754)<br>One Montgomery Street, Suite 3000<br>San Francisco, CA 94104<br>Telephone: (415) 391-4800<br>ef-jgk@cpdb.com<br><br>**COWAN, LIEBOWITZ & LATMAN, P.C.**<br>Richard S. Mandel<br>Jonathan Z. King<br>Richard Dannay<br>(admitted *pro hac vice*)<br>114 West 47th Street<br>New York, NY 10036-1525<br>Telephone: (212) 790-9200<br>rsm@cll.com<br>jzk@cll.com<br>rxd@cll.com |

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ANTHROPIC PBC,<br><br>    Defendant. | Case Number: 5:24-cv-03811-EKL-SVK<br><br>**PLAINTIFFS' SECOND AMENDED<br>RULE 26(a)(1) INITIAL DISCLOSURES**<br><br>Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen |

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), Plaintiffs Concord Music Group, Inc. ("Concord"); Capitol CMG, Inc. ("CCMG"); Universal Music Corp., Songs of Universal, Inc.,

Universal Music – MGB NA LLC, Polygram Publishing, Inc., Universal Music – Z Tunes LLC (collectively, "Universal"); and ABKCO Music, Inc. ("ABKCO") (collectively, "Plaintiffs" or "Publishers"), in accordance with Fed. R. Civ. P. Rule 26(a)(1)(A) make the following amended initial disclosures.

### III. Disclosures Pursuant to Rule 26(a)(1)(A)(iii)

*A computation of each category of damages claimed by the disclosing party.*

Publishers are entitled to an award of damages on their claims for direct and secondary copyright infringement (Counts I–III), amounting to either their actual damages and Anthropic's profits from infringing Publishers' works, pursuant to 17 U.S.C. § 504(b), or statutory damages in an amount of up to $150,000 per infringement, pursuant to 17 U.S.C. § 504(c). Publishers are entitled to elect between actual and statutory damages at any time before final judgment is rendered. 17 U.S.C. § 504(c)(1).

**A. Anthropic's Discovery Deficiencies and Publishers' Calculation of Damages**

Both Publishers' actual and statutory damages will depend on the extent of Anthropic's infringement of Publishers' works. Unfortunately, Anthropic's ongoing failure to produce complete discovery regarding its exploitation of Publishers' works has so far made it impossible for Publishers to determine the full scope of Anthropic's infringement or compute the full amount of their resulting damages. To date, Anthropic has refused to search for or produce anything close to the full set of Claude prompts and output infringing Publishers' works, thereby concealing vast swaths of evidence of its own infringement in its possession. Further, Anthropic has also unilaterally, permanently altered its Claude prompt and output records to remove songwriter names, performing artist names, and names that appear in Publishers' song titles and lyrics, such that it now appears to be impossible to search and identify all such infringing prompt and output records. As a result of Anthropic's failure to produce complete discovery, and its alteration of its records, Publishers have been prevented from computing the full extent of Anthropic's infringement of their works and their resulting damages.

At a minimum, Publishers have already alleged and identified Anthropic's infringement of at least 499 of their copyrighted musical compositions. Publishers' review and analysis of Claude

prompts and output records produced by Anthropic (including its recent production of a Court-ordered sample of 5 million Claude prompts and output records) is ongoing and will identify additional instances of infringement, as will Publishers' review of Anthropic's training data. Publishers have also moved to amend their Complaint to address Anthropic's previously concealed downloading, uploading, and torrenting of books containing Publishers' works from illegal pirate library websites such as Library Genesis and Pirate Library Mirror, and Publishers have sought the Court's leave to amend their Complaint to include additional works that Anthropic infringed in this manner. *See* ECF No. 411. Because Anthropic has so far refused to produce any evidence of the copyrighted works that it downloaded, uploaded, and torrented in this manner in this case (despite producing all of that discovery in the *Bartz v. Anthropic* case), Publishers have not yet been able to confirm the precise number of additional works Anthropic infringed.

### B.   § 504 Statutory Damages

Publishers are entitled to maximum statutory damages on their direct and secondary copyright infringement claims. Publishers have alleged, and discovery produced by Anthropic has shown, that Anthropic's infringement was willful. Publishers' proposed amended claims regarding Anthropic's copying of their works from illegal pirate library websites further underscores its willful infringement. Publishers further intend to justify statutory damages through a variety of evidence, both direct and circumstantial, including, but not limited to, evidence related to the revenue lost as a result of Anthropic's infringements, the profits earned by Anthropic as a result of the infringement, *see e.g.,* Anthropic_0000239985, the need to deter Anthropic and other AI companies from infringing rightsholders' works and the need to penalize Anthropic for its infringements (including based on Anthropic's significant financial resources), the circumstances of Anthropic's infringements, and the willful and intentional nature of Anthropic's infringements. Publishers also anticipate relying on expert analysis to support their statutory damages claims, and they will produce such analysis in accordance with the Court's case management deadlines for expert disclosures.

Accordingly, based on the current 499 Works in Suit alone, Publishers are entitled to up to $74,850,000 in statutory damages (applying the maximum statutory damages amount of $150,000

for the willful infringement of each Work in Suit). *See* 17 U.S.C. § 504(c). If Publishers are granted leave to amend their list of Works in Suit as they have requested, they will be entitled to an award of statutory damages commensurate with the number of additional Works in Suit identified.

### C. Actual Damages

Publishers have also suffered actual damages in the form of, among other damages, lost licensing income related to the reproduction, distribution, display, and preparation of derivative works based on Publishers' works, including with respect to both AI training input and AI output, the loss of the underlying value of and demand for Publishers' works, and harm to the market for Publishers' works and market dilution. *See, e.g.*, Publishers' Declarations in Support of Motion for Preliminary Injunction, ECF No. 182 ¶¶ 47–55; ECF No. 184 ¶ 19; ECF No. 185 ¶ 21; ECF No. 186 ¶ 25; ECF No. 187 ¶¶ 21–23. Anthropic's conduct has also deprived Publishers of licensing income for AI training data purposes by suppressing demand for AI training data licensing and damaging Publishers' ability to license its works in connection with AI training from an equal bargaining position, including because Anthropic's conduct has normalized the use of illegal shadow libraries among other AI companies and the consumer public at-large. *See, e.g.*, *id.* Publishers intend to show and calculate these actual damages using a variety of evidence, both direct and circumstantial, including, but not limited to, Publishers' lyric license agreements with various third parties such as LyricFind, Anthropic's profits and revenues, *see e.g.,* Anthropic_0000239985, Anthropic's Claude prompt and output records, and other related discovery, as well as Publishers' testimony regarding the value and demand for their works and Anthropic's impact on the market and consumer sentiments.

Publishers' methodology for calculating actual damages is likely to rely heavily on expert analysis. Publishers intend to produce relevant expert analysis in accordance with the Court's case management deadlines for expert disclosures. At this time, Publishers anticipate that this will include, among other analyses, a fair-market analysis of Publishers' works as well as an evaluation of Anthropic's customer usage and their effect on demand for Publishers' works.

### D. Anthropic's Profits

Publishers also intend to demonstrate Anthropic's profits attributable to the unauthorized use of their works. This calculation relies in large part on the volume of infringing outputs generated by Anthropic during the relevant period. As discussed above, Anthropic has not yet produced a complete set of records that would permit Publishers to make this calculation.

### E. § 1202 Statutory and Actual Damages

In addition to the Publishers' damages on their direct and secondary infringement claims as detailed above, Publishers are likewise entitled to an award of damages on their claims against Anthropic for its removal or alteration of their copyright management information, in violation of 17 U.S.C. §§ 1202(b)(1) and (3) (Count IV), amounting to either Publishers' actual damages and Anthropic's profits attributable to the violation, pursuant to 17 U.S.C. § 1203(c)(2), or statutory damages in an amount of up to $25,000 per violation, pursuant to 17 U.S.C. § 1203(c)(3). Publishers are entitled to elect between actual and statutory damages at any time before final judgment is rendered. 17 U.S.C. § 1203(c)(2)-(3).

Again, Publishers' actual and statutory damages on these claims will depend on the extent of Anthropic's infringement of Publishers' works. As detailed above, Anthropic's ongoing failure to produce complete discovery regarding its exploitation of Publishers' works has so far made it impossible for Publishers to determine the full scope of Anthropic's violations 17 U.S.C. §§ 1202(b)(1) and (3) with respect to these works. As a result, Publishers have been prevented from computing the full extent of Anthropic's violations and their resulting damages.

At a minimum, Publishers have already alleged and identified Anthropic's violations of 17 U.S.C. §§ 1202(b)(1) and (3) with respect to at least 499 of their copyrighted musical compositions. Publishers' review and analysis of Claude prompts and output records produced by Anthropic is ongoing and will identify additional violations, as will Publishers' inspection of Anthropic's training data (as well as Publishers' amended list of Works in Suit based on Anthropic's copying of their works from illegal pirate library websites, if Publishers are granted leave to amend, *see* ECF No. 411). Publishers are entitled to maximum statutory damages of $25,000 per violation on 17 U.S.C. §§ 1202(b)(1) and (3), for the same reasons as identified above, including because Publishers have alleged, and discovery produced by Anthropic has shown, that Anthropic's

violations were intentional and willful. Publishers also anticipate relying on expert analysis to support these statutory damages claims, and they will produce such analysis in accordance with the Court's case management deadlines for expert disclosures.

Publishers have also suffered actual damages from Anthropic's violations of 17 U.S.C. §§ 1202(b)(1) and (3), including for the same reasons as described above. Moreover, Publishers' copyright management information that Anthropic has removed and altered is the means by which Publishers' copyrighted lyrics are identified, ensuring that Publishers' songwriters receive the credit and goodwill that they deserve for their artistic works, and are protected against unauthorized exploitation and misuse. *See, e.g.*, ECF No. 182 ¶ 57; ECF No. 184 ¶¶ 22–23; ECF No. 185 ¶¶ 24; ECF No. 186 ¶ 23; ECF No. 187 ¶¶ 13, 26–27. Publishers intend to show and calculate these actual damages using a variety of evidence, both direct and circumstantial, including, but not limited to, Publishers' lyric license agreements with various third parties such as LyricFind, Anthropic's Claude prompt and output records, and other related discovery, as well as Publishers' testimony regarding the importance of copyright management information and attribution. Again, Publishers' methodology for calculating actual damages is likely to rely heavily on expert analysis, which Publishers will produce in accordance with the Court's case management deadlines for expert disclosures.

### F. BitTorrent and Other Damages

Additionally, and as noted above, Publishers believe that additional instances of infringement and violations of Publishers' copyrights, including concerning other works owned by Publishers, will continue to be revealed throughout the course of discovery. As noted above, Publishers have filed a motion to amend their Complaint to address Anthropic's use of BitTorrent and/or other peer-to-peer applications to illegally download, upload, and torrent additional copies of Publishers' works. *See* ECF No. 411. Anthropic's conduct alleged therein will increase the statutory and/or actual damages to which Publishers are entitled above. Publishers are also entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(4)-(5), and pre- and post-judgment interest on any monetary award made part of the judgment.

Finally, Publishers note that a significant amount of information bearing on the subject of damages—such as the extent of Anthropic's infringements, the willfulness of the infringement, and the financial benefits and profits received by Anthropic in connection with the infringements—remains in Anthropic's possession, custody, or control, or will otherwise be explored in fact discovery, which is ongoing and was recently extended, *see* ECF No. 416, and during expert discovery. Initial disclosures regarding damages may not be feasible in cases like this one, where much of the information needed to calculate damages is in Anthropic's control. *See* Fed. R. Civ. P. 26 Advisory Committee's Notes, 1993 Amendments ("Likewise, a party would not be expected to provide a calculation of damages which . . . depends on information in the possession of another party or person.").

Publishers reserve the right to supplement or amend these damages disclosures based on information obtained during discovery or through their ongoing investigation into the matters relevant to this action.

Dated: August 25, 2025

Respectfully submitted,

*/s/ Timothy Chung*

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I caused the foregoing document to be served on the following counsel via email:

**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
brittany.lovejoy@lw.com
Ivana Dukanovic (SBN 312937)
ivana.dukanovic@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle (*pro hac vice*)
sy.damle@lw.com
Sara Sampoli (SBN 344505)
sara.sampoli@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Sonal Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
Fax: (650) 858-6100

Robin C. Burrell (admitted *pro hac vice*)
robin.burrell@wilmerhale.com
Ari Holtzblatt (admitted *pro hac vice*)
ari.holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6964

Allison L. Stillman (*pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

Rachel Horn (SBN 335737)
rachel.horn@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
50 California Street
Suite 3600
San Francisco, CA 94111
(628) 235-1002

Louis W. Tompros (admitted *pro hac vice*)
louis.tompros@wilmerhale.com
60 State Street
Boston, MA 02109
(617) 526-6886

*Attorneys for Defendant*

*/s/ Timothy Chung*
Timothy Chung