1    [Counsel on signature page]

2    ## UNITED STATES DISTRICT COURT

3    ## NORTHERN DISTRICT OF CALIFORNIA

4    ## SAN JOSE DIVISION

5

6    CONCORD MUSIC GROUP, INC., ET AL.,

7         Plaintiffs,

8         v.

9    ANTHROPIC PBC,

10        Defendant.

11

Case Number: 5:24-cv-03811-EKL-SVK

**JOINT DISCOVERY DISPUTE STATEMENT REGARDING ANTHROPIC'S CUSTODIAL SEARCHES AND PRODUCTIONS**

Judge Eumi K. Lee
Magistrate Judge Susan van Keulen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Section 8 of the Court's Civil Standing Order, and L.R. 37-1 and 37-2, the Parties respectfully submit this Joint Discovery Dispute Statement seeking the Court's intervention in resolving a dispute regarding the sufficiency of Anthropic's custodial searches and productions. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference on Sept. 5, 2025 and by email and are at impasse. The current fact discovery deadline is 28 days away. ECF No. 416. As a compromise, Publishers propose that Anthropic (1) collect and produce documents from three key employees, applying all search terms to identify their custodial documents responsive to outstanding RFPs; and (2) collect and produce documents from six additional employees, using narrowed search terms designed to capture custodial documents relating to the subset of RFPs most directly relevant to those employees. Anthropic proposes as a compromise to conduct (1) a reasonable search of Daniela Amodei's files subject to the same search terms and time limits imposed on the other custodians; (2) a targeted search of Dawn Drain's custodial files using search terms for the issues Publishers' claim she is relevant to.

## I.    Publishers' Position: Anthropic's custodial productions are severely deficient, and Anthropic must collect and produce the files of additional custodians.

Anthropic's custodial searches and productions in this case have been undeniably paltry. Apart from the Claude sample, it has produced just 33,979 documents. The vast majority are Claude prompt/output records; of the remainder, it has produced a mere 2,703 documents from the files of **only 12** individual custodians in response to over 100 RFPs. That is an astonishingly low number of custodians, given Anthropic has nearly 2,000 employees and sells a single product: the Claude AI models at the center of this case. For comparison, in *Bartz*, Anthropic produced over 80,000 documents—including 54,782 documents in the final days of fact discovery between July 17 and Aug. 25, 2025. *Bartz v. Anthropic*, 3:24-cv-05417-WHA (N.D. Cal.), ECF No. 362 at 10.

Anthropic's refusal to search for and produce documents from an appropriate set of custodians is indefensible, where Publishers' document requests seek a broad range of discovery covering all aspects of Anthropic's development, training, and deployment of its Claude AI models, spanning the company's operations. Anthropic's refusal to search custodial files of core employees has prejudiced Publishers' ability to identify key documents supporting their claims.

**A. Anthropic should search the custodial files of Dario Amodei, Ben Kuhn, and Kipply Chen and produce documents responsive to all outstanding RFPs.**

First, Anthropic should be compelled to search for and produce documents responsive to all of Publishers' RFPs from the custodial files of the following core employees, including two intended deponents, who each possess relevant and non-duplicative responsive documents:

<u>Dario Amodei.</u> Mr. Amodei is Anthropic's CEO and founder. Mr. Amodei knew early on that LLMs such as Claude tend to memorize and regurgitate training data. ECF No. 337, ¶ 108. Anthropic's limited productions demonstrate that Mr. Amodei was deeply involved in the early design, training, and development of Claude as well as Anthropic's data acquisition and copyright strategies.[1] He also identifies himself as the "co-inventor of reinforcement learning from human feedback,"[2] a finetuning method Anthropic employed using datasets containing Publishers' lyrics. *See, e.g.*, ECF No. 337 ¶¶ 58, 103, 110, 170. Publishers intend to depose Mr. Amodei; Anthropic cannot undermine that deposition by refusing to search or produce his files. His files cannot be shielded merely because he is Anthropic's CEO. The limited files produced clearly demonstrate he was personally involved in decisionmaking for key aspects of Claude's development, and any objections to discovery of executives "lose[] relevance in the context of document production because documents may be produced with no or minimal involvement" of the executive. *Affinity Credit Union v. Apple Inc.*, 2024 WL 3859802, at *2 (N.D. Cal. Aug. 16, 2024).

<u>Ben Kuhn.</u> Mr. Kuhn, Anthropic's Head of Finetuning, plays an integral role in finetuning Claude models and developing finetuning processes. He occupies a different, higher-level role than other custodians involved in finetuning (Amanda Askell and Yuntao Bai). He is likely to have non-duplicative documents reflecting finetuning internal strategy, including directives, policies, and interactions with crowdworkers and other Anthropic staff not captured by those of existing custodians—documents that bear directly on Publishers' allegations. *See, e.g.*, ECF No. 337 ¶¶ 58, 103. He was involved in high-level planning regarding Claude training (Anthropic_0000220208), and developing finetuning strategies to avoid verbatim regurgitation and to address Acceptable Use Policy violations by users (Anthropic_0000012004). Publishers are deposing Mr. Kuhn in

---

[1] *See, e.g.*, Anthropic_0000014088; -14110; -14146; -215992; -216075; -240524; -12437.
[2] Dario Amodei, https://www.darioamodei.com/.

October, and need his custodial documents to prepare for and take that deposition.

Kipply Chen. Documents produced by Anthropic indicate Ms. Chen is involved in multiple different workstreams and projects regarding data acquisition, token analysis, filtering, and deduplication, and often works in an independent capacity. *See, e.g.*, Anthropic_0000011433, -14146. Documents identify Ms. Chen as the only Anthropic employee in contact with certain third parties regarding potential data partnerships. *See e.g.,* Anthropic_0000000002.

Mr. Amodei, Mr. Kuhn, and Ms. Chen's files should be searched subject to the same time limitations and search terms imposed on Anthropic's original 12 custodians.

**B. Anthropic should search six additional Anthropic employees for specified RFPs.[3]**

Second, there are a number of additional key employees for which Anthropic has also failed to search or produce custodial files; as a compromise Publishers have identified the specific RFPs for which the following employees are most likely to have responsive non-duplicative documents, and request that their files be searched using the more narrowed terms applicable to those RFPs.

Dawn Drain is a member of Finetuning staff and highly involved in data selection, filtering, and memorization, developing her own strategies for acquisition, compilation, and filtering. *See, e.g.*, Anthropic_0000216875; -14258; -16355; -14230; -242220. She was particularly involved in and repeatedly discussed the removal of copyright management information from copyrighted works used in training data. *See, e.g.*, Anthropic_0000016306; -16426; -352732. Her files likely contain vital, non-duplicative documents bearing on Publishers' allegations regarding CMI removal. *See e.g.*, ECF No. 337 ¶¶ 58, 68, 74, 128, 130, 197. Her files should be searched for documents responsive to RFPs 21, 25, 26, 27, 68, 71, 72, 73, 74, 75, 76, 80, 82, and 86. Publishers will be deposing Ms. Drain in October, and Anthropic must search her files promptly.

Daniela Amodei is Anthropic's President and founder, and an operational leader overseeing many of Anthropic's functions (legal, product, public policy, finance, and certain technical teams). Anthropic's productions to date are devoid of overarching policy documents showing its early research and development goals, strategies as to treatment of copyrighted works and licensing, or analysis of user experience and typical use cases. Her files should be searched

---

[3] The relevant RFPs are attached hereto as Exhibit 1–5.

for documents responsive to RFPs 31, 33, 49, 55, 87, 88, 92, 112, 113, and 130.

<u>Sam McCandlish</u> is a founder and Anthropic's CTO. His work includes researching how performance increases predictability as the amount and quality of data and compute-time uses in AI training increases. That is relevant to Anthropic's data acquisition priorities, including the relative value of different data sources. He was involved in key discussions on data selection, deduplication, and filtering, including the use of Library Genesis. *See* Anthropic_0000012615; -344093; -240487; -14180. He also referred to CMI included in works used for AI training as "useless junk" to remove. *See* Anthropic_0000014096; ECF No. 337 ¶ 130. His files should be searched for RFPs 20, 25, 26, 27, 68, 71, 72, 73, 74, 75, 80, and 111.

<u>Jack Clark</u> is a founder and Anthropic's Head of Policy. He plays a central role in Anthropic's Economic Index, which tracks the impact of Claude models on the labor market and broader economy, which includes its impact on the market for Publishers' Works. His files likely contain analyses of Claude's impact on licensing or songwriting markets, categories of documents Anthropic has largely failed to produce. His files should be searched for RFPs 11, 52, and 112.

<u>Chris Olah</u> is a founder and the lead employee on AI interpretability. Anthropic_0000000618. No existing custodians are part of Anthropic's interpretability team, which relates to understanding how generative AI models work and why a model makes the choices it does.[4] His files likely contain critical, non-duplicative information showing how Claude "decides" to generate infringing output. He authored documents like Anthropic_0000011786 and -12285, expounding on the relative value of data—including datasets like Common Crawl—and strategies on future acquisition of data. His files should be searched for RFPs 4, 25, 26, 30, 31, 35, 36, 39, 52, 55, 67, 77, 78, 109, and 114.

<u>Janel Thamkul</u> is Anthropic's Deputy General Counsel. She has been involved in non-privileged data acquisition efforts and was the initial point of contact for an external party seeking to engage in a data partnership with Anthropic. Anthropic_0000000004. She was identified by Anthropic as an individual "directly or principally responsible for designing, developing, and or implementing policies, protocols, or technological measures related to Anthropic's copyright

---

[4] *The Urgency of Interpretability* (Apr. 2025), https://www.darioamodei.com/post/the-urgency-of-interpretability.

mitigations and guardrails." Ex. 6 at 10. Her files likely contain additional, non-duplicative documents on external communications regarding potential data partnerships and copyright guardrails, and should be searched for RFPs 2, 3, 5, 7, 19, 36, 37, 38, 39, 41, 43, 45, 61, and 65.

The employees above very likely possess unique and relevant documents going to the heart of Publishers' claims, including Anthropic's knowledge and willfulness of infringement. This is good cause to compel a search and production of their files. *See, e.g.*, *Affinity Credit Union*, 2024 WL 3859802, at *3 (ordering additional custodians who played role in relevant strategic decisions or managed key workstreams, despite potential overlap with existing custodians); *In re Meta Pixel Healthcare Litig.*, 2023 WL 5767460, at *2–3 (N.D. Cal. Sept. 6, 2023); *Rusoff v. Happy Grp., Inc.*, 2023 WL 114224, at *4 (N.D. Cal. Jan. 5, 2023) (ordering additional custodians from same departments as existing custodians where senior roles indicated they were likely to have internal strategy documents or communications with non-custodians and external parties).

Anthropic is wrong that these core employees' custodial files are somehow duplicative of already-produced Google Documents and Slack threads from other custodians. Even if that *were* the case, those "duplicative" sources do not include these employees' emails, Slack messages, or Notion files used privately or with other individuals whose files were not searched. Further, "where the key objection is unnecessarily duplicative discovery, [Anthropic's] burden can be substantially mitigated by application of appropriately narrow search terms and de-duplication of ESI across custodians." *Williams v. Apple, Inc.*, 2020 WL 5107639, at *2 (N.D. Cal. Aug. 31, 2020).

Anthropic's allegations of delay are also wrong. Publishers promptly identified these deficiencies and began the meet and confer process shortly after the original July 14 substantial completion deadline. That ***Anthropic*** dragged that process out and rejected several compromises offered by Publishers cannot be held against Publishers now. Nor is there any basis for Anthropic's allegation that Publishers somehow manufactured this dispute to justify a schedule extension. That is precisely backwards: Anthropic's continued obstruction of discovery is one of the reasons an extension is necessary. Anthropic cannot deflect from the fact that Publishers are entitled to reasonable searches for relevant information, when it has been withholding significant discovery (*see, e.g.*, ECF Nos. 411, 420), undermining Publishers' efforts to complete discovery in an orderly

and timely manner. Anthropic's continued subterfuge is brought into stark relief by comparing this case to *Bartz*, where its Rule 26(a)(1) disclosures identified Mr. Amodei as likely to have relevant discoverable information on a huge range of issues relevant to Publishers' claims. Mr. Amodei also appears to have been a document custodian in *Bartz*. But here, Anthropic failed to identify Mr. Amodei at all in its Rule 26 disclosures or as a custodian, and ***still*** refuses to search his files.

## II.  <u>Anthropic's Position</u>: **Publishers' Late-Breaking Demands To Search Additional Custodians Is A Groundless Fishing Expedition**

After nearly two years of discovery, and on the eve of depositions, Publishers make an eleventh-hour demand that Anthropic collect and produce from an additional nine custodians to match the number of ESI custodians agreed to in the *Bartz* litigation—a class action that involved potentially millions of books and was orders of magnitude different in scope from this case, which involves only lyrics from 499 musical compositions. Publishers' demand would derail the case schedule and impose unreasonable discovery burdens on Anthropic; it should be denied.

Merits aside, the timing of the Publishers' unreasonable requests reveals their true intent here: to create a flurry of discovery disputes in an attempt to justify another discovery deadline extension. Anthropic already agreed to one modest extension, which Judge Lee then shortened, making clear that she intends for discovery to close promptly on October 21st. Publishers have nevertheless demanded this week that Anthropic agree to an additional extension; when Anthropic declined, Publishers moved for an additional two-month extension on September 19. Dkt. 435. There is no basis for an extension and Publishers' should not be permitted to use their more-than-one-year-too-late request for additional custodians to grant themselves one.

Anthropic has already searched, reviewed, and produced thousands of documents from the company's shared repositories, as well as the custodial files of twelve individuals who were most likely to have documents responsive to Publishers' 100-plus RFPs to-date, including Cofounder and Chief Computer Officer Tom Brown, Cofounder and Chief Science Officer Jared Kaplan, Cofounder and Technology Staff Member Ben Mann, VP of Product Partnerships Tom Turvey, former Head of Trust and Safety Vinay Rao, and other key team members knowledgeable about datasets, data acquisition, training, and finetuning—most of whom were identified on Anthropic's

initial disclosures as early as March 2024 and in interrogatory responses served in April 2024. Publishers' belated demand for burdensome custodial collections and potential productions from nine additional custodians, including Anthropic's CEO and President, is not tethered to actual document production deficiencies as Publishers' concede that they are solely related to their attempt to reinvent their claims and co-opt the record in *Bartz*—a different case that Publishers previously argued should not be related to this matter because it involved different works and different conduct. If Publishers were genuinely seeking additional documents to fill previous gaps in the record, they would have identified those *substantive* gaps. But that is not their aim; instead, Publishers concede the only discovery issues remaining relate to their untimely attempt to make it match *Bartz*. *See supra* p.5 (citing Dkts. 411, 420 regarding *Bartz*-related discovery). But their unsupported demands are not proportional to the needs of *this case*, which is limited to the 499 works in suit, and far outweigh the likely benefit.

**Additional Untargeted Collection is Unnecessary and Duplicative.** "Good cause to compel designation of additional document custodians generally requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated." *B&G Foods N. Am., Inc. v. Embry*, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024). Here, additional custodial collections are likely to be duplicative of the documents already produced for two reasons. ***First***, Anthropic primarily uses shared documents and collaborative software like Google Vault and Slack for internal communications (as opposed to emails or traditional static files). As such, relevant employees working on a project or team will have access to the same documents, regardless of whether they are relatively junior or senior employees. Anthropic has already collected and produced relevant documents from Slack, Google Vault, and Notion (a little used collaborative notes app that Anthropic has deprecated) on the topics Publishers claim the additional custodians are relevant to, including datasets, training, finetuning, data acquisition, and uses of Claude. Thus, searching the custodial files of additional employees involved in these issues is unlikely to produce non-duplicative information. ***Second***, Anthropic searched the custodial files (including email) of a dozen individuals most likely to have documents responsive to Publishers' Requests. Publishers fail to make any showing that the additional

custodians they seek possess uniquely relevant information that is not available from these sources. Nor can Publishers justify discovery based solely on their desire to depose these individuals.

<u>CEO Dario Amodei and President Daniela Amodei</u>: Publishers do not argue that Mr. Amodei's and Ms. Amodei's documents would be non-duplicative; they can't. Anthropic produced custodial documents from three founders, Jared Kaplan, Benjamin Mann, and Tom Brown, all of whom were also involved in the early design, training, and development of Claude. Anthropic also produced custodial files from Brian Krausz, Nick Joseph, Pranay Sangani, and Vinay Rao, who would have documents relevant to the design, development, training, data acquisition, and copyright strategies; and from Amanda Askell and Yuntao Bai, who work on finetuning. Indeed, the very documents Publishers cite demonstrate that Mr. Amodei's and Ms. Amodei's documents would not be unique or relevant to the use of *lyrics*. *See, e.g.*, Anthropic_0000012437 (Dario Amodei document stating "Leadership sign-offs" needed from Daniela Amodei and Mr. Kaplan); Anthropic_0000216075 (Mr. Brown would "have Dario resurface" discussion regarding "books"). In *Affinity Credit Union v. Apple Inc.*, the Court rejected adding Apple's CEO as a custodian where his documents would be cumulative of documents for senior leaders responsible for relevant decisions. 2024 WL 3859802, at *2-3 (N.D. Cal. Aug. 16, 2024). The same is true here.

<u>Ben Kuhn and Dawn Drain</u>: Publishers claim that Mr. Kuhn and Ms. Drain will have non-cumulative documents related to finetuning. But as they acknowledge, Mr. Kuhn oversees ESI custodians Ms. Askell and Ms. Bai (both finetuning technical leads), so he would have access to the same documents. Furthermore, to the extent Publishers seek "higher level" documents, ESI custodians Mr. Kaplan and Mr. Mann would have had access to such documents. For example, Mr. Kaplan is a custodian on the documents cited by Publishers, Anthropic_0000220208 and Anthropic_0000012004. Ms. Drain, a more junior employee than Mr. Kuhn, would also have documents cumulative of those from Ms. Askell and Ms. Bai. *See, e.g.*, Anthropic_0000216875.

<u>Kipply Chen</u>: That Ms. Chen is "involved in multiple different workstreams and projects" underscores that her documents will be duplicative of documents collected from others, including Nick Joseph and Pranay Sangani. In the unlikely event that Ms. Chen was the only contact with certain third parties, that is at best a reason to seek specific documents related to those parties.

1    <u>Sam McCandlish</u>: Publishers assert that Mr. McCandlish was involved in "key discussions

2    concerning data selection, deduplication, and filtering, including the use of Library Genesis"—a

3    dataset Publishers have sought to inject into this case through their not-yet-approved SAC. To the

4    extent that Mr. McCandlish was involved in such discussions, they are not unique and Publishers'

5    citations illustrate they have been produced: Anthropic_0000012615; -344093, and -240487 show

6    his "key discussions" were on Slacks and emails including at least two other custodians.

7        <u>Jack Clark and Chris Olah</u>: Publishers speculate that Jack Clark and Chris Olah are "likely"

8    to have certain documents. For example, Publishers say that Mr. Clark may have analyses of the

9    lyrics licensing or songwriting market. Anthropic has already produced nonprivileged, responsive

10   documents to the extent they exist in response to the relevant RFPs; there is no basis to believe it

11   is withholding such documents, much less that these specific custodians must be in possession of

12   them. As to Mr. Olah, the Interpretability Team collaborates with other verticals. The documents

13   that Publishers point to confirm that. *See* Anthropic_0000011786 ("Random Thoughts re: Data"

14   Google Doc by Mr. Olah, shared with Mr. Brown); Anthropic_0000012285 ("Data Hypotheses"

15   Google Doc by Mr. Olah, shared with Mr. Kaplan). Publishers offer no non-speculative reason

16   why separate searches must be conducted other than Mr. Clark's and Mr. Olah's statuses at

17   Anthropic; and while this case is not like *Bartz*, even there Judge Alsup rejected similar arguments.

18   *See Bartz v. Anthropic*, 3:24-cv-05417, Hrg. Tr. 28:3-33:7 (Jul. 23, 2025) ("[y]ou don't need these

19   extra two people [Messrs. Olah and Clark]" to look "into how Anthropic's been using the data").

20       <u>Janel Thamkul</u>: Ms. Thamkul is Anthropic in-house counsel, and most of her documents

21   are privileged. Any non-privileged documents regarding copyright mitigations and guardrails will

22   be duplicative of Messrs. Kaplan, Mann, Krausz, Rao, Ms. Bai, Sam Martin, and Alfie Mountfield.

23       **Publishers' Dilatory Approach to Discovery Should Not Be Rewarded**. Publishers had

24   years to meaningfully engage with Anthropic about ESI and custodians, including, for example,

25   during the 26(f) conference, after initial disclosures were exchanged, or when document requests

26   were first served. Yet, they did not engage in any discussion about custodian or search terms until

27   July 2025—over a year and half after discovery opened and only 48 days before the then-scheduled

28   close of fact discovery. The time to negotiate custodians is early in the case, not after the substantial

1   ***completion*** deadline on the eve of the close of fact discovery. Publishers knew of these employees.

2   Publishers could easily have identified the names of executives or cofounders such as Dario

3   Amodei or Daniela Amodei at any time. And Publishers (1) cited an article about training co-

4   authored by Ms. Drain, Mr. Clark, Mr. McCandlish, and Mr. Olah in May 3, 2024 correspondence

5   to Anthropic; (2) cite, here, documents including Ms. Chen and Ms. Thamkul that Anthropic

6   produced in January 2024 (Anthropic_0000000002; -04); and (3) have had an organizational chart

7   identifying Mr. Kuhn (among others) since September 2024 (Anthropic_0000000618). Publishers

8   have stated no reason that these custodians' names were unknown.

9          Publishers never identified any genuine document deficiency in correspondence or in the

10  meet and confer leading up to this letter brief, and still fail to do so. Nonetheless, they continue to

11  reject Anthropic's reasonable compromises, including its offers to "conduct a reasonable search

12  of [Daniela Amodei's] files subject to the same search terms and time limitations imposed on the

13  other custodians"; to "conduct a targeted search of Ms. Drain's custodial files"; and to "consider

14  searching for [a] subset of documents" for Ms. Chen that "Plaintiffs can point to as non-duplicative

15  and unique." S. Lin Ltr. to N. Hailey (Aug. 27, 2025). Publishers rejected the offer of Ms. Amodei,

16  insisting on searches of Mr. Amodei's files, even though Ms. Amodei is on Anthropic's amended

17  initial disclosures and Mr. Amodei is not, and rejected the offer of Ms. Chen's files, insisting on

18  Mr. Kuhn's. In the context of rejecting these proposals, Publishers also provided search terms for

19  Ms. Drain related to pirating and torrenting—search terms wholly unrelated to finetuning (on

20  which she is knowledgeable) and plainly are attempting to obtain discovery that this Court has said

21  is not proper unless and until Judge Lee rules on Publishers' eleventh-hour amendment request.

22  Publishers' explicit comparison *Bartz* discovery is telling—Publishers' counsel recently made an

23  appearance in *Bartz* and have been attempting to import allegations, claims, and discovery from

24  that case here, serving RFPs seeking  "[a]ll Documents," "[a]ll written discovery responses," and

25  "[a]ll Anthropic witness deposition transcripts and corresponding deposition exhibits," even after

26  insisting the cases should not be related, *see* ECF 221 at 2; 411 (citing *Bartz* class certification).

27  Plaintiffs' attempt at a last-minute fishing expedition is not relevant or proportional and should be

28  denied.

Dated: September 23, 2025

By: */s/ Michelle Gomez-Reichman*

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com
bmatera@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

Respectfully submitted,

By: */s/ Joseph R. Wetzel*

**LATHAM & WATKINS LLP**
Joseph R. Wetzel (SBN 238008)
joe.wetzel@lw.com
Andrew M. Gass (SBN 259694)
andrew.gass@lw.com
Brittany N. Lovejoy (SBN 286813)
britt.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Sarang V. Damle
(admitted *pro hac vice*)
sy.damle@lw.com
Sara Sampoli (SBN 344505)
sara.sampoli@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison L. Stillman
(admitted *pro hac vice*)
alli.stillman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

*Attorneys for Defendant*

Respectfully submitted,

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
Fax: (650) 858-6100

Ari Holtzblatt (SBN 354631)
ari.holtzblatt@wilmerhale.com
Robin C. Burrell (admitted *pro hac vice*)
robin.burrell@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6964

Louis W. Tompros (admitted *pro hac vice*)
louis.tompros@wilmerhale.com
60 State Street
Boston, MA 02109
(617) 526-6886

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
50 California Street
Suite 3600
San Francisco, CA 94111
(628) 235-1002

*Attorneys for Defendant*

1

## SIGNATURE ATTESTATION

2      Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this

3   document was obtained from all other signatories of this document. I declare under penalty of

4   perjury that the foregoing is true and correct.

5

6   Dated: September 23, 2025                          */s/ Michelle Gomez-Reichman*

7                                                      Michelle Gomez-Reichman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28