1    [Counsel on signature page]

2

3                    **UNITED STATES DISTRICT COURT**

4                    **NORTHERN DISTRICT OF CALIFORNIA**

5                    **SAN JOSE DIVISION**

6    CONCORD MUSIC GROUP, INC., ET AL.,        Case No. 5:24-cv-03811-EKL-SVK

7                              Plaintiffs,       **JOINT DISCOVERY DISPUTE**
                                                 **STATEMENT REGARDING**
8         vs.                                    **PROTECTIVE ORDER FOR**
                                                 **DEPOSITIONS PRECLUDING**
9    ANTHROPIC PBC,                              **QUESTIONS ON BITTORRENT AND**
                                                 **"PIRATE LIBRARIES"**
10                             Defendant.
                                                 Judge Eumi K. Lee
11                                               Magistrate Judge Susan van Keulen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Section 8 of the Court's Civil Standing Order, and L.R. 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement.  The Parties seek the Court's intervention in resolving a dispute regarding the proper scope of deposition questioning as it relates to Anthropic's use of BitTorrent to download copyrighted works, including Publishers' lyrics, from so-called "pirate" libraries. The Parties' lead counsel met and conferred to try to resolve this dispute via videoconference on September 24, 2025, and by email.  However, the Parties have been unable to reach agreement on the issues below.  The current fact discovery deadline is 18 days away.  ECF 416.  Anthropic offered to schedule the depositions of witnesses that Publishers believe have relevant information about their new claim and allegations about BitTorrent and "pirated" datasets after October 8, closer to the October 21 fact discovery deadline.  Beyond that, Anthropic does not believe there is a compromise available, given the nature of the dispute.  Anthropic accordingly seeks a protective order precluding deposition questioning concerning (1) BitTorrent and (2) "pirated" book datasets, including LibGen, PiLiMi, and Books3. By way of compromise, Publishers note that they previously asked Anthropic to join their Motion to Extend Case Deadlines, ECF No. 435, in order to allow the Parties to proceed with the depositions of all witnesses based on settled pleadings and with the benefit of the Court's forthcoming ruling on Publishers' pending Motion to Amend relating to Anthropic's illegal torrenting activity, but Anthropic declined.

## I.    Anthropic's Position

On September 8, this Court entered an order declining Publishers' request to obtain discovery into Anthropic's alleged use of BitTorrent and "pirated" book datasets while their motion for leave to amend to add a claim and allegations on those topics remains pending before Judge Lee.  ECF 431.  Consistent with that ruling, on September 22, counsel for Anthropic emailed counsel for Publishers asking them to confirm that they will not ask questions during the upcoming depositions regarding either (1) BitTorrent or (2) "pirated" book datasets, including LibGen, PiLiMi, and Books3.  Publishers' counsel refused to agree or substantively confer on the issue.  Accordingly, Anthropic seeks a protective order to preclude Publishers' counsel from those lines of questioning during depositions in this case.  Anthropic respectfully asks for a ruling on this

dispute by Wednesday, October 8, because the first deposition of an Anthropic witness is scheduled for Thursday, October 9.

"'The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including forbidding a deposition, or limiting its scope." *Carrera v. First Am. Home Buyers Prot. Co.*, 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014) (quoting Fed. R. Civ. P. 26(C)(1)(A), (D)). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). "This burden can be met by showing that the sought after discovery is irrelevant." *Carrera*, 2014 WL 3695403, at *1; *see Food Mkt. Merchandizing, Inc. v. California Milk Processor Bd.*, 2022 WL 1811076, at *4 (E.D. Cal. June 2, 2022) ("a strong showing of irrelevance can satisfy Rule 26(c)'s good cause standard"); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 313 n.9 (D. Nev. 2019) ("courts may enter protective orders preventing irrelevant questioning at deposition"); *Desert Valley Painting & Drywall v. United States*, 829 F. Supp. 2d 931, 939-40 (D. Nev. 2011) (granting United States a protective order precluding deposition questions on irrelevant issues). Indeed, Rule 26 elsewhere provides that "'the court *must* limit the ... extent of discovery" if it determines "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).

Good cause exists to enter a protective order precluding Publishers' counsel from asking questions about BitTorrent and "pirated" datasets at depositions in this case because (1) this Court has already recognized that discovery into those topics is irrelevant under the operative First Amended Complaint (FAC), and (2) Anthropic would be unfairly prejudiced if Publishers are allowed to use the upcoming depositions to ignore this Court's order and unilaterally expand the scope of discovery to include their claims and allegations, especially at this late date, and particularly after having successfully opposed Anthropic's motion to relate this case to *Bartz*.

## A.    The Court Has Recognized That These Topics Are Irrelevant To The FAC

As this Court has recognized, ECF 431 at 2, BitTorrent and "pirated" datasets are irrelevant to the claims and allegations in the operative FAC. Rather, those issues relate to the new claim

1    and allegations that Publishers have sought to inject into this case at the last minute via their

2    untimely motion for leave to amend—filed eight months after the Court's deadline to amend the

3    pleadings in this case and one month before the then-scheduled close of fact discovery.  *See* ECF

4    411.  That motion seeks to alter the case by adding new allegations and a new distribution claim

5    premised on Anthropic's alleged "downloading" and "uploading [of] works via BitTorrent" from

6    allegedly "pirated" datasets.  *Id.* at ii, 1.  Anthropic opposed the motion, ECF 419, and it remains

7    pending before Judge Lee.  Nevertheless, Publishers began seeking discovery on those issues

8    shortly after filing their motion for leave to amend, which led to the current dispute.  Because

9    parties are not entitled to discovery into as-of-yet unasserted claims and allegations, this Court

10   "deferred" ruling on Plaintiffs' request "pending a ruling on Plaintiffs' motion to amend," instead

11   ordering Anthropic to produce only the limited set of information that Anthropic had offered as a

12   compromise.  ECF 431 at 2.  As the Court explained, "the pending motion to amend … necessarily

13   impacts the scope of relevant and proportional discovery responses in this case."  *Id.*

14          The Court's ruling was sound and its reasoning applies here.  Discovery into unasserted

15   claims and allegations is improper—regardless of whether it is sought through written discovery

16   requests or depositions.  *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000

17   amendment (parties "have no entitlement to discovery to develop new claims or defenses that are

18   not already identified in the pleadings"); *Oracle Am., Inc. v. Hewlett Packard Ent.*, 2016 WL

19   11806000, at *4 (N.D. Cal. Nov. 7, 2016) (holding defendant need not provide discovery regarding

20   a new theory for copyright infringement "unless and until [the plaintiff] amends its complaint to

21   add th[at] theory").  Judge Lee will either grant Publishers' motion for leave to amend, in which

22   case discovery concerning BitTorrent and/or "pirated" book datasets may become relevant, or the

23   motion will be denied and it will not.  But Publishers are not entitled to discovery—including

24   deposition testimony—into the unasserted claim and allegations in the meantime.  *See, e.g.*,

25   *Dardashty v. Hyundai Motor Am.*, 2024 WL 4744022, at *1 (C.D. Cal. July 3, 2024) ("[T]he Court

26   does not consider the allegations in the [proposed] amended complaint when deciding what

27   discovery is relevant and proportional to the needs of the case.").  This Court should, accordingly,

28   follow the lead of other district courts that have recognized that a protective order is warranted

where a plaintiff seeks to question deponents on topics that are the subject of a still-pending or already-denied motion for leave to amend. *See, e.g.*, *Benbow v. Ingram*, 2024 WL 5695915, at *2 (E.D.N.C. Sept. 25, 2024) (issuing protective order precluding deposition on topics that were related to plaintiffs' previously denied motion to amend); *Towner v. USAA Federal Savings Bank*, 2014 WL 5149646, at *1 (D. Utah Oct. 14, 2014) (delaying depositions concerning topics that were subject of a pending motion to amend until after resolution of the motion).

It is also beyond dispute that the "pirated" datasets and BitTorrent are irrelevant to the claims and allegations currently in this case because Publishers told this Court and Anthropic as much in opposing case relation to *Bartz* a year ago. Unlike the operative complaint here, the *Bartz* complaint contained allegations that Anthropic had downloaded allegedly "pirated" book datasets, specifically referencing Library Genesis (LibGen), Z-Library (which is now downloadable via PiLiMi), and Books3, and the complaint stated that those datasets can be accessed through the use of BitTorrent. Class Action Compl., *Bartz v. Anthropic*, No. 3:24-cv-5417-WHA (N.D. Cal. Aug. 19, 2024), ECF 1 ¶¶31-43 & n.25. In opposing case relation, Publishers claimed that *Bartz* and this case were "entirely different," because while the *Bartz* plaintiffs alleged that Anthropic obtained their books from those allegedly "pirated" datasets, Publishers here allege that Anthropic relied on "different sources of data" requiring "different fact discovery into the events surrounding Anthropic's access to the different sets of work." ECF 221 at 1-2. Specifically, Publishers explained that they instead allege that Anthropic obtained Publishers' works through "a dataset called the Common Crawl, YouTube, social media sites, and … licensed lyric aggregators," *id.*— not from "pirated" datasets or via BitTorrent. Publishers cannot now claim that discovery about allegations they explicitly disclaimed early in this case has been relevant all along. The requested discovery unquestionably relates only to Publishers' proposed new claim and allegations.

Given this particularly "strong showing of irrelevance" of Publishers' intended lines of questioning, good cause exists to limit deposition questioning to exclude BitTorrent and the allegedly "pirated" book datasets. *Food Mkt. Merchandizing, Inc*, 2022 WL 1811076, at *4; *see also, e.g.*, *Carrera*, 2014 WL 3695403, at *1.

**B.     Anthropic Would Be Prejudiced By Publishers' Bait-and-Switch**

Good cause for a protective order exists because Anthropic would be seriously prejudiced by those lines of questions.  As discussed, a year ago Publishers represented to Anthropic and the Court that this case was *not* about "pirated" datasets and BitTorrent.  On that basis, the Court declined to relate this case to *Bartz*.  Now, shortly before the close of fact discovery, Publishers seek to inject all the issues in *Bartz* into this case in a manner that would fundamentally alter the nature of the litigation (as illustrated by Publishers' recent request that Judge Lee grant them another discovery extension, which they acknowledge is necessitated primarily by their pending motion for leave to amend).  *See* ECF 435.  Anthropic has diligently litigated this case based on the claims and allegations reflected in the operative complaint and in reliance on Publishers' assertions about the distinctions between this case and *Bartz*.  Allowing Publishers to explore these disclaimed issues in depositions, after their motion to pursue this same information through written discovery was deferred pending Judge Lee's decision on the motion to amend, would unquestionably prejudice Anthropic, undermine this Court's prior order on this issue, and potentially undermine Judge Lee's forthcoming orders.

**C.     A Protective Order Will Not Cause Delay Or Burden Publishers**

A protective order to preclude deposition questioning on claims not asserted in Publishers' operative complaint cannot burden Publishers and will not cause delay in the litigation.  As an initial matter, the burden of sitting for a second deposition falls primarily on Anthropic and its witnesses—not Publishers.  But even if Publishers are somehow burdened, it is from a situation of their own making: Publishers had ample notice and time to introduce these issues sooner but failed to exercise appropriate diligence.  They cannot now use their own delay to claim prejudice.

In any event, a hearing on Publishers' motion is scheduled for October 8, and fact discovery closes on October 21.  To avoid the need to retake depositions, Anthropic offered to schedule the depositions of witnesses that Publishers reasonably believe have relevant information about their new claim and allegations about BitTorrent and "pirated" datasets after October 8, closer to the October 21 fact discovery deadline.  *See Towner*, 2014 WL 5149646 at *1.  That would increase the likelihood that the motion for leave to amend is resolved in advance of those depositions,

thereby avoiding any possible prejudice to Publishers from a protective order pending resolution of the motion.  A protective order under these circumstances will also promote, rather than hinder, the efficient allocation of litigation resources.  By conditioning questioning on these topics on the resolution of Publishers' motion, the parties will be saved from wasting finite time and resources pursuing lines of inquiry at deposition that may ultimately be deemed by the Court to be irrelevant and outside the scope of discovery.

Accordingly, the Court should enter a protective order precluding deposition questioning concerning (1) BitTorrent and (2) "pirated" book datasets, including LibGen and PiLiMi, unless and until the Court grants Plaintiffs' motion for leave to amend the scheduling order and complaint.

## II.    Publishers' Position

Anthropic's demand for a protective order is just the latest maneuver in its long-running campaign to conceal evidence of its illegal torrenting of Publishers' works from pirate libraries.

Anthropic seeks a sweeping order that would improperly preclude Publishers from asking Anthropic deponents any questions whatsoever about Anthropic's use of BitTorrent to download Publishers' works from pirate libraries for AI training—questions that go to the heart of Publishers' existing infringement claims in this case. Anthropic even seeks to prevent Publishers from asking questions about the very BitTorrent-related discovery this Court *just* ordered Anthropic to produce. ECF No. 431. There is absolutely no basis for the protective order Anthropic seeks, which would severely prejudice Publishers' ability to conduct depositions and lead only to inefficiency and delay. Anthropic's motion is a transparent attempt to relitigate Publishers' pending Motion to Amend and to further obstruct discovery into plainly relevant evidence it should have disclosed long ago. Regardless of how the Court rules on Publishers' Motion to Amend, Publishers are entitled to question deponents on these key issues, which relate to Court-ordered discovery and bear on Publishers' existing claims (in addition to their proposed amended claims).

### A.    Anthropic distorts the Court's Sept. 8, 2025 Order.

As an initial matter, Anthropic seriously mischaracterizes the Court's September 8, 2025 "Order Granting in Part and Deferring in Part Discovery Dispute Re Productions of BitTorrent Documents." ECF No. 431. The Court specifically *granted* multiple of Publishers' discovery

requests into Anthropic's BitTorrent use, ordering Anthropic to produce unredacted briefing from the *Bartz* litigation relating to this issue and to produce the "raw text, extracted text and metadata" from the same pirated datasets that Anthropic now seeks to hide from questioning. ECF No. 431. The Court also expressly ordered Anthropic to supplement its response to Publishers' Interrogatory No. 6—recognizing that Anthropic's prior response, which concealed the fact that Anthropic torrented copyrighted works from pirate libraries for its AI training, was plainly insufficient. While the Court ***deferred*** ruling on Publishers' "broader proposal for all documents and communications regarding Anthropic's consideration of or actual use of the BitTorrent protocol, including the proffered compromise that Anthropic produce the discovery on this topic produced in the *Bartz* case," pending resolution of Publishers' Motion to Amend, ECF No. 431, the Court certainly did not, as Anthropic now falsely claims, "decline" or "deny" those requests.

## B.  Anthropic's torrenting of Publishers' works from pirate libraries is plainly relevant to the First Amended Complaint.

Even a cursory review of the operative complaint makes clear that Anthropic's use of BitTorrent to copy Publishers' lyrics from pirate sites is relevant to Publishers' ***existing*** claims.

Among other things, Publishers allege that Anthropic infringes their exclusive right to reproduce their copyrighted works when it copies those works by ***downloading*** them from the internet, without authorization, to train AI models. *See, e.g.*, First Am. Compl. ¶ 52, ECF No. 337 ("Anthropic has built its business by unlawfully taking and using massive amounts of copyrighted content without permission or credit—including Publishers' lyrics."); *id.* ¶ 57–58 ("Anthropic harvests this text—including Publishers' copyrighted lyrics and countless other copyrighted works—from across the internet and other sources on an enormous scale, and then copies that text to serve as input for its AI models. . . . Anthropic also downloads and works from text collections prepared by third parties."); *id.* ¶¶ 1–2, 6, 8, 16, 52–53, 57–58, 60–65, 75–76, 160.

As Publishers' pending Motion to Amend explains, the purpose of the proposed amendment is "to update Publishers' ***existing*** allegations regarding Anthropic's unlawful reproduction of Publishers' works to conform to newly discovered evidence of Anthropic's downloading works via BitTorrent," specifically. ECF No. 411 at ii, 1–2 (emphasis added). This is why the proposed amendment only asserts new claims against Anthropic for unlawful

***distribution*** via torrenting and to add additional Works in Suit that Anthropic illegally torrented. *Id*. In other words, the First Amended Complaint already covers Anthropic's illegal downloading, while the proposed Second Amended Complaint adds claims for Anthropic's illegal distribution via BitTorrent. This distinction dooms Anthropic's irrelevance argument—its sole justification for this protective order. Questions as to whether, how, and from where Anthropic downloaded Publishers' copyrighted works are necessarily relevant to the operative complaint's claims that Anthropic illegally downloaded and reproduced Publishers' works without authorization.

In any case, Anthropic has come nowhere near the "strong showing of irrelevance" it must present to obtain the sweeping relief it seeks here. *See Food Mkt. Merchandizing, Inc. v. Cal. Milk Processor Bd.*, 2022 WL 1811076, at *4 n.5 (E.D. Cal. June 2, 2022) (noting that party requesting protective order bears burden of showing irrelevance); *cf. Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, 2021 WL 12338414, at *2 (C.D. Cal. Dec. 22, 2021) ("It is not up to one party to decide what its opponent needs to prosecute or defend an action."). Indeed, Publishers have already confirmed that the LibGen and PiLiMi "raw text, extracted text and metadata" that the Court ordered Anthropic to produce include many books containing Publishers' copyrighted lyrics in the form of sheet music, songbooks, and other lyric-related books. *See also* ECF No. 420 at 4 (showing results of Publishers' separate investigation into LibGen contents). Publishers must be able to question Anthropic deponents relating to this Court-ordered discovery. Moreover, Anthropic has already conceded that its use of the torrented LibGen and PiLiMi pirate datasets in AI training is relevant to Publishers' existing allegations, by specifically identifying LibGen and PiLiMi in its Court-ordered supplemental response to Publishers' Interrogatory No. 6. While Anthropic refuses to explain how it obtained the LibGen and PiLiMi datasets in its response to Interrogatory No. 6 (which refusal is the subject of a forthcoming joint dispute statement), the *Bartz* court has already found that Anthropic pirated those datasets via BitTorrent. *See, e.g.*, *Bartz v. Anthropic PBC*, 2025 WL 1993577, at *1–2 (N.D. Cal. July 17, 2025) (finding that Anthropic "used the infamous BitTorrent protocol to copy books peer-to-peer from decentralized copies of another pirate library—Library Genesis, or LibGen" and from "PiLiMi").

Anthropic otherwise has not offered any specific reason for why deposition questioning on these core issues would unduly burden it, "[n]or is there any indication that [Publishers] are seeking information that is unreasonably cumulative or that the depositions are for an improper purpose, such as harassment." *Random Tuesday, Inc.*, 2021 WL 12338414, at *2. Publishers must be allowed to pursue this key discovery via deposition questioning.

### C.    Any claimed prejudice to Anthropic stems entirely from its own misconduct.

Anthropic's baseless accusation that Publishers engaged in a "bait and switch" elides Anthropic's own discovery misconduct. Eighteen months ago, in March 2024, Publishers served Interrogatory No. 6, which asked Anthropic to identify all datasets it used to train Claude. In its various supplemental responses, Anthropic identified multiple datasets, but ***never*** disclosed any use of LibGen or PiLiMi—at least, not until this Court ordered it to supplement its response again on September 8, 2025, following the revelation in *Bartz* that Anthropic had illegally pirated both datasets via BitTorrent as part of a massive data-acquisition campaign. *See Bartz*, 2025 WL 1993577, at * 1-2. Anthropic has since disclosed in this case (in as few words as possible) that LibGen and PiLiMi "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" For almost 18 months, Anthropic hid that it has used at least one of these ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And Anthropic continues to downplay that it illegally pirated the LibGen and PiLiMi datasets via BitTorrent by refusing to answer the rest of Interrogatory No. 6, which, among other things, expressly called for a description of "the dataset's origin . . . and its use in the training process."

Anthropic also mischaracterizes the *Bartz* record. First, Anthropic misstates the allegations in the *Bartz* complaint. That complaint did not specifically allege that Anthropic engaged in illegal torrenting, and it did not allege that Anthropic torrented LibGen or PiLiMi specifically. *See* ECF No. 426 at 3 (citing *Bartz* complaint). And, contrary to Anthropic's contention, Publishers never "explicitly disclaimed" allegations regarding Anthropic's illegal torrenting of their works or Anthropic's use of pirate libraries like LibGen or PiLiMi as part of the briefing over *Bartz* case relation. Nor could Publishers have done so—Anthropic was actively concealing evidence of its

torrenting at that time, including by serving a misleadingly incomplete response to Interrogatory No. 6, which wholly failed to disclose its torrenting of LibGen or PiLiMi. Anthropic's improper attempt to punish *Publishers* for relying on *Anthropic's* incomplete and misleading sworn interrogatory response should be rejected.

**D.    A protective order would deny Publishers important discovery.**

Anthropic's proposed protective order would immediately prejudice Publishers by blocking questions about how Anthropic obtained certain of Publishers' copyrighted works, which the world now knows was from torrenting pirate libraries. *See Bartz*, 2025 WL 1993577, at * 1–2. Anthropic's proposed protective order would even block questions about discovery the Court has **ordered** Anthropic to produce **in this case**, including Anthropic's Court-ordered supplemental interrogatory response identifying LibGen and PiLiMi and its Court-ordered production of pirate files and metadata it downloaded from those very sources. Regardless of how the Court ultimately rules on the Motion to Amend, these issues are relevant to Publishers' existing claims.

In contending that a protective order will not prejudice Publishers, Anthropic reveals its true aim of thwarting *any* discovery into its torrenting from pirate libraries, irrespective of the Court's ruling on Publishers' Motion to Amend. Anthropic contends that Publishers' ability to ask questions on these topics must be conditioned on Publishers' Motion to Amend. *See supra* at 6. But Anthropic *opposes* Publishers' motion to extend the discovery schedule pending a ruling on Publishers' Motion to Amend, ECF No. 441, and without that extension it will be practically impossible to depose Anthropic's witnesses on these issues even if the Court grants the Motion to Amend. Anthropic wants to have its cake and eat it too by forcing Publishers to wait to ask questions about torrenting and pirate libraries until Publishers have no practical ability to do so.

Anthropic's request should be denied, as should its request for an expedited ruling, including because Anthropic has repeatedly refused to complete Publishers' long-noticed dispute statements in a timely fashion and repeatedly inserted overlong positions, causing further delay. Moreover, Anthropic has unilaterally cancelled one other Anthropic witness deposition that Publishers were scheduled to take on October 3 (which was the original basis for its expedited request).

Date: October 3, 2025

By: */s/ Nicholas C. Hailey*
**OPPENHEIM + ZEBRAK, LLP**

Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
Audrey L. Adu-Appiah
(admitted pro hac vice)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
cmiller@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted pro hac vice)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted pro hac vice)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200

Respectfully submitted,

By: */s/ Taylor Gooch*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@Wilmerhale.Com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

ARI HOLTZBLATT (SBN 354361)
Ari.Holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*pro hac vice*)
robin.burrell@wilmerhale.com
2100 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000

TAYLOR GOOCH (SBN 294282)
taylor.gooch@wilmerhale.com
50 California St.
San Francisco, CA 94111
Telephone: (628) 235-1000

*Attorneys for Defendant*
**ANTHROPIC PBC**

rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

### SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of the document was obtained from the document's signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 3, 2025                    */s/ Taylor Gooch*
                                          Taylor Gooch

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2025, I did cause true copies of the unredacted Joint Discovery Dispute Statement Regarding Protective Order for Depositions Precluding Questions on BitTorrent and "Pirate Libraries" to be served on the following listed below and in the manner so indicated.

**<u>By Electronic Mail</u>**

OPPENHEIM + ZEBRAK, LLP
Matthew J. Oppenheim (*Pro Hac Vice*)
Nicholas C. Hailey (*Pro Hac Vice*)
Audrey Adu-Appiah (*Pro Hac Vice*)
Corey Miller (*Pro Hac Vice*)
Jeffrey M. Gould (*Pro Hac Vice*)
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com
corey@oandzlaw.com
jeff@oandzlaw.com

COBLENTZ PATCH DUFFY & BASS LLP
Jeffrey G. Knowles
Christopher J. Weiner
Bina Patel
Thomas A. Harvey
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 772-5795
Ef-jgk@cpdb.com
cwiener@coblentzlaw.com
bpatel@coblentzlaw.com
Ef-Tah@cpdb.com

Jennifer Pariser (*Pro Hac Vice*)
Andrew Guerra (*Pro Hac Vice*)
Timothy Chung (*Pro Hac Vice*)
Michelle Gomez-Reichman (*Pro Hac Vice*)
Bret Matera (*Pro Hac Vice*)
Alexander Kaplan (*Pro Hac Vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com
bmatera@oandzlaw.com
alex@oandzlaw.com

COWN, LEIBOWITZ & LATMAN, P.C.
Richard S. Mandel (*Pro Hac Vice*)
Jonathan Z. King (*Pro Hac Vice*)
Richard Dannay (*Pro Hac Vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

Dated:  October 3, 2025

By:   */s/ Taylor Gooch*
      Taylor Gooch