UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 24-cv-03811-EKL (SVK)<br><br>**ORDER FOLLOWING HEARING RE DISCOVERY AND ORDER TO SHOW CAUSE**<br><br>Re: Dkt. Nos. 455, 458, 463, 467 |

After the filing in quick succession of numerous joint statements setting forth various discovery disputes, this Court issued an Order to Show Cause and set a discovery hearing for October 10, 2025. *See* Dkts. 439, 447, 450, 455, 457, 458, 459 ("OSC"), 463. To the Parties' credit, many of the disputes were resolved in advance of the hearing owing to meet-and-confer efforts following the Honorable Eumi K. Lee's October 8, 2025 ruling on Plaintiffs ("Publishers'") motion to file a second amended complaint and motion to extend case deadlines. *See* Dkts. 467-68. Having considered the Parties' submissions and oral arguments, as well as the recent rulings of Judge Lee, the operative First Amended Complaint ("FAC"), (Dkt. 337), and the relevant law, including Rule 26's guideposts of relevance and proportionality, the Court resolved the Parties' disputes as set forth on the record, with the exception of Defendant Anthropic PBC's ("Anthropic") request to compel production of certain information related to Publishers' investigatory prompts and outputs, which the Court took under submission. For the convenience of the Court and the Parties only, the Court summarizes its rulings herein.[1,2]

---

[1] In the event the Court's ruling on the record differs from this Order, this Order controls.

[2] This Order includes no recitation of confidential information and is public. However, throughout the hearing, the Parties read certain portions of interrogatory responses and other potentially confidential information. The Court provisionally ordered the transcript sealed, pending the Parties' review and a motion to seal including proposed redactions.

**I.      DISCOVERY DISPUTES**

   **A.      Dkt. 457 – Anthropic's Request for Protective Order Precluding Questions About BitTorrent and "Pirate Libraries"**

In denying Publishers' motion to amend, Judge Lee held that discovery must be grounded in the First Amended Complaint. In so doing, Judge Lee also made clear that the "method of collection" by which Anthropic obtained its databases, *i.e.*, whether via torrenting or otherwise, is not at issue in this case. Nonetheless, the *use* to which Anthropic puts its datasets, *e.g.*, to develop a training corpus or guardrails, is fairly encompassed with Publishers' FAC. *See, e.g.*, FAC, ¶¶ 67, 69-72. With these guideposts in mind, Anthropic's request for a protective order is **GRANTED IN PART AND DENIED IN PART:**

- Publishers may not question Anthropic's witnesses as to any participation or the lack thereof by Anthropic in torrenting/BitTorrent.
- Publishers generally may not question Anthropic's witnesses as to how particular datasets were obtained or where they were obtained from, except:
    o Publishers may question witnesses as to Anthropic's data scraping and crawling practices; and
    o Publishers may, for a given dataset, ask whether such dataset was licensed.
- Publishers may inquire as to the use made by Anthropic of a given dataset, including whether or how LibGen or other datasets were used to train Anthropic's AI models or as a basis for Anthropic's AI guardrails, except:
    o Based on Anthropic's representation that PiLiMi was not used in training any commercial Claude models nor used as a basis for Anthropic's AI guardrails, as well as balancing the potential for discovery of relevant evidence against the inextricable link that PiLiMi bears to torrenting and the likelihood that such questions will necessarily range into issues not encompassed within the FAC, Publishers may not ask about Anthropic's use of PiLiMi.

////

////

B.  **Dkt. 455 – Publishers' Request for Production and Use of Deposition Transcripts Taken in *Bartz v. Anthropic***

For the reasons stated on the record, despite some potential efficiency that may be gained from allowing the use of the *Bartz* deposition transcripts of Anthropic employees, the Court finds that the transcripts are likely to encompass torrenting issues not encompassed within the FAC and that there may not be clear lines of demarcation between allowed and disallowed topics in *this* action. Accordingly, in the interests of Rule 1 as well as judicial efficiency, the Court finds that it will be more efficient for Publishers to depose Anthropic employees in this action with questions limited to the issues relevant in this case. This request is **DENIED**.

C.  **Publishers' Request for Exhibits and Declarations Attached to Summary Judgment Briefing in *Bartz v. Anthropic***

First, Anthropic **SHALL PRODUCE** the 20 exhibits and three declarations it offered as a compromise to Publishers. Second, for the reasons stated on the record, Publishers' request for six additional exhibits (*Bartz* MSJ, Ex. 41; *Bartz* Opp., Exs. 14, 36, 38; *Bartz* Reply, Exs. 40-41) is **GRANTED**. Finally, Publishers' request for three additional declarations is **GRANTED IN PART** and **DENIED IN PART**: their request for the declaration of Dr. Kaplan (and exhibits thereto) is **GRANTED** but, based on Anthropic's representation that the other expert will not be testifying in this case, the requests for the two declarations of this now non-testifying expert are **DENIED**.

D.  **The Parties' Dispute as to the Timing of Anthropic's Custodial Production and Certain Depositions Related Thereto**

Anthropic's request for an extension of time to complete the custodial production ordered by this Court in Dkt. 460 is **GRANTED IN PART**: Anthropic's rolling production **must begin the week of October 13 and be completed no later than October 27, 2025.** Plaintiffs may prioritize categories of documents for production which Anthropic shall accommodate.

The Parties shall meet and confer and work together to schedule depositions, in light of the rolling document production, which will be completed by the extended close of fact discovery on **November 12, 2025.** Specifically with regard to Dr. Kaplan, Anthropic's request to limit the

3

deposition of Dr. Kaplan to four hours is **DENIED**, and Dr. Kaplan shall be made available for deposition in the week of November 3, 2025.

### E. Anthropic's Request for Certain Information Related to Publishers' Investigation of Claude Prompts and Outputs

The final discovery dispute arises from requests by Anthropic for information related to Publishers' pre-suit investigation of Claude prompts and outputs. This dispute was not the subject of a prior written submission, but the Parties were prepared to address it, and the Court heard extensive argument and took the matter under submission.

In a prior order, this Court denied Anthropic's request for discovery of Publishers' investigatory prompts and outputs themselves, "without prejudice to Anthropic seeking to discover, as necessary, specific facts supporting specific contentions or opinions disclosed in the course of the litigation." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL (SVK), 2025 WL 1482734, at *3 (N.D. Cal. May 23, 2025) (the "Prior Order"). In so doing, the Court noted that: "at [that] early stage, it remain[ed] unclear what evidence Publishers will rely on to prove the 'ease of use' or 'massive use' allegations," and that "Anthropic's discovery requests and the attendant waiver argument [were] overbroad." *Id.* at *2. Now, Anthropic seeks to discover a narrower set of facts, namely: (Interrogatory no. 3) prior to the filing of this action, the total number of prompts Publishers entered into Claude requesting lyrics to songs and the total number of outputs received that included song lyrics; (Interrogatory no. 4) the total number of prompts that did ***not*** result in outputs containing song lyrics, including outputs that invoked Claude's "guardrails"; (Interrogatory no. 5) the same information as interrogatory no. 3 but only for the works-in-suit; and (Interrogatory no. 6), among some other information, the email address and username associated with each prompt. Anthropic also seeks a related 30(b)6 deposition. For the following reasons, Anthropic's requests are **GRANTED IN PART** and **DENIED IN PART.**

As the Court explained in the Prior Order, the prompts and related settings used by Publishers in their pre-suit investigation are attorney work-product. *Id.* at *2 (citing *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223-AMO, 2024 WL 3748003, at *2-*3 (N.D. Cal. Aug. 8, 2024)). However, the pending requests, directed only to numbers of prompts and responses, will elicit

4

only facts and "not [the] mental impressions, conclusions, opinions or legal theories" of attorneys; these facts are thus, at best, fact work-product. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1125 (9th Cir. 2020). Accordingly, under the "fairness principle" or "sword-and-shield doctrine," such material may be discoverable to the extent Publishers have waived the privilege, including by "plac[ing] the work product at issue during the course of litigation." *See id.* at 1117. Such a "waiver must be 'closely tailored … to the needs of the opposing party' and limited to what is necessary to rectify any unfair advantage gained." *Sanmina*, 968 F.3d at 1124. In other words, "a court must be careful to impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* at 1122.

At the hearing, Publishers explained that they would rely on two types of evidence in support of their allegations as to the ineffectiveness of Claude's guardrails:[3] (1) evidence provided by Anthropic, *e.g.* documents or statistics derived from the sample, as to the effectiveness of guardrails; and (2) the fact that on certain dates, presumably after guardrails were assertedly implemented, Publishers' investigators were able to submit prompts that nonetheless resulted in allegedly infringing outputs. This provides clarity as to one of the questions left unanswered in the Court's Prior Order. In light of such clarity, the Court finds that a limited and narrow waiver has occurred under the fairness principle: because Publishers intend to present evidence that in their own (or their agents') experience Anthropic's guardrails failed at least some number of times, Anthropic must in fairness be permitted to discover and present evidence as to the number of times its guardrails did *not* fail. In other words, if Publishers are supplying the numerator, Anthropic is entitled to discover the denominator. Accordingly, the Court **GRANTS** Anthropic's request as to Interrogatory nos. 3 and 4.

However, the Court **DENIES** Anthropic's request as to Interrogatory no. 5 for two reasons. First, given the allowance of both Interrogatory nos. 3 and 4, Interrogatory no. 5 adds very little. Second, the combination of Interrogatory nos. 3 and 5 could permit Anthropic to deduce the fact that, for at least some number copyrighted works, Publishers decided not to bring

---

[3] This point is similar, if not identical to, the "ease of use" allegations discussed in the Court's prior order: An AI model with ineffective guardrails may be easier to use for infringement.

1  suit despite finding allegedly infringing outputs. Such information could arguably be opinion
2  work product. At a minimum, it veers too close to the line in light of the limited (if any) new
3  information that Interrogatory no. 5 would provide.

4  Anthropic's remaining request (Interrogatory no. 6) is for emails and usernames associated
5  with Publishers' investigators, which Anthropic asserts it needs to disentangle Publishers' prompts
6  and outputs from the larger 5-million record sample. Here, the Court is concerned that revealing
7  Publishers' usernames and emails would give Anthropic the key it needs to unlock the door to the
8  prompts and outputs themselves – which this Court denied in its Prior Order. To the extent that
9  Publisher-prompts versus third-party prompts is a relevant distinction as to the effectiveness of
10 guardrails (as argued by Anthropic), only the raw numbers are necessary for Anthropic to mount
11 its defense. Alternatively, to the extent Anthropic argued that it needs to identify the specific
12 prompts to defend against secondary liability, the Court is not persuaded that this is the case, (*see*
13 *Arista Records LLS v. Usenet.com, Inc.* 633 F. Supp. 2d 124, 149-50, fn. 16 (S.D.N.Y. 2009), and,
14 in any event, the danger of crossing the line into discovery of opinion work product is too great. .
15 Accordingly, the Court **GRANTS ONLY AS MODIFIED** Anthropic's Interrogatory no. 6:
16 Publishers, via their own access to the 5-million record sample, will disclose to Anthropic: (a) the
17 total number of the Publishers' (or their agents') prompts-output pairs that are encompassed in the
18 sample; (b) the number of such prompts in the sample that resulted in the output of song lyrics;
19 and (c) the number of such prompts in the sample that resulted in the invocation of Claude's
20 guardrails or otherwise failed to elicit song lyrics.

21 Anthropic's request for a 30(b)6 deposition on these topics is **DENIED**. As noted at the
22 outset, the waiver of attorney work product by Publishers must be narrowly drawn. *Sanmina*, 968
23 F.3d at 1124. To the extent Publishers are relying upon their investigators' prompts and outputs,
24 the responses ordered above delineate the border between the Publishers' waiver and remaining
25 work-product protections. A deposition on these topics will only invite an inviolate crossing of
26 that border. In sum, Anthropic will have the numbers it needs to exclude Publishers' prompt-
27 output pairs from the statistics it draws from the 5-million record sample, without the risk of
28 disclosure of Publishers' opinion work product.

## II. THE COURT'S ORDER TO SHOW CAUSE

The Court is satisfied by the meet and confer efforts of the Parties, including in the evening before and minutes leading up to the hearing, resulting in the successful resolution of—by this Court's count—six of the then-outstanding twelve discovery disputes. The Order to Show Cause is hereby **TERMINATED**. The Parties may again bring discovery disputes in accordance with this Court's Standing Order but are admonished that the Order to Show Cause may be reinstated if the Parties fail to display robust and sincere meet and confer efforts prior to brining any such dispute.

**SO ORDERED.**

Dated: October 12, 2025

SUSAN VAN KEULEN
United States Magistrate Judge