| | |
|---|---|
| SONAL N. MEHTA (SBN 222086)<br>sonal.mehta@wilmerhale.com<br>ALLISON BINGXUE QUE (SBN 324044)<br>allison.que@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>**HALE AND DORR LLP**<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306<br>Telephone: (650) 858-6000 | JOSEPH R. WETZEL (SBN 238008)<br>joe.wetzel@lw.com<br>**LATHAM & WATKINS LLP**<br>505 Montgomery Street, Suite 2000<br>San Francisco, California 94111<br>Telephone: (415) 391-0600 |

*Attorneys for Defendant*
**ANTHROPIC PBC**
(Additional Counsel on Next Page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br>                 Plaintiffs,<br>v.<br>ANTHROPIC PBC,<br>                 Defendant. | Case No. 5:24-cv-03811-EKL-SVK<br><br>**DEFENDANT'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE RE: PLAINTIFFS' INVESTIGATION**<br><br>CIVIL L.R. 72-2<br><br>Judge: Hon. Eumi K. Lee |

| | |
|---|---|
| LOUIS W. TOMPROS (*Pro Hac Vice*)<br>louis.tompros@wilmerhale.com<br>STEPHANIE LIN (*Pro Hac Vice*)<br>stephanie.lin@wilmerhale.com<br>DISHA PATEL (*Pro Hac Vice*)<br>disha.patel@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>**HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br><br>ARI HOLTZBLATT (SBN 354361)<br>ari.holtzblatt@wilmerhale.com<br>ROBIN C. BURRELL (*Pro Hac Vice*)<br>robin.burrell@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>**HALE AND DORR LLP**<br>2100 Pennsylvania Ave, NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000<br><br>TAYLOR GOOCH (SBN 294282)<br>taylor.gooch@wilmerhale.com<br>KYLE EDWARDS HAUGH (SBN 323952)<br>kyle.haugh@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>**HALE AND DORR LLP**<br>50 California St.<br>San Francisco, CA 94111<br>Telephone: (628) 235-1000 | ANDREW M. GASS (SBN 259694)<br>andrew.gass@lw.com<br>BRITTANY N. LOVEJOY (SBN 286813)<br>brittany.lovejoy@lw.com<br>IVANA DUKANOVIC (SBN 312937)<br>ivana.dukanovic@lw.com<br>**LATHAM & WATKINS LLP**<br>505 Montgomery Street, Suite 2000<br>San Francisco, California 94111<br>Telephone: (415) 391-0600<br><br>SARANG V. DAMLE (*Pro Hac Vice*)<br>sy.damle@lw.com<br>**LATHAM & WATKINS LLP**<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br><br>ALLISON L. STILLMAN (*Pro Hac Vice*)<br>alli.stillman@lw.com<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1747 |

Anthropic submits this motion to correct a critical legal error in Judge van Keulen's October 12 discovery order, which allows Publishers to use prompts and outputs they and their agents generated as a sword to prove their secondary liability claims, while invoking the work product doctrine to prevent Anthropic from discovering basic identifying information about those output-generating-efforts—information basic fairness requires Anthropic to be permitted to explore in its defense. ECF 478 at 4-6 ("October 12 Order"). Without this information, Anthropic and the factfinder cannot distinguish true third-party prompts from Publishers' own **non-infringing** prompts, which cannot establish secondary liability as a matter of law.

Two fundamental legal errors led to this result: First, the October 12 Order wrongly concluded that prompt-output pairs attributable to Publishers' employees and investigators could form the basis for secondary liability claims. That conclusion contradicts binding precedent: as a matter of law, secondary infringement claims require a predicate act of direct infringement by a ***bona fide third party***. Publishers therefore cannot establish secondary infringement for any Claude output prompted by Publishers or their agents. Second, the October 12 Order wrongly concluded that Anthropic is barred from obtaining usernames on work product grounds, based on a misreading of the decision in *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003 (N.D. Cal. Aug. 8, 2024). In fact, *Tremblay* correctly held that plaintiffs waive work product protection for the username information associated with prompt-output pairs on which they rely. These errors stemmed from Publishers' misreadings and misrepresentations of the underlying caselaw at oral argument, which, because the parties were unable to brief this dispute, Anthropic did not have an adequate opportunity to respond to or clarify.

If allowed to stand, the October 12 Order will prejudicially hinder Anthropic's ability to defend against secondary liability. And it will set a dangerous precedent for future cases—opening defendants to potentially massive secondary liability by encouraging plaintiffs to generate untold volumes of allegedly infringing materials and then refuse to distinguish between their own and third parties' outputs. Anthropic asks the Court to amend the October 12 Order to compel discovery (via Anthropic's interrogatories and 30(b)(6) topics) of Publishers' account information for any prompt-output pairs they will affirmatively use to prove their secondary liability claims. But if the Court is

not inclined to grant discovery, then fundamental fairness requires that the Court at least bar Publishers from proving their claims using any prompt-output pairs from an unidentified user.

I. **Anthropic Must Be Able To Distinguish Publisher and Third-Party Prompts/Outputs**

Publishers have confirmed they will seek to rely on prompt-output pairs they generated as predicate acts of secondary infringement claims, but they have refused to identify the users associated with those prompts. That prevents Anthropic from attacking a key legal defect in Publishers' case. "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); 3 Nimmer on Copyright § 12.04[D][1] (secondary infringement is "confine[d] … to those instances where an actual infringement has in fact occurred"). A copyright holder cannot infringe its own copyrights, so Publishers' own prompts and outputs cannot form the basis for secondary liability claims against Anthropic. The same logic extends to the actions of Publishers' agents who prompted Claude for lyrics at Publishers' direction.[1] Because "anyone who is authorized by the copyright owner to use the copyrighted work … is not an infringer of the copyright with respect to such use," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984), Publishers' and Publishers' agents' use of Claude cannot form the predicate acts of infringement for a secondary liability claim. Any contrary conclusion would require (incorrectly) holding that Publishers or their agents can be held liable for direct infringement on authorized conduct.[2]

Publishers' oral citation to *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149-150 n.16 (S.D.N.Y. 2009), on which the October 12 Order's contrary conclusion was based, was an invitation to error. Publishers (and as a result Judge van Keulen) relied on a thinly reasoned footnote in that out-of-circuit decision to reject Anthropic's and the factfinders' need to distinguish

---

[1] In its order on the first motion to dismiss, this Court declined to determine, as premature, "whether output prompted by Publishers' ***investigators*** would constitute a predicate act of third-party infringement." ECF 322 at 6 (emphasis added). The issue is now ripe because Publishers have asserted that their investigators and agents qualify as third parties for purposes of proving their secondary liability claims.

[2] Anthropic does not dispute that Publishers can cite prompt-output pairs generated by Publishers or their agents as evidence of ***direct*** infringement—i.e., where the argument is that *Anthropic* directly infringed in producing an output—and that Anthropic can defend against that claim on the merits.

bona fide third parties from Publishers and their agents. But that footnote conflicts with Ninth Circuit precedent on the predicates of secondary liability. And contrary to Publishers' representations to the court during the hearing, none of the decisions cited in the *Arista* footnote stand for the proposition that the authorized acts of a copyright holders' agents can qualify as third-party infringement for secondary liability; most concern the use of investigators to gather evidence for *direct* infringement claims. Moreover, *Arista* only concerned the acts of a copyright holder's *agents*—it did not hold (nor could it) that plaintiffs' *own* acts could form the basis for secondary liability. *Arista* therefore provides no basis for the October 12 Order's decision to withhold the usernames of Publishers' *employees'* prompts—which Publishers have expressly placed at issue in this case. *See* ECF 42 at ¶18; ECF 43 at ¶¶18, 20; ECF 44 at ¶¶19; ECF 45 at ¶¶17, 19. Without that information, Anthropic and the factfinder will have no way to assess which prompt-output pairs could even be subject to a secondary liability claim.

The portion of the October 12 Order requiring the production of the **total** number of Publishers' prompt-output pairs is helpful but not sufficient for defending against Publishers' secondary infringement claims because Anthropic needs to know user affiliation on a per-work basis. For example, if there are only three outputs containing a particular work's lyrics, and all three were created by Publishers or their agents, then Publishers have no viable secondary infringement claim for that work. This is beyond dispute, but despite repeated requests, Publishers have identified no method for Anthropic or the factfinder to discern that information short of disclosure of account information. Indeed, Publishers' counsel acknowledged weeks ago that there would need to be a way to separate their own prompt-output pairs from the rest, but subsequently said that they could not do so. The consequence cannot be, as Publishers suggest and the October 12 Order contemplates, that Publishers can rely on their own prompt-output pairs for secondary liability without a way to distinguish their prompts from true third-party prompts for each work. If the only way to allow Anthropic and the factfinder to know which prompts/outputs came from Publishers is to provide user information, then Publishers must disclose it. They "cannot make factual assertions based on … supposedly privileged" information "and then deny [Anthropic] an opportunity to uncover the foundation for those assertions in order to contradict them." *Contreras v. Gonzalez*, 2020 WL

6887743, at *2 (E.D. Cal. Nov. 24, 2020).

## II. The October 12 Order Relied On An Erroneous Reading of *Tremblay v. OpenAI*

The October 12 Order also wrongly concluded that Publishers could claim work product protection over the usernames associated with the prompt-output pairs that they intend to rely on to establish liability. As an initial matter, a username is not itself work product—it is precisely the sort of information that would appear on a privilege log to justify a work product claim. But even if usernames are protectable, Publishers waived any protection by voluntarily disclosing them on Anthropic's own systems. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020). ***Critically***, Publishers further waived any privilege by putting prompt-output pairs associated with these undisclosed usernames directly at issue. *See id.* at 1117. When a party seeks to affirmatively rely upon the fruits of their supposed work product as a sword, they have waived the right to use the doctrine as a shield, and the scope of that waiver must be "broad enough" to cover materials "without which [the adverse party] may be unfairly prejudiced in their defense." *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003). Thus, when "a party puts … its pre-litigation investigation at issue" it "must turn over documents related to that investigation, even if they would ordinarily be privileged." *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005). Here, Anthropic and the factfinder must be given enough information to untangle the prompt-output pairs generated by Publishers' and their agents from the rest of the prompt-output pairs in the three data sets upon which Publishers will rely. It is undisputed that the only way to do so is to disclose the list of users associated with Publishers and their agents.

In concluding otherwise, the October 12 Order relied on an erroneous reading of *Tremblay v. OpenAI*. That case recognized that when plaintiffs intend to rely on positive test results from an investigation of AI outputs to establish liability, defendants are entitled to the "account settings" for the users who generated them. *Tremblay*, 2024 WL 3748003, at *1, 3; *see Tremblay*, ECF 153 at 2-3 (explaining that "account information" included "user personal information"). As Anthropic explained at the October 10 hearing, "account settings" in *Tremblay* included account information like usernames and emails. In response, Publishers' counsel inaccurately argued that "account settings" had a different meaning. ECF 481 at 108:6-14 (10/10/25 Hr'g Tr.). That argument was

another invitation to error. *Tremblay*'s background section, the magistrate order under review, and the briefing in that case all made clear that the term "account settings" was shorthand for "the OpenAI account information for individuals who used ChatGPT to investigate Plaintiffs' claims," *see Tremblay*, 2024 WL 3748003, at *1; *Tremblay*, ECF 154 at 1 (magistrate opinion), which in turn included the "name, contact information, and account credentials" of account holders, *Tremblay*, ECF 153 at 11 (defining "Account Information"). That "account information" was "a necessary component of Defendants' ability to understand Plaintiffs' positive results and to fairly subject those results to meaningful scrutiny." *Tremblay*, ECF 154 at 6. The same reasoning applies with equal force here. But the October 12 Order relied upon Publishers' oral misrepresentation of *Tremblay* to reach an erroneous result.[3]

### III. Anthropic Is Entitled To 30(b)(6) Testimony On Nonprivileged Topics

The Court should also reverse the Order's denial of 30(b)(6) testimony for any aspect of Publishers' investigation for which privilege is waived. For the reasons above, the October 12 Order does not "delineate the border between the Publishers' waiver and remaining work-product protections," ECF 478 at 6, and Anthropic is entitled to probe any relevant nonprivileged matter in depositions. *See Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000).

*       *       *

Anthropic respectfully requests that the Court amend the October 12 Order to require a response to Anthropic's interrogatories and the related Rule 30(b)(6) testimony in full. But if the Court is not inclined to do so, at a minimum it should preclude Publishers from offering any unidentified prompt-output pairs as evidence of third-party acts under the sword and shield doctrine. "[F]undamental fairness" requires that result, as Anthropic would otherwise be denied its due process rights to defend itself. *Sanmina Corp.*, 968 F.3d at 1121.

---

[3] The October 12 Order also expressed concern that giving Anthropic usernames would permit it to reverse engineer prompt-output pairs Publishers did not sue on. ECF 478 at 6. That concern cannot justify denial of important discovery. First, Publishers made the choice to commingle works in their investigation and then to selectively rely on the results. They of course have the option not to rely on their own outputs. Second, counsel for Anthropic committed not to use emails or usernames to reverse engineer Publishers' investigation, ECF 481 at 103:24-104:1-7, 114:4-5, and information about other works that are not in suit would be of little value in any case.

| | |
|---|---|
| Date: October 27, 2025 | /s/ *Sonal N. Mehta* |
| JOSEPH R. WETZEL (SBN 238008)<br>joe.wetzel@lw.com<br>ANDREW M. GASS (SBN 259694)<br>andrew.gass@lw.com<br>BRITTANY N. LOVEJOY (SBN 286813)<br>brittany.lovejoy@lw.com<br>IVANA DUKANOVIC (SBN 312937)<br>ivana.dukanovic@lw.com<br>**LATHAM & WATKINS LLP**<br>505 Montgomery Street, Suite 2000<br>San Francisco, California 94111<br>Telephone: (415) 391-0600<br><br>SARANG V. DAMLE (*Pro Hac Vice*)<br>sy.damle@lw.com<br>**LATHAM & WATKINS LLP**<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br><br>ALLISON L. STILLMAN (*Pro Hac Vice*)<br>alli.stillman@lw.com<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1747 | SONAL N. MEHTA (SBN 222086)<br>sonal.mehta@wilmerhale.com<br>ALLISON BINGXUE QUE (SBN 324044)<br>allison.que@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306<br>Telephone: (650) 858-6000<br><br>LOUIS W. TOMPROS (*Pro Hac Vice*)<br>louis.tompros@wilmerhale.com<br>STEPHANIE LIN (*Pro Hac Vice*)<br>stephanie.lin@wilmerhale.com<br>DISHA PATEL (*Pro Hac Vice*)<br>disha.patel@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6220<br><br>ARI HOLTZBLATT (SBN 354361)<br>ari.holtzblatt@wilmerhale.com<br>ROBIN C. BURRELL (*Pro Hac Vice*)<br>robin.burrell@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>2100 Pennsylvania Ave, NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000<br><br>TAYLOR GOOCH (SBN 294282)<br>taylor.gooch@wilmerhale.com<br>KYLE EDWARDS HAUGH (SBN 323952)<br>kyle.haugh@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>50 California St.<br>San Francisco, CA 94111<br>Telephone: (628) 235-1000<br><br>*Attorneys for Defendant*<br>**ANTHROPIC PBC** |