**PUBLIC REDACTED VERSION**

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
ALLISON BINGXUE QUE (SBN 324044)
allison.que@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

JOSEPH R. WETZEL (SBN 238008)
joe.wetzel@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

*Attorneys for Defendant*
**ANTHROPIC PBC**
(Additional Counsel on Next Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>       Plaintiffs,<br><br>   v.<br><br>ANTHROPIC PBC,<br><br>       Defendant. | Case No. 5:24-cv-03811-EKL-SVK<br><br>**DEFENDANT'S MOTION FOR CLARIFICATION OF PROTECTIVE ORDER**<br><br>Judge: Hon. Susan van Keulen<br><br>Date: December 30, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6 – 4th Floor |

**PUBLIC REDACTED VERSION**

| | |
|---|---|
| LOUIS W. TOMPROS (*Pro Hac Vice*) | ANDREW M. GASS (SBN 259694) |
| louis.tompros@wilmerhale.com | andrew.gass@lw.com |
| DISHA PATEL (*Pro Hac Vice*) | BRITTANY N. LOVEJOY (SBN 286813) |
| disha.patel@wilmerhale.com | brittany.lovejoy@lw.com |
| **WILMER CUTLER PICKERING** | IVANA DUKANOVIC (SBN 312937) |
| **HALE AND DORR LLP** | ivana.dukanovic@lw.com |
| 60 State Street | **LATHAM & WATKINS LLP** |
| Boston, MA 02109 | 505 Montgomery Street, Suite 2000 |
| Telephone: (617) 526-6000 | San Francisco, California 94111 |
| | Telephone: (415) 391-0600 |
| ARI HOLTZBLATT (SBN 354361) | |
| ari.holtzblatt@wilmerhale.com | SARANG V. DAMLE (*Pro Hac Vice*) |
| ROBIN C. BURRELL (*Pro Hac Vice*) | sy.damle@lw.com |
| robin.burrell@wilmerhale.com | **LATHAM & WATKINS LLP** |
| **WILMER CUTLER PICKERING** | 555 Eleventh Street NW, Suite 1000 |
| **HALE AND DORR LLP** | Washington, DC 20004 |
| 2100 Pennsylvania Ave, NW | Telephone: (202) 637-2200 |
| Washington, DC 20006 | |
| Telephone: (202) 663-6000 | ALLISON L. STILLMAN (*Pro Hac Vice*) |
| | alli.stillman@lw.com |
| TAYLOR GOOCH (SBN 294282) | **LATHAM & WATKINS LLP** |
| taylor.gooch@wilmerhale.com | 1271 Avenue of the Americas |
| KYLE EDWARDS HAUGH (SBN 323952) | New York, New York 10020 |
| kyle.haugh@wilmerhale.com | Telephone: (212) 906-1747 |
| **WILMER CUTLER PICKERING** | |
| **HALE AND DORR LLP** | |
| 50 California St. | |
| San Francisco, CA 94111 | |
| Telephone: (628) 235-1000 | |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

NOTICE OF MOTION FOR CLARIFICATION OF PROTECTIVE ORDER ............................1

STATEMENT OF RELIEF SOUGHT .................................................................................................1

ISSUES TO BE DECIDED .....................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................2

    I.    INTRODUCTION ...............................................................................................................2

    II.    BACKGROUND .................................................................................................................3

    III.    LEGAL STANDARD .......................................................................................................7

    IV.    ARGUMENT ......................................................................................................................8

        A.    The Protective Order Prohibits The Use Of Confidential Information Disclosed In This Suit To Litigate A Separate Suit ....................8

        B.    This Court's Intervention Is Needed Now In Light Of O+Z's Repeated Disregard For The Unambiguous Terms Of The Protective Order Language ..............................................................11

    V.    CONCLUSION ................................................................................................................14

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
    2007 WL 1848660 (N.D. Cal. June 27, 2007) ................................................................. 9

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993) .............................................................................. 9, 10, 11

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
    2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) ................................................................. 9

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
    976 F. Supp. 917 (N.D. Cal. 1997) ................................................................................ 8, 9

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*,
    2023 WL 6882749 (N.D. Cal. Oct. 18, 2023) ........................................................... 9, 10, 11

*Tattersalls, Ltd. v. DeHaven*,
    745 F.3d 1294 (9th Cir. 2014) ...................................................................................... 8, 11

*Yellow Rose Prods., Inc. v. Pandora Media, LLC*,
    2023 WL 6932560 (C.D. Cal. Sept. 29, 2023) ............................................................ 7, 8, 11

**DOCKETED CASES**

*Bartz v. Anthropic PBC*,
    Case No. 3:24-cv-05417-WHA (N.D. Cal.) ....................................................................... 5

**STATUTES, RULES, AND REGULATIONS**

Civil L.R. 7-2 .......................................................................................................................... 1, 2

Fed. R. Civ. P. 60(a) ................................................................................................................... 8

**OTHER AUTHORITIES**

Model Protective Orders (N.D. Cal.)
    https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/
    model-protective-orders ................................................................................................ 3

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION FOR CLARIFICATION OF PROTECTIVE ORDER**

PLEASE TAKE NOTICE that, on December 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan van Keulen of the United States District Court for the Northern District of California, at the San Jose Courthouse, Courtroom 6, 4th Floor, 280 South First Street, San Jose, California, 95113, Defendant Anthropic PBC ("Anthropic"), through its undersigned counsel, will, and hereby does, move for clarification of the Protective Order pursuant to Civil L.R. 7-2. Anthropic's Motion for Clarification ("Motion") is based upon this Notice, the supporting Memorandum of Points and Authorities, the complete files and records in this action, and any additional material and arguments considered in connection with the hearing on the Motion.

**STATEMENT OF RELIEF SOUGHT**

Anthropic seeks an order confirming that the Protective Order in this case, ECF 293, prohibits a receiving party's use of Protected Material produced in this litigation for any purpose outside of the above captioned litigation, including to investigate, pursue, or prosecute, in any fashion, any future claims or litigation. Anthropic also seek an order from the Court requiring lead counsel at Oppenheim + Zebrak LLP ("O+Z"), Mr. Matthew Oppenheim, to submit a declaration stating that (a) no one at O+Z or at the Publishers who have had access to Protected Material under the Protective Order has used Protected Material to investigate future claims or for any purpose other than litigating *this* case, and (b) similarly that no one at O+Z who accessed Protected Materials from *Bartz* has used those materials for any purpose in this case. And if O+Z and the Publishers are unable to swear to their compliance with the Protective Order, Anthropic seeks an order from the Court that O+Z and Publishers (and anyone else with whom they have shared Protected Material) must destroy all work product based on such improper uses and certify such destruction.

**ISSUES TO BE DECIDED**

Anthropic's Motion presents the following issue to be decided: Whether Publishers and their outside counsel O+Z are prohibited from using material that has been designated as Protected Material by Anthropic in this litigation for any purpose outside of this litigation, including to investigate, pursue, or prosecute claims in future litigation.

**PUBLIC REDACTED VERSION**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Despite the clear terms of the Protective Order in this case, Publishers and their counsel have declared that they have a right to use confidential materials produced by Anthropic pursuant to the Protective Order in this litigation for purposes outside of this case—including to generate and support future claims in separate litigation—and have all but pronounced that they are or intend to do exactly that.  Pursuant to Civil L.R. 7-2 and Section 6 of this Court's Civil and Discovery Referral Matters Standing Order, Anthropic asks this Court to confirm that the terms of its Protective Order, which closely reflect this District's Model Protective Order, prohibit this activity.  That Order states that information produced in this case that is designated as "Protected Material" can be used "***only*** for prosecuting, defending, or attempting to settle ***this*** litigation," and that "[s]uch Protected Material ***shall not be used for any other purpose***."  ECF 293 at 11-12 (emphasis added).  This language unambiguously prohibits Publishers and their counsel Oppenheim + Zebrak LLP ("O+Z") from using confidential materials produced by Anthropic in this case to develop or assert claims in separate litigation.  Notwithstanding the language's clarity, O+Z has now repeatedly indicated that they construe it to permit such behavior.

Given the parties' disagreement over the construction of this key term in the Protective Order, and the substantial risk that O+Z is already using, or imminently plans to use, Anthropic's confidential information for purposes outside of this litigation, including to investigate the future claims they have repeatedly threatened to bring, Anthropic respectfully requests that the Court confirm that its Order prohibits use of Protected Material produced in this litigation for ***any purpose*** outside of the above captioned litigation, including to investigate, pursue, or prosecute, in any fashion, any future claims or litigation against Anthropic (or against third parties whose confidential information Publishers have sought in discovery in this case).  Anthropic also respectfully requests that the Court require a declaration from lead counsel at O+Z, Mr. Matthew Oppenheim, declaring that (a) no one at O+Z or at the Publishers who have had access to Protected Material under the Protective Order has used Protected Material to investigate future claims or for any purpose other than litigating ***this*** case, and (b) similarly that no one at O+Z who accessed Protected Materials from

*Bartz* has used those materials for any purpose in this case. And if O+Z and the Publishers are unable to swear to their compliance with the Protective Order, Anthropic requests that the Court order O+Z and Publishers (and anyone else with whom they have shared Protected Material) to destroy all work product based on such improper uses and certify such destruction.

## II.     BACKGROUND

The parties jointly proposed a stipulated Protective Order in this matter, which the Court adopted with some minor modifications unrelated to the current dispute. *See* ECF 293. Section VII of the Protective Order states: "A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only*** for prosecuting, defending, or attempting to settle ***this*** litigation, including any appeal(s). Such Protected Material ***shall not be used for any other purpose*** . . . ." ECF 293 at 11-12 (emphasis added). "Protected Material" is defined to cover any information produced in this litigation that is designated as confidential or highly confidential. *See id.* at 6. This Order was largely modeled on the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets ("Model Protective Order"), which states, as relevant here: "A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only*** for prosecuting, defending, or attempting to settle ***this*** litigation." *See* https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/model-protective-orders (emphasis added).

Despite this clear language, Publishers have confirmed that they believe this language permits them to use Confidential and Highly Confidential – Attorneys' Eyes Only information produced by Anthropic in this case to develop claims for future cases. Most recently, Publishers advanced this misinterpretation of the Protective Order in connection with a discovery dispute over the list of songs that have been added to Anthropic's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, an auxiliary system that is part of Claude's guardrails and is designed to prevent Claude from including copyrighted material, like song lyrics, in outputs. Publishers demanded the specific identity of ▮▮ songs on that list that are ***not*** Works-in-Suit and have been unrelenting. But the identity of those songs has no relevance to this case. This only heightened Anthropic's concern that Publishers'

| | |
|---|---|
| 1 | true purpose was to use the identity of these songs and their inclusion in ▋ to try to develop |
| 2 | claims for a future suit.  Publishers have already indicated that they plan to bring a future suit, stating |
| 3 | in the reply on their motion to amend to add torrenting claims that "denying the Motion would |
| 4 | compel Publishers to file their new claims in a separate action."  ECF 426 at 2.  It is telling that |
| 5 | now, weeks later, Publishers are seeking to take a shot at one last fishing expedition to acquire |
| 6 | information about ▋ unrelated songs for no other plausible purpose besides future litigation. |
| 7 |       To avoid burdening the Court with yet another discovery dispute, and despite the irrelevance |
| 8 | of the specific identity of those other songs to this case, Anthropic agreed to produce the songs list— |
| 9 | which would be designated as Highly Confidential – Attorneys' Eyes Only under the Protective |
| 10 | Order—once Publishers confirmed that, in accordance with the terms of the Protective Order, they |
| 11 | did not intend to use this confidential information to try to generate claims for future lawsuits against |
| 12 | Anthropic.  But Publishers repeatedly refused to confirm that plain reading of the Protective Order. |
| 13 | Anthropic initially requested Publishers enter a stipulation re-affirming that the Protective Order, as |
| 14 | written, prohibited Publishers from using any Protected Materials—including information about |
| 15 | ▋ non-suit works used in ▋—for "***any purpose*** outside of the above captioned litigation by |
| 16 | Publishers and/or Publishers' Counsel, including to investigate, pursue, or prosecute, in any fashion, |
| 17 | any future claims or litigation against Anthropic."  Holtzblatt Decl. ¶ 16 (emphasis added). |
| 18 | Publishers refused, claiming it was "unnecessary and inappropriate to demand Publishers sign a |
| 19 | second document agreeing to abide by the Protective Order."  Holtzblatt Decl. ¶ 17. |
| 20 |       Anthropic also asked three times via email for a simple yes or no answer as to whether |
| 21 | Publishers understand the Protective Order as barring them from using Protected Material to |
| 22 | investigate or pursue future claims against Anthropic.  Holtzblatt Decl. ¶¶ 16, 18, 20, 22.  Publishers |
| 23 | refused that request too, stating that Anthropic was attempting to "graft additional conditions on an |
| 24 | ordinary production."  *Id.*, ¶ 17.  That response only underscores that Publishers construe the |
| 25 | Protective Order as permitting this improper behavior.  In one last attempt, Anthropic's counsel |
| 26 | verbally asked the question again during the parties' November 12, 2025 meet-and-confer.  *Id.*, ¶ 23. |
| 27 | O+Z this time stated there was "nuance" as to whether Protected Material could be used to pursue |
| 28 | new claims, and indicated that Anthropic's only recourse was to wait and see how Publishers used |

the Protected Materials before seeking relief. *Id*. And in the later-filed joint discovery dispute statement on this issue, Publishers all but admit that they are using or intend to use the ▮▮ songs list for the improper purpose of advancing separate litigation. *See* ECF 498-1. Indeed, they defend the prospect that "Publishers may use the contents of the ▮▮ dataset"—contents they discovered only through discovery in this case—"in a future lawsuit against [Anthropic]." *Id.* at 5.

That was not the first time, however, that O+Z took this unsupported position. They previously advanced the same view of the *Bartz* protective order—defending their ability to use confidential information produced in *Bartz* to litigate this case—despite an almost identical term in the *Bartz* protective order that explicitly limits the use of protected material to "prosecuting, defending, or attempting to settle ***this*** litigation" and "***not . . . for any other purpose***." *Bartz* ECF 62 at 11. As this Court will recall, Publishers sought leave on August 11, 2025 to amend their Complaint to inject new claims into this case, which were copycat allegations about "pirated" books and BitTorrent that book publishers had alleged in *Bartz*. ECF 411. On the very same day, *Bartz* class counsel filed a Notice of Association of Additional Counsel that informed that court that they were associating with O+Z. *Bartz* ECF. 298 at 2. O+Z later disclosed however, that its "work in [*Bartz*] began weeks earlier." *Bartz* ECF 398 at 9. O+Z apparently "began speaking with [book] publishers regarding [*Bartz*] on approximately July 16, 2025." *Id.* at 10. During that time—and weeks before the Notice of Association was filed on August 11—O+Z had been joining "[*Bartz*] Class Counsel's trial strategy meetings, weighing in on expert witness strategy and the trial plan." *Id.* It is unclear how O+Z could have done so without improperly viewing Anthropic's confidential materials produced in *Bartz* prior to appearing in that case.

Moreover, shortly after appearing in *Bartz* and moving to amend, O+Z began seeking *Bartz*-related discovery in *Concord*, focusing for the first time on Anthropic's alleged use of BitTorrent and "pirated" datasets. *See* Holtzblatt Decl. ¶ 4. On August 22, 2025, Anthropic's counsel and Publishers' counsel met and conferred about some of these requests. *Id.*, ¶ 5. As memorialized in an email sent later that same day, Mr. Holtzblatt asked O+Z attorneys Nicholas Hailey and Timothy Chung "whether [Mr. Hailey and Mr. Chung] had already reviewed any non-public, confidential materials that Anthropic produced in [*Bartz*]." Holtzblatt Decl., Ex. A (Aug. 22, 2025 Email from

A. Holtzblatt); *id.*, ¶ 6. Mr. Hailey and Mr. Chung "refused to answer, other than to say that [their] firm (but not [themselves]) has appeared in [*Bartz*]." Holtzblatt Decl., Ex. A. Mr. Holtzblatt also asked "whether [Mr. Hailey and Mr. Chung] had reviewed the *Bartz* Protective Order – including whether [Mr. Hailey and Mr. Chung] reviewed the Protective Order before reviewing any non-public, confidential materials from *Bartz*." *Id.* Again, Mr. Hailey and Mr. Chung "refused to answer," despite Mr. Holtzblatt "ask[ing] both questions more than once to make sure that [he] did not misunderstand [their] (non-)answers." *Id.* Mr. Holtzblatt concluded his email by stating: "I take from your refusal to answer that (a) one or both of you have indeed reviewed non-public, confidential information produced by Anthropic in *Bartz*; and (b) that before doing so, one or both of you did not review the *Bartz* protective order. If (a) or (b) are incorrect, please let me know and how." *Id.* Mr. Hailey responded to Mr. Holtzblatt's email but offered no answers, instead describing Mr. Holtzblatt's questions as "inappropriate" and stating: "[W]e will not and cannot disclose those details to you." *Id.*

Then again, on September 4, 2025, Mr. Hailey sent an email to Anthropic's counsel stating: "We've become aware that Anthropic is using the pirated LibGen and PiLiMi torrented files as part of the guardrails to which Anthropic stipulated in this litigation." Holtzblatt Decl. ¶ 8. That same day, Anthropic's counsel Robin Burrell responded asking Mr. Hailey to "please explain precisely when and how you 'bec[a]me aware' of the issues raised in your email." *Id.*, ¶ 9. The following day, Mr. Hailey responded: "[W]e will answer the question to which you already know the answer. Anthropic has disclosed this information in connection with the *Bartz* litigation, as both your clients and your Latham co-counsel are already well aware." *Id.*, ¶ 10. In response, Anthropic counsel Sonal Mehta sent a letter to Mr. Hailey raising the concern that his September 5 email had "conceded a serious breach of the District's ADR Rules and the Protective Order in *Bartz*." Holtzblatt Decl., Ex. B at 2. She accordingly asked Mr. Hailey to respond to four questions seeking details about how O+Z has handled *Bartz* confidential material. *Id.* at 2-3. Mr. Hailey sent a letter response, suggesting that O+Z could validly use confidential *Bartz* materials to litigate this case, relying on cases that purportedly "hold[] that the use of information gained by an attorney under a protective order in one case may appropriately be used by the same attorney to develop a strategy applicable

to a second action." Holtzblatt Decl., Ex. C at 1-2. And Mr. Hailey—while denying that the LibGen/PiLiMi information that he had relied on came from the *Bartz* mediation—confirmed that it came from "the *Bartz* summary judgment briefing" that was "filed under seal in that case."[1] *Id.* at 2. Mr. Hailey otherwise refused to answer Ms. Mehta's questions. *Id.* at 3.

Ultimately, Publishers' motion to amend their Complaint to add new claims was denied, and the Court clarified that discovery must be grounded in the First Amended Complaint only. ECF 468. Nevertheless, Ms. Mehta raised O+Z's troubling use of *Bartz* confidential material in this case with this Court during the October 10, 2025 hearing, informing the Court that Anthropic viewed O+Z's behavior as "obviously concerning in light of the protective order." ECF 484-3 (Oct. 10, 2025 Hr'g Tr.) at 41:5-11. Ms. Mehta likewise raised this issue before Judge Lee during the Court's hearing on Publishers' Motion for Leave to Amend, expressing a "number of concerns" about O+Z's "cross-pollination and use of information" from the *Bartz* case in the instant case. Ex. 1 (Oct. 8, 2025 Hr'g Tr.) at 15:12-21. Despite the position that Mr. Hailey took in his earlier email correspondence, Mr. Hailey agreed at the hearing that the confidentiality order in *Bartz* would forbid O+Z from using *Bartz* information in this case. *See id.* at 8:6-15 ("[W]e didn't even become involved in the case until the same time we moved -- after we learned of what was going on in *Bartz* and in the public rulings from Judge Alsup. And two, there's a confidentiality order. We couldn't share -- we were representing different clients in *Bartz*. We couldn't go to our different clients in this case, and that would have -- we weren't able to do that."). Notwithstanding Mr. Hailey's representation in Court just weeks ago, O+Z is now reversing course again and seeking to pull the same maneuver—this time to use *Concord* confidential information to investigate new claims for future litigation.

**III.  LEGAL STANDARD**

Parties may file a motion for clarification where the general purpose is not to "alter or amend" a previous ruling, but rather to obtain clarity from the Court "when parties are uncertain about the scope of a ruling." *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, 2023 WL 6932560,

---

[1] Information about how LibGen was used in Anthropic's guardrails is no longer maintained as Protected Material in the *Bartz* case.

at *2 (C.D. Cal. Sept. 29, 2023) (citations omitted). Courts have the power to "clarify a judgment in order to . . . reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1298 (9th Cir. 2014); *see generally* Fed. R. Civ. P. 60(a).

## IV. ARGUMENT

The plain language of the Protective Order prohibits Publishers from using confidential information disclosed in this case to litigate another suit. The Order states that parties may use Protected Material disclosed "in connection with this case **only** for prosecuting, defending, or attempting to settle **this litigation**, including any appeal(s)." ECF 293 at 11-12 (emphasis added). It then states, "[s]uch Protected Material **shall not be used for any other purpose**." *Id.* (emphasis added). This language is not ambiguous. In just two sentences, the Order expresses the limitation both in the affirmative (such material may be used "only for prosecuting, defending, or attempting to settle this litigation") and in the negative (such material "shall not be used for any other purpose")—a belt-and-suspenders construction that forecloses any competing interpretation. Publishers have nonetheless repeatedly indicated that they construe the Protective Order to permit this behavior and have all but declared that they are using or intend to use Anthropic's confidential materials for this prohibited purpose. Given Publishers' apparent "uncertain[ty] about the scope" of the Protective Order, *Yellow Rose Prods., Inc.*, 2023 WL 6932560, at *2, and to "ensure that the court's purpose is fully implemented," *Tattersalls*, 745 F.3d at 1298, Anthropic respectfully requests that the Court clarify that the scope of the Protective Order prohibits such use.

### A. The Protective Order Prohibits The Use Of Confidential Information Disclosed In This Suit To Litigate A Separate Suit

Courts have consistently interpreted protective orders that are materially identical to the Protective Order entered here to cabin the parties' use of confidential information to the case at hand. For example, in *On Command Video Corp. v. LodgeNet Ent. Corp.*, the court held that the plaintiff violated the protective order—which had substantially similar language to the Model Protective Order and the Protective Order entered in this case—when the plaintiff used confidential information from the case to initiate a separate state court lawsuit. 976 F. Supp. 917, 921 (N.D. Cal.

1997). The court agreed with the defendant that it was "readily apparent" from the "plain language of the Order" that the purpose of that provision was "to limit the use of confidential information to this case." *Id.* The court in *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH* similarly held that the language of the Northern District's Model Protective Order "squarely prohibited" a receiving party from using the designating party's confidential information learned in the course of discovery to file a separate, new lawsuit in another country. 2023 WL 6882749 at *2 (N.D. Cal. Oct. 18, 2023). The court held that the "plain language" of the Model Protective Order "precludes the use outside this litigation of confidential material produced in this litigation," and therefore "unambiguously forbids [the receiving party] from using [the producing party's] confidential material . . . to launch a foreign action." *Id.* at *2-3.

Other courts have similarly held that the Northern District's Model Protective Order forbids parties from using confidential information produced in one case for purposes beyond that litigation. For example, in *Del Campo v. Am. Corrective Counseling Servs., Inc.*, the court ruled that the plaintiffs violated the protective order—which included the same language as the Model Protective Order—when they used confidential documents from the case in connection with a separate matter pending in a different jurisdiction, where the plaintiffs' counsel (representing a different set of class action plaintiffs) filed a summary judgment brief relying on the defendants' confidential information. 2007 WL 1848660, at *5 (N.D. Cal. June 27, 2007). And in *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, the court held the plaintiffs violated the protective order, which included substantially the same language at issue here, when they sent cease-and-desist letters to the defendants' distributors, whose identity had been information the defendants designated as Highly Confidential – Attorneys' Eyes Only. 2013 WL 4604746, at *2, 5 (N.D. Cal. Aug. 28, 2013). The court explained that using the AEO material to "threaten distributors against whom **separate** litigation would be required" was a violation of the protective order, because that material was not being used to "prosecut[e]" "*this* litigation." *Id.* at *5 (emphasis added).

Publishers have now twice claimed—in both the songs list discovery dispute letter and in the parties' communications about the *Bartz* protective order—that *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993), supports their contrary reading of the

1  protective order's clear language.  According to O+Z, *Dual-Deck* does not prevent them from using

2  information from one case in another, where the usage is merely a "technical" violation and is in

3  "substantial compliance" with the Order.  The case stands for no such thing.  In fact, the *Dual-Deck*

4  court based its decision on the legal standard applicable in civil contempt proceedings where

5  "substantial compliance" is a defense. Thus, the court was willing to excuse "'a few technical

6  violations' where every reasonable effort has been made to comply.'"  *Dual-Deck*, 10 F.3d at 695.

7  Here, Anthropic is not asking (at least at present) for O+Z to be held in contempt for past violations,

8  so a substantial-compliance defense is irrelevant.  It is also inconsistent with their current position

9  that the Order is "nuanced" and allows for their conduct.  In any event, Anthropic seeks something

10 much more practical here: the Court's assistance in ensuring that any violation, including "technical

11 violations," do not occur in the *future* based on a misunderstanding of the Order.  The Court should

12 confirm that the clear language of the Protective Order prohibits O+Z from using confidential

13 information obtained from Anthropic in this litigation for purposes outside of this litigation, no

14 matter the availability of any substantial-compliance defense for any *past* violations.

15      Even if a substantial-compliance defense is ultimately relevant to some future request for

16 contempt sanctions, O+Z could not satisfy it because their planned violations are not merely

17 "technical" and they have not made "every reasonable effort" to comply with the Protective Order

18 here.  *Id.* at 695.  Quite the opposite.  They have relentlessly sought discovery that has no relevance

19 to their present claims and all but declared they are using or intend to use that information to develop

20 claims for some future lawsuit against Anthropic.  The court in *Silicon Genesis* distinguished *Dual-*

21 *Deck* on similar grounds, noting the party's lack of good-faith action and the non-technical nature

22 of the violations.  *See Silicon Genesis Corp.*, 2023 WL 6882749, at *3.  The court explained that

23 the party in *Silicon Genesis* had demonstrated its "improper purpose in its misuse of the confidential

24 material": "There is nothing 'technical' about [the party's] violation.  It was not done in good faith.

25 And it was a blatant violation of the Protective Order."  *Id.*  *Dual-Deck* is not a license for counsel

26 to intentionally thumb their noses at a protective order's restrictions while planning to later excuse

27 their intentional violations as "substantial compliance," as O+Z is doing here.

28      **Second**, *Dual-Deck* involved a materially different protective order with overbroad language

that attempted "to throw the biggest possible blanket over every kind of knowledge which might be obtained in the lawsuit"—not just confidential information. *Dual-Deck*, 10 F.3d at 695. Specifically, the protective order there stated: "***All information produced in discovery***, including, but not limited to, 'Confidential Information' shall be used solely in the preparation for trial and/or trial of this action . . . ." *Id.* at 694 (emphasis added). The Court reasoned that, "if taken literally, the order would be absurd" because it would require counsel to "achieve total amnesia" or "change fields . . . lest they 'use' what they learned" from the case in another case. *Id.* at 695. Again, *Silicon Genesis* is instructive. The Court there noted that "in contrast" to *Dual-Deck*, "the governing Protective Order" was "the Northern District of California Model Protective Order used in hundreds of cases in this District every year." *Silicon Genesis Corp.*, 2023 WL 6882749, at *3. This same Model Protective Order was used here and is scoped to prohibit ***only*** the use of "confidential" information produced in discovery. Anthropic does not object to O+Z acquiring non-confidential general knowledge to be applied in other litigation; Anthropic is concerned about O+Z's use of Anthropic's confidential materials, designated as confidential Protected Materials under the Court's Protective Order, to generate or support claims for a new lawsuit. *Dual-Deck* is inapposite.

### B. This Court's Intervention Is Needed Now In Light Of O+Z's Repeated Disregard For The Unambiguous Terms Of The Protective Order Language

O+Z has repeatedly indicated that, despite the terms of the Protective order, they believe they have a right to use Anthropic's confidential information obtained in discovery in this matter to generate and support future cases and claims. They have also indicated in their songs list dispute statement that they believe Anthropic's only recourse is to hand over highly confidential information now and litigate any violations after Publishers act on their apparent intent by filing another lawsuit. But neither Anthropic nor this Court is required to ignore Publishers' and O+Z's patent misinterpretation of the Protective Order and wait for the pronounced violations to materialize.

Even in the absence of any indication that a violation has yet occurred, this Court has the power to correct Publishers' "uncertain[ty]" about the meaning of the Protective Order, *Yellow Rose Prods., Inc.*, 2023 WL 6932560, at *2, and doing so would be proper to ensure that the purpose of the Protective Order is "fully implemented," *Tattersalls*, 745 F.3d at 1298.

      Here, however, Publishers' actions strongly suggest that they are *already* violating the Protective Order—in other words, this is not, as Publishers have suggested, some mere concern about "Publishers' hypothetical future use of information." ECF 498-1 at 6 (songs list dispute). Publishers have now twice conveyed their view that the protective order language does not constrain them from using Anthropic's confidential information in one suit to develop claims for another suit—in connection with the songs list dispute statement and previously with the *Bartz* protective order. Moreover, in the November 21, 2025 deposition of Anthropic witness Jared Kaplan, O+Z counsel Mr. Hailey repeatedly asked questions about torrenting. *See* Ex. 2 (J. Kaplan Rough Dep. Tr.) at 330:12-15 ("Does Anthropic perform any diligence to identify whether the works contained in the datasets it uses for AI training are pirated copies of copyright works?"); *id.* at 334:9-10 ("You didn't torrent the pile did you, Dr. Kaplan?"). Those questions not only violate this Court's order regarding deposition questions about torrenting and so-called "pirate libraries," ECF 478 at 2, but also shows that O+Z is fishing for information about torrenting that Judge Lee unambiguously declared to be irrelevant to this case in denying Publishers' Motion for Leave to Amend. The only possible reason for O+Z to ask questions about this now is to develop claims for some future case. What's more, when Taylor Gooch, outside counsel for Anthropic, asked O+Z attorney Mr. Hailey during the same deposition of Dr. Kaplan whether he had reviewed any *Bartz* deposition transcripts in preparation for depositions or any other purpose in this litigation, Mr. Hailey refused to answer. Ex. 2 (J. Kaplan Rough Dep. Tr.) at 84:24-86:19. All of this exacerbates Anthropic's concerns that Publishers and/or O+Z may be violating the Protective Order *right now* by using Anthropic's confidential information to investigate claims for a future suit. While actually filing a future suit based on Anthropic's confidential information produced in this case would be an *additional* violation, any present efforts by Publishers and/or O+Z to investigate new claims using this information is itself a violation—one that Publishers and O+Z's actions, deflections, and refusals suggest is already occurring.

      O+Z's conduct with respect to confidential information of other companies also raises serious concerns that they may be using—or intend to use—discovery from this case to investigate future claims. In depositions of at least three senior Anthropic employees who all previously

1    worked at OpenAI, O+Z's counsel have sought to probe confidential details about their work at
2    OpenAI, including asking about what datasets were used for training OpenAI's models. *See, e.g.*,
3    Ex. 3 (D. Amodei Dep. Tr.) at 39:19-44:2 (asking Anthropic's President Ms. Daniela Amodei about
4    her work at OpenAI and repeatedly pressing her on her confidentiality agreements with OpenAI);
5    *id.* at 57:19-58:24 (asking questions about any concerns Ms. Amodei had about how OpenAI
6    developed its AI technology); Ex. 4 (B. Mann Rough Dep. Tr.) at 19:21-21:6 (asking Mr. Mann
7    whether he "decide[d] what data to collect for use in training GPT-3" at OpenAI); *id.* at 24:3-10
8    ("Q: Is Books1 a dataset that OpenAI created?"); Ex. 2 (J. Kaplan Rough Dep. Tr.) at 47:2-52:6
9    (asking Mr. Kaplan repeatedly about what research he had done at OpenAI outside the research
10   documented in publicly available papers). The witnesses have explained that they are unable to
11   share confidential information due to their confidentiality obligations to their former employer, but
12   O+Z has persisted in its questioning. Anthropic's counsel had repeatedly and unsuccessfully asked
13   O+Z's counsel—in deposition and separately in writing—to explain the possible relevance of the
14   details of work done at OpenAI to this case, and they had refused to answer. Holtzblatt Decl. ¶ 25
15   (describing a November 14, 2025 email from S. Mehta asking O+Z counsel to "please explain the
16   basis for your efforts to question Anthropic's witnesses about their work at OpenAI"); Ex. 4 (B.
17   Mann Rough Dep. Tr.) at 23:15-24:10; Ex. 2 (J. Kaplan Rough Tr.) at 33:2-35:17. In fact, it was
18   not until after all of these depositions had concluded, that Publishers' for the first time asserted
19   without explanation that the aforementioned questions were relevant to knowledge, willfulness, and
20   bias. Ex. 2 (J. Kaplan Rough Tr.) at 339:21-340:2.
21          The potential harm to Anthropic from Publishers' and/or O+Z's ongoing or future violations
22   is significant. Anthropic is concerned not just about how Publishers and O+Z intend to use the
23   songs list subject to the dispute statement, but about how Publishers and O+Z are using **all** of the
24   voluminous confidential or highly confidential information that Anthropic has produced in this
25   litigation. To the extent Publishers and/or O+Z are using information gleaned from discovery in
26   this case to fish for information that could enable them to bring a new suit, that misuse gravely
27   harms Anthropic (and potentially third parties whose information was implicated in discovery) and
28   contravenes the purpose of the Protective Order. Publishers cannot deflect from these serious

concerns by telling Anthropic to wait and see whether they file a new lawsuit. By then, the damage will be done.

## V. CONCLUSION

For the foregoing reasons, Anthropic respectfully requests that the Court confirm that the Protective Order prohibits use of Protected Material produced in this litigation for ***any purpose*** outside of the above captioned litigation by Publishers and/or O+Z, including to investigate, pursue, or prosecute, in any fashion, any future claims or litigation against Anthropic or any other third party. Anthropic also respectfully requests that the Court require a declaration from Mr. Oppenheim confirming that (a) no one at O+Z or at the Publishers who have had access to Protected Material under the Protective Order has used that material to investigate future claims or for any purpose other than litigating this case, and (b) that no one at O+Z who accessed Protected Materials from *Bartz* has used those materials for any purpose in this case. If O+Z is unable to swear to their compliance with the Protective Order, Anthropic respectfully requests that the Court order O+Z and Publishers (and anyone else with whom they have shared Protected Material) destroy all work product based on such improper uses and certify such destruction.

**PUBLIC REDACTED VERSION**

| | |
|---|---|
| Date: November 24, 2025 | /s/ *Sonal N. Mehta* |

| | |
|---|---|
| JOSEPH R. WETZEL (SBN 238008)<br>joe.wetzel@lw.com<br>ANDREW M. GASS (SBN 259694)<br>andrew.gass@lw.com<br>BRITTANY N. LOVEJOY (SBN 286813)<br>brittany.lovejoy@lw.com<br>IVANA DUKANOVIC (SBN 312937)<br>ivana.dukanovic@lw.com<br>**LATHAM & WATKINS LLP**<br>505 Montgomery Street, Suite 2000<br>San Francisco, California 94111<br>Telephone: (415) 391-0600<br><br>SARANG V. DAMLE (*Pro Hac Vice*)<br>sy.damle@lw.com<br>**LATHAM & WATKINS LLP**<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br><br>ALLISON L. STILLMAN (*Pro Hac Vice*)<br>alli.stillman@lw.com<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1747 | SONAL N. MEHTA (SBN 222086)<br>sonal.mehta@wilmerhale.com<br>ALLISON BINGXUE QUE (SBN 324044)<br>allison.que@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>HALE AND DORR LLP**<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306<br>Telephone: (650) 858-6000<br><br>LOUIS W. TOMPROS (*Pro Hac Vice*)<br>louis.tompros@wilmerhale.com<br>STEPHANIE LIN (*Pro Hac Vice*)<br>stephanie.lin@wilmerhale.com<br>DISHA PATEL (*Pro Hac Vice*)<br>disha.patel@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6220<br><br>ARI HOLTZBLATT (SBN 354361)<br>ari.holtzblatt@wilmerhale.com<br>ROBIN C. BURRELL (*Pro Hac Vice*)<br>robin.burrell@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>HALE AND DORR LLP**<br>2100 Pennsylvania Ave, NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000<br><br>TAYLOR GOOCH (SBN 294282)<br>taylor.gooch@wilmerhale.com<br>KYLE EDWARDS HAUGH (SBN 323952)<br>kyle.haugh@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>HALE AND DORR LLP**<br>50 California St.<br>San Francisco, CA 94111<br>Telephone: (628) 235-1000<br><br>*Attorneys for Defendant*<br>**ANTHROPIC PBC** |

**PUBLIC REDACTED VERSION**

# CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025 I did cause Defendants' Motion for Clarification of the Protective Order to be served on the following listed below and in the manner so indicated.

**By Electronic Mail**

| | |
|---|---|
| OPPENHEIM + ZEBRAK, LLP<br>Matthew J. Oppenheim (*Pro Hac Vice*)<br>Nicholas C. Hailey (*Pro Hac Vice*)<br>Audrey Adu-Appiah (*Pro Hac Vice*)<br>Corey Miller (*Pro Hac Vice*)<br>Jeffrey M. Gould (*Pro Hac Vice*)<br>4530 Wisconsin Avenue, NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 480-2999<br>matt@oandzlaw.com<br>nick@oandzlaw.com<br>aadu-appiah@oandzlaw.com<br>corey@oandzlaw.com<br>jeff@oandzlaw.com | COBLENTZ PATCH DUFFY & BASS LLP<br>Jeffrey G. Knowles<br>Christopher J. Weiner<br>Bina Patel<br>Thomas A. Harvey<br>One Montgomery Street, Suite 3000<br>San Francisco, CA 94104<br>Telephone: (415) 772-5795<br>Ef-jgk@cpdb.com<br>cwiener@coblentzlaw.com<br>bpatel@coblentzlaw.com<br>Ef-Tah@cpdb.com |
| Jennifer Pariser (*Pro Hac Vice*)<br>Andrew Guerra (*Pro Hac Vice*)<br>Timothy Chung (*Pro Hac Vice*)<br>Michelle Gomez-Reichman (*Pro Hac Vice*)<br>Bret Matera (*Pro Hac Vice*)<br>Alexander Kaplan (*Pro Hac Vice*)<br>461 5th Avenue, 19th Floor<br>New York, NY 10017<br>Telephone: (212) 951-1156<br>jpariser@oandzlaw.com<br>andrew@oandzlaw.com<br>tchung@oandzlaw.com<br>mgomez-reichman@oandzlaw.com<br>bmatera@oandzlaw.com<br>alex@oandzlaw.com | COWN, LEIBOWITZ & LATMAN, P.C.<br>Richard S. Mandel (*Pro Hac Vice*)<br>Jonathan Z. King (*Pro Hac Vice*)<br>Richard Dannay (*Pro Hac Vice*)<br>114 West 47th Street<br>New York, NY 10036-1525<br>Telephone: (212) 790-9200<br>rsm@cll.com<br>jzk@cll.com<br>rxd@cll.com |

Dated:  November 24, 2025                By:    */s/ Sonal N. Mehta*
                                                       Sonal N. Mehta

---

DEFENDANT'S MOT. FOR CLARIFICATION OF PO   - 16 -   Case No. 5:24-cv-03811-EKL-SVK