# EXHIBIT 2

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

1      UNCERTIFIED REALTIME ROUGH DRAFT OF

2       JARED KAPLAN TAKEN 11/21/2025

3

4              ***

5   THIS REALTIME ROUGH DRAFT IS UNEDITED AND

6   UNCERTIFIED AND MAY CONTAIN UNTRANSLATED

7   STENOGRAPHIC SYMBOLS, AN OCCASIONAL REPORTER'S

8   NOTE, A MISSPELLED PROPER NAME/OR NONSENSICAL WORD

9   COMBINATIONS.  PURSUANT TO CCP SECTION 2025.540(b),

10  IT MAY NOT BE USED, CITED, OR TRANSCRIBED AS THE

11  CERTIFIED TRANSCRIPT OF THE DEPOSITION PROCEEDINGS.

12  THIS REALTIME ROUGH DRAFT TRANSCRIPT MAY NOT BE

13  CITED OR USED IN ANY WAY OR AT ANY TIME TO REBUT OR

14  CONTRADICT THE CERTIFIED TRANSCRIPT OF THE

15  DEPOSITION PROCEEDINGS AS PROVIDED BY THE

16  DEPOSITION OFFICER.  THIS DOCUMENT IS NOT TO BE

17  RELIED UPON IN WHOLE OR IN PART AS THE OFFICIAL

18  TRANSCRIPT.  THIS UNCERTIFIED REALTIME ROUGH DRAFT

19  VERSION HAS NOT BEEN REVIEWED OR EDITED BY THE

20  CERTIFIED SHORTHAND REPORTER FOR ACCURACY.

21

22  ACCEPTANCE OF THIS REALTIME ROUGH DRAFT IS AN

23  AUTOMATIC FINAL COPY ORDER.  I AGREE NOT TO SHARE,

24  GIVE, COPY, SCAN, FAX, OR IN ANY WAY DISTRIBUTE THE

25  REALTIME ROUGH DRAFT IN ANY FORM (WRITTEN OR

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

1  COMPUTERIZED) TO ANY PARTY.  HOWEVER, MY OWN

2  EXPERTS, CO-COUNSEL, CLIENT(S) AND STAFF MAY HAVE

3  LIMITED INTERNAL USE OF SAME WITH THE UNDERSTANDING

4  THAT I AGREE TO DESTROY ALL REALTIME ROUGH DRAFTS

5  AND/OR COMPUTERIZED FORMS, IF ANY, AND REPLACE SAME

6  WITH THE FINAL TRANSCRIPT AND/OR FINAL COMPUTERIZED

7  FORM, UPON ITS COMPLETION.

8

9

10      Acceptance of this realtime draft is an

11  automatic final copy order.

12

13          THE VIDEOGRAPHER:  Here begins Media

14  No. 1 in the videotaped deposition of Jared Kaplan,

10:03:52 15  in the matter of the Concord Music Group versus

16  Anthropic, in the United States District Court,

17  Northern District of California, San Jose Division,

18  Case No. 5:24-cv-03811-EKL-SVK.

19          Today's date is November 21st, 2025.  The

10:04:16 20  time on the video monitor is 10:04 a.m.

21          The videographer today is Gary Garcia,

22  representing Planet Depos.

23          This video deposition is taking place at

24  50 California Street, San Francisco, California.

10:04:29 25          Would counsel please voice-identify

2

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:04:31 1  themselves and state whom they represent, starting

2  with the taking attorney.

3       MR. HAILEY:  Nick Hailey with the law

4  firm of Oppenheim & Zebrak LLP, on behalf of the

10:04:40 5  plaintiff music publishers.

6       I'm joined by my colleague Bret Matera.

7       MR. GOOCH:  Taylor Gooch with WilmerHale.

8       With me remotely is Alyssa Milstead; also

9  remotely, Ivana Dukanovic from -- co-counsel at

10:04:56 10  Latham & Watkins.

11       And with and for the client, or in-house

12  with the client, is ****Mr. Ian Chen, as well as

13  the witness.

14       THE VIDEOGRAPHER:  The court reporter

10:05:05 15  today is Rebecca Romano representing Planet Depos.

16       The witness will now be sworn.

17       THE COURT REPORTER:  My name is

18  Rebecca Romano.  I am a California-licensed

19  Stenographic Court Reporter, No. 12546.  I will be

10:05:09 20  producing a transcript that is automatically

21  admissible in court.

22       If you could raise your right hand for

23  me, please.

24       THE DEPONENT:  (Complies.)

10:05:09 25       THE COURT REPORTER:  You do solemnly

3

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:05:09  1  state, under penalty of perjury, that the testimony

2  you are about to give in this deposition shall be

3  the truth, the whole truth and nothing but the

4  truth?

10:05:09  5         THE DEPONENT:  I do.

6

7

8

9

10:05:09 10

11

12  /////

13            JARED KAPLAN,

14  having been administered an oath, was examined and

10:05:09 15  testified as follows:

16            EXAMINATION

17  BY MR. HAILEY:

18    Q.  Good morning, Dr. Kaplan.

19    A.  Good morning.

10:05:40 20    Q.  We met just a few moments ago.  Again, my

21  name is Nick Hailey.  I represent the plaintiff

22  music publishers in their law suit against your

23  company, Anthropic.  I will be taking your

24  deposition today.

10:05:50 25         Can we start with you stating your name

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:41:31 1  fact, confidential.

2      Q.  Did you review those confidentiality

3  terms in advance of this deposition so that you

4  could come prepared to give testimony today?

10:41:46 5      A.  I did not review the terms of my

6  agreement with OpenAI in preparation for this

7  deposition.

8      Q.  Okay.

9          MR. HAILEY:  Okay.  So, Taylor, just --

10:41:56 10  just a heads-up, we will be keeping this deposition

11  open to the extent Dr. Kaplan is -- already -- it's

12  clear that he's already unable to answer the

13  questions that I need to ask, despite the fact that

14  we flagged to Sonal and the rest of your team our

10:42:12 15  request that Dr. Kaplan review the terms of that

16  confidentiality or supposed confidentiality in

17  advance of this deposition.

18          So we will --

19          MR. GOOCH:  We've --

10:42:19 20          MR. HAILEY:  -- be keeping the deposition

21  open.  I will continue to make my record and ask

22  the questions I need to ask.

23          But it's our position that the witness is

24  unprepared if he's going to state that he doesn't

10:42:31 25  know one way or the other what he can testify to

33

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:42:33 1  about his work at OpenAI.

2        MR. GOOCH:  I understand you're going to

3  be keeping the deposition open.  I will tell you,

4  he will not be re-presented.

10:42:40 5        I will also tell you that he has

6  significant confidentiality obligations to OpenAI,

7  and I will continue cautioning him where he should

8  be cautioned.

9        I also don't understand the relevance of

10:42:52 10  any of what he did at OpenAI is.  And if you are --

11  want to explain the relevance of his work at OpenAI

12  to the copyright claim you have in this case, I'm

13  happy to listen to it.

14        MR. HAILEY:  We're not going to do that.

10:43:02 15  We're not going to waste time on the record arguing

16  about this.  We've already -- we've -- we asked

17  ahead of time for him to review his

18  confidentiality -- confidentiality obligations so

19  he would come prepared to testify today.

10:43:13 20        MR. GOOCH:  He's --

21        MR. HAILEY:  The witness did not.  I'm

22  going to --

23        MR. GOOCH:  The witness --

24        MR. HAILEY:  I'm going to continue to

10:43:16 25  make my record, but I'm going to move on.  And if

34

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:43:19 1  you'd like to discuss further, we can go off the

2  record.

3         MR. GOOCH:  As -- we're not going off the

4  record.

10:43:22 5         As you know, the witness -- and I'll just

6  remind the videographer that unless I agree, we're

7  not going off the record.

8         I'll just remind you, he is here in his

9  personal capacity.  He is not a 30(b)(6).  He had

10:43:34 10  no obligations one way or the other.

11         I will also just continue saying that

12  you've -- Ms. Mehta asked you during the prior

13  depositions what any of the relevance was.  You

14  refused to answer.  She asked you during the break.

10:43:47 15  You refused to answer.  You've refused to answer at

16  any point in any emails.  So we, as of yet, do not

17  understand how this is even tangentially relevant.

18         MR. HAILEY:  If you want to talk about

19  this more, I'm happy to.  We're going to excuse the

10:44:01 20  witness, and we're going to stop counting the time

21  against --

22         MR. GOOCH:  I'm going to respond to you

23  talking.  And if you keep asking me things or

24  saying things, I'm going to respond to it, and that

10:44:09 25  time is going to count against you.  If you want to

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:44:10 1  ask the witness questions, I invite you to ask the

2  witness questions.

3          MR. HAILEY:  I haven't asked you a single

4  question today, Taylor.

10:44:15 5          I want to --

6          MR. GOOCH:  I'm saying, I'm going to

7  respond --

8          MR. HAILEY:  -- ask the witness -- I want

9  to ask -- I want to ask the witness questions.  I

10:44:17 10  want to proceed with my deposition, and I'm going

11  to proceed with it now.

12          MR. GOOCH:  I am saying, I'm going to

13  respond to your statements you've made directed at

14  me.

10:44:23 15          And so ask questions.

16          (Exhibit 232 was marked for

17  identification by the Court Reporter and is

18  attached hereto.)

19          Q.  (By Mr. Hailey)  Dr. Kaplan, I'm showing

10:44:34 20  what we've marked as Exhibit 232 to your

21  deposition.

22          Do you recognize this document?

23          A.  I recognize this document.

24          Q.  And what is this?

10:44:58 25          A.  I believe that this document is a

36

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:55:30 1    Q.   (By Mr. Hailey)  I apologize for the

2    constant interruptions, Dr. Kaplan.

3        The question is, you didn't review the

4    OpenAI agreements that you entered into when your

10:55:49 5    engagement with them ended to confirm one way or

6    the other what you can and can't testify about

7    today, correct?

8        MR. GOOCH:  Asked and answered.

9        THE DEPONENT:  I did not review the

10:56:01 10   details of my agreements with OpenAI as preparation

11   for this deposition.

12    Q.   (By Mr. Hailey)  So you don't really know

13   what exactly is confidential to OpenAI and what is

14   not, correct?

10:56:14 15       MR. GOOCH:  Objection.  Misstates the

16   testimony.  And asked and answered.

17       THE DEPONENT:  I have a reasonable sense

18   of what the norms were at OpenAI circa this period

19   in terms of what information might or might not be

10:56:29 20   confidential.

21        And as I stated before, there's a great

22   deal of information detailing the kind of work I

23   did and even indicating what my role was in that

24   work in a variety of published papers, which I'

10:56:42 25   recommend you review if you're interested in the

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:56:46  1  work I was doing.

2    Q.  (By Mr. Hailey)  What role did you play

3  with respect to selecting training data at OpenAI?

4       MR. GOOCH:  Same caution.

10:56:52  5       THE DEPONENT:  I believe I've already

6  answered that question to the best of my ability.

7    Q.  (By Mr. Hailey)  I'm not sure you have,

8  so I'd ask that you answer the question.

9       What role did you play with respect to

10:57:02 10  selecting training data at OpenAI?

11       MR. GOOCH:  Same caution.  And asked and

12  answered.

13       THE DEPONENT:  As I said, I think that

14  you can look at -- in the appendices.  I'd be happy

10:57:14 15  to point them out if you'd provide, say, some of

16  the papers that I mentioned that indicate what work

17  I did and what my role was in that work.  That's

18  all public information.  And if you want to produce

19  it, happy to answer questions about it.

10:57:28 20       But I don't think I can provide more

21  information than that.

22    Q.  (By Mr. Hailey)  So as you sit in your

23  deposition today, is your testimony that you -- you

24  can't tell me what role you played with respect to

10:57:39 25  selecting training data at OpenAI?

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:57:41 1        MR. GOOCH:  Objection.  Misstates the

2  prior testimony.  And asked and answered.

3        THE DEPONENT:  As I said, if you look at

4  "Scaling Laws for Neural Language Models," a

10:57:54 5  follow-up work on that that discusses multimodal

6  models, if you look at the GPT3 paper, if you look

7  at, I think, some other papers that I collaborated

8  on during this period with researchers at OpenAI,

9  you'll see my position in the author list, which

10:58:16 10  gives some indication of how important my work was

11  and how much I did on -- on -- on those

12  collaborations.

13        And then many of those papers have a

14  section that indicates the contributions of

10:58:31 15  individual authors that typically states what part

16  of the research was done by whom.

17        And you should, if you look at those

18  papers now or in the future, be able to get a sense

19  of what kind of work I was doing at OpenAI,

10:58:46 20  including as is relevant to your question.

21     Q.  (By Mr. Hailey)  Apart from what is

22  included in what you published, what else can you

23  tell me about what work you did at OpenAI?

24        MR. GOOCH:  Objection.  And same caution

10:59:00 25  to not reveal OpenAI confidential information,

48

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:59:02 1  consistent with your agreements.

2        THE DEPONENT:  I -- I -- I think I've

3  already told you a good source of information on

4  what I did at OpenAI.

10:59:13 5    Q.  (By Mr. Hailey)  Yes.

6        And I'm asking you, apart from those

7  published articles, what can you tell me about what

8  you work you did at OpenAI?

9        MR. GOOCH:  Same caution.

10:59:22 10        THE DEPONENT:  If you were to produce any

11  of these papers, I'd be happy to talk to you about

12  my contributions to those papers and what -- and

13  what's indicated in those papers about my role in

14  the work.

10:59:35 15    Q.  (By Mr. Hailey)  Dr. Kaplan, you

16  understand my question is not about those published

17  papers, correct?

18    A.  I -- I don't think I understand that.

19    Q.  I'm not asking about the published

10:59:44 20  papers.

21        I'm asking about, apart from the

22  published papers, what can you tell me about your

23  work at OpenAI?

24        MR. GOOCH:  Objection.  Same caution.

10:59:53 25        THE DEPONENT:  The majority of work that

49

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

10:59:55 1  I did resulted in published papers.

2     Q.   (By Mr. Hailey)  What about the minority

3   of your work that did not result in published

4   papers?

11:00:02 5     A.   I don't think that I can speak to that

6   because it was -- was not made public by OpenAI,

7   and therefore, I expect it to be confidential.

8     Q.   What's that based on?

9     A.   As I said, I have a general sense of the

11:00:16 10   expectations of researchers at OpenAI circa 2019

11   and 2020.

12     Q.   So you're refusing to answer my question

13   based on that general sense?

14     A.   I gave you many different methods of

11:00:33 15   learning about what work I did at OpenAI.

16     Q.   But you're refusing to answer my question

17   about the minority of work that you did not publish

18   that you did at OpenAI, correct?

19     A.   I'm not --

11:00:49 20          MR. GOOCH:  And -- sorry, just real

21   quick, just give me a few seconds to object.

22          Same objections.

23          Also, clearly trying to get the witness

24   to break confidentiality agreements.

11:01:01 25          I'm going to give you the same caution.

50

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:01:04 1        THE DEPONENT:  Yeah, I -- I don't -- I

2  think I've already answered the question.

3      Q.   (By Mr. Hailey)  I'm not asking you,

4  Dr. Kaplan, to break any confidentiality

11:01:14 5  agreements.

6        So let me ask you this:  Do you know what

7  is included in what is not included in the

8  confidentiality agreements?

9      A.   As I said, I have a general sense of the

11:01:24 10  expectations for confidentiality at OpenAI circa

11  2019 and 2020, and I'm abiding by that.

12     Q.   But you don't know what's actually

13  covered by the agreement -- the confidentiality

14  agreement or whatever agreement you entered into

11:01:41 15  with OpenAI, correct?

16        MR. GOOCH:  Objection.  Asked and

17  answered many times.

18        THE DEPONENT:  I had a general sense of

19  the expectations for confidentiality in the period

11:01:51 20  2019 and 2020, and I am abiding by that.

21     Q.   (By Mr. Hailey)  I'm not asking you about

22  your general sense, Dr. Kaplan.  I'm asking you

23  about what is specifically covered by whatever

24  agreement or agreements you yourself entered into

11:02:05 25  with OpenAI.

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:02:07 1        Do you know the coverage of those

2  agreements?

3        MR. GOOCH:  Same caution.

4        THE DEPONENT:  As I said, I did not

11:02:13 5  specifically review these -- those agreements as

6  preparation for this deposition.

7    Q.  (By Mr. Hailey)  I think I already -- I

8  think I already asked you this question, but let me

9  just ask it again just to -- just to make sure.

11:02:25 10        How were you compensated for your work at

11  OpenAI?

12        MR. GOOCH:  Same caution.

13        THE DEPONENT:  I -- can you be more

14  specific.

11:02:38 15    Q.  (By Mr. Hailey)  Did you receive a salary

16  for working at OpenAI?

17    A.  As indicated on this document, the

18  LinkedIn profile, where it's written that I was a

19  research consultant, OpenAI contract, I was a paid

11:02:56 20  consultant during that specific period.

21    Q.  And how were you paid?

22        MR. GOOCH:  I'm going to provide the same

23  caution to the witness to the extent this is

24  confidential information.

11:03:06 25        THE DEPONENT:  Yeah, I -- I don't know to

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:03:08  1  what extent this is confidential, so I'm not sure

2  what -- what else I can tell you.

3        MR. GOOCH:  I also don't see the

4  relevance, but make your record.

11:03:20  5        MR. HAILEY:  Relevance is not an

6  objection, Taylor.

7    Q.  (By Mr. Hailey)  So let me just make sure

8  I'm clear, Dr. Kaplan, because I think your answer

9  trailed off.

11:03:35  10        I asked, how were you paid?

11        MR. GOOCH:  So same caution.

12        THE DEPONENT:  I mean, I believe I was

13  paid as a consultant on a -- in U.S. dollars on a

14  monthly basis based on sort of hours worked, as --

11:03:55  15  as consultants usually are.

16    Q.  (By Mr. Hailey)  Did you receive any

17  equity in OpenAI as part of your work?

18    A.  I have never received any equity in

19  OpenAI.

11:04:06  20    Q.  Dr. Kaplan, are you proud of the work

21  that you did at OpenAI?

22    A.  I feel like as I scientist, many of the

23  findings we obtained on sort of the science of AI

24  during that period were exciting.  And I was -- I

11:04:34  25  was proud to participate in some of that work.

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:41:26 1     Q.   (By Mr. Hailey)  I don't understand your

2  question.  Let me try and rephrase mine,

3  Dr. Kaplan.

4          Do you agree or do you disagree that AI

11:41:36 5  poses serious environmental harms?

6          MR. GOOCH:  Same objections.

7          THE DEPONENT:  It is the case that AI

8  data centers, if they continue to expand at a rapid

9  rate, will use more and more electricity.

11:41:58 10     Q.   (By Mr. Hailey)  And water, correct?

11     A.   I don't know.

12     Q.   And you expect AI data centers to

13  continue to expand at a rapid rate, correct?

14     A.   I believe it's the case that if AI

11:42:19 15  capabilities continue to improve and AI continues

16  to be more and more useful for increasing

17  productivity, democratizing access to expertise,

18  all sorts of other things, that people may use AI

19  more and more and that that will lead to an

11:42:40 20  expansion of the role that AI plays in the economy.

21          MR. HAILEY:  So I'll move to strike as

22  nonresponsive.

23     Q.   (By Mr. Hailey)  Do you remember my

24  question, Dr. Kaplan?

11:42:53 25          MR. GOOCH:  And I'll disagree.

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:42:56  1     Q.   (By Mr. Hailey)  Do you remember my

2  question, Dr. Kaplan?

3       A.   It sounds looks like you'd like to

4  restate it.

11:43:01  5     Q.   My question to you was, you expect AI

6  data centers to continue to expand at a rapid rate,

7  correct?

8       A.   And I said that if AI continues to be

9  useful in the economy and people continue to want

11:43:18 10  to pay more and more to expand AI services, then to

11  meet that demand, it will be necessary to build

12  more data centers.

13          (Discussion off the stenographic record.)

14          MR. HAILEY:  I think this is a -- the

11:43:38 15  court reporter has requested a break.  I think this

16  is a good time for a break if that works for you,

17  Dr. Kaplan.

18          THE DEPONENT:  I want the court reporter

19  to be happy, but I don't have any desire to take a

11:43:50 20  break myself.

21          MR. GOOCH:  Why don't we just take five

22  minutes.

23          THE DEPONENT:  Yeah, that sounds good.

24          MR. GOOCH:  And then, Nick, I just had

11:43:54 25  two quick questions before we go off.

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:43:57 1      Are you able to confirm that no one at

2  O&Z has used the Bartz transcripts in preparation

3  for the deposition today?

4      MR. HAILEY:  I don't know the answer to

11:44:08 5  that question.

6      MR. GOOCH:  Can you --

7      MR. HAILEY:  So if I --

8      MR. GOOCH:  Great.

9      MR. HAILEY:  You've asked that question,

11:44:12 10  so --

11      MR. GOOCH:  Great.

12      Will you get back to me on the next break

13  so you can ask your colleagues.

14      MR. HAILEY:  I'm not -- not sure that

11:44:18 15  it's an appropriate for you to be asking.  So you

16  can ask the question.  We have the question.

17      MR. GOOCH:  Are you going to follow up?

18      MR. HAILEY:  Taylor, you've asked the

19  question.

11:44:27 20      MR. GOOCH:  Okay.  I understand you're

21  refusing to answer.

22      Can you confirm whether or not O&Z has

23  used any of the transcripts or notes or summaries

24  of the Bartz depositions in any way for any purpose

11:44:38 25  in this case.

85

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:44:39 1      MR. HAILEY:  So I will tell you, I don't

2  think it's proper for all the reasons we've

3  discussed before for you to be asking us about our

4  case preparation.  The detail -- this is all

11:44:51 5  privileged information you're asking about.

6      We've, I think, been clear with you that

7  we've complied with the respective protective

8  orders, and I don't think we need to tell you

9  anything more than that about what our case --

11:45:04 10  casework has been.

11      So I don't think those are appropriate

12  questions for you to ask, and I don't think we're

13  going to respond further.

14      MR. GOOCH:  So to be clear, you're

11:45:11 15  refusing to answer the questions?

16      MR. HAILEY:  That's correct, because I

17  don't think they are appropriate questions.  So we

18  are not obligated to answer them.

19      MR. GOOCH:  Okay.  We disagree.

11:45:33 20      Let's go off the record.

21      THE VIDEOGRAPHER:  Okay.  We are going

22  off the record.  The time is 11:45 time.

23      (Recess taken.)

24      THE VIDEOGRAPHER:  We are back on the

11:57:17 25  record.  The time is 11:57 a.m.

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

11:57:20 1          MR. GOOCH:  And I'll just note that on

2  the break, I asked Counsel if he had identified the

3  email he represented existed, and he said he hadn't

4  checked.

11:57:32 5     Q.  (By Mr. Hailey)  Welcome back,

6  Dr. Kaplan.

7          Did you have a nice break?

8     A.  It was good.

9     Q.  So before the break, we were talking

11:57:38 10  about the risks of AI technology like Claude.

11          Do you recall those questions?

12     A.  I recall that we were talking about

13  speculative possible risks from AI that are

14  wide-ranging, especially if AI becomes more and

11:58:00 15  more capable over time.

16     Q.  And one of the risks of AI is actually an

17  existential risk; is that correct?

18     A.  Many people who are concerned about AI

19  are concerned about risks that they deem

11:58:23 20  existential if AI becomes significantly more

21  intelligent and capable than any person.

22     Q.  And when we say existential, that means

23  that AI poses a risk or threat of human extinction;

24  is that correct?

11:58:42 25     A.  I think these words are used in a variety

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:08:04 1     A.   I don't know.

2     Q.   Does Anthropic perform any diligence to

3     identify whether the works contained in the

4     datasets it uses for AI training are copied

06:08:12 5     righted?

6          MR. GOOCH:  Objection.  Form.  And calls

7     for speculation and I'm going to provide the same

8     privilege caution and direct the witness not to

9     answer to the extent it would reveal privileged

06:08:23 10    conversation.

11         But you can otherwise answer the

12    question.

13         THE DEPONENT:  As I mentioned earlier my

14    understanding all essentially recently human text

06:08:33 15    human written text is copyrighted, including most

16    text on the Internet.

17         Thus my understanding is that based on

18    that comment, the fact that Anthropic transon data

19    from the Internet, that anthropic publishes does

06:08:53 20    train models on text that is copyrighted.

21    Q.  (By Mr. Hailey)  And how long have you

22    had that understanding?

23         MR. GOOCH:  Objection.  Form.  End going

24    to caution the the witness that you can answer, but

06:09:08 25    do not provide privileged information such as

329

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:09:11  1  conversations with attorneys or thoughts formed as

2  relation to conversations with attorneys.

3        THE DEPONENT:  I'm not sure.

4      Q.  (By Mr. Hailey)  Does Anthropic perform

06:09:21  5  any diligence on the datasets it uses for AI

6  training to identify whether rights holders have

7  given permission for their works to be included in

8  their datasets?

9        MR. GOOCH:  Same objections and same

06:09:33  10  caution to not reveal privileged information.

11        THE DEPONENT:  I'm not sure.

12      Q.  (By Mr. Hailey)  Does Anthropic perform

13  any diligence to identify whether the works

14  contained in the datasets it uses for AI training

06:09:46  15  are pirated copies of copyright works?

16        MR. GOOCH:  Objection.  Form.  I also

17  think that what did you picture rot PO in place I

18  want to make sure you are not in out of compliance

19  with the PO.

06:10:03  20        MR. HAILEY:  I don't know what you are

21  asking Taylor.

22        MR. GOOCH:  Okay so I'm going to direct

23  the witness not to answer as I believe that

24  question is trying to get to torrenting which is

06:10:12  25  not a permissible topic if you want to carve that

330

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:10:15  1  out of your question, feel free but otherwise I

2  understand picture rating to be a -- a violation of

3  rule 30.

4     Q.  (By Mr. Hailey)  I'm not asking about

06:10:28  5  torrenting can you answer my question?

6     A.  Can you please define the word "picture

7  rate.

8     Q.  Does Anthropic whether the works

9  contained in the datasets it uses for AI training

06:10:41 10  are illegal or told extent copies of copyrighted

11  works?

12        MR. GOOCH:  So I'm again believe that

13  counsel is trying to Nevadian violate order 30 and

14  if you want to carve out torrenting I let answer if

06:11:01 15  you are going to carve out tore represent.

16     Q.  (By Mr. Hailey)  I'm asking torrenting?

17        MR. GOOCH:  So state this in your

18  question.

19        MR. HAILEY:  I have.

06:11:08 20        MR. GOOCH:  Let answer.

21        MR. HAILEY:  Telling I'm asking tore

22  rent.

23        MR. GOOCH:  Unless stated in the question

24  I'm going to let him Ambiguities.

06:11:15 25     Q.  (By Mr. Hailey)  Well?

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:11:16  1        MR. GOOCH:  You welcome the I believe

2  because how deposition are used are quote the

3  answer ' apps what you are saying the definition if

4  you want put into the question let him answer.

06:11:29  5      Q.  (By Mr. Hailey)  Dr. Kaplan, Anthropic as

6  used the books 3 dataset to train its AI -- certain

7  of its Claude models, correct?

8      A.  Can you define what the books three

9  dataset.

06:11:46 10      Q.  Are you familiar with the books three

11  dataset?

12      A.  I'm not sure.

13      Q.    Can you be more precise as to what you

14  are referring.

06:12:04 15      Q.  Are you -- are you not familiar with the

16  dataset books three?

17      A.  I'm not sure exactly what dataset you are

18  referring.

19      Q.  Have you ever heard of a dataset called

06:12:14 20  books 3?

21      A.  Revenues there was a published paper some

22  numbers of years ago about a dataset that I do

23  recall sometimes referred to as the pile.  It was

24  openly published promulgated discussed among many

06:12:37 25  researchers.  Certainly at the time that led me to

332

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:12:40  1  believe that it was a standard perfectly fine

2  dataset on which to train AI models.  I think there

3  some books included in that dataset I'm not sure

4  exactly what or how it was obtained or where it

06:13:01  5  lived or anything like that.

6        But I think you might be referring to

7  this dataset geared in this sort of open access

8  publication.

9    Q.  One of the datasets included in the pile

06:13:14 10  was a dataset called book three, correct?

11        MR. GOOCH:  Objection.  Form.

12        THE DEPONENT:  It sound.

13        MR. GOOCH:  Calls for speculation.

14        THE DEPONENT:  It sounds like you are

06:13:23 15  telling me that books three is a subpoena set of

16  the pile dataset.

17    Q.  (By Mr. Hailey)  I'm asking you is that

18  correct statement books set subset of the book file

19  set?

06:13:33 20        MR. GOOCH:  Objection.  Form.

21        THE DEPONENT:  I don't recall for sure I

22  think there some books in the pile data.

23    Q.  (By Mr. Hailey)  Did Anthropic perform

24  any diligence on the pile dataset to identify

06:13:45 25  whether the works contained in that dataset were

333

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:13:49  1  illegal or stolen or unauthorized copies of

2  copyrighted works?

3        MR. GOOCH:  Counsel I have asked to

4  clarify that doesn't include bit tonight in the

06:13:58  5  question if you want to reask I let otherwise I

6  think you are trying to tore representing part of

7  violation federal rule 30 in the court's order if

8  you want to add to the question you can answer.

9     Q.  (By Mr. Hailey)  You didn't torrent the

06:14:12 10  pile did you, Dr. Kaplan?

11        MR. GOOCH:  Counsel, you know you're

12  specifically not allowed to ask that question.  So

13  that is in violation of the order.  I'm going to

14  direct the witness not to answer that question.

06:14:22 15        MR. HAILEY:  I'm confirming that they

16  didn't torrent.  There's been no allegation that

17  they --

18        MR. GOOCH:  You're not allowed to ask any

19  questions of torrenting.  You have one minute.

06:14:27 20  Defer to you how to spend it.

21        MR. HAILEY:  We will be taking a few

22  additional minutes to conclude the questions --

23        MR. GOOCH:  We will not.

24     Q.  (By Mr. Hailey)  -- given your

06:14:36 25  interruptions --

334

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:14:38 1        MR. GOOCH:  55 seconds.

2    Q.  (By Mr. Hailey)  Dr. Kaplan, did

3  Anthropic set aside any references to torrenting

4  from your counsel, did Anthropic perform any

06:14:49 5  diligence to review the contents of the live Gwen

6  dataset before Anthropic used that in connection

7  with AI training?

8        MR. GOOCH:  You can answer to the extent

9  it doesn't reveal privileged information.

06:15:06 10        THE DEPONENT:  I don't think I can answer

11  that without revealing privileged information.

12    Q.  (By Mr. Hailey)  Setting aside torrenting

13  that Anthropic perform NIF diligence to review the

14  contents of the pile dataset before Anthropic used

06:15:20 15  the pile AI training?

16        MR. GOOCH:  You can answer to the extent

17  it doesn't reveal privileged information.

18        THE DEPONENT:  It seems question

19  presupposes some specific training I am not sure I

06:15:32 20  understand what training you are referring to.

21    Q.  (By Mr. Hailey)  If have you used the

22  pile to train Claude models?

23    A.  I'm not sure.

24    Q.  So you don't whether you have done any

06:15:41 25  diligence on the pile in connection with the

335

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:18:53 1      MR. HAILEY:  We -- will certainly check.

2  If I -- if I was mistaken then I mistaken we

3  haven't I just.

4        MR. GOOCH:  Great.

06:19:00 5      MR. HAILEY:  We certainly exchanged

6  emails on this.  We certainly made a statement on

7  the record during the prior deposition so it

8  doesn't change our position that Dr. Kaplan should

9  have reviewed his --

06:19:14 10      MR. GOOCH:  And --

11      MR. HAILEY:  -- openAI agreements in

12  advance of this deposition.  He failed to do so.

13  So that is one of the reasons that we will be

14  seeking additional deposition time.

06:19:21 15      MR. GOOCH:  I understand you'll be

16  seeking that.

17      And do you care to tell us now what the

18  relevance of any of the OpenAI information is?

19      MR. HAILEY:  Give me just a moment.

06:19:47 20      MR. GOOCH:  Sounds good.

21      MR. HAILEY:  Off of the top of my head, I

22  will say in response to your question that the

23  witnesses' prior work on AI development and

24  training at OpenAI and his compensation from such

06:20:29 25  work is directly relevant to a whole list of issues

***HIGHLY CONFIDENTIAL AEO ROUGH DRAFT***

06:20:33  1  in the case, including knowledge, willfulness, and

2  bias.

3        I think that we heard today that the

4  witness had worked on various AI training and

06:20:46  5  dataset collection at open unable but he was unable

6  to share the details of that because he did not

7  have clarity as to what was fair game or not from

8  the testified to as part of agreements that he

9  apparently had in leaving the company, but have not

06:21:08  10  been reviewed not have been disclosed to to us and

11  that what I tell you.

12        MR. GOOCH:  I just disappointed counsel

13  only decide at the end of the deposition to provide

14  us the relevance of the OpenAI testimony.  That

06:21:25  15  when Ms. Meta asked him this specific counsel

16  during prior depositions he refused to answer when

17  asked in emails he refused to answer it appears the

18  counsel always had in mind.  Anticipate it's

19  dispointing that you are only deciding to do this

06:21:40  20  after the parties are unable to rectify the

21  position biunder willing disclose it's just

22  unfortunate you willing to have these conversations

23  earlier in prior to depositions.

24        MR. HAILEY:  Well Taylor we disagree I

06:21:54  25  did have this conversation with your colleague