# EXHIBIT C
# (REDACTED)



Nicholas Hailey
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
(202) 480-2174
nick@oandzlaw.com

**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL BY ANTHROPIC**

September 12, 2025

<u>Via Email</u>

Sonal N. Mehta
Wilmer Cutler Pickering Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
sonal.mehta@wilmerhale.com

Re:     *Concord Music Group, Inc., et al. v. Anthropic PBC*, No. 5:24-cv-03811-EKL-SVK (N.D. Cal.)

Counsel:

Your September 10 letter does not dispute the fact that Anthropic has used illegally torrented LibGen and PiLiMi files as part of the Claude guardrails to which Anthropic stipulated in this litigation. You know and we know this critically relevant information—the only question is why Anthropic never previously disclosed this information to the Court or to Publishers in this case. Anthropic made specific representations to the Court about the efficacy of its guardrails in preventing infringing output, and it relied on those same representations to avoid entry of a preliminary injunction in this case. There is no excuse for Anthropic's concealment of the fact that those very same guardrails rely on pirated content torrented from illegal shadow libraries.

Rather than address or explain Anthropic's failure to disclose this information in this case, you instead deflect by manufacturing a dispute over the *Bartz* protective order. But Oppenheim + Zebrak ("O+Z") has at all times complied with the protective orders entered both in this case and in *Bartz*—as we have previously explained to you at length. We have simply asked Anthropic to comply with its discovery obligations under the law and provide the Court and Publishers here with the same information regarding its infringing activity that it previously disclosed in *Bartz*. Anthropic's repeated and inexplicable refusal to do so represents a flagrant violation of its discovery obligations.

Moreover, as the Ninth Circuit recognizes, protective orders must be interpreted in a manner that "connect[s] its prohibitions to its purpose." *Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993) (recognizing that "[p]rivacy of proprietary information, not immunity from suit, was the legitimate purpose of the protective order"); *see also, e.g.*, *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022) (noting "decisions holding that the use of information gained by an attorney under a protective order in one case may appropriately be used by the same attorney to develop a strategy applicable to a second action"). The purpose of the *Bartz* protective order is to protect Anthropic's confidential

information—not shield it from liability in another case. The position you have taken stands directly contrary to that purpose, as does your apparent suggestion that we should pretend that evidence of Anthropic's illegal torrenting of pirated books from LibGen and PiLiMi disclosed in *Bartz* simply does not exist. But, knowing what we know, O+Z will not be a party to your concealment of relevant information in this case or Anthropic's misrepresentations regarding its illegal infringing activity.

While we will not otherwise relitigate Publishers' Motion to Amend here, which has been briefed and is pending before the Court, you are wrong to claim that Anthropic previously disclosed its use of illegally torrented LibGen and PiLiMi files as part of the Claude guardrails in this case.

The single spreadsheet you cite does not excuse Anthropic's failure to disclose this critically relevant information, for several reasons. For one thing, the spreadsheet was not produced to Publishers until July 14, 2025. That was long after Anthropic should have disclosed this information and just three days before the July 17, 2025 *Bartz* ruling that revealed Anthropic's broader exploitation of illegally torrented content, precipitating Publishers' Motion to Amend. Moreover, the spreadsheet itself contains only the word "libgen" as part of an otherwise indecipherable file path in just a few cells. *See, e.g.*, Anthropic_0000347810 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). That solitary reference does not provide any reasonable inference that Anthropic was exploiting pirated LibGen content in connection with its guardrails. The spreadsheet also makes no reference whatsoever to PiLiMi, let alone the pivotal fact that Anthropic torrented these pirate files. And in any event, reference to a single spreadsheet cannot absolve Anthropic's broader failure to disclose its use of illegally torrented content in connection with its guardrails, especially after Publishers served multiple discovery requests calling for precisely this information. *See, e.g.*, Publishers' Interrogatories 12-13; Publishers' Requests for Production 36-39, 89-90.

Nor is there any basis to your claim that this information could be revealed through the training data that Anthropic has made available for inspection. Publishers inspected that training data earlier this week and confirmed the absence of any code regarding Anthropic's exploitation of these pirate files for its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Your suggestion to the contrary is false.

You are also wrong to invoke ADR Local Rule 6-12. The fact that Anthropic used illegally torrented pirate files in connection with its guardrails was disclosed as part of the *Bartz* summary judgment briefing (filed under seal in that case, *see, e.g.*, Pls.' Opp. Br. at 17)—not as part of any mediation—so the ADR rule you cite simply does not apply. In any event, we never disclosed this information to the Court or to our clients in this case at any point prior to your Court-ordered production in this case disclosing this information on September 11, 2025.

While you unjustifiably seek to impugn our "firm's respect for Court Rules and Orders," we emphasize that it is Anthropic's counsel—not our firm—that has repeatedly violated Court orders in this case. As you know, Anthropic's counsel filed a sworn declaration containing false AI-generated information—from Anthropic's own Claude model—in violation of Judge Lee's Civil Standing Order. *See, e.g.*, ECF No. 377 at 5-6 (Magistrate Judge van Keulen's finding that Anthropic submitted a sworn declaration that included fabricated AI-generated content including

a "fictitious article name with inaccurate authors"—"a plain and simple AI hallucination"—without verifying the content's accuracy or certifying having done so, in violation of Judge Lee's Civil Standing Order). Anthropic's counsel has also been admonished for its improper over-designation of materials as confidential under the Protective Order. *See, e.g.*, May 13, 2025 Hearing Tr. 60:6-14 (Magistrate Judge van Keulen's expressing "dismay" that "[Anthropic] failed to acknowledge that there clearly is an issue here of over-designation," and emphasizing that "the parties are admonished, and the parties stipulate, to take care to limit any confidential designations to specific material that qualifies under the appropriate standards"); ECF No. 377 at 7 (Magistrate Judge van Keulen's emphasizing that "Publishers' concerns regarding [confidentiality] over-designation by Anthropic are not unfounded."). And Anthropic's counsel has missed Court-ordered production deadlines and made incomplete productions in spite of Court orders.

In another misstatement, you erroneously claim that we "have not responded" to your September 3 letter (which, to be clear, you sent to us on September 4). As you know, we responded to that letter on September 10, well before you sent the present letter. In our September 10 letter, we addressed in detail your baseless allegations regarding our treatment of confidential information. We refer you to that letter and will not rehash your unfounded claims here.

Finally, the record of our prior correspondence makes absolutely clear that we have acted consistently with the District's Civility Guidelines at all times—even in the face of Anthropic and its counsel's ongoing obfuscation of core discovery going to the heart of Publishers' claims. Your baseless allegations to the contrary are plainly intended to distract from the merits of the case and to vexatiously multiply the litigation. We will not respond further to the improper questions you raise in your letter.

We reserve all rights.

Sincerely,

*/s/ Nicholas Hailey*

Nicholas Hailey