**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR CLARIFICATION OF PROTECTIVE ORDER** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

   I.    Anthropic seeks extreme relief in an attempt to immunize itself from future liability. ....... 2

     A.   Anthropic's demand is contrary to Ninth Circuit precedent. ......................................... 2

     B.   Anthropic cannot improperly constrain Publishers' ability to enforce their rights in the future. .................................................................................................................. 5

     C.   Anthropic's Motion improperly requests an advisory opinion. ....................................... 6

  II.    Anthropic fails to identify any actual violation of the Protective Order to justify its extraordinary demands. ............................................................................................................ 7

     A.   The Court has already rejected Anthropic's arguments regarding the ████████████ ██████ discovery. .................................................................................................................. 7

     B.   Anthropic's accusations of *Bartz* Protective Order violations are meritless and irrelevant. .................................................................................................................. 9

     C.   None of Anthropic's other baseless accusations have any bearing here. ..................... 12

  III.    Anthropic cites no authority to justify the extraordinary relief it seeks. ..................... 14

CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*City of Fort Collins v. Open Int'l, LLC*,
2022 WL 7582436  (D. Colo. Aug. 16, 2022) ............................................................. 5

*Crocs, Inc. v. Joybees, Inc.*,
2023 WL 8851997 (D. Colo. Dec. 8, 2023) ................................................................. 4

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
2007 WL 1848660 (N.D. Cal. June 27, 2007) ......................................................... 15

*Dual-Deck Video Cassette Recorder Antitrust Litigation*,
10 F.3d 693 (9th Cir. 1993) ................................................................................. passim

*Flast v. Cohen*,
392 U.S. 83 (1968) ..................................................................................................... 6

*Halo Elecs., Inc. v. XFMRS, Inc.*,
2012 WL 1604858 (N.D. Cal. May 7, 2012) .......................................................... 5, 7

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) ......................................................... 15

*Mateos-Sandoval v. Cnty. of Sonoma*,
2013 WL 415588 (N.D. Cal. Jan. 31, 2013) .............................................................. 7

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
976 F. Supp. 917 (N.D. Cal. 1997) .......................................................................... 15

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
192 F. Supp. 3d 400 (S.D.N.Y. 2016) .................................................................. 5, 11

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*,
2023 WL 6882749 (N.D. Cal. Oct. 18, 2023) .......................................................... 15

*Static Media LLC v. Leader Accessories LLC*,
38 F.4th 1042 (Fed. Cir. 2022) .................................................................................. 4

*Suture Exp., Inc. v. Cardinal Health 200, LLC*,
2015 WL 5021959 (D. Kan. Aug. 24, 2015) .............................................................. 5

**Docketed Cases**

*Bartz v. Anthropic*,
Case No. 3:24-cv-05417-WHA, (N.D. Cal.) ................................................ 7, 10, 11, 12

**Other Authorities**

Alex Konrad, Phoebe Liu, *Anthropic's Pending $60 Billion Valuation Will Make All Seven
Cofounders Billionaires*, FORBES (Jan. 8, 2025) ................................................... 14

**INTRODUCTION**

Anthropic's "Motion for Clarification," ECF No. 504-3 (the "Motion" or "Mot."), unjustifiably seeks to graft additional requirements onto a standard Protective Order in an effort to gain a perceived litigation advantage. Just last week, this Court rejected a similar gambit by Anthropic to require Publishers to further stipulate to compliance with the Protective Order as a precondition to Anthropic's production of relevant discovery. *See* ECF No. 511 at 9. The Court rightly recognized the impropriety of granting litigants such needless relief. *See id.* For the same reasons, Anthropic's Motion should be denied here.

In short, there is no need to "clarify" the Protective Order. Publishers and their counsel have made clear that they have at all times complied with the Protective Order, and Anthropic fails to identify a single instance in which Publishers or their counsel have violated the Order. Likewise, Publishers do not intend to specifically disclose or rely on confidential information covered by the Protective Order here to file a future case against Anthropic, and Anthropic does not point to any evidence to the contrary. Anthropic cannot manufacture a dispute over the meaning of the Protective Order by misrepresenting Publishers' position and mischaracterizing the record.

Nor is there any basis for the extreme additional relief Anthropic seeks. Anthropic broadly demands that Publishers' counsel be forced to submit onerous declarations regarding their work in this case and, potentially, destroy their work product. But Anthropic fails to cite a single authority to support this draconian request. In the absence of any showing that Publishers or their counsel have actually violated the Protective Order, there are simply no grounds for such extraordinary relief. As with Anthropic's prior demand that Publishers enter a further stipulation as a condition of receiving relevant discovery, which the Court rightly rejected, one "shudders to think where granting [Anthropic's] request would lead." *See* ECF No. 511 at 9.

At bottom, Anthropic's Motion is not a request for clarification, but rather an attempt to weaponize the Protective Order in this case to prevent Publishers from enforcing their copyrights and immunize Anthropic from future liability. Publishers are entitled to enforce their rights. Anthropic cannot impose additional constraints under the Protective Order in an effort to evade

1  accountability. Where Publishers have already affirmed their compliance with the Protective Order

2  and their intent to comply with it in the future, Anthropic has no grounds to demand more.

3      The Court has repeatedly admonished against "inundat[ing]" the Court with needless

4  discovery motions. ECF No. 511 at 9. This is precisely such a motion. It should be denied outright.[1]

5                                          **ARGUMENT**

6  **I.   Anthropic seeks extreme relief in an attempt to immunize itself from future liability.**

7      Publishers have repeatedly confirmed their compliance with the Protective Order and their

8  intent to comply with it in the future. *See* Decl. of Jennifer Pariser, Dec. 8, 2025 ("Pariser Decl."),

9  ¶¶ 15, 19, 21, 23–25. Anthropic misrepresents the record when it claims that "Publishers and their

10  counsel have declared that they have a right to use confidential materials produced by Anthropic

11  pursuant to the Protective Order in the litigation for purposes outside of the case," Mot. at 8, while

12  baselessly speculating that Publishers have an "apparent 'uncertain[ty] about the scope'" of the

13  Order, *id.* at 8. Anthropic cannot justify its improper requests by putting words into Publishers'

14  mouths.

15      In the absence of any actual Protective Order violation by Publishers, Anthropic's request

16  to "clarify" the Protective Order and the additional relief it demands are a transparent attempt to

17  exploit the Order to undermine any future lawsuit by Publishers so that Anthropic can evade future

18  liability for its violations of Publishers' rights. That is entirely inconsistent with Ninth Circuit

19  precedent, which makes clear that protective orders are intended to protect a party's confidential

20  information—***not*** to categorically shield a party from liability in a separate suit. The Court should

21  reject Anthropic's demand to adopt an overbroad reading of the Protective Order that would

22  effectively enjoin Publishers from enforcing their rights and immunize Anthropic from liability.

23      **A.   Anthropic's demand is contrary to Ninth Circuit precedent.**

24      In *Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693 (9th Cir. 1993),

25  the Ninth Circuit rejected precisely the same argument Anthropic makes here. During discovery

26  in that case, the plaintiff had "obtained information which it claimed would show other antitrust

27
28  [1] In light of the Court's recent ruling denying a similar request by Anthropic, *see* ECF No. 511 at 9-10, Publishers requested on December 5 and 8, 2025 that Anthropic withdraw the present Motion, but Anthropic declined. Decl. of Jennifer Pariser, Dec. 8, 2025 ("Pariser Decl."), ¶¶ 28–30.

violations in addition to those already alleged", and after the district court denied the plaintiff leave to amend its complaint to include these new claims, the plaintiff filed a second lawsuit against the defendants. *Id*. at 694. The defendants subsequently moved for a contempt order against the plaintiff for "using discovery from its earlier lawsuit to support a later lawsuit, in violation of a protective order." *Id*. The district court held the plaintiff in contempt. *Id*. The Ninth Circuit reversed. *Id*.

The Ninth Circuit began by emphasizing that a protective order must be interpreted "to comply with common sense" and in a manner that "connect[s] its prohibitions to its purpose." *Id*. at 695. Similar to the Protective Order in this case, the *Dual-Deck* protective order sought to prevent public disclosure of commercial secrets and "matters deemed confidential or proprietary." *Id*., *id.* at n.1.

The Ninth Circuit rejected the defendants' attempt to weaponize the protective order to prevent ***any*** use of information discovered in one case in subsequent litigation. The defendants could not "throw the biggest possible blanket over every kind of knowledge which might be obtained in the lawsuit, lest a secret be exposed." *Id*. at 695. The Ninth Circuit explained that adopting the defendant's overly restrictive reading of the protective order would be "***absurd***":

> Because *[plaintiff's] lawyers cannot achieve total amnesia* and all their subsequent work in antitrust litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the [first] suit, the order would prohibit them from representing [plaintiff] at all in the [second] litigation. Indeed, lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they 'use' what they learned in a prior case "'in any way whatsoever' in any 'other action.'

*Id*. at 695 (emphasis added). The Ninth Circuit concluded that "[p]rivacy of proprietary information, ***not immunity from suit***, was the legitimate purpose of the protective order." *Id*. at 696 (emphasis added). Accordingly, the Ninth Circuit held that the plaintiff's use of discovery produced under the protective order in the first lawsuit to advance a second lawsuit (filed by the same plaintiff against the same defendants) did not substantially violate the protective order. *Id*.

Anthropic's attempts to distinguish *Dual-Deck* from the present case are unpersuasive. First, the plaintiff in *Dual-Deck* had "technical[ly]" violated the protective order. Publishers have

not and Anthropic fails to identify any violation here, technical or otherwise. Indeed, Anthropic's demand is all the more improper given the complete lack of evidence that Publishers have used any confidential information in any way that is inconsistent with the Protective Order. Second, Anthropic tries to distinguish the *Dual-Deck* protective order on the basis that it applied to "[a]ll information produced in discovery, including, but not limited to, 'Confidential Information,'" but that is a distinction without a difference, given Anthropic's practice of broadly over-designating materials as confidential in this case. *See, e.g.*, ECF No. 377 at 7. Like the defendants in *Dual-Deck*, Anthropic is improperly seeking to "throw the biggest possible blanket" over discovery to evade future liability. 10 F.3d at 695. In any event, even if the scope of material included under the Protective Order differed here from *Dual-Deck*, that would not affect *Dual-Deck*'s principle regarding what use can be made of the material that is subject to the protective order.

Courts across the country have similarly rejected attempts by defendants like Anthropic to improperly exploit protective orders to immunize themselves from liability. For example, the Federal Circuit recently recounted "decisions holding that the use of information gained by an attorney under a protective order in one case may appropriately be used by the same attorney to develop a strategy applicable to a second action." *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022) (declining to hold a party in contempt where the party shared confidential information with joint defense counsel, who in turn used the material to develop defense strategy for the original action and a subsequent action); *see also, e.g.*, *Crocs, Inc. v. Joybees, Inc.*, 2023 WL 8851997, at *9 (D. Colo. Dec. 8, 2023), *report and recommendation adopted*, 2024 WL 5055671 (D. Colo. Jan. 25, 2024) ("This court agrees with the courts in *Dual-Deck* and *Static Media* that a party who has produced information in one action cannot shield itself from being sued in another action by designating its documents as confidential under a protective order where, as here, the complaint does not publicly disclose highly confidential information"); *id.* (adopting a definition of "use" under a protective order that requires "something more than the mere use of one's knowledge that documents exist, and . . . instead require[s] the substantive reliance on or utilization of the documents themselves to achieve a specific purpose," and finding "[p]laintiff did not disclose any confidential content within the Complaint [in the second case] and

therefore did not use the confidential documents in violation of the PO"); *City of Fort Collins v. Open Int'l, LLC*, 2022 WL 7582436, at *5 (D. Colo. Aug. 16, 2022) ("[T]he fact that a party knows that certain documents exist, and uses that knowledge to attempt to seek the disclosure of those documents outside of the litigation, is insufficient to establish that the party 'used' those specific documents themselves or the information therein [in violation of a protective order]."); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016) (finding prohibition on use of discovery materials in other cases particularly "problematic" when "two lawsuits have been filed by the same plaintiff, in the same court, on the same legal theories, against two defendants who already share the same counsel"); *Suture Exp., Inc. v. Cardinal Health 200, LLC*, 2015 WL 5021959, at *4–5 (D. Kan. Aug. 24, 2015) (noting that protective order was "not intended to immunize individuals or even parties from subsequent suits, should information justifying such action become known during discovery," and modifying the protective order to allow use of certain documents in "any potential suits against" the plaintiff or others; and that the protective order "does not require [the defendants] to turn a blind eye to potential claims"); *Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 1604858, at *4 (N.D. Cal. May 7, 2012) (relying on *Dual-Deck* to hold that a plaintiffs' use of confidential materials in a second lawsuit was not grounds for contempt, and emphasizing that "the court is reluctant to preclude plaintiff from using the disputed materials where doing so might undermine the integrity of the [second] proceeding").

### B. Anthropic cannot improperly constrain Publishers' ability to enforce their rights in the future.

Just as in *Dual-Deck*, Anthropic seeks to wield the Protective Order to improperly constrain Publishers' ability to enforce their rights against Anthropic in the future. That is improper.

To be clear, Publishers do not maintain that *Dual-Deck* and its progeny permit Publishers to disclose information designated under the Protective Order in this case in a subsequent litigation to any person not entitled to access it (including another court). Publishers have not done so, and, to the extent such disclosure were necessary to advance claims in any subsequent litigation, Publishers would first seek leave to do so from the Court at the appropriate time; the Court can rule on any such request based on the record before it at that time.

But Anthropic seeks to much more broadly constrain Publishers and their counsel's ability to litigate future cases against Anthropic. In essence, Anthropic demands that Publishers and their counsel achieve "total amnesia" and pretend in any subsequent litigation that information they have learned in this case simply does not exist—exactly the position that the Ninth Circuit rejected in *Dual-Deck*. *See* 10 F.3d at 695. Adopting Anthropic's overly restrictive reading of the Protective Order would be deeply impractical, lead to never-ending discovery disputes and accusations by Anthropic (like its improper demand that Publishers enter a unique stipulation as a condition to receiving relevant discovery, *see* ECF No. 511 at 9), and create unwarranted obstacles to Publishers and their counsel's ability to litigate a future case. Indeed, Anthropic's extreme demands here appear to be part of some future strategy for seeking dismissal of a future case or disqualification of counsel based on a greatly expanded reading of the Protective Order. That would be a complete perversion of the Rules, and the Ninth Circuit has already dismissed these types of arguments as "absurd." *Dual-Deck*, 10 F.3d at 695.

Ultimately, "the Court can only address the needs of the case before it," ECF No. 511 at 9, and the Court should decline to issue any rulings that would prematurely—and unjustifiably—constrain Publishers and their counsel's ability to enforce their rights in a future action.

## C.     Anthropic's Motion improperly requests an advisory opinion.

Moreover, while Anthropic frames its motion as one seeking clarification, it is actually an improper request for an advisory opinion, and it should be rejected on that separate basis. Anthropic asks this Court to "clarify" that "[t]he plain language of the Protective Order prohibits Publishers from using confidential information disclosed in this case to litigate another suit." Mot. at 8. But nowhere does Anthropic justify that request by alleging even a single instance in which Publishers have done so. Instead, Anthropic's motion explicitly seeks guidance only as to some speculative future violation, requesting "the Court's assistance in ensuring that any violation, including 'technical violations,' do not occur ***in the future*** based on a misunderstanding of the Order." *Id*. at 10 (emphasis added).

Because Anthropic's motion seeks an opinion that is purely advisory in nature, it must be denied. *See, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread

1    in the federal law of justiciablity is that the federal courts will not give advisory opinions." (internal

2    quotation marks and citation omitted)); *Mateos-Sandoval v. Cnty. of Sonoma*, 2013 WL 415588,

3    at \*3 (N.D. Cal. Jan. 31, 2013) ("The Court may not issue an opinion on the issues on which

4    [defendants] now seek clarification, since any such opinion would be purely advisory in nature").

5    **II.    Anthropic fails to identify any actual violation of the Protective Order to justify its**
       **extraordinary demands.**

6

7        Anthropic's Motion should also be denied for the simple fact that it does not—because it

8    cannot—identify with any specificity an actual violation of the Protective Order in this case (or of

9    the Protective Order in *Bartz v. Anthropic*, Case No. 3:24-cv-05417-WHA, (N.D. Cal.)).[2] In the

10   absence of such a violation, there is no basis for any relief at all, let alone the draconian relief

11   Anthropic seeks.

12       Instead, Anthropic's Motion relies exclusively on unfounded speculation and unwarranted

13   suspicion, and it consistently mischaracterizes Publishers' and their counsel's statements and

14   actions. The Motion is replete with "suggestions" that some violation is occurring because

15   Publishers refuse to accede to Anthropic's demands for information into how Publishers are

16   conducting discovery. Publishers' refusal to respond to Anthropic's inappropriate demands

17   indicates nothing more than a refusal to be ordered around by Anthropic's counsel.

18       **A.    The Court has already rejected Anthropic's arguments regarding the**
       **▮▮▮▮▮▮▮▮▮▮ discovery.**

19       This Court has already rejected Anthropic's improper attempt to condition its production

20   of relevant ▮▮▮▮▮▮▮▮▮▮ ("▮▮▮") discovery on a "further unique stipulation" as to the

21   meaning of the Protective Order. ECF No. 511 at 9–10. Anthropic invokes the very same

22   arguments to demand "clarification" of the Protective Order here, and those arguments should be

23   rejected for the very same reasons.

24

25

26   ───────────
     [2] On three occasions throughout the two-year course of this litigation, Publishers have inadvertently filed confidential
     information on the public docket. In each instance, as soon as Publishers learned of the oversight, Publishers swiftly

27   acted to correct the mistake. Pariser Decl., ¶¶ 4–8. Such minor (and promptly rectified) errors are not evidence of bad
     faith or intent to violate a protective order. *See, e.g.*, *Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 1604858, at \*3 (N.D.

28   Cal. May 7, 2012) ("Substantial compliance with the court [protective] order is a defense to civil contempt, and is not
     vitiated by a few technical violations where every reasonable effort has been made to comply." (quotation omitted)).

Just as Anthropic did when refusing to produce ██ discovery, it mischaracterizes the record to suggest that Publishers sought that discovery solely to litigate some future case. *See* Mot. at 3–5, 11–12. To the contrary, the lyrics Anthropic included in its ████████████ are responsive to Publishers' requests and directly relevant to Publishers' claims in ***this*** case, for all the reasons Publishers explained in the Parties' separate dispute statement, ECF No. 498-1, and which the Court recognized in compelling Anthropic to produce it. ECF No. 511 at 9–10 (ordering production of the requested ████████████). Anthropic's attempt to paint Publishers' request for the ██ discovery as improperly seeking information that could only be used for "planned violations" in a future suit, Mot. at 10, depends on that discovery having no relevance in this case—a premise the Court has specifically rejected, dooming Anthropic's argument here.[3]

The Court's order compelling the ██ discovery also forecloses Anthropic's complaints that Publishers' declining to answer improper questions regarding Publishers' interpretation of the Protective Order and refusal to sign a second redundant stipulation regarding the Parties' obligations under the Protective Order somehow proves Publishers' intent to violate the Protective Order. The Court recognized that Anthropic's attempt to attach such unwarranted conditions to the production of responsive, relevant discovery was inappropriate and ordered Anthropic to produce the ██ discovery with no additional conditions. Publishers' refusal to bow to such coercive behavior says nothing about Publishers' present or future compliance with the Protective Order.

Likewise, nowhere have Publishers "all but admit[ted]" an intent to use confidential materials for new claims in violation of the Protective Order, and Publishers' representations during the November 2025 meet-and-confer discussions do not suggest otherwise. *See* Pariser Decl., ¶¶ 24–25. Although Anthropic argues that the ██ dispute "strongly suggest[s] that [Publishers] are ***already*** violating the Protective Order," it cites no evidence to support that claim because, again, there is none. Mot. at 12 (emphasis in original). Anthropic argues only that the dispute statement allegedly reflects Publishers' view that "the protective order language does not

---

[3] Anthropic's Motion also mischaracterizes the record as to both the history of Publishers' requests for the ██ discovery and the relevance of that discovery. As the Court has since compelled Anthropic to provide that discovery and, in doing so, rejected the arguments regarding the responsiveness and relevance of that discovery that Anthropic repeats here, Publishers do not further respond to those arguments.

Case No. 5:24-cv-03811-EKL-SVK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR CLARIFICATION OF PROTECTIVE ORDER

constrain them from using Anthropic's confidential information in one suit to develop claims for another suit." *Id.* This is wrong and deliberately ignores the context of the dispute statement regarding the ███ discovery. In response to ***Anthropic's*** attempt to use its fear of future litigation to improperly impose unnecessary conditions on its own production of relevant discovery, Publishers stated that, while they have consistently complied with the Protective Order and will continue to do so, Anthropic's attempt to use the Order to evade future liability by preemptively constraining Publishers from asserting future claims was improper under the relevant case law. ECF No. 498-1 at 4–5. Arguing applicable case law in response to Anthropic's improper attempt to withhold relevant discovery neither violates the Protective Order nor manifests any intent to do so.

In compelling Anthropic to produce the requested ███ discovery and rejecting its request to graft onto that production an additional requirement that Publishers stipulate to their Protective Order compliance, the Court emphasized that it "shudders to think where granting [Anthropic's] request would lead—not only in this case where the Parties do not hesitate to inundate the Court with discovery disputes but for every disputed RFP" in every other case. ECF No. 511 at 9. For the same reasons, the Court should deny Anthropic's similarly improper demand to "clarify" the Protective Order based on some speculative suspicion of a future violation here.

### B. Anthropic's accusations of *Bartz* Protective Order violations are meritless and irrelevant.

Publishers' counsel have complied with the *Bartz* Protective Order at all times. Pariser Decl., ¶¶ 9, 15, 17, 19. No exceptions. Anthropic cannot justify its present demand with baseless speculation that Publishers *might*, hypothetically, violate it in the future. Anthropic lodged the same unfounded hypothetical accusations with its failed effort to block ███ discovery, *see* ECF No. 498-1 at 6, 10, and the Court rightly rejected those claims, *see* ECF No. 511 at 9–10. The Court should do the same here.

To be clear, Oppenheim + Zebrak, LLP ("O+Z") has not disclosed any Anthropic material designated as confidential under the *Bartz* Protective Order to anyone not entitled under that Order to access it—including to Publishers in this case. Pariser Decl., ¶¶ 9, 19. There is no basis

whatsoever for Anthropic's empty speculation that, simply because O+Z attorneys began discussing representation with book publishers involved in *Bartz* and joined "trial strategy meetings" prior to formally entering appearances in that case, that Publishers or their O+Z counsel in this case must have reviewed confidential materials in violation of the *Bartz* Protective Order. They did not.

Moreover, Publishers have not improperly relied on any confidential *Bartz* information in connection with their Motion to Amend, ECF No. 411, or discovery requests in this case. Publishers' Motion to Amend explicitly and repeatedly explained that Publishers brought that motion in response to **public** revelations in *Bartz* regarding Anthropic's torrenting activity, and that motion cited no confidential information from *Bartz*. *See* ECF No. 411 at 1–3, 5–6. Further, Publishers explained that they had to rely on publicly available information in bringing the motion to amend and proposed amendments because Anthropic concealed that information in this case. *See id.* at 3–4, 3 n.1. Likewise, Publishers began propounding written discovery regarding Anthropic's illegal torrenting of pirate library websites based on Judge Alsup's **public** rulings in *Bartz*—not on any confidential information produced in *Bartz*. Pariser Decl., ¶ 10.

The questions to which Anthropic's counsel demanded Publishers' counsel respond at the August 22, 2025 meet and confer—regarding O+Z's representation of different clients in a different case—were entirely inappropriate and, in any event, have no bearing on this Motion. Publishers' counsel explicitly affirmed during those discussions that they have "complied and will continue to comply with the protective orders entered in both [*Concord*] and in *Bartz*," and that "[a]ny suggestion by [Anthropic's counsel] to the contrary is wrong." Pariser Decl., ¶ 15. Anthropic has no right to further probe the details of the work that O+Z has performed on behalf of different clients in a different case. That Publishers' counsel declined to further respond to this improper and invasive line of questioning has absolutely no bearing on this Motion.

Further, there are no grounds to claim that Publishers' counsel violated the *Bartz* Protective Order simply by **requesting** that Anthropic disclose in this case that it was exploiting LibGen and PiLiMi datasets as part of the so-called guardrails. Anthropic revealed that crucial information in the *Bartz* case, but inexplicably failed to disclose the same critical facts to the Court or to

Publishers here, despite discovery requests clearly calling for that information and the fact that Anthropic stipulated to these guardrails as part of this case. Anthropic's contention that Publishers' counsel were required to turn a blind eye to Anthropic's discovery omissions—and, worse, become a party to its misrepresentations to the Court about this key issue—is outrageous. The case law makes clear that Publishers' counsel are not required to have "total amnesia" as to information like this. *Dual-Deck*, 10 F.3d at 695.

Nevertheless, Publishers' counsel were careful to respect the *Bartz* Protective Order, making explicitly clear to Anthropic that they had ***not*** shared information regarding Anthropic's use of pirate datasets as part its guardrails with Publishers (despite the fact that Anthropic should have long ago disclosed that information to Publishers), and not otherwise revealed information in violation of the *Bartz* Protective Order. Pariser Decl., ¶¶ 19, 21. Nor have Publishers or their counsel filed anything in this case improperly containing or referencing confidential *Bartz* information. Anthropic cannot now weaponize its concealment of this relevant discovery (information Anthropic no longer even maintains as confidential, Mot. at 7. n.1) to claim that Publishers violated the *Bartz* Protective Order. Publishers' counsel handled this situation ***exactly*** as they should have—demanding that Anthropic disclose this relevant information in this case, without revealing that information to Publishers until Anthropic produced it here. The argument that, by requesting formal disclosure of information in this case in accordance with standard discovery obligations, Publishers were improperly attempting to use *Bartz* materials to litigate this case, is wrong. And if the Court adopts Anthropic's overbroad reading of the Protective Order, it can expect Anthropic to raise this same type of obstructive argument in response to every discovery request in future litigation. "Such an interpretation [of a protective order] would allow [a party] to withhold relevant and discoverable documents in one action with impunity, even after producing them in a similar case (and even if there was nothing confidential about the documents themselves), safe in the knowledge that its adversary could not mention their existence without risking sanctions." *Royal Park*, 192 F. Supp. 3d at 403.

In any event, Anthropic's baseless claims regarding compliance with the *Bartz* Protective Order are entirely irrelevant to Anthropic's demand for clarification of the Protective Order here.

Nothing in this history shows that Publishers seek to "use *Concord* confidential information to investigate new claims for future litigation." Mot. at 7. To the contrary, Publishers and their counsel have repeatedly affirmed their commitment to abiding by the Protective Order in both this case and *Bartz*, *see* Pariser Decl., ¶¶ 15, 19, 21, 23–25.

### C.   None of Anthropic's other baseless accusations have any bearing here.

In a last-ditch attempt to bolster its position, Anthropic hurls unfounded accusations against Publishers regarding recent depositions of Anthropic employees. None of these accusations has any merit, and none has any bearing on the Protective Order issues before the Court.

First, Anthropic omits key context from the recent deposition of Anthropic employee Jared Kaplan to misleadingly frame Publishers' counsel's questioning as further evidence of an intent to violate the Protective Order. Contrary to Anthropic's contention, the two cherry-picked questions by Publishers' counsel it cites do not support Anthropic's claim that "the only possible reason for O+Z to ask [these] questions . . . is to develop claims for some future case." Mot. at 12.

Anthropic is simply wrong that the question "███████████████████████████████ ██████████████████████████████████████████████████████████████████████████ █████████████████████████?" improperly attempted to elicit testimony on torrenting in violation of this Court's discovery order. *See* ECF No. 478 at 2. The question itself refutes that conclusion: not only does the question lack any explicit reference to torrenting, it has nothing to do with **how** Anthropic obtained the relevant datasets. Indeed, Publishers' counsel clarified multiple times in this line of questioning that he was "████████████████████." Ex. 1 (J. Kaplan Tr.) at 347:7–9, 347:22–23, 348:4–7 (emphasis added). Further, the Court's discovery order explicitly **permitted** Publishers to ask, "for a given dataset, [] whether such dataset was licensed." ECF No. 478 at 2. Whether Anthropic did anything to check whether the data it used to trains it models was licensed bears directly on Anthropic's willfulness in this case, particularly Anthropic's knowledge of the existence of illegal copies of copyrighted works in its training data and its decision to use such data anyway. In any event, this relevant questioning certainly does not evince any intent by counsel to violate the Protective Order.

1    Anthropic's attempt to mischaracterize a question posed by Publishers' counsel about The
2   Pile dataset as some sort of "gotcha" moment also fails. The Pile is an AI training dataset
3   specifically identified in Publishers' First Amended Complaint, ECF No. 337, ¶¶ 69–73, and which
4   Anthropic is *not* alleged to have torrented. Nevertheless, Anthropic's counsel repeatedly and
5   improperly objected to questions regarding ████████████████████████████████████████
6   ████████████████████████████████████████████████. Ex. 1 (J. Kaplan Dep.
7   Tr.) at 350:17–351:1. In order to respond to these objections and clarify that the question did not
8   apply to torrenting, Publishers' counsel thus asked, "██████████████████████████████
9   ██████"—framing that question in the negative specifically to confirm that the questions about
10  Anthropic's diligence on the Pile were *not* seeking information about torrenting, as the questions
11  immediately thereafter make clear. *Id.* at 351:2–353:9. Properly viewed in this context,
12  Anthropic's allegation that Publishers' counsel was "fishing for information about torrenting" is
13  entirely unfounded.

14    Nor does the fact that Publishers' counsel declined to answer Anthropic's counsel's
15  inappropriate questioning regarding *Bartz* materials during the Kaplan deposition in this case
16  support Anthropic's demand here. *See* Mot. at 12. The deposition transcript speaks for itself:
17  Anthropic's counsel asked Publishers' counsel if anyone at O+Z had used *Bartz* transcripts in
18  preparation for Dr. Kaplan's deposition, and Publishers' counsel explained, several times, that
19  such questioning into counsel's legal preparation was highly inappropriate, while at the same time
20  affirming that O+Z has complied with the applicable protective orders. *See* Ex. 1 (J. Kaplan Dep.
21  Tr.) at 92:11–94:5. The Court should decline Anthropic's baseless invitation to divine an intent to
22  violate the Protective Order from Publishers' justified refusal to engage with these invasive and
23  inappropriate questions.

24    Second, Anthropic is likewise wrong that Publishers' deposition questions about OpenAI
25  somehow demonstrate an intent to disregard the Protective Order. Not only are these questions
26  irrelevant to compliance with the Protective Order, but seeking information about a deponent's
27  prior work history is a standard line of questioning, and such prior work is particularly relevant
28  here given the fact that the three cited deponents (Daniela Amodei, Benjamin Mann, and Dr.

Kaplan), along with Anthropic's other founders, left OpenAI, another artificial intelligence company and Anthropic's competitor, to start Anthropic.[4] Their work at OpenAI—including developing a similar technology with similar training data to Anthropic's models—is plainly relevant to their knowledge of the unauthorized use of copyrighted works in Anthropic's training data, willfulness of their use, and potential bias. Indeed, the First Amended Complaint specifically references Anthropic's founders' prior work at OpenAI in this regard. ECF No. 337, ¶¶ 52, 108.

Nor does Publishers' questioning regarding the witnesses' alleged confidentiality agreements with OpenAI or other information regarding their work at the company demonstrate a disregard for confidentiality provisions. To the contrary, and with encouragement from Anthropic's counsel, these Anthropic witnesses broadly invoked their alleged OpenAI confidentiality agreements to ***refuse*** to respond to even simple questions about their relevant work at the company—despite the witnesses' having admitted to not reviewing the contents of those agreements in preparation for their depositions and not knowing what information was specifically covered by the agreements. Mr. Mann and Dr. Kaplan's failure to review these confidentiality agreements in advance of their depositions is particularly inexcusable, given that Publishers' counsel alerted Anthropic's counsel a week before the deposition that they would be questioning the witnesses about their OpenAI work and specifically requested that they review all relevant agreements in advance so that they would be prepared to properly respond to those questions. Pariser Decl., ¶¶ 26–27. In short, this is just another instance of Anthropic improperly exploiting confidentiality agreements for a perceived litigation advantage.

## III.    Anthropic cites no authority to justify the extraordinary relief it seeks.

In the absence of any evidence of an actual violation, there is no basis for the draconian relief Anthropic seeks. Anthropic fails to cite a single case in which a court "clarified" a protective order in circumstances such as these. Nor does Anthropic identify any authority supporting the extraordinary and downright coercive measures it requests—Court-ordered declarations from

---

[4] *See, e.g.*, Alex Konrad, Phoebe Liu, *Anthropic's Pending $60 Billion Valuation Will Make All Seven Cofounders Billionaires*, FORBES (Jan. 8, 2025), https://www.forbes.com/sites/alexkonrad/2025/01/08/anthropic-60-billion-valuation-will-make-all-seven-cofounders-billionaires/ (noting that Anthropic was founded in 2021 after its team departed from OpenAI).

1    Publishers' counsel and, potentially, Court-ordered destruction of work product—where there is

2    no evidence whatsoever of actual protective order violations. There is already a restrictive order

3    in place preventing both the Parties and their counsel from misusing confidential information, one

4    this Court has recognized as containing "express language" obviating the need for additional

5    affirmative commitments to confidentiality. *See* ECF No. 511 at 9. No more is necessary.

6        In every case Anthropic cites, the movant sought sanctions for an actual violation of a

7    protective order—not "clarification" of a protective order based on a party's amorphous suspicions

8    of some future or planned violation. Obviously, that scenario is inapplicable here. The cases

9    Anthropic cites are inapposite in other ways as well—they involved the use of confidential

10   information by wholly different parties, *Del Campo v. Am. Corrective Counseling Servs., Inc.*,

11   2007 WL 1848660, at *2 (N.D. Cal. June 27, 2007), the explicit disclosure of confidential materials

12   via public filing, *id.*; *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, 2023 WL 6882749, at

13   *3 (N.D. Cal. Oct. 18, 2023), or third-party communications, *LifeScan Scotland, Ltd. v. Shasta*

14   *Techs., LLC*, 2013 WL 4604746, at *2 (N.D. Cal. Aug. 28, 2013), or second actions with no factual

15   basis aside from the confidential information. *Silicon Genesis Corp.*, 2023 WL 6882749 at *3.

16       Moreover, *On Command Video Corp. v. LodgeNet Ent. Corp.*, in finding a violation of the

17   operative protective order, reasoned that the protective order did ***not*** immunize defendant from

18   liability for its wrongful actions uncovered in the first action, because there were "no restrictions

19   in the Protective Order concerning the addition of claims to this litigation." 976 F. Supp. 917, 921

20   (N.D. Cal. 1997). By contrast, here, Anthropic opposed, and the Court denied, Publishers' motion

21   to add claims regarding Anthropic's newly revealed wrongdoing. *See* ECF No. 468. To adopt the

22   *On Command* analysis and grant Anthropic's requested relief would wrongly risk immunizing

23   Anthropic entirely from additional liability.

## **CONCLUSION**

25       For the foregoing reasons, Anthropic's Motion for Clarification and requested relief should

26   be denied in full.

Dated: December 8, 2025

Respectfully submitted,

*/s/ Jennifer Pariser*

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from the signatory of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 8, 2025

_/s/ Michelle Gomez-Reichman_

Michelle Gomez-Reichman

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR CLARIFICATION OF PROTECTIVE ORDER