**PUBLIC REDACTED VERSION**

1

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

JOSEPH R. WETZEL (SBN 238008)
joe.wetzel@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

2

3

4

5

6

*Attorneys for Defendant*
**ANTHROPIC PBC**
(Additional Counsel on Next Page)

7

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN JOSE DIVISION**

11

CONCORD MUSIC GROUP, INC., ET AL.,

12

Plaintiffs,

13

v.

14

ANTHROPIC PBC,

15

Defendant.

Case No. 5:24-cv-03811-EKL-SVK

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR CLARIFICATION OF PROTECTIVE ORDER**

Judge: Hon. Susan van Keulen

16

17

18

19

20

21

22

23

24

25

26

27

28

**PUBLIC REDACTED VERSION**

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
DISHA PATEL (*Pro Hac Vice*)
disha.patel@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000

TAYLOR GOOCH (SBN 294282)
taylor.gooch@wilmerhale.com
KYLE EDWARDS HAUGH (SBN 323952)
kyle.haugh@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
50 California St.
San Francisco, CA 94111
Telephone: (628) 235-1000

ANDREW M. GASS (SBN 259694)
andrew.gass@lw.com
BRITTANY N. LOVEJOY (SBN 286813)
brittany.lovejoy@lw.com
IVANA DUKANOVIC (SBN 312937)
ivana.dukanovic@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

SARANG V. DAMLE (*Pro Hac Vice*)
sy.damle@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200

ALLISON L. STILLMAN (*Pro Hac Vice*)
alli.stillman@lw.com
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1747

DEF'S REPLY ISO MOT. FOR
CLARIFICATION OF PO

Case No. 5:24-cv-03811-EKL-SVK

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

I.    Publishers' Reliance On *Dual-Deck* All But Confirms They
      Are *Not* In Full Compliance With The Protective Order..................................2

II.   Publishers' Position Threatens To Undermine The Purpose Of
      Protective Orders, Which Facilitate Litigation By Encouraging
      Efficient Discovery ...............................................................................4

III.  Anthropic's Motion Does Not Seek an Advisory Opinion...............................5

IV.   CONCLUSION.................................................................................8

**PUBLIC REDACTED VERSION**

1     Publishers' opposition leaves no doubt that the parties sharply disagree about what conduct

2  the Protective Order forbids. Publishers believe that the Protective Order permits them to use

3  confidential materials produced in this case to launch a separate lawsuit so long as they do not

4  "***specifically*** disclose or rely on" confidential material from this case in the text of a future

5  complaint. Opp. 1.[1] On that view, Oppenheim + Zebrak LLP ("O+Z") could use the ████

6  ████████████ (████) song list to identify new clients and new works-in-suit for a future case.

7  They could use confidential deposition testimony to develop a separate case against another

8  company. And they could closely consult confidential documents while drafting a new complaint

9  against Anthropic premised on alleged torrenting. In short, Publishers contend that they can use the

10  massive quantities of confidential information Anthropic produced in this case as a reference library

11  for future matters—just so long as they do not directly quote from it or share with individuals not

12  covered by the Protective Order. That remarkable position cannot be squared with what this Court

13  has recognized as the "express language" of the Protective Order, ECF 511 at 9—confidential

14  material disclosed here can be used "***only*** for prosecuting, defending, or attempting to settle ***this***

15  litigation" and "***shall not be used for any other purpose***," ECF 293 at 11-12.

16     Given Publishers' stark misunderstanding of this language, their repeated promise that they

17  "have at all times complied with the Protective Order" (Opp. 1) is hollow, and clarification is sorely

18  needed. Publishers nevertheless seek a non-merits offramp by suggesting a ruling on this issue

19  would be an advisory opinion. But Publishers cannot stonewall Anthropic's repeated questions

20  aimed at confirming a protective order violation while simultaneously arguing that any adjudication

21  of this issue is advisory until a violation is confirmed. Anthropic submits that the Court should hold

22  a hearing and directly ask O+Z the question itself: Have Publishers or O+Z used, or do they intend

23  to use, Anthropic's confidential information produced in this case to investigate, pursue, or

24  prosecute future claims against Anthropic? If the answer were no, Publishers surely would not have

25  evaded answering the question over and over again. If the answer is yes, then there is plainly a

26  concrete dispute between the parties necessitating the Court's intervention.

27     A proper reading of the Protective Order is essential to ensure orderly and efficient

28

---

[1] Emphasis added and internal citations omitted throughout, except as otherwise noted.

**PUBLIC REDACTED VERSION**

discovery—not just in this case but in all cases in this District, given that the Protective Order here is based on the District's Model Protective Order. In matters requiring disclosure of large amounts of highly-sensitive information about cutting-edge technology, parties rely on the Protective Order's assurance that any confidential information they produce will be used only for litigating a particular case. Destroying that protection would create powerful perverse incentives for litigation in this District. Receiving parties would be incentivized to seek unnecessarily broad discovery to fish for information that might be helpful in a future case. Producing parties would be equally incentivized to aggressively police the scope of discovery and would be hard-pressed to reach compromises. Publishers' faulty interpretation would destabilize discovery across the District.

I.    **Publishers' Reliance On _Dual-Deck_ All But Confirms They Are _Not_ In Full Compliance With The Protective Order**

Publishers principally rely (Opp. 2-6) on _In re Dual-Deck Video Cassette Recorder Antitrust Litig._, 10 F.3d 693 (9th Cir. 1993). But their inaccurate construction of that case all but confirms that they are currently violating the Protective Order. As Anthropic explained in its opening brief, _Dual-Deck_ is inapposite for several reasons, including those articulated by the court in _Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH_, 2023 WL 6882749 (N.D. Cal. Oct. 18, 2023). As _Silicon Genesis_ explains, the protective order in _Dual-Deck_ "prohibited the plaintiff from using **_any_** discovery produced in the action outside of the litigation"—not just confidential information. 2023 WL 6882749 at *3. The Court in _Dual-Deck_ accordingly was concerned that "if taken literally," the order would require counsel to achieve "total amnesia" and "never do antitrust work again." _Dual-Deck_, 10 F.3d at 695. By contrast, in _Silicon Genesis_—and here—the "Protective Order is the Northern District of California Model Protective Order," 2023 WL 6882749 at *3, which is narrowly tailored to prohibit only the use of **_confidential_** materials outside the instant litigation and has been in place and relied on by parties for two decades. _See Del Campo v. American Corrective Counseling Services, Inc._, 2007 WL 1848660 at *1 (N.D. Cal. June 27, 2007) (describing at-issue language in model order at least as early as 2006).

Moreover, even as to those confidential materials, Anthropic is not demanding that Publishers or O+Z achieve "total amnesia." It is one thing to gain knowledge from litigating a case and then generally rely on it later. It is another to actively and deliberately pore through confidential

**PUBLIC REDACTED VERSION**

1    information with the specific purpose of supporting a separate case. The latter is what concerns

2    Anthropic. That is why counsel for Anthropic asked O+Z whether its attorneys had reviewed the

3    *Bartz* depositions to prepare for depositions in this case. Ex. 5 (J. Kaplan Dep. Tr.) at 92:11-94:6. It

4    is also why Anthropic sought to obtain Publishers' and O+Z's confirmation that they were not going

5    to use the ████ songs list to develop future claims. Holtzblatt Decl. (ECF 504-4) ¶¶ 16, 18, 20, 22.

6    If Publishers or O+Z are engaged in these kinds of deliberate misuses of specific confidential

7    information, *Dual-Deck* offers them no protection. *See In re eBay Seller Antitrust Litig.*, 2010 WL

8    2106004, at *1 (N.D. Cal. May 25, 2010) (reviewing eBay's documents "with an eye toward

9    evaluating the documents' potential relevance and possible use in another litigation" would violate

10   protective order).

11         Several of the cases that Publishers cite **confirm** this line: While a lawyer need not achieve

12   "total amnesia," the lawyer cannot take deliberate steps to use the substance of confidential

13   information from one case for a specific purpose in another case. For example, in *Suture Exp., Inc.*

14   *v. Cardinal Health 200, LLC*, 2015 WL 5021959, at *4–5 (D. Kan. Aug. 24, 2015), the court

15   reasoned: "[C]ounsel need not wipe their memories clean or somehow compartmentalize the mental

16   impressions formed in the course of the instant action. But they may not conduct an extensive review

17   of all discovery produced in this case for information to support any potential claims they wish to

18   bring in separate litigation." *Id.* Similarly, the court in *City of Fort Collins v. Open Int'l, LLC*, 2022

19   WL 7582436 (D. Colo. Aug. 16, 2022), drew a line between the "mere use of one's knowledge that

20   documents exist" (permissible) and "the substantive reliance on or utilization" of "the confidential

21   content within the documents" in order "to achieve a specific purpose" (not permissible). 2022 WL

22   7582436, at *5; *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d

23   400, 403, 405 (S.D.N.Y. 2016) (distinguishing between "making any substantive use of [produced]

24   documents, or the information they contain," and merely "using the knowledge that the documents

25   exist," and noting it "need not decide . . . whether the Protective Order before me prohibits [the

26   party] from filing a new lawsuit based on information learned through discovery in this one").

27         As Anthropic explained in its opening brief, *Dual-Deck* also arose in the distinct context of

28   a motion for sanctions, where "substantial compliance" is a defense. Most of Publishers' other cases

DEF'S REPLY ISO MOT. FOR          - 3 -          Case No. 5:24-cv-03811-EKL-SVK
CLARIFICATION OF PO

**PUBLIC REDACTED VERSION**

1    are distinguishable for the same reason. *See Static Media LLC v. Leader Accessories LLC*, 38 F.4th

2    1042, 1048 (Fed. Cir. 2022); *Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 1604858, at *4 (N.D. Cal.

3    May 7, 2012); *Crocs, Inc. v. Joybees, Inc.*, 2023 WL 8851997 (D. Colo. Dec. 8, 2023), *report and*

4    *recommendation adopted*, 2024 WL 5055671 (D. Colo. Jan. 25, 2024). And if Publishers or O+Z

5    are deliberately making use of confidential information disclosed by Anthropic in one case to litigate

6    another, even a substantial compliance defense could not save them. *See Silicon Genesis*, 2023 WL

7    6882749 at *3; Mot. 10. While Publishers rely on dicta in *Static Media*, the holding was more

8    limited. The appeal concerned whether a defendant had violated the protective order by sharing

9    confidential information with a third party under a joint defense agreement, which he had done only

10   after the third party had signed the protective order. 38 F.4th at 1044. While the third party later

11   improperly used the information for settlement purposes in his own case, that use outside the context

12   of the first litigation was not at issue in the appeal. *Id.* at 1045.

13        Publishers' brief attempts to distinguish *Silicon Genesis* and the other cases that Anthropic

14   cited in its opening brief are meritless. Contrary to Publishers' contention (Opp. 15), neither *Silicon*

15   *Genesis* nor *Del Campo* involved the "explicit disclosure of confidential materials via public filing."

16   *See Silicon Genesis*, 2023 WL 6882749 at *3; *Del Campo*, 2007 WL 1848660 at *7 (N.D. Cal. June

17   27, 2007). None of the other factual distinctions in *Del Campo*, *Silicon Genesis*, and *LifeScan*

18   *Scotland, Ltd. v. Shasta Techs., LLC*, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013), that Publishers

19   attempt to leverage undermine the legal principles for which those cases were cited. And consistent

20   with *On Command Video Corp. v. LodgeNet Ent. Corp.*, Anthropic seeks to prevent Publishers and

21   O+Z from using specific confidential information to "launch" a new action, not to immunize itself

22   from liability. 976 F. Supp. 917 (N.D. Cal. 1997).

23   **II.    Publishers' Position Threatens To Undermine The Purpose Of Protective Orders,**
     **Which Facilitate Litigation By Encouraging Efficient Discovery**
24

25        Publishers repeatedly accuse Anthropic of "weaponiz[ing]" the Protective Order to

26   "immunize" itself from future liability. But enforcing an order on which Anthropic relied does not

27   "weaponize" it. And the Protective Order does not shield Anthropic from liability, or even from

28   future suits by Publishers or O+Z based on nonconfidential information and general knowledge

     obtained in this litigation. But it does prohibit Publishers and O+Z from reviewing discovery in this

DEF'S REPLY ISO MOT. FOR                    - 4 -              Case No. 5:24-cv-03811-EKL-SVK
CLARIFICATION OF PO

<u>PUBLIC REDACTED VERSION</u>

1    case with the deliberate purpose of developing new claims for future litigation. And it bars them

2    from fishing for discovery in this case with the purpose of gaining information useful for future

3    litigation—even if they claim it has some tangential relevance here. Publishers' belief that these are

4    permissible uses of protected material illustrates that it is they who are weaponizing the discovery

5    process—not Anthropic.

6            And it is Publishers' position that would gravely threaten the efficiency of litigation by

7    eviscerating key protections that all parties rely on in producing confidential information in

8    discovery. The "goals furthered by protective orders" include "reducing conflict over discovery and

9    facilitating the flow of information through discovery." 8A Charles Alan Wright, Arthur R. Miller

10   & Richard L. Marcus, *Federal Practice and Procedure* § 2044.1 (3d ed. 2025). "Protective orders

11   serve the vital function of securing the just, speedy, and inexpensive determination of civil disputes

12   by encouraging full disclosure of all evidence that might conceivably be relevant. This objective

13   represents the cornerstone of our administration of civil justice." *Kiobel v. Cravath, Swaine &*

14   *Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018). If Publishers' interpretation were adopted, parties

15   would be negatively incentivized in ways that would destabilize the discovery process and

16   undermine its cooperative intent. Requesting parties would be incentivized to fish for information

17   to gin up new lawsuits or for other improper purposes, while disclosing parties would be forced to

18   closely police and limit the scope of discovery. That would be good for neither litigants nor the

19   courts and could lead to an explosion of discovery disputes. And because the provision at issue is

20   based on the District's model, the Court's decision in this case will impact incentives not just for

21   the parties here, but for parties throughout the District.

22       **III.    Anthropic's Motion Does Not Seek an Advisory Opinion**

23           There is no merit to Publishers' argument that an order from this Court clarifying the scope

24   of the Protective Order would be an advisory opinion. As explained in Anthropic's opening brief

25   (Mot. 7-8, 11), courts have discretion to issue clarifying orders "when parties are uncertain about

26   the scope of a ruling." *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, 2023 WL 6932560, at *2

27   (C.D. Cal. Sept. 29, 2023). Indeed, courts regularly take the opportunity to confirm the meaning of

28   a protective order when—as here—the parties disagree about the scope. *See, e.g., In re eBay Seller*,

1    2010 WL 2106004 at \*2 ("[u]nder the plain language of the Protective Order . . . any such review

2    [of confidential materials with an eye towards possible use in another litigation], if it occurred,

3    would violate the Protective Order"); *O'Connor v. Uber Techs., Inc.*, 2017 WL 3782101, at \*6 (N.D.

4    Cal. Aug. 31, 2017) (finding a violation and advising that "if Counsel had any doubt about the

5    matter, it should have sought leave of the Court or a stipulation from Defendant to clarify the

6    otherwise unambiguous scope of the Protective Order"); *Cunha v. Chico Produce, Inc.*, 2018 WL

7    11348748 (N.D. Cal. Sept. 5, 2018) (confirming moving party's interpretation of protective order).

8         Moreover, Publishers' advisory-opinion argument rests on their repeated refrain that

9    Anthropic has not "identif[ied] with any specificity an actual violation of the Protective Order" and

10   so the dispute here is only about some "speculative future violation." Opp. 6-7. Not so. As explained

11   in its opening brief, Anthropic fears that Publishers are ***presently*** misusing Anthropic's confidential

12   materials to investigate and develop claims for future suits. And the only reason that Anthropic is

13   unable to identify a violation "with specificity" is because Publishers have staunchly refused to

14   answer Anthropic's basic questions about whether and how they are using Anthropic's confidential

15   information. Publishers cannot simultaneously shield information about whether they used

16   protected information this way and then wield the absence of confirmation as a sword to avoid

17   adjudication of the scope of the protective order. To the extent the Court desires more factual

18   information to address the parties' legal dispute over the scope of the Protective Order, the Court

19   can and should hold a hearing to obtain a straight answer from O+Z on these questions or issue an

20   order to show cause why it should not find a protective order violation.

21        Such measures by the Court are warranted because the pattern of facts in this case raises

22   "serious questions" about Publishers' and O+Z's use of confidential material from this case—

23   questions that their opposition does nothing to alleviate. *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 52

24   (D. Nev. 2025) (evaluating whether there are "'serious questions' about the reliability and

25   completeness of the materials produced" and the "'candor' of the producing party's assertions" to

26   determine whether to compel a forensic examination). Anthropic's opening brief details multiple

27   instances worthy of concern, including (1) Publishers' and O+Z's refusal to confirm that they will

28   not use discovery from the ███ songs list to generate a new lawsuit; (2) O+Z's concession that it

1   relied upon confidential information from *Bartz* (which includes the same protective order

2   language) about Anthropic's alleged use of LibGen in its guardrails to seek discovery of the same

3   in this case; (3) O+Z's refusal to confirm whether their attorneys had reviewed confidential *Bartz*

4   deposition transcripts to prepare for depositions in this case; and (4) O+Z's questions seeking

5   confidential details about Anthropic employees' previous work at OpenAI.

6          Publishers attempt to retell each of these instances, but it is all revisionist history. With

7   respect to O+Z's reliance on confidential *Bartz* information to propound discovery in this case,

8   counsel generally declare that the discovery they sought regarding alleged torrenting was based

9   solely on information revealed in public *Bartz* filings. *See* Pariser Dec. ¶ 10. But that does not

10  account for other instances when O+Z used confidential information produced by Anthropic in

11  *Bartz*—and maintained as confidential in public filings—to litigate **this** case, such as when O+Z

12  demanded Anthropic supplement its discovery responses to address use of LibGen in the

13  guardrails—a fact that had not been publicly disclosed in any *Bartz* filing. *See* Mot. 6-7.

14         Even more concerning is Publishers' recent behavior with respect to the ████ songs dispute.

15  Anthropic had agreed to produce the documents, so long as Publishers confirmed they understood

16  the Protective Order barred them from using that discovery as the basis to bring future claims.

17  Anthropic asked for that direct confirmation over and over again, by email and by phone, but

18  Publishers refused. Even after this Court ruled that separate protections were not necessary "[g]iven

19  [the] express language" in the Protective Order limiting the use of Protected Materials in this action

20  "only for prosecuting, defending or attempting to settle this litigation," Publishers persist in their

21  position that it allows them to do much more. ECF 511 at 9 (quoting ECF 293 at 11); *see* Opp. 8-9.

22         O+Z likewise fails to justify its deposition conduct. *First*, O+Z contends their questions did

23  not technically violate this Court's order prohibiting questions about torrenting. They are wrong

24  about that.[2] But their response also misses the point: O+Z had no reason to ask about torrenting or

25  ─────────────────

26  [2] There can be no serious debate that Publishers' question "You didn't torrent the pile, did you, Dr.
    Kaplan?" was a direct violation of the protective order prohibiting questions about torrenting. Ex. 5
    at 351:2-3; *see also* Opp. 13. And despite Publishers' claims to the contrary, Anthropic's counsel

27  merely cautioned Dr. Kaplan not to reveal privileged information when asked "Does Anthropic
    perform any diligence on the datasets it uses for AI training to identify whether rights holders have

28  given permission for their works to be included in their datasets?" Ex. 5 at 346:5-9. It was the next
    question, "Does Anthropic perform any diligence to identify whether the works contained in the

DEF'S REPLY ISO MOT. FOR                    - 7 -              Case No. 5:24-cv-03811-EKL-SVK
CLARIFICATION OF PO

**PUBLIC REDACTED VERSION**

"pirating" for purposes of *this* case, because both this Court and Judge Lee have made abundantly clear that torrenting is not at issue in this case. Thus, the only plausible purpose for these questions is to advance O+Z's broader fishing expedition for an unfiled case.

*Second*, with respect to whether O+Z reviewed *Bartz* transcripts to prepare for depositions, O+Z claims (Opp. 13) that the "deposition transcript speaks for itself"—but the only thing the transcript shows is O+Z's attorney *refusing* to answer that question. Ex. 5 at 92:11-94:6. If O+Z were to use confidential transcripts from *Bartz* to prepare for depositions in this case, that would not only be a clear end-run around this Court's order declining Publishers' motion to compel those transcripts because of the risk of misuse but would also manifestly violate the *Bartz* protective order.

*Finally*, O+Z's questions about OpenAI were not a "standard line of questioning" (Opp. 13) about a deponent's prior work history. The questions specifically targeted confidential matters not relevant to *this* case, including questions to Daniela Amodei about how OpenAI developed its AI technology, Ex. 6 (D. Amodei Dep. Tr.) at 57:13-58:9, questions to Benjamin Mann about what datasets he collected while at OpenAI, Ex. 7 (B. Mann Dep. Tr.) at 26:15-31:21, and questions to Dr. Kaplan about what non-public research he had done at OpenAI, Ex. 5 at 56:8-57:16. Again, the questioning of Dr. Kaplan is telling. Despite him saying he needed a copy of one of his public OpenAI research papers to answer questions about the "majority of the work that [he] did" without revealing confidential OpenAI information, Publishers' counsel refused to ever give it to him. Ex. 5 at 57:12-13; *see also id.* at 50:19-52:4, 54:8-56:16. Counsel did not ask Dr. Kaplan a *single* question about the "majority" of Dr. Kaplan's work, which was public, instead focusing all of their questions on confidential details of his work. *Id.* at 48:20-58:14.

## IV.    CONCLUSION

For the foregoing reasons, Anthropic respectfully requests that the Court grant the motion to clarify the Protective Order, order a declaration from O+Z regarding their and Publishers' compliance with the Order, and, if necessary, order the destruction of work product based on improper uses of confidential information produced in this case.

---

datasets it uses for AI training are ***pirated copies*** of the copyrighted works?," where counsel directed him not to answer and asked O+Z to rephrase to carve out torrenting. *Id*. at 346:13-16.

**PUBLIC REDACTED VERSION**

1    Date: December 15, 2025            */s/ Sonal N. Mehta*

2

3    JOSEPH R. WETZEL (SBN 238008)        SONAL N. MEHTA (SBN 222086)
     joe.wetzel@lw.com                    sonal.mehta@wilmerhale.com
4    ANDREW M. GASS (SBN 259694)          **WILMER CUTLER PICKERING**
     andrew.gass@lw.com                   **HALE AND DORR LLP**
5    BRITTANY N. LOVEJOY (SBN 286813)     2600 El Camino Real, Suite 400
     brittany.lovejoy@lw.com              Palo Alto, CA 94306
6    IVANA DUKANOVIC (SBN 312937)         Telephone: (650) 858-6000
     ivana.dukanovic@lw.com
7    **LATHAM & WATKINS LLP**             LOUIS W. TOMPROS (*Pro Hac Vice*)
     505 Montgomery Street, Suite 2000    louis.tompros@wilmerhale.com
8    San Francisco, California 94111      DISHA PATEL (*Pro Hac Vice*)
     Telephone: (415) 391-0600            disha.patel@wilmerhale.com
9                                         **WILMER CUTLER PICKERING**
                                          **HALE AND DORR LLP**
10   SARANG V. DAMLE (*Pro Hac Vice*)     60 State Street
     sy.damle@lw.com                      Boston, MA 02109
11   **LATHAM & WATKINS LLP**             Telephone: (617) 526-6220
     555 Eleventh Street NW, Suite 1000
12   Washington, DC 20004
     Telephone: (202) 637-2200            ARI HOLTZBLATT (SBN 354361)
13                                        ari.holtzblatt@wilmerhale.com
     ALLISON L. STILLMAN (*Pro Hac Vice*) ROBIN C. BURRELL (*Pro Hac Vice*)
14   alli.stillman@lw.com                 robin.burrell@wilmerhale.com
     **LATHAM & WATKINS LLP**             **WILMER CUTLER PICKERING**
15   1271 Avenue of the Americas          **HALE AND DORR LLP**
     New York, New York 10020             2100 Pennsylvania Ave, NW
16   Telephone: (212) 906-1747            Washington, DC 20006
                                          Telephone: (202) 663-6000
17

18                                        TAYLOR GOOCH (SBN 294282)
                                          taylor.gooch@wilmerhale.com
19                                        KYLE EDWARDS HAUGH (SBN 323952)
                                          kyle.haugh@wilmerhale.com
20                                        **WILMER CUTLER PICKERING**
                                          **HALE AND DORR LLP**
21                                        50 California St.
                                          San Francisco, CA 94111
22                                        Telephone: (628) 235-1000

23

24                                        *Attorneys for Defendant*
                                          **ANTHROPIC PBC**
25

26

27

28

**PUBLIC REDACTED VERSION**

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on December 15, 2025 I did cause Defendants' Reply in Support of its

3    Motion for Clarification of the Protective Order to be served on the following listed below and in

4    the manner so indicated.

5    **By Electronic Mail**

6
     OPPENHEIM + ZEBRAK, LLP                        COBLENTZ PATCH DUFFY & BASS LLP
7    Matthew J. Oppenheim (*Pro Hac Vice*)          Jeffrey G. Knowles
     Nicholas C. Hailey (*Pro Hac Vice*)            Christopher J. Weiner
8    Audrey Adu-Appiah (*Pro Hac Vice*)             Bina Patel
     Corey Miller (*Pro Hac Vice*)                  Thomas A. Harvey
9    Jeffrey M. Gould (*Pro Hac Vice*)              One Montgomery Street, Suite 3000
     4530 Wisconsin Avenue, NW, 5th Floor           San Francisco, CA 94104
10   Washington, DC 20016                           Telephone: (415) 772-5795
     Telephone: (202) 480-2999                      Ef-jgk@cpdb.com
11   matt@oandzlaw.com                              cwiener@coblentzlaw.com
     nick@oandzlaw.com                              bpatel@coblentzlaw.com
12   aadu-appiah@oandzlaw.com                       Ef-Tah@cpdb.com
     corey@oandzlaw.com
13   jeff@oandzlaw.com

14

15   Jennifer Pariser (*Pro Hac Vice*)              COWN, LEIBOWITZ & LATMAN, P.C.
     Andrew Guerra (*Pro Hac Vice*)                 Richard S. Mandel (*Pro Hac Vice*)
16   Timothy Chung (*Pro Hac Vice*)                 Jonathan Z. King (*Pro Hac Vice*)
     Michelle Gomez-Reichman (*Pro Hac Vice*)       Richard Dannay (*Pro Hac Vice*)
17   Bret Matera (*Pro Hac Vice*)                   114 West 47th Street
     Alexander Kaplan (*Pro Hac Vice*)              New York, NY 10036-1525
18   461 5th Avenue, 19th Floor                     Telephone: (212) 790-9200
     New York, NY 10017                             rsm@cll.com
19   Telephone: (212) 951-1156                      jzk@cll.com
     jpariser@oandzlaw.com                          rxd@cll.com
20   andrew@oandzlaw.com
     tchung@oandzlaw.com
21   mgomez-reichman@oandzlaw.com
     bmatera@oandzlaw.com
22   alex@oandzlaw.com

23

24   Dated: December 15, 2025                   By:    */s/ Sonal N. Mehta*
                                                       Sonal N. Mehta
25

26

27

28

---

DEF'S REPLY ISO MOT. FOR              - 10 -              Case No. 5:24-cv-03811-EKL-SVK
CLARIFICATION OF PO