**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S DECLARATION IN SUPPORT OF SEALING (ECF NO. 538)** <br><br> **REDACTED** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

Pursuant to Civ. L.R. 79-5(f)(4), Plaintiffs ("Publishers") respectfully submit this Response in Opposition to Anthropic's Declaration in Support of Publishers' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (the "Anthropic Decl."), ECF No. 538. Specifically, Publishers oppose sealing the information identified in the chart below:

| Document | Portion(s) to Seal |
|---|---|
| Ex. D to Pariser Decl., November 11, 2025 email chain (ECF No. 521-4)[1] | Highlighted portion at p. 8, first and second lines up to "the." |
| Ex. D to Pariser Decl., November 11, 2025 email chain (ECF No. 521-4) | Highlighted portion at p. 8, ninth line beginning with "contains." |
| Ex. D to Pariser Decl., November 11, 2025 email chain (ECF No. 521-4) | Highlighted portion at p. 11 following "proprietary information related to" |
| Ex. D to Pariser Decl., November 11, 2025 email chain (ECF No. 521-4) | Highlighted portion at bottom of p. 19, between "not limited to" and "Sampoli." |
| Ex. D to Pariser Decl., November 11, 2025 email chain (ECF No. 521-4) | Highlighted portion at p. 21 between "at" and "and." |

This information does not disclose specific or sensitive information that, if made public, would cause Defendant Anthropic ("Anthropic") commercial or competitive harm, and should not be sealed. Rather, all this information is already public, not commercially sensitive, or both.

I.   **Anthropic does not articulate either compelling reasons or good cause for sealing the information at issue.**

The Ninth Circuit recognizes "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). "The public has a right of access to the Court's files." Civ. L.R. 79-5(a).

As the party seeking to seal Exhibit D to the Pariser Declaration ("Ex. D"), Anthropic "bears the burden of overcoming this strong presumption [of public access] by meeting the 'compelling reasons' standard," which requires Anthropic to "articulate[] compelling reasons

---

[1] On Dec.15, 2025, Anthropic's counsel contacted Publishers' counsel to allege that Publishers had failed to properly redact certain confidential information in the publicly filed version of this document (ECF No. 522-6). Publishers' counsel disagreed and explained why the information identified by Anthropic was not confidential (as well as noting Anthropic's failure to designate it as such prior to Dec. 15, 2025). However, Publishers' counsel promptly moved to remove the filed document and re-file it bearing Anthropic's additional requested redactions as a courtesy, while making clear Publishers did not agree the information should be designated as such and reserving all rights to oppose any sealing request. ECF No. 533-1.

supported by specific factual findings that outweigh the general history of access and public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz*, 331 F.3d at 1135). As part of that showing, Anthropic must demonstrate "(i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient." Civ. L.R. 79-5(c)(1). Boilerplate allegations of harm and "hypothesis or conjecture" are insufficient. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). Anthropic has not met this stringent standard.

Anthropic is wrong that the Ninth's Circuit's good cause "carve-out" for documents attached to non-dispositive motions or filings "tangentially related to the merits," applies here. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *Connor v. Quora, Inc.*, 2020 WL 7408233, at *1 (N.D. Cal. Oct. 15, 2020). Anthropic filed its motion to seal, ECF No. 521 (the "Motion to Seal"), in connection with Anthropic's Motion for Clarification of Protective Order, ECF No. 505, which seeks significant substantive relief that may force Publishers to submit onerous declarations or destroy their work product and may implicate how every subsequent discovery dispute is litigated—far more significant than a "tangentially related" filing. But even if the "good cause" standard applies, Anthropic has not met this standard either.

### A. The information Anthropic seeks to seal is public information or does not reflect details that will cause it commercial or competitive harm.

Anthropic cannot succeed in claiming there are either compelling reasons or good cause to seal the above information in Ex. D because the information both (1) has been previously disclosed in multiple filings or other public documents, and (2) reflects only general, high-level information that could not conceivably cause competitive or commercial harm to Anthropic.

The information on page 8 regarding a " ██████ " and "██████████████████" has been disclosed both in this case and in *Bartz v. Anthropic*, No. 3:24-cv-05417-WHA (N.D. Cal.). For example, the Parties' publicly-available dispute

---

[2] Publishers have redacted the disputed information in the public version of this Opposition in accordance with the Protective Order, ECF No. 293, as the Motion to Seal such information remains pending, but do not agree that such information is Confidential or Highly Confidential.

1  statement notes that "Anthropic made available only a *table containing hash values* for the songs
2  in the . . . database." ECF No 500 at 2–3. The dispute statement is replete with public references
3  to the ███████████████, including references made by Anthropic itself, such as its
4  statement in the very second sentence of its portion of the dispute statement that "[t]here are lyrics
5  to . . . songs represented as hash values in the . . . (called the hash corpus)." *Id.* 6; *see also id.* at 7.
6  Anthropic reviewed and approved this joint statement, and the planned redactions, prior to filing.
7  Moreover, Judge Alsup's order on class certification in *Bartz* noted that "Anthropic itself needed
8  to identify the works it copied. It did so using common metadata and methods including hashing."
9  *Bartz*, ECF No. 244 at 3; *see id.* at 4–5, 16, 17 n.3.

10  Such information is also exceedingly general: page 8 of Ex. D reflects only high-level
11  identification of the ███████████, a common practice in the tech industry. *See* Expert Decl.
12  of Ben Zhao in Support of Plaintiffs' Mot. for Class Cert., *Bartz* ECF No. 125-6, ¶ 3 ("[D]istributed
13  hash tables . . . are now used in large cloud computing systems today"). The information regarding
14  ████████████████████████████ in connection with Anthropic's guardrails likewise
15  does not reveal any "specific and sensitive" details about the guardrails that could cause
16  competitive harm to Anthropic; it is a general phrase reflecting basic information for which there
17  is no conceivable basis that disclosure would cause Anthropic competitive harm.

18  The information on page 11 referring to "████████████████████████"
19  is also extremely high-level and general. Indeed, the surrounding language makes it clear that these
20  terms are not the proprietary information itself, but general descriptors about such information.
21  *See* Ex. D at 11 ("portions of the requested printouts include highly sensitive and proprietary
22  information related to ████████████████████████████████"). The at-issue language
23  does not disclose any actual details about these processes. Moreover, these processes are general
24  terms used in LLM development. *See, e.g.*, R. Greenblatt et al., *Alignment Faking in Large
25  Language Models*, ARXIV:2412.14093v2 (Dec. 20, 2024), https://arxiv.org/pdf/2412.14093 at 29
26  (stating that Anthropic "trained Claude 3 Opus using supervised fine-tuning on 3 epochs of roughly
27  70 million tokens"). Anthropic cannot suffer competitive harm from the disclosure of such general
28  language used in its own public research papers.

1        Similarly, **Anthropic** publicly disclosed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as referenced on page 19 of Exhibit D. In the Parties' joint dispute statement regarding Anthropic's production of Claude prompts and outputs, Anthropic stated, "Plaintiffs also mischaracterize Anthropic's use of Google DLP, a standard Cloud-based service for protecting sensitive personal data. The masking of certain artist names was the result of routine privacy protections and reflects the data available to Anthropic-not an attempt to 'alter' records." ECF No. 302 at 7. That dispute statement also contains an unredacted reference to the specific use of "placeholder strings." *Id.* at 3. Moreover, Anthropic's Responses and Objections to Publishers' 4th Set of RFPs dated March 17, 2025, which responded to requests for production regarding Anthropic's ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, did not identify any such information as Confidential or Highly Confidential.

       Likewise, this information Anthropic seeks to seal contains no particularized operational details and reflects only the general components of this tool. *See, e.g.*, S. Sharma, *Google Cloud DLP—A Practitioner's Guide to Securing Sensitive Data*, MEDIUM.COM (July 10, 2025), https://devsecopsai.today/google-cloud-dlp-a-practitioners-guide-to-securing-sensitive-data-bcb5e74e6d4f; *Redacting sensitive data from text*, GoogleCloud Sensitive Data Protection, https://docs.cloud.google.com/sensitive-data-protection/docs/redacting-sensitive-data (last visited Dec. 18, 2025) (discussing use of placeholder strings in connection with Google DLP).

       Finally, Anthropic's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on page 21 is public knowledge. While Anthropic claims this is "highly confidential nonpublic information" that Anthropic "maintains under the strictest of confidences," ECF No. 538 at 3, a simple Google search yields a number of publicly-available news articles with this information. *See, e.g.*, TRD Staff, *AI firm Anthropic to take 230K sf at Slack headquarters in SF*, THE REAL DEAL (Sept. 1, 2023), https://therealdeal.com/san-francisco/2023/09/01/ai-firm-anthropic-to-take-up-slacks-230k-sf-headquarters-in-downtown-sf/ ("Anthropic . . . expanded its San Francisco offices this summer, signing a 17,700-square-foot lease at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"); Paul Bubny, *AI Tenants Lease 133K SF in San Francisco*, CONNECTCRE (July 28, 2023), https://www.connectcre.com/stories/ai-tenants-lease-133k-sf-in-san-francisco/ ("Anthropic leased

1 | 17,735 square feet at ▮▮▮▮▮"). When recently prompted, Claude.ai itself confirmed that office address, citing multiple news articles and public sources. While Anthropic only offers a vague hypothetical of "bad actors" having access to Anthropic's data through its business address, this information has been public knowledge for several years. Nor is such telephone-book information commercially sensitive in any way.

Where this same information has already been disclosed publicly, there can be no serious harm from disclosure here and no basis for sealing. *See, e.g., Kamakahi v. American Society for Reproductive Medicine*, 2014 WL 6617262, at *3 (N.D. Cal. 2014) (denying request to seal where party had previously disclosed materials); Sealing Order (Dec. 19, 2024); ECF No. 282 (the Court's denying certain sealing requests where information was already part of the public record). For this reason, Anthropic's sealing request should be denied.

Anthropic's boilerplate references to generalized competitive harms and hypotheticals do not suffice. "Generic rationales invite general rejection." *X Corp. v. Bright Data Ltd.*, 2025 WL 81577, at *3 (N.D. Cal. Jan. 12, 2025). Moreover, "[i]nformation does not have value to a competitor merely because the competitor does not have access to it." *Travelers Property*, 2013 WL 707918, at *1. Particularly given the common use of ▮▮▮▮▮ "it is unclear how [Anthropic's] competitors could derive any economic benefit" from the references now. *Travelers Property Cas. Co. v. Centex Homes*, 2013 WL 707918, at *1 (N.D. Cal. 2013).

II. **The public interest further weighs against sealing.**

Finally, the "strong presumption in favor of access to court records" weighs further against sealing here. *Foltz*, 331 F.3d at 1135. Anthropic's overbroad request to seal this non-sensitive information is emblematic of the approach it has taken to confidentiality designations in this case more broadly. This overbroad approach unduly impedes Publishers' ability to use discovery relevant to their claims and unnecessarily burdens the Court and Publishers, including by having to address serial motions to seal. *See, e.g., United States v. Safran Grp., S.A.*, 2018 WL 11436322, at *4 (N.D. Cal. Sept. 14, 2018) (recognizing that motions to seal "inflict heavy burdens on courts").

For all of these reasons, Anthropic's request to seal this information should be denied.

Dated: December 19, 2025

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*

Respectfully submitted,

*/s/ Michelle Gomez-Reichman*

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 772-5795
jknowles@coblentzlaw.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com