1  SONAL N. MEHTA (SBN 222086)
   sonal.mehta@wilmerhale.com
2  **WILMER CUTLER PICKERING
   HALE AND DORR LLP**
3  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
4  Telephone: (650) 858-6000

5
   *Attorney for Defendant*
6  **ANTHROPIC PBC**
   (Additional Counsel on Next Page)
7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                              **SAN JOSE DIVISION**

| | |
|---|---|
| 11  CONCORD MUSIC GROUP, INC., ET AL., | |
| 12              Plaintiffs, | Case No. 5:24-cv-03811-EKL-SVK |
| 13       v. | **ANTHROPIC'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE RE: PLAINTIFFS' INVESTIGATIVE PROMPTS AND OUTPUTS** |
| 14  ANTHROPIC PBC, | |
| 15              Defendant. | |
| 16 | |
| 17 | CIVIL L.R. 72-2 |
| 18 | Judge: Hon. Eumi K. Lee |

1  LOUIS W. TOMPROS (*Pro Hac Vice*)
   louis.tompros@wilmerhale.com
2  DISHA PATEL (*Pro Hac Vice*)
   disha.patel@wilmerhale.com
3  **WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
4  60 State Street
5  Boston, MA 02109
   Telephone: (617) 526-6000
6
7  ARI HOLTZBLATT (SBN 354361)
   ari.holtzblatt@wilmerhale.com
8  ROBIN C. BURRELL (*Pro Hac Vice*)
   robin.burrell@wilmerhale.com
9  **WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
10 2100 Pennsylvania Ave, NW
   Washington, DC 20006
11 Telephone: (202) 663-6000
12
13 TAYLOR GOOCH (SBN 294282)
   taylor.gooch@wilmerhale.com
   KYLE EDWARDS HAUGH (SBN 323952)
14 kyle.haugh@wilmerhale.com
15 **WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
16 50 California St.
   San Francisco, CA 94111
17 Telephone: (628) 235-1000
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOT. FOR RELIEF    Case No. 5:24-cv-03811-EKL-SVK
FROM NONDISP. ORDER

Anthropic moves to correct a critical legal error in Judge van Keulen's December 18 discovery order, and renews its objection to Judge van Keulen's related October 12 discovery order.[1] Both orders allow Publishers to use prompts and outputs they and their agents generated as a sword to prove their secondary liability claims, while invoking the work product doctrine to prevent Anthropic from discovering basic identifying information about those efforts—information basic due process requires Anthropic to be permitted to explore in its defense. ECF 478 ("October 12 Order"); ECF 545 ("December 18 Order"). Without the requested information, Anthropic and the factfinder cannot distinguish true third-party prompts from Publishers' own ***non-infringing*** prompts, which cannot establish secondary liability as a matter of law.

Two fundamental legal errors led to this result: First, the October 12 Order concluded that prompt-output pairs attributable to Publishers' employees and investigators could form the basis for secondary liability claims, contrary to binding precedent that secondary infringement claims require a predicate act of direct infringement by a ***bona fide third party***. Publishers cannot establish secondary infringement for any Claude output prompted by Publishers or their agents. Second, both Orders erred in concluding that Anthropic is barred from obtaining usernames on work product grounds, based on a misreading of *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003 (N.D. Cal. Aug. 8, 2024). In fact, *Tremblay* correctly held that plaintiffs ***waive*** work product protection for the username information associated with prompt-output pairs on which they rely.

If allowed to stand, the Orders will prejudicially hinder Anthropic's ability to defend against secondary liability and set a dangerous precedent for future cases—opening defendants to potentially massive secondary liability by encouraging plaintiffs to generate untold volumes of allegedly infringing materials and then refuse to distinguish between their own and third parties' outputs.[2] Anthropic asks the Court to amend the Orders to compel discovery (via Anthropic's

---

[1] *See* Dkt. 493 (allowing Anthropic to renew motion after new ruling by Judge van Keulen).
[2] Defending against secondary liability is a central—but not the only—reason why Anthropic is entitled to Publishers' Account Information. Anthropic also needs that information to fully rebut arguments that Publishers intend to make about the frequency and typicality of allegedly infringing outputs, arguments that bear on Anthropic's purported knowledge, intent, and willfulness. See Dkt. 503 at 1-5. While the court-ordered high-level statistics are helpful for these purposes, they do not permit Anthropic to defend against these arguments with the degree of granularity with which it is entitled to do so in light of Publishers' waiver.

interrogatories and 30(b)(6) topics) of account information of Publishers and their employees, agents, investigators, or counsel ("Publishers' Account Information") used to generate any prompt-output pair as part of any investigation for this case that created the evidence Publishers acknowledge they intend to rely on to prove their claims. Alternatively, Anthropic asks the Court to compel Publishers' Account Information for any prompt-output pairs that Publishers will use to prove their secondary liability claims. At a minimum, if the Court is not inclined to grant discovery, then fundamental fairness requires that the Court at least bar Publishers from proving their claims using any prompt-output pairs from an unidentified user. Without that relief, the factfinder will have no ability to distinguish the prompts of bona fide third parties.

## I. Anthropic Must Be Able To Distinguish Publisher and Third-Party Prompts/Outputs

Publishers have confirmed they will seek to rely on prompt-output pairs that they generated as predicate acts of secondary infringement claims, but refuse to identify the users associated with those prompts.[3] The December 18 Order grants production of only post-suit prompts and outputs from Publishers' investigators and client-witnesses, but it denies Anthropic's request for the account information for all of the accounts that Publishers have confirmed they used to generate prompt-output pairs. Although Anthropic may be able to determine some of Publishers' Account Information for some of Publishers' prompts based on the new discovery ordered, Anthropic will be unable to do so for many other prompts, including those generated pre-suit and those generated by Publishers' counsel. Without the pre-suit and counsel-generated prompts, Anthropic cannot distinguish true third-party prompts and outputs from those generated by Publishers.[4]

This gap deprives Anthropic of a critical defense. "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); 3 Nimmer on Copyright

---

[3] 10/10/25 Hr'g Tr. at 95:12-22 (Publishers' counsel stating they are "relying on our – the prompts that we have disclosed in the case."); 12/16/25 Hr'g Tr. at 19:23-20:1 ("All [investigator] is going to do is say, '[o]n such-and-such a date, I was able to prompt Claude to generate the infringing output you can see in Exhibit, you know, Such-and-such.'").

[4] Nor can Anthropic test the difficulty with which Publishers were allegedly able to bypass Claude's guardrails. 12/16/25 Hr'g Tr. at 22: 4-6 (Publishers' counsel stating, "counsel was heavily involved in the selection and choice of prompts"); Candore Dep. Tr. 229:4-12 (testifying Publishers' counsel gave him a starting point for prompts).

§ 12.04[D][1] (secondary infringement is "confine[d] … to those instances where an actual infringement has in fact occurred"). Because "anyone who is authorized by the copyright owner to use the copyrighted work … is not an infringer of the copyright with respect to such use," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984), Publishers' and their agents' (including counsel's) use of Claude cannot form the predicate acts of infringement for a secondary liability claim.[5] Any contrary conclusion would require (incorrectly) holding that Publishers or their agents can be held liable for direct infringement on authorized conduct.[6]

Publishers' oral citation to *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149-150 n.16 (S.D.N.Y. 2009), on which the October 12 Order's contrary conclusion (affirmed by the December 18 Order) was based, was an invitation to error. Publishers (and as a result, Judge van Keulen) relied on a footnote in that out-of-circuit decision to reject Anthropic's and the factfinders' need to distinguish *bona fide* third parties from Publishers and their agents, contrary to Ninth Circuit precedent. And contrary to Publishers' representations to the court, none of the decisions cited in the *Arista* footnote stand for the proposition that the authorized acts of a copyright holders' agents can qualify as third-party infringement for secondary liability; most concern the use of investigators to gather evidence for *direct* infringement claims. Moreover, *Arista* only concerned the acts of a copyright holder's *agents*—it did not hold (nor could it) that plaintiffs' *own* acts could form the basis for secondary liability. *Arista* provides no basis to withhold the usernames of Publishers' *employees*' prompts—which Publishers have placed at issue in this case. *See* ECF 42 at ¶18; ECF 43 at ¶¶18, 20; ECF 44 at ¶¶19; ECF 45 at ¶¶17, 19.

The portion of the Orders requiring the production of high-level statistics is helpful but not sufficient, because Anthropic needs to know user affiliation on a per-work basis. For example, if there are only three outputs containing a particular work's lyrics, and all three were created by

---

[5] In its order on the first motion to dismiss, this Court declined to determine, as premature, "whether output prompted by Publishers' investigators would constitute a predicate act of third-party infringement." ECF 322 at 6. The issue is now ripe because Publishers have asserted that their investigators qualify as third parties for purposes of proving their secondary liability claims.

[6] Anthropic does not dispute that Publishers can cite their own prompt-output pairs as evidence of *direct* infringement—*i.e.*, where the argument is that **Anthropic** directly infringed in producing an output—and that Anthropic can defend against that claim on the merits.

DEFENDANT'S MOT. FOR RELIEF FROM NONDISP. ORDER   3   Case No. 5:24-cv-03811-EKL-SVK

Publishers or their agents, then Publishers have no viable secondary infringement claim for that work. Indeed, in analyzing the sample of 5 million prompt-output pairs produced by Anthropic, Dr. Bray (Anthropic's expert) concluded that **83.33%** of the prompts seeking any amount or form of lyric regurgitation to the Works-in-Suit belonged to Publishers' known investigator, and of the outputs that provided lyrics to the Works-in-Suit, **94.25%** of those outputs were associated with prompts that came from that same investigator. Burrell Decl., Ex. A ¶ 40. But, because Publishers have not disclosed any Account Information, Dr. Bray was unable to determine if the remaining prompts and outputs were also at Publishers' direction. ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████ The consequence of Publishers' refusal to provide Account Information cannot be that Publishers "make factual assertions based on … supposedly privileged" information "and then deny [Anthropic] an opportunity to uncover the foundation for those assertions in order to contradict them." *Contreras v. Gonzalez*, 2020 WL 6887743, at *2 (E.D. Cal. Nov. 24, 2020).

**II.     The Orders Relied On An Erroneous Reading Of *Tremblay v. OpenAI***

The Orders also wrongly concluded that Publishers could claim work product protection over the usernames associated with the prompt-output pairs that they intend to rely on to establish liability. A username is not itself work product—it is precisely the sort of privilege log information that would be used to justify a work product claim. Even if usernames are protectable, Publishers waived any protection by voluntarily disclosing them on Anthropic's own systems. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020). And **critically**, Publishers further waived any privilege by putting prompt-output pairs associated with these undisclosed usernames directly at issue. *See id.* at 1117. When a party seeks to affirmatively rely upon the fruits of their work product as a sword, they have waived the right to use the doctrine as a shield, and the scope of that waiver must be "broad enough" to cover materials "without which [the adverse party] may be unfairly prejudiced in their defense." *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003). Thus, when "a party puts … its pre-litigation investigation at issue" it "must turn over documents related to that investigation, even if they would ordinarily be privileged." *Walker v. Cnty. of Contra*

1   *Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005). Publishers have put their entire investigation at issue
2   and the only way for the factfinder to untangle the prompt-output pairs generated by Publishers'
3   and their agents from the rest is to provide Anthropic with Publishers' Account Information.[7]

4         The Orders rely on an erroneous reading of *Tremblay v. OpenAI*. *Tremblay* recognized that
5   when plaintiffs intend to rely on positive test results from an investigation of AI outputs to establish
6   liability, defendants are entitled to the "account settings" for the users who generated them. 2024
7   WL 3748003, at *1, 3; *see Tremblay*, ECF 153 at 2-3 (explaining that "account information"
8   included "user personal information" like usernames and emails). In another invitation to error,
9   Publishers' counsel inaccurately argued that "account settings" had a different meaning. ECF 481
10  at 108:6-14 (10/10/25 Hr'g Tr.). But *Tremblay* itself, the magistrate order under review, and the
11  briefing all made clear that "account settings" was shorthand for "the OpenAI account information
12  for individuals who used ChatGPT to investigate Plaintiffs' claims," *see Tremblay*, 2024 WL
13  3748003, at *1; *Tremblay*, ECF 154 at 1, which included the "name, contact information, and
14  account credentials," *Tremblay*, ECF 153 at 11. That "account information" was "a necessary
15  component of Defendants' ability to understand Plaintiffs' positive results and to fairly subject
16  those results to meaningful scrutiny." *Tremblay*, ECF 154 at 6. The same reasoning applies here.
17  The October 12 Order relied upon Publishers' misrepresentation of *Tremblay* to reach an erroneous
18  result. As a result, both Orders bar discovery of relevant information for all prompts and outputs.

19  **III.   Anthropic Is Entitled To 30(b)(6) Testimony On Nonprivileged Topics**

20        The Court should also reverse the October 12 Order's denial of 30(b)(6) testimony for any
21  aspect of Publishers' investigation for which privilege is waived. For the reasons above, the Order
22  does not "delineate the border between the Publishers' waiver and remaining work-product
23  protections," ECF 478 at 6, so Anthropic is entitled to probe any relevant nonprivileged matter in
24  depositions. *See Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000).

---

[7] The October 12 Order also expressed concern that giving Anthropic usernames would permit it to reverse engineer prompt-output pairs Publishers did not sue on. ECF 478 at 6. But Publishers chose to commingle works in their investigation and then to selectively rely on the results. They have the option not to rely on their own outputs. Further, Anthropic's counsel committed not to use emails or usernames to reverse engineer Publishers' investigation, ECF 481 at 103-104, 114:4-5, and information about other works that are not in suit would be of little value in any case.

| | |
|---|---|
| Date: January 2, 2026 | /s/ *Sonal N. Mehta* |
| | SONAL N. MEHTA (SBN 222086) |
| | sonal.mehta@wilmerhale.com |
| | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| | 2600 El Camino Real, Suite 400 |
| | Palo Alto, CA 94306 |
| | Telephone: (650) 858-6000 |
| | |
| | LOUIS W. TOMPROS (*Pro Hac Vice*) |
| | louis.tompros@wilmerhale.com |
| | DISHA PATEL (*Pro Hac Vice*) |
| | disha.patel@wilmerhale.com |
| | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| | 60 State Street |
| | Boston, MA 02109 |
| | Telephone: (617) 526-6220 |
| | |
| | ARI HOLTZBLATT (SBN 354361) |
| | ari.holtzblatt@wilmerhale.com |
| | ROBIN C. BURRELL (*Pro Hac Vice*) |
| | robin.burrell@wilmerhale.com |
| | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| | 2100 Pennsylvania Ave, NW |
| | Washington, DC 20006 |
| | Telephone: (202) 663-6000 |
| | |
| | TAYLOR GOOCH (SBN 294282) |
| | taylor.gooch@wilmerhale.com |
| | KYLE EDWARDS HAUGH (SBN 323952) |
| | kyle.haugh@wilmerhale.com |
| | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| | 50 California St. |
| | San Francisco, CA 94111 |
| | Telephone: (628) 235-1000 |
| | |
| | *Attorneys for Defendant* |
| | **ANTHROPIC PBC** |