[Counsel on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **JOINT DISCOVERY DISPUTE STATEMENT REGARDING DEPOSITION OF ANTHROPIC WITNESS TOM BROWN** <br><br> **REDACTED** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

Pursuant to Sec. 8 of the Court's Civil Standing Order, and L.R. 37-1 and 37-2, Plaintiffs ("Publishers") and Defendant Anthropic PBC ("Anthropic") respectfully submit this Joint Discovery Dispute Statement regarding a dispute over the deposition of Anthropic witness Tom Brown. The Parties' lead counsel met and conferred via videoconference on Dec. 30, 2025 and by email, but have been unable to resolve the issues below. Fact discovery closed on Nov. 12, 2025. ECF No. 489. In terms of compromise, Publishers are willing to adjust the previously agreed upon Jan. 26, 2026 date for Mr. Brown's deposition at the witness's convenience, such as taking the deposition during evening or weekend hours if needed. As a compromise, Anthropic has offered to make Mr. Brown available for 4.5 hours, or the time remaining for Publishers' final deposition following Publishers' 2.5 hour deposition of Dr. Amodei.  Publishers respectfully request a ruling on this dispute by Jan. 7, 2026, in advance of Dr. Amodei's deposition on Jan. 8, 2026.

**I.     Publishers' Position: Anthropic cannot exploit the Court's order compelling Dr. Amodei's deposition to evade Mr. Brown's long-planned deposition.**[1]

Publishers have unfortunately been forced to bring another discovery dispute to the Court, this time due to Anthropic's attempt to use Dario Amodei's deposition as an excuse to withdraw (or limit the length of) another critical Anthropic deposition that has been confirmed for months.

Anthropic tries to exploit the Court's order compelling a 2.5-hour deposition of CEO Dario Amodei, ECF No. 544, to block the separate long-awaited deposition of key Anthropic witness Tom Brown. Mr. Brown is central to the case—he is the Anthropic founder who tested Claude's ability to generate Publishers' lyrics prior to launch. Anthropic cannot improperly twist the Court's order granting Dr. Amodei's deposition to exclude Mr. Brown's long-scheduled deposition.

Anthropic's contention that Mr. Brown's deposition would exceed the presumptive ten-deposition limit under Rule 30 is entirely backwards. Dr. Amodei's deposition—***not*** Mr. Brown's—counts as the eleventh deposition, and the Court has held that Dr. Amodei's deposition is warranted. ECF No. 544. In fact, Publishers would have deposed Mr. Brown in Sept. 2025 (mooting Anthropic's present objection) but for his unexpected parental leave, and his Jan. 2026

---

[1] Anthropic's delay during the joint dispute process has prevented Publishers from filing this statement earlier and prejudiced Publishers, given the need to resolve this dispute in advance of Dr. Amodei's deposition on Jan. 8, 2026. Publishers requested on Dec. 19, 2025 (and repeatedly thereafter) that Anthropic meet and confer regarding this dispute; Anthropic refused to meet until **11 days later** on Dec. 30.

1  deposition has been confirmed for months—as ████████████████████████████
2  ████████████████████, ECF No. 530 at 7. The Court's recent order compelling Dr. Amodei's
3  deposition contemplated Publishers' taking that deposition *in addition to* the ten other Anthropic
4  depositions that Publishers had taken or were scheduled to take—*not* in place of one of them.

5        To hold otherwise would improperly reward Anthropic's attempt to obstruct discovery and
6  manipulate the deposition limits by refusing to make Dr. Amodei available during fact discovery.
7  Anthropic would have the Court hold that Publishers could take only nine depositions (including
8  Mr. Brown) and were required to keep open the tenth slot for Dr. Amodei—even though Anthropic
9  refused to make him available during fact discovery and there was no guarantee Publishers would
10 ever get to depose him. Anthropic cannot have it both ways, where it can both refuse to make
11 Dr. Amodei available but also require that Publishers save one of their ten depositions for him.

12       Further, blocking Mr. Brown's deposition now would punish Publishers for agreeing as a
13 matter of courtesy to defer Mr. Brown's deposition until January due to Mr. Brown's parental
14 leave. It would be deeply unfair to allow Anthropic to weaponize the late timing of Mr. Brown's
15 deposition and exploit Publishers' courtesy for tactical advantage to deny Publishers his deposition
16 altogether. Anthropic suggests that, when Publishers won their apex motion and the Court ordered
17 the deposition of Dr. Amodei, that order simultaneously (but silently) denied Publishers Mr.
18 Brown's previously confirmed deposition. But it cannot be that Publishers, by *winning* their
19 motion for Dr. Amodei's deposition, *lose* the ability to depose another key witness, especially
20 given Mr. Brown's central role. Separately, even if Mr. Brown's deposition counted as the
21 eleventh, Publishers would still have a right to depose him under Rule 30 given his importance.

22       **A. Mr. Brown is a critically important witness.**

23       Mr. Brown is a critical witness and Publishers would be severely prejudiced by being
24 denied the ability to take his full 7-hour deposition. Anthropic cites no authority for blocking his
25 deposition or deviating from Rule 30's default 7-hour limit. Excluding or restricting the length of
26 Mr. Brown's deposition would mean that, by winning their apex motion for Dr. Amodei's
27 deposition, Publishers end up with *less* deposition time for Mr. Brown than the Rules permit.
28       Mr. Brown is one of Anthropic's seven original founders and the company's Chief

Compute Officer, played a key role across many core issues, and authored important documents that only he can explain. Indeed, Publishers' First Amended Complaint[2] specifically cites Mr. Brown's statements, and both document discovery and other depositions have only confirmed his importance. Anthropic included him as one of 12 document custodians for whom it affirmatively searched and produced documents and identified him in its Third Amended Initial Disclosures.[3]

Among other things, Mr. Brown was directly involved in developing and testing Claude's capabilities—including to respond to requests for Publishers' lyrics—prior to Claude's public launch. Mr. Brown himself prompted an early version of Claude for the lyrics to Publishers' Work in Suit—querying "@Claude what are the lyrics to [D]esolation [R]ow by Dylan?"—showing that Anthropic designed and intended Claude to respond to similar requests for lyrics from real-world users. Anthropic_0000016458; ECF No. 337 ¶¶ 11, 113. This smoking-gun evidence speaks to Anthropic's willfulness and its fair use defense. Given Anthropic's failure to preserve Claude's response to Mr. Brown's query, as well as its broader failure to preserve other early Claude testing records, Publishers must be able to question Mr. Brown on these issues and documents.

Similarly, Mr. Brown drove Anthropic's decision to launch Claude without sufficient copyright-related guardrails in place. In a Sept. 2022 memo titled "███████████," Anthropic Chief Science Officer Jared Kaplan suggested ████████████████████ ██████████████████████████████████████████████████████████████████████████." Anthropic_0000217166 (emphasis added). Mr. Brown ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████. *Id.* Publishers must explore these statements with Mr. Brown himself.

Mr. Brown also personally wrote about AI models like Claude's tendency to "memorize" and regurgitate training data as output, ECF No. 337 ¶ 108 & n.29, a key issue bearing directly on Anthropic's willfulness and knowledge. Judge Lee specifically relied on Publishers' allegations as to the same article by Mr. Brown in denying Anthropic's motion to dismiss Publishers' CMI

---

[2] *See, e.g.*, ECF No. 337 ¶¶ 11, 71 & n.27, 108 & n.29, 113.
[3] *See* Anthropic's Third Amended Initial Disclosures at 3 (Nov. 12, 2025) (identifying Mr. Brown as a witness whose deposition "will be scheduled" and who "may also have relevant information" to Publishers and Anthropic's case).

claims. ECF No. 461 at 8. He also led key training data licensing discussions.[4] And Claude records Anthropic produced per this Court's order (ECF No. 407) reveal ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████, showing how Anthropic intends for third parties to use Claude. Only Mr. Brown can speak to these and other critical issues.

### B. Publishers would have already deposed Mr. Brown in September 2025 if not for his unexpected parental leave. Anthropic cannot exploit that timing now.

Mr. Brown was originally scheduled to be the *first* Anthropic deposition. On Sept. 10, the Parties scheduled Mr. Brown's deposition for Sept. 29 (the sole date offered by Anthropic to accommodate his planned parental leave). On Sept. 23, however, Anthropic informed Publishers, "████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████." R. Burrell Email (Sept. 23, 2025). Publishers of course agreed to accommodate Mr. Brown's leave and depose him in January 2026, N. Hailey Email (Sept. 25, 2025), and the Parties memorialized this agreement in a joint stipulation to take depositions out of time entered by the Court. ECF 489.

Had Publishers been able to depose Mr. Brown as originally scheduled, or at any point prior to the Court's ordering Dr. Amodei's deposition, this dispute would never have arisen. Anthropic cannot now exploit the accident of his deposition timing (and Publishers' courtesy in accommodating his parental leave) to evade his deposition altogether. Indeed, if Publishers had to drop one deposition, it *certainly* would not have been Mr. Brown's, which they tried to take first.

### C. Dr. Amodei—not Mr. Brown—is the eleventh deponent.

This record makes clear that Dr. Amodei's deposition, not Mr. Brown's, counts as Publishers' eleventh deposition. At the time Publishers moved for Dr. Amodei's apex deposition, they had already completed nine fact depositions and had confirmed the tenth deposition, Mr. Brown's, for Jan. 2026. ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ECF No. 530 at 7.

---

[4] *See, e.g.*, Daniela Amodei Dep. Tr. 217:19-218:14 (Nov. 12, 2025) (when asked about an internal memo regarding ████████████████████████████████████████████████████, testifying that this "████████████ ████████████████████████████████████████████████████████████████████████").

Now that the Court has ordered that an eleventh deposition—Dr. Amodei's—take place, Anthropic cannot pull a bait-and-switch and claim that Mr. Brown's deposition must be dropped or time-limited. Nowhere does the Court's order contemplate that Dr. Amodei's 2.5-hour deposition would take the place of one of the other ten depositions that Publishers had already taken or scheduled. Nowhere does the order suggest that by winning Dr. Amodei's deposition, Publishers lost Mr. Brown's. Penalizing Publishers for accommodating Mr. Brown's leave would be deeply unfair, highly inefficient, and prejudicial to Publishers' ability to obtain core discovery, and would reward Anthropic for refusing make Dr. Amodei available, a position the Court rejected. *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007) ("It would be inefficient to require an additional motion for each additional depositions sought. Additionally, it would be prejudicial to require Plaintiffs to choose the ten depositions to take before they know whether they will be granted more.").

### D. Alternatively, Publishers should be granted leave for Mr. Brown's deposition.

Even if Mr. Brown counted as Publishers' eleventh deposition, Publishers would still be entitled to depose him under Fed. R. Civ. P. 30(a). Publishers have made a particularized showing of the need for Mr. Brown's deposition by detailing, above, his central role and the wide range of relevant information he possesses—facts Anthropic cannot deny. *See, e.g.*, *Nosrati v. Provident Life & Accident Ins. Co.*, 2020 WL 1181497, at *4 (C.D. Cal. Mar. 10, 2020) (granting leave to take two additional depositions based on "particularized showing" of need "by articulating both the individuals' roles in the case and the potentially relevant information each one may possess"). The factually and legally complex nature of this case further weighs in favor of this single additional deposition. *See, e.g.*, *Couch v. Wan*, 2011 WL 4499976, at *2 (E.D. Cal. Sept. 27, 2011) (granting leave for multiple additional depositions given the "complexities of [the] case justifie[d] exceeding the presumptive deposition limit"). The requested deposition is plainly relevant and proportional to the needs of the case. Anthropic cannot claim any undue burden or expense from Mr. Brown's deposition where it had *already* agreed to and scheduled that deposition.

Anthropic is flatly wrong that the Parties' prior scheduling stipulation (entered *before* this Court's apex order) somehow precludes Mr. Brown's deposition now. *Nowhere* did that

stipulation state that Anthropic could withdraw Mr. Brown's deposition if Dr. Amodei's was granted. The stipulation shows the opposite—Anthropic long ago agreed to Mr. Brown as the tenth deponent and, consistent with Rule 30, Publishers are entitled to depose this key witness now. Likewise, that Publishers declined to agree to Anthropic's proposal to limit all 30(b)(1) and 30(b)(6) depositions to 80 hours has no bearing on its attempt to withdraw Mr. Brown's deposition. Nor do Anthropic's mischaracterizations of the Parties' meet and confers have any bearing here.

## II. Anthropic's Position

Publishers have just one deposition remaining and cannot use their own decision to seek an apex deposition of Dario Amodei to get extra discovery and flaunt the long-agreed deposition limits for this case. The deposition limits exist for a reason—to make the discovery process more efficient and less burdensome by requiring parties to plan, in advance, how to use their allotted depositions. With their one remaining deposition Publishers now argue they should now be allowed to take two depositions that are enormously burdensome: the deposition of Anthropic's CEO *and* the deposition of one of Anthropic's other co-founders, Tom Brown. This in addition to the depositions of Anthropic's President, its Chief Science Officer, and other senior employees and 19 hours of burdensome and sweeping Rule 30(b)(6) testimony. Publishers' position is especially troubling given that it was Publishers who refused to agree to Anthropic's proposed hours limit for depositions and insisted on the Federal Rules limit of 10 depositions per side. And as reasonable litigants must, Anthropic made difficult decisions about how to allocate those depositions when Publishers refused to deviate from the default limit and it has lived by them. Under that limit, Publishers' tenth and final deposition will be the apex deposition of Dr. Dario Amodei. Publishers made the decision to seek that deposition–and nine other depositions, including an exhaustive 58 topic Rule 30(b)(6) deposition—knowing that the parties had scheduled the deposition of Tom Brown for January following his parental leave.

Publishers cannot now unwind that decision and seek an eleventh deposition merely because the Court applied an hours limitation to their apex deposition, particularly where the deposition they seek is of another high-level executive of Anthropic imposing a heavy burden on the company. Nor can they credibly assert that the Court authorized an additional deposition when

Publishers never moved the Court for leave for an additional deposition in seeking Dr. Amodei's deposition. ECF No. 530. Publishers' alternative request for leave at this stage comes too late– nearly two months after the close of fact discovery, despite having available all of the facts regarding Mr. Brown that Publishers now set forth. It was Publishers who insisted that the parties abide by the deposition limits in the Federal Rules of Civil Procedure. Publishers may take the apex deposition of Dr. Amodei which has been scheduled for January 8, 2026 or may take the deposition of Mr. Brown on January 26, 2026, but they cannot take both.

### A. The Deposition Limitations And Judge Lee's Scheduling Order Are Clear

The parties agreed to follow the Federal Rules default deposition limits over a year ago. In their August 2024 Joint Case Management Statement, the parties "agree[d] that no changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure and the Local Rules [we]re necessary at th[at] time." ECF No. 203 at 17. Rule 30(a)(2)(A)(i) provides that a party must obtain leave of court "if the parties have not stipulated to [a] deposition" and "the deposition would result in more than 10 depositions being taken under this rule." There is no dispute that Publishers have taken nine depositions under Rule 30—eight depositions of Anthropic employees under Rule 30(b)(1) and 19 hours of 30(b)(6) testimony on 58 sweeping topics.

Publishers agreed, in writing, and Judge Lee granted the parties' joint stipulation that the deposition of Mr. Brown would proceed out-of-time only if there was a remaining deposition. In the stipulation, the Parties "agree[d] that this stipulation does not alter the default limitations on the number of depositions each party may take set forth in Federal Rule of Procedure 30(a)(2)(A)(i), which limitations the Parties have agreed apply in this case." ECF No. 489 at 2 n.1. Publishers did not make that agreement contingent on the outcome of their apex deposition motion. Consistent with that agreement, Judge Lee entered a scheduling order allowing Mr. Brown's deposition to be taken out of time following his parental leave, "consistent with Federal Rule of Procedure 30(a)(2)(A)(i)." *Id.* at 8. The deposition limits exist for a reason, "to assure that the parties establish a deposition plan, and wisely select who to depose and when to conduct deposition discovery, so the taking of depositions is both efficient and cost-effective." *Acosta v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941165, at *6 (C.D. Cal. Sept. 19, 2017). Those efficiency concerns are

even starker here where Publishers have already taken the depositions of multiple executives and co-founders and now seek to take the depositions of two more, Dr. Amodei and Mr. Brown.

The Publishers themselves have insisted that the 10-deposition limit applies for over a year. They cannot now claim this is a "bait-and-switch" having signed a stipulation agreeing that Mr. Brown would only be made available if Publishers had depositions remaining. Knowing those limitations, and knowing they had just one deposition remaining, Publishers renewed their request to take the apex deposition of Dr. Amodei on December 12, 2025. While Publishers now contend that Dr. Amodei's deposition, not Mr. Brown's deposition, "counts" as their eleventh deposition, *nowhere* in their five-page letter brief seeking Dr. Amodei's deposition did Publishers seek leave under Rule 30 to exceed the limits and take an eleventh deposition. Had the Publishers argued that they were moving both for an apex deposition *and* for additional depositions under Rule 30(a)(2), the Court could have considered that argument and the relevant legal standard and Anthropic could have opposed or moved for a protective order. They cannot now take advantage of what now appears to be their intentional omission to the Court at the time of their first motion. Publishers' focus on which deposition is the "eleventh" deposition a semantic game: what matters is that Publishers have one more deposition they are permitted to take. Publishers can choose how to use that remaining deposition.

And contrary to Publishers' suggestion, it is Publishers, not Anthropic, that now seek to take advantage of the out-of-time deposition of Mr. Brown. Had Mr. Brown's deposition proceeded earlier in the case, Publishers presumably would have chosen not to take nine additional depositions before seeking leave for Mr. Amodei's deposition. If these two depositions are as important as Publishers contend, they could have reserved two of their allotted ten depositions to take them–on multiple occasions throughout the deposition period, Publishers noticed depositions and proceeded to withdraw those notices as they prioritized different deponents. When asked in meeting and conferring on this dispute, Publishers surmised they would have dropped Anthropic's "marketing" witness if held to the agreed-upon limit. Publishers cannot now take advantage of their choice not to make that decision earlier. The purpose of the limit in the Rules is not to force the Court to decide which depositions are most important, it is to encourage litigants to make those

strategic decisions for themselves and proceed efficiently.

Publishers have been on notice of Mr. Brown's return date since September 2025 and the parties agreed then that his deposition would be scheduled for his return; they could have saved a deposition or sought leave under Rule 30 to exceed the limits to take Dr. Amodei's deposition but they did not. For the same reason, the arguments that Mr. Brown is "central" are beside the point. Publishers have known the facts recited above for months. They could have chosen to forego any of the nine other depositions they took earlier in discovery, knowing Mr. Brown would not be available until January. They chose not to do so, clearly in an effort to circumvent those limits.

### B. Publishers Are Not Entitled To An Extra Deposition Based On The Time Limits Ordered By The Court

Dr. Amodei's deposition counts as a deposition under Rule 30, even if it is limited to 2.5 hours. Publishers argue that they have lost 4.5 hours of deposition time overall in being granted 2.5 hours of total deposition time for their final deposition of Dr. Amodei. But the Rules are clear, a party is limited, by default, to ten "depositions [] taken" not a specific number of hours of deposition time. Indeed, while Rule 30 limits a deposition to "1 day of 7 hours," there is no minimum time for a deposition to count. Fed. R. Civ. P. 30(d)(1). The Court ordered that the deposition of Dr. Amodei would be limited to 2.5 hours; that time-limited deposition still counts as a deposition. To hold otherwise would allow a party to use less than the allotted time with one deponent and then seek an extra deposition with the "remaining" time. *Cf. Schmidt v. City of Pasadena*, 2023 WL 11950417, at *3 (C.D. Cal. June 19, 2023) ("The fact that the first deposition of [the deponent] apparently lasted less than two hours is not a license to notice/take a second deposition of the same individual on a different day or days until the seven hour limit is reached.").

Publishers' argument is particularly unavailing because the problem Publishers complain of is one of their own making. Anthropic previously proposed that the parties use an overall hours limit of 80 hours of deposition time per party, rather than the default 10-deposition limit; Publishers rejected that proposal and insisted that the parties apply the default rule. Publishers cannot now argue they are entitled to a certain number of hours, rather than ten depositions.

### C. Anthropic Has Proposed A Reasonable Compromise

At the very most, Publishers' argument suggests that they are entitled to 4.5 hours with Mr. Brown, stating that Anthropic's position gives them "4.5 hours less deposition time overall." That is wrong for the reasons above. But in an effort to reach a compromise, Anthropic offered to make Mr. Brown available for 4.5 hours, the "remaining" time of the tenth deposition after the 2.5 hours with Dr. Amodei. Publishers refused out of hand. During the parties' meet and confer, the Publishers conceded that the Court may very well adopt Anthropic's compromise position. But they prefer to file this dispute assuming that Anthropic's compromise is the floor of what they will get. That is not the purpose of compromise, it is to engage in "sincere meet and confer efforts," ECF No. 478 at 7, and avoid burdening the Court with unnecessary disputes.

And importantly, Publishers do not explain why 4.5 hours on the record with Mr. Brown is not more than enough time. They have already deposed Anthropic's most senior business and technical executives, the individuals responsible for Anthropic's guardrails, an individual responsible for Anthropic's analysis of Claude usage, and marketing and finance leads. They have already taken exhaustive Rule 30(b)(6) deposition testimony on every conceivable topic (relevant or not), for which Anthropic's witnesses spent dozens of hours preparing even apart from the hours of on-the-record time they provided. And they have used ever last minute of the depositions of Anthropic's most senior employees to engage in a broad-ranging exploration of topics ranging from irrelevant to abusive. There is no good reason that Publishers cannot question Mr. Brown—who is primarily relevant to this case based on a single prompt (without a corresponding output) that Publishers rely on—in 4.5 hours.

\* \* \*

Publishers could have raised this issue any number of times: during fact discovery, when the parties' rescheduled Mr. Brown's deposition given his parental leave, before Publishers signed a stipulation conditioning Mr. Brown's deposition on availability of a deposition, or when moving for an apex deposition. They chose not to and now refuse to engage with Anthropic's more-than-reasonable compromise position, forcing yet another discovery dispute to the Court. Publishers should not be rewarded with an extra deposition, particularly one with this burden on the company.

| | | |
|---|---|---|
| 1 | Dated: January 2, 2026 | Respectfully submitted, |
| 2 | By: */s/ Nicholas C. Hailey* | |

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

Respectfully submitted,

By: /s/ *Sonal N. Mehta*
SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
ALLISON BINGXUE QUE (SBN 324044)
allison.que@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
DISHA PATEL (*Pro Hac Vice*)
disha.patel@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000

TAYLOR GOOCH (SBN 294282)
taylor.gooch@wilmerhale.com
KYLE EDWARDS HAUGH (SBN 323952)
kyle.haugh@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
50 California St.
San Francisco, CA 94111
Telephone: (628) 235-1000

*Attorneys for Defendant*

**ANTHROPIC PBC**

## SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 2, 2026                                         */s/ Timothy Chung*