**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PUBLISHERS' OPPOSITION TO ANTHROPIC'S MOTION FOR RELIEF FROM MAGISTRATE JUDGE VAN KEULEN'S ORDERS, ECF NO. 564** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

1  Pursuant to the Court's Order, ECF No. 574, Publishers hereby oppose Anthropic's Motion
2  for Relief from Magistrate Judge van Keulen's Orders, ECF No. 564 ("Mot."). There is no basis
3  whatsoever for overturning the challenged portions of Magistrate Judge van Keulen's Oct. 12 and
4  Dec. 18 Orders, ECF Nos. 478 and 545. Anthropic fails to meet the high standard of demonstrating
5  that these rulings are clearly erroneous or contrary to law. Indeed, the "two fundamental legal
6  errors" on which Anthropic's Motion is premised are entirely illusory.

Anthropic is not entitled to the invasive discovery it demands regarding the specific Claude usernames and other identifying information for the Claude accounts Publishers and their agents (including counsel) used for their legal investigation. Publishers have already produced extensive discovery regarding their investigation of Anthropic's infringement, such that Anthropic has all the information it needs to distinguish between Publisher and third-party Claude prompts and output. On top of that discovery, disclosure of Publishers' Claude account usernames and other identifying information is unnecessary to Anthropic's claimed ends. Instead, disclosure of this information would empower Anthropic to reconstruct Publishers' broader legal investigation, even as to works not subject to suit and Claude prompts and output on which Publishers have not relied or disclosed. Anthropic has no right to "pry into [Publishers'] minds and free-ride off" the details of their legal investigation in this manner. *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021).

## ARGUMENT

When a party objects to a magistrate judge's nondispositive order, the magistrate judge's order "must be deferred to unless it is 'clearly erroneous or contrary to law.'" *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (quoting Fed. R. Civ. P. 72(a)). Under that standard, "[t]he reviewing court may not simply substitute its judgment for that of the deciding court." *Id.* Rather, the "magistrate judge's decision in such nondispositive matters is entitled to great deference." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).

Here, Anthropic fails to demonstrate that the challenged portions of Magistrate Judge van Keulen's Orders are clearly erroneous or contrary to law. Anthropic's Motion must be denied.

**I.    Anthropic can already distinguish between third-party and Publisher prompts.**

Anthropic's Motion proceeds from the false premise that Anthropic "cannot distinguish

true third-party prompts from Publishers' own . . . prompts" without unmasking Publishers' Claude account usernames. Mot. at 2. That is simply wrong. Publishers have already produced *every single* Claude prompt-output record from Publishers and their agents' pre-suit and post-suit investigations on which they may affirmatively rely for their infringement claims—totaling approximately 5,000 records. In other words, based on this production, Anthropic *already knows* which prompt-output records correspond to Publishers and their agents, such that it can test Publishers' claims and dispute secondary liability. Anthropic's contention that it is "deprive[d]" of "a critical defense" is a mirage. Anthropic has no need (compelling or otherwise) for Publishers' and their agents' Claude usernames and account information to differentiate between Publisher and third-party records.[1]

Magistrate Judge van Keulen has already addressed Anthropic's demands for additional discovery into Publishers' legal investigation three times. After first denying Anthropic's motion to compel this discovery without prejudice, ECF No. 377 at 2–4, the Magistrate Judge issued two orders that, together, required Publishers to produce an enormous amount of additional discovery on top of the nearly 5,000 records already produced, ECF Nos. 478 at 4–6, 545 at 2–9. Publishers have now also produced (1) every Claude record from Publishers' investigators' and client-witnesses' post-suit investigation as part of this case, regardless of whether Publishers intend to rely on those records, totaling about 1,300 records; and (2) detailed interrogatory responses with granular numbers as to the total Publisher prompts entered and a detailed breakdown of the types of corresponding Claude outputs received as part of Publishers' pre-suit investigation, post-suit investigation, and the 5-million-record Claude sample in this case. ECF No. 545 at 3–5, 7–9.

Against this extensive discovery record, Anthropic has no need for additional discovery into Publishers' Claude account information, whether via interrogatories or 30(b)(6) testimony.

## II. The additional discovery Anthropic demands would violate work product protection.

Compelling disclosure of usernames and identifying information for Claude accounts Publishers and their agents (including counsel) used to investigate their legal claims would violate work product protection and enable Anthropic to reconstruct Publishers' entire legal investigation.

---

[1] Publishers' expert Mr. Dennis made clear that known Publisher prompt-output records were excluded from the records he reviewed and addressed in his report. *See* Mot. Ex. B ¶ 56. Anthropic's expert Dr. Bray can determine which records belong to Publishers based on the records produced themselves, without need for Claude usernames.

Claude prompt-output records Publishers and their agents collected as part of their investigation are plainly attorney opinion work product: they are based on "queries crafted by counsel and contain counsel's mental impressions and opinions about how to interrogate [the AI model], in an effort to vindicate Plaintiffs' copyrights against the alleged infringements." *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003, at *3 (N.D. Cal. Aug. 8, 2024) (citing *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014)); *see also, e.g.*, ECF No. 328 at 5-7 (citing additional cases).

While Magistrate Judge van Keulen found a limited and narrow waiver of work product protections with respect to certain specified categories of Publishers' prompts and output, *see, e.g.*, ECF No. 545, and ordered certain discovery into Publishers' legal investigation to address Anthropic's purported needs (as described above), the Magistrate Judge also recognized the importance of not "crossing the line into discovery of opinion work product," ECF No. 478 at 6.

To that end, the Magistrate Judge rightly denied Anthropic's demands for Publishers' Claude account information because "revealing Publishers' usernames and emails would **give Anthropic the key it needs to unlock the door to the prompts and outputs themselves**." *Id.* (emphasis added). This information would enable Anthropic to reverse-engineer Publishers' and their agents' *entire legal investigation*—including as to prompts and output never disclosed or relied upon in this case, works not even at issue here, and prompts and output from investigators and counsel related to entirely different cases or potential actions. That would impermissibly undermine the "fairness of the adversarial process." *In re Grand Jury*, 23 F.4th at 1093. This danger is not hypothetical: Anthropic admits it has already used identifying information for one of Publishers' agents to identify unproduced prompts and outputs from Publishers' investigation. Hr'g Tr. 31:16–32:4, 45:21–46:10 (Dec. 17, 2025). Anthropic's past behavior, plus its stated intention that it "may be able to determine some of Publishers' Account Information for some of Publishers' prompts based on" discovery ordered by the Dec. 18 Order, Mot. at 2, disproves its claim now that it will not "use emails or usernames to reverse engineer Publishers' investigation."

A ruling that such account information is not protected would deprive rightsholders and their counsel of the ability to conduct legal investigations on any AI model, lest they become obligated to serve the entirety of their investigations to current or would-be infringers. Disclosing

this information would also violate Publishers' and their agents' privacy interests with respect to personal Claude prompts and output entirely unrelated to this case.

### III. Neither of Anthropic's two claimed "legal errors" warrant overturning the Orders.

#### A. Publishers' prompt-output records can be the basis for secondary liability.

There is no reason to overturn Magistrate Judge van Keulen's Orders based on Anthropic's argument that Publishers' prompt-output records cannot support secondary liability. That legal question has no bearing on this Motion: the challenged portions of the Magistrate Judge's Orders did not turn on a ruling that Publishers' records could form the basis for secondary liability. At the Dec. 17 hearing, the Magistrate Judge explicitly stated, "***I'm not going to decide the secondary liability, the legal point***," Hr'g Tr. 38:16–17 (Dec. 17, 2025) (emphasis added), before denying Anthropic's renewed request for Publisher usernames. ECF No. 545 at 6. Likewise, the Oct. 12 Order stated only that the Magistrate Judge was "not persuaded" by Anthropic's argument that it "need[ed] to identify the specific prompts to defend against secondary liability," ECF No. 478 at 6—not that Publishers' prompt-output records could support secondary liability as a matter of law. The Court should decline to resolve this legal question prematurely on an abbreviated record.

In any event, Anthropic is wrong on the law: distributions, displays, or reproductions to rightsholders and their investigators ***can*** support secondary copyright infringement claims. *See, e.g.*, *Microsoft Corp. v. Rivera*, 2019 WL 1641349, at *3 (C.D. Cal. Apr. 16, 2019) (ruling plaintiff "sufficiently pleaded a meritorious copyright infringement claim" and "meritorious claim for contributory copyright infringement" where infringing copies were "sold and delivered to [plaintiff's] investigator"); *Microsoft Corp. v. EEE Bus. Inc.*, 555 F. Supp. 2d 1051, 1058–60 (N.D. Cal. 2008) (holding defendant liable for direct and contributory infringement based on sales to plaintiffs' investigators); *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149–50 & n.16 (S.D.N.Y. 2009) (holding plaintiffs established direct infringement for secondary liability based on evidence of plaintiffs' investigators' downloads and rejecting defendants' argument that investigator downloads "are not proof of unauthorized copying"); *see also Universal City Studios Prods. LLLP v. TickBox TV*, 2018 WL 1568698, at *9 (C.D. Cal. Jan. 30, 2018). In light of this authority, much of which Publishers have cited previously, *see, e.g.*, ECF No. 503 at 8, Anthropic's

suggestion that the Magistrate Judge relied only on *Arista* (or that Publishers' counsel's "oral citation" to *Arista* was an "invitation to error") is baseless. Anthropic's mistaken theory rests on a cramped reading of a case that did not address investigator-generated evidence at all, merely referencing secondary infringement in a footnote as generically requiring "direct infringement by a third party." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001).

### B.     *Tremblay* did not order production of usernames or identifying information.

Nor was Magistrate Judge van Keulen's reading of *Tremblay* "contrary to law." Anthropic inaccurately argues that *Tremblay* "held that plaintiffs waive work product protection for the username information associated with prompt-output pairs on which they rely." Mot. at 3. That is wrong: *Tremblay* never ordered production of plaintiffs' usernames specifically. While the *Tremblay* order discussed "account settings," it did not define that term to include usernames, and the underlying record indicates that "account settings" refers not to usernames or other identifying account information but to "the 'custom instructions' feature [that] allows users to 'add preferences or requirements' for 'ChatGPT to consider when generating its responses.'" *Tremblay*, ECF No. 154 at 3; *see also Tremblay*, ECF No. 161 at 5 (OpenAI brief seeking discovery as to plaintiff's use of "parameters for 'ChatGPT to consider when generating its responses,'" not usernames).

Anthropic's Motion misleadingly strings together isolated snippets from across different *Tremblay* filings to argue that "account settings" means something it does not, including quoting the underlying joint discovery brief in *Tremblay* to claim that account settings includes the "name, contact information, and account credentials," when that language comes from an exhibit never quoted in the brief itself. *See Tremblay*, ECF No. 153 at 11. Anthropic's claim that "account settings" was "made clear" in the *Tremblay* order is also an about-face from its counsel's concession at the Oct. 10 hearing that this term was ***not*** defined in that order.[2] Anthropic fails to identify any other case ordering such disclosure of usernames, particularly at this late stage.

### CONCLUSION

For the foregoing reasons, Anthropic's Motion should be denied in full.

---

[2] *See* Hr'g Tr. 113:7–114:3 (Oct. 10, 2025) ("THE COURT: Right. As I understood the argument in response was account settings isn't defined in *Tremblay*. MS. MEHTA: That is true. . . .").

Dated: February 4, 2026

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

Respectfully submitted,

*/s/ Nicholas C. Hailey*

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*