# Exhibit 8



Planet Depos
We Make It Happen™

HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY

# Transcript of Deep Ganguli, Ph.D., Corporate Designee

**Date:** November 6, 2025
**Case:** Concord Music Group -v- Anthropic

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
**www.planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CONCORD MUSIC GROUP, INC., ET AL.,
Plaintiffs,
v.
ANTHROPIC PBC,
Defendant.

Case Number 5:24-cv-03811-EKL SVK

HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY
VIDEOCONFERENCED and VIDEO-RECORDED
30(b)(6) DEPOSITION of
Anthropic PBC, by and through its Designated
Representative,
DEEP GANGULI, Ph.D.
San Francisco, California 94111
Thursday, November 6, 2025

Reported Stenographically by:
MARY J. GOFF
CSR No. 13427
WA CSR No. 21030779
Job No. 60706930b6
PAGES 1-167

HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY

VIDEOCONFERENCED and VIDEO-RECORDED DEPOSITION of DEEP GANGULI, Ph.D., Volume I, taken on behalf of Plaintiff Publishers, Oppenheim + Zebrak, LLP, at WilmerHale, 50 California Street, Suite 3600, San Francisco, California 94111, beginning at 8:04 a.m. and ending at 12:00 p.m., on Friday, November 6, 2025, before MARY J. GOFF, California Certified Shorthand Reporter No. 13427 and WA CSR No. 21030779.

APPEARANCES:

For Plaintiff Publishers
Oppenheim + Zebrak, LLP
BY: NICHOLAS C. HAILEY
MICHELLE GOMEZ-REICHMAN
Attorneys at Law
4530 Wisconsin Avenue, NW
5th Floor
Washington, DC 20016
202-480-2999
nick@oandzlaw.com
michelle@oandzlaw.com

For Defendant Anthropic PBC
WilmerHale
BY: TAYLOR GOOCH
Attorney at Law
50 California Street
Suite 3600
San Francisco, California 94111
taylor.gooch@wilmerhale.com
628-235-1026

ALSO PRESENT: Ian Chen, In-house counsel Anthropic
Becky Maz, Esquire, WilmerHale (remote DC)

Videographer: Philip Astor

INDEX

| WITNESS | | EXAMINATION |
|---|---|---|
| DEEP GANGULI, Ph.D. | | |
| Volume I | | |
| | ATTORNEY HAILEY | 7, 158 |
| | ATTORNEY GOOCH | 157 |

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Plaintiffs' Notice of Deposition to Defendant Pursuant to Federal Rule of Civil Procedure 30(b)(6) | 9 |
| Exhibit 2 | Defendant Anthropic PBC's Amended and Supplemental Responses and Objections to Plaintiffs' Third Set of Interrogatories (No. 18) | 15 |
| Exhibit 3 | Prompt Anthropic_0000003118-274 | 80 |
| Exhibit 4 | CLAUDE Observability Dashboard, Alex Tamkin, 1-23-24 Anthropic_000052400-24011 | 117 |
| Exhibit 5 | Clio: Privacy-Preserving Insights into Real-World AI Use Anthropic_0000012987-3032 | 125 |
| Exhibit 6 | Spreadsheet Anthropic_0000429489 | 132 |

# Pages 69-72

69

**A I have seen evidence of people using CLAUDE to understand song lyrics; make their de novo song lyrics; try to interpret songs; try to, you know, ask about songs and artists more generally.**
**It's very -- it's not the most -- it's not the typical usage of CLAUDE that I have seen in any Clio analysis of usage data.**
**The most common uses I see again are sort of software engineering, help with writing, typically documents related to business, and learning and education and research.**
Q What is your understanding of the specific ways in which CLAUDE users use CLAUDE relating to songs and song lyrics?
ATTORNEY GOOCH: Objection, asked and answered.
**A Yeah, as I -- I sort of liked my previous answer. I can stick to that, if you would like me to repeat that.**
Q (BY ATTORNEY HAILEY) Well, this -- yeah, this question is a little bit different.
So why don't you tell me your understanding of all the ways in which CLAUDE users use CLAUDE relating to songs and song lyrics.
ATTORNEY GOOCH: Objection, asked and

70

answered.
**A Yeah, I still think that's the same question, so I'm happy to repeat my answer.**
**The clusters I see that are, again, rare and not typical are people using CLAUDE to analyze and interpret song lyrics, make new song lyrics, ask questions about song lyrics, so on and so forth.**
Q (BY ATTORNEY HAILEY) And when you say "rare or not typical," what data are you referring to?
**A So in our original -- so I'm referring to any of the data we have analyzed in any of our published papers.**
**So whether that's the very first Clio paper or any of our economic index papers, the thing that everyone is using CLAUDE for -- the most typical use case -- sorry. I shouldn't have said "everyone."**
**The most typical use case is using CLAUDE to write computer code.**
**When we look at those -- the outputs of Clio, there's -- you know, we can see, you know, what the most typical uses are.**
**And songs have never really -- up until this case I have never noticed that in the data at**

71

**all.**
Q You have never specifically looked for that in the data, correct?
**A Again Clio -- sorry.**
ATTORNEY GOOCH: I was going to say "misstates prior testimony."
**A -- Clio is not designed to know what you're looking for a priori and then go find evidence of that thing.**
**Clio is designed to do a bottom-up analysis of a large swath of conversation data and surface what the most common uses are.**
Q (BY ATTORNEY HAILEY) Mr. Ganguli, do you agree that third-party CLAUDE users have used CLAUDE to request copies of lyrics to specific existing songs?
**A I know what I saw in the Clio clusters, which I have sort of stated in advance.**
**But I have never -- again, the way Clio is designed -- there's two things I can say here. I don't know what the actual conversations are explicitly. I don't have access to the prompts and the full completions.**
**And I also know that there are guardrails in place to prevent the recitation of copyright**

72

**materials.**
Q So do not know one way or the other whether CLAUDE users have used CLAUDE to request copies of lyrics to existing songs?
ATTORNEY GOOCH: Objection, form.
**A Again, I'll -- again, I know what the outputs of Clio look like at a high level.**
**However, Clio is -- because it's privacy preserving, I cannot actually look at any individual conversations. All I can look at is CLAUDE's summaries of those individual conversations at a highish level, at a granular level in order to protect people's privacy. So I know that.**
**And I also know that there are guardrails in place to prevent the recitation of copyright materials. So putting that all together, right, I only know what CLAUDE tells me about that, and I know about -- that we have guardrails in place to prevent CLAUDE from regurgitating material.**
Q (BY ATTORNEY HAILEY) How many third-party CLAUDE users have requested copies of existing song lyrics from CLAUDE? Do you know?
ATTORNEY GOOCH: Objection, scope.
**A What I'm mulling over is, like, could -- could I know the answer to that question?**

# Pages 93-100



93

94

95

**The assistant is CLAUDE, created**

96

97

98

99

And I know that in our Clio clusters, we see that -- that I have looked at, there are people sort of using CLAUDE to analyze song lyrics, interpret song lyrics, and generate new song lyrics.

But again, with the Clio clusters, which is where I sort of studied this information, I don't actually have access to the full prompts and

100

completions, so I can't know the details of what's happening other than what CLAUDE provides as a summary.

Q But you have seen instances in which third-party CLAUDE users have used CLAUDE to request translations of existing song lyrics?

A I know that people use CLAUDE for translation written -- like, generally. I know that people -- it's not typical for people to use CLAUDE to discuss anything about song lyrics. I think that that's -- that's rare and not a typical usage of CLAUDE.

And those are the two things I know. And