**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case Number: 5:24-cv-03811-EKL-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF DR. RUSS B. ALTMAN**<br><br>**REDACTED**<br><br>Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen<br>Hearing Date: July 15, 2026, 10:00 am<br>Courtroom: 7 |

**CERTIFICATION OF COMPLIANCE WITH CIVIL STANDING ORDER SEC. VIII.A**

Pursuant to Sec. VIII.A of the Court's Civil Standing Order, the undersigned counsel certifies that Publishers' counsel met and conferred with Anthropic's counsel by videoconference on March 24, 2026 and by email to discuss the bases for this Motion in an effort to resolve or narrow disputed issues where possible to reduce motion practice.

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ......................................................................... 1

STATEMENT OF RELIEF ......................................................................................... 1

INTRODUCTION .................................................................................................. 1

LEGAL STANDARD ............................................................................................... 2

ARGUMENT ........................................................................................................ 3

    I.        Dr. Altman's opinions regarding the ███████████████ are irrelevant... 3

    A.     The ██████████████ Dr. Altman identifies have no connection to Anthropic's use of Publishers' works. .................................................................. 3

    B.     The ████████████ Dr. Altman identifies have no connection to the objectives of copyright law underlying fair use. ...................................... 4

    II.      Dr. Altman lacks the necessary expertise to opine on any ███████ beyond medical and biological research or higher education. ...................................... 5

    III.    Dr. Altman's method of relying solely on █████████████████ ███████████ to identify Claude's benefits is unreliable. .................................... 8

CONCLUSION ...................................................................................................... 10

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 15, 2026, at 10:00 am (*see* ECF No. 587), or as soon thereafter as this matter may be heard, before the Honorable Eumi K. Lee, District Judge, U.S. District Court for the Northern District of California, in Courtroom 7 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiffs Concord Music Group, Inc., Capitol CMG, Inc., Universal Music Corp., Songs of Universal, Inc., Universal Music - MGB NA LLC, Polygram Publishing, Inc., Universal Music - Z Tunes LLC, and ABKCO Music, Inc. (collectively, "Publishers") will and hereby do respectfully move this Court for an order excluding the opinions of Defendant Anthropic PBC's ("Anthropic") expert witness, Dr. Russ B. Altman.

## STATEMENT OF RELIEF

Publishers respectfully request the Court exclude Dr. Altman's opinions in their entirety.

## INTRODUCTION

This case is about Anthropic's copying of Publishers' copyrighted song lyrics to train Anthropic's AI models ("Claude") to output content that reproduces or competes in the market with Publishers' lyrics, all without permission or payment. This case is not a referendum on AI technology. It is not about whether AI is good or bad, on net, for society. Indeed, Publishers embrace the promise of lawfully created AI and have licensed their works for use by multiple AI companies.

In an attempt to distract the Court and the jury from what this case is actually about, Anthropic seeks to introduce expert opinion testimony from Dr. Russ B. Altman, the Kenneth Fong Professor of Bioengineering, Genetics, Medicine, Biomedical Data Science, and (by courtesy) Computer Science at Stanford University. Decl. of Corey Miller in Supp. of Pls.' Mot. to Exclude the Opinions of Russ Altman ("Miller Decl."), Ex. A ¶ 7, Expert Report of Russ B. Altman (Dec. 19, 2025) ("Rpt."). Dr. Altman seeks to testify ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████ Rpt. ¶ 19. None of these █████████████ have anything to do with this case: there is no evidence in the record establishing any connection at all between Anthropic's use of

Publishers' song lyrics and ███████████████████████████████████. Nor do any of █████████ have any connection to copyright law's goal of encouraging the creative production of new expression. Dr. Altman's opinions are irrelevant and should be excluded in their entirety.

Many of Dr. Altman's opinions should also be excluded because he lacks the necessary expertise to offer them. While Dr. Altman is undoubtedly an expert on biomedical science, and arguably has expertise regarding higher education due to his experience as a university professor, his opinions wander far beyond the use of Claude within those narrow realms █████████ ██████████████████████████████████████████ ██████████████████████████.

Finally, many of Dr. Altman's opinions should also be excluded because he does nothing more than regurgitate █████████████████████████████████ ████████████████████████. Merely ████████████ ██████ without conducting any independent analysis or investigation is not a reliable method; such is not the stuff admissible expert opinion is made of under Rule 702.

## LEGAL STANDARD

Expert testimony is admissible under Rule 702 where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is sufficiently reliable. Fed. R. Evid. 702. The court acts as a gatekeeper for such testimony, "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Generally, expert opinion "is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry," *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025) (quotations and citations omitted), and carries "sufficient indicia of reliability." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). There is no presumption in favor of admission. *Engilis*, 151 F.4th at 1049.

## ARGUMENT

**I.  Dr. Altman's opinions regarding the** ███████████████ **are irrelevant.**

**A.  The** ██████████████ **Dr. Altman identifies have no connection to Anthropic's use of Publishers' works.**

The fourth factor of fair use analysis focuses on "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4) (emphasis added). While fair use analysis "must take into account the public benefits the copying will likely produce," *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021), any such public benefits must flow from that copying to be relevant. Public benefits that flow from a defendant's technology generally, but that have no connection to a defendant's use of the copyrighted work at issue specifically, are not relevant.

This fair-use framework makes clear that the ██████████ Dr. Altman identifies are not relevant to fair use because there is no evidence in the record ████████████ ███████████████████████████████████████████████████. Dr. Altman testified that ████████████████████████████████████████████████████ ████████████████████████████████████████ Miller Decl. Ex. D 104:10–15, Altman Dep. Tr. ("Dep. Tr."). Dr. Altman was repeatedly asked ██ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* at 132:25–133:23 (████████████████████████████ ██████████████████████); *id.* at 141:25–142:19 ██████████ ████████████████████████████████████████████████████ ██████████); *id.* at 153:9–17 (████████████████████████ █████████████); *id.* at 165:1–13 ██████████████████████ ████████████████████); *id.* at 167:13–168:6 (████████ ████████████████████████████████████████████████████); *id.* at 173:7–20 ████████████████████████████████████████ ██████████); *id.* at 257:17–258:1 (████████████████████

██████████████████████████ ).

While Dr. Altman ███████████████████████████████████████ ████████████████████████, Anthropic's other experts and witnesses have decisively answered that question in the negative. Technical expert Dr. Jeffrey Bilmes opined that "████████████████ ███████████████████████████████████████████████████████████ ████." Miller Decl. Ex. E 180:25–181:10, Bilmes Dep. Tr. Anthropic's co-founder and 30(b)(6) witness Benjamin Mann testified, "I don't think we view it as important to include lyrics" in Claude's training data. Miller Decl. Ex. F 114:5–9, Mann 30(b)(6) Dep. Tr. Anthropic Chief Science Officer Jared Kaplan stated in a sworn declaration that Anthropic has "no interest" in Publishers' Works in Suit specifically, that similar types of works "are considered fungible for purposes of the model," and that "it does not ultimately matter," for example, "what specific articles are included in the training data. . . ." Decl. of Jared Kaplan ¶¶ 36, 23, ECF No. 209. Economics expert Dr. Abishek Nagaraj opined ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████ Miller Decl. Ex. G ¶ 47, Excerpt of Reply Report of Abhishek Nagaraj, PhD (Feb. 13, 2026). When asked ██████████████ ███████████████████████████████████████████. Dep. Tr. 104:23–106:17.

**B.    The ███████████████████████ Dr. Altman identifies have no connection to the objectives of copyright law underlying fair use.**

The ████████████████ that Dr. Altman identifies are irrelevant to the fair use inquiry because they have nothing to do with the role of fair use in encouraging new creative expression. *Google* held that public benefits from copying are relevant only insofar as they relate to "copyright's concern for the creative production of new expression." *Google*, 593 U.S. at 35; *see also id.* at 39 (focusing public benefits analysis on "copyright's basic creativity objectives"); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) (focusing public benefits analysis on "statutory purpose of promoting creative expression"). Public benefits that are not related to the "creative production of new expression" are simply not relevant to a fair use analysis.

None of the ████████ of Claude Dr. Altman identifies have any connection to encouraging new creative expression. Uses of Claude to ████████████████████████████████████████████████████████ Rpt. ¶ 19—whatever their importance—have no connection to the purposes of copyright law. None directly encourage new creative expression. Even the ███████████████████████████████████████████████ Rpt. ¶¶ 108–109. Whether Claude is a useful technology in ways █████████████████ is irrelevant to whether Anthropic's use of Publishers' lyrics is a fair use. As such, Dr. Altman's testimony on these topics will not help the trier of fact understand the evidence or determine a fact in issue. "[E]xpert testimony is relevant [only] if the knowledge underlying it has a 'valid . . . connection to the pertinent inquiry.'" *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *2 (N.D. Cal. Dec. 23, 2024) (quoting *Daubert*, 509 U.S. at 591–92).

**II.      Dr. Altman lacks the necessary expertise to opine on any ████████ beyond medical and biological research or higher education.**

Dr. Altman strays far beyond his expertise in medical and biological research and higher education to offer opinions for which he is plainly unqualified. To offer expert testimony, a witness must have "scientific, technical, or other specialized knowledge" relevant to the issue on which the witness seeks to opine. Fed. R. Evid. 702(a); *Waymo LLC v. Uber Tech., Inc.*, 2017 WL 5148390, at *5 (N.D Cal. Nov. 6, 2017).

Dr. Altman is a professor of bioengineering, genetics, medicine, biomedical data science, and computer science; his publications are limited to those fields, and ██████████████████ ██████████████. Dep. Tr. 16:8–17:11. His expertise is limited to those areas, along with whatever expertise in higher education may be conferred by being a college professor. He is not qualified to opine on the wide range of topics outside his narrow expertise on which he seeks to offer opinions. *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at *10 (C.D. Cal. Mar. 15, 2023) ("Courts regularly find that an expert's qualifications in one field do not automatically translate to qualification to opine in a separate field, even if those fields are related in some general sense.") (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001) ("[A]

very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation")).



about which he plainly has none. *See* Rpt. ¶¶ 41–42, 86–96, Miller Decl. Ex C ¶¶ 40–52, Expert Reply Report of Russ Altman (Feb 13, 2026) ("Reply").

Dep. Tr. 210:9–212:10, 303:3–5. He is not qualified to opine on , and whatever review of literature he may have conducted seems to have omitted a large body of research . *See, e.g.*, Mary Burns et al., *A New Direction for Students in an AI World: Prosper, Prepare, Protect*, CENTER FOR UNIV. ED. AT BROOKINGS (Jan. 2026), https://www.brookings.edu/wp-content/uploads/2026/01/A-New-Direction-for-Students-in-an-AI-World-FULL-REPORT.pdf.

Dr. Altman lacks expertise to opine regarding

Rpt. ¶ 97.

Dep. Tr. 244:4–5, 18–22. He cites

, Rpt. ¶¶ 98–104,

Dep. Tr. 241:11–20.

Rpt. ¶¶ 117–121.

Dep. Tr. 31:5–32:10, 265:7–8.



███████████████████████████████████████████. Dep. Tr. 265:14–266:2.

███████████████████████████████████████████

██████████████ Rpt. ¶¶ 105–116, Miller Decl. Ex. B ¶¶ 67–68, Expert Rebuttal Report of Russ Altman (Jan. 23, 2026) ("Rebuttal"). ████████████████████████ ████████ Rpt. ¶ 105, ████████████████. Dep. Tr. 249:1–17. And while his work requires academic writing, █████████████████████████████████████████ ██████. Dep. Tr. 249:18–250:8. ████████████████████████████████████ ████████████████████████████████████. Rpt. ¶¶ 106–107. But ███████████████████████████ does not qualify Dr. Altman to opine under Rule 702; that would water down Rule 702's requirements to nothing. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ and he lacks any expertise to opine about AI safety beyond those contexts. Indeed, Dr. Altman conceded that ████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████." Dep. Tr. 175:5–176:5 (emphasis added). When asked ████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████ Dep. Tr. 206:13–207:17. Dr. Altman thus lacks the necessary expertise to offer his opinion that ███████████████ ███████████████████████████████████████████████████ ████████ Rpt. ¶ 49. For the same reason, he lacks the expertise to challenge the conclusion of Publishers' technical expert, Dr. Ben Zhao, that ██████████████████████ ███████████████. *See* Rebuttal ¶¶ 16–34, 52–56, Reply ¶ 38. ████████████████████████████████████████████████ ████████████████████████████████████████████████████



Rebuttal ¶¶ 23–28. ████████████████████████████████████ Dep. Tr. 258:2–14. Prior to this case, ████████████████████████████████████ . *Id.* at 258:25–259:17. His opinion that, ████████████████████████████████████████████████████████████████ Rebuttal ¶ 24, ████████████████████████████████████████████████████████████████ , *id.* ¶¶ 25–28, all exceed his narrow expertise and should be excluded.

**III.     Dr. Altman's method of relying solely on** ████████████████ ████████████████ **to identify Claude's benefits is unreliable.**

For many of the benefits of Claude Dr. Altman identifies, his ████████████ ████████████████████████████████████ . Dr. Altman just regurgitates those ████████████████████████████████ ████████████████████ An expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). But Dr. Altman failed to do that. He ████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ .

For example, one of the benefits ████████████████████████ ████████████████████████ Rpt. ¶ 65–66. The only support Dr. Altman provides ████ ████████████████████████████████████████████████████████████████ *Id.* ¶ 66. In turn, the only evidence Dr. Altman cites ████████████████ ████████████████████████████████████████████████████████ *Id.* ¶ 66 nn.75–78. ████ ████████████████████████████████████████████████████████████████ . Dep. Tr. 145:6–



7, 145:22–146:7. While Dr. Altman claims that ███████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████ ████████████████████████ Dep. Tr. 144:24–145:5.

This impoverished method (to the extent there is any "method" here at all) plagues most of Dr. Altman's opinions. Dr. Altman relies solely on ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Rpt. ¶ 68, n.80; Dep. Tr. 148:9– 151:9. Again, Dr. Altman has ████████████████████████████████████ ██████████████████████████████████████ ██████████ Dep. Tr. 151:13–153:8. Dr. Altman opines that ████████████ █████████████████████ Rpt. ¶ 69, but cites only ██████████████████ █████████████ *Id.* ¶ 69 n.81.

Further examples abound. Dr. Altman ██████████████████ ██████████████████████████████████████████ ███████████. *Id.* ¶ 70 n.82. Dr. Altman opines that █████████████ ███████████████████████ *id.* ¶ 71, but relies on ████████ ████████████████████████████████████████ ████████████ *Id.* n.83; Dep. Tr. 158:10–163:11. Again, Dr. Altman did not speak to anyone at ████████████████████████████████████████████████ ████████████ Dep. Tr. 163:14–164:20. *See also* Rpt. ¶ 80, nn.81–82 (█████ ████████████ ); *id.* ¶ 87, nn.107–108 (██████████████████████ ████████████ ); *id.* ¶ 89, n.113 (█████████████████ ████████████████████████████████████████████ ).

That many of these examples arise in domains outside Dr. Altman's expertise, *see supra*, only multiplies the unreliability because, even if he had tried to do so (and he did not), Dr. Altman lacks the expertise to critically evaluate his source material. *See* Rpt. ¶¶ 90–91, nn.114–116 (████ ████████████████████████████████████████████████



); *id.* ¶ 92, nn.117–118 ); *id.* ¶ 93, nn.119–121 ( ); *id.* ¶ 95, nn.124–125 ( ); *id.* ¶¶ 98–99, nn.127–132 ); *id.* ¶¶ 100–101, nn.133–139 ( ); *id.* ¶ 102, nn.140–142 ( ); *id.* ¶ 103, nn.143–146 ); *id.* ¶ 108, nn.149–150 ); ); *id.* ¶ 110, nn.153–155 ( ); *id.* ¶ 113, nn.160–162 ( ); *id.* ¶ 114, nn.163–164 ); *id.* ¶ 120, nn.172–173, 175 ).

None of these are reliable expert opinions under Rule 702. To pass muster, the expert must employ an "identifiable methodology" and explain how his professional experience qualifies him to conduct that analysis. *Rearden, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 1077–78 (9th Cir. 2025) (expert testimony excluded as it lacked appropriate rigor). Here, Dr. Altman has done nothing more than launder ▮▮▮▮. *Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding expert opinion where expert "does no more than regurgitate information given to him by other sources" and "does not analyze his source materials so much as repeat their contents") (internal quotation marks omitted). This is wholly improper and should be excluded.

## CONCLUSION

For the foregoing reasons, Publishers respectfully request that Dr. Russ Altman's opinions be excluded in their entirety.

Dated: March 31, 2026

Respectfully submitted,

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

/s/ Corey Miller

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from the signatory of this document. I declare under penalty of perjury that the foregoing is true and correct.


Dated: March 31, 2026                                    */s/ Michelle Gomez-Reichman*
                                                         Michelle Gomez-Reichman