**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO PARTIALLY EXCLUDE THE OPINIONS OF DR. ANDREW BRAY** <br><br> **REDACTED** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen <br><br> Hearing Date: July 15, 2026, 10:00 am <br> Courtroom: 7 |

**CERTIFICATION OF COMPLIANCE WITH CIVIL STANDING ORDER SEC. VIII.A**

Pursuant to Sec. VIII.A of the Court's Civil Standing Order, the undersigned counsel certifies that Publishers' counsel met and conferred with Anthropic's counsel by videoconference on March 24, 2026 and by email to discuss the bases for this Motion in an effort to resolve or narrow disputed issues where possible to reduce motion practice.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................1

STATEMENT OF RELIEF .................................................................................................1

INTRODUCTION .............................................................................................................1

BACKGROUND ...............................................................................................................2

LEGAL STANDARD ........................................................................................................3

ARGUMENT ...................................................................................................................4

    I.       Dr. Bray's ███████ methodology should be excluded. ...............................4

        A.     Dr. Bray lacks the necessary expertise to establish the reliability of his unsupported ███████ methodology. ..........................................4

        B.     Dr. Bray's ███████ methodology is unreliable because, while it contains many errors, Dr. Bray ███████████ ...................................5

        C.     Dr. Bray's opinion that his ████████████████ ████████████ should be excluded as mere *ipse dixit*. ...................9

    II.      Dr. Bray's opinion ████████████████ ████████ is merely a disguised legal argument. ...............................9

CONCLUSION .................................................................................................................10

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 15, 2026, at 10:00 am (*see* ECF No. 587), or as soon thereafter as this matter may be heard, before the Honorable Eumi K. Lee, District Judge, U.S. District Court for the Northern District of California, in Courtroom 7 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiffs Concord Music Group, Inc., Capitol CMG, Inc., Universal Music Corp., Songs of Universal, Inc., Universal Music - MGB NA LLC, Polygram Publishing, Inc., Universal Music - Z Tunes LLC, and ABKCO Music, Inc. (collectively, "Publishers") will and hereby do respectfully move this Court for an order partially excluding the opinions of Defendant Anthropic PBC's ("Anthropic") expert witness, Dr. Andrew Bray as unreliable, not likely to aid the factfinder in assessing the relevant issues in this case, and otherwise improper.

## STATEMENT OF RELIEF

Plaintiffs respectfully request that the Court exclude Dr. Andrew Bray's: (i) ███████ analysis, (ii) opinion that his ████████████ methodology appropriately "███████ ████████████████████████████████", and (iii) Dr. Bray's opinion that ████████ ██████████████████████.

## INTRODUCTION

Anthropic's expert, Dr. Andrew Bray, a statistician by training, ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████. But Dr Bray's methodology is outside his expertise and is wholly untested. And while the ███████████, the record demonstrates it is plainly unacceptable. The Court should not allow Dr. Bray ████████████████████ ████████████████████████████████████████████. ***First,*** The Court should exclude Dr. Bray's ████████ analysis because it is an unreliable methodology and because Dr. Bray lacks the necessary expertise to support it. ***Second,*** the Court should also exclude as unreliable Dr. Bray's opinion that his ████████ methodology appropriately "████████████████████████████" because ████████ ████████ supporting this opinion. ***Third,*** the Court should exclude Dr. Bray's opinion that

████████████████████████████████████████████, because this opinion is based on his unreliable ██████████ analysis and relies on Dr. Bray's subjective definition of "████████," which has no basis in copyright law and for which he lacks expertise.

## BACKGROUND

The Court ordered Anthropic to produce a "statistically significant sample" of 5 million Claude prompt-output records from the period of September 22, 2023 to March 22, 2024 (the "Sample"). Order on Joint Discovery Submissions at 5–6 (May 23, 2025), ECF No. 377. Through Dr. Bray, Anthropic seeks to offer opinion testimony regarding ███████████████ ████████████████████████████. Specifically, Dr. Bray purports to assess █████████████████████████████████████████████ " ("Question 1"), what percentage of Question 1 records "██████████████ ██████████████████" ("Question 2"), ███████████████████████████████ ██████████████" ("Question 3"), and what percentage of Question 3 records "████ ████████████████████" ("Question 4"). Decl. of Keith Howell in Supp. of Pls.' Mot. to Partially Exclude the Opinions of Dr. Andrew Bray, Ex. A ¶ 32, Expert Report of Dr. Andrew Bray (Dec. 19, 2025) ("Rpt.") see also Howell Decl. Ex. B ¶ 11, Reply Report of Dr. Andrew Bray (Feb. 13, 2026) ("Reply").[1]

But from the 5 million Sample, Dr. Bray only actually personally read ████████ ████████ records. Howell Decl. Ex. C 27:13–28:7, Bray Dep. Tr. ("Dep. Tr."). He ██████ less than half that number. *Id.* Instead he used a "██████████████" analysis to ██████ ████████████████████████████ are essentially word searches. As Dr. Bray confirmed, they can be used "█████████████████████████████████████████." Dep. Tr. 45:13–18; *see also id.* 46:3–5 (confirming ███████████████████████████████ ████"). If a record matched the pattern sought by Dr. Bray's ████████████ for Question 1, he deemed it a "████████████████████████████████████," regardless of whether

---

[1] Dr. Bray made a "███████████████████████" that affected the classification of hundreds of thousands of records in the Bray Report, along with other errors in his ████████████ identified by Publishers' expert Joshua Dennis. Reply ¶ 11. Due to these errors, Dr. Bray anticipates offering at trial ███████████████ offered in the Bray Reply. Dep. Tr. 54:15–55:4.



it actually contained ████████████. Rpt. ¶ 32, ¶ 40 n. 21; Dep. Tr. 48:17–49:13. If a record matched the pattern sought by Dr. Bray's ████████████ for Question 3, he deemed it an "████████████," regardless of whether it actually contained ████████. Rpt. ¶ 32, ¶ 40 n. 21. The opposite was also true. If a record did not match the specific word patterns Dr. Bray search for, he concluded those records did not ████████ ████████████ regardless of what the record actually reflected. *See* Rpt. ¶¶ 40, 96–103. Dr. Bray then searched his two lists of records for Questions 1 and 3 to assess ████ ████████████, and he reported those results for Questions 2 and 4. *See id.* ¶¶ 40, 131. Because the last record responsive to his ████████████ for Question 4 was ████████████, he concludes "████████████████." Rpt. ¶ 40. He reaffirmed this opinion at his deposition, even after acknowledging that records in the Sample copied lyrics to the Works in Suit after this date, purportedly because these examples did not meet his unique definition of "lyric regurgitation." Dep. Tr. 181:15–182:19.

## LEGAL STANDARD

Expert testimony is admissible under Fed. R. Evid. 702 where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is sufficiently reliable. The court acts as a gatekeeper for such testimony, "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Generally, expert opinion "is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry," *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025) (quotations and citations omitted), and carries "sufficient indicia of reliability." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). Anthropic "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *Engilis*, 151 F.4th at 1048. Here, Anthropic cannot meet that burden.

**ARGUMENT**

I.    Dr. Bray's ███████████ methodology should be excluded.

A. Dr. Bray lacks the necessary expertise to establish the reliability of his unsupported ███████████ methodology.

Dr. Bray's ███████████ analysis is beyond his expertise, has no support in the scientific community, has no known error rate, and is completely untested. Each of these factors favors exclusion. *See In re: Baby Food Products Liability Litigation*, 2026 WL 559857, at *2 (N.D. Cal. Feb. 27, 2026) ("*In re: Baby Food*"). ███████████ are not a reliable method for ███████████ ███████████. The literature on ███████████ suggests they are a poor choice for that task because, as the materials cited in Dr. Bray's reports confirm, "writing ███████████ to identify instances of a specific concept within text documents with a high precision and recall is challenging." *See* Howell Decl. Ex. D, Murthy, D.P. K. & Deshpande, P.M., *Improving Recall of Regular Expressions for Information Extraction*, Vol. 7651 WISE 2012, LECTURE NOTES IN COMPUTER SCIENCE, 455–467, https://doi.org/10.1007/978-3-642-35063-4_33. Using ███████████ specifically to assess whether ███████████ ███████████ has no support in the relevant literature. Dr. Bray acknowledged he is not aware of any peer-reviewed publications discussing using ███████████ to identify requests for lyrics, and indeed he is not aware of anyone else who has used ███████████ in this manner. Dep. Tr. 76:22–78:8. As a result, Publishers are unaware of any federal court holding that a ███████████ methodology similar to Dr. Bray's passes the *Daubert* standard.

Dr. Bray lacks the necessary expertise to opine that his ███████████ analysis reliably accomplishes that challenging task. Dr. Bray is a professor of statistics. This is his first copyright case, and he has no expertise in musicology, linguistics, or song lyrics. Dep. Tr. 10:16–20, 12:3–22. He has never worked for a generative AI company or published any research on generative AI. Dep. Tr. 13:1–4, 13:21–15:9. Dr. Bray acknowledged "███████████ ███████████" Reply ¶ 34. But Dr. Bray has no expertise to understand and capture these myriad ways in which ███████████ ███████████. Prior to this litigation, Dr. Bray had never assessed whether a

record contained a request for lyrics or lyric regurgitation. Dep. Tr. 26:3–12. Nor had he used ██████████████ to determine if a document contained lyrics or requests for lyrics. Dep. Tr. 76:14–21. In the Ninth Circuit, this lack of expertise favors exclusion. *See In re: Baby Food*, 2026 WL 559857, at *2.

Because there is no legal or scholarly precedent for using ████████ to ████ ████████████████ , Dr. Bray started from scratch when he designed his ████ ████ , but his lack of expertise led him to make arbitrary choices and basic errors. He based his ████████████ for Questions 1 and 2 on "████████████ ████████████ ." Dep. Tr. 100:17–24. In designing Questions 3 and 4, Dr. Bray assumed that "████████████████████ ████████████████ " Rpt. ¶ 122. He later acknowledged this was an "inaccurate statement" that he no longer stands by. Dep. Tr. 157:17–159:12. Despite this, Dr. Bray's ████████████ for Question 3 essentially sticks with this formulation, covering only ████████████████████████ ████████████████████████ ████ .[2] Reply ¶ 47.

**B. Dr. Bray's ████████████ methodology is unreliable because, while it contains many errors, Dr. Bray ████████████████ .**

Dr. Bray's analysis is fatally unreliable because, while Dr. Bray acknowledges that his ████ ████████ misclassified "many" records, he made no attempt to quantify or correct for these errors. Dep. Tr. 49:8–13, 50:13–19, 60:4–7, 62:8–11. Dr. Bray acknowledged that his ████████████████████████████ ████████████████████████████ n that Dr. Bray did not identify). Reply ¶¶ 27, 33 (noting "████████████ ████████████████████ s). But Dr. Bray never calculated an error rate associated with any of his ████████████ . Dep. Tr. 60:4–7, 62:8–11.

---

[2] The full regular expression for Question 3 is: ████████████████ ████████████████ Howell Decl. Ex. K, Table A of Reply Report of Dr. Andrew Bray (Feb. 13, 2026).

This is in stark contrast to Publishers' expert Joshua Dennis, who also assessed the ████████ ████████████████████ in the Sample and calculated an error rate associated with his analysis. Howell Decl. Ex. E ¶¶ 72–75, Expert Report of Joshua Dennis (Dec. 19, 2025). As a result, while Dr. Bray admits his analysis is not 100% accurate, there is no way to know *how* inaccurate it is. The lack of a known error rate favors exclusion. *In re: Baby*, 2026 WL 559857, at *2; *Gabbard v. Linn-Benton Hous. Auth.*, 219 F. Supp. 2d 1130, 1138 (D. Or. 2002) (excluding expert testimony relying on technique that "does not have a known rate of error").

Although the precise error rate is unknown, it is plainly unacceptable. Dr. Bray acknowledged the false positives associated with his analysis were "many," Dep. Tr. 50:13–19, and he identified several in his Reply. Reply ¶¶ 35–36. The record demonstrates the error rate overwhelms any utility from Dr. Bray's approach and undermines any claim to "the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citation omitted), *as amended* (Apr. 27, 2010). For example, the following are exemplary false negatives and false positives that Dr. Bray's Question 1 ████████████ identified incorrectly:

**Question 1:** ████████████████████████████████████████████?

| No. | False Negatives[3] | | False Positives[4] | |
|---|---|---|---|---|
| | | Figure 1 | | |
| 1 | DOC 00019134 | ██████████████ | DOC 00010487 | ██████████████ |
| 2 | DOC 00046406 | ██████████████ | DOC 00017682 | ██████████████ |
| 3 | DOC 00174506 | ██████████████ | DOC 00027053 | ██████████████ |
| 4 | DOC 00184852 | ██████████████ | DOC 00043269 | ██████████████ |
| 5 | DOC 00259225 | ██████████████ | DOC 00060999 | ██████████████ |

---

[3] ████████████ not captured by Dr. Bray's ████████████.
[4] Records captured by Dr. Bray's ████████████ that ████████████.



Case No. 5:24-cv-03811-EKL-SVK
PLAINTIFFS' MOT. TO PARTIALLY EXCLUDE THE OPINIONS OF DR. ANDREW BRAY



These are only a small sample of the errors in Dr. Bray's results, demonstrating the unreliability of his word search to properly identify prompts requesting lyrics.



Dr. Bray also acknowledged errors in his Question 3 ███████████. Reply ¶ 36. As noted above, Dr. Bray's Question 3 ████████ relied on the admittedly false assumption that ████████████████████████████████████████████ Rpt. ¶ 122, Dep. Tr. 157:17–159:12. Accordingly, it too ████████████ ████████████████████████████████████████████████ Howell Decl. Ex. F, DOC 00019134; Ex. G, DOC 00721500; Ex. H, DOC 02401762; Ex. I, DOC 00176575; Ex. J, DOC 02464164.

Both types of errors negatively affect the results of Questions 2 and 4, which assess █ ████████████████████████████████████. As Dr. Bray admitted, errors in Question 1 or 3 affect the results of Questions 2 and 4 because Questions 2 and 4 only considered records responsive to Questions 1 and 3. Dep. Tr. 155:15–24; *see also* Rpt. ¶¶ 40, 131. False negatives ████████████████████ would not be considered for Question 2 because they did not meet the ████████████ for Question 1. Rpt. ¶ 40. On the other hand, false positives ████████████████████████████████████████████. Both errors work to undermine the reliability of Dr. Bray's assessment of ████████████

Case No. 5:24-cv-03811-EKL-SVK
PLAINTIFFS' MOT. TO PARTIALLY EXCLUDE THE OPINIONS OF DR. ANDREW BRAY

**C. Dr. Bray's opinion that his** ██████████████████████████ **should be excluded as mere *ipse dixit*.**

Dr. Bray's attempt to save his ████████████ analysis by ████████████████ ████████████████████████████████████. Seeking to excuse the errors in his ████ ██████, Dr. Bray opines that his ██████████████ appropriately "█████████████ ████████████████████████." Reply ¶ 33. Dr. Bray further opined they are "roughly of the same magnitude." Dep. Tr. 73:1–7. But this opinion is not reliable because Dr. Bray has no way of knowing whether false positives actually do balance out false negatives. Dr. Bray never calculated the false positive or the false negative error rates associated with any his ██████████ ████. He only "spot-checked" the results enough to determine that false positives were present. Dep. Tr. 59:10–60:7. He explained the number of false negatives was essentially unknowable, as it would require "an expert in music lyrics" to review the full Sample. Dep. Tr. 67:15–68:11. But as Dr. Bray acknowledged, he is not an expert in musicology or song lyrics, Dep. Tr. 12:3–22, and he only reviewed "under a thousand" records from the 5-million Sample. *Id.* 27:13–28:7. While Dr. Bray used Claude to assess whether a small subset of records from the Sample contained lyrics as a means of identifying potential false negatives, he admitted Claude did not provide a source of ground truth either. Dep. Tr. 66:25–67:14. Thus, Dr. Bray has no basis from which to assert that the number of false positives and false negatives associated with his analysis are roughly equiva-lent, and this *ipse dixit* opinion should be excluded. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (noting where expert opinion is "connected to existing data only by the *ipse dixit* of the expert" that there may be "too great an analytical gap between the data and the opinion preferred" to support inclusion of the testimony) (citation omitted).

**II.    Dr. Bray's opinion** ███████████████████████████████████████ ████████████████████ **is merely a disguised legal argument.**

Because the latest record responsive to the Question 4 ██████████████ was dated ████ ████████████, Dr. Bray opines that "████████████████████████████████ ████████████████." Rpt. ¶ 40; *see also* Reply ¶ 11 (same). This opinion should be excluded for the reasons articulated above because it is the product of Dr. Bray's unreliable methodology. It

should also be excluded because it relies on Dr. Bray's unique definition of "lyric regurgitation," which has no basis in copyright law and will only serve to confuse the jury. When confronted with examples from the Sample showing outputs containing lyrics to the Works in Suit dated after November 12, 2023, Dr. Bray discounted them because they did not, in his view, show "lyric regurgitation." Dep. Tr. 179:24–182:19. Dr. Bray defined "lyric regurgitation" as "providing sets of lyrics where [the] goal is to provide just those lyrics," and excludes instances in which lyrics are copied for other purposes. Dep. Tr. 164:21–165:15; 128:1–8.

Dr. Bray's definition of "lyric regurgitation" is fatally flawed. First, as a statistician, Dr. Bray lacks any relevant expertise to determine whether " ███████████████████ ███████████████████ Second, Dr. Bray has no identifiable methodology for assessing whether " ███████████████████ " beyond his subjective intuition which, again, is not rooted in any relevant expertise and therefore is nothing more than improper *ipse dixit*.

Third, Dr. Bray's opinion that copying lyrics for " ██████ " is not ██████ " is at bottom an impermissible legal opinion that ███████████████████ . Dr. Bray admits he has no understanding of the legal standard for copyright infringement. Dep. Tr. 9:20–10:1, 182:20–183:5. Opining on whether ███████████████████ ██ impermissibly exceeds Dr. Bray's role because it is outside his expertise and does nothing but tell the trier of fact what result to reach. *See Nationwide Trans. Fin. V. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) ("[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible.") (citation omitted). It is also likely to mislead the jury about the relevant legal standards for direct infringement and fair use. This misleading testimony should be excluded.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude Dr. Andrew Bray's: (i) ███████████ analysis, (ii) opinion that his ███████████ methodology appropriately "balance[s] the tradeoff between false negatives and false positives", and (iii) Dr. Bray's opinion that Claude did not output lyrics to the Works in Suit after November 12, 2023.

Dated: March 31, 2026

Respectfully submitted,

/s/ Keith Howell

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Plaintiffs*

Case No. 5:24-cv-03811-EKL-SVK
PLAINTIFFS' MOT. TO PARTIALLY EXCLUDE THE OPINIONS OF DR. ANDREW BRAY

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from the signatory of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 31, 2026                                  */s/ Timothy Chung*
                                                          Timothy Chung