**PUBLIC REDACTED VERSION**

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

TAYLOR GOOCH (SBN 294282)
taylor.gooch@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
50 California St.
San Francisco, CA 94111
Telephone: (628) 235-1000

JARED V. GRUBOW (*Pro Hac Vice)*
jared.grubow@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
250 Greenwich St
New York, NY 10007
Telephone: (212) 230-8800

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
DISHA PATEL (*Pro Hac Vice*)
disha.patel@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:24-cv-03811-EKL-SVK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF BEN ZHAO**<br><br>Hearing Date: July 15, 2026<br>Time: 10:00 AM<br>Judge: Hon. Eumi K. Lee |

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 15, 2026 at 10:00 AM, Defendant Anthropic PBC will move the Court for an order granting Anthropic's Motion to Exclude the Expert Testimony and Opinions of Publishers' putative expert Dr. Ben Zhao. Anthropic's motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the Declaration of Robin Burrell filed herewith, along with the accompanying exhibits. In accordance with Section VIII.A of Judge Lee's Civil Standing Order, the undersigned certifies that counsel for Anthropic met and conferred with Plaintiffs' counsel regarding the bases for this Motion on March 24, 2026.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, Anthropic requests that the Court exclude Zhao's opinions about (1) the state of mind of Anthropic or its officers and employees, and (2) the supposed effectiveness of Anthropic's copyright guardrails. Anthropic requests that the Court exclude all corresponding statements in the Expert Report of Dr. Ben Zhao (Ex. 1),[1] the Rebuttal Expert Report of Dr. Ben Zhao (Ex. 2), the Reply Expert Report of Dr. Ben Zhao (Ex. 3), as specified herein, and any testimony drawn from those statements.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The role of an expert is to offer testimony based upon specialized knowledge grounded in fact and helpful to the jury. It is not to draw inferences about a party's motivations by reading documents that the jury can read for itself, or worse, to serve as a mouthpiece for counsel's misleading spin on those documents based on review of only a subset selected by counsel. And yet, Publisher's technical expert, Dr. Ben Zhao, did exactly that. Zhao's reports are filled with opinions about what Anthropic knew, anticipated, desired, or intended. He repeatedly opined, for example, that " ███████████████████████████████████

███████████████████████████████," Ex. 1 ¶¶ 10, 81.

Zhao's testimony as to intent, motive, or state of mind is not grounded in any specialized

---

[1] Unless otherwise noted, 'Ex.' citations reference exhibits to the Robin Burrell Declaration filed herewith, emphasis is added, and objections are omitted for deposition citations.

DEF.'S MOT. TO EXCLUDE                    - 1 -                    Case No. 5:24-cv-03811-EKL-SVK
BEN ZHAO

**PUBLIC REDACTED VERSION**

knowledge or expertise. It therefore usurps the jury's role to assess credibility and draw inferences from facts. If Publishers wish to present the jury with admissible documents or fact-witness testimony to allow it to evaluate Anthropic's state of mind, they can. But they cannot put a narrative gloss on those documents (none of which require Zhao's computer science background to understand) by having Zhao interpret them with the imprimatur of "expert" testimony.

Zhao also offered conclusions about the effectiveness of Anthropic's copyright guardrails but lacks any reliable basis to do so. Zhao's opinions about the effectiveness of guardrails prior to November 7, 2023, were based primarily on "testing" of *only four Works-in-Suit* ("WIS"). Even as to those four WIS, Zhao deceptively minimized the effectiveness of Claude's guardrails by disclosing only part of his interactions with Claude. Zhao also relied upon Publishers' pre-suit investigation, even though Publishers have repeatedly represented to this Court that they would not rely on evidence generated through that investigation for this purpose. Publishers and their experts cannot now rely upon the disclaimed evidence they withheld from adversarial testing.

Zhao's lack of any foundation for his opinions on Anthropic's post-November 7, 2023 guardrails—including their effectiveness today—is even more glaring. Zhao conducted *no testing* of Claude's guardrails after this date. His failure to do so is critical because Anthropic implemented significant changes to its guardrails after that date. Zhao tried to plug this hole by citing (1) supposed "████" interactions with Claude that he failed to preserve or disclose; (2) references to work performed by Publishers' other technical expert, Dr. Shan; (3) and a set of third-party research studies—not about Claude or lyrics, but about LLM guardrails generally. None of these sources provided Zhao a basis to opine about Anthropic's guardrails after November 7, 2023.

Anthropic objects to the admissibility of only these two categories of opinions under *Daubert*. It does not seek to exclude the remainder of Zhao's opinions at this stage, but will address their many flaws on cross examination, if Publishers' claims survive.

## BACKGROUND

Zhao is a professor of computer science. Ex. 1 ¶ 1. Publishers retained Zhao to "████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████." *Id.* ¶ 5.

**PUBLIC REDACTED VERSION**

Zhao based his opinions about Anthropic's intent and knowledge on his review of documents that Publishers' counsel provided to him, including internal Anthropic documents and deposition testimony, other expert reports, academic studies, and articles. *Id.* ¶ 6; Zhao Deposition Transcript (Ex. 4) at 148:6-25, 328:23-329:19. Zhao never reviewed the source code for Claude's guardrails or Claude's training data, even though Anthropic made it available to Publishers in discovery. Ex. 4 at 124:11-127:23. Instead, based on documents specifically curated for him by counsel, he opined that "████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████" and that Anthropic "████████" "████████ ████████████████████████████████████████████████████████████████████ ████████" Ex. 1 ¶ 10.

Zhao's opinions about the effectiveness of Anthropic's guardrails ***prior to November 7, 2023***, are based in part on Publishers' pre-suit investigation. *Id.* ¶ 119 ("████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████." ). Zhao also personally "tested" Claude's guardrails on November 7, 2023, shortly after Publishers filed their initial complaint, although this "test" involved asking Claude for the lyrics to just four WIS. Anthropic_0000064503 (Ex. 5).

Zhao only partially disclosed the results of that testing in his November 16, 2023 declaration in support of Publishers' motion for a preliminary injunction. Dkt. 47 ¶¶ 42-45; Dkt.47-2. His declaration did not detail when or how he performed his testing. *See* Dkt. 47. And because Publishers have refused to provide account information for their experts, there is no way for Anthropic to conclusively determine the contents of that conversation—even though Publishers have now unquestionably relied upon it. *See* Dennis *Daubert* Mot.[2]

Zhao's declaration did, however, disclose the four prompts he used: "████████████ ████████████████████████"; "████████████████████████████████████████████████"; "████ ████████████████████████████████████████████████"; and "████████████ ████████████████████████[.]" Dkt. 47-2 at 6-9. Those prompts, and their corresponding outputs,

---

[2] Anthropic's motion to exclude the testimony of Mr. Dennis was filed concurrently with this motion.

match word-for-word with prompts and outputs submitted on November 7, 2023, that are part of a broader conversation with Claude. *Compare id.*, *with* Ex. 5. Zhao's declaration failed to disclose this broader conversation and the additional outputs his testing generated. For example, he disclosed only two instances where Claude declined to provide song lyrics, citing copyright. Dkt. 47-2 at 6-7. But Anthropic's further investigation revealed that Zhao's full conversation involved four total instances where Claude refused to produce copyrighted materials. Ex. 5. It also revealed that Zhao engaged in determined jailbreaking efforts to obtain lyrics. *Id.* Zhao's declaration hid all of this.

As for the effectiveness of guardrails *after November 7, 2023*, Zhao acknowledged that "███████████████████████████████████████████████████████████████████████████████████████████████," but opined they are "███████████████████████████████████████" and "████████████████████████████████████████████████████████████████████████████████████." Ex. 1 ¶¶ 10, 136, 138. But Zhao did not conduct any testing of Anthropic's guardrails after November 7, 2023. Ex. 4 at 134:7-15, 136:3-13, 138:11-139:6. Indeed, Zhao testified that ███████████████████████████████████████████████████████████████████. *Id.* at 131:13-132:6, 147:3-12; 252:16-22. Instead, he claimed he ████████████████████████████████████████████████" *Id.* at 148:15-18. Zhao admitted that he ██████████████████████████████████████████████████████████████, which he nonetheless purported to rely upon. *Id.* at 128:21-129:14, 133:12-134:15, 135:24-136:13, 138:11-139:6, 250:24-252:11, 304:8-23. Zhao otherwise claimed he relied on "████████████████████████████," Publishers' other technical expert. *Id.* at 148:6-25, 125:22-127:4, 130:23-131:11.

## LEGAL STANDARD

The party offering expert testimony bears the burden of admissibility. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1048-50 (9th Cir. 2025). "The role of an expert is to provide specific expertise so that a fact finder can make its own decisions" based on the evidence. *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 2019 WL 6327210, at *2 (N.D. Cal. Nov. 26, 2019). "[E]xpert testimony should be excluded '[w]here the jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of drawing its own inferences.'" *Siquieros v. General Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022) (second alteration in *Siquieros*) (quoting *Huawei Techs.*,

*Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 992 (N.D. Cal. 2018)). An expert opinion also "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology," *Engilis*, 151 F.4th at 1049 (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). "Expert testimony is not admissible if it is … unsupported by sufficient facts or contrary to the facts of the case." *Samsung Elecs. Co. v. Quanta Comput., Inc.*, 2006 WL 2547452, at *13 (N.D. Cal. Sept. 1, 2006).

## ARGUMENT

### I.    Zhao Cannot Opine On Anthropic's Intent, Motive, Or State Of Mind

Zhao's opinions and statements about Anthropic's purported knowledge, motive, or state of mind are legally improper. Purported "expert" testimony about a party's state of mind has "no basis in any relevant body of knowledge or expertise." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1321 (S.D. Cal. May 20, 2020). Because "[t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018).

Zhao offered opinion after opinion about Anthropic's or its employees' supposed knowledge or state of mind. For example, he opined that:

- "████████████████████████████████████████████ ████████████ [.]" Ex. 1 ¶ 81; *see id.* ¶¶ 10, 84, 86, 96; Ex. 2 ¶¶ 10, 36-39, 41, 68-69, 93-94, 99, 110; Ex. 3 ¶¶ 21, 45, 49, 54, 100.

- "████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████." Ex. 1 ¶ 82; *see also id.* ¶¶ 88, 96-97; Ex. 2 ¶ 38; Ex. 3 ¶ 47.

- "████████████████████████████████████████████ ████████████████████" when Claude "████████████████████." Ex. 1 ¶ 113; *see id.* ¶¶ 109-110, 114, 124, 136; Ex. 2 ¶¶ 122-124; Ex. 3 ¶¶ 114, 117.

Zhao boldly concluded that Anthropic designed Claude to reproduce lyrics after reviewing two pieces of evidence: a handpicked subset of prompts used to teach training models (not Claude directly) helpfulness, Ex. 1 ¶¶ 78-84, and a handful of internal employee prompts related to song lyrics, *id.* ¶¶ 86, 95-96; Ex. 2 ¶ 38. As to his opinions about Anthropic's supposed knowledge of the sufficiency of its guardrails, he relied on internal Anthropic documents, Ex. 1 ¶ 113, and deposition testimony about those same documents from Anthropic officials, *id.* ¶ 114. Notably, Zhao's opinions are not based on any of the source code or training data that Anthropic made available to him. Ex. 4 at 124:11-127:23.

None of the documents or testimony Zhao reviewed requires expert analysis or testimony to understand. In his own words, Zhao's opinions were based only on ███████████████ ████████████████████████. *E.g.*, *id.* at 433:7-16. But drawing conclusions about Anthropic's state of mind from evidence is the exclusive province of the jury. Courts regularly exclude expert testimony on subjects the factfinder can readily understand on their own, *United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 & n.3 (9th Cir. 2000) (excluding testimony about a driver's "nervousness"), or that "substitut[e] the expert's judgment for the [factfinder's]," *Oracle Am.*, 2018 WL 6511146, at *3. And although Zhao may purport to have insight into how LLMs function technically, that knowledge does not give him any basis to opine on ***Anthropic's corporate intent***. *See Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, 698 F. Supp. 3d 1145, 1153 (N.D. Cal. 2023) (explaining a product's capabilities do not establish intent).

The Court should therefore exclude ¶¶ 10, 64, 72, 82, 84, 86, 88, 93, 96-97, 109-110, 113-114, 124, 136 of the Zhao Opening Report (Ex. 1); ¶¶ 10, 36-39, 41, 68-69, 93-94, 99-100, 103, 110, 122-124 of the Zhao Rebuttal Report (Ex. 2); and ¶¶ 21, 45, 47, 49, 54, 100, 114, 117 of the Zhao Reply Report (Ex. 3).

## II.    ZHAO'S OPINIONS ON THE EFFECTIVENESS OF ANTHROPIC'S GUARDRAILS ARE NOT THE PRODUCT OF ANY RELIABLE METHODOLOGY APPLIED TO RELEVANT EVIDENCE

Zhao's opinions about the effectiveness of Anthropic's guardrails have no factual or methodological basis and thus should be excluded. Under Rule 702, an expert's conclusions may "not go beyond what the expert's basis and methodology may reliably support." *Engilis*, 151 F.4th

**PUBLIC REDACTED VERSION**

at 1049. For his opinions regarding Anthropic guardrails before November 7, 2023, Zhao requested lyrics to **only four WIS**. For his opinions regarding guardrails after that date, Zhao conducted no testing at all. In both instances, Zhao tries to buttress his opinions with the work of others, but experts cannot parrot the analyses of others, and none of those sources support his opinions anyway.

### A.    Zhao Has No Basis For Opining On The Effectiveness of Anthropic's Guardrails *Before* November 7, 2023

Zhao has no reliable basis to offer expert testimony on the effectiveness of Anthropic's guardrails *prior* to November 7, 2023. Zhao did not disclose the entirety of his November 7 testing. *Compare* Dkt. 47-2, *with* Ex. 5. But the record demonstrates it was extraordinarily limited. The conversation showed that Zhao **only requested lyrics to four WIS** out of 499. Ex. 5.

Courts "routinely exclude expert testimony where opinions are derived from incomplete or unrepresentative data." *Tetrault v. Capital Grp. Cos.*, 2025 WL 3154657, at *5 (C.D. Cal. Aug. 20, 2025). Zhao's full conversation with Claude showed Claude refusing to output lyrics in response to four separate requests. Ex. 5. Zhao disclosed only two of those refusals. Dkt. 47-2 at 6-7. And Zhao did not disclose that he used jailbreaking prompts, like telling Claude that he was ▮▮▮▮▮," to try and obtain information about Claude's training data. Ex. 5.

In addition to the limited testing he failed to fully disclose to the Court, Zhao also purported to rely on academic research and Publishers' own pre-suit investigation. *See* Dkt. 47 ¶¶ 42-45; Ex. 1 ¶¶ 117-119 & n.182 (citing ▮▮▮▮▮▮▮▮▮▮). Neither provides a reliable basis for his opinions.

*First*, Zhao invoked a set of third-party research studies about LLM guardrails, only some of which addressed Claude and none of which addressed song lyric reproduction. *E.g.*, Ex. 4 at 131:13-132:6, 301:20-302:25. But "when an expert merely relies on the work and evaluations of others and conduct[s] no independent testing of his own, the expert's testimony is not reliable under Rule 702." *Scientific Apps. & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2025 WL 4108875, at *5-6 (N.D. Cal. Apr. 11, 2025). Zhao has not contributed any expertise on this subject, and his testimony would not be helpful to the jury.

Indeed, it would be misleading because these studies do not even support Zhao's opinions.

They either (1) discussed guardrails and jailbreaking techniques unrelated to Claude[3] or (2) analyzed Claude collectively with other LLMs, *and* did not test for song-lyric reproduction specifically.[4] Zhao admitted at his deposition that ███████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████. Ex. 4 at 228:3-24, 301:20-302:25.

*Second*, Zhao relied on a set of prompts and outputs from Publishers' pre-suit investigation that Publishers' investigator disclosed in the Seymour Declaration. Dkt. 49 ¶¶ 7, 8; Dkt. 49-2; Dkt. 49-3. But Publishers cannot leverage their pre-suit investigation as a sword to criticize the effectiveness of guardrails, while shielding the details of that investigation from their experts, Anthropic, and this Court. Publishers recognized this and disclaimed reliance on the investigation for this purpose to avoid a waiver finding. 3/26/26 Hr'g Tr. 33:17-19 ("[T]hat pre-suit evidence was not being offered to test the effectiveness of the guardrails, it was being offered for the purpose of establishing the existence of infringement.") (Ex. 7). Having wielded privilege to shield evidence of how often Claude's guardrails prevented Publishers from obtaining lyrics in outputs, Dkt. 564 at 2 n.4, Publishers may not now leverage this same evidence "as a sword." *Columbia Pictures Tv., Inc. v. Krypton Broadcast. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001).[5]

The Seymour Declaration's prompts and outputs also cannot form the basis for a guardrails-effectiveness opinion because they are nonrepresentative. Courts routinely exclude as misleading and unreliable expert testimony based on only a "limited inspection" of "cherry picked" data that is "not representative." *In re Macbook Keyboard Litig.*, 2021 WL 1250378, at *7 (N.D. Cal. Apr. 5, 2021). Here, Publishers again strategically selected which prompts and outputs to disclose. Candore Deposition Transcript (Ex. 8) 25:3-19, 162:7-25, 195:8-197:4, 198:15-199:22, 262:23-263:5. And their investigator has since admitted that Publishers' investigation declarations only disclosed instances where a prompt showed lyric regurgitation, but not instances where the very same prompt resulted in Claude refusing to produce lyrics. *See id.* at 195:8-197:4. The curated set provided by

---

[3] *See, e.g.*, Ex. 2. nn.10, 76-77; Ex. 3 nn.27, 50, 143.
[4] *See, e.g.*, Ex. 1 nn.162, 222; Ex. 2 nn.11, 73, 75; Ex. 3 nn.23, 28, 50, 172.
[5] This motion seeks relief under *Daubert* and does not address the appropriate remedy for Publishers' selective waiver of work-product.

**PUBLIC REDACTED VERSION**

counsel is not a representative sample of Publishers' investigation prompts and outputs, let alone of Claude usage more generally, *id.* at 106:3-16. The examples from the Seymour Declaration cannot bear the weight that Zhao placed on them.

**B.      Zhao Has No Basis For Opining On The Effectiveness of Anthropic's Guardrails *After* November 7, 2023**

In his report, Zhao repeatedly opined on the ongoing effectiveness of Claude's copyright safeguards and guardrails. *See* Ex. 1 ¶¶ 10, 133-139. For example, he stated:

- "█████████████████████████████████████████████████████████████████ █████████." *Id.* ¶ 136.

- "█████████████████████████████████████████████████████████████████ ████████████████████████" *Id.* ¶ 138.

These opinions purport to opine on the ***current*** effectiveness of Anthropic's guardrails. *See, e.g.*, *id.* ¶ 133. Yet they are predicated on guardrails "testing" Zhao conducted on November 7, 2023, shortly after this lawsuit was filed and ***before*** Anthropic augmented its guardrails. When asked about this gap, Zhao pointed to three bases for his post-November 7, 2023 opinions. None is reliable.

*First*, Zhao relied on the same academic studies addressed above. Ex. 4 at 131:13-132:6. But here too he merely parroted the work of others, so those studies offer no support. *Supra* at 7-8.

*Second*, Zhao pointed to the analysis of Shawn Shan, Publishers' other technical expert. Ex. 4 at 148:6-25. But an expert cannot base their conclusions "entirely[] on the observations of another expert." *Scientific Apps. & Rsch. Assocs. (SARA), Inc.*, 2025 WL 4108875, at *5-6. Again, "when an expert merely relies on the work and evaluations of others and conduct[s] no independent testing of his own, the expert's testimony is not reliable under Rule 702." *Id.* at *5.

*Third*, Zhao revealed for the first time in his deposition that he engaged in unspecified "█ █" interactions with Claude after November 7, 2023. Ex. 4 at 131:13-24. But "courts often deem unreliable testing that is ad hoc and does not proceed according to a standardized protocol." *Pascal v. Nissan N. Am., Inc.*, 2022 WL 19076763, at *9 (C.D. Cal. Dec. 21, 2022). Moreover, Zhao repeatedly equivocated on whether he was relying upon these interactions. Ex. 4 at 50:10-21, 130:7-132:6, 133:13-135:22, 144:19-145:20, 148:6-25, 250:9-22. And when questioned about them, Zhao

██████████████████████████████████████████████. *Id.* at 128:21-129:14, 250:24-252:11, 304:16-23. That error is "fatal." *Heisler v. Maxtor Corp.*, 2011 WL 1496114, at *8 (N.D. Cal. Apr. 20, 2011). "An opinion based on … unsubstantiated and undocumented information is the antithesis of … scientifically reliable." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422-1423 (9th Cir. 1998); *see* Fed. R. Civ. P. 26(a)(2)(B)(ii) (expert reports must disclose "the facts or data considered by the witness").

Zhao thus has no reliable basis to offer expert testimony on the effectiveness of Anthropic's guardrails after November 7, 2023. That date is consequential because Anthropic significantly strengthened Claude's guardrails thereafter. Around November 13, 2023, Anthropic added the WIS to its ██████████████████. Def.'s Am. Suppl. Resp. to Pls.' Rogs. 9, 11, 12 at 13 (Nov. 12, 2025) (Ex. 6). And around December 19, 2023, Anthropic implemented the first version of ██████ ██████ which detects when a user's prompt seeks outputs that may infringe copyrights and instructs Claude not to provide such outputs. Ex. 6 at 12-13. Anthropic continues to improve its guardrails to this day. Zhao acknowledges these changes and confirms he did not conduct any standardized testing after their implementation. *See* Ex. 1 ¶¶ 120, 128, 130; Ex. 4 at 148:6-25, 150:1-15. Because Zhao did not conduct any testing after November 7, 2023, his opinions entirely fail to account for these material changes and therefore lack any reliable basis.

The Court should therefore exclude Zhao's Opening Report (Ex. 1) ¶¶ 10, 112-116, 119, 121, 123-125, 127-136, 138-139, 145, 147, 149, 150; Rebuttal Report (Ex. 2) ¶¶ 116-119, 124; and Reply Report (Ex. 3) ¶¶ 41-42, 107-112, 115, 117, 119.

## CONCLUSION

For these reasons, the Court should exclude Ben Zhao's state of mind and guardrails opinions.

**PUBLIC REDACTED VERSION**

Date: March 31, 2026

/s/ *Sonal N. Mehta*

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
DISHA PATEL (*Pro Hac Vice*)
disha.patel@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

TAYLOR GOOCH (SBN 294282)
taylor.gooch@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
50 California St.
San Francisco, CA 94111
Telephone: (628) 235-1000

JARED V. GRUBOW (*Pro Hac Vice*)
jared.grubow@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
250 Greenwich St
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Defendant*
**ANTHROPIC PBC**

**PUBLIC REDACTED VERSION**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, I did cause this motion to be served on the following listed below and in the manner so indicated.

**By Electronic Mail**

OPPENHEIM + ZEBRAK, LLP
Matthew J. Oppenheim (*Pro Hac Vice*)
Nicholas C. Hailey (*Pro Hac Vice*)
Audrey Adu-Appiah (*Pro Hac Vice*)
Corey Miller (*Pro Hac Vice*)
Jeffrey M. Gould (*Pro Hac Vice*)
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com
corey@oandzlaw.com
jeff@oandzlaw.com

COBLENTZ PATCH DUFFY & BASS LLP
Jeffrey G. Knowles
Christopher J. Weiner
Bina Patel
Thomas A. Harvey
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 772-5795
Ef-jgk@cpdb.com
cwiener@coblentzlaw.com
bpatel@coblentzlaw.com
Ef-Tah@cpdb.com

Jennifer Pariser (*Pro Hac Vice*)
Andrew Guerra (*Pro Hac Vice*)
Timothy Chung (*Pro Hac Vice*)
Michelle Gomez-Reichman (*Pro Hac Vice*)
Bret Matera (*Pro Hac Vice*)
Alexander Kaplan (*Pro Hac Vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com
bmatera@oandzlaw.com
alex@oandzlaw.com

COWN, LEIBOWITZ & LATMAN, P.C.
Richard S. Mandel (*Pro Hac Vice*)
Jonathan Z. King (*Pro Hac Vice*)
Richard Dannay (*Pro Hac Vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

Dated: March 31, 2026

By:  */s/ Robin C. Burrell*
　　　Robin C. Burrell