**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | Case Number: 5:24-cv-03811-EKL-SVK |
| Plaintiffs, | |
| v. | **PUBLISHERS' SUPPLEMENTAL BRIEF IN OPPOSITION TO ANTHROPIC'S MOTION FOR RELIEF FROM MAGISTRATE JUDGE VAN KEULEN'S ORDERS, ECF NO. 564** |
| ANTHROPIC PBC, | |
| Defendant. | Judge Eumi K. Lee |
| | Magistrate Judge Susan van Keulen |

Case No. 5:24-cv-03811-EKL-SVK
**PUBLISHERS' SUPPLEMENTAL BRIEF IN OPPOSITION TO ANTHROPIC'S MOTION FOR RELIEF, ECF NO. 564**

Anthropic's Motion For Relief From Nondispositive Pretrial Order Of Magistrate Judge (the "Motion") seeks "account information of Publishers and their employees, agents, investigators, or counsel ('Publishers' Account Information') used to generate any prompt output pair as part of any investigation for this case that created the evidence Publishers acknowledge they intend to rely on to prove their claims." ECF No. 564 at 2. The Motion seeks Publishers' Account Information for a limited purpose: so that Anthropic can "distinguish true third-party prompts and outputs from those generated by Publishers." *Id.* at 2.

Publishers have offered to provide Anthropic this requested information, to avoid further burden to the Court and so that the Parties can proceed to resolving the merits of Publishers' claims.

Specifically, during the Parties' meet and confer on March 30, 2026, Publishers offered to produce information sufficient to identify all prompt-output pairs in Anthropic's production that were generated by Publishers as part of their investigation. Each prompt-output pair produced by Anthropic has a "UniqueID": a unique identifier tied to the specific email account used to generate the record. Publishers offered to identify the UniqueIDs for each known account associated with Publishers' investigation that generated prompt-output records produced in this case. Publishers made this offer subject only to conditions intended to prevent misuse of this highly sensitive information and to preserve arguments against waiver; those conditions do not limit Anthropic's ability to "distinguish true third-party prompts and outputs from those generated by Publishers." Anthropic largely agreed to those conditions. Decl. of Keith Howell in Supp. of Publishers' Suppl. Br. in Opp. to Anthropic's Mot. for Relief from Magistrate Judge Van Keulen's Orders, ECF No. 564 Ex. A (Publishers' draft stipulation); *id.* Ex. B (related correspondence). Further, as Anthropic "ask[ed] the Court to amend the Orders to compel discovery (via Anthropic's *interrogatories* and 30(b)(6) topics) of account information . . . ," ECF No. 564 at 1–2 (emphasis added), Publishers agreed to provide the verified supplemental interrogatory responses Anthropic's motion seeks.

That should be the end of Anthropic's Motion. Production of this information will allow Anthropic to "distinguish true third-party prompts and outputs from those generated by Publishers," ECF No. 564 at 2, and confirm beyond a doubt what has long been clear: third parties have used Claude to search for and obtain lyrics in a variety of ways. Yet Anthropic rejected that offer,

demanding that Publishers submit to unduly onerous and unjustified verification requirements, including "declarations under oath from a representative for each Publisher, a representative from Oppenheim and Zebrak LLP and any other law firm involved in the prompts and outputs at issue, a representative from BCGuardian and any other investigator involved in the prompts and outputs at issue, and each expert retained by Publishers included in the production . . . that (a) the list of Unique IDs provided by Publishers is accurate and complete and (b) that all prompts (and resulting outputs) generated by their entity in connection with their work on or related to this case were preserved. . . ." Howell Decl. Ex. C. There is no basis for Anthropic's demands. A party cannot demand, in response to an interrogatory, detailed fact declarations from entities on whom the interrogatory was not served. Nor could many of those individuals verify UniqueIDs to which they do not all have access. And preservation simply has nothing to with Anthropic's Motion.

Anthropic's laundry list of other grievances—raised at the March 26, 2026 hearing but not in Anthropic's Motion—are not properly before the Court. Magistrate Judge Van Keulen has already determined both that Publishers' unproduced prompt-output records from their pre-suit investigation are protected attorney opinion work product and that Publishers have not fully waived that protection. ECF No. 545 at 5–6. Anthropic's Motion did not object to that portion of Magistrate Judge Van Keulen's order, nor did its Motion seek production of all of Publishers' unproduced investigatory prompt-output records. ECF No. 564. Anthropic's other waiver arguments are not ripe. There is no basis to address those arguments now on an incomplete record.

In any event, there has been no waiver. Publishers' Motion for Partial Summary Judgment moved for summary judgment on Anthropic's direct infringement of Publishers' 499 Works in Suit and on Anthropic's fair use defense. To support those claims, Publishers rely on Publishers' investigation to establish that Claude generated output copying all 499 Works in Suit and that Claude output Publishers' lyrics in response to a variety of prompts. Publishers' Summary Judgment Motion neither relies on nor puts at issue any unproduced prompt-output records.

## BACKGROUND

Pre-suit, Publishers investigated infringement of the Works in Suit by Anthropic. Post-suit Publishers investigated the supposed efficacy of Anthropic's litigation-inspired guardrails. Am.

Compl. Ex. B, ECF No. 337-2; Pls.' Statement Pursuant to May 13 Order (ECF No. 365) at 1–2, ECF No. 369. Consistent with precedent, Magistrate Judge van Keulen held that Publishers' "prompts and related settings themselves are opinion work-product because they reflect 'queries crafted by counsel and contain counsel's mental impressions and opinions about how to interrogate an AI agent.'" ECF No. 545 ("December 18, 2025 Order") at 3; *see also, e.g.*, ECF No. 377 at 3.

Nevertheless, Magistrate Judge van Keulen ordered extensive discovery into Publisher's pre- and post-suit investigations based on finding a limited waiver. For the pre-suit investigation, Publishers long ago affirmatively produced all approximately 5,000 prompt-output pairs on which they will rely. ECF No. 545 at 1; ECF No. 369 at 1–2; *see, e.g.*, Howell Decl. Ex. D (example from Publishers' investigation). For the post-suit investigation, Publishers' Court-ordered production was even broader and included "all (*i.e.*, negative as well as positive) prompts and outputs submitted by [Publishers'] investigators and client-witnesses during the post-suit investigation." ECF No. 545 at 5. Additionally, Publishers produced "granular statistics" regarding the total number of prompts Publishers submitted in their pre-suit investigation, their post-suit investigation, and contained in the 5-million-record Claude sample produced by Anthropic, along with statistics showing how often the prompts resulted in outputs containing song lyrics or guardrails.. ECF No. 545 at 7-8; ECF No. 478 at 6. Anthropic has declined to provide email addresses associated with allegedly infringing Claude output, which could be used to differentiate between Publishers' and third-party records. Instead, the Parties previously agreed on a protocol to allow Publishers to confirm the UniqueIDs corresponding to Publishers' prompt-output records in Anthropic's data, without disclosing that information to Anthropic. Howell Decl. Ex. E (correspondence). Records with those UniqueIDs were excluded from the set of third-party records Publishers cite in their Motion for Partial Summary Judgment, ECF No. 594 ("Summary Judgment Motion") and from the set of records reviewed by Publishers' expert Joshua Dennis.[1]

---

[1] Anthropic has identified one post-suit Claude record Anthropic contends was not timely disclosed by one of Publishers' experts. ECF No. 661 at 3–4. Publishers are investigating this issue and have asked that Anthropic provide the email address associated with this record so that Publishers can confirm whether it corresponds to any account maintained by the expert. Publishers intend to promptly notify Anthropic of the results of its investigation and to make any necessary corrections.

**ARGUMENT**

Publishers have not put at issue undisclosed Publisher Claude prompts and outputs. Magistrate Judge van Keulen found that, "As to Publishers' pre-suit investigation, according to Publishers' representations, any testimony relating thereto (and the prompts and outputs themselves) will be used to support liability arising from one of the Works-in-Suit appearing as output and to demonstrate the 'ease-of-use' of Claude for infringement and thus Anthropic's 'willfulness,' as alleged." ECF No. 545 at 5. That is how Publishers used evidence from their pre-suit investigation in their Summary Judgment Motion. *See* ECF Nos. 594, 594-1.

As their Summary Judgment Motion makes clear, Publishers rely on the results of this pre-suit investigation to establish Anthropic directly infringed the 499 Works in Suit: "Publishers' investigation shows Claude generated verbatim or near-verbatim copies of the lyrics to each of Publishers' 499 Works in Suit in response to direct requests for those lyrics," ECF No. 594 at 15, and also generated output copying certain lyrics "in response to dozens of indirect requests and prompts for derivative works." *Id.* Publishers cite and include every prompt-output record from their investigation on which they rely. Publishers also note in passing the self-evident observation that, given that Claude generated this infringing output, any guardrails that may have been in place pre-suit did not prevent this particular output. *Id.* at 11. But Publishers' Summary Judgment Motion does not make any arguments regarding the specific efficacy of Anthropic's pre-suit guardrails (i.e., the frequency of blocked output), which is not directly relevant to any of the issues in Publishers' Summary Judgment Motion. Publishers did not move for summary judgment on their secondary infringement claims, but Publishers anticipate their proof of those claims at trial similarly will neither rely on nor put at issue any unproduced records from Publishers' pre-suit investigation.

Anthropic exaggerates the extent to which Publishers' experts rely on Publishers' pre-suit investigation. These matters should be resolved on a full record in the context of *Daubert* motions. Publishers' expert Dr. Zhao does not rely on Publishers' pre-suit investigation for his opinions regarding the general efficacy of Anthropic's guardrails. Instead, this opinion primarily "relied on published research from the academic community" regarding the effectiveness of LLM guardrails. ECF No. 662-4 130:23–131:11. Dr. Zhao cites to the pre-suit investigation in just two contexts.

First, Dr. Zhao mentions that Anthropic's guardrails "did not prevent Claude from reproducing verbatim or near-verbatim versions of Publishers' lyrics to the 499 Works in Suit[,]" and, similarly that "Publishers were able to obtain the lyrics to all the Works in Suit after [a given date], demonstrating the ineffectiveness of the [protections in place at the time] as a functioning guardrail." ECF No. 662-1 ¶¶ 112, 119 (Zhao Report). Second, he opines that "[Anthropic's] finetuning data indicates that the types of prompts directed to Claude by Publishers . . . are exactly the sort that Anthropic expected ordinary users of Claude would construct." Zhao Report ¶ 83. These statements do not suggest the frequency with which Anthropic's pre-suit guardrails failed.

Likewise, Publishers' expert Mr. Dennis analyzed the prevalence of song- and lyric-related prompts in the 5-million-record Sample and categorized other Claude records relating to the Works in Suit. But Mr. Dennis did not rely on any unproduced Claude prompt-output records from Plaintiffs' investigation, nor on any prompts known to be submitted by Publishers' client-witnesses, investigators, or counsel. *See* ECF No. 665-2 ¶ 56 (Dennis Report).

Anthropic has not substantiated its "high suspicion that some of what [Publishers are] counting as third party [prompts] may, in fact, not be true third party" prompts because some of these records allegedly "verbatim match" investigator records. Howell Decl. Ex. F 10:15–24 (March 26, 2026 Hr'g Tr.). Anthropic did not identify any such prompts in the Motion or at the hearing. To date, Anthropic has identified only one such record, but Anthropic is mistaken that this one prompt-output pair, cited in Anthropic's *Daubert* motion relating to Mr. Dennis, "match[es] verbatim," ECF No. 664 at 4, an investigator record cited in the Amended Complaint. *Compare* Am. Compl. ¶ 99 (investigator's record: "Here are the chords for the song 'Daddy Sang Bass' by Johnny Cash"), *with* ECF No. 665-6 (ANTH_SAMPLE000291792) (output with different language). Further, the Complaint quoting that investigator's record was filed on October 18, 2023, ECF No. 1 ¶ 76, while the third-party record Anthropic identifies was generated over two weeks later. ECF No. 665-6 (ANTH_ SAMPLE000291792SAMPLE000293475) (showing it was generated on "2023-11-03"). To the extent Anthropic identifies any other records it believes have been miscategorized, Publishers will promptly investigate and address any such issues as necessary.

Dated: April 3, 2026

Respectfully submitted,

*/s/ Matthew J. Oppenheim*
**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
aadu-appiah@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*