**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case Number: 5:24-cv-03811-EKL-SVK <br><br> **PLAINTFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. BEN ZHAO, PHD** <br><br> **REDACTED** <br><br> Judge Eumi K. Lee <br> Magistrate Judge Susan van Keulen |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ....................................................................................................................... 1

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ............................................................................................................................ 3

I.    Dr. Zhao's opinions concerning Anthropic's design choices and Claude's capabilities are admissible. ................................................................................ 3

    A.    Dr. Zhao applies specialized knowledge to provide factual testimony about Anthropic's design choices and guardrails....................... 4

    B.    Anthropic's Motion is best addressed by objections at trial. ..................... 6

II.    Dr. Zhao has sufficient and numerous bases to opine on Claude's guardrails. ................................................................................................................ 7

    A.    Anthropic cannot raise work-product waiver arguments in a Daubert motion. ...................................................................................................... 7

    B.    Dr. Zhao relies on sufficient and numerous sources of data. ..................... 8

CONCLUSION........................................................................................................................ 10

## **INTRODUCTION**

To help the jury make sense of Anthropic's complex technology, Publishers have offered the expert opinions of Dr. Ben Zhao, a longtime professor of computer science at the University of Chicago and a leading researcher in the field of artificial intelligence. In response, Anthropic files its Motion to Exclude Expert Testimony and Opinions of Ben Zhao ("Mot." or "Motion"), ECF No. 661, to suppress Dr. Zhao's helpful testimony for fear of disclosing facts and opinions that contradict Anthropic's public narratives. ***First***, Anthropic targets Dr. Zhao's opinions explaining the significance of Anthropic's design decisions, including by highlighting Anthropic's employee-generated records in context. Dr. Zhao's opinions are necessary to help the trier of fact understand: (1) Anthropic's design and fine-tuning processes; (2) Claude's ability to output lyrics; (3) Anthropic's evaluation of its own copyright mitigation systems; and (4) the technologies underlying those systems. Dr. Zhao grounds these opinions in record evidence or scientific literature, to which he applies his expertise. This is proper opinion testimony from an expert positioned to opine on such matters, not improper "state of mind" testimony, as Anthropic asserts.

***Second***, Anthropic's justifications for excluding Dr. Zhao's opinions concerning the efficacy of copyright guardrails—also well within his expertise—on the basis he did not himself conduct extensive empirical testing of Claude's guardrails, are flawed both factually and legally. Factually, Dr. Zhao's opinions do not rely on empirical testing but instead primarily critique the technologies and implementation of Anthropic's guardrails. Legally, it is well established that an expert can, as Dr. Zhao did, rely on another expert's findings and incorporate them into his own analysis. Finally, Anthropic's argument that Dr. Zhao's opinion implicates work-product waiver should fall on deaf ears: the Magistrate Judge repeatedly rejected Anthropic's waiver argument, Anthropic chose not to appeal those rulings, and work-product waiver is not a basis to exclude expert testimony under Federal Rule of Evidence 702. The Court should deny Anthropic's motion.

## **BACKGROUND**

Dr. Ben Zhao is the Neubauer Professor of Computer Science at the University of Chicago, a Fellow of the Association for Computing Machinery, co-director of the UChicago Security, Algorithms, Networks, and Data (SAND) Lab, and a highly qualified researcher and expert whose

work in machine learning, computer science, cybersecurity, and deep learning has earned him myriad best-paper awards and project funding from the National Science Foundation, Department of Defense, and various industry research groups. Dr. Zhao has also been named Fellow of the Association for Computing Machinery (ACM), MIT Technology Review Young Innovator, and one of the 100 most influential people by TIME Magazine in 2024. Based on his extensive experience and substantial work and analysis in this litigation, Dr. Zhao submitted an opening expert report dated December 19, 2025 ("Report"), ECF No. 663-1, a rebuttal expert report dated January 23, 2026 ("Rebuttal"), ECF No. 663-2, and a reply expert report dated February 13, 2026 ("Reply"), ECF No. 663-3. Among the many opinions Dr. Zhao offers in his reports is relevant testimony explaining Anthropic's design choices for its Claude AI products, the fine-tuning processes used in training to help Claude respond to requests about song lyrics, as well as the technologies behind Claude's copyright mitigation systems or guardrails and their shortcomings.

In his reports, Dr. Zhao explains that fine-tuning an LLM is the process of training the model to "perform specific tasks or reinforce certain behaviors," and that "[t]he fine-tuning process incurs a significant portion of the overall model training costs, and fine-tuning tasks are chosen intentionally." Report ¶¶ 81, 84; *see also* Rebuttal ¶¶ 15–17 (explanation of how fine-tuning adapts LLMs to downstream tasks). Based on this testimony, Dr. Zhao opines that evidence from Anthropic's fine-tuning "indicate[s] that Anthropic deliberately designed Claude to have the functionality to provide lyrics to well–known songs and create new lyrics in response to user requests" and that this evidence contradicts Anthropic's assertion that Claude is not designed to output copyrighted material. Report ¶¶ 81, 84; *see also* Reply ¶¶ 43–55 (discussion of "helpfulness" fine-tuning data and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is evidence of "design choices for Claude" that leads to lyric regurgitation). Dr. Zhao explains that, "if Anthropic did not intend for Claude to be able to respond to song- or lyric-related requests, Anthropic would not have ▓▓▓▓▓▓▓▓▓▓▓▓ during the fine-tuning process." Report ¶ 84.

Dr. Zhao also evaluates Claude's guardrails in detail, including the underlying technologies, Anthropic's implementation of those technologies, and the shortcomings of those technologies and their implementation. *See id.* ¶¶ 111–32 (providing overview of guardrail systems and underlying

technologies). Dr. Zhao opines that Claude's guardrails are fundamentally unreliable and porous, including by (1) explaining how the guardrails' structural features limit the ability to prevent infringing output; (2) identifying examples of guardrail failures; (3) explaining how Anthropic's approaches to guardrails are vulnerable to human error and maintenance failures; (4) noting how ██████████████████████████████; and (5) describing how using ███████ ███████████████████ the guardrails. *Id.* ¶¶ 111–32, 134–39; Rebuttal ¶¶ 57–60, 116–19; Reply ¶¶ 18–19, 40–42, 105–12. As part of that evaluation, Dr. Zhao observes that Anthropic employees suggested Anthropic "████████████████████████████████████████████████████████ ████████████████████████████████████████." Report ¶ 113. For example, Dr. Zhao identifies instances where Anthropic employees stated that Claude's guardrail systems were "████████████████████████," *id.* ¶ 123, or were "█████████." *id.* 132 (emphasis added).

## LEGAL STANDARD

Expert testimony is admissible where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is sufficiently reliable. Fed. R. Evid. 702. The court acts as a gatekeeper for such testimony, "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "The rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000).

## ARGUMENT

I.    **Dr. Zhao's opinions concerning Anthropic's design choices and Claude's capabilities are admissible.**

Dr. Zhao's opinions about Anthropic's design choices for Claude and its copyright mitigation systems rely on his "scientific, technical, or other specialized knowledge" and will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). *First*, Dr. Zhao grounds his opinions in analysis of Anthropic's internal documents, testing records, and employee

communications using his specialized knowledge in LLM development and computer science. Dr. Zhao does not speculate about Anthropic's design intentions or knowledge concerning Claude's guardrails, but rather grounds his opinions in factual and technical analysis, not mere conjecture about Anthropic's state of mind. ***Second***, Dr. Zhao's testimony critically assists the trier of fact to understand the implications of Anthropic's affirmative design decisions that enabled Claude to output song lyrics and Anthropic's awareness of and ability to implement copyright mitigation systems to prevent infringing outputs. Accordingly, his testimony is admissible.

## A. Dr. Zhao applies specialized knowledge to provide factual testimony about Anthropic's design choices and guardrails.

Dr. Zhao grounds his analysis of Anthropic's design choices in relevant expertise and the significant factual record. "[T]he knowledge of various [Anthropic] witnesses . . . is likely relevant and admissible if there is a basis in the record for those experts to testify, *e.g.*, from their review of defendants' documents or deposition testimony," and an "[expert] can opine based on what [a party] knew as long as there is an evidentiary basis to support it." *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 1814440, at *14, *19 (N.D. Cal. June 2, 2022),.

These are precisely the circumstances presented here. Dr. Zhao analyzes Anthropic's internal documents, Claude testing records, and employee communications, which reveal: (1) Anthropic's affirmative design choices enabling Claude to output song lyrics;  and (2) employees' views on the sufficiency of copyright mitigation systems. In fact, Anthropic's Motion identifies several sufficient bases for Dr. Zhao's testimony: a "subset of prompts [from Anthropic employees] used to teach training models (not Claude directly) helpfulness, . . . internal employee prompts related to song lyrics, . . . internal Anthropic documents, and deposition testimony about those same documents from Anthropic officials." Mot. at 6 (internal citations omitted). Dr. Zhao does not offer baseless or speculative testimony about Anthropic's subjective intent or state of mind. Instead, based on his analysis, he offers "opinions on facts, as well as on technical analysis of design documents, that [Publishers] believe[] tend to show intent, which is generally permissible." *Medtronic, Inc. v. Axonics Modulation Techs., Inc.*, 2024 WL 4406929, at *36 (C.D. Cal. Aug. 29, 2024). Anthropic is thus wrong that Dr. Zhao's opinions have "no basis in any relevant body of

knowledge or expertise." Mot. at 5 (quoting *Aya Healthcare Servs. Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1321 (S.D. Cal. May 20, 2020)).

Dr. Zhao's expertise and specialized knowledge enable him to explain the much-needed context of Anthropic's fine-tuning records—including *why* Anthropic employees would have submitted the relevant prompts to its models during the fine-tuning process—and discussions about copyright mitigation systems. For instance, Dr. Zhao relies on his expertise to explain how Anthropic's design decisions and fine-tuning efforts reflect necessary and deliberate steps taken to enable certain Claude functionalities. *See, e.g.,* Report ¶¶ 81, 84 (explaining the purpose and context of fine-tuning); *id.* ¶ 82 (Anthropic's fine-tuning reflects knowledge of how customers might use Claude). Similarly, Dr. Zhao applies his specialized knowledge to explain the technologies underlying Anthropic's guardrail systems—and their deficiencies—and the significance of the steps Anthropic took (or did not take) to improve those same systems. *Id.* ¶¶ 111–55. Such testimony helps the trier of fact understand the implications and significance of Anthropic's design decisions taken during Claude's development. Courts in this circuit have routinely held that such inferences about design intent are permitted, particularly where those inferences require specialized knowledge or skills. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 1007 (N.D. Cal. 2022) (expert's opinions about "intent" to target "certain audiences" were admissible where grounded in sufficient foundation); *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1194 (N.D. Cal. 2017) (permitting expert to testify about employees' decision to launch a product "[i]n light of his experience in the industry").

For these reasons, none of the cases Anthropic cites require excluding Dr. Zhao's testimony. Anthropic also misstates the holding in *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.,* by claiming that case holds that "a product's capabilities do not establish intent," Mot. at 6, when the quoted portion only stands for the narrower proposition that the fact a product is "capable of infringing because they meet certain specifications does not necessarily show requisite intent to induce," *see* 698 F. Supp. 3d 1145, 1153 (N.D. Cal. 2023). But Dr. Zhao does not opine on such legal conclusions—*i.e.,* Anthropic's intent to induce infringement or even whether Anthropic

contemplated Claude's ability to infringe. Instead, he opines, based on internal documents, communications, and Claude records, (1) that Anthropic made affirmative design decisions that enabled such functionality; and (2) that Anthropic likely anticipated that users would use Claude to output song lyrics based on its own testing of Claude in which ███████████████████ ███████████. *See* Report ¶¶ 81–97. Such testimony is admissible. *See McCoy v. DePuy Ortho., Inc.,* 2024 WL 1705952, at *17 (S.D. Cal. Apr. 19, 2024) ("While experts generally cannot opine on a defendant's subjective knowledge or intent, they may sometimes address what the defendant should have known.").

In response to Anthropic's assertions that its guardrails prevented the output of copyrighted materials, Dr. Zhao opines that Anthropic employees ███████████████ ███████████████ after Claude's commercial launch. Report ¶ 113 (disputing Anthropic's claim that Claude is not designed to output copyrighted material and that normal users would not seek lyrics from Claude); *id.* n.165 (quoting Anthropic's internal communications). Here, Dr. Zhao offers his opinion in the context of explaining how Anthropic could have implemented additional safeguards at launch, but opted not to do so, and noting Anthropic employees █████ ███████████████████. *Id.* ¶¶ 112–116. "It is proper for [Dr. Zhao] to tell the jury about what safeguards [Anthropic] did or did not employ, what safeguards other companies do or do not employ, and what safeguards [Anthropic] could have employed." *SA Music LLC v. Apple, Inc.,* 592 F. Supp. 3d 869, 903 (N.D. Cal. 2022).

**B. Anthropic's Motion is best addressed by objections at trial.**

While Dr. Zhao's opinions regarding Anthropic's design choices, awareness of Claude's functionality, or views on its guardrails do not impermissibly opine on Anthropic's state of mind, in the event Anthropic contends Dr. Zhao's testimony veers into impermissible territory at trial, Anthropic will have ample opportunity to object at that time. "Generally, 'state of mind' and 'intent' objections are better ruled on at trial: the context of the testimony and the purposes for which it is offered are critical . . . ." *In re Juul Labs, Inc. Mktg.,* 2022 WL 1814440, at *14 (permitting intent and state of mind testimony from multiple experts where objections could be made at trial). Such a course is appropriate here where Anthropic seeks to exclude large sections from Dr. Zhao's expert

reports, including portions that do not touch on issues raised in Anthropic's motion. *See* Mot. at 6 (seeking exclusion of 41 "intent" paragraphs without identifying relevant portions).

As sister courts have done, the Court should "decline[] to engage in a line–by–line analysis of Dr. [Zhao's] report to explain which opinions are improper. Rather, . . . [Anthropic] may raise a contemporaneous objection to any such testimony [at trial]." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1030 (S.D. Cal. 2023); *see also In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 860505, at *6 (N.D. Cal. Mar. 19, 2025) ("[T]he most efficient path here is to defer decisions about state of mind testimony to trial, allowing for objections as need arises.") (citation omitted); *Medtronic*, 2024 WL 4406929 at *36 (declining to exclude testimony regarding intent to induce infringement where "objections to specific questions can be raised at trial").

**II.    Dr. Zhao has sufficient and numerous bases to opine on Claude's guardrails.**

In its overbroad effort to exclude swaths of Dr. Zhao's reports, Anthropic tortures the Federal Rules and caselaw to argue (1) that Dr. Zhao's testimony about the "effectiveness of Claude's guardrails" is inadmissible because he did not conduct sufficient testing of Claude's guardrails; and (2) that, in lieu of testing, Dr. Zhao improperly relies on work-product–protected evidence, academic papers, data collected by other experts, and "ad-hoc" interactions to formulate his opinions. Mot. at 6–10. But Dr. Zhao's efficacy opinions are far more extensive than Anthropic makes them out to be: they encompass overviews of the guardrail systems Anthropic implemented, explanations of underlying technologies, architectural limitations, methods to bypass them, flaws in Anthropic's implementation, and documented instances where guardrails were ineffective. *Supra* 2–3. Each opinion is supported by copious evidence and does not require the support of personal testing by Dr. Zhao. Accordingly, none of Anthropic's arguments support excluding Dr. Zhao's relevant and helpful testimony concerning Claude's guardrails.

**A.    Anthropic cannot raise work-product waiver arguments in a *Daubert* motion.**

In demanding the exclusion of Dr. Zhao's opinion on the basis that he relies on Publishers' investigations—which have been produced—Anthropic improperly seeks to relitigate discovery issues it previously lost. Magistrate Judge van Keulen has repeatedly denied Anthropic's requests for all of Publishers' investigators' pre-suit prompts and outputs on the basis that Publishers have

not waived work-product protection over the prompts and outputs from their pre-suit investigation. *See* ECF Nos. 377 at 2–4; 478 at 6; 545 at 5–6. Having not appealed those orders, Anthropic cannot now collaterally attack them via a *Daubert* motion. Properly withholding privileged records, as confirmed by Court order, cannot be a basis to exclude that expert's opinion under Rule 702. Anthropic cites no case excluding testimony under Rule 702 based on such a work–product waiver argument. Anthropic disingenuously claims its motion "seeks relief under *Daubert* and does not address the appropriate remedy for Publishers' selective waiver of work–product," Mot. at 8 n.5, but Rule 702 and *Daubert* simply have nothing to do with waiver of work-product.

**B.  Dr. Zhao relies on sufficient and numerous sources of data.**

Anthropic separately argues Dr. Zhao's testimony about the effectiveness of guardrails must be excluded because (1) his tests of Claude's guardrails pre-November 7, 2023, were limited; and (2) his reliance on other expert evidence and scientific literature is unreliable. Mot. at 6–10. Neither argument offers adequate grounds for the Court to exclude Dr. Zhao's testimony.

***First***, Anthropic mischaracterizes the nature of Dr. Zhao's opinions. Dr. Zhao focuses most of his guardrail-related opinions on discussing the underlying technologies and their inherent weaknesses, rather than any testing he conducted. Empirical testing of Claude's guardrails for lyrics-related responses is not essential to Dr. Zhao's opinions regarding architectural deficiencies of Anthropic's guardrails. Dr. Zhao's approach also fully complies with Rule 702, which does not require Dr. Zhao to conduct independent testing. To the contrary, Dr. Zhao may rely "on his extensive relevant experience—along with his review of [Anthropic's] documents and identified research and publications—for his opinions on these topics." *In re Juul Labs*, 2022 WL 1814440, at \*18. This he does amply. *See, e.g.,* Report ¶¶ 111–39 and accompanying footnotes; Rebuttal ¶¶ 116–19 and accompanying footnotes; Reply ¶¶ 19–21, 40–42 and accompanying footnotes.

Nor does Dr. Zhao merely "parrot" findings from scientific literature and other researchers, but instead he incorporates them into his own analysis of Claude's guardrails specifically. Anthropic's suggestion that the cited studies do not support Dr. Zhao's opinions because they touch on LLMs generally is also misguided; the applicability of such studies is plainly relevant to guardrail technologies and fragility generally, even if not specific to song lyrics, and Dr. Zhao

explains how these more general findings apply to the specific facts of this case.

**Second**, Anthropic's arguments about the inadequacy of testing ultimately go to the weight of Dr. Zhao's testimony, not their admissibility. "[O]bjections to a study's completeness generally go to the weight, not the admissibility of the statistical evidence, and should be addressed by rebuttal, not exclusion. *Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005) (internal citations omitted). That Dr. Zhao only tested a small number of Claude prompts only "impacts the weight of his opinions and does not require exclusion." *In re Juul Labs, Inc. Mktg.,* 2022 WL 1814440, at *18. The same is true of Dr. Zhao's reliance on the purported "nonrepresentative" Claude records disclosed in the Seymour Declaration, ECF No. 49 ¶¶ 7–9; ECF Nos. 49–2, 49–3.

Anthropic mischaracterizes *In re: MacBook* to claim courts "routinely exclude as misleading and unreliable based only on a 'limited inspection' of 'cherry picked' data that is not 'representative.'" Mot. 8 (quoting 2021 WL 1250378, at *7 (N.D. Cal. Apr. 5, 2021)). Anthropic quotes, not the holding, but the movant's allegations, which do not form the primary basis for the decision. *Id.* at *7–*8. To the contrary, *In re: MacBook* confirmed that "[e]xpert testimony may be based upon an analysis of testing performed by others," *id.*, but found the testimony at issue "duplicative" and "irrelevant at the class certification stage**,**" and granted the motion to strike—without prejudice to plaintiffs offering the same testimony for "other purposes" in the case, *id.*

**Third,** Dr. Zhao does not base his conclusions "entirely" on Dr. Shan's findings, Mot. at 9, but incorporates them into his analysis as independent and additional data points. *See e.g.,* Rebuttal ¶ 124 (concluding Anthropic expert's guardrail tests are limited based on previously–articulated reasons in addition to the results of Dr. Shan's own testing); Reply ¶ 115 (criticizing Anthropic expert for failing to test multi-shot prompting and citing Dr. Shan's experiments as an example of guardrail porousness). This is standard: "Rule 702 and *Daubert* permit an expert to rely upon the conclusions of another expert as to matters within the other expert's discipline . . . ." *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 2024 WL 1975456, at *13 (N.D. Cal. Mar. 31, 2024) (citation omitted); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1088 (N.D. Cal. 2006) ("[A]n expert is not required to testify only upon data the expert has personally gathered or tested."), *aff'd,* 221 F. App'x 996 (Fed. Cir. 2007).

Dr. Zhao's use of Dr. Shan's findings is far removed from the circumstances in *Scientific Apps. & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, on which Anthropic primarily relies. *See* Mot. at 9. In that case, the challenged expert adopted entire sections and wholesale conclusions from another expert, claiming that he was "relying on [the other expert's] findings and agree[ing] with [the other expert's] opinions[.]" 2025 WL 4108875, at *5 (N.D. Cal. Apr. 11, 2025). Here, while Dr. Zhao cites factual findings from Dr. Shan's reports, he arrives independently at his own conclusions. *See* Rebuttal ¶ 124; Reply ¶ 115. Anthropic further overstates the scope of Dr. Zhao's reliance on Dr. Shan's findings in his reports. For example, Dr. Zhao does not cite Dr. Shan ***even once*** during his discussion of Anthropic's guardrails in his opening report. Dr. Zhao's citations in his Rebuttal and Reply also do not adopt Dr. Shan's opinions wholesale, instead relying on Dr. Shan's empirical observations to support his own opinions that rebut Anthropic's expert's testimony. *See id.*

Finally, the fact that Dr. Zhao engaged in "ad hoc" interactions with Claude after November 7, 2023, does not warrant exclusion for the simple reason that ***Dr. Zhao did not rely on those interactions in forming his opinions***. In fact, Dr. Zhao specifically testified he "didn't see it necessary in more recent times to do [his] own personal testing [of Claude]" and "far more important was the fact that there have been a number of studies that have studied these guardrails and their efficacy from well-regarded research groups . . . which inform some of [his] opinion[s] about [Claude's guardrails'] current efficacy." Decl. of Timothy Chung, Ex. A at 131:2–132:6; *see also id.* at 141:21–22 (personal testing was "not the main bas[i]s for [Dr. Zhao's] opinions in [his] [expert] report"). Had such testing formed the basis of his opinions, Dr. Zhao would have disclosed the contents of those interactions in his reports. Anthropic manufactures great indignation about Dr. Zhao's responses—which he was obligated to provide under oath—to counsel's repeated and extensive questioning about whether he had personally tested Claude's guardrails. *Id.* at 130:23–150:15. Anthropic's complaints are directed at a storm in a teacup and one of their own making.

## CONCLUSION

For the foregoing reasons, Anthropic's Motion should be denied.

Dated: July 27, 2026

Respectfully submitted,

*/s/ Timothy Chung*
**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

Case No. 5:24-cv-03811-EKL-SVK
PLS.' OPP. TO DEF.'S MOT. TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. BEN ZHAO