**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., | Case Number: 5:24-cv-03811-EKL-SVK |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF JOSHUA DENNIS** |
| v. | |
| ANTHROPIC PBC, | **REDACTED** |
| Defendant. | Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................I

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................2

ARGUMENT................................................................................................................................3

I.      Dennis's reliance on the available evidence to confirm the records he assessed did not include Publishers' prompts does not warrant exclusion. ...........................3

     A.      Dennis verified the email account associated with prompt-output pairs to the extent Anthropic's production allowed. ...........................................3

     B.      Anthropic improperly seeks to relitigate work-product waiver arguments that Magistrate Judge van Keulen has repeatedly rejected.........5

II.     Dennis's analysis of the thousands of records from the Sample and hundreds of records copying the Works in Suit is relevant and will aid the jury.........................6

     A.      Dennis's analysis of records counsel provided aligns with common practice. ....................................................................................................6

     B.      Dennis's categorizations will help the jury to understand how Claude users use Claude for song- and lyric-related tasks. .....................................8

     C.      The relief Anthropic seeks far exceeds its arguments for exclusion. ...........9

III.    Anthropic's Attempt to Surreptitiously Exclude Certain Opinions by Dr. Shan, Dr. Zhao, and Dr. Smith Should Be Denied.........................................................10

CONCLUSION...........................................................................................................................10

## **<u>INTRODUCTION</u>**

To help the jury make sense of the vast amount of Claude prompt-output data Anthropic produced, Publishers have offered the opinions of Joshua Dennis. Dennis categorized these records to help the jury understand the variety of ways in which users turned to Claude for song- and lyric-related tasks and the types of prompts that resulted in infringing outputs. Seeking to keep the jury in the dark about this relevant information bearing directly on its infringement, Anthropic has moved (ECF No. 664, "Motion" or "Mot.") to exclude the entirety of Dennis's opinions. Anthropic's motion is meritless.

Anthropic's argument rests on the false premise that Dennis "***did nothing***" to validate that the records he assessed did not include Publishers' prompts and outputs. To the contrary, Dennis used the email address information Anthropic provided to confirm all of the records he analyzed reflected that they did not come from Publishers, to the extent the current record and Anthropic's extensive redactions permitted him to do so. Anthropic's data expert did the same thing, and there is no reason why Anthropic's expert may rely on this technique while Dennis cannot. Anthropic claims it found a "troubling" example that suggests Publishers did not exclude all of their prompts from the records Dennis analyzed, but that mistaken claim reflects only Anthropic's lack of due diligence. Ultimately, Anthropic's motion improperly seeks to relitigate Magistrate Judge van Keulen's orders repeatedly denying Anthropic's requests to compel production of Publishers' account information. That Dennis did not incorporate information for which Magistrate Judge van Keulen has repeatedly held Publishers have not waived work product protection cannot be a basis for excluding his opinions under Rule 702.

Anthropic's argument that Dennis's opinions should be excluded because he analyzed only a subset of the 5-million record Sample Anthropic produced, along with a subset of other prompts and outputs responsive to certain search terms, ignores well-established law. Experts routinely rely on selections of materials produced in discovery and provided by counsel. Dennis's analysis of prompt and output records will aid the jury in understanding the variety of ways users turned to Claude for song- and lyric-related tasks and the types of prompts that resulted in infringing outputs.

Finally, while Anthropic seeks to exclude all of Dennis's opinions, Anthropic's motion

addresses only a subset of those opinions. Anthropic has offered no argument to exclude the rest of Dennis's analysis. Nor has Anthropic offered any basis to exclude the opinions of Publishers' other experts who reference Dennis's opinions. Anthropic's motion should be denied in its entirety.

## BACKGROUND

Dennis is a Partner at the financial and economic consulting firm StoneTurn Group LLP with more than 20 years of experience in the field of complex data analysis. ECF No. 665-2 at ¶ 1 (hereinafter the "Report" or "Rpt."). His expertise includes the collection, mining, sampling, anomaly detection, and reporting of structured and unstructured data and visual and financial modeling. *Id.* at ¶ 3. Dennis analyzed two sets of Claude prompt-output records Anthropic produced. First, Dennis analyzed the "statistically significant sample" of 5 million Claude prompt-output records (the "Sample") from the period of September 22, 2023 to March 22, 2024. ECF No. 377 at 5–6. In ordering Anthropic to produce the Sample, Magistrate Judge van Keulen explicitly "precluded" Anthropic from arguing the Sample is not statistically "representati[ve] of the broader 6-month dataset." ECF No. 318 at 2. To demonstrate the breadth of song- and lyric-related prompts in the Sample, Dennis classified 6,849 prompt-output records from the Sample ("Sample Song Records") that Publishers had identified through discovery as relating to song- and lyric-related prompts and outputs into 14 prompt categories, from direct requests for lyrics, to requests for new songs in the style of existing artists, to requests for discussions of song lyrics. Rpt. at ¶ 16. Dennis also categorized each record into 1 of 7 output categories, reflecting the extent to which the outputs contained existing lyrics, new lyrics, and/or guardrail messages. *Id.* For context, Dennis reported the percentages of records he analyzed in each prompt and output category, and noted how often guardrails were triggered. *Id.* Dennis then used the raw counts—not percentages—to extrapolate from the Sample to the broader 6-month dataset, conservatively assuming that the remaining 4,993,151 records in the Sample did ***not*** contain ***any*** song- or lyric-related prompts or outputs. *Id.* at ¶¶ 212–216. In other words, Dennis's extrapolation from these raw counts could only ***undercount*** the number of song- and lyric-related prompts and outputs.

Second, Dennis analyzed certain Claude prompt-output records Anthropic produced that had hit on search terms related to the Works in Suit. *See* ECF No. 318 at 3. Dennis's analysis of

this set focused on the 851 records Publishers will separately prove contain copies of lyrics to the Works in Suit ("Work-in-Suit Records"). Dennis similarly categorized these prompts and outputs, primarily to show the types of prompts that resulted in outputs copying the Works in Suit. Rpt. ¶ 15. Dennis never extrapolated these counts; to the contrary, Dennis explicitly disclaimed the ability to extrapolate from these records. Rpt. ¶ 60.

Dennis stated his understanding that Publishers' counsel had excluded Publishers' and Anthropic employees' prompt-output records from the records he analyzed. But he did not accept this understanding blindly. Instead, he "confirmed that the email address associated with all of the records [he] reviewed in both [the] sample song records as well as [the] work-in-suit records" did not have an email address associated with Publishers or Anthropic employees. Decl. of Keith Howell ("Howell Decl."), Ex. 1, Joshua Dennis Dep. at 245:24–246:17 (Mar. 9, 2026). However, Anthropic withheld the overwhelming majority of email addresses associated with these prompt and output records, complicating this review: Anthropic redacted email addresses for ███████ of the 5 million records in the Sample, leaving unredacted only ██████████████████████████████████████████████████████. Howell Decl. ¶ 7; *see also* Mot. at 3 (admitting Anthropic "generally redacted names and email addresses in the P/Os."). As a result, for the vast majority of records in both datasets—and for all the records Dennis analyzed—there was no email address in Anthropic's metadata to compare against any other information.

## ARGUMENT

I. **Dennis's reliance on the available evidence to confirm the records he assessed did not include Publishers' prompts does not warrant exclusion.**

    A. **Dennis verified the email account associated with prompt-output pairs to the extent Anthropic's production allowed.**

Anthropic's motion is built on a false premise. In repeatedly claiming that Dennis "*did nothing*" to validate that the records he assessed did not include "prompts and outputs from Publishers or their own agents," Mot. at 1–2, Anthropic misstates the record. Dennis understood that Publishers' counsel excluded Publishers' prompts and outputs from the records he analyzed,

Rpt. at ¶ 57, but he did not stop there: he "confirmed that the email address associated with all of the records [he] reviewed in both [the] sample song records as well as [the] work-in-suit records had an email address of 'Redacted,'" rather than email addresses associated with Publishers or Anthropic employees. Ex. 1 at 245:24–246:17; *see also id.* at 243:23–244-10; 244:21–245:12; 245:24–247:11; 247:19–249:20 (repeating the same). Dennis used the available evidence to confirm counsel's representations to the extent Anthropic's limited production allowed.

No more is required. Indeed, Dennis's email metadata assessment is the same analysis Anthropic's expert, Dr. Bray, used to identify Publishers' prompts and outputs in the records he assessed. ECF No. 645-1 at ¶ 120 ("I reviewed the email addresses associated with the files and observed that for ▮ ▮ ▮ ▮ files, the associated email address was m.candore@bcguardian.com, an email address that belongs to Publishers' investigator for this litigation, Mr. Michael Candore."). If a method is reliable for one side's expert, the same method must be reliable for the other's. Anthropic never explains why its own expert may rely on its email metadata to distinguish between party and third-party prompts, but Dennis may not.

Anthropic's caselaw is inapposite. Publishers' counsel did not ask Dennis to assess "hypothetical" prompts and outputs, like the counsel-created "hypothetical menus" in *In re Baby Food Prods. Liab. Litig.*, 2026 WL 559857, at *16 (N.D. Cal. Feb. 27, 2026). Nor did Publishers' counsel provide Dennis with records of unknown origin or authenticity, like the unverified handwriting samples used as a control group in *Baker v. FirstCom Music*, 2018 WL 3583237, at *8 (C.D. Cal. Mar. 15, 2018). Here, the prompts and outputs Dennis analyzed were genuine records that reflect actual conversations between Claude and its users. Additionally, Rule 26's requirement to disclose "assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed" would make little sense if experts were not permitted to rely on assumptions provided by counsel. Fed. R. Civ. P. 26(b)(4)(C)(iii); *see also Huezo v. Los Angeles Cmty. Coll. Dist.*, 2007 WL 7289347, at *2 n.18 (C.D. Cal. Feb. 27, 2007) (denying motion to exclude expert testimony that relied on "information provided by plaintiff's counsel").

Anthropic does not raise any serious argument that Dennis's understanding was incorrect. While Anthropic claims Dennis's "reliance on counsel's say-so" is "troubling," Anthropic's motion

fails to identify a single plausible error in Dennis's understanding, much less a systematic error that undermines the credibility of his analysis. Anthropic is simply wrong that the single prompt-output pair that Anthropic identifies is "identical" to a prompt and output pair identified in the Amended Complaint. Mot. at 4. Publishers' original Complaint, filed on October 18, 2023, quoted that same Publisher prompt and output identified in the Amended Complaint. ECF No. 1 at ¶ 76. Conversely, the record Anthropic found was not created until November 3, 2023—weeks *after* Publishers filed the Complaint containing the supposedly "identical" record. ECF Nos. 665-5, -6 (showing date of "2023-11-03"). Nor are the records "identical": while similar, the outputs are obviously distinct. *Compare* ECF No. 1 at ¶ 76 *with* ECF No. 665-6. Tellingly, the most "troubling" example Anthropic could find is not troubling at all. In any event, even if Anthropic were correct about this one prompt-output pair (which it is not), an error regarding a single prompt-output pair does not call into question the overall reliability of an opinion that analyzes many thousands of prompt-output pairs.

Nor can Anthropic identify anything more Dennis could have done given the existing record. Anthropic never explains how Dennis could have used the email addresses of Publishers' counsel and investigators that Anthropic complains that Dennis never sought. Mot. at 4. Because Anthropic redacted the email addresses of ▮▮▮▮▮▮ of the 5 million records in the Sample, leaving unredacted only around ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Howell Decl. ¶ 7, Dennis could not have used any of Publishers' email addresses to identify any additional prompt-output pairs from Publishers. As Dennis explained, due to Anthropic's redactions, "none of the records [he] reviewed had an email address other than 'Redacted,' so there would be no purpose to looking for or requesting email addresses [for publishers' counsel] that wouldn't be found." Ex. 1 at 242:11–18. Dennis's not seeking out data he could not have used anyway cannot render his opinions unreliable.

**B.    Anthropic improperly seeks to relitigate work-product waiver arguments that Magistrate Judge van Keulen has repeatedly rejected.**

Ultimately, Anthropic's real gripe is not with Dennis's analysis of third-party users (which, as explained above, is the same analysis Anthropic's expert conducted) but with Magistrate Judge

van Keulen's orders repeatedly denying Anthropic's request to compel production of Publishers' account information. *See* ECF No. 377 at 2–4; ECF No. 478 at 6; ECF No. 545 at 6–9. Indeed, Anthropic's motion here just rehashes its now moot and dismissed motion for relief from those orders. *See* ECF No. 564; ECF No. 722 (dismissing motion as moot). Those arguments cannot be a basis to exclude Dennis's opinions. Magistrate Judge van Keulen's orders—which held that the information Anthropic faults Dennis for not using is protected work product and that Publishers have not waived protection over that information—control here. That Dennis did not seek out and analyze protected work product cannot require excluding his opinions under Rule 702, and Anthropic cites no authority for that extreme position.

As the Court recognized, the proper vehicle for Anthropic to object to Magistrate Judge van Keulen's orders was not to seek exclusion of Dennis's opinions but to appeal Magistrate Judge van Keulen's orders—an appeal Anthropic agreed to dismiss as moot. Howell Decl., Ex. 2, March 26, 2026 Hr'g Tr. 54:17–55:12 ("[T]his motion has been pending. And so I also think to say, okay, going for the gusto, we're going to try to do preclusion seems a little much as well"). Having dismissed its appeal, Anthropic cannot revive those same rejected arguments in a *Daubert* motion.

Even if Anthropic were correct that Dennis should have done more to differentiate so-called "third-party" outputs, that would not justify exclusion. The heart of Dennis's analysis categorizes prompts and outputs in the Sample and outputs copying the Works in Suit. Anthropic's motion does not challenge that analysis, which will aid the jury to understand how Claude has been used for song- and lyric-related purposes and the variety of prompts that resulted in infringing outputs.

**II. Dennis's analysis of the thousands of records from the Sample and hundreds of records copying the Works in Suit is relevant and will aid the jury.**

**A. Dennis's analysis of records counsel provided aligns with common practice.**

Like all experts involved in this case, Dennis did not review every document produced in discovery. Dennis had access to the full 5 million Sample and referenced it as appropriate. Rpt. at ¶ 53 n.74 ("I had access to and referenced the broader 5 million Sample Records, as relevant to my analysis in this Report."). But given the impossibility of reviewing all 5 million Sample records

in detail,[1] Dennis's categorization of records from the Sample necessarily focused on 6,849 prompt-output records identified by Publishers through discovery as relating to song- and lyric-related prompts and outputs.[2] Rpt. at ¶ 53; ECF No. 665-3 at ¶ 212 (hereinafter "Reply"). Similarly, Dennis did not review all ███ prompt and output records that hit on certain search terms relating to the Works in Suit. Instead, Dennis analyzed 851 records from this set that Publishers will separately prove contain copies of Works in Suit lyrics.[3] Rpt. at ¶ 52; Reply at ¶ 120.

   None of this is surprising or unusual, and it certainly does not create a basis for exclusion. "It is common practice for counsel to select a subset of documents from the case to give to a potential expert, and courts generally permit that practice." *Arjangrad v. JPMorgan Chase Bank, N.A.*, 2012 WL 1890372, at *6 (D. Ore. May 23, 2012). Courts in this District have regularly concluded that "experts' decisions about what data to use" in their analysis, including "usage of a subset" of relevant data, "go to the weight rather than admissibility" of expert testimony. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 124347, at *1 (N.D. Cal. Jan. 8, 2013); *see also, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5071694, at *6 (N.D. Cal. Dec. 7, 2010) (denying motion to exclude where expert considered only data from "narrow time periods," noting the resulting "estimates may be conservative" and challenges "may impact the weight of [the opinion,] but they do not clearly indicate that his analysis is unreliable"); *Commodity Futures Trading Comm'n v. Monex Credit Co.*, 2020 WL 7786540, at *15 (C.D. Cal. Dec. 28, 2020) (denying exclusion of expert testimony based on "a biased and unverified sample"). None of the cases Anthropic cites involve an expert's analysis of a relevant subset of records from a larger population, and therefore none support exclusion here.

---

[1] Indeed, the analysis of Anthropic's expert, Dr. Bray, demonstrates the infeasibility of reviewing all 5 million records, as he personally reviewed a smaller subset of records from the Sample than Dennis, Dr. Andrew Bray Dep. at 27:16–28:7 (Feb. 24, 2026) (Ex. 3), and his word-search analysis proved unreliable. *See* Pls.' Mot. to Exclude Opinions of Dr. Bray (ECF No. 644); *see also* Ex. 3 at 50:13–19 ("[I]t's fair to say just many of the documents are false positives").

[2] In his Reply, Dennis culled this set of 6,849 records down to 3,277 records based on his assessment of the last prompt and output in each record. Reply at ¶¶ 14, 21.

[3] Dennis similarly culled this set of 851 records down to 814 records. Reply at ¶¶ 13, 22.

Anthropic has identified no reason to doubt Dennis analyzed the relevant subset of records from the Sample and other records Anthropic produced. Anthropic has not identified any reason to believe Publishers identified additional third-party requests for lyrics, requests for new songs in the style of existing artists, or outputs copying the Works in Suit, but excluded them from the records provided to Dennis. Doing so would be contrary to Publishers' interests and only **undercount** the number of infringing song- and lyric-related records—to Anthropic's benefit. Anthropic's expert, Dr. Bray, confirmed he was not aware of **any** genuine request for lyrics in the Sample omitted from Dennis's analysis, Howell Decl., Ex. 3 at 99:18–100:16, and Dr. Bray did not assess the other relevant song- and lyrics-related categories Dennis analyzed. *Id.* at 131:1–11.

### B.    Dennis's categorizations will help the jury to understand how Claude users use Claude for song- and lyric-related tasks.

Dennis's categorizations of prompts derived directly from the Sample will aid the jury in appreciating the breadth of song- and lyric-related prompts Claude users submitted, demonstrating the diverse ways in which users turn to Claude for song- and lyric-related tasks. Anthropic seeks to keep the jury in the dark regarding this Claude usage and is simply wrong that Dennis's analysis "tells the jury nothing about Claude user prompts or Anthropic's guardrails." Even if underinclusive, this analysis shows the minimum number of such prompts in the Sample, as Dr. Bray agreed. *See* Ex. 3 at 193:22–194:19.

Dennis's analysis of the Work-in-Suit Records will also aid the jury. These are the records on which Publishers will rely at trial to show infringing third-party outputs. The jury will benefit from understanding the variety of prompts that resulted in outputs copying lyrics to the Works in Suit, including prompts that did not directly request lyrics to a particular song. Rpt. at ¶ 15. This is also important context for the jury to consider in weighing Dr. Bray's opinions, which only assessed prompts directly requesting lyrics. ECF No. 645-1 at ¶ 32; Ex. 3 at 131:1–11.

Moreover, every lyric-related Claude output Dennis analyzed necessarily reflects an output Anthropic's then-existing guardrails did not block. Even if underinclusive, these records aid the jury by demonstrating where Anthropic's guardrails failed. Anthropic ignores Dennis's actual articulation of his guardrail opinions, which appropriately characterize their relevance. Rpt. at

¶ 144 (noting records Dennis assesses provide "some insight into Guardrail activity of the Record Period," and "support the conclusion" that Guardrails were largely ineffective prior to the filing of the Complaint and "still failed to prevent such lyric-related Output in many instances" thereafter). "The relevancy bar is low," *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014), and Dennis's analysis easily clears it.

Nor is there any legitimate risk of jury confusion. Anthropic claims Dennis's reported percentages "appear designed to confuse the jury into thinking they reflect the frequency at which these events appear in the broader set of prompts and outputs." Mot. at 9. But Dennis never suggested these percentages would apply to other datasets; to the contrary, Dennis readily acknowledges the opposite. Rpt. at ¶ 60 ("[T]he Work-in-Suit Records are not a statistically significant random sample, and thus I cannot directly extrapolate the results of my analysis."); Ex. 1 at 79:19–25 (acknowledging the Sample Song Records are not themselves "statistically representative" as a random sample). Dennis has not tried to mislead or confuse the jury about his opinions, and the jury is surely capable of appreciating both their significance and any limitations Anthropic attempts to adduce on cross-examination.

### C.    The relief Anthropic seeks far exceeds its arguments for exclusion.

Anthropic's motion attacks Dennis's calculations of *percentages* associated with the Sample Song Records and Work-in-Suit Records. Mot. at 8–10. But the paragraphs Anthropic seeks to exclude go far beyond calculating percentages and include raw counts of prompts and outputs in the Sample that fall into different categories. Mot. at 10 (citing Rpt. at ¶¶ 15–16, 76–209, 217–221 and Reply at ¶¶ 13–14, 52–141, 149–208, 232–250).

Anthropic offers no argument for excluding these raw counts. Anthropic's motion does not challenge Dennis's methods for categorizing these records, and Dennis's categorizations are plainly relevant to show both that there were thousands of song- and lyric-related records in the Sample and the number and variety of prompts that resulted in outputs copying the Works in Suit. Moreover, these raw counts are the inputs to Dennis's extrapolation analysis, which estimates the number of song- and lyric-related Claude prompts and outputs during the full Record Period, of which Publishers received only a sample. Anthropic's motion never criticizes this extrapolation

nor suggests it is unreliable, and indeed Magistrate Judge van Keulen held Anthropic is precluded from arguing the Sample records cannot be used to extrapolate to the full Record Period. ECF No. 318. Anthropic should not be permitted to circumvent this restriction.

**III. Anthropic's Attempt to Surreptitiously Exclude Certain Opinions by Dr. Shan, Dr. Zhao, and Dr. Smith Should Be Denied.**

Hidden in Anthropic's motion concerning Dennis, Anthropic also seeks to exclude certain opinions offered by Publishers' experts Dr. Shan, Dr. Zhao, and Dr. Smith. Mot. at 1. Anthropic offers only a single sentence claiming these opinions "rely on Dennis" and a footnote identifying specific paragraphs from Publishers' expert reports. Mot. at 1, n.2. But many of these opinions merely mention Dennis as one example supporting a position, or actually rely on the underlying prompts and outputs themselves. *See, e.g.*, ECF No. 665-1 at ¶ 59 (relying on the absence of CMI "reflected in the specific Claude output records" also analyzed by Dennis); ECF No. 665-8 at ¶ 92 (relying on "Claude-generated lyrics" reflected in records also analyzed by Dennis); ECF No. 665-9 at ¶ 128 (relying on records showing "Claude continued regurgitating WIS lyrics after Anthropic's implementation of guardrails"). Other opinions rely on Dennis's categorization of prompts and outputs or assessment of Anthropic's billing data, which Anthropic does not seek to exclude. ECF No. 665-8 at ¶ 87 (relying on Dennis's identification of "two prompt categories reflecting requests for potential market substitutes" for the Works in Suit); *id.* at ¶ 201 (relying on Dennis's categorization of "lyric-related prompts and inquiries"); *id.* at ¶ 202 (similarly relying on Dennis's categorization of "lyric-related requests"); ECF No. 665-10 at ¶ 162 (relying on Dennis's calculation of the amount paid by certain Claude users associated with outputs copying Publishers' Works in Suit). Anthropic has failed to articulate any basis for excluding these additional opinions, which do not rely on any contested portion of Dennis's analysis. Only two opinions mention that Dennis analyzed "real-world" examples of Claude prompts and outputs. ECF No. 662-1 at ¶ 94; ECF No. 665-10 at ¶ 125. But Anthropic's attempt to exclude these opinions should be denied for the reasons articulated above in Section I.

**CONCLUSION**

For the foregoing reasons, Anthropic's Motion should be denied.

Dated: July 27, 2026

Respectfully submitted,

*/s/ Keith Howell*

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

Case No. 5:24-cv-03811-EKL-SVK
PLS.' OPP. TO DEF.'S MOT. TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF JOSHUA DENNIS

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from the signatory of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 27, 2026

*/s/ Timothy Chung*
Timothy Chung