**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CONCORD MUSIC GROUP, INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

Case Number: 5:24-cv-03811-EKL-SVK

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PARTIALLY EXCLUDE THE OPINIONS OF DR. ETHAN LUSTIG**

**REDACTED**

Judge Eumi K. Lee
Magistrate Judge Susan van Keulen
Hearing Date: October 21, 2026
Time: 10:00 AM
Courtroom 7

Publishers moved to exclude certain testimony of Anthropic's rebuttal musicologist expert, Dr. Lustig, on four separate bases. ECF No. 658 ("Motion" or "Mot."). Anthropic opposes three of those bases, conceding that it will not offer Dr. Lustig's opinions on parodic intent. ECF No. 742 at 2 n.2 ("Opp."). The Court should exclude all of Dr. Lustig's challenged opinions. None of Anthropic's arguments distract from the simple truth that Anthropic has failed to satisfy its burden to show that Dr. Lustig's coding methodology, similarity score, and "baseline similarity" analysis satisfy the demands of Federal Rule of Evidence 702 and *Daubert*. Anthropic's mudslinging at Publishers' expert, Dr. Leonard, is an irrelevant distraction. *See, e.g.*, Opp. 6, 8. The Court should grant Publishers' motion in full.

## ARGUMENT

### I. Dr. Lustig's coding methodology is not supported by his expertise.

Publishers' basis for excluding Dr. Lustig's opinions based on his coding methodology was clear: "Dr. Lustig lacks the necessary linguistic expertise to employ Dr. Leonard's linguistics-based methodology or to modify it in any way." Mot. 4. Instead of engaging with this infirmity, Anthropic repeatedly misses the point. Publishers do not contend that a musicologist is *per se* unqualified to opine on music lyrics. Opp. 4. Nor do Publishers contend that an expert can never rebut the opinions of an expert in a different field. Opp. 5. Indeed, Publishers have not moved to exclude Dr. Lustig's musicologist-based criticisms of Dr. Leonard's methodology. But what Dr. Lustig cannot do is adopt and modify Dr. Leonard's linguistics methodology, because Dr. Lustig is not a linguist. ECF No. 649-3 at 31:6–11 ("Lustig Tr.").

Dr. Lustig's coding methodology is a linguistic, not musicological, methodology. He admitted as much, testifying that the methodology in his reports "is modeled on – it's a response to Leonard's analysis. . . ." Lustig Tr. 38:8–39:6. Tellingly, Dr. Lustig did not employ the coding methodology in his prior lyrics case. *See* Mot. 4. Nor does Anthropic identify any case or anywhere in the musicology literature in which a musicologist put forth a four-category coding methodology akin to the one Dr. Lustig employs here.

Dr. Lustig's lack of relevant expertise leads him to make fundamental errors in applying his methodology. *See* Mot. 4–5. Anthropic's attempts to paint this as a simple dispute between

experts are unavailing. Opp. 6. This is not the case where two experts apply dueling reliable methodologies to the same facts and reach different opinions. Regardless of whether some musicologist could rebut some linguist's opinions on the similarity between Publishers' lyrics and Claude outputs, Anthropic cannot show *this* expert applying *this* methodology clears the requirements of Federal Rule of Evidence 702 and *Daubert*.

## II. Dr. Lustig's unreliable similarity calculation would confuse and mislead the jury.

Dr. Lustig's similarity calculation fails to comport with the Ninth Circuit's legal standards for substantial similarity. In the Ninth Circuit, substantial similarity analysis consists of two parts: "an objective extrinsic test and a subjective intrinsic test." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria," and "requires analytical dissection of a work and expert testimony" *Id.* (internal quotation marks omitted). The intrinsic test considers "similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008) (quoting *Apple Comput., Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1442 (9th Cir. 1994)).

The Ninth Circuit has rejected Dr. Lustig's approach of calculating extrinsic similarity on a 0-100 scale based on bit-by-bit comparison. In support of his similarity calculation, Dr. Lustig relies on a paper, *Quantitative Evaluation of Music Copyright Infringement* by Savage, et al. Rebuttal ¶ 30 n.19;[1] ECF No. 649-8. The *Quantitative Evaluation* paper "quantifies and visualizes the percentage of identical pitch classes shared between two melodic sequences" on a measure-by-measure basis. *Id.* at 61–62. In *Swirsky*, the Ninth Circuit rejected precisely this type of analysis, reversing the district court in that case for basing its decision "almost entirely on a measure-by-measure comparison of melodic note sequences." 376 F.3d at 847. *Swirsky* held that looking at musical elements "individually, without also looking at them in combination, is to perform an incomplete and distorted musicological analysis." *Id.* at 848. The Ninth Circuit further noted that "substantial similarity can be found in a combination of elements, even if those elements are individually unprotected," including "chord progression, key, tempo, rhythm, and genre." *Id.*

[1] "Rebuttal" and "Reply" are defined in Publishers' Motion.

Dr. Lustig's "similarity" score is as flawed as the *Quantitative Evaluation* paper's pitch class quantification on which it is based. Dr. Lustig's "similarity" score divides Publishers' Lyrics and Claude outputs into "similar" and "dissimilar" categories and calculates a "similarity" score based on the number of syllables in each category. Mot. 5. As explained in Publishers' motion, by reducing the substantial similarity analysis to a syllable-by-syllable 0-to-100 score, Dr. Lustig's analysis fails to incorporate a variety of expressive elements, including the distinctiveness of the words used, the orthography, the rhyming scheme, and the arrangement of copied elements. Mot. 6–7. *Swirsky* teaches that these elements must be viewed "in combination" with all other elements of the work—not as an isolated percentage of "similar" syllables. 376 F.3d at 848.

The *Quantitative Evaluation* paper also expressly "exclude[ed] cases focused on plagiarism of lyrics" and thus does not support Dr. Lustig's methodology. ECF No. 649-8 at 63; Lustig Tr. 76:4–13. Contra Anthropic, Opp. 7–8, the distinction between music and lyrics matters because the same method cannot be used to summarize overlap between musical notes and language: they are distinct modes of expression and require different analytical techniques. For example, musical notes typically lack distinctive orthographic features, and while there are hundreds of thousands of words in English, there are only twelve tones in most Western music. It speaks volumes that the authors of the *Quantitative Evaluation* paper themselves clearly warned their techniques should not be applied to cases involving infringement of lyrics.

Anthropic is incorrect that Dr. Lustig's analysis "do[es] account for other musical elements, such as 'pitch, rhythm, harmony, and how those words fit within the overall musical structure.'" Opp. 8. Dr. Lustig's analysis consisted of comparing LyricFind lyrics to Claude conversation outputs, [redacted]. *See, e.g.*, Rebuttal App'x 2. Nor did Dr. Lustig review any sound recordings as part of this case. Lustig Tr. 78:1–3. Dr. Lustig could not have considered these musical elements in his comparison when [redacted]. Nor, even if Dr. Lustig's broader analysis included these elements, could Dr. Lustig's 0-to-100 "similarity" score capture them.

Finally, Anthropic again attempts to deflect attention from Dr. Lustig's deficiencies by inaptly criticizing Dr. Leonard, wrongly suggesting that he also adopts a "bean-counting"

methodology. Opp. 8. To be clear, Dr. Leonard does not offer any numerical summation of how much "copying" occurred. As Dr. Leonard explained, "context is everything. Quantifying is not the appropriate way to measure [substantial similarity]." Add'l Decl. of Andrew Guerra in Supp. of Pls.' Reply, Ex. J 143:21–144:16.

**III. Dr. Lustig's "baseline similarity" opinions are unreliable.**

Dr. Lustig's opinions on "baseline similarity" are improper and unreliable. Publishers' expert, Dr. Ben Zhao, opined in rebuttal to the opinion of Anthropic's expert, Dr. Jeffrey Bilmes, that Publishers' lyrics have little value for LLM training that, "[u]nlike generic web text, which is often fungible, song lyrics constitute a unique, non-substitutable data class possessing distinct linguistic properties—such as rhyme, meter, and metaphor—that cannot be learned from other sources." Decl. of Robin Burrell in Supp. of Anthropic's Opp. to Publishers' Mot. to Partially Exclude the Opinions of Dr. Ethan Lustig, ("Burrell Decl.") Ex. 10 ¶¶ 102–103, ECF No. 742-1. Separately, another of Publishers' experts, Dr. Shawn Shan, observed that Claude's [redacted] Burrell Decl. Ex. 11 ¶ 40. In response to these opinions, Dr. Lustig's Reply "[redacted]" Reply ¶ 12. Dr. Lustig used the website Random Song Generator to generate 30 "random" pairs of songs and applied his coding and similarity score methodology to each pair. *Id.* ¶ 13. Dr. Lustig then calculated an "average similarity score." *Id.* ¶ 14.

Anthropic fails to defend Dr. Lustig's opinions on a "baseline similarity score" as appropriate rebuttal. "Rebuttal reports are limited to evidence 'intended solely to contradict or rebut evidence on the same subject matter identified by another party' in an expert report." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1065 (C.D. Cal. 2010) (quoting Fed. R. Civ. P. 26(a)(2)(C)(ii)). Here, Dr. Lustig's opinions do not relate to the same subject matter as Dr. Zhao's opinions. Dr. Zhao opined that lyrics are a unique ***category*** of training data for an LLM. The percentage of similarity between a small handful of random pairs of lyrics does not address at all whether lyrics are unique compared to other types of expressive language. Nor do Dr. Lustig's opinions address

Claude's guardrails and Claude's ability to [redacted]: Dr. Lustig's "similarity" does not relate to style as Dr. Shan discussed.

Instead, Dr. Lustig's "similarity" analysis in his Reply Report only serves to reinforce the analysis presented in his Rebuttal Report. Dr. Lustig describes how this analysis "[redacted]" and that "[redacted]" Reply ¶ 14. Dr. Lustig's suggestion that the jury should consider his "baseline similarity" calculations as "context" as it weighs the substantial similarity between Publishers' lyrics and Claude outputs is improper and contradicts the Ninth Circuit law discussed above. *See* Mot. 8; *supra,* Section II.

Dr. Lustig's analysis is also unreliable and should be excluded on that basis. Anthropic "offers no evidence that the sample reviewed by [the expert] met any measure of scientific representativeness." *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1245 (W.D. Wash. 2018). Random Song Generator's sampling is entirely a black box. Dr. Lustig acknowledges that, despite its name, the website does not provide random songs. Reply ¶ 13 n.15. He does not know the pool of songs from which Random Song Generator selects. Lustig Tr. 112:25–113:2. He also only sampled 30 song pairs, a vanishingly small sample of the millions of English-language lyrics about which Dr. Lustig purports to opine. These pervasive sampling issues, particularly in the absence of any explanation for why the sample might be nevertheless representative, render Dr. Lustig's "baseline similarity" opinions unreliable and inadmissible. Anthropic argues that concerns about Dr. Lustig's sampling go to weight, in particular that "Dr. Lustig raised this issue himself" and that the tool "was sufficiently random to disprove Dr. Zhao's and Dr. Shan's opinions on lyrical uniqueness." Opp. 10. Anthropic puts the cart before the horse: Dr. Lustig has not disproven anything without showing that his analysis was sufficiently reliable.

## CONCLUSION

For these reasons, Publishers respectfully request that the Court grant Publishers' Motion.

Dated: August 18, 2026

Respectfully submitted,

*/s/ Andrew Guerra*
**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Jeffrey M. Gould
Corey Miller
Keith Howell
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan
Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from the signatory of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 18, 2026

*/s/ Timothy Chung*
Timothy Chung