# EXHIBIT 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CONCORD MUSIC GROUP, INC., ET AL., Plaintiffs,
v.
ANTHROPIC PBC, Defendant.

Case No.: 5:24-CV-03811-EKL-SVK

VIDEOTAPED DEPOSITION OF PRANAY SANGANI
HIGHLY CONFIDENTIAL: ATTORNEYS' EYES ONLY
San Francisco, California
November 10, 2025
9:14 a.m.

REPORTED BY:
Tammy Moon, CSR No. 13184, RDR, CRR



APPEARANCES:

FOR PLAINTIFFS CONCORD MUSIC GROUP, INC., ET AL.:

OPPENHEIM & ZEBRAK, LLP
BY: COREY MILLER, ESQ.
BY: MICHELLE GOMEZ-REICHMAN, ESQ.
4530 Wisconsin Ave. NW 5th Flr
Washington, DC 20016
202.621.9027
corey@oandzlaw.com

FOR DEFENDANT ANTHROPIC PBC:

WILMIER CUTLER PICKERING HALE and DORR LLP
BY: ARI HOLTZBLATT, ESQ.
BY: ALYSSA MILSTEAD, ESQ.
2100 Pennsylvania Ave. NW
Washington, DC 20037
202.663.6964
ari.holtzblatt@wilmerhale.com

ALSO PRESENT: LIZ KIM, ANTHROPIC
NATALIE NAUGLE, ANTHROPIC
PHILIP ASTOR, THE VIDEOGRAPHER



INDEX TO EXAMINATION
PRANAY SANGANI
Monday, November 10, 2025
Tammy Moon CSR No. 13184, RPR, CRR
WITNESS: PRANAY SANGANI


| EXAMINATION | PAGE |
|---|---|
| BY MR. MILLER | 7 |
| BY MR. HOLTZBLATT | 279 |




INDEX TO EXHIBITS
PRANAY SANGANI
Monday, November 10, 2025
Tammy Moon CSR No. 13184, RPR, CRR


| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 26 | Bates-stamped pages ANTHROPIC217620-ANTHROPIC217623 | 168 |
| Exhibit 121 | Bates-stamped page ANTHROPIC217164, Excel sheet | 93 |
| Exhibit 122 | Bates-stamped page ANTHROPIC218116, Excel spreadsheet | 100 |
| Exhibit 123 | Bates-stamped pages ANTHROPIC234139-ANTHROPIC234141 | 120 |
| Exhibit 124 | Bates-stamped pages ANTHROPIC12590-ANTHROPIC12590 | 145 |
| Exhibit 125 | Bates-stamped pages ANTHROPIC237281-ANTHROPIC237293 | 155 |
| Exhibit 126 | Bates-stamped pages ANTHROPIC2127620-ANTHROPIC2127620 | 179 |
| Exhibit 127 | Bates-stamped pages ANTHROPIC342979-ANTHROPIC342983 | 186 |
| Exhibit 128 | Bates-stamped pages ANTHROPIC346083-ANTHROPIC346087 | 202 |

INDEX TO EXHIBITS
PRANAY SANGANI
Monday, November 10, 2025
Tammy Moon CSR No. 13184, RPR, CRR

| | | | |
|---|---|---|---|
| Exhibit 129 | Bates-stamped pages ANTHROPIC343228-ANTHROPIC343228 | 210 |
| Exhibit 130 | Bates-stamped pages ANTHROPIC342806-ANTHROPIC342806 | 214 |
| Exhibit 131 | Bates-stamped pages ANTHROPIC346070-ANTHROPIC346070 | 222 |
| Exhibit 132 | Bates-stamped pages ANTHROPIC529566-ANTHROPIC529566 | 229 |
| Exhibit 133 | Bates-stamped pages ANTHROPIC343170-ANTHROPIC343174 | 232 |
| Exhibit 134 | Bates-stamped page ANTHROPIC218199, Excel spreadsheet | 265 |




Monday, November 10, 2025, 9:14 a.m.
THE VIDEOGRAPHER: Here begins Media No. 1 in the videotaped deposition of Pranay Sangani, in the matter of Concord Music Group v. Anthropic, in the United States District Court, for the Northern District of California, San Jose Division, Case No. 5:24-CV-03811-EKL.
Today's date is November 10th, 2025. The time on the video monitor is 9:14. The videographer today is Philip Astor, representing Planet Depos. This video deposition is taking place at Wilmer Cutler Pickering Hale and Dorr LLP, San Francisco, California.
Would counsel please voice identify themselves and state whom they represent.
MR. MILLER: Corey Miller, from Oppenheim + Zebrak, on behalf of the plaintiff music publishers. Also with me is my colleague Michelle Gomez-Reichman.
MR. HOLTZBLATT: Ari Holtzblatt, from WilmerHale, representing Anthropic and the deponent. And I'm joined by Alyssa Milstead, from WilmerHale as well, and Liz Kim and Natalie Naugle from Anthropic.
THE VIDEOGRAPHER: The court reporter today



is Tammy Moon, representing Planet Depos. The witness will now be sworn.
THE REPORTER: This is Tammy Moon, Certified Stenographic Reporter 13184.
PRANAY SANGANI,
called as a witness, having been duly sworn,
testified as follows:
THE WITNESS: Yes, I do.
EXAMINATION BY MR. MILLER, COUNSEL FOR PLAINTIFFS
MR. MILLER:
Q. Good morning, Mr. Sangani. My name is Corey Miller, and I represent the plaintiff music publishers in this case against Anthropic, and I'll be taking your deposition today. Have you ever been deposed before, sir?
**A. I have.**
Q. How many times?
**A. Once.**
Q. When was that?
**A. Around this time last year.**
Q. In what case was that deposition taken?
**A. It was in Bartz v. Anthropic.**
Q. Okay. I'll just run through a few quick ground rules about how today will proceed. I'll be asking you questions, and you'll be answering my



questions. From time to time, your counsel may object to my questions in order to preserve his objections for the record. That's a normal part of the process. Even if he objects, you still have to answer my questions unless he specifically instructs you not to answer the question. Do you understand that?
**A. I do.**
Q. We have a court reporter here who is writing down everything we say for -- so that there's a record of your testimony. For her benefit, it's very important that you give verbal answers. So shakes of the head, nods, things like "huh-uh," those don't produce a clear record of what your answer is and don't -- and so I'll ask you to please give verbal answers to the questions so we have a clear record. Do you understand that?
**A. I do.**
Q. Similarly, if we talk over each other, we don't end up with a clear record of who said what. So I'll ask that you wait until I finish asking my question in order to begin answering. And likewise, I will do my best to wait until you have finished answering before asking my next question.
If at any time I inadvertently start to ask

**very significant risk to human civilization and society that's different from the existential risk but still pretty bad. And there is a third mass of distributions where there is the alleviation of scarcity, there's more abundance, and there is a social fabric that has evolved alongside the presence of this abundance that leads to a -- a much better outcome for humanity, possibly ending with some sort of, like, transhuman outcome where humans that choose to sort of coevolve with AI can do so.**
**Think, like, nice cyborgs. I think there's a significant mass in that direction. There are probably things that exist with this type of radical change and societal kind of shift that are hard to predict. So there's probably one that just says, like, "I don't know how this will shape out," and there's, like, a mass of -- of probability there.**
Q. Are you familiar with the expression "P(doom)"?
**A. I am.**
Q. What do you understand P(doom) to mean?
**A. It is the probability of existential risk.**
Q. Do you have a personal estimate of P(doom)?
**A. I do.**
Q. What -- what is your P(doom) estimate?



**A. Probably .15.**
Q. So 15 percent? Are you familiar with an individual named Dario Amodei?
**A. Yes, I am.**
Q. He's the -- one of the founders and the CEO of Anthropic, right?
**A. That's right.**
Q. He said that AI could wipe out half of entry-level white-collar jobs relatively soon. Do you agree with that?
MR. HOLTZBLATT: Objection. Form.
THE WITNESS: I think that's a possibility.
MR. MILLER:
Q. Do you know how much electric power Claude uses to function?
**A. Not off the top of my head, no.**
Q. Do you think AIs like Claude are likely to replace Google or search engines in terms of how people use them?
**A. I'm not certain that replacing the search engine is sort of where I see the model being the most differentially useful. That might be sort of an incidental effect of a strong model. My -- my understanding is that intelligence capability is probably better leveraged for other tasks in the**



**outset. Again, I can't dismiss that offhand, but I don't think that's, like, sort of where I see the most differential value from Claude.**
Q. Can Claude users use Claude to look up the lyrics to songs?
MR. HOLTZBLATT: Objection. Form.
THE WITNESS: I don't know exactly what kind of search capabilities exist today. But presumably, if those search capabilities exist and the sites that, like, have those lyrics have not excluded Claude from being able to display those lyrics for search purposes, then, yes, I can -- I can foresee that there's a way for Claude users to look up lyrics.
MR. MILLER:
Q. Can Claude users use Claude to write songs?
**A. Yes.**
Q. Have you ever used Claude to write a song?
**A. I have tried to do that -- very poorly, I might add.**
Q. Can Claude users use Claude to interpret songs?
**A. Yes. And -- and just to kind of complete that thought, I think Claude users can use Claude to interpret really any piece of text that Claude can**



**understand. And I think that's a large part of what sort of makes sense for -- for users to do: interpreting things from code all the way to, like, emails, songs, ideas, et cetera.**
Q. I mentioned Dario Amodei a minute ago. Have you ever -- have -- withdrawn.
How involved is Mr. Amodei in the day-to-day operations of Anthropic?
**A. I don't have full visibility into where Dario focuses his efforts, but he is present as the CEO.**
Q. Have you ever worked directly with him on anything?
**A. I've interacted with him a few times on various data-related things.**
Q. What sort of data-related things have you interacted with Mr. Amodei about?
**A. A large portion of it is if he has questions about various decisions made by our team in one capacity or another or what -- what are things that are holding us back from being successful on the, like, data -- data bottleneck about a year and change ago. I think those types of decisions are something that I think Dario has historically opined on.**

285

DECLARATION UNDER PENALTY OF PERJURY

I, PRANAY SANGANI, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on November 10, 2025; that I have made such corrections as appear noted on the Deposition Errata Page, attached hereto, signed by me; that my testimony as contained herein, as corrected, is true and accurate.

Dated this day of , 2025.

----------------------------
PRANAY SANGANI

286

STATE OF CALIFORNIA )
)
COUNTY OF SACRAMENTO)

I, TAMMY MOON, CSR No. 13184, Certified Shorthand Reporter, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

That I am neither counsel for, nor related to, any party to said proceedings, nor in any way interested in the outcome thereof.

I further certify that I am not a party to any stipulation, if made, that would waive my duties mandated by the Court Reporters Board of California.

In witness whereof, I have hereunto subscribed my name.

Dated: 16th of November, 2025

Tammy Moon

----------------------------------
Tammy Moon, CSR No. 13184, RDR, CRR