# EXHIBIT 5

# (FILED UNDER SEAL)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CONCORD MUSIC GROUP, INC., ET AL.,
Plaintiffs,
vs. Case No. 5:24-cv-03811 EKL-SVK
ANTHROPIC PBC,
Defendant.
----------------------------

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
VIDEO DEPOSITION OF JARED KAPLAN, Ph.D.
San Francisco, California
Friday, November 21, 2025
Volume 1

STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491
JOB NO. 609877
PAGES 1 - 365



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CONCORD MUSIC GROUP, INC., ET AL.,
Plaintiffs,
vs. Case No. 5:24-cv-03811 EKL-SVK
ANTHROPIC PBC,
Defendant.
----------------------------

DEPOSITION OF JARED KAPLAN, Ph.D., taken on behalf of the Plaintiffs, at Wilmer Cutler Pickering Hale and Dorr LLP, 50 California Street, Suite 3600, San Francisco, California, commencing at 10:04 a.m., Friday, November 21, 2025 before REBECCA L. ROMANO, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Court Reporter.



APPEARANCES OF COUNSEL

For the Plaintiffs:
OPPENHEIM ZEBRAK LAW, LLP
BY: NICK HAILEY
Attorney at Law
4530 Wisconsin Avenue
5th Floor
Washington, D.C. 20016
(202) 480-2999
nick@oandzlaw.com
and
BY: BRET MATERA
Attorney at Law
461 5th Avenue
19th Floor
New York, New York 10017
(212) 951-1156
bmatera@oandzlaw.com

/////



APPEARANCES OF COUNSEL(cont'd)

For the Defendant:
WILMER CUTLER PICKERING HALE AND DORR LLP
BY: TAYLOR GOOCH
Attorney at Law
50 California Street
Suite 3600
San Francisco, California 94111
(628) 235-1006
taylor.gooch@wilmerhale.com
and
BY: ALYSSA MILSTEAD(via Web videoconference)
Attorney at Law
2600 El Camino Real
Suite 400
Palo Alto, California 94306
(650) 858-6000
alyssa.milstead@wilmerhale.com

/////

E X H I B I T S(cont'd)

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 245 | (Yet Another) Timelines Summary, Anthropic_0000428963 - Anthropic_0000428972. | 325 |

/////



San Francisco, California;
Friday, November 21, 2025
10:04 a.m.
---o0o---

THE VIDEOGRAPHER: Here begins Media No. 1 in the videotaped deposition of Jared Kaplan, in the matter of the Concord Music Group versus Anthropic, in the United States District Court, Northern District of California, San Jose Division, Case No. 5:24-cv-03811-EKL-SVK.

Today's date is November 21st, 2025. The time on the video monitor is 10:04 a.m.

The videographer today is Gary Garcia, representing Planet Depos.

This video deposition is taking place at 50 California Street, San Francisco, California.

Would counsel please voice-identify themselves and state whom they represent, starting with the taking attorney.

MR. HAILEY: Nick Hailey with the law firm of Oppenheim & Zebrak LLP, on behalf of the plaintiff music publishers.

I'm joined by my colleague Bret Matera.

MR. GOOCH: Taylor Gooch with WilmerHale.



With me remotely is Alyssa Milstead; also remotely, Ivana Dukanovic from -- co-counsel at Latham & Watkins.

And with and for the client, or in-house with the client, is Mr. Ian Chen, as well as the witness.

THE VIDEOGRAPHER: The court reporter today is Rebecca Romano representing Planet Depos.

The witness will now be sworn.

THE COURT REPORTER: My name is Rebecca Romano. I am a California-licensed Stenographic Court Reporter, No. 12546. I will be producing a transcript that is automatically admissible in court.

If you could raise your right hand for me, please.

THE DEPONENT: (Complies.)

THE COURT REPORTER: You do solemnly state, under penalty of perjury, that the testimony you are about to give in this deposition shall be the truth, the whole truth and nothing but the truth?

THE DEPONENT: I do.

/////



JARED KAPLAN, Ph.D.
having been administered an oath, was examined and testified as follows:

EXAMINATION

BY MR. HAILEY:

Q. Good morning, Dr. Kaplan.

**A. Good morning.**

Q. We met just a few moments ago. Again, my name is Nick Hailey. I represent the plaintiff music publishers in their lawsuit against your company, Anthropic. I will be taking your deposition today.

Can we start with you stating your name and home address for the record, please.

**A. My name is Jared Daniel Kaplan. I live at [redacted]**

Q. Have you ever been deposed before, Dr. Kaplan?

**A. I have.**

Q. How many times have you been deposed before?

**A. I believe I've been deposed once before.**

Q. And was that your deposition in the Bartz v. Anthropic case?

**A. Yes.**

289

**thousands of different AI models. Most of those are for research purposes. So my best guess is that this was a simple version being trained with RL and experimented with kind of early on.**

Q. Do you know whether this experimental model was used to train any commercial Claude models?

**A. I don't know.**

MR. GOOCH: Objection. Form.

Q. (By Mr. Hailey) So Dr. Askell writes, "I guess behaviors like this might go away."

And then below that, you respond, "Yeah we didn't train it not to do this."

Did I read that correctly?

**A. You read the sentence written there correctly.**

Q. And when you wrote, "we didn't train it not to do this," you're referring to the phenomenon that Dr. Askell is highlighting above about the model generating copyrighted text and naming the authors, correct?

MR. GOOCH: Objection. Vague. Misstates prior testimony. And form.

THE DEPONENT: As I stated earlier, at any given time, Anthropic researchers typically are

290

training tens, hundreds, maybe more, models for research purposes. Those models are trained to learn about specific behaviors, tasks, phenomena.

All aspects of training that go into making Claude as a model released to the public are almost never included in these research experiments, which are confined to a small subset of what -- what we do. We're -- we're doing that in order to learn things.

So I think what this is indicating is that the particular experimental model being discussed here is -- was not trained with sort of the full context or intent of training final versions of Claude.

Q. (By Mr. Hailey) So the specific experimental model we're talking about here you didn't train not to generate copyrighted text; is that right?

MR. GOOCH: Objection. Form.

THE DEPONENT: As I said, the vast majority of research experiments internally do not involve training models to even necessarily engage in dialogue or follow instructions, for example. Researchers often train models to only write code or only solve math problems or only conduct

291

searches or only follow instructions.

And so there's a large variety of different models that are being trained. The training for Claude models is much more comprehensive.

Q. (By Mr. Hailey) Dr. Kaplan, do you agree that in order for Claude to be able to respond to prompts relating to song lyrics, it needs to be trained on song lyrics?

MR. GOOCH: Calls for an expert opinion. Form.

THE DEPONENT: My personal opinion -- are we done with these documents?

Q. (By Mr. Hailey) You can set those aside for now.

**A. My personal opinion is that the answer to the question is no.**

Q. Do you have any data specifically relating to song lyrics to back that personal opinion up?

**A. Typically, Anthropic doesn't have any particular interest in song lyrics, and so it's not something that Anthropic researchers have spent any specific time working on.**

Q. So the answer is, no, you don't have any

292

data specifically relating to song lyrics to back that personal opinion up?

MR. GOOCH: Asked and answered. Form.

THE DEPONENT: As I indicated earlier, I think it's likely that music reviews, discussions of songs, discussions of music, of poetry are likely to be more relevant to Claude's behavior than song lyrics.

Q. (By Mr. Hailey) But you don't have any data relating to song lyrics specifically to support that personal opinion?

MR. GOOCH: Asked and answered. Form.

THE DEPONENT: I don't -- I don't really know how to -- how to answer the question.

As I said, song lyrics aren't something that Anthropic particularly focuses on.

There are quite a lot of experiments that Anthropic has conducted, and the research community as well, over many years on different kinds of training data mixtures and how that affects model behavior and model performance. And those would be the kind of experiments that would inform my personal opinion about what might happen if Claude was trained with or without song lyrics.

Q. (By Mr. Hailey) And none of those --

361

didn't show up.

MR. GOOCH: Shall we go off the record, or do you want to talk about that too?

MR. HAILEY: I'm -- I'm happy to talk about that, but I don't -- I -- clearly, the witness is misinformed by you and has been misinformed as to the subsequent ruling of the magistrate judge. But I don't think that's relevant at this point.

I have nothing further to say on the record that I haven't already said.

MR. GOOCH: Great.

Let's go off the record.

THE VIDEOGRAPHER: Okay. This marks the end of today's deposition of Jared Kaplan. We are going off the record at 6:24 p.m.

(TIME NOTED: 6:24 P.M.)

---o0o---

362

I, JARED KAPLAN, Ph.D., do hereby declare under penalty of perjury that I have read the foregoing transcript; that I have made any corrections as appear notes; that my testimony as contained herein, as corrected, is true and correct.

Executed this ____ day of ____________________, 2025, at ______________, ____________________.

______________________
JARED KAPLAN, Ph.D.

363

I, Rebecca L. Romano, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Court Reporter, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any deponents in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made stenographically by me and which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: November 26, 2025

Rebecca L. Romano, RPR, CCR
CSR. No 12546

364

DEPOSITION ERRATA SHEET

Case Name: Concord Music Group vs. Anthropic
Name of Deponent: Jared Kaplan, Ph.D.
Date of Deposition: November 21, 2025
Job No.: 609877
Reason Codes: 1. To clarify the record.
2. To conform to the facts.
3. To correct transcript errors.

Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page Line Reason
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________
Page _____ Line _____ Reason ____________________
From ______________ to ______________________